**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| LUZMARIA ARROYO, | ) |
| | ) |
| Plaintiff, | ) Case No.: |
| | ) |
| v. | ) COMPLAINT FOR VIOLATION OF |
| | ) CIVIL RIGHTS AND STATE |
| VOLVO GROUP NORTH AMERICA, | ) SUPPLEMENTAL CLAIMS |
| LLC, d/b/a VOLVO PARTS NORTH | ) |
| AMERICA, | ) **JURY DEMANDED** |
| | ) |
| Defendant. | ) |

## FIRST AMENDED COMPLAINT

### JURISDICTION AND VENUE

1. This is an action pursuant to the United States Constitution and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, as amended; the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §12101 *et seq.;* and the Rehabilitation Act of 1973 ("Rehab Act"), 29 U.S.C. § 791 *et. seq*. This court has jurisdiction under and by virtue of 28 U.S.C §§ 1331 and 1343.

2. Venue is founded in this judicial district upon 28 U.S.C. § 1391 as the acts complained of arose in this district.

3. Plaintiff, LuzMaria Arroyo, has fully complied with the procedural requirements of Title VII and the ADA. She filed a charge for discrimination with the EEOC, received a right-to-sue letter from the EEOC, and brought this lawsuit within the applicable time period.

## PARTIES

4. At all times herein mentioned, Plaintiff, LuzMaria Arroyo (hereinafter "Arroyo" or "Plaintiff"), was employed by the Defendant Volvo Group North America, LLC d/b/a Volvo Parts North America (hereinafter "Volvo" or "Defendant").

5. At all times herein mentioned Defendant, Volvo, was and is believed and alleged hereon to be a corporation duly organized, existing, and operating within the jurisdiction of this Court. Volvo is also an employer subject to suit under the Title VII and the ADA in that Defendant is in an industry affecting commerce and had 15 or more employees in each of 20 or more weeks in the current or preceding calendar year.

## FACTUAL ALLEGATIONS

6. Defendant is a transportation company in the business of producing, servicing and distributing heavy-duty truck parts. Defendant is a government contractor and/or subcontractor with contracts greater than $10,000.

7. Plaintiff is a disabled veteran of the United States military.

8. Plaintiff is a qualified person with respect to her employment in that, with or without a reasonable accommodation, she can perform the essential functions of her job.

9. Plaintiff began her employment with Defendant in Joliet, Illinois on or about June 13, 2005.

10. At all relevant times described herein, Plaintiff was employed in the position of material handler.

11. At all material times, Plaintiff performed her job according to her employer's legitimate expectations.

12. On or about April 15, 2006, Plaintiff was called to active service in support of Operation Iraqi Freedom and went on military leave from her employment at the Defendant.

13. On or about May 7, 2007, Plaintiff was released from active duty and reported back to work for the Defendant.

14. In March, 2008, the military placed Plaintiff on Active Duty for Training ("ADT") and Plaintiff went on military leave status again.

15. On or about October 1, 2008, Plaintiff returned back to work at the Defendant from ADT.

16. On or about April 15, 2009, Plaintiff was activated for service in Operation Iraqi Freedom a second time.

17. On or about August 15, 2010, Plaintiff was released from active duty a third time. Pursuant to the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. §4301 *et seq.*, Plaintiff was allowed to return to her position at the Defendant up to ninety (90) days after August 15, 2010.

18. Plaintiff returned to work at the Defendant on or about September 27, 2010. Upon her return, the Defendant failed to provide the Plaintiff with updated employment policies, failed to provide training on the essential functions of her job, failed to reactivate Plaintiff's health insurance plan, neglected to catch-up the Plaintiff's 401k contributions, and failed to provide the appropriate amount of earned time off ("ETO") Plaintiff accrued.

19. At all times relevant to Plaintiff's complaint, the regional manager at the Defendant's Joliet, Illinois location was Keith Schroeder ("Schroeder").

20. On or about October 27, 2010, Plaintiff submitted a request to take military leave on the Friday before a drill and training weekend set to take place on November 5, 2010.

3

21. On or about October 28, 2010, Schroeder denied the Plaintiff's request for military leave because of alleged "undue hardship". After Schroeder denied Plaintiff's request for military leave, Plaintiff reluctantly agreed to report to work two hours prior to the start of her shift and leave two hours prior to the end of her shift on the Friday before her drill shift weekend.

22. On or about October 29, 2010, Schroeder gave Plaintiff two "verbal warnings" for two "occurrence" absences in-between October 1, 2010 and October 19, 2010 despite the fact that Plaintiff was excused for one of the absences and that the write-ups violated the Defendant's protocols for correctional action.

23. On or about November 1, 2010, Schroeder disciplined the Plaintiff for being one (1) minute late to work. Plaintiff refused to sign the disciplinary notice because the Defendant's policy allowed her to punch in up to two minutes after the start of the shift.

24. On or about November 10, 2010 through November 12, 2010, Ms. Arroyo's need for a leave day became apparent when she required hospitalization and medical treatment directly following drill weekend.

25. On or about November 27, 2010, Plaintiff requested military leave for December 3, 2010 to allow her to attend a military reserve training weekend scheduled for December 4 and 5, 2010. Defendant denied the Plaintiff's request for military leave.

26. On December 13, 2010, Schroeder spoke with the Plaintiff about her use of military leave prior to training weekends. Schroeder offered to adjust the Plaintiff's work schedule on training weekends so that she would begin at 10:00 a.m. and end at 6:00 p.m. However, Schroeder's proposed schedule did not allow Plaintiff to meet the eight (8) hours of sleep plus travel time requirement as set forth in USERRA. Schroeder again denied Plaintiff's

request to have a military leave day on the Friday before training weekends for the stated reason that it would be an "undue hardship" to the Defendant.

27. On or about December 23, 2010, Plaintiff sought medical treatment for depression and anxiety. Plaintiff's doctor diagnosed the Plaintiff with anxiety and provided her with a note excusing her from work through January 6, 2011. Plaintiff provided Defendant with this doctor's note.

28. Plaintiff was admitted to the hospital for depression, anxiety and paranoia on January 8, 2011 and in-between January 10 and January 14, 2011.

29. On or about January 18, 2011, Plaintiff's doctor diagnosed Plaintiff with service-related Post-Traumatic Stress Disorder ("PTSD").

30. Plaintiff applied for Short-Term Disability ("STD") with the Defendant, which Defendant approved on January 21, 2011 retroactive to December 27, 2010.

31. In or around January, 2011, Plaintiff became permanently disabled in that she was diagnosed with Post-Traumatic Stress Disorder ("PTSD").

32. On or about March 19, 2011, after mediation between the Plaintiff, Defendant and the Employer Support of the Guard and Reserve ("ESGR"), Plaintiff was granted a partial military leave day in advance of drill weekends, pay for military leave for Annual Training attendance in accordance with company policy, had her insurance reinstated, and was referred to Defendant's 401k investment group for catch-up contributions.

33. On or about March 23, 2011, Plaintiff returned to work from STD.

34. On or about April 14, 2011, Plaintiff saw the Defendant's physician after the Defendant raised concerns about the impact of her PTSD symptoms on her ability to operate a forklift. The Defendant's physician restricted Plaintiff from operating a forklift on that date.

35. Subsequent to April 14, 2011, when Plaintiff requested to work overtime on Saturdays the Defendant instructed her that the only Saturday work available was using the forklift. Accordingly, Plaintiff was unable to work overtime on Saturdays pursuant to her restrictions. Defendant's reason for preventing Plaintiff from working overtime on Saturdays was false because the Defendant had non-forklift overtime work available.

36. On or about April 26, 2011, Plaintiff requested to use two (2) hours of ETO time each time she had to attend group therapy sessions required for her PTSD treatment. Schroeder denied Plaintiff's request and indicated that if Plaintiff wished to use ETO she would have to take a whole day off.

37. On or about May 2, 2011, the Defendant's HR department overruled Schroeder and allowed Plaintiff to use two hours of ETO on her PTSD group therapy days.

38. On or about May 20, 2011, Plaintiff made a complaint with the Defendant's HR department regarding discrimination based upon her disability. Plaintiff complained that she was being discriminated against based on her disability when she was prevented from working overtime on Saturdays despite the fact that she had the ability to perform a job for the Defendant.

39. On or about May 31, 2011, Plaintiff took military leave in response to orders from her unit.

40. Plaintiff returned to work from military leave on July 11, 2011.

41. On or about July 19, 2011, the Defendant's physician reevaluated the Plaintiff and removed all restrictions from Plaintiff's employment, including the previous limitation on her driving a forklift.

42. On or about August 26, 2011, Plaintiff wrote to the Defendant's HR department to complaint about harassment relating to her PTSD diagnosis and to request a number of

reasonable accommodations for her PTSD based upon standards published by the Department of Labor ("DOL").

43. On or about August 31, 2011, Plaintiff met with Defendant's HR representative and Schroeder as well as another supervisor. On that date, Defendant suspended Plaintiff for violation of the Defendant's attendance policy. The Defendant falsely suspended the Plaintiff despite the fact that she had not received any written warnings for attendance violations in the past six (6) months as required for a suspension under the Defendant's disciplinary protocol.

44. On or about September 13, 2011, Plaintiff filed an EEOC Complaint alleging discrimination in violation of the Americans with Disabilities Act ("ADA").

45. On or about September 16, 2011, the Defendant and Plaintiff came to an understanding regarding some of the accommodations Plaintiff requested for her PTSD on or about August 26, 2011. Amongst other accommodations, the parties agreed that the Defendant would provide Plaintiff with a place to meditate before work and during breaks and that Plaintiff would be granted any necessary time off for her PTSD treatments. At that time, the Defendant indicated that it was still reviewing several of the Plaintiff's requests including Plaintiff's request to use ear plugs in each ear while at work.

46. On or about September 19, 2011, the Defendant's HR representative requested to interview the Plaintiff in relation to her PTSD harassment claims. Plaintiff indicated that she wanted to obtain legal representation before speaking with the Defendant's HR representative about the harassment.

47. On or about September 20 and September 21, 2011, the Defendant sent Plaintiff home shortly after she reported to work in retaliation for her complaints. Defendant's stated reason for sending Plaintiff home on September 20 and 21 was false.

48. On or about September 21, 2011, the Defendant presented the Plaintiff with a letter instructing her that she could not return to work without a note from her physician indicating that she required the use of two ear plugs at work. Defendant's HR representative also attempted to defeat accommodations already granted by instructing Ms. Arroyo that any breaks taken in relation to her PTSD would be "unpaid breaks".

49. On or about September 30, 2011, Plaintiff returned to work wearing an ear plug in only one ear despite the fact that the DOL standards and Plaintiff's medical records indicated that she was allowed to wear ear plugs in both ears.

50. The Defendant failed to accommodate the Plaintiff when it did not allow her to wear ear plugs in both ears consistent with the DOL standards for PTSD.

51. On or about October 18, 2011, Schroeder indicated that Plaintiff only had 13.5 ETO days remaining to utilize her leave time for PTSD treatments in contravention of the parties' agreement on September 16, 2011 that Plaintiff would be granted any necessary time off for PTSD treatments.

52. On or about November 1, 2011, Plaintiff met with Schroeder who informed Plaintiff that he could not agree to a start time on the dates during which she had her PTSD treatments without a call-in and doctor's note. Schroeder further clarified that Plaintiff was expected to have her personal protective equipment on prior to the start of her shift at 4:30 p.m. and was expected to be walking towards her forklift at the start of the shift. When Plaintiff asked if this was official policy, Schroeder indicated that he had not communicated these requirements to any other employee and that this was not the policy for any employee other than the Plaintiff.

53. On or about November 3, 2011, Schroeder provided Plaintiff with a written disciplinary action form for violation of the Defendant's shift start rule policy. Plaintiff refused to sign this false write-up and informed Schroeder that Plaintiff's attorney was going to be engaging in mediation with the Defendant at the EEOC on November 18, 2011 to resolve all ADA issues.

54. On or about November 4, 2011, Plaintiff left work early pursuant to her agreement with the Defendant to use military leave on military drill weekends.

55. On or about November 8, 2011, Schroeder disciplined the Plaintiff for alleged tardiness on November 4, 2011 and terminated the Plaintiff for her alleged absences over the past (6) months.

56. Defendant's reason for Plaintiff's termination is false and merely pretext for illegal discrimination.

57. On or about November 30, 2011, Plaintiff filed an amended charge with the EEOC adding a claim for retaliation.

58. Plaintiff was terminated because of her disability, PTSD, and because of her EEOC complaint for violation of the ADA filed on September 13, 2011.

59. As a result of the aforesaid acts of the Defendant, Plaintiff has lost income and benefits in an amount to proven at the time of trial. Plaintiff claims such damages together with prejudgment interest as permitted by law.

60. The aforementioned acts of the Defendant were reckless, willful, wanton, malicious, oppressive, and in callous disregard to and indifference to Plaintiff. Thus, Plaintiff requests the assessment of punitive damages and/or liquidated damages against the defendant in a sum as determined according to law and proof.

## COUNT I
## PLAINTIFF AGAINST DEFENDANT FOR
## DISCRIMINATION ON THE BASIS OF PLAINTIFF'S DISABILITY
## IN VIOLATION OF THE ADA AND THE REHAB ACT

61. Plaintiff realleges and incorporates paragraphs one (1) through paragraph sixty (60) as though fully set forth at this place.

62. Plaintiff is disabled in that she was diagnosed with PTSD and is substantially limited in the major life activity of brain function. Defendant also treated Plaintiff as a person with a disability by granting some accommodations requested.

63. Plaintiff was qualified for the job she held with Defendant and performed all job functions to Defendant's legitimate employment expectations.

64. Despite Plaintiff's qualifications and job performance, she was discriminated against by Defendant because of her disability.

65. Defendant's discrimination against Plaintiff was intentional.

66. Defendant discriminated against Plaintiff in the terms and conditions of her employment.

67. Similarly situated non-disabled employees were not subjected to the same terms and conditions of employment as the Plaintiff.

68. Defendant's reason for Plaintiff's termination was false and merely pretext for illegal discrimination.

69. Defendant's actions, as described above, are in violation of the ADA and Rehab Act in that Defendant acted to discriminate against Plaintiff in the terms and conditions of her employment because of her disability.

70. As a direct and proximate result of said unlawful employment practices and in disregard of the Plaintiff's rights and sensibilities, Plaintiff has suffered lost wages, the indignity of discrimination, which has manifested in emotional distress, and further has negatively impacted her future ability to support herself, harmed her earning capacity, disrupted her personal life, and caused loss of enjoyment of the ordinary pleasures of life.

## COUNT II
## PLAINTIFF AGAINST DEFENDANT FOR
## RETALIATION IN VIOLATION OF TITLE VII AND THE ADA

71. Plaintiff realleges and incorporates paragraphs one (1) through sixty (60) as though fully set forth at this place.

72. Plaintiff met her employer's legitimate employment expectations.

73. Plaintiff engaged in protected activity when she reported the harassment and violations of the ADA to the Defendant on May 20, 2011 and August 21, 2011, and filed a charge with the EEOC on September 13, 2011.

74. After engaging in said protected activity, Defendant has engaged in many acts of retaliatory actions which include continually refusing to provide Plaintiff with a reasonable accommodation although Plaintiff is a qualified employee, terminating Plaintiff although she was performing to her employer's legitimate expectations and could continue to perform her job, and otherwise harassing Plaintiff in various ways designed to impede her ability to work for Defendant.

75. There is a causal connection between Plaintiff's protected activity and Defendant's retaliatory actions.

76. Similarly situated employees who did not engage in protected activity were treated more favorably than Plaintiff.

77. Defendant's reason for Plaintiff's termination is false and merely pretext for illegal retaliation.

78. Defendant's actions, as described above, are in violation of Title VII and the ADA as the Defendant has engaged in acts of retaliation because of Plaintiff's engagement in protected activities.

79. As a direct and proximate result of said unlawful employment practices and in disregard of the Plaintiff's rights and sensibilities, Plaintiff has suffered lost wages, the indignity of discrimination, which has manifested in emotional distress, and further has negatively impacted her future ability to support herself, harmed her earning capacity, disrupted her personal life, and caused loss of enjoyment of the ordinary pleasures of life.

## COUNT III
## PLAINTIFF AGAINST DEFENDANT FOR
## FAILURE TO PROVIDE A REASONABLE ACCOMMODATION
## IN VIOLATION OF THE ADA AND THE REHAB ACT

80. Plaintiff realleges and incorporates paragraphs one (1) through paragraph sixty (60) as though fully set forth at this place.

81. Plaintiff is disabled in that she is substantially limited in major life activity of brain function.

82. Plaintiff is a qualified person with a disability in that Plaintiff can perform the essential functions of her job, or a job, with a reasonable accommodation.

83. Defendant was able to provide a reasonable accommodation to Plaintiff in the form of actions such as allowing her time to attend her PTSD therapy sessions, allowing Plaintiff to work overtime on a machine other than the forklift, allowing Plaintiff to use two ear plugs at work, and allowing Plaintiff time to use put her protective gear on prior to starting her shift.

84. Such reasonable accommodations would not cause an undue hardship on Defendant.

85. Defendant refused to provide Plaintiff with these reasonable accommodations.

86. Defendant failed to engage in the required interactive process to determine what it could do to provide Plaintiff with a reasonable accommodation.

87. Defendant's actions, as described above, are in violation of the ADA and Rehabilitation Act, as Defendant did not offer Plaintiff, a qualified individual with a disability, an available reasonable accommodation.

88. As a direct and proximate result of said unlawful employment practices and in disregard of the Plaintiff's rights and sensibilities, Plaintiff has suffered lost wages, the indignity of discrimination, which has manifested in emotional distress, and further has negatively impacted her future ability to support herself, harmed her earning capacity, disrupted her personal life, and caused loss of enjoyment of the ordinary pleasures of life.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff, LuzMaria Arroyo, by and through her attorneys, Ed Fox & Associates, requests the following relief:

A. That Plaintiff be granted general and compensatory damages in an amount to be determined at trial;

B.	That Plaintiff be granted punitive or liquidated damages in an amount to be determined at trial;

C.	That the Court grant to Plaintiff her reasonably incurred attorneys' fees, costs, litigation expenses, and pre-judgment interest; and

D.	That the Court grant such other and further relief as the Court may deem just or equitable.

BY:	s/ Jonathan R. Ksiazek
Jonathan R. Ksiazek
ED FOX & ASSOCIATES
Attorneys for Plaintiff
300 West Adams
Suite 330
Chicago, Illinois 60606
(312) 345-8877
jksiazek@efox-law.com

**PLAINTIFF HEREBY REQUESTS A TRIAL BY JURY**

                            BY:    s/ Jonathan R. Ksiazek
                                      Jonathan R. Ksiazek
                                      ED FOX & ASSOCIATES
                                      Attorneys for Plaintiff
                                      300 West Adams
                                      Suite 330
                                      Chicago, Illinois 60606
                                      (312) 345-8877
                                      jksiazek@efox-law.com