**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LUZMARIA ARROYO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.  1:12-CV-06859 |
| vs. | ) | |
| | ) | Honorable John Z. Lee, |
| VOLVO GROUP NORTH AMERICA, | ) | Judge Presiding |
| LLC, d/b/a VOLVO PARTS NORTH | ) | |
| AMERICA, | ) | Honorable Jeffrey Cole, |
| | ) | Magistrate Judge |
| | ) | |
| Defendant. | ) | JURY DEMANDED |

**SECOND AMENDED COMPLAINT**

NOW COMES the Plaintiff, LUZMARIA ARROYO, by and through her attorneys, John

P. DeRose & Associates, and as and for her Second Amended Complaint against Defendant,

VOLVO GROUP NORTH AMERICA, LLC, d/b/a VOLVO PARTS NORTH AMERICA states

as follows:

**JURISDICTION**

1.      This action is brought pursuant to 29 U.S.C. § 794; and the jurisdiction of this court is

invoked pursuant to 29 U.S.C. § 794(a)(1).

2.      This is an action seeking redress for violations of rights guaranteed to the Plaintiff , under

the Uniformed Service Members Employment and Reemployment  Act (USERRA), 38 U.S.C.A.

§ 4301 *et seq.*, 29 U.S.C.A. § 215(a)(3), under the Americans with Disabilities Act (ADA) of

1990, § 2 *et seq.*, 42 U.S.C.A. § 12101 *et seq.*, under Title VII of the Civil Rights Act of

1964("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, as amended, under the Rehabilitation Act of 1973

("Rehab Act"), 29 U.S.C. § 791 *et. seq.*, and under the Family Medical Leave Act (FMLA), 29

U.S.C.A. § 2615(a)(1) when she was subjected to a hostile work environment and was ultimately

terminated because of interference and retaliation by her employer as she sought to exercise her rights under these Acts. Plaintiff seeks mandatory injunctive relief and damages to redress Defendant's discriminatory employment practices.

3.     Venue lies in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. §§ 1331, 1343, and 1391(b) because the events giving rise to this claim occurred in this judicial district and Plaintiff and Defendant and its employees reside in this District.

## PARTIES

4.     At all times herein mentioned, Plaintiff, LuzMaria Arroyo (hereinafter "Ms. Arroyo" or "Plaintiff"), was employed by the Defendant Volvo Group North America, LLC d/b/a Volvo Parts North America (hereinafter "Volvo" or "Defendant").

5.     At all times herein mentioned, Defendant Volvo was and is believed and alleged hereon to be a corporation duly organized, existing, and operating within the jurisdiction of this Court.

6.     Volvo is also an employer subject to suit under the Title VII and the ADA in that Defendant is in an industry affecting commerce and had 15 or more employees in each of 20 or more weeks in the current or preceding calendar year.

## FACTUAL ALLEGATIONS

7.     Defendant is a transportation company in the business of producing, servicing and distributing heavy-duty truck parts. Defendant is a government contractor and/or subcontractor with contracts greater than $10,000.

8.     Plaintiff is a disabled veteran of the United States Army Reserve who was deployed on three separate occasions to combat zones.

9.      Plaintiff has been deployed to Kuwait City, Kuwait and Baghdad, Iraq and Basrah, Iraq-- the last two deployments to Iraq of which were while in the employ of Defendant.

10.     Plaintiff is a qualified person with respect to her employment in that, with or without a reasonable accommodation, she can perform the essential functions of her job.

11.     Within 6 months after her release from active duty with the United States Army in Kuwait, Plaintiff began her employment with Defendant at its plant located in Joliet, Illinois on or about June 13, 2005.

12.     On her application for employment with Defendant, Plaintiff fully disclosed and Defendant was fully aware that she was a member of the United States Army Reserve, subject to call up to active duty and training pursuant to military orders.

13.     At all relevant times described herein, Plaintiff was employed in the position of material handler for Defendant.

14.     At all material times, Plaintiff performed her job according to her employer's legitimate expectations.

15.     Within 10 months after the commencement of her employment with Defendant, on April 15, 2006 Plaintiff was called to active duty in support of Operation Iraqi Freedom, was sent to Baghdad, Iraq, and went on military leave from her employment at the Defendant's Joliet plant.

16.     On or about May 7, 2007, Plaintiff was released from active duty in Baghdad, Iraq and reported back to work for the Defendant at its Joliet plant.

17.     At all times relevant, the Regional Manager at the Defendant's Joliet, Illinois location was Keith Schroeder (hereinafter sometimes referred to as "Schroeder").

18.     At various relevant times, Plaintiff had three immediate supervisors, Michael Temko, Sherrie Jankowski, and Patrick Dunn.

19.     At various relevant times, Defendant's supervisors (who were not even the immediate supervisor of Plaintiff) interacted with or were involved in the secret discussions and recommendations concerning the treatment of her, included, but was not limited to, Bill Balsis, Bernard Bomba, Christopher Humann, David Miller, and Jason Mussatto.

20.     At various of the relevant times, members of the Human Resources Team and the Management Team of Defendant with which plaintiff interacted or who were involved in the discussions and recommendations concerning the treatment of her, included, but were not limited to, Dennis Scholl, Bruce Olin, Regina Williams, Maureen Somerset.

21.     Almost from the inception of her return to work, Defendant's Supervisors, Managers, Human Resources Representatives, and Upper Management began to consult with each other concerning the requirements and dictates of the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. §4301 et seq.,  in order to grudgingly grant only minimal compliance with USERRA and deprive Plaintiff of the rights and benefits to which she is entitled in order to avoid allegations of discrimination and retaliation.

22.     After Plaintiff's return from Iraq in 2007, Defendant's Supervisors, Managers, Human Resources Representatives, and Upper Management complained about and agreed among themselves that Plaintiff's travel to Fort Benning, Georgia for her training imposed too great a burden on Defendant because Plaintiff needed and had to be granted an extra day of travel to and from Fort Benning in compliance with her military orders.

23.     Plaintiff was told by Keith Schroeder after he consulted with other of Defendant's Supervisors, Managers, Human Resources Representatives, and Upper Management to transfer from Fort Benning, Georgia to a local United States Army Reserve unit.

24.     Plaintiff advised Schroeder that as a soldier, she could only request a transfer and did not have the authority to demand a transfer.

25.     In December 2007 at the insistence of Schroeder, Plaintiff requested a transfer from her unit at Fort Benning, Georgia to a local drill site in Darien, Illinois for the convenience of Defendant.

26.     The team of soldiers with which Plaintiff had drilled, trained, and reported for duty at Fort Benning, Georgia were members of the unit with which Plaintiff had been deployed into combat zones in Iraq on the earlier occasion.

27.     The transfer to the unit at the local site in Darien, Illinois at the insistence of Defendant deprived Plaintiff of the camaraderie, society, and confidence she developed in her fellow soldiers, with whom she shared her experiences in harm's way.

28.     That transfer to the unit at the local site in Darien, Illinois also accelerated Plaintiff's Redeployment Schedule since there was normally a two to three-year period between deployments of particular units.

29.     In March, 2008, the United States Army placed Plaintiff on Active Duty for Training ("ADT") and Plaintiff went again on military leave status from her employment with Defendant.

30.     On or about October 1, 2008, Plaintiff returned to work at Defendant's Joliet plant from ADT.

31.     Upon Plaintiff's return to work, Defendant's Supervisors, Managers, Human Resources Representatives, and Upper Management continued to debate the requirements and dictates of USERRA in order to grudgingly grant only minimal compliance, deprive Plaintiff of the rights and benefits to which she is entitled under USERRA, and avoid allegations of discrimination.

32.     Spreadsheets were created and emails were exchanged among Defendant's Supervisors, Managers, Human Resources Representatives, and Upper Management concerning Plaintiff's absence from employment at Defendant's plant for drills and training, her obligation to follow orders, and Defendant's legal obligation to cooperate with those orders.

33.     On or about April 15, 2009, Plaintiff was activated for service in Operation Iraqi Freedom a second time while employed with Defendant.

34.     Although originally scheduled to be released from active duty on April 15, 2010. Plaintiff tour of duty was extended until August 15, 2010.

35.     Questioning the obligation of Plaintiff to remain on extended active duty, Defendant's Supervisors, Managers, Human Resources Representatives, and Upper Management demanded production of military orders that had not yet been produced in violation of USERRA.

36.     Defendant's Supervisors, Managers, Human Resources Representatives, and Upper Management continued to remind each other that they must not appear to be discriminatory of Plaintiff and her rights.

37.     On or about August 15, 2010, Plaintiff was released a third time from active duty with the United States Army in a combat zone.

38.     Pursuant to USERRA Plaintiff was allowed to return to her position at the Defendant up to ninety (90) days after release from active duty on August 15, 2010.

39.     Plaintiff returned to work at the Defendant's Joliet plant on or about September 27, 2010.

40.     Upon her return, Defendant failed to provide the Plaintiff with updated employment policies, failed to provide training and re-training on the essential functions of her job, and failed to provide the appropriate amount of earned time off ("ETO") Plaintiff had accrued.

41.     Throughout her employment with Defendant, as Plaintiff was experiencing concerns and problems in the workplace as a result of her quest to fulfill her military duty and obligations, she brought her questions, complaints, and problems, both verbally and in writing, to her supervisor first, then to the local Human Resources Manager, then to the next level of Regional Management, then to Regional Human Resources personnel, and finally to Defendant's upper management at the Headquarters level.

42.     As Plaintiff sought rights guaranteed to her under the Uniformed Service Members Employment and Reemployment Act (USERRA), under the Americans with Disabilities Act (ADA) of 1990, under Title VII of the Civil Rights Act of 1964 ("Title VII"), under the Rehabilitation Act of 1973 ("Rehab Act"), and under the Family Medical Leave Act (FMLA), the company retaliated against her, disciplined her, and ultimately terminated her employment.

43.     On September 28, 2010 the first day after her return to work, Defendant's Supervisors, Managers, Human Resources Representatives, and Upper Management tendered a Voluntary Severance Package to Plaintiff with the hopes that she would voluntarily terminate her employment with Defendant.

44.     Plaintiff did not accept the severance offer and continued to work for Defendant.

45.     On or about October 19, 2010, less than one month after Plaintiff's return to work from active duty, Schroeder gave Plaintiff a "verbal warning" for two "occurrence" absences between October 1, 2010 and October 19, 2010, despite the fact that Plaintiff had never been provided with any protocol promulgated by Defendant concerning absences upon a reemployment and had been, in fact, excused for one of the absences.

46.     On or about October 27, 2010, Plaintiff submitted a request to take military leave on the Friday before a drill and training weekend set to take place on November 5, 2010 in order to properly rest and make preparation for her drills and training.

47.     Schroeder denied the Plaintiff's request for military leave because of what Schroeder alleged, but failed to specify was an "undue hardship".

48.     Defendant's Supervisors, Managers, Human Resources Representatives, and Upper Management knew that USERRA required that Plaintiff be afforded travel time plus an eight hour rest period following her drill before having to report to work.

49.     After Schroeder denied Plaintiff's request for military leave, Plaintiff reluctantly agreed to report to work two hours prior to the start of her shift and leave two hours prior to the end of her shift on the Friday before her drill and training weekend.

50.     On or about October 29, 2010, Schroeder gave Plaintiff write-ups for the two absences of October 1, 2010 and October 19, 2010, which were originally "verbal warnings".

51.     This action taken by Schroeder against Plaintiff violated the Defendant's protocols for progressive discipline and corrective disciplinary action.

52.     On or about November 1, 2010, Schroeder disciplined Plaintiff for being one (1) minute late to work.

53.     Plaintiff refused to sign the Disciplinary Notice because the Defendant's policy allowed her to punch in up to two minutes after the start of the shift.

54.     From on or about November 10, 2010 through November 12, 2010, plaintiff's need for a leave day became apparent when she required hospitalization and medical treatment directly following drill weekend.

55.     On or about November 27, 2010, Plaintiff requested military leave on December 3, 2010 to allow her to attend a Military Reserve Training Weekend scheduled for December 4 and 5, 2010.

56.     Schroeder denied the Plaintiff's request for military leave from her employment with Defendant in order to attend the Military Reserve Training Weekend and be sufficiently rested before and after that training.

57.     On December 2, 2010, Plaintiff was instructed that a decision concerning any request for military or medical leave would only be made after she provided military or medical documentation in accordance with Defendant's attendance policy in violation of USSERA.

58.     On or about December 7, 2010, Plaintiff requested assistance from Employer Support of the Guard and Reserve (ESGR) in mediating her USERRA rights.

59.     On December 13, 2010, Schroeder offered to adjust the Plaintiff's work schedule on training weekends so that she would begin at 10:00 a.m. and end at 6:00 p.m.

60.     Schroeder's proposed schedule did not allow Plaintiff to meet the eight (8) hours of sleep plus travel time requirement as set forth in USERRA.

61.     When plaintiff did not accept his proposed schedule, Schroeder curtly denied Plaintiff's request to have a military leave day on the Friday before training weekends for the stated reason that it would be an "undue hardship" to Defendant.

62.     On or about December 23, 2010, Plaintiff self-admitted to the emergency room of the Adventist LaGrange Memorial Hospital, as she sought medical treatment for depression and anxiety.

63.     Plaintiff was diagnosed with anxiety and was provided with a note excusing her from work through December 30. 2010 which doctor's note was provided by Plaintiff to Defendant.

64.     Plaintiff was examined and treated at the Veterans Administration hospital for depression, anxiety and paranoia on January 8, 2011.

65.     Plaintiff was admitted to the Veterans Administration Hospital between January 10, 2011 and January 14, 2011 for depression, anxiety and paranoia.

66.     On or about January 18, 2011, Dr. Arvind Yekanath diagnosed Plaintiff with service-related Post-Traumatic Stress Disorder ("PTSD").

67.     Plaintiff applied for Short-Term Disability ("STD") with the Defendant, which Defendant approved on January 21, 2011 retroactive to December 27, 2010.

68.     On or about March 19, 2011, after mediation among the Plaintiff, Defendant, and the Employer Support of the Guard and Reserve ("ESGR"), Plaintiff was granted a partial military leave day in advance of drill weekends and pay for military leave for Annual Training attendance in accordance with company policy.

69.     On March 22, 2011 Dr. Arvind Yekanath wrote Defendant that "Arroyo is fit to work without restrictions".

70.     On or about March 23, 2011, Plaintiff returned to work from Short-Term Disability.

71.     On or about April 14, 2011, after the Defendant raised concerns about the impact of her PTSD symptoms on her ability to operate a forklift, Plaintiff saw the Defendant's physician for an Independent Medical Evaluation.

72.     As a result of the Independent Medical Evaluation, Defendant's physician restricted Plaintiff from operating a forklift.

73.     On or about April 26, 2011, Plaintiff requested to use two (2) hours of Earned Time off (ETO) each time she had to attend group therapy sessions required for her PTSD treatment.

74.     Schroeder and HR Representative Maureen Somerset denied Plaintiff's request and indicated that if Plaintiff wished to use ETO she would have to take a whole day off "pursuant to company policy".

75.     On or about May 2, 2011, after Plaintiff called company policy to its attention allowing employees to take ETO in one hour increments if they so desire and have available unused ETO, Defendant's Human Resources Department overruled Schroeder and allowed Plaintiff to use two hours of ETO on her PTSD group therapy session days.

76.     On or about May 20, 2011 Plaintiff requested to work overtime on Saturdays.

77.     After consultation with Schroeder, Local Human Resources Business Partner Regina Williams (hereinafter sometimes referred to simply as "Regina Williams") confirmed in writing that the only Saturday work available at Defendant's Joliet plant entailed operating the forklift.

78.     Plaintiff advised Regina Williams that she had been in the plant on Saturday and observed work being performed by another employee that she was fully able to do while on light-duty.

79.     Defendant was fully aware that the language of its policies contained no prohibition with regard to overtime while on restricted duty nor did it have any documentation placing Plaintiff on restrictive duty.

80.     Plaintiff complained that she was being discriminated against based on her disability when she was prevented from working overtime on Saturdays despite the fact that she had the ability to perform the job for Defendant.

81.     In her email to Regina Williams on May 20, 2013, Plaintiff concludes:

        Perhaps I have been discriminated against his whole time.

82.     On or about May 31, 2011, Plaintiff took military leave from her employment with Defendant in response to orders from her unit.

83.     Although Arroyo was released from active duty on July 5, 2011, she was required to report for drill training on July 8, 2011.

84.     Because she had no time off between active duty and her drill training, Plaintiff requested additional days off (without pay from Defendant) before reporting back to work at Volvo.

85.     Plaintiff's request for additional time off before reporting back to Defendant's plant was denied by Keith Schroeder and Regina Williams.

86.     As directed by Defendant, Plaintiff returned to work from military leave on July 11, 2011.

87.     In a letter dated the same July 11, 2011, Defendant's physician, Dr. John J. Koehler reevaluated Plaintiff and indicated that "Arroyo is released back to full duty without restriction", including the previous limitation on her driving a forklift.

88.     Schroeder had established a new system at the Joliet plant entitled "Volvo LMS Lite" to allow supervisors and management to monitor the work and gaps in work of employees.

89.     Employees were advised that "supervisors will monitor daily LMS-Lite files", "excessive gaps of unaccounted for time will be documented and communicated", "upper management will do random audits of LMS Lite files and audit log", and "an employee will receive a Red Flag after a supervisor reviews the LMS lite file if there is an accumulation of gaps of unaccounted for time meeting the listed thresholds each day".

90.     When Supervisor David Miller accused Plaintiff of an LMS Lite policy violation on August 4, 2011, Plaintiff wrote to HR Representative Regina Williams:

> Being accused of an LMS Lite policy violation by Mr. Miller, not
> my supervisor.  The alleged infraction occurred on the Tuesday

> when I begin work at a later time. This correlates with time off to attend my appointments as an accommodation allowed by the company.
>
> I am requesting intervention before I seek legal assistance.

91.     On or about August 26. I, 2011, Plaintiff wrote an email to Defendant to complain about harassment relating to her PTSD diagnosis and to request a number of reasonable accommodations for her PTSD based upon standards published by the Department of Labor ("DOL").

92.     In that email, Plaintiff wrote:

> America's Heroes at Work is a U.S. Department of Labor (DOL) project that addresses the employment challenges of returning Service Members living with Traumatic Brain Injury (TBI) and/or Posttraumatic Stress Disorder (PTSD)-an important focus of the President's Veterans agenda.

93.     Plaintiff went on to report harassment she experienced at the hand of Schroeder:

> On 8/23 I experienced an incident which brought about a major anxiety episode. I tried various relaxation techniques, but could not ignore the event; I have a call to action, for I no longer felt safe/protected. After careful consideration of courses of action, I decided to speak with my supervisor, Patrick Dunn (who I feel safe to approach and confirm with). The anxiety episode lasted approximately 20 minutes. After speaking with Mr. Dunn, I felt more calm and composed and was able to continue working. Mr. Dunn said he would need to speak with you [Keith Schroeder] regarding the event brought about the anxiety.
>
> On 8/24 you requested to speak with me and Mr. Dunn at which time you threatened to fire me for my behavior. Your demeanor was aggressive and hostile and I felt intimidated/threatened. Additionally, you stated that the time that I used in order to reduce my anxiety and consider courses of action was not authorized and I would be held accountable under the LMS Lite policy. You also stated that continued breaks for managing anxiety will result in termination. When I requested this information in writing, you refused to provide it to me and still have not provided it to date.

> On 8/25 you again requested to speak with me; this time cornering me in a small office with 2 other supervisors and Ms. Maureen Somerset behind the closed door in a room with no windows and no way to escape. You provided me with the workplace violence policy and the harassment policy and then allowed me to leave.
> ….

94.     On or about August 31, 2011 Schroeder and Williams suspended Plaintiff for violation of the company attendance policy.

95.     That suspension was in violation of Defendant's own progressive discipline and disciplinary protocol since Plaintiff had not received any written warnings for attendance violations in the previous six (6) months.

96.     On or about September 13, 2011, Plaintiff filed an EEOC Complaint alleging discrimination in violation of the Americans with Disabilities Act ("ADA").

97.     On or about September 19, 2011, Williams requested to interview the Plaintiff in relation to her PTSD harassment claims.

98.     Plaintiff indicated that she wanted to obtain legal representation before speaking with Regina Williams about the harassment.

99.     In the meanwhile, Regina Williams and Plaintiff came to an understanding regarding some of the accommodations Plaintiff had requested in August, one of which was to allow her the use of the supervisor's office at the back of the plant so that she could meditate and compose herself before starting work each morning.

100.    On or about November 1, 2011, Schroeder informed Plaintiff that he could not agree to a later start time on the dates during which she had her PTSD treatments without a call-in and a doctor's note.

101.    Schroeder further clarified that Plaintiff was expected to have her personal protective equipment on prior to the start of her shift at 4:30 p.m. and was expected to be walking towards her forklift at the start of the shift.

102.    Plaintiff indicated that she would put on her safety equipment before going to the meditation room, but requested to be paid by Defendant for doing so, which request Schroeder denied.

103.    When Plaintiff asked if this was official policy, Schroeder indicated that he had not communicated these requirements to any other employee and that this was not the policy for any employee other than the Plaintiff.

104.    On or about November 2, 2011, Plaintiff arrived at Defendant's Joliet plant and punched in 20 minutes early in order that she could use the meditation room before starting work as agreed.

105.    On or about November 3, 2011, Schroeder provided Plaintiff with a written Disciplinary Action Form for violation of the Defendant's alleged "Shift Start Rule Policy", contending that Plaintiff had been late 3 minutes on November 2, 2011 because she was not on her forklift when the bell rang.

106.    Plaintiff refused to sign this false write-up and informed Schroeder that Plaintiff's attorney was going to be engaging in mediation with the Defendant at the EEOC on November 18, 2011 to resolve all ADA issues.

107.    Schroeder also advised Plaintiff that there was a parking restriction that prohibited her from parking in the back of the plant at the entrance nearest to the meditation room; and when questioned by Plaintiff about it, Schroeder admitted that the parking restriction was just for her, it was not a parking policy, and he had never before promulgated it.

108.    Only because Plaintiff questioned him on the parking restriction, Schroeder posted a "parking policy" for all employees 2 days later.

109.    The new parking policy now necessitated that Plaintiff would have to leave the meditation room and take the approximately 10 minute walk to the front of the plant and put on her safety equipment and harness in order to be prepared for the start of work.

110.    On or about November 4, 2011, Plaintiff left work early pursuant to her agreement with the Defendant to use military leave on military drill weekends.

111.    On or about November 8, 2011, Schroeder disciplined the Plaintiff for alleged tardiness on November 4, 2011 and terminated the Plaintiff for her alleged absences over the past (6) months.

112.    Defendant's reason for Plaintiff's termination is false and merely pretext for illegal retaliation against her for reporting Schroeder's harassment and discrimination of her and to further deprive Plaintiff of the rights and benefits to which she is entitled under USERRA by Defendant's Supervisors, Managers, Human Resources Representatives, and Upper Management.

113.    On or about November 30, 2011, Plaintiff filed an amended charge with the EEOC adding a claim for retaliation.

114.     Plaintiff was terminated because of her disability, PTSD and in retaliation for her EEOC complaint for violation of the ADA filed on September 13, 2011 and in retaliation for her attempt to secure reasonable accommodations and working conditions under USERRA.

115.    As a result of the aforesaid acts of the Defendant, Plaintiff has lost her employment, income and benefits in an amount to be proven at the time of trial and claims such damages together with prejudgment interest as permitted by law.

16

116.    The aforementioned acts of the Defendant were reckless, willful, wanton, malicious, oppressive, and in callous disregard to and indifference to Plaintiff's rights.

**COUNT I**
**DISCRIMINATION ON THE BASIS OF PLAINTIFF'S DISABILITY**
**VIOLATION OF USERRA, TITLE VII, THE ADA, AND THE REHAB ACT**

117.    Plaintiff realleges and incorporates the foregoing paragraphs 1 through paragraph 116 of this Second Amended Complaint as though fully set forth at this place.

118.    Plaintiff is disabled in that she was diagnosed with PTSD and is substantially limited in the major life activity of brain function.

119.    Defendant also treated Plaintiff as a person with a disability by granting some of the accommodations she requested.

120.    Plaintiff was qualified for the job she held with Defendant and performed all job functions to Defendant's legitimate employment expectations.

121.    Despite Plaintiff's qualifications and job performance, Defendant discriminated and retaliated against her because of her disability and active military service.

122.    Defendant's discrimination and retaliation against Plaintiff and denial of her rights under USERRA was intentional.

123.    Defendant discriminated against Plaintiff in the terms and conditions of her employment.

124.    Similarly situated non-disabled employees and employees who were not in the United States military service were not subjected to the same terms and conditions of employment as the Plaintiff.

125.    Defendant's reason for Plaintiff's termination was false and merely pretext for illegal discrimination.

126.     Defendant's actions, as described above, are in violation of USERRA, the ADA and

Rehab Act in that Defendant acted to discriminate and retaliate against Plaintiff in the terms and

conditions of her employment because of her disability and in a studied attempt to deprive her of

rights, benefits and protection under those statutes.

127.     As a direct and proximate result of said unlawful employment practices and in disregard

of the Plaintiff's rights and sensibilities, Plaintiff has suffered lost wages, the indignity of

discrimination, which has manifested in emotional distress and further has negatively impacted

her future ability to support herself, harmed her earning capacity, disrupted her personal life, and

caused loss of enjoyment of the ordinary pleasures of life.

WHEREFORE, Plaintiff, LuzMaria Arroyo requests the following relief:

A.     That Plaintiff be granted general and compensatory damages in an amount to be

determined at trial;

B.     That Plaintiff be granted punitive or liquidated damages in an amount to be

determined at trial;

C.     That the Court grant to Plaintiff her reasonably incurred attorneys' fees, costs,

litigation expenses, and pre-judgment interest; and

D.     That the Court grant such other and further relief as the Court may deem just or

equitable.

## COUNT II
## RETALIATION IN VIOLATION OF USERRA,
## TITLE VII, THE REHAB ACT, AND THE ADA

128.     Plaintiff realleges and incorporates the foregoing paragraphs 1 through 127 of this

Second Amended Complaint as though fully set forth at this place.

129.     Plaintiff met her employer's legitimate employment expectations.

130.    Plaintiff engaged in protected activity when she reported the harassment and violations of USERRA, and the ADA to the Defendant on May 20, 2011 and August 21, 2011.

131.    On September 13, 2011, Plaintiff filed a Charge of Discrimination against Defendant with the EEOC.

132.    After engaging in said protected activity, Defendant has engaged in many acts of retaliatory actions which include, but are not limited to, conspiring among its Supervisors, Managers, Human Resources Representatives, and Upper Management to deprive plaintiff of rights, benefits and protections guaranteed to her under the law, continually refusing to provide Plaintiff with a reasonable accommodation in her working conditions although Plaintiff is a qualified employee, terminating Plaintiff although she was performing to her employer's legitimate expectations and could continue to perform her job, and otherwise harassing Plaintiff in various ways designed to deprive her of those rights, benefits, and protections to which she was entitled and to impede her ability to work for Defendant.

133.    There is a causal connection between Plaintiff's protected activity and Defendant's retaliatory actions.

134.    Similarly situated employees who did not engage in protected activity were treated more favorably than Plaintiff.

135.    Defendant's reason for Plaintiff's termination is false and merely pretext for illegal retaliation.

136.    Defendant's actions, as described above, are in violation of USERRA, the ADA and Title VII as the Defendant has engaged in acts of retaliation because of Plaintiff's engagement in protected activities.

19

137.   As a direct and proximate result of said unlawful employment practices and in disregard of the Plaintiff's rights and sensibilities, Plaintiff has suffered lost wages, the indignity of discrimination, which has manifested in emotional distress and further has negatively impacted her future ability to support herself, harmed her earning capacity, disrupted her personal life, and caused loss of enjoyment of the ordinary pleasures of life.

WHEREFORE, Plaintiff, LuzMaria Arroyo requests the following relief:

A.   That Plaintiff be granted general and compensatory damages in an amount to be determined at trial;

B.   That Plaintiff be granted punitive or liquidated damages in an amount to be determined at trial;

C.   That the Court grant to Plaintiff her reasonably incurred attorneys' fees, costs, litigation expenses, and pre-judgment interest; and

D.   That the Court grant such other and further relief as the Court may deem just or equitable.

## COUNT III
## FAILURE TO PROVIDE A REASONABLE ACCOMMODATION
## IN VIOLATION OF USERRA, THE ADA, AND THE REHAB ACT

138.   Plaintiff realleges and incorporates the foregoing paragraphs 1 through paragraph 137 of this Second Amended Complaint as though fully set forth at this place.

139.   Plaintiff is an active member of the United States Army Reserve and is disabled in that she is substantially limited in major life activity of brain function.

140.   Plaintiff is a qualified person with a disability in that Plaintiff can perform the essential functions of her job, or a job, with a reasonable accommodation.

141.    Defendant was able to provide a reasonable accommodation to Plaintiff in the form of actions such as allowing plaintiff sufficient time-off from work so that she could safely travel to and from and adequately perform for military duties, allowing her time to attend her PTSD therapy sessions, allowing Plaintiff to work overtime on a machine other than the forklift, and allowing Plaintiff time to put on her protective gear prior to starting her shift.

142.    Such reasonable accommodations would not cause an undue hardship on Defendant.

143.    Defendant refused to provide Plaintiff with these reasonable accommodations.

144.    Defendant failed to engage in the required interactive process to determine what it could do to provide Plaintiff with a reasonable accommodation.

145.    Defendant's actions, as described above, are in violation of USERRA, the ADA, and Rehabilitation Act, as Defendant did not offer Plaintiff, a qualified individual with a disability, an available reasonable accommodation.

146.    As a direct and proximate result of said unlawful employment practices and in disregard of the Plaintiff's rights and sensibilities, Plaintiff has suffered lost wages, the indignity of discrimination, which has manifested in emotional distress and further has negatively impacted her future ability to support herself, harmed her earning capacity, disrupted her personal life, and caused loss of enjoyment of the ordinary pleasures of life.

        WHEREFORE, Plaintiff, LuzMaria Arroyo requests the following relief:

        A.      That Plaintiff be granted general and compensatory damages in an amount to be determined at trial;

        B.      That Plaintiff be granted punitive or liquidated damages in an amount to be determined at trial;

C.      That the Court grant to Plaintiff her reasonably incurred attorneys' fees, costs,

litigation expenses, and pre-judgment interest; and

D.      That the Court grant such other and further relief as the Court may deem just or

equitable.

Respectfully submitted,

S/ John P. DeRose_____
John P. DeRose
One of Plaintiff's Lawyers

John P. DeRose & Associates
15 Spinning Wheel Road
Suite 428
Hinsdale, Illinois  60521
(630) 920-1111 Office
(630) 920-1170 Fax
john@johnderoselaw.com