**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **LUZMARIA ARROYO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 1:12-CV-06859** |
| | ) | |
| **VOLVO GROUP NORTH AMERICA,** | ) | |
| **LLC, d/b/a VOLVO PARTS NORTH** | ) | |
| **AMERICA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Local Rule 56.1(a)(3) and Rule 56 of the Federal Rules of Civil Procedure, Defendant Volvo Group North America, LLC d/b/a Volvo Parts North America ("Volvo" or the "Defendant") hereby submits its Statement of Undisputed Material Facts in connection with Defendant's Motion for Summary Judgment.

**A.     The Parties, Venue, and Jurisdiction**

1.     Plaintiff LuzMaria Arroyo ("Arroyo") was employed as a material handler for Volvo at its Chicago Parts Distribution Center (the "Distribution Center") in Joliet, Illinois from June 13, 2005 until the time of her termination effective November 8, 2011.  (Third Am. Compl. ¶¶ 4, 11, 13, 111)

2.     Volvo is organized and existing under the laws of Delaware, and is authorized to and conducts business within Illinois. (Third Am. Compl. ¶ 5; Answer to Third Am. Compl. ¶ 5)

3.     Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1367 based on Plaintiff's claims under the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. § 4301 *et seq.* ("USERRA"), the Americans with

2807601.2

Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), and the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.* ("Rehab Act"). Plaintiff's common law intentional infliction of emotional distress claim arises out of the same case or controversy as her USERRA and ADA claims. (Third Am. Compl. ¶¶ 2, 117-127, 128-137, 138-146, 147-212) Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Arroyo's claims occurred in this District. (Third Am. Compl. ¶ 3)

**B.    Arroyo's Employment and Military History**

4.    In Arroyo's employment application, she stated she was a member of the U.S. Army Reserve, and Volvo hired her as a material handler on June 13, 2005 with that knowledge. (Third Am. Compl. ¶¶ 12, 13; Arroyo Dep. at 64-65, Ex. 10, July 15, 2013, attached as Exhibit A; Schroeder Aff. ¶ 2, attached as Exhibit D)    Arroyo interviewed with Keith Schroeder ("Schroeder"), Director of Distribution, and Material Handling Supervisors Michael Temko ("Temko") and Patrick Dunn ("Dunn"). (Arroyo Dep. at 63)

5.    As a material handler, Arroyo was responsible for retrieving ordered vehicle parts with a forklift, and then packing those items to ship to the customer on a timely basis. (Arroyo Dep. at 13-18, Exs. 2, 3; Schroeder Aff. ¶ 2)    As of January 2009, Arroyo worked the second shift - from 4:30 p.m. to 12:30 a.m. (Arroyo Dep. at 83-85; Schroeder Aff. ¶ 5)

6.    Throughout her employment, Volvo consistently granted Arroyo leave for military activities, including military drills, training and Yellow Ribbon events, as well as for two extended periods of deployment: April 17, 2006 to May 7, 2007, and April 15, 2009 to August 15, 2010. In sum, Arroyo received over 900 days of military leave during six and a half years of employment at Volvo. (Third Am. Compl. ¶¶ 15, 16, 33, 39; Schroeder Aff. ¶ 3, Ex. 1)

7.     Arroyo returned from her latest deployment to Iraq in April 2010.  After using accrued military vacation time, she was released from active duty on August 15, 2010.  Arroyo then took some additional time off before returning to work on September 27, 2010.  (Third Am. Compl. ¶¶ 37-39; Arroyo Dep. at 86-88)

8.     Upon her return, Volvo offered Arroyo a Voluntary Severance Package which Volvo had previously offered to other material handlers while Arroyo was on leave in 2009. Arroyo declined the offer. (Third Am. Compl. ¶¶ 43-44; Answer to Third Am. Compl.¶¶ 43-44; Schroeder Aff. ¶ 4)

9.     Within a month of returning to work, Arroyo nominated Schroeder for a Patriotic Employer Award through the Employer Support of the Guard and Reserve ("ESGR").  (Arroyo Dep. at 65-69, Ex. 11 at Bates 2563)  Arroyo and ESGR Ombudsman Colonel Tom Gorski presented the award to Schroeder at the Distribution Center in October 2010.  Arroyo even arranged for the public affairs officer from her unit to photograph the event. (Arroyo Dep. at 69-72)  Arroyo had previously nominated Temko and Dunn for a Patriotic Employer Award after returning from an earlier deployment. (Arroyo Dep. Ex. 11 at Bates 2562; Temko Dep. at 108-09, July 17, 2013, attached as Exhibit B)

10.     Arroyo continued to take leave for various military without problem, including for weekend drills.  In response to Arroyo's request, Volvo provided a modified work schedule to allow her to arrive to her shift two hours early and leave two hours early on Fridays prior to a weekend drill. (Arroyo Dep. at 114-22; Schroeder Aff ¶ 5)

11.     However, although Arroyo initially agreed to a modified work schedule, she later claimed that the arrangement was unsatisfactory because it did not give her enough time to get ready to drill. Through a mediation conducted by Colonel Tom Gorski of ESGR throughout

2807601.2

March and April 2011, Volvo again accommodated Arroyo's request by changing her Friday schedule to 4:30 to 7:00 and allowed Arroyo to take 5.5 hours of excused military leave. (Third Am. Compl. ¶ 68; Arroyo Dep. at 122-25, 131-33, Ex. 15; Schroeder Aff. ¶ 5, Ex. 3)

12.  Through the mediation, Volvo also resolved issues concerning Arroyo's health insurance coverage upon her return to work, catch-up 401(k) contributions, and paid military leave for Yellow Ribbon events. (Third Am. Compl. ¶ 68; Arroyo Dep. at Ex. 15; Schroeder Aff. ¶ 5, Ex. 3)

13.  Arroyo received no occurrences under the Local Attendance Policy for days on which she took military leave. (Arroyo Dep. at 58-59; Schroeder Aff. ¶ 40)

## C.  Volvo's Discipline of Arroyo Under the Local Attendance Policy

14.  All material handlers at the Distribution Center are subject to the Local Attendance Policy. Pursuant to the uniform policy, employees receive occurrences - either whole or fractional - for inexcusable absences or tardiness. For each occurrence, Volvo looks back both four weeks and six months from the date of the most recent occurrence to see if an employee has accrued enough occurrences to warrant a step in the progressive disciplinary process. Corrective action will be taken if an employee has two occurrences within a four week period or five occurrences within a six month period, calculated on a rolling fiscal year. The disciplinary steps under the Attendance Policy are: Verbal Warning, Formal Written Warning, Three-Day Suspension, and Termination. (Schroeder Aff. ¶ 6, Ex. 4)

15.  Depending on how near an employee's occurrences are to one another, an employee may receive more than one disciplinary step at the same time, as the same occurrence can count for purposes of multiple disciplinary steps, given the look-back periods discussed

above. (SOF 14)   If an employee has a six-month period with no occurrences, the employee's disciplinary "level" is reduced by one step. (Schroeder Aff. ¶ 7)

16.     The Attendance Policy has undergone periodic revision. In January 2008, the unwritten grace period that allowed employees to punch in up to two minutes after the beginning of their shifts was eliminated due to employee abuse. In January 2009, absences other than ETO/vacation weeks and scheduled holidays no longer counted towards the rolling time period. (Schroeder Aff. ¶ 8)

17.     Arroyo was aware of the attendance policy changes, as she was present for and signed for receipt of an "Employee Infosession" in January 2009 concerning policy changes. (Arroyo Dep. at 23-25, Exs. 4, 5; Schroeder Aff. ¶ 8, Exs. 5, 6)

18.     The Attendance Policy is administered jointly by Temko and Schroeder.  Temko is responsible for documenting any occurrences for each employee on an Excel spreadsheet after reviewing the time punch records.  Temko and Schroeder are then responsible for administering disciplinary steps under the Policy.  (Schroeder Aff. ¶ 9, Ex. 7)

19.     Arroyo has been subject to the Local Attendance Policy since the beginning of her employment with Volvo.  In each of her years of employment since 2005, Arroyo has received some occurrences under the Attendance Policy, though never as a result of her military service. (Schroeder Aff. ¶¶ 10, 40, Ex. 8; Arroyo Dep. at 58-59)

20.     In 2009, Arroyo received a Verbal Warning for earning two occurrences as a result of two no call, no shows within a four week period from October 13, 2008 to October 24, 2008. (Schroder Aff. ¶ 11, Ex. 7 at Bates 3589-3590, Ex. 8 at Bates 2785, Ex. 9)

21.     On October 1, 2010, Arroyo punched in 22 minutes after the beginning of her shift and earned a one-half (0.5) occurrence under the Attendance Policy.  (Arroyo Dep. at 298-

99, Ex. 6 at Bates 2783, Ex. 35 at Bates 3761; Schroeder Aff. ¶ 12, Ex. 8 at Bates 2783, Ex. 10 at Bates 3840)

22.     On October 11, 2010, Arroyo punched in 20 minutes after the beginning of her shift and earned a one-half (0.5) occurrence under the Attendance Policy. (Arroyo Dep. at 299-300, Ex. 6 at Bates 2783, Ex. 35 at Bates 3763; Schroeder Aff. ¶ 13, Ex. 8 at Bates 2783, Ex. 10 at Bates 3842)

23.     On October 19, 2010, Arroyo called-in absent for work and earned one (1) occurrence under the Attendance Policy.  (Arroyo Dep. at 101, Ex. 6 at Bates 2783, Ex. 35 at Bates 3764; Schroeder Aff. ¶ 14, Ex. 8 at Bates 2783, Ex. 10 at Bates 3843)

24.     To follow up on Arroyo's October 19, 2010 absence, Schroeder met with Arroyo and told her the absence would be excused if she provided a doctor's note.  Arroyo explained that she had an upcoming health assessment on October 25, 2010 and could ask her doctor for a note excusing the October 19th absence then. Arroyo later claimed she forgot to ask for a note during her October 25th appointment, and ultimately never provided such a note.  (Arroyo Dep. at 101-10; Schroeder Aff. ¶ 15)

25.     On October 29, 2010 Schroeder presented Arroyo with a Corrective Action Plan ("CAP") in the form of a verbal warning - the first step in the progressive disciplinary process under the Attendance Policy - for the two occurrences she earned within a one-month period from October 1, 2010 to October 19, 2010.  (Arroyo Dep. at 98-100, Ex. 13; Schroeder Aff. ¶ 16, Ex. 7 at Bates 3677-3678)

26.     On October 29, 2010, Arroyo punched in one minute after the beginning of her shift. Under the uniform Attendance Policy, a late punch of one hour or less results in a one-half (0.5) occurrence. Because Arroyo - again - had two occurrences within a one-month period, she

2807601.2

received a written warning, which is the second step in the progressive disciplinary process. (Arroyo Dep. at 41-46, 96-97, Ex. 6 at Bates 2783, Ex. 35 at Bates 3765; Schroeder Aff. ¶ 17, Ex. 8 at Bates 2783, Ex. 10 at Bates 3844)

27. Arroyo challenged this occurrence and any disciplinary action stemming from October 29, 2010, contending that she was unaware of the change to the Attendance Policy that eliminated the previous unwritten rule of the two-minute grace period. Although Schroeder verified that Arroyo was present for the January 2009 "Employee Infosession" mentioned above (SOF 16, 17), Schroeder nonetheless made an exception to the Attendance Policy and did not give Arroyo an occurrence or the second step in progressive discipline under the Attendance Policy based on her October 29, 2010 tardiness. (Arroyo Dep. at 96-100, Exs. 4-5, Schroder Aff. ¶¶ 8, 18, Exs. 5, 6)

28. On November 4, 2010, Arroyo received copies of various local policies, including the Attendance Policy. (Arroyo Dep. at 40-42, Exs. 8-9; Schroeder Aff. ¶ 19, Ex. 11)

29. On November 23, 2010, Arroyo punched in two minutes after the beginning of her shift and earned a one-half (0.5) occurrence under the uniform Attendance Policy. (Arroyo Dep. at 300-03, Ex. 6 at Bates 2783, Ex. 35 at Bates 3772; Schroeder Aff. ¶ 20, Ex. 8 at Bates 2783, Ex. 10 at Bates 3851)

30. On April 14, 2011, Arroyo punched in ten minutes after the beginning of her shift and earned a one-half (0.5) occurrence under the Attendance Policy. (Arroyo Dep. at 304, Ex. 6 at Bates 2781, Ex. 35 at Bates 3795; Schroeder Aff. ¶ 21, Ex. 8 at Bates 2781, Ex. 10 at Bates 3875)

31. On May 10, 2011, Arroyo punched in one minute after the beginning of her shift and earned a one-half (0.5) occurrence under the Attendance Policy. (Arroyo Dep. at 307, Ex. 6

at Bates 2781, Ex. 35 at Bates 3800; Schroeder Aff. ¶ 22, Ex. 8 at Bates 2781, Ex. 10 at Bates 3880)

32.    On May 12, 2011, Arroyo punched in one minute after the beginning of her shift and earned a one-half (0.5) occurrence under the Attendance Policy. (Arroyo Dep. at 307, Ex. 6 at Bates 2781, Ex. 35 at Bates 3800; Schroeder Aff. ¶ 23, Ex. 8 at Bates 2781 and Ex. 10 at Bates 3880)

33.    On May 27, 2011, Arroyo punched in five minutes after the beginning of her shift and earned a one-half (0.5) occurrence under the Attendance Policy. (Arroyo Dep. at 308, Ex. 6 at Bates 2781, Ex. 35 at Bates 3802; Schroeder Aff. ¶ 24, Ex. 8 at Bates 2781, Ex. 10 at Bates 3882)

34.    On July 29, 2011, Arroyo punched in one minute after the beginning of her shift and earned a one-half (0.5) occurrence under the Attendance Policy (Arroyo Dep. at 308-09, Ex. 6 at Bates 2781, Ex. 35 at Bates 3811; Schroeder Aff. ¶ 25, Ex. 8 at Bates 2781, Ex. 10 at Bates 3891.

35.    On August 19, 2011, Arroyo punched in five minutes after the beginning of her shift and earned a one-half (0.5) occurrence under the Attendance Policy (Arroyo Dep. at 309-10, Ex. 6 at Bates 2781, Ex. 35 at Bates 3815; Schroeder Aff. ¶ 26, Ex. 8 at Bates 2781, Ex. 10 at Bates 3895)

36.    On August 20, 2011, Arroyo punched in one minute after the beginning of her shift and received a one-half (0.5) occurrence under the Attendance Policy (Arroyo Dep. at 310, Ex. 6 at Bates 2781, Ex. 35 at Bates 3815; Schroeder Aff. ¶ 27, Ex. 8 at Bates 2781, Ex. 10 at Bates 3895)

37.     On August 31, 2011, pursuant to the uniform Attendance Policy, Schroeder presented Arroyo with CAPs in the form of a formal written warning and three-day suspension - the second and third steps in the progressive disciplinary process under the Attendance Policy - for earning five occurrences within the six month period from October 19, 2010 to <u>August 19, 2011</u>, and for earning five occurrences within the six month period from October 19, 2010 to <u>August 20, 2011</u>, respectively.   Per the revision in 2009 to the rolling period under the Attendance Policy, the time that Arroyo was out on A&S, FMLA, and Military Leave was excluded in measuring the six month periods for these CAPs.  (Arroyo Dep. 293-94, Ex. 34 at Bates 7, 5; Schroeder Aff. ¶ 28, Ex. 12)

38.     On September 6, 2011, Temko emailed Schroeder to tell him that, in the course of Temko's audit of the time records in connection with the written warning and three-day suspension CAPs, he changed Arroyo's attendance record on her Excel sheet to reflect an excused absence for December 23, 2010.  Accordingly, Volvo removed Arroyo's occurrence for that day.   However, Temko explained that the adjustment only impacted the dates of the occurrences making up Arroyo's formal written warning (which, after the adjustment, ran from October 11, 2010 to August 19, 2011 instead of October 19, 2010 to August 19, 2011).  Since Arroyo still had five occurrences within a six-month period, the written warning CAP stood. (Schroeder Aff. ¶ 29, Ex. 13)

39.     On October 10, 2011, Arroyo punched in one minute after the beginning of her shift and earned a one-half (0.5) occurrence under the Attendance Policy. (Arroyo Dep. at 310, Ex. 6 at Bates 2781, Ex. 35 at Bates 3824; Schroeder Aff. ¶ 30, Ex. 8 at Bates 2781, Ex. 10 at Bates 3904)

40.     When Volvo provided Arroyo an accommodation of an office to use as a meditation room prior to the beginning of her shift and during breaks (discussed further below), Arroyo initially parked in the employee lot in the front of the Distribution Center and walked through the warehouse to the office, which was located in the rear of the Distribution Center. However, Arroyo started to park in the rear of the Distribution Center immediately adjacent to the dock area after she received a memo from Schroeder on October 18, 2011 reminding her of Volvo's safety shoe policy and how she would need to wear safety shoes when walking through the facility.   (Arroyo Dep. at 257-63; Ex. 29; Schroeder Aff. ¶¶ 31, 32, Exs. 14, 15, 16)

41.     Rather than put on her safety shoes and walk through the warehouse, Arroyo punched in early in the front of the Distribution Center, exited the building, and then drove her car to park in the rear of the Distribution Center to use the meditation room prior to the beginning of her shift.  Arroyo then waited until the shift start bell rang before she exited the warehouse, got back in her car, drove it around the building to park it in the front employee lot, and then reentered the warehouse. (Schroeder Aff. ¶ 33)

42.     In taking this extra time after the shift start bell, Arroyo was in violation of the Attendance Policy, which required all employees to be "in the building and ready to work at the scheduled start time and continue to work until the scheduled hours of work are completed." (Schroeder Aff. ¶ 33, Ex. 4 at Bates 2324)

43.     Arroyo testified in her deposition that it "never entered [her] mind" to leave the meditation room five minutes earlier, but admitted that there was no one preventing her from leaving the room earlier. (Arroyo Dep. at 270-71)

44.     After Arroyo started her shift late on October 31, 2011, Schroeder met with Arroyo on November 1, 2011 to discuss her failure to begin working at the start time of her shift

and her use of the meditation room. During that meeting Schroeder presented a memo to Arroyo, explaining that the use of the meditation room does not negate her needing to be prepared to begin work when the bell rings. Schroeder also explained that Arroyo must access the meditation room by walking inside the warehouse, because parking in the rear of the Distribution Center posed safety concerns. (Arroyo Dep. at 264-69, Ex. 30; Schroeder Aff. ¶ 34, Exs. 17, 18)

45.     Schroeder had previously sent emails on October 24, 2011 and October 28, 2011 to the Material Handler Supervisors reminding them that employees should only park in the employee lot and not in the rear of the Distribution Center next to the dock area. On November 2, 2011, Schroeder posted a reminder notice for all employees. (Schroeder Aff. ¶ 35, Exs. 19, 20, 21)

46.     Despite Schroeder's instructions, Arroyo was observed by management starting her shift late again on November 2, 2011. Accordingly, Schroeder presented Arroyo with a CAP in the form of a Verbal Warning dated November 3, 2011 for this incident. The CAP also provided that Arroyo would be charged a one-half (0.5) occurrence for violation of the start rule under the Attendance Policy. Arroyo did not read the CAP, refused to sign the CAP, and refused to speak to the company without her attorney present. (Arroyo Dep. at 276-83, Ex. 32; Schroeder Aff. ¶ 36, Ex. 8 at 2781, Ex. 22)

47.     Unfortunately, Arroyo was again observed by management starting her shift late again on November 4, 2011. Accordingly, on November 4, 2011 Schroeder presented Arroyo with a CAP in the form of a Formal Written Warning this incident. The CAP also provided that Arroyo would be charged a one-half occurrence (0.5) for violation of the start rule under the

Local Attendance Policy. (Arroyo Dep. at 284, Ex. 32; Schroeder Aff. ¶ 37, Ex. 8 at 2782, Ex. 23)

48.    After preparing the November 4, 2011 CAP, Temko and Schroeder audited Arroyo's attendance records and determined that she had incurred five occurrences within a six month period from April 14, 2011 to November 4, 2011. Because she had reached the fourth step in the progressive disciplinary process, Arroyo was terminated from her employment at Volvo for violation of the Attendance Policy. (Schroeder Aff. ¶ 38, Ex. 24)

**D.    Arroyo's PTSD Diagnosis and Requests for Accommodations**

49.    Arroyo was treated for service-related post-traumatic stress disorder ("PTSD") in December 2010 and formally diagnosed in January 2011. (Arroyo Dep. at 159)

50.    Arroyo went to the Adventist LaGrange Memorial Hospital on December 23, 2010. She eventually provided a note and discharge paperwork excusing her from work for the period of December 23, 2010 through December 30, 2010 in connection with this visit. (Third Am. Compl. ¶¶ 62-63; Answer to Third Am. Compl. ¶¶ 62-63)

51.    Arroyo was subsequently approved for and took concurrent FMLA and short-term disability ("STD") leave from December 23, 2010 to March 22, 2011. (Arroyo Dep. at 140; Schroeder Aff. ¶ 42) Arroyo returned to work from FMLA/STD leave on March 23, 2011. (Third Am. Compl. ¶ 70)

52.    In April 2011, Arroyo filled out an indirect report (a document that material handlers use to document any time not spent picking or packing orders) and indicated that she "zoned out" for an unknown period of time during her shift. Arroyo provided these reports on a daily basis to Dunn—her direct supervisor at the time. Based on this comment, Volvo had safety concerns for Arroyo and her co-workers, given that much a material handler's job entails picking

items with a forklift up to 20 feet off the ground. (Arroyo Dep. at 151-52, Ex. 18; Schroeder Aff. ¶¶ 42, 43)

53.    Accordingly, and at Volvo's request, Arroyo presented to John J. Koehler, M.D., ("Dr. Koehler") for an independent medical exam ("IME") on April 14, 2011. Based on his evaluation of Arroyo, Dr. Koehler recommended that Arroyo be removed from all safety sensitive work, including operation of a forklift. Based on that recommendation, Volvo removed Arroyo from forklift duties. (Arroyo Dep. at 153-56, Ex. 19; Schroeder Aff. ¶ 43, Ex. 25)

54.    Volvo, through Regina Williams (Human Resources Business Partner), allowed Arroyo to use partial ETO days (in two hour increments) to leave her shift early on Tuesday nights to attend her first set of VA therapy appointments on Wednesday mornings from 9:00 to 11:00 a.m. that ran from April through July. (Third Am. Compl. ¶¶ 73-75; Arroyo Dep. at 169-70; Williams Aff. ¶ 4, Ex. 1)

55.    On May 19, 2011, Arroyo attempted to sign up to work overtime for that upcoming Saturday, May 21, 2011. Dunn, Schroeder, and Williams responded and explained that Arroyo was not eligible to work overtime on Saturdays due to her then-existing restrictions from Dr. Koehler, as the Saturday work involved use of a forklift. In response, Arroyo complained - for the first time - via email to Williams on May 20, 2011 that she felt discriminated against under the ADA. (Third Am. Compl. ¶¶ 76-77; Arroyo Dep. at 159-60; Schroeder Aff. ¶ 44, Ex. 26; Williams Aff. ¶ 5, Ex. 2)

56.    Arroyo arrived at the warehouse on Saturday, May 21, 2011, even though she was not scheduled to work, and observed employees packing boxes and strapping containers. Arroyo stayed there "[m]aybe ten minutes max" and testified in her deposition that she does not know how long employees perform packing duties on Saturdays. (Arroyo Dep. at 160-61) Arroyo

2807601.2

sent a follow-up email to Williams on May 21, 2011 describing her observations and reiterating her perception that she was being discriminated against under the ADA. (Williams Aff. ¶ 5, Ex. 2)

57.     Arroyo took military leave from May 31, 2011 through July 8, 2011. (Third Am. Compl. ¶¶ 82-83; Schroeder Aff. ¶ 45)

58.     Arroyo returned to work on July 11, 2011. (Third Am. Compl. ¶ 86)  Shortly after her return to work, Arroyo again presented to Dr. Koehler on or about July, 21 2011 for a follow-up evaluation.  Contingent upon receipt of a letter from Arroyo's counselor, Dr. Koehler released Arroyo back to full-duty without restrictions.  (Arroyo Dep. at 162-67, Ex. 20; Schroeder Aff. ¶ 45, Ex. 27)

59.     After Dr. Koehler released her to full-duty, Arroyo periodically worked overtime, including weekend overtime.  Even while she was on work restrictions, Arroyo worked weekday overtime.  (Arroyo Dep. at 167)

60.     Arroyo's second set of therapy appointments were on Tuesday evenings from 4:00 to 5:30 p.m. and ran from July 19, 2011 through October 11, 2011.  Due to rush hour traffic, Arroyo told Schroeder that she would not be at work before 6:30 p.m. on those days.  Although Arroyo punched in after 6:30 p.m. on 11 of those Tuesdays, she did not earn any occurrences under the Attendance Policy with respect to those dates. (Schroeder Aff. ¶ 40, Ex. 10 at Bates 3890 (7/19 – 6:34 p.m.), 3891 (7/26 – 6:55 p.m.), 3892 (8/2 – 6:57 p.m.), 3893 (8/9 – 7:02 p.m.), 3895 (8/16 – 7:03 p.m.), 3898 (8/30 – 7:08 p.m.), 3899 (9/6 – 6:34 p.m.), 3900 (9/13 – 7:44 p.m.), 3901 (9/20 – 7:55 p.m.), 3903 (10/4 – 8:11 p.m.), 3904 (10/11 – 6:47 p.m.).

61.     According to Arroyo, on or about Tuesday, August 23, 2011, her co-worker, Brian Accidentale, informed her that another co-worker (who at the time Arroyo believed to be

Tracey Adams, but subsequently learned was actually someone else) had called the police on Saturday, August 20, 2011 because Arroyo had parked her motorcycle in a handicap spot at the Distribution Center. Arroyo met with Dunn that same day to complain. (Arroyo Dep. at 177-83)

62.     Dunn informed Schroeder that Arroyo had commented that Adams is "the enemy" and "her target" and that Arroyo could have gone to Adams and punched her in the face or cursed her out. (Schroeder Aff. ¶ 46) Arroyo denies saying that she wanted to do anything violent to Adams (Arroyo Dep. at 182)

63.     Schroeder and Dunn met with Arroyo on August 24, 2011 and informed her that Volvo would not be addressing any rumors related to the motorcycle parking incident and reminded her that threats against a colleague are against company policy and she would be subject to termination if her behavior continued.  (Arroyo Dep. at 183; Schroeder Aff. ¶ 46) Schroeder then spoke with Williams regarding the situation the next day, August 25, 2011, and Arroyo was provided copies of the Workplace Violence and Harassment policies.  (Arroyo Dep. at 182; Schroeder Aff. ¶ 46, Ex. 28; Williams Aff. ¶ 6, Exs. 3, 4, 5, attached as Exhibit E)

64.     In response, Arroyo sent Schroder an email, with a copy to Williams, on August 26, 2011.  In her email, Arroyo provided a link to the Department of Labor's ("DOL") "America's Heroes at Work" website that addresses challenges facing Service Members returning to work with PTSD.  Arroyo further requested numerous accommodations. Specifically, Arroyo demanded the presence of Human Resources via phone and either Dunn or Maureen Somersett (Schroeder's administrative assistant) during all discussions with Schroeder; disability awareness training for Schroeder, the Material Handler Supervisors, and her co-workers; and a quiet space to meditate/utilize relaxation techniques during breaks and prior to

2807601.2

work. (Arroyo Dep. at 184-86, Ex. 21 at Bates 0989-0990; Schroeder Aff. ¶ 47, Ex. 29 at Bates 0989-0990; Williams Aff. ¶ 7, Ex. 6 at Bates 0989-0990)

65.     Schroeder responded by email on September 1, 2011, with a copy to Williams, and granted Arroyo's request for a quiet space to meditate/utilize relaxation techniques prior to the beginning of her shift and during breaks.  Schroeder explained that Volvo was providing Arroyo with a private space in the warehouse operations office. (Arroyo Dep. at 186, Ex. 21 at Bates 0989; Schroeder Aff. ¶ 47, Ex. 29 at Bates 0989; Williams Aff. ¶ 8, Ex. 6 at 0989)

66.     Later that same day (September 1, 2011) Arroyo emailed Williams with several additional accommodation requests: (1) a flexible work schedule to allow her to "make up time" in case of tardiness; (2) the ability to use noise dampening devices (such as earplugs or headphones); (3) the ability to listen to audio relaxation devices; (4) a place to meditate or relax (which Arroyo noted had already been provided); (5) a mentor (whom Arroyo identified as Patrick Dunn, someone she felt comfortable approaching); (6) to allow time off for counseling (which Arroyo noted had already been provided); (7) to provide day-to-day guidance and feedback; (8) the ability to use the company's wellness program (which Arroyo noted had already been provided); (9) the ability to take breaks during panic/anxiety attacks; (10) disability awareness training (as noted previously); (11) all communications given to Arroyo in writing; and (12) the ability to call a support person during panic/anxiety attacks.  (Arroyo Dep. Ex. 21 at Bates 0988-0989; Williams Aff. ¶ 9, Ex. 7 at Bates 0913)

67.     In making her requests, Arroyo relied upon on a document prepared by the DOL which identified certain potential accommodations for employees with PTSD. Williams responded on September 1, 2011 that Arroyo's requests had been received and that Volvo would

be back in touch to discuss her requests after it reviewed them. (Arroyo Dep. at 188-91, Exs. 22, 23 at Bates 0911-0912; Williams Aff. ¶ 9, Ex. 7 at Bates 0911-0912)

68.     In the meantime, on September 3, 2011, Arroyo sent an email to Dennis Sholl, Director – Central, West, and Mexico Regions for AB Volvo, requesting an investigation of Schroeder's conduct that she contended amounted to disability-based harassment.  (Sholl Dep. at 144, July 24, 2013, Ex. 189 at Bates 0000202-203, attached as Exhibit C)  Sholl responded by email memorandum on September 13, 2013, explaining that Williams would be in touch with her to begin the harassment investigation.  (Sholl Dep. at 157-59, Ex. 194)

69.     Arroyo filed a charge of discrimination with the EEOC (Charge No. 440-2011-05756) on September 13, 2011, alleging discrimination and retaliation under the ADA.  (Third Am. Compl. ¶ 96; Schroeder Aff. ¶ 48, Ex. 30)

70.     After Williams and Arroyo discussed Arroyo's accommodation requests, Williams sent Arroyo a memo on September 16, 2011, explaining that Volvo had granted several of Arroyo's requested accommodations and that other accommodations were still under review. Specifically, Volvo granted Arroyo's requests for a place to meditate, a mentor, time off for counseling, access to the company's wellness program, breaks during panic/anxiety attacks, and the ability to call a support person during panic/anxiety attacks.  Requests still under review included a flexible schedule to allow make up time in case of tardiness, the ability to use earplugs or headphones in both ears (one ear was allowed), the ability to listen to audio relaxation devices in both ears (one ear was allowed), day-to-day guidance and feedback, disability awareness training, and the request for all communications to be in writing.  (Arroyo Dep. at 191-96, Ex. 23 at Bates 0911, Ex. 24; Williams Aff. ¶ 10, Ex. 7 at Bates 0911, Ex. 8)

71.     On September 21, 2011, Williams sent a follow-up email to Arroyo stating which breaks would be paid and unpaid. (Arroyo Dep. at 206, Ex. 26 at Bates 0770; Williams Aff. ¶12, Ex. 10)

72.     On September 19, 2011, Williams notified Arroyo via email that she had been assigned to investigate Arroyo's harassment complaint and that she would be at the Distribution Center on September 20, 2011 and would like to meet with Arroyo to begin the investigation. On September 20, 2011, Arroyo replied back and stated that it was in her "best interest to obtain legal counsel before proceeding any further with the company." (Arroyo Dep. at 198-213, Ex. 25 at Bates 0776, 0774; Williams Aff. ¶ 13, Ex. 11 at Bates 0776, 0074)

73.     Williams responded by email later that day on September 20, 2011 and explained that she had traveled from Atlanta to Chicago to conduct the investigation for three days.  She asked Arroyo to let her know once she obtained legal counsel and was prepared to meet. (Arroyo Dep. Ex. 25 at 0773; Williams Aff. ¶ 14, Ex. 11 at Bates 0773)  Arroyo replied that she would be willing to answer questions by email in the interim.  (Arroyo Dep. Ex. 25 at 0772; Williams Aff. ¶ 14, Ex. 11 at Bates 0772-0773)  Williams emailed Arroyo on September 21, 2011 some questions "to understand more specifics about your concerns so that I can begin the investigation." Williams also reminded Arroyo of the anti-retaliation provisions of Volvo's Harassment Policy. (Arroyo Dep. Ex. 25 at 0772; Williams Aff. ¶ 14, Ex. 11 at Bates 0772)  In response, Arroyo refused to answer any questions and claimed that she had been "advised to refrain from answering any questions until after her my lawyer has been given the opportunity to review my case and advise me of my rights." (Arroyo Dep. Ex. 25 at 0771; Williams Aff. ¶ 14, Ex. 11 at Bates 0771)

74.     On September 20, 2011 and September 21, 2011, Arroyo reported to work with headphones on both ears.  Due to safety concerns of potentially not being able to hear forklift activity, and consistent with Volvo's Local Music, Radio I-Pod MP3 Policy, Dunn asked Arroyo to remove one of her headphones.  When Arroyo refused, she was sent home from work. (Arroyo Dep. at 214-15; Williams Aff. ¶ 15, Ex. 12)

75.     Thereafter, Williams engaged in email dialogue with Arroyo regarding her request to wear ear plugs or noise dampening devices in both ears and a flexible work schedule to allow make up time in case of tardiness.  (Arroyo Dep. at 215-40, Ex. 27; Williams Aff. ¶ 16, Ex. 13) On September 22, 2011, Williams explained that Volvo had safety concerns about Arroyo wearing ear plugs in both of her ears and that Volvo needed additional medical information as to whether tardiness and the need for a flexible work schedule was related to Arroyo's condition. Williams requested that Arroyo obtain an IME with Dr. Koehler with respect to her dual ear plug request and provide documentation from her own psychiatrist concerning her request for a flexible work schedule. Williams explained that Arroyo would receive paid time off from work until this medical documentation could be obtained. (Arroyo Dep. Ex. 27 at Bates 0704; Williams Aff. ¶ 16, Ex. 13 at Bates 0703-0704)

76.     Arroyo sent Williams an email on September 26, 2011, demanding to return to work, to be provided the accommodations she requested, and to be protected from harassment from her coworkers and management.  In addition, Arroyo refused to provide any documentation from her psychiatrist and further refused to attend the IME with Dr. Koehler that Volvo had scheduled. (Arroyo Dep. Ex. 27 at Bates 0702; Williams Aff. ¶ 17, Ex. 13 at Bates 702)  Arroyo never underwent the IME relating to her dual ear plug request and never provided any

documentation concerning her request to make up time in the case of tardiness. (Williams Aff. ¶ 17)

76.      On September 27, 2011, Williams emailed Arroyo a memo addressing her three areas of concern.  First, Williams explained that she did not have enough information to proceed with a harassment investigation because Arroyo refused to answer the questions she provided.  Nonetheless, Williams attached a simplified form for Arroyo to fill out. Second, Williams explained that Volvo had not denied any of Arroyo's accommodation requests and sought to continue the interactive process in good faith, reiterating her requests for additional medical information.  Finally, Williams stated that Arroyo was allowed to return to work and use one ear plug/head phone in the interim.  (Arroyo Dep. Ex. 27 at Bates 0699-0700, 0708-0713; Williams Aff. ¶ 18, ex. 13 at Bates 0699, 0708-0713)

77.      Later that same day, Arroyo sent Williams an email asserting a claim for harassment against her because she requested the aforementioned IME and medical documentation from Arroyo's treating psychiatrist. (Arroyo Dep. at 241-43, Ex. 28 at Bates 1987; Williams Aff. ¶ 19, Ex. 14 at Bates 1987).

78.      Arroyo never completed either of the questionnaires that Williams provided regarding Arroyo's harassment allegations against Schroeder.  (Arroyo Dep. at 238-40; Williams Aff. ¶ 20)

79.      Arroyo returned to work without wearing any headphones. (Arroyo Dep. at 243)

80.      In October 2011, Arroyo requested time off for her third set of therapy appointments that were scheduled on Tuesdays from 4:00 to 5:30.  Williams emailed Arroyo and explained that Volvo would accommodate her request by allowing her to use ETO in four-hour

increments and once that time was exhausted she could attend the remainder of her therapy appointments using unpaid leave. (Arroyo Dep. at 285-91, Ex. 33; Williams Aff. ¶ 21, Ex. 15)

Respectfully submitted, this 30th day of April, 2014.

CONSTANGY, BROOKS & SMITH, LLP

By:    /s/William J. McMahon, IV
        Falon M. Wrigley, #6304333
        Susan Bassford Wilson, #6299054
        200 S. Wacker Dr., Suite 3100
        Chicago, Illinois 60606
        T: (312) 546-3010
        F: (314) 727-1978
        fwrigley@constangy.com
        swilson@constangy.com

        William J. McMahon IV, *pro hac vice*
        100 N. Cherry Street, Suite 300
        Winston-Salem, North Carolina 27101
        T: (336) 721-1001
        bmcmahon@constangy.com
        Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2014, I caused a copy of the foregoing to be served upon

Plaintiff via operation of the Court's electronic filing system to:

John P. DeRose
Caitlyn F. DeRose
John P. DeRose & Associates
15 Spinning Wheel Road, Suite 428
Hinsdale, Illinois 60521
john@johnderoselaw.com
caitlyn@johnderoselaw.com

Attorneys for Plaintiff

/s/William J. McMahon, IV____