# Exhibit A

# Excerpts and Exhibits of Deposition of Luzmaria Arroyo ("Arroyo Dep.")

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LUZMARIA ARROYO, )
)
Plaintiff, )
)
-vs.- ) No. 1:12-CV-06859
)
VOLVO GROUP NORTH )
AMERICA, LLC, d/b/a )
VOLVO PARTS NORTH )
AMERICA, )
)
Defendant. )

The deposition of LUZMARIA ARROYO, called by the Defendant for examination, taken pursuant to notice and pursuant to the Federal Rules of Civil Procedure for the United States District Courts pertaining to the taking of depositions, taken before Susan Imhoff, RPR, CSR in the State of Illinois, at 15 Spinning Wheel Road, Suite 428, Hinsdale, Illinois, commencing at 10:22 a.m. on the 15th day of July, 2013.

Page 10

the case.
I'm going to hand you what I am going to mark as Exhibit No. 1 to your deposition. I'm just going to have the court reporter put the sticker on it and then hand it to you.
(Deposition Exhibit No. 1 marked for identification.)
BY MR. McMAHON:
Q. Ms. Arroyo, I'm showing you what has been marked as Exhibit 1 to your deposition.
Do you recognize this document?
MR. DeROSE: Bill, while she's leafing through that, for the record, I understand there are 56 pictures on this. I want to give it to you. My client made these pictures over of the Joliet plant. I just wanted to give it to you. I just got it this morning.
MR. McMAHON: Yeah. Sure.
MR. DeROSE: And you have it.
MR. McMAHON: Sure. Thank you. Okay, okay.
THE WITNESS: This appears -- yes, I do recognize this.
BY MR. McMAHON:
Q. Okay. And what is that document I

Page 11

marked as Exhibit 1?
A. It appears to be my chronology of events.
Q. Okay. So I can understand this document -- one thing that we're going to go throughout today, if you notice the documents are kind of Bates stamped in the bottom left-hand corner.
A. Okay.
Q. I may refer to a Bates stamped number just for ease of reference to make sure we're on the same page in terms of what we're talking about.
A. Understood.
Q. Okay. And this was -- this document was produced by you in discovery, correct?
A. When I filed my complaint to the EEOC.
Q. Okay. And this particular document -- in terms of the fact of it being Bates stamped, this was actually given to us in discovery in connection with the lawsuit; is that correct?
A. I would assume so.
Q. Okay. These are your Bates labels? You used these with several zeroes before the number?

Page 12

A. Is -- I'm not -- I didn't add any Bates numbers, so I don't know.
Q. Okay. Could this have been added by your previous attorney?
A. I would guess.
Q. Okay. Okay. This document that was, I guess, submitted to the EEOC and OFCCP, this was submitted by an attorney of yours that you had representing you at the time; is that correct?
A. Yes.
Q. Okay. And you reviewed this document as well; is that right?
A. Yes.
Q. Okay. Is that your signature on page Bates number 1?
A. Yes.
Q. Okay. And I believe you've also initialed and dated each of the pages to this document; is that right?
A. That's correct.
MR. McMAHON: Okay. We're going to make reference to this document kind of throughout today with some particular questions I have. I don't have any questions

Page 13

specifically for you about it right now, but as we kind of move out today, I might make reference to this.
Okay. I want to show you what I'm marking as Exhibit 2 to your deposition.
(Deposition Exhibit No. 2 marked for identification.)
BY MR. McMAHON:
Q. Okay. Ms. Arroyo, looking at Exhibit 2, do you recognize this document?
A. Yes.
Q. Okay. And what are we looking at in Exhibit 2?
A. It states that it is the job description of Chicago PDC for Volvo, the job description for a warehouse material handler.
Q. Okay. And is that the job you held while you worked at Volvo?
A. I was a material handler, yes.
Q. Okay. For all of your years of employment there?
A. Yes.
Q. Okay. And in connection with being a material handler, kind of could you give a description of what you did on a typical day?

Page 14

A. It depended on the job that I was assigned to do.
Q. Okay.
A. The two main assignments that I had was picker or a packer. As a picker, I would use a forklift in order to retrieve items that customers had ordered, pack them into a container, and ship them to the customer.
As a packer, I would await orders that pickers would retrieve --
Q. Uh-huh.
A. -- and then give to me, and then I would pack them into smaller containers which can be handled with less than a -- 70 pounds, I believe, and can be handled by hands and didn't require the use of a forklift. I would package those and ship those to the customer.
Q. Okay. And what type of items are we talking about here in the facility that you were picking and packing?
A. Vehicle parts.
Q. Okay. So pretty heavy duty parts in some instances?
A. And what do you mean by heavy duty?
Q. Well, I guess what I mean is parts that

Page 15

weigh quite a bit?
A. No, not all of them.
Q. Okay. Some of them, though?
A. Oh, sure.
Q. Okay. In terms of using the forklift, how high up would you have to use the forklift to be able to retrieve certain parts?
A. I never measured the height. I would assume -- well, I've never measured the height, so I wouldn't know.
Q. That's all right. Okay. The job description mentions ability to work at heights up to 21 feet.
A. Okay.
Q. In terms of the highest shelf in the facility, does that sound approximately right to you?
A. I don't know measurements in feet, so I don't know.
Q. What do you know measurements in?
A. Meters.
Q. Okay. How many meters would you estimate?
A. 50 meters.
Q. 50 meters, okay.

Page 16

The third bullet of the role of the warehouse material handler, could you read that for me?
A. "Responsible for picking and completion of dealer orders in a timely manner."
Q. Okay. What does that mean to you?
A. It means that -- pick orders in a timely manner.
Q. Okay. Can you talk about kind of the flow of how orders came in and how, in turn, you would retrieve the parts and send the orders out?
How did that work?
A. I don't know.
Q. You don't know?
A. No.
Q. Okay.
A. I don't know how we received the orders.
Q. Okay. Was it important to be able to send an order out on a timely basis?
A. Of course.
Q. Okay. And why is that?
A. Well, a customer orders a part. A customer would like to receive their part.

Page 17

MR. McMAHON: Okay. Okay. I'm going to show you what I'm marking as Exhibit 3.
(Deposition Exhibit No. 3 marked for identification.)
BY MR. McMAHON:
Q. I'll give you a minute to look this over.
Okay. Ms. Arroyo, in terms of Exhibit 3, what are we looking at here in this document?
A. I'm not done looking, reading. Sorry.
Q. Oh, I'm sorry. Sure.
A. Okay. Okay. Go ahead. I'm sorry.
Q. In terms of what we're looking at in Exhibit 3, can you describe what this document is?
A. It appears to be a resume.
Q. Okay. This is your resume?
A. Yes.
Q. Correct? Okay. And you have a description here of your work while you worked at Mack trucks or Volvo; is that correct?
A. Yes.
Q. Okay. And specifically what you say here, there is a -- I guess the

Page 18

second-to-last -- well, maybe third-to-last sentence says, "Possess a strong sense of urgency to effectively complete multiple tasks and meet deadlines."
What did you mean by that statement?
A. Well, sense of urgency means that drive to work in an expeditious matter.
Q. Okay.
A. Effectively complete multiple tasks means being able to multitask. I don't know how else to say that. It's do multiple things at one time.
Q. Okay.
A. And meet deadlines.
Q. Okay.
A. A standard would be set in which I would meet that standard.
Q. Okay. What type of standard?
A. Whatever standard the company set.
Q. Okay. What deadlines were there in connection with the picking and packing tasks you were involved with as a material handler?
A. I don't know when I returned from my deployment.
Q. I'm not understanding that.

Page 19

What do you mean you don't know when you returned from your deployment?
A. From my understanding when I changed, the standards of measurements for the deadlines had changed, but I was not trained when I returned from my deployment on what those standards were. I had asked for training.
Q. Okay. And what specific type of training are you referencing?
A. Standards to meet the deadlines or the goals of the company.
Q. Okay.
A. I was asking for what were the goals of the company.
Q. Okay.
A. What did I have to do as an employee.
Q. Okay. Did you receive training on a procedure in kind of a system that Volvo had implemented called LMS Lite?
A. Not until August 2011, which was nearly a year after I returned.
Q. Okay. Were you -- are you familiar with what's called an indirect report or an indirect sheet?
A. I am now.

Page 20

Q. Okay. Were you filling those out prior to that time?
A. Yes.
Q. Okay. How did you know how to fill those out?
A. Other employees told me that I needed to.
Q. Okay. Okay. Do you know if there's any ramifications for Volvo if they cannot get a customer order out on time?
A. I was never explained that.
Q. Okay. Does that make sense to you, there would be some ramifications if they couldn't get a customer order out on time?
A. Of course.
Q. Okay. Why have you brought this lawsuit against Volvo?
A. I believe that I was wrongfully terminated. I believe that we had a chance to resolve these issues, and we didn't.
Q. Okay. What do you mean by that last statement, "We had a chance to resolve these issues, and we didn't"?
A. There was -- prior to my termination, there was a mediation date set, and the

Page 21

mediation never occurred.
Q. Okay. Are you still interested in resolving these issues today?
A. I am interested in -- yes.
Q. Okay. Do you understand the -- well, you said before that you were wrongfully terminated?
A. Uh-huh.
Q. That's one of the reasons why you're bringing this suit.
Why do you think you were wrongfully terminated in this case?
A. Because the reason that was given for my termination is false.
Q. The reason that was given for your termination was false?
A. Yes.
Q. Okay. What was the reason given for your termination by Volvo?
A. Attendance.
Q. Okay. Why is that reason false according to you?
A. Because I had not accrued the amount of occurrences that Volvo had said I had.
Q. Okay. Okay. So you're saying that

Page 22

Volvo's calculations of the occurrences under the policy was incorrect?
A. Correct.
MR. DeROSE: And, Counsel, I don't mean to interrupt you. My client's layman's way of expressing the value of this case might differ very much from my own, and I don't want to be limited by whatever answers she gives, but I'm not going to interrupt any of this. Go ahead.
MR. McMAHON: Oh, I understand. I understand.
BY MR. McMAHON:
Q. And I may ask you about damages you're seeking to recover in the case, etcetera. And John's point is well taken. I'm certainly not holding you to that.
I'm honestly trying to explore exactly -- I'm not even going into the damages aspect of things yet. I'm just trying to explore why you believe you were mistreated here.
A. Is that your question?
Q. Well, I'm going to follow up on what you said about the wrongful termination and specifically about the attendance, and we'll

Page 23

just -- and we'll go from there.
But, John, I appreciate it.
With respect to that, you think that Volvo's calculation of the attendance was incorrect?
A. Yes.
Q. Okay. If it were correct, would you agree that having a certain number of occurrences under the attendance policy can lead to termination?
A. It can lead to termination.
Q. Okay. And you understood that from the policy?
A. Yes.
MR. McMAHON: Okay. I'm going to show you what I'm marking as Exhibit 4.
(Deposition Exhibit No. 4 marked for identification.)
BY MR. McMAHON:
Q. Okay. I'll let you have a minute to review this.
Do you recognize the document I've handed you as Exhibit 4?
A. I do now.
Q. Okay. You do now, okay.

Page 24

A. Uh-huh.
Q. What is that?
A. It appears to be a sign up sheet.
Q. Okay. And what's the day on the sign up sheet?
A. January 8th, 2009.
Q. Okay. And you were working at Volvo on January 8th, 2009, correct?
A. Yes.
Q. Okay. You were not on a military deployment during that time?
A. Not yet.
Q. Okay. In other words, you were at the facility, coming into work, present at the facility?
A. Yes.
Q. Okay.
A. I was physically present.
Q. Okay. If you take a look at the sixth line down, that is your name.
Do you see the signature box next to that?
A. Yes.
Q. That's your signature?
A. Yes.

Page 25

MR. McMAHON: Okay. I'm handing to you what I'm marking as Exhibit 5.
(Deposition Exhibit No. 5 marked for identification.)
BY MR. McMAHON:
Q. I'm going to give you a couple minutes to review this.
A. Okay.
Q. Okay. Referencing back to Exhibit 4, we talked about how the date of this sign in was January 8th, 2009?
A. Yes.
Q. The meeting topic was an employee info session?
A. It states so on the top of the page.
Q. Okay. Do you remember this PowerPoint presentation being presented to the employees in connection with that info session?
A. I do not.
Q. You don't remember any of it?
A. No.
Q. Okay. So the slides in this PowerPoint are -- you're seeing them for the first time today according to you?
A. Not today, but when I saw it in the

Page 30

Q. Okay. And next to the entries that have FMLA, you see that there are no occurrences or fractional occurrences under that column, correct?
A. Yes.
Q. Okay. A moment ago with respect to Exhibit 6, which was the colored one there --
A. Uh-huh.
Q. -- you mentioned something about the October 25th, 2011 date, HR excused medical?
A. Uh-huh.
Q. Looking in the inexcusable absences column, is there any sort of occurrence or fractional occurrence marked there with respect to that date?
A. No.
Q. Okay. So going back to Exhibit 6, aside from those two things that you mentioned, is there anything else that you contend not to be correct about this attendance record?
A. Well, it's hard to compare considering this one cuts off (indicating) on August 20th, 2011.
Q. Uh-huh.
A. And the ones that you provided me go

Page 31

through to November 4th.
Q. Sure, sure. And I'm not necessarily saying to compare once versus the other, although we can certainly get into that. I was taking a look at Exhibit 6, and, obviously, we need to look at the time period after August 20th.
With respect to that time period or any other time period, I'm trying to figure out what you disagree with in terms of the company's determination and their records that you had an inexcusable absence on certain days?
MR. DeROSE: Well, objection to the form of that question because it -- and I don't want to make the speaking objections.
What we disagree with is pretty much everything on here and the company's determination but -- so the form of the question, if you would clean it up, maybe I could help you.
MR. McMAHON: That's not a problem. I mean, with all due respect to that, John, I'll just respond on the record to that. She has not testified that she's disagreed with everything on the sheet.

Page 32

MR. DeROSE: All right. But, Counsel, your client's -- the company's determination of how to talk about her being one minute late we definitely disagree with. I want you to know that. So if you reword your questions, we can say -- maybe we can do something, but go ahead.
BY MR. McMAHON:
Q. Okay. Well, let's talk about that. Let's talk about these instances where you were one minute late.
Do you disagree that you were one minute late with respect to these instances?
A. Well, define "late."
Q. Well, were you -- did the time records indicate that you punched in after your designated start time for the shift?
A. What was the designated start time?
Q. You tell me. What was your designated start time for your shift?
A. 4:30.
Q. Okay. Were there instances where you punched in after 4:30?
A. Yes. Prior to August 31st, 2011.
Q. Prior to August 31st, 2011, okay.
What about with respect to after

Page 33

August 31st, 2011?
A. Not that I can recall.
Q. Okay.
A. Well, let me rephrase. I did have therapy appointments in which, yes, I did punch in after 4:30.
Q. Okay. Now, with respect to your therapy appointments, what was the time you were supposed to come to work on those days?
A. As soon as I was done with my therapy and I arrived to work.
Q. Okay. And when did that typically happen?
A. When did what typically happen?
Q. When did you typically arrive to work after you concluded a therapy appointment on days you had therapy appointments?
A. I don't know. I didn't keep track of what time I arrived. I'd punch in, and then I'd go to work.
Q. Okay, okay. Was there some discussion that you had with Keith Schroeder about approximately 6:30 as a time for you to come into work on those days?
A. I had informed Mr. Schroeder that

Page 34

there -- that I would not be able to start work prior to 6:30.
Q. Okay.
A. That it would be unreasonable for me to drive from Hines to Joliet in one-hour period.
Q. Okay. And Hines is where your appointments were?
A. Correct.
Q. Okay. So there was a discussion about that, okay.
Were there instances on days you had therapy where you arrived to work after 6:30?
A. Yes, I'm sure.
Q. Okay. Due to rush hour traffic, etcetera?
A. Yes.
Q. Okay. On those days, are you aware that with respect to the attendance occurrences that the company's calculated with respect to their discipline of you that they did not discipline you with respect to any of those days?
A. That is false.
Q. Why is that?
A. Because they did discipline me.

Page 35

Q. How so?
A. I'm sorry?
Q. How so?
A. Mr. David Miller on a date in August -- I don't remember exactly what date --
Q. Okay.
A. -- provided me with a red flag occurrence, which at the time I had no idea what that was because I -- it was taking me, quote/unquote, too long to start work.
Q. Okay. And that was on one of your therapy days?
A. Both of the red flags that he was trying to write me up for were on my therapy days.
Q. Okay. Did -- was David Miller privy to the arrangement you had worked out with Keith Schroeder and Regina Williams concerning your therapy days?
A. I don't know.
Q. Okay. Is it possible he wasn't?
MR. DeROSE: Objection to what's possible.
Go ahead. You may answer.

Page 36

BY MR. McMAHON:
Q. You can answer.
A. I would assume so.
Q. Okay. Now, with respect to the red flag, you said that was under the IMS Lite system?
A. Yes.
Q. Okay. What is the IMS Lite system?
I'm going a little off topic here but . . .
A. Yeah. I really don't know, which was another thing that I had asked for training on. What -- the training that I did receive in -- I want to say it was about -- well, I don't know. I don't remember right now off the top of my head when it was, but I did finally receive training in 2011 --
Q. Okay.
A. -- that stated under the IMS policy any time that was not scanning time --
Q. Uh-huh.
A. -- was considered an infraction unless you could tell them what you were doing during that nonproductive time.
Q. Okay. So is the essence of it is

Page 37

basically is kind of trying to eliminate nonproductive time between tasks?
A. I would not say so.
Q. Well, what's the point of it then from your standpoint?
A. I don't know. You'd have to ask the company.
Q. Okay. What did you learn after your training?
A. That I needed to report what I was doing.
Q. Okay. And what did you understand the purpose of that to be?
A. To know what I am doing.
Q. Okay. And why would that be important for the company to know that?
A. I don't know. It wasn't explained to me.
Q. Okay. No idea?
A. (No verbal response.)
Q. Do you think it's important for a company to measure productivity of its workers?
A. Yes.
Q. Okay. Why is that?
A. In order to -- first, standards need to

Page 38

be made, and then the employers -- employees should meet those standards. If there is a deficiency in meeting those standards, then training should be given to assist the employee to reach those standards.
Q. Okay. Okay. Going back to the red flag you received -- I believe you said from David Miller?
A. Yes.
Q. Okay. That red flag didn't result in an attendance occurrence, correct?
A. I don't know.
Q. Okay. And if it's the company's -- if the company's records show that it did not, you were not documented for an attendance infraction in connection with that red flag?
Does that make sense?
MR. DeROSE: Well, objection to --
MR. McMAHON: Okay.
MR. DeROSE: You're asking her to draw conclusions about things she has no knowledge.
BY MR. McMAHON:
Q. To your knowledge, were you given an attendance occurrence in connection with that red flag?

Page 39

A. With that one specifically, no.
Q. Okay. So going back to my original question, in connection with the days you had therapy appointments, you were not given any attendance infractions in connection with those; is that correct?
A. I'm trying to think. No.
Q. Going back to your attorney's commentary on the record about being late one minute, do you believe that -- I'll phrase it this way.
Do you believe that you getting a fractional occurrence for being late one minute was in any way in violation of the attendance policy?
A. I'm sorry. I don't think I understand the question.
Q. Not a problem.
Do you believe that -- do you -- well, let's put it this way: Do you understand that the attendance policy permitted the company to give you a fractional occurrence for being one minute late to work?
A. Yes.
Q. Okay. And you did receive an updated

Page 40

version of the policy when you came back to work from your latest appointment, correct?
A. No.
Q. You did not?
A. It was -- not when I had asked for training, no.
Q. Okay. When did you receive it?
A. Not until approximately two months later.
Q. Okay. November 2010?
A. Yes.
MR. McMAHON: And actually, I want to show you what's marked as -- I guess what I'm going to mark as Exhibit 8.
(Deposition Exhibit No. 8 marked for identification.)
BY MR. McMAHON:
Q. And do you recognize this document?
A. Yes.
Q. Okay. This document's dated November 4th, 2010?
A. Yes.
Q. And it says, "The following is a list of Chicago local policies provided to Luzmaria Arroyo"?

Page 41

A. Yes.
Q. Okay. And is that your signature?
A. Yes.
Q. All right. So on that date, did you receive a copy of the attendance policy?
A. Yes.
MR. McMAHON: And I'm going to make a reference to this in a minute, but I'm going to show you the attendance policy.
I'm going to mark this Exhibit 10 -- oh, no -- 9. I'm sorry. 9.
(Deposition Exhibit No. 9 marked for identification.)
BY MR. McMAHON:
Q. I take it you've seen this document before?
A. Yes.
Q. Okay. On the fourth page of this document, which is Bates number 2327, do you see that?
A. Yes.
Q. Okay. Do you see the very last sentence there?
A. Yes.
Q. Or the last two sentences? What does

Page 42

that say?
A. The second-to-last sentence says, "It is the management's responsibility to communicate any corrective action plan within two weeks after the day that caused the corrective disciplinary action."
Q. Okay. And underneath that what does it say?
A. "The unwritten policy that allowed a two-minute grace period will be eliminated on January 2nd, 2008. All employees are required to punch at their respective shift start time."
Q. Okay. And you understand what that means, right?
A. Yes.
Q. Okay. Was there -- did there used to be a time where there was a two-minute grace period while you worked at Volvo?
A. Yes.
Q. Okay. And you remember that time?
A. Yes.
Q. Okay. And you received a copy of this policy -- going back to Exhibit 8 -- on November 4th, 2010?
A. Correct.

Page 43

Q. Okay. And, in fact, wasn't there a time in late October of 2010 where Mr. Schroeder attempted to discipline you for being one minute late?
A. I do not recall.
Q. You don't recall?
A. No.
Q. Do you remember there being a time where he was trying to indicate that you were potentially at the second step of the disciplinary process because you were one minute late, but he ultimately did not give you an occurrence for that date?
A. No.
Q. Okay. Based on the attendance record for --
A. Which exhibit?
Q. I'm sorry. Yep. Going back to Exhibit 6, would you agree with me that per this record there was not a time where you were given an occurrence for being one minute late prior to November 4th of 2010 when you received the attendance policy again?
MR. DeROSE: Based on the record only.
MR. McMAHON: Based on the record.

Page 44

THE WITNESS: Okay. I'm sorry.
BY MR. McMAHON:
Q. It's all right.
A. Too much information.
Q. Yes.
A. What is the question?
Q. The question is: Based on our record, based on Exhibit 6 --
A. Okay.
Q. -- would you agree that you were not disciplined for being one minute late prior to November 4th, 2010 when you received the policy?
A. Correct. Well, I have a question. Looking at the record, October 29th is listed here.
Q. Okay.
A. And October 29th is a date of one of the disciplinary actions.
Q. Okay. It's a date of one of the disciplinary actions or it's a date you had an occurrence?
A. Both.
Q. Okay. I guess let's talk about the occurrence first. And that's kind of -- I

Page 45

think that was the date I was referencing before, but I didn't say the specific date. My apologies.
A. Uh-huh.
Q. October 29th, 2010, that does appear to be a date where you were late one minute per the company's records?
A. Uh-huh.
Q. Okay. Do you see the notation on the very right-hand side of that chart with respect to that?
A. Uh-huh.
Q. What does it say?
MR. DeROSE: Excuse me. You must say yes or no, not uh-huh.
MR. McMAHON: Thanks, John.
THE WITNESS: I'm sorry. Yes.
BY MR. McMAHON:
Q. Okay. And what does that notation say in the right-hand box?
A. It says, "No occurrence/KS."
Q. Okay. And in connection with the box, the column before we are looking at inexcusable absences?
A. Uh-huh.

Page 46

Q. I know it's kind of --
A. I'm sorry. Yes.
Q. Thanks. And I know it's kind of hard to track given it doesn't have the labels up top, but with respect to that date, does it appear that the company gave you any sort of occurrence with respect to that date?
A. It appears that there is no annotation at all whatsoever as to whether or not it was excused or unexcused.
Q. Okay. Well, except for the fact that it has the notation no occurrence, correct?
A. There is that notation, but, again --
Q. Okay.
A. -- I digress. There is no annotation as to whether or not it is excused. Everything else has ML, E, AS, or I.
Q. Okay.
A. There is no annotation for that specific one.
Q. Okay. Does it have a number under the inexcusable absences column?
A. It does not, but it also does not have a number under the excusable absences column.
Q. Okay. Now, a couple moments ago, your

Page 47

attorney said that, for the record, you were objecting to -- I don't want to put words in his mouth, but pretty much everything on the attendance record including the occurrences for being one minute late; is that accurate?
A. That is what my attorney said.
Q. Okay. Is it what you say?
A. Yes.
Q. Why?
A. I contest that Mr. Schroeder and Volvo did not maintain records accurately.
Q. Did not maintain records accurately?
A. Uh-huh.
Q. Okay.
A. This is a spreadsheet --
Q. Okay.
A. -- to show in a concise manner all of the information.
Q. Uh-huh.
A. And I believe that this information does not accurately reflect what happened.
Q. Okay. What information does accurately reflect what happened?
A. The actual punch in and punch out times.

Page 48

Q. Okay. Let's look at those.
Now, before we look at those, I want to make sure I kind of understand where we're coming from here. If the punch out and punch out time records -- and let's talk about an instance of one minute late, for example.
If the punch in and punch out time records show one minute late, you agree that you could have received an occurrence for being one minute late?
A. That's correct.
Q. Okay. And you're not contending that's illegal in any way in this lawsuit?
MR. DeROSE: Well, objection, Counsel. That's not her position. That will be a judge and a jury's position.
MR. McMAHON: John.
MR. DeROSE: Well, please don't laugh at me. But if you're going to ask her about what she contends is illegal, I object. That is not her position to answer.
BY MR. McMAHON:
Q. You can answer the question, Ms. Arroyo. You can answer the question. I'm allowed to understand your theory of why you're

Page 49

bringing this lawsuit. That's a permissible question.
A. Can you state it again?
Q. Yes, yes. What I'm getting at here -- and I understand -- if you have a contention about the accuracy of the records, I understand that. What I'm trying to do is understand what John is saying and what I think you're saying as well.
Let me phrase it this way: Aside from the accuracy of the records, is there any other reason that you contend the discipline you received through the company's attendance policy is illegal?
MR. DeROSE: Object to the form of the question.
BY MR. McMAHON:
Q. You can answer.
A. So let me see if I understand your question correctly. You're asking me if their policy is illegal?
Q. Well, let's start there.
A. Do I think their policy is illegal?
Q. Yes. Let's start there, and then we'll go into the actual punches because this is

Page 54

Q. Okay. You had numerous military leaves throughout your employment with Volvo, right?
A. Yes.
Q. Okay. Several deployments?
A. Yes.
Q. Okay. With respect to any of those, do you see at any time where there is any military leave that the company is considering an inexcusable absence?
A. According to this exhibit?
Q. Yes, according to that exhibit.
A. According to this, there has not been any marked.
Q. Okay. Okay. Do you believe there's some other reason to think that the company disciplined you from an attendance policy standpoint for having military leave?
A. I'm sorry. I don't understand the question.
Q. Aside from that record --
A. Uh-huh.
Q. -- do you have any reason to believe that the company disciplined you under the attendance policy for having military leave?
A. Do I believe now? Yes.

Page 55

Q. Why is that?
A. Based on statements that were made.
Q. What statements?
A. I couldn't tell you everything off the top of my head.
Q. Okay.
A. But they have been submitted in the evidence.
Q. Can you tell me -- can you point to something?
A. It's not in front of me.
Q. Okay. I mean, what I'm trying to do is I'm trying to figure out where you're coming from in this case, and you mentioned there's a statement made.
A. Yes.
Q. By someone?
A. Yes.
Q. That shows what or that says what, I should say?
A. That my military duties and obligations was a burden to the company. Actually, I believe the words were causing an undue hardship.
Q. An undue hardship?

Page 56

A. Yes. Were the words that were exactly used.
Q. Okay. What does that have to do with an occurrence under the attendance policy?
A. Because the attendance policy would then be used against me.
Q. How?
A. I don't know. That's what was said.
Q. What was said?
A. What do you mean?
Q. Well, you just said that your military leave was a -- what did you say, undue hardship?
A. Yes.
Q. Okay. What said that?
A. Keith Schroeder.
Q. Keith Schroeder. When did he say that?
A. First in November of 2005 and then again in -- I can't remember -- between 2005 and 2010, but then again in 2010 and then again in 2011.
Q. Okay. Okay. Throughout that time period, you had certain deployments that you went on, okay, where you were gone for extended periods of time.

Page 57

You returned to work after those deployments?
A. Yes.
Q. Is that correct?
A. Yes.
Q. Okay. And I know we're doing video but . . .
A. I know. I know. It's habit. I'm sorry.
Q. Yeah. And that's another thing. Normal conversations, you kind of go along with head nodding a lot. This is kind of artificial. I'm sorry about that.
You had several deployments where you came back to work afterwards, correct?
A. Yes.
Q. Okay. Also, when you were not on deployments, you often had certain different military obligations during your time while you were employed, correct?
A. Yes.
Q. Okay. You had certain weekends where you had drill duties; is that correct?
A. Yes.
Q. Okay. How frequently were those?

Page 58

A. Drill duties?
Q. Yes.
A. Well, a MUTA consists of a Saturday and a Sunday one weekend a month.
Q. Okay.
A. However, at the commander's discretion, they can alter a drill schedule to include a MUTA-6 which would then be a Friday, Saturday, and Sunday or however the commander chooses to lay out his design for the unit.
Q. Okay. All right. Yeah. There was also a couple instances, I believe, where you attended it was an event called I guess a yellow ribbon event?
A. That only occurred on my last deployment upon return from the deployment.
Q. Okay. And there was what, a couple times you attended those; is that correct?
A. Only two. For Congress has mandated that soldiers who return from deployments must attend three. However, on my second one, I was told I did not need to attend the third.
Q. Okay. All right. Based on the company's records with respect to any of those military leaves, were you disciplined from an

Page 59

attendance standpoint for those leaves?
A. What do you mean?
Q. What I mean is did you receive any sort of occurrences under the attendance policy for those leaves?
A. According this exhibit, no.
Q. Okay. The way you phrased that question leads me to conclude that you believe that according to something else, you did?
A. Yes.
MR. DeROSE: She's not phrasing -- you're asking questions. She's giving answers.
BY MR. McMAHON:
Q. Sure, sure, sure, sure. The way she said the answer. You said, "According to this exhibit, no."
But you contend there's something else that shows they did; is that right?
A. Yes.
Q. What is that something else?
A. The actual -- I believe they called it a CAP, corrective action plan write up.
Q. Okay. What does that show?
A. The dates of which I was being disciplined and for what reasons.

Page 60

Q. Okay. And that shows somehow that we are taking that action because of the military leave?
A. I'm sorry. You're wanting to know if the policy specifically says we are taking this because of military leave? No.
Q. No, no, no, no, no. I understand that's not your -- that's not your point.
A. That's not your question?
Q. What I'm trying to get at is what evidence do you have that you believe shows that the company gave you occurrences because of your military leave?
A. I don't have my evidence in front of me. This is your evidence.
Q. It is.
A. So I believe we're going to go over that in trial or maybe at the other depositions. I don't know. I don't know how this works.
Q. I understand. This is my opportunity to try to find out what evidence you believe supports your theory of the case.
A. Is that your question?
Q. Yes, it is my question.

Page 61

A. What evidence do I believe --
Q. Yeah. But more narrowly, I want to try -- I'm going to try to stick on the military part first.
A. Okay.
Q. Because you mentioned statues and so I want to take one at a time, and I think we're under the military side of things first.
And specifically what I want to know is what evidence do you have that shows -- because I think it's your position, right, that the company gave you occurrences because of your military leave?
Is that your position?
A. Yes.
Q. Okay. What evidence do you have that shows that?
A. Again, I don't have my evidence in front of me. I don't know. If you provide me with all of my evidence, then I can give it to you, but, I mean, I -- with what you've given me here, I can't answer that question.
Q. Why -- let me phrase in this way rather than asking specific pieces of evidence because I know there's a lot of documents in this case.

Page 62

A. Right.
Q. Obviously. Why do you believe that?
In other words, why do you believe --
A. I've already told you this. Because of the statements that have been made to me.
Q. About military being an undue hardship?
A. Correct.
Q. Okay. But yet, military leave had been granted to you?
A. Under duress.
Q. Regardless of under duress or not, it's been granted to you, Ms. Arroyo, right?
A. I see.
Q. Yes?
A. Yes.
Q. Okay.
A. Can we take a break?
MR. McMAHON: Let's do that.
THE WITNESS: Okay.
MR. McMAHON: Now's a good time. Yeah.
THE VIDEOGRAPHER: Going off the record. The time is now 11:27 a.m.
(Whereupon, a recess was had.)
THE VIDEOGRAPHER: Going on the record. This marks the beginning of media number two.

Page 63

The time is now 11:41 a.m.
BY MR. McMAHON:
Q. Okay. Ms. Arroyo, we're back on the record. And when we left off, we were talking a little bit about your military leave allegations in this case.
Who hired you at Volvo?
A. According to a letter that I received, it was a Wendy something.
Q. Okay. In an HR position there, as I remember?
A. Yes.
Q. Okay. Did you interview at all with anyone there before you were hired?
A. Yes.
Q. Who did you interview with?
A. There was a group of people around the table. I don't remember how many, but the names and faces that I do remember were Keith Schroeder, Michael Tempco, Patrick Dunne.
Q. Okay. All right. And those were individuals you dealt with throughout your employment at Volvo, correct?
A. Yes.
Q. Okay. And I believe Mr. Tempco and

Page 64

Mr. Dunne at different times were your immediate supervisor as well?
A. Correct.
Q. Okay. When you were hired, Volvo was aware that you were a member of the United States Army; is that correct?
A. They knew prior to my hiring, yes.
MR. McMAHON: Okay. All right. I'm going to show you what I'm marking as Exhibit 10.
(Deposition Exhibit No. 10 marked for identification.)
BY MR. McMAHON:
Q. And looking at -- I'll give you a second to look at this.
Have you seen this document before?
A. Yes.
Q. Okay. And what is this that we're looking at here in Exhibit 10?
A. It states it is the Veteran status questionnaire.
Q. Okay. Is this a document that you filled out when you were hired by Volvo?
A. Yes.
Q. Okay. This document gave you an

Page 65

opportunity to identify if you are in the Armed Forces?
A. Yes.
Q. And you identified that you were?
A. Yes.
Q. Okay. And you signed and dated this form?
A. Yes.
Q. Okay. And you were hired in or around June of 2005, correct?
A. On June 13th, 2005.
Q. Okay. All right. And so you actually signed this form when you came on board with Volvo?
A. The day after.
Q. Okay. And did you have a discussion with the people you interviewed with that you were in the Armed Forces?
A. Prior to my hiring, yes.
Q. Okay. Did there come a point in time when you nominated certain employees at Volvo for the patriotic employer award given out by the employer support of the Guard and Reserve?
A. Yes.
MR. McMAHON: Okay. I'll show you what

Page 66

I'm marking as Exhibit 11.
(Deposition Exhibit No. 11
marked for identification.)
MR. DeROSE: This is 11?
MR. McMAHON: This is 11, yep.
BY MR. McMAHON:
Q. Ms. Arroyo, how did the nominations for patriotic employer award work; do you know?
A. I don't know how they worked. I don't know the process that was required in order -- that if -- once you nominate someone that it goes through.
Q. Okay. How did you nominate -- and I believe the first one we're looking at here on Exhibit 11 is Mr. Schroeder and employees and the second one was Michael Tempco and Patrick Dunne.
How did you nominate these individuals for ESGR's patriotic employer award?
A. At our demobe station, one of the stations that we need to visit before being released from active duty is the ESGR station. They inform us of what our rights are as soldiers returning from deployment, and they suggest giving your employer a pat on the back

Page 67

for your going away on a deployment and then them allowing you to return to work.
Q. Okay. And you took them up on that suggestion?
A. I did.
Q. Okay. And you thought that suggestion was appropriate to do?
A. I don't understand.
Q. In other words, you thought it was appropriate to nominate Mr. Schroeder, Michael Tempco, and Patrick Dunne for the patriotic employer award?
A. I wanted to in some way, shape, or form acknowledge to them that I understood that they made a sacrifice when I was putting my life on the line.
Q. Okay.
A. So yes, I wanted to give them a pat on the back.
Q. Okay. What do you mean by they were making a sacrifice?
What do you mean by that?
A. They were losing an employee. Just like my family lost their daughter and their cousin and their niece.

Page 68

Q. Okay.
A. Luckily, I was able to return to them.
Q. Okay. All right. And you thought they did a good job in connection with handling your military leave?
A. No.
Q. No?
A. No.
Q. Why is that?
A. The reason why I gave it was because, like my family received a similar award from the department of the Army for sacrificing their daughter and giving them up to a war, but I know that an employer wouldn't get one unless I nominated them.
Q. Uh-huh.
A. So like I said, in recognition. Did I think that they deserved it for what they did for me? No.
Q. Okay. So you nominated them even though you didn't think they deserved it; is that your testimony?
A. I nominated them because I wanted them to know that I recognized that they made a sacrifice.

Page 69

Q. Okay. Do you remember when the, I guess, award to Mr. Schroeder was presented, the first page we're looking at on Exhibit 11?
A. Yes.
Q. When was that?
A. The date?
Q. Yeah. Approximately. Time frame.
A. October or November of 2010.
Q. Okay. October 2010, that sounds right to you?
A. Yeah.
Q. Okay. So it was about a month or so after you returned --
A. No. The same month that I returned.
Q. The same month?
A. Yeah.
Q. The same month you returned. Okay. Okay.
Does October 20th sound correct to you; that would have been within a month of when you came back, I believe?
A. Yeah.
MR. McMAHON: Okay. I'm showing you what I'm marking as Exhibit 12.

Page 70

(Deposition Exhibit No. 12
marked for identification.)
BY MR. McMAHON:
Q. Okay. With respect to Exhibit 12, I take it you remember being here when these photos were taken?
A. Yes.
Q. Okay. Who took the photos; do you know?
A. I had gotten my public affairs officer to bring her camera from the unit or his camera from the unit and take the photos.
Q. Okay. Who is that person?
A. I don't remember their name.
Q. Okay. He was a member of your unit?
A. Correct.
Q. Okay. Your unit in Darien?
A. Correct.
Q. Okay. Do you remember what this person looked like?
A. No.
Q. Not at all?
A. No. It bared no significance to me. The photos were taken. I was given a copy. That's all I needed to know.

Page 71

Q. Okay. Okay. You don't remember his name?
A. Nope.
Q. Is he still in your unit?
A. No.
Q. Do you remember when he left?
A. No.
Q. Okay. Who are we looking at in Exhibit 12? Who's in this picture?
A. Pages 2248 through 2251 is myself on the left, Keith Schroeder in the middle, and David Gorski on the right or Tom Gorski. I'm sorry.
Q. Tom Gorski?
A. Yes.
Q. Okay. Who is Tom Gorski?
A. He is an ESGR Ombudsman.
Q. Okay. Do you know what his role is as ESGR Ombudsman?
A. I assume a liaison between a reservist or a service member and their employer.
Q. Okay. Okay. Was he here on this day in October of 2010 to present this award to Mr. Schroeder?
A. That's correct.

Page 72

Q. Okay. On Bates 2252 of Exhibit 12, is that you and Mr. Schroeder shaking hands in front of the Mack bulldog?
A. That's correct.
Q. And then on 2253 we have Mr. Schroeder, Mr. Gorski, and yourself again in the picture?
A. That's correct.
Q. Same on 2254?
A. Correct.
Q. Okay. Who are the other individuals pictured in 2255?
A. The only other person that -- whose name I know is the person in the blue polo shirt and the jeans. His name is Michael Tempco.
Q. Okay.
A. The other two were co-employees, but I do not know their names.
Q. Okay. All right. You don't remember -- do you remember working with either of those two gentlemen?
A. I've seen them around the building but didn't talk to them.
Q. Not on a first name basis, okay.
A. Not even on a name basis. I didn't

Page 73

know who they were.
Q. Okay. Okay. Do you remember did they work on your shift or no?
A. No.
Q. Okay. Did Michael Tempco also serve in the U.S. military?
A. Yes.
Q. Now, I think you testified earlier that you didn't think that Volvo did a good job handling your military leave; is that correct?
A. Correct.
Q. Okay. Why do you believe that?
A. Because of statements that were made.
Q. Such as?
A. The undue hardship. Honestly, I couldn't tell you more than that one because that one is the one that really stuck to my mind.
Q. Okay.
A. There were many more, but I don't have the information in front of me.
Q. Okay. When did you say the first time someone said your military leave was an undue hardship?
A. November of 2005.

Page 82

transferred?
A. No action, no.
Q. From a military standpoint, after the transfer was completed in March of 2008, what did you do next in terms of military activity?
A. I was then placed on orders for additional duty training in order to begin to fulfill my requirements to that new unit.
Q. Okay. And I take it you did that?
A. Yes.
Q. Okay. In terms of kind of the timeline of what occurred after that, I guess you were gone for some time for work for that, for the active duty training?
A. According to my timeline, it started in April and ended as of October 1st or September 30th.
Q. Okay.
A. Because that's the end of the fiscal year.
Q. Okay. Okay. End of the military's fiscal year?
A. Correct.
Q. Okay.
A. Well, governmental.

Page 83

Q. Governmental, okay. All right.
So that was a period of approximately four months, is that basically what we're talking about there, five months?
A. Yes.
Q. Okay. All right. And you returned to work after that point?
A. Correct.
Q. Okay. Any adverse employment action that happened to you between the time you were placed on active duty training and when you returned to Volvo?
A. There was no action.
Q. Okay. I guess beginning of January 2009, you actually changed shifts; is that correct?
A. Correct.
Q. Okay. And I'm just noting that in the chronology here.
Tell me, what shift were you working before and what did you shift into?
A. When I was hired, I was hired for third shift.
Q. Okay.
A. The shift hours began at 12:00 -- no.

Page 84

Yes. 12:30 in the morning, and I think at the time it was 12:00 in the morning until 8:00 in the morning --
Q. Okay.
A. -- when I was originally hired, but in the end it changed to 12:30 in the morning until 8:30.
Q. Okay. In the end, meaning in the end when -- the last time you were on that third shift?
A. Correct.
Q. Okay. And my understanding is eventually there was a change from three shifts to two shifts?
A. Correct.
Q. Okay. And I guess in the beginning of January 2009, you changed shifts?
A. Because I believe that is when the reduction in the shifts occurred.
Q. Okay. Okay. The change from three to two?
A. Correct.
Q. Okay. And then at that point, what were you normal working hours?
A. From 4:30 in the evening until 12:30 in

Page 85

the morning.
Q. Okay. And shortly after that point, you were deployed to Iraq; is that correct?
A. Yes.
Q. Okay. All right.
A. In April of 2009 --
Q. Okay.
A. -- was my actual deployment. But I was -- I was doing other military things in preparation of that deployment prior to April.
Q. Okay. All right. Like, such as?
A. We -- the military has evolved during all these deployments. It used to take -- well, such as training in order to go overseas.
Q. Okay. Totally understandable.
A. Yeah.
Q. And I guess that -- okay. So that technically happened while you were still actively working at Volvo?
A. No. That happened in March, and I took leave from Volvo in February to prepare for the month long of training and then going from there to Iraq.
Q. Got it, got it, got it, got it. Okay. Okay. All right.

Page 86

And there was not any problem with you taking that time off for training before the deployment?
A. Correct.
Q. Okay. All right. How long were you at -- how long were you deployed in Iraq before you returned?
A. Are we talking about this time period?
Q. Yes. We're talking about the -- I guess the most --
A. Recent.
Q. The most recent one, right. I'm sorry. Which would be 2009 into -- yeah.
A. Right. My deployment orders -- the deployment orders began as of April 2009.
Q. Uh-huh. Okay.
A. And then I returned to the United States in April of 2010, but I had not yet been released from active duty until August 2010.
Q. Okay. And what was the reason for the discrepancy between when you returned and when you were released from active duty?
A. What do you mean "discrepancy"?
Q. Well, I guess, what was the -- in other words, you returned from Iraq.

Page 87

What were you doing in between the time you returned from Iraq until when you were released from active duty?
A. I was demobing, returning in equipment, processing, and then I had leave that I had accrued, vacation time.
Q. Okay. Okay. Through the military?
A. Correct.
Q. It was military vacation time?
A. Correct.
Q. Okay. And you had utilized that time.
And then at the expiration of that time, you came back to work at Volvo?
A. No. At the expiration of that time, which was August 15th, I had told Volvo that I was going to take some additional time --
Q. Got it.
A. -- as allowed under USERRA.
Q. Right.
A. And during that additional time was when I returned back to work.
Q. Okay. Right. So the August 15th is the expiration of the military vacation time?
A. That is the time that the military said that I was no longer under their control.

Page 88

Q. Okay. Okay. And you informed Volvo that you would be returning to work then given the length of deployment within 90 days?
A. In April I had -- of 2010 --
Q. Uh-huh.
A. -- I had informed Volvo that I had returned to the United States but was not as of yet released from active duty.
Q. Okay.
A. I would not be released until April of -- or August of 2010.
Q. Okay. Okay. And then you eventually returned to Volvo?
A. Yes.
Q. Correct? Okay. All right. Okay.
In connection with that, was there -- did you have any issue with Volvo not reinstating you in your position or anything like that?
I mean, you assumed the same position you had before, correct?
A. I did.
Q. Material handler?
A. Yes.
Q. Okay. And you were a material handler

Page 89

when you came back from that last deployment?
A. Correct.
Q. Okay. I guess, what were the other issues, if any, that you had with Volvo with respect to how they handled military leave or military obligations of yours?
A. One of the things I requested when I returned from my first day back on -- employed was I requested for training on policies, training on my job, you know, training to make me successful. My immediate supervisor said that she didn't know, that I needed to speak to Keith Schroeder.
Q. Okay.
A. So the following day I went to speak to Mr. Schroeder.
Q. Uh-huh.
A. I was told I had been with the company long enough, I should know everything, and I was not provided anything.
Q. Okay. Okay. What did you say -- did you go into any more detail about what you wanted training in when you came back?
A. On anything that had changed while I had been gone and all the policies and what I

Page 94

A. Sure.
Q. Okay. And that was there when you came back, too, right?
A. I don't know if they were there when I first came back. I remember them being implemented later.
Q. Okay.
A. But I don't remember if they were there from when I first came back.
Q. Okay.
A. And I don't remember if they were there prior to me leaving.
Q. Were they different types of forklifts?
A. Yes.
Q. How so?
A. They had what was called a picker, which would have a platform that you would have to tether to the platform in case of falling. It would keep you from falling and hurting yourself.
Q. Uh-huh. Uh-huh.
A. And then you would raise with the platform to gather parts. There were what I'd call sit-down forklifts, and those, you know, you would sit down and it would only lift to a

Page 95

certain height. But those would go into the trucks to put the items into the trucks.
Q. Uh-huh.
A. And then you have standing -- another forklift, a reach truck -- that's what it was called -- in which the forks would raise as high as the platforms would, but they would also extend into the shelving in order to pick up the parts and then bring that part out as opposed to you going up to the part.
Q. Okay. And these different types of forklifts, these various different types, I guess, were present before and after your latest deployment?
A. Yes. There were one or two other ones which they were -- the company was phasing out and we didn't really use.
Q. Okay. You mentioned a couple moments ago, and I'm just going to come back to it, you didn't really know what some of the rules were until you were disciplined for something --
A. Right.
Q. -- in terms of the changes?
Can you give me an example of that?
A. The two-minute rule.

Page 96

Q. Okay. How so?
A. As we spoke earlier, there was a two-minute rule that you were allowed to punch in up to two minutes after the start of your shift.
Q. Okay.
A. And apparently that had changed while I had been deployed and -- or during that time while I was getting reading to deploy, so I didn't remember it.
Q. Okay. Okay. You received -- we looked at it before -- a copy of the attendance policy dated November -- or on or about November 4th, 2010.
A. Okay.
Q. Is that correct?
A. Yes.
Q. Okay. Isn't it true that you were not disciplined or even received an occurrence, short of discipline, for being one minute late prior to that time?
A. We just went over this. October 29th was the date, I believe that --
Q. Right.
A. -- one of the ones that we had in

Page 97

question.
Q. Right, right. October 29th. And per our records, that was excused, correct?
A. It was neither excused nor unexcused.
Q. Well, there's a notation by Keith Schroeder where he says no occurrence, right?
A. He says there's no occurrence, but as I stated before, it was neither excused nor unexcused.
Q. Okay. On our records it says no occurrence, correct, Ms. Arroyo?
A. There is a notation that states -- I mean --
MR. DeROSE: Objection. The document speaks for itself.
BY MR. McMAHON:
Q. Okay. Okay. Do you contend that you received any sort of discipline action for October 29th, 2010 in this case?
A. Yes.
Q. What was it?
A. There -- you didn't provide the documentation yet, but there was a CAP, as I had mentioned before, a corrective action plan that was given by Keith Schroeder to myself

Page 98

that included dates to include October 29th,
2010.
MR. McMAHON: Okay. Meaning that one
of the occurrences occurred on October 29th,
2010.
Okay. I'm going to show you what I'm
marking as whatever one we're on now, Exhibit
13.
(Deposition Exhibit No. 13
marked for identification.)
BY MR. McMAHON:
Q. Okay. Ms. Arroyo, I'm showing you what
we've marked as Exhibit 13.
A. Uh-huh.
Q. Do you recognize this?
A. Yes.
Q. Okay. This is a document you produced
in discovery, correct?
A. Yes.
Q. Okay. And is this the corrective
action plan that you received on October 29th
of 2010?
A. Yes.
Q. Okay. The date you received this
document was October 29th, 2010?

Page 99

A. Uh-huh.
Q. Correct? Okay.
MR. DeROSE: Yes or no?
THE WITNESS: Yes.
BY MR. McMAHON:
Q. Okay. You were not actually
disciplined for an occurrence on October 29th,
2010 in connection with this discipline,
though; is that correct?
A. What do you mean?
Q. Meaning that the occurrences that are
being totaled here do not include any date
through October 29th, 2010?
MR. DeROSE: Well, the document speaks
for -- objection. Document speaks for itself.
If you understand, you may answer.
BY MR. McMAHON:
Q. Okay.
A. Sorry. Rephrase.
Q. Sure. Let's just read this first part.
Then I'll ask you the question.
A. Okay.
Q. It says, "You have accumulated a total
of two occurrences in a one-month period from
October 1st through October 19th, thus

Page 100

exceeding our attendance policy guidelines."
A. Okay.
Q. All right. You would agree with me
that October 1st through October 19th does not
include October 29th?
A. Yes.
Q. Correct? And you received a verbal
warning in connection with this corrective
action plan, right?
That's the level this corrective action
plan was at, verbal warning?
A. Yes.
Q. Okay. And you see there's an
attendance sheet attached to this?
A. Uh-huh. Yes.
Q. There's no notation on this attendance
sheet about October 29th, is there?
A. Correct.
Q. Is there any other evidence you have
regarding how you contend Volvo did not
properly handle your military leave or military
status in this case?
A. This corrective action plan.
Q. That corrective action plan?
A. Yes.

Page 101

Q. Why is that?
A. October 19th, I had called in, right,
according to this same exhibit.
Q. Uh-huh.
A. I had called in. So they received my
call, and they knew that I was having a
situation, was not coming into work.
Q. Uh-huh.
A. I had not been told prior to this
because I had not received the attendance
policy prior to this upon my return from
deployment that I needed to come in with a
doctor's note.
Q. Okay.
A. Had I received the training that I had
requested my second day of employment, I would
have known that, and this would not be counted
as a corrective action plan.
Q. Okay. Did Mr. Schroeder give you an
opportunity to bring in a note?
A. After the fact, which according to the
policy is not acceptable.
Q. Okay.
A. Which I discussed with Mr. Schroeder.
Q. Now, wait a minute.

Page 102

A. I informed him after he gave me the attendance policy that he was asking for a doctor's note now two to three weeks after the fact, and I said, well, now it's two to three weeks after the fact. Your attendance policy says no backdating so . . .
Q. Two or three weeks after the fact of what?
A. After I had called in saying that I was sick.
Q. Which was October --
A. October 19th.
Q. October 19th.
A. Which would have made it the second occurrence.
Q. Uh-huh.
A. Which gave me this verbal warning.
Q. Okay.
A. So had I been trained . . .
Q. I guess I'm confused about the timing of this.
I guess, number one, you were aware of some attendance policy requirement in October when Mr. Schroeder described it to you?
A. What do you mean?

Page 103

Q. Well, you just testified that Mr. Schroeder explained to you that for a sick day like this, the 19th, you needed to have some sort of medical document explaining?
A. I did not know that prior to October 2010.
Q. Okay. Okay. But Mr. Schroeder explained to you it in October 2010 is my point?
A. No, he did not.
Q. You just testified he did, ma'am.
A. No. In November of 2010 when he provided me the attendance policy --
Q. Uh-huh.
A. -- was I then informed that I needed a note. Now, two to three weeks after the fact he was asking me to get a doctor's note which was in direct violation of company policy.
Q. Okay. Okay.
A. And we had that discussion that now that it is after the fact, I am not sure if I would be able to get a doctor's note.
Q. Okay. So --
A. So this --
MR. DeROSE: All right. Counsel, let

Page 104

her finish the answer. You did have -- it was open-ended. You are cutting her off. Let her finish it all and then you can go.
MR. McMAHON: Sure, sure, sure.
BY MR. McMAHON:
Q. Please.
A. So if I did not know that the requirement for a sick day required me to have a doctor's note in order for it to be excused, how could I be punished for it?
Q. Uh-huh. And how does that have anything to do with your military leave?
A. Because I had requested training on all of the policies and the procedures in order to be in compliance with those standards when I returned from my deployment.
Q. Okay.
A. As provided by USERRA.
Q. Okay. Well --
A. Sorry.
Q. Sure. Now, your testimony was that the first time that you found out about this requirement was a couple weeks after the 19th, is that right, two to three weeks?
A. On November 4th when he provided me the

Page 105

attendance policy.
Q. So your testimony, there was no discussions prior to that point about any of this, about trying to obtain a doctor's note to excuse the 19th?
A. I didn't know that it was a requirement. There might have been discussions because I had told him --
Q. Okay.
A. -- that I was seeking care.
Q. Okay.
A. No, no, no. That I was seeking care under the military for an issue and that I would be willing to bring in that documentation. I was working with the company, not even knowing that it was a requirement.
Q. Okay. So let's take a look at your chronology, okay?
A. Yes.
Q. All right. Page 7. And I'm sorry. It's page 7 of the document, Bates number 9 at the bottom. Sorry.
A. I've got to stick with your Bates numbers.
Q. Got to. Got to.

Page 106

Kind of midway through that top partial paragraph, it says "LMA informed Mr. Schroeder that she had an upcoming doctor's appointment with the doctor allowed by her military plan on Monday, October 25th, 2010 to fulfill the Army's requirement for a post deployment health assessment and that she would ask him to write a letter for October 19th, 2010."

Keith Schroeder said that would be fine. Okay. And then it says, "LMA left the meeting with the understanding that Mr. Schroeder would treat the absence as an excused absence since she had not been informed of the polices and procedures regarding sick days and had not been given a copy of the policy in advance in the meeting with the absence in question."

MR. DeROSE: Objection. That -- are you suggesting that disputes what she just told you under oath?

MR. McMAHON: Yes, it absolutely disputes it.

MR. DeROSE: All right. Go ahead. Ask your questions.

MR. McMAHON: Okay. Okay.

Page 107

BY MR. McMAHON:

Q. My question is: Do you remember having this conversation with Mr. Schroeder?

A. Yes.

Q. Okay. And this is obviously prior to November 4th of 2010?

A. And, again, I wasn't given the policy until --

Q. Okay.

A. -- November 4th, 2010. So for me I was cooperating with the company in giving this information.

Q. Okay. Okay. And that's my question. I just wanted --

A. That's what I'm saying is I didn't know that that was a standard, a standard, a policy --

Q. Okay.

A. -- until it was actually given to me.

Q. Okay.

A. You know.

MR. DeROSE: Your policy says what it says. We know that.

MR. McMAHON: John, I can't answer your questions in this deposition.

Page 108

MR. DeROSE: Well, you don't have to, but you're saying that disputes it. She also said that the policy does not allow for backdated documents.

MR. McMAHON: Well, she can say whatever she wants about the policy. What I'm trying to get at is this particular incident right here and the timeline of this. That's what I'm asking about right now.

The policy speaks for itself, yes, absolutely. What I'm trying to get at is the timeline events of this incident.

THE WITNESS: So this discussion then, since you want the timeline, occurred according to my timeline, to my chronology --

BY MR. McMAHON:

Q. Yes.

A. -- on October 21st which is still after the fact.

Q. Okay.

A. So regardless of when we had this conversation --

Q. Okay.

A. -- I did not know prior to October 19th that if I was going to have a sick day --

Page 109

Q. Uh-huh.

A. -- I needed to see a doctor and have a doctor's note excusing me from that date.

Q. That's fine. I understand what you're saying.

And Mr. Schroeder is giving you an opportunity nonetheless to bring in a note, correct?

A. We were cooperating with each other.

Q. Okay.

A. He was giving me an opportunity, and I was more than willing to try and get a note.

Q. Okay. Okay. And then you saw your doctor a few days after this conversation with Mr. Schroeder, correct?

A. Correct.

Q. Okay. And you have an entry on that in your chronology?

A. Correct.

Q. All right. And in that entry -- and I might be mispronouncing his name, but is it Dr. Goravitz (phonetic)?

A. Sure.

Q. Do you remember?

A. I know -- I don't know how to pronounce

Page 110

it. I know I've seen him because I've seen the name as well, but I don't know him personally. He's not my personal physician.
Q. Okay. And there's an entry there on October 25th, 2010. It says, "LMA told the doctor about her October 19th, 2010 depressive episode but forgot to ask for the letter regarding her October 19th, 2010 absence."
A. Correct.
Q. Okay. So you never did get a letter for that absence?
A. Correct.
Q. Okay. Aside from in the corrective action plan, is there any other evidence you contend shows that Volvo somehow mistreated you with respect to your military status or military leave?
A. There's too many to count. Honestly, again, this is all of your evidence. So you've provided me with this first CAP, which I'm showing you should not have been given to me since I did not know I needed to have a doctor's note. And with that said, then the October 19th occurrence would not have occurred and then I would not have received a verbal

Page 111

warning.
Do you have any other evidence for me to review?
Q. Ma'am, I'm talking about your evidence. You either know the answers to my questions or you don't.
I'm literally asking you aside from that, what other evidence do you have in this case that Volvo has mistreated you because of your military leave or military status?
A. Besides the fact of, you know, putting me under a microscope and expecting that or just waiting -- actually, not even waiting, setting me up for failure. Putting me under a microscope, not providing me with training that I specifically asked for, and then saying you're doing wrong and then trying to fire me based on those things. What more do you need?
Q. What were those things they tried to fire you based on?
A. First one, the attendance. Here's your proof for the attendance, okay. Another would be the -- like I had mentioned before, about the coming in late and starting -- taking too long to start my work.

Page 112

You want me to give you everything you -- like I said, I can't -- I can -- off the top of my head, those are the things that I can give you right now. You'll -- I'm sure my attorney will cover the rest when he gets his depositions.
Q. Well, it's my opportunity to try to find out what you know about the case, and I understand where you're coming from. There is a lot of evidence in the case, and there's a lot of documents.
A. Right.
Q. I'm not expecting you to memorize everything, but what I am expecting is some articulation of what other actions, you know, what other specific disciplinary actions you can point to that you --
A. Besides the microscope, besides trying to use their own policies against me, those -- that's not specific enough for you? You want to know exactly how?
Q. I do. For instance --
A. Besides this (indicating), besides asking me to go against their policy, besides not giving me training on something and then

Page 113

saying after the fact, oh, well, we're going to discipline you because you didn't do this that's in our policy that I -- that you weren't informed on, what else do I need to provide?
Q. Okay. Okay. How were you put under a microscope? I'm going to take each one of your subanswers in turn.
How were you put under a microscope at Volvo?
A. Attendance. I asked for a military leave day prior to drill weekends because I was experiencing PTSD which is a stress-related syndrome, okay.
Q. Uh-huh.
A. And I explained to Volvo that I needed the time off in order to destress, prepare for my military training besides the fact that I didn't have enough time between work and the time I had to report in order to do that, sleep and whatnot.
Q. Okay.
A. And I was told no.
Q. Okay.
A. The company did not have to provide that. And so I had to get ESGR involved.

Page 114

Q. Okay. Now, let me ask you this: Before ESGR got involved, what -- didn't you have some discussions about a modification to your work schedule?
A. Not discussions. I was told. I was ordered. I had requested the time off. I had requested my rights under USERRA. I was told this is what we're going to provide to you, and you will fall under the attendance policy.
Q. Okay.
A. It was not a discussion. And that is what I had asked for the whole entire time.
Q. Okay. There was a modification to your work hours, though, and I guess it would be Friday before drill weekends; is that correct?
A. Yes, yes.
Q. Is that the -- I mean, just so that we have the days right in terms of what we're talking about.
A. Yes.
Q. Okay.
A. I was told that on -- in October that they would allow me to come in two hours early and leave two hours early.
So instead of leaving at 12:30 at night

Page 115

and reporting to my unit at 5:00 o'clock in the morning, I would then leave at 10:00 o'clock at night reporting to my unit at 5:00 o'clock in the morning giving me less than six hours of sleep plus time to travel.
Q. When did you just say your schedule started? I'm sorry.
A. 5:00 o'clock in the morning.
Q. No. Not for the military schedule. I'm sorry. Your schedule at Volvo on those Fridays.
A. 10:00 in -- they would start at -- two hours early. So 4:30 I had to report. So at 2:30 in the afternoon.
Q. Okay. Okay. My understanding was that the original accommodation -- we'll get into when ESGR got involved.
But I thought the original accommodation was to modify your hours from 12:30 to 8:30?
A. Regardless, it still didn't provide me enough time for travel and eight hours of sleep.
Q. Okay. Obviously, though, the 12:30 to 8:30 is -- would you say that that's a more

Page 116

significant accommodation than the two-hour difference?
A. I was not asking for an accommodation. I was asking for my rights under USERRA.
Q. Okay. What do you mean by that?
A. Under USERRA I am entitled to eight hours of time for sleep plus travel from work to my residence for sleep and then from my residence to my unit to perform my duty.
Q. Okay. Okay.
A. There is no accommodation to that --
Q. Okay.
A. -- unless we work something out. I was not being given an accommodation. I was being dictated this is the time you will report to work.
Q. Okay. So you knew enough about USERRA to believe that that is something definitive provided under USERRA?
A. The eight hours time?
Q. Uh-huh. Yes. Before drill. Uh-huh.
A. Yes.
Q. Okay. If the evidence shows that USERRA does not actually provide for that and that is instead determined on a case-by-case

Page 117

basis based on the particular situation of the drill location, the type of the job we're talking about for the employee, would you then contend that any discussions about a modification of a work schedule makes sense?
A. No.
MR. DeROSE: Objection to the form of that question. We don't even agree with your presumption so --
MR. McMAHON: That's fine. You can object, John.
MR. DeROSE: It's a little argumentative, Counsel, but go ahead.
MR. McMAHON: You can object.
THE WITNESS: No. Because as was the case which is why I was so fearful and had to get ESGR involved, the lack of sleep endangered my life.
BY MR. McMAHON:
Q. Uh-huh.
A. So the type of duties that I do as a military member has nothing to do with the fact if I fall asleep behind the wheel trying to get home from work.
Q. Okay. Okay. Are you familiar with

Page 118

ASVET memorandum 5-99?
A. Familiar? No.
Q. Have you heard of it?
A. I probably read about it, yes.
Q. What have you read about it?
A. You'd have to read some of the beginning because I don't have it in front of me so . . .
Q. Sure, sure.
A. Again, off the top of my head.
Q. Well, I won't mark this as an exhibit. I have a single copy of it. But I'll hand it to you. You can take a look.
That -- ASVET 5-99 was a memorandum issued by the Department of Labor regarding certain issues under USERRA.
Have you seen that document before?
A. Yes.
Q. Okay. Take a moment to review it.
MR. DeROSE: Let me see it, too, please.
THE WITNESS: Uh-huh.
MR. McMAHON: Sure.
THE WITNESS: Oh, okay. That answers one of my questions.

Page 119

MR. DeROSE: Take your time.
MR. McMAHON: Yeah, please.
MR. DeROSE: Go ahead.
BY MR. McMAHON:
Q. You've had a chance to review it?
A. Yes.
Q. Okay. All right. Okay. The purpose of the memorandum -- and I'll read from that and then I'll ask a question -- says, "To convey the agency position on the amount of time off an employer should provide an employee prior to performance of service in a uniformed service."
And that is what we're talking about here, right?
A. Yes.
Q. Okay. It says, "While this policy has a broad application, the most common instance where the question arises is concerning the time between release from work and the start of weekend National Guard or Reserve inactive duty training periods (drills)."
That's what we're talking about here as well, correct?
A. Yes.

Page 120

Q. Okay. In other words, Friday schedule before drill weekend?
A. Inactive duty training is also ADT. It's also annual training. It encompasses a lot of things, not just a drill weekend.
Q. Okay. But in the particular instance we're talking about here with respect to --
A. We can apply it to this situation, yes.
Q. Thank you. The policy under this ASVET memorandum 5-99 reads as follows: It says, "VETS policy is that an employee be afforded enough time from the employer prior to starting military duty in order to travel to the duty location and arrive fit to perform the military service. How much time this is should be determined on a case-by-case basis. Such factors as the nature of the civilian job, the nature of the military duty to be performed, travel time, and other factors should be considered in arriving at an answer for a particular situation. In most cases, it will be more than simply travel time."
So do you agree that the ASVET memorandum 5-99 that we've all just looked at does not provide a definitive time frame?

Page 121

A. It is not USERRA.
Q. Okay.
A. It is just a legal analysis.
Q. Okay. Issued by the U.S. Department of Labor?
A. Yeah.
Q. That enforces USERRA?
A. I believe VETS does, yes, under the Department of Labor, yes.
Q. Okay. Okay. And this is interpretive guidance?
MR. DeROSE: Whoa, whoa, whoa. Counsel, you're not suggesting that's the only rule and regulation they have to follow under USERRA, are you?
MR. McMAHON: I'm suggesting this is the U.S. Department of Labor's interpretation on USERRA. That's all I'm suggesting.
MR. DeROSE: One department, one agency. There are others, Counsel. All right. Never mind. Go ahead.
MR. McMAHON: That's fine. That's fine.
MR. DeROSE: But, you know, don't hold her to that only. That's not the law.

Page 122

MR. McMAHON: Well, that's a legal conclusion, John.
MR. DeROSE: Well, we'll find that out, won't we, in the courtroom?
MR. McMAHON: We will.
THE WITNESS: Is that a legal conclusion, too?
MR. McMAHON: We will. We will.
MR. DeROSE: No. It's an agency conclusion.
THE WITNESS: Oh, okay.
BY MR. McMAHON:
Q. In trying to modify your work schedule on those Fridays before drills -- in trying to modify -- or in trying to come up with a modification to your work schedule on Fridays before drills, do you agree that Volvo was working with you in trying to come up with something?
A. Working with is not the phrase I would use. Dictating.
Q. Dictating, okay.
Could they have refused to modify your schedule altogether?
A. They did.

Page 123

Q. How?
A. They said we do not have to provide that to you. It's not in our policy.
Q. They changed your schedule, right?
A. Eventually, under duress.
Q. Did they change -- under -- well, under duress or under discussion, Ms. Arroyo?
A. Again, both.
Q. Okay. So --
A. You say discussion. I say duress.
Q. Okay. That's fine. There was a dialogue about what your schedule was going to be on those days, right?
A. They told me what it was going to be. If I did not do what they said, they were going to write me up.
Q. And you initially agreed to that?
A. Under duress. I did not agree. I said, you know what, I don't want to be written up.
Q. Does it make sense to you that there may have to be some experimentation between an employer and employee to determine an appropriate amount of leave time before a drill weekend?

Page 124

MR. DeROSE: Objection to the question to the extent it calls for a conclusion on the witness's part.
Go ahead. You may answer.
THE WITNESS: I think there would have to be a discussion, not dictation. I'm used to dictation. I am in the military. I know when somebody says do this, snap to, and go to it.
But when there's an issue that needs to be resolved and if it's not resolved people die, then it needs to be discussed. I was trying to engage them in a discussion.
BY MR. McMAHON:
Q. Okay. Okay.
A. No discussion resulted which is why I got ESGR involved.
Q. Okay. And, in fact, in the ASVET memorandum 5-99, picking up on that last provision I just read, it says, "When disputes arise on this issue, employer, employee, and the military command involved should work together to arrive at a compromise. VETS staff should offer to assist in mediating solutions that will best serve the interests of all parties involved."

Page 125

A. I had requested Volvo to contact ESGR so that we can resolve this. They said no. I asked Volvo again, well, let's contact human resources so that we can resolve this. They said, when you leave the room, we will call these people.
Q. Uh-huh. Okay.
A. There was no discussion. I had to get them involved myself.
Q. Okay. And you ultimately did?
A. Yes.
Q. And they got involved?
A. Yes, they did.
Q. Okay. That's a good thing?
A. We resolved the situation.
Q. Okay. That's a good thing, right?
A. Of course.
MR. McMAHON: Okay. I'm going to mark this as Exhibit 14.
(Deposition Exhibit No. 14 marked for identification.)
BY MR. McMAHON:
Q. Ms. Arroyo, I'll give you a minute to review this.
A. Okay.

Page 130

A. One, two, three.
Q. Where it starts with "I was glad."
A. We're on two different -- 8500 --
Q. I'm sorry. I'm sorry. I said third paragraph. I guess I meant really it's the second paragraph there. I was thinking third paragraph from the bottom. My apologies.
Second paragraph towards the bottom of that paragraph where it starts with, "I was glad."
A. Can you give me a line number?
Q. Let's see. I guess eighth line from the bottom of that paragraph where it starts with "I was."
A. Okay.
Q. Okay. Could you read that, please?
A. "I was glad that Mr. Schroeder realizes we need a third party to get involved, and that is why I went to ESGR."
Q. Okay. Keep going.
A. Excuse me. "I explained to him that ESGR was an unbiased third party who would not advocate for either side but hopefully help us to find a common ground."
Q. Okay. All right. And is that how you

Page 131

felt?
A. That's what I was told that they would do.
Q. Okay. Did you believe that?
A. Why wouldn't I?
Q. Okay. Now, I think you said ultimately there was some sort of resolution reached on this issue among some other issues?
A. Correct.
Q. Okay. Facilitated by Colonel Gorski?
A. Yes.
MR. McMAHON: Okay. I'm showing you what I'm going to mark as Exhibit 15.
(Deposition Exhibit No. 15 marked for identification.)
BY MR. McMAHON:
Q. Ms. Arroyo, I've handed you a document that I have identified as Exhibit 15 to your deposition. I'll give you a moment to review that.
A. Okay.
Q. Okay. What was the -- well, first of all, do you -- have you seen this document before?
A. Yes.

Page 132

Q. Okay. Is this the document or did you receive a copy of this document from Colonel Gorski?
A. He e-mailed it to me, yes.
Q. Okay. Okay. And this document, did he send it to you in or around April of 2011?
Does that time frame sound approximately right?
A. I think originally I received it in March.
Q. Okay.
A. And then Volvo had requested some changes.
Q. Okay.
A. So he changed whatever it is that they wanted, and I got it back, but I don't remember when.
Q. Okay. All right. There were, I guess, a few issues he addressed here.
It says issue one, issue two, issue three, and then issue four?
A. Correct.
Q. Okay.
A. Those were my four complaints.
Q. Okay. All right. He addressed each of

Page 133

these issues in this memorandum?
A. Yes.
Q. Okay. And do you think his resolution of the issues were acceptable?
A. They achieved the end state which was a compromise for what we want -- for what both of us, myself and Volvo, wanted.
Q. Okay.
A. I think that's a good enough answer.
Q. Okay. That's fair.
The first issue is what we've been talking about for some time now in this deposition, right, time off prior to drill?
A. Uh-huh.
MR. McMAHON: Okay. All right.
MR. DeROSE: Yes?
THE WITNESS: Yes.
MR. McMAHON: Thanks.
BY MR. McMAHON:
Q. Okay. And in terms of the ultimate resolution that was reached, what was agreed upon in connection with that first issue?
A. The conclusion was, "VETS policy is an employee should be afforded enough time off for the employer to start military duty in order to

Page 138

A. After one of my post appointment health reasons, I received a referral from the VA. I don't remember what the time frame was, but it was after that.
Q. Okay. Okay. 2010 time frame?
A. Oh, definitely, yes.
Q. Okay. Do you still see him currently?
A. Yes.
Q. Okay. How frequently do you see him?
A. Now that I'm an over-the-road truck driver, only once a month when I come in for my drill weekends.
Q. Okay. Did you see him, I guess, on a regular basis from 2010 going forward to the present?
A. Yes.
Q. Okay. Was there any periods of time in which you did not see him?
Like, in other words, you kind of stopped seeing him or stopped treatment with him in some way?
A. No.
Q. Okay. I had a question -- a couple questions for you about the third page of this document we're looking at in Exhibit 16.

Page 139

A. So 1003?
Q. Yeah. 1002. 1002. In the, I guess, first full paragraph on that page where it says, "I will consult with my counselor when I see him tomorrow."
A. Yep.
Q. Okay. There's a sentence there that says, "As a side note, when Mr. Schroeder had suggested I take FMLA previously, my counselor was against the idea when I consulted with him then because work can be rehabilitative."
Can you explain what you're referencing there in that sentence?
A. What do you mean?
Q. In other words, what are we talking about in terms of when Mr. Schroeder suggested FMLA and what your counselor advised about that?
A. Mr. Schroeder suggested that I take FMLA in November of 2010 --
Q. Okay.
A. -- to go fix myself. And my -- we had a -- my counselor and I had a conversation about that then.
Q. Uh-huh.

Page 140

A. And that's when he told me that work can be rehabilitative especially for someone like me who likes to achieve things.
Q. Okay. Okay. And did you agree -- and who advised you of that?
Was that Mr. Fask advising you of that or was that someone else?
A. It was a discussion we had. It wasn't like -- you know, with advisement -- I mean, I don't know.
Q. Okay.
A. It was just a discussion that we had.
Q. Okay. Did you agree with what Mr. Fask had to say about that?
A. Yes.
Q. Okay. All right. You eventually though did go out on, I guess, concurrent FMLA and short-term disability leave, correct?
A. Yes.
Q. Okay. And that was the time period you referenced before of the December through March time frame?
A. I didn't say March, but yes.
Q. Okay. You're also kind of expressing a concern here in the next paragraph. There's a

Page 141

sentence that says, "In addition, I do not want to have a disability" -- you have disability in quotes -- "on the record as that may affect my military service and future deployments."
What do you mean by that?
A. The stereotype in the military is that if you have a condition, whatever the condition may be, the Army will kick you out. Since the Yellow Ribbon events and Congress's push to stop the suicides that have been happening post deployments, it appears that the Army's changing that stereotype or trying to change that stereotype.
Q. Okay. Okay. I mean, you don't know of any military policy, right, where they've specifically come out and said certain disabilities are going to disqualify you from service?
A. Yes.
Q. Which ones?
A. You want me to list the disabilities? There's a whole regulation on that.
Q. Well, do you know the regulation?
A. Not offhand.
Q. Okay. At the time, I guess, when you

Page 150

the lowest and work their way up. Yes, I understand.
Q. Okay. And this was the treatment at VA Hines; is that correct?
A. It's mental health intake. It wasn't a treatment yet. They were taking my statements, listening to what I had to say as I was presenting myself, and determining a course of action.
Q. Okay.
A. Whether or not I should be seen by a psychiatrist.
Q. Okay. You say here that you feel like you were not being believed, like you were trying to be pushed in a certain direction.
What did you mean by that in terms of being pushed in a certain direction?
A. Well, hence the reference to the bipolarness. I come stating, you know, hey, I'm learning about this PTSD thing. I have all of these symptoms.
Q. Uh-huh.
A. I think I might have it. Can I see someone? Oh, well, where did you hear that and who told you PTSD? You know, I felt like I was

Page 151

being pushed away instead of, oh, okay. It makes sense.
Q. Okay. Okay. I'm going to pick up around the April 2011 time frame. It's kind of a little bit where we left off in the chronology in terms of Colonel Gorski's involvement with the final document and trying to memorialize some agreements that Volvo and yourself had reached on certain military issues.
That was April 2011-ish, right, March, April, somewhere around that time frame?
A. It was the end of March.
MR. McMAHON: Okay. I'm going to show you what I'm marking as Exhibit 18.
(Deposition Exhibit No. 18 marked for identification.)
BY MR. McMAHON:
Q. Okay. Have you seen this document before, Ms. Arroyo?
A. Yes.
Q. Okay. And, generally speaking, what is this document?
A. It's an indirect report which is -- I'm supposed to -- I was supposed to annotate any

Page 152

time that I was not spent scanning, that I did when I was not scanning.
Q. Okay. Okay. There's a description here.
The fourth entry on this description, it says, "zoned out"?
A. Uh-huh.
Q. Okay.
A. Yes.
Q. And your start time, you don't know when it was?
A. I don't know when it started.
Q. Question mark. Okay.
Who is that -- when you filled out this indirect report, who is this submitted to?
A. My immediate supervisor.
Q. Okay. Which at the time was who?
A. Patrick Dunne.
Q. Okay. So Mr. Dunne received this document?
A. On a daily basis.
Q. Okay. Did there come a time where Mr. Dunne spoke to you about the possibility of meeting to get evaluated to continue to do forklift work?

Page 153

A. Mr. Dunne told me that based on comments such as this zoned out, he felt that there was a safety concern.
Q. Okay. And did you eventually present to a Dr. John Koehler?
A. Yes.
Q. At Volvo's request?
A. Yes.
MR. McMAHON: I'll show you what I'm marking as 19.
(Deposition Exhibit No. 19 marked for identification.)
BY MR. McMAHON:
Q. Okay. You went to John -- you went to Dr. Koehler for an independent medical evaluation, correct?
A. Yes.
Q. Okay. Have you seen this document before I've handed you, Exhibit 19?
A. Yes.
Q. Okay. Do you remember speaking with Dr. Koehler when you met with him in April?
A. Yes.
Q. What did you describe to him?
A. What do you mean?

Page 154

Q. In other words, what did you say about -- you know, he obviously would have questioned you about the zoning out? That's kind of what precipitated the visit.
A. No, actually. He asked me specific questions about in the past, and I answered all of his questions about events that I had -- or experienced in the past.
Q. Such as?
A. Whether or not I had seen dead bodies, whether or not I had -- where I had been deployed at, you know, what an admin person should not have to deal with war, pretty triggering stuff, things you don't really want to talk about.
Q. Okay.
A. I -- I'm sorry. I don't really want to talk about.
Q. Okay. Dr. Koehler asked you these things?
A. Yes, he did.
Q. Okay. Did he talk to you about issues of zoning out at Volvo?
A. He did ask me, and I did tell him that in the past that I had issues with them, yes.

Page 155

Q. Okay. Did he make reference at all to the specific notation by you on the indirect sheet of zoning out?
A. No, he didn't.
Q. Okay. Did you make reference to that?
A. No, I did not.
Q. Okay. Did you make reference to having a speeding ticket for going 120 miles an hour?
A. Yes, I did.
Q. Okay. When did that happen?
A. April 2009.
Q. Okay.
A. Or May 2009, somewhere around there.
Q. Okay. All right. And do you understand that it was Dr. Koehler's recommendation that you be removed from all safety-sensitive work?
A. I did not know that until May, I believe, of 2011.
Q. Of 2011?
A. Yes.
Q. Okay. Okay. You found that out at that time?
A. I had requested a copy of this letter from Volvo at which point they needed to wait

Page 156

to get it to me.
Q. Okay. And then you did obtain a copy?
A. And then eventually I got this letter, yes.
Q. Okay. And you understood that after your independent medical exam with Dr. Koehler you were removed from forklift duty?
A. I understand that based on the recommendation of the doctor, the company had made the decision to remove me off the forklift, yes.
Q. Yes. Okay. And I take it the way you phrased that answer you disagreed with that or do disagree with that?
A. I was just phrasing my question.
Q. Do you disagree with it?
A. Yes.
Q. Why is that?
A. Because I already had a letter from my doctor which said that I was allowed to return to work without restriction.
Q. Okay. When was that letter?
A. As of March 2011.
Q. Okay. And you did return without restriction?

Page 157

A. I did.
Q. Okay. Okay. You operated the forklift?
A. Yes.
Q. Okay. Do you understand from the company's viewpoint how an issue like this could concern them?
A. No.
MR. DeROSE: Objection. Calls for a conclusion.
MR. McMAHON: That's fine.
THE WITNESS: No.
BY MR. McMAHON:
Q. Zoning out while operating a forklift, could that be a safety issue?
A. No.
Q. Not at all?
A. Past performance did not indicate that I had an issue operating a forklift.
Q. Okay. So not an issue at all?
A. No.
Q. Okay. Does past performance indicate your current medical status?
A. Yes.
Q. How so?

Page 158

A. In the fact that I have been struggling with PTSD for a long time, since I had returned from deployment in 2010.
Q. Uh-huh.
A. I already had the condition. I just had not yet been diagnosed. I operated the forklift without safety incidents.
Q. Uh-huh.
A. I received treatment, and then I returned to work after this -- the disability thing. There had not been any records of the -- of anything regarding safety for me during that period. It wasn't until these indirect sheets came about.
Q. Okay. Well, let me ask you this: On that indirect sheet, you did indicate zoned out, correct?
A. Yes.
Q. Okay. And that is your writing?
A. Yes.
Q. Okay. And had you mentioned something about zoning out ever before that point on an indirect sheet?
A. I did not have to fill out indirect sheets prior to that.

Page 159

Q. Okay.
A. And had I not had to fill out indirect sheets, the company would never have known I was having that issue.
Q. Okay. When were you first diagnosed with PTSD?
A. Officially?
Q. Uh-huh.
A. According to my VA records, I had -- the VA had given me an exam in December of 2011 which I tested positive for PTSD. I did not receive anything in writing confirming that until I was placed on short-term disability in January of 2011.
Q. Okay. Just a moment ago you mentioned December 2011?
A. I meant December 2010.
Q. Right. Okay. And official diagnosis January 2011?
A. Correct.
Q. Now, I understand one of the issues that you contend was a violation in this case was once you got placed off of forklift duty --
A. Once restrictions were imposed.
Q. Once restrictions were imposed by

Page 160

Dr. Koehler, that's right.
A. Okay.
Q. You were not eligible to work overtime on Saturdays?
A. I was denied the ability to work overtime.
Q. Okay. What was the explanation given to you in connection with that issue by Volvo?
A. Both my immediate supervisor, Mr. Schroeder, and their human resources representative all stated that it was because there was no work available for persons who did not operate a forklift.
Q. Okay. Did they say there was no work available or not enough available?
A. No work.
Q. Okay. And who was the human resources supervisor you spoke with?
A. Regina Williams.
Q. Okay. And what time period are we basically talking about here now?
A. April 2011 until I was -- those restrictions were removed in July of 2011.
Q. Okay. And I understand at some point on a day you were not scheduled to work, you

Page 161

went into work in the warehouse and saw someone packing on a Saturday?
A. Correct.
Q. And you brought that issue to Regina Williams' attention?
A. As well as other job duties that were being performed that did not require the use of a forklift.
Q. Okay. Such as?
A. Strapping. All containers need to be strapped. It doesn't require the use of a forklift.
Q. Okay. Okay. What was her response?
A. There was no work available for a person who did not operate a forklift.
Q. Okay. Do you know like on a given Saturday with respect to people that are responsible for packing on Saturdays how much of their time is actually spent packing?
A. I didn't time them. I didn't stand there with a timer. I had work I had to do.
Q. Okay. How long did you stay there when you came that Saturday?
A. Maybe ten minutes max.
Q. I think eventually you said that you --

Page 162

those restrictions were released, correct?
A. Yes.
Q. Okay. The restrictions that Dr. Koehler had put on you?
A. Yes.
MR. McMAHON: I'm going to show you what I'm going to mark as Exhibit 20.
(Deposition Exhibit No. 20 marked for identification.)
BY MR. McMAHON:
Q. Did you receive a copy of this letter?
A. I don't recall ever seeing this letter before.
Q. Okay. You can take a moment to review it if you want.
A. Okay.
Q. And I think you testified that Dr. Koehler did release you to full duty in July?
A. That's correct.
Q. 2011, okay.
Do you see the second page here that's Bates 2227? Up at the top paragraph, it says, "Therefore, it is my opinion upon receipt of a letter from her counselor, corroboration the

Page 163

above, she can be released back to full duty without restrictions. She'd be able to operate a forklift safely in my opinion as well as a crane, high lift, and other segments of her job"?
A. Yes, I see that.
Q. Okay. Okay. Do you remember having that follow-up visit with Dr. Koehler?
A. Yes.
Q. Okay. Do you remember what you discussed with him during that visit?
A. He asked me specifically as of currently was I -- did I receive any speeding tickets, had I fallen. The -- where it says outside of work, those were the questions that he asked me.
Q. Okay. And he also says no blackouts or anxiety attacks?
A. Uh-huh.
Q. Okay. It also says here at the bottom discussion, it says, "Ms. Arroyo has done very well completing her anger management and conflict resolution counseling."
What was that counseling -- or who had ordered for you to undergo that counseling?

Page 164

A. What do you mean ordered?
Q. Well, I guess, who had prescribed you to undergo that counseling?
A. The VA.
Q. The VA, okay.
What was that in connection with?
A. My diagnosis of PTSD.
Q. Okay. And that was the PTSD treatments?
A. Correct.
Q. That started, I guess, after the formal diagnosis in January?
A. Correct.
Q. Okay. And it says, "Her counselor is pleased with her progress."
That's Mr. Fask?
A. I would assume so.
Q. Okay. It says, "She's currently taking only one medication and is well controlled on that medication."
At the time of this note, what medication were you taking?
A. Sertraline.
Q. Okay. And what is that for?
A. PTSD.

Page 165

Q. Okay. Are you taking any medications currently?
A. Yes.
Q. Which ones?
A. Sertraline.
Q. Okay. Anything else?
A. That's prescribed? Flonase.
Q. Okay. That's not prescribed?
A. No.
Q. Okay.
A. Oh, wait. Well, it's not a medication, but I take a daily vitamin.
Q. Okay. That's good. All right.
Aside from -- and how do you say that again?
A. Sertraline.
Q. Sertraline? Okay. Sertraline, okay.
Which is -- you said that's for PTSD?
A. Correct.
Q. You're still taking that for PTSD?
A. Correct.
Q. Okay. What was -- and what was the other medication you mentioned?
A. Flonase.
Q. Flonase?

Page 166

A. And I forgot an inhaler.
Q. Okay. All right.
A. Oh, one more. Yeah. I'm very bad at medical history. Depo. Depo-Provera.
Q. Depo-Provera? Okay. What's that for?
A. Birth control.
Q. Okay. I'm going to show you -- before I show you that or get into that, how do you contend that the company mistreated you with regards to your PTSD?
A. I requested accommodations, some of which were provided. Others were not. Some of the accommodations that were provided were then used against me.
Q. Okay.
A. Or taken away from me.
Q. Okay. That's the primary area of concern, though, the accommodations you requested and the company's response and treatment of the same?
A. Well, the restriction of -- with the forklift because my doctor had returned me to full duty. There was no need for the restrictions.
Q. Okay.

Page 167

A. What else? Well, I can't list everything, but that -- I can -- off the top of my head, those two.
Q. Those two areas, okay. One other question about the forklift.
When you were returned to full duty, when Dr. Koehler returned you to full duty, you did work overtime after that point, right?
A. Yes.
Q. Okay. Including weekend overtime?
A. Yes.
Q. Okay. And while you were on restrictions from Dr. Koehler, you continued to workday overtime, right?
A. Correct.
MR. McMAHON: Okay. Okay. All right. I'm going to show you what I'm going to mark as Exhibit 21. I want to talk about some of the accommodations.
(Deposition Exhibit No. 21 marked for identification.)
BY MR. McMAHON:
Q. Take a moment to review this.
A. Okay.
Q. And I'm going to be showing you a

Page 168

series of e-mails and I apologize if some of them are duplicative, but I need to kind of attach the string to make it complete.
A. Uh-huh.
Q. On Exhibit 21, I guess it starts at Bates 989 and goes on to 990. There's an e-mail here where you e-mailed Keith Schroeder, Brian Fask, and you copied Regina Williams, and then you titled this accommodations.
Do you remember, is this the first time you had kind of articulated what accommodations you were seeking from Volvo?
A. No.
Q. It was not?
A. No.
Q. When was the first time?
A. With regards to my PTSD, it would have been in April.
Q. Okay.
A. No. March. When I returned back from short-term disability.
Q. Okay. What did you request in March?
A. The ability to take time off in order to attend therapy.
Q. Okay. And -- okay. Oh, I didn't mean

Page 169

to cut you off.
A. Sorry. With that, I was seeking specifically the FMLA leave.
Q. Okay. To seek therapy when you came back in March?
A. Correct.
Q. Okay. And at that point, what were you advised with respect to FMLA leave in March?
A. That my FMLA had been exhausted.
Q. Uh-huh.
A. And I was not eligible for any more FMLA until December 2011.
Q. Okay.
A. So then I asked for ETO time off.
Q. Okay. All right. And what was the company's response to that?
A. No.
Q. Okay. So what happened?
A. They told me that I was not -- Mr. Schroeder told me that I was not able to take time off, and if I wanted to take time off, then I'd have to take it -- the full day off. And I was only asking for a couple of hours. And then we had a conversation about the ETO policy.

Page 170

Q. Okay. And that was based on the ETO policy, Mr. Schroeder's response?
A. He claims so.
Q. Okay.
A. I disagree.
Q. Okay. I understand.
Now, ultimately, though, that was resolved, right?
A. Correct. Human resources decided that it would be okay.
Q. Okay. Okay. And so you took partial ETO days, if you will, to attend those appointments?
A. Correct.
Q. Okay. Aside from the ability to attend the appointments, my understanding was there were several more accommodations that you requested in this e-mail, this August 26th e-mail that we're looking at?
A. Okay.
Q. Do you remember the same?
A. Yes.
Q. Okay. First question is: What triggered you writing this e-mail to Mr. Schroeder?

Page 171

A. I felt like I was being harassed, that I was in a hostile work environment, and I had made reference that I was trying to use the coping skills that was -- that were being taught to me in my treatments and that I wouldn't always ask for permission.
And I was told that if there was anything that I wanted to do, I needed to put it -- I needed to ask them. So I said to myself, well, if I'm going to ask, I'm going to put it in writing.
Q. Okay. Okay. Makes sense.
Going back to your -- the first part of that response and then we'll get into what you have here in the e-mail, you mentioned that you were being harassed subject to a hostile work environment.
What specifically was going on around this time frame?
A. Other employees were making fun of me. I had informed Mr. Schroeder, and he told me, well, you know, there's nothing we can do about that. We had -- I had other employees who were making gestures and whatnot at my expense.
I had -- I felt like I was under a

Page 172

microscope with the -- being told -- being -- not given the standards and then being told that I was failing to meet the standards.
Q. Okay. Going back to -- you said there was coworkers -- I guess I don't -- what did you say?
A. Making fun of me.
Q. Making fun of you?
A. Uh-huh.
Q. Okay. I thought that was what you said.
A. Yeah.
Q. I just wanted to make sure.
Who were these coworkers that were doing this?
A. One was Bill Semenski. One was Nada. I don't know her last name. Another was John. And I don't know -- I don't know everybody's last name.
Q. Uh-huh.
A. And then there was a third guy, which he actually is in -- no. He's not one of those guys in the picture, but -- because he worked my shift. But I don't remember the other guy's name.

Page 173

Q. Okay. What specifically were they doing? I mean, what sticks out in your mind in terms of what they were doing to you?
A. With harassment?
Q. Uh-huh.
A. Besides the gestures or do you want me to describe the gestures?
Q. You can describe the gestures.
A. Twirling their fingers and pointing at me as we're waiting for a shift meeting. And, actually, that happened also prior to work as I was eating -- or, you know, what would be lunch. Before work started, I was sitting in the employee lounge area when that happened.
Q. Uh-huh. Did they say anything to you?
A. No, no. I ignored them as well. I didn't give any acknowledgment that I was seeing that because I didn't want to speak with them about the issue. I preferred to speak with management.
Q. Okay.
A. What else? In the locker room, once I was -- I had told management that I was having a problem with loud noises. All of the sudden people started slamming things around for no

Page 174

apparent reason. And then that's pretty much it that I can think of off the top of my head.
Q. Okay. Okay. In terms of the gestures that you saw people making --
A. Uh-huh.
Q. -- when did these things happen?
A. Like I said, at one time it was right before a shift meeting --
Q. Sure.
A. -- when people were gathering.
Q. Sure.
A. Okay. Another time was right before the beginning of our shift in the employee lunchroom --
Q. Uh-huh.
A. -- where people would wait to start work.
Q. Okay. Like, what were the approximate dates those things happened?
A. Oh, that was -- I didn't write that down. I know one was about -- I'd have to guess, and I'd rather not guess.
Q. In connection with these people doing these gestures, did anyone, you know, verbally say anything to you about your condition or

Page 175

anything like that?
A. I overhead one employee telling another employee as I drove by, "If she hates being here, why doesn't she just leave?"
Q. Okay. Okay. Did you hate being there?
A. No. I was having a good time. I love working.
Q. When you were at Volvo, did you like working at the military more than Volvo or the other way around?
A. There was no more than. Like I said, I love to work. So if there's work for me to do, I work.
Q. Okay. The reason I bring that up, in one of the -- in one of your doctor's notes, there's a reference where your mother had indicated to the doctor that you were having a hard time adjusting back to civilian life and you would just assume kind of continue to work in the military.
Do you have any sentiment along those lines?
A. Wait, wait, wait. I'm sorry. I don't understand. My mother made statements to a doctor?

Page 176

Q. Your doctor, uh-huh.
A. Was I present for this?
Q. I cannot answer your question on that.
A. Okay.
MR. DeROSE: So you want her to give a conclusion about something you think her mother said on a double hearsay?
Go ahead.
MR. McMAHON: I'm asking about what's in a note, but that's fine. I mean --
THE WITNESS: So can you ask the question again? I'm sorry.
BY MR. McMAHON:
Q. Yeah. Yeah. I guess I'm mostly interested in the sentiment, the sentiment.
A. What is a sentiment?
Q. The sentiment -- the sentiment based on the doctor's note, apparently a statement from your mother, okay.
A. Okay.
Q. To the effect that you're having a hard time adjusting back to civilian life and that you would rather continue to be working in the military.
A. So your question is is would I rather

Page 177

continue to be working in the military?
Q. Yes.
A. My answer is is I prefer to work. If you have work for me to do, I will work.
Q. Okay. Let me ask you this: Going back to Exhibit 21 that we're on -- I think we're on right now, right?
A. Yes.
Q. Okay. In your e-mail back here to Keith Schroeder, August 26th, 2011.
A. Okay.
Q. Okay. Now, there's a little bit of background here where I don't have the exact events detailed because -- listed out here, but it says, "On 8/23, I experienced an incident which brought about a major anxiety episode," and that's August 23rd, 2011, right?
A. Uh-huh, yes.
Q. What was that incident?
A. Apparently -- well, I'll tell what you I know of the incident. A coworker had called the police because I had parked my motorcycle where I have seen other people park their motorcycles, and she had a problem with it. So she called the police. They came, and they

Page 178

gave me a ticket. I didn't know that it was a coworker. And then --
Q. I thought you just said a coworker called?
A. I didn't know at the time. And then -- okay. So the original incident happened on -- 23rd. What was the 23rd? A Tuesday?
Q. We can look it up.
A. So well, regardless, the Saturday before, that is when the ticket was given to me, okay. So on the 23rd, the police came back to see if anybody was parking there and, of course, besides my motorcycle at the same spot there's another motorcycle parked there because that's where we park our motorcycles.
Q. Uh-huh.
A. There happened to be another coworker from another shift outside smoking a cigarette when he saw the police getting ready to give a ticket. He let us know that we needed to move our motorcycles. So we did.
That other employee went to find out what happened, and he's the one who told me that another coworker had called the police on me on Saturday. And she hadn't called them on

Page 179

the 23rd. And they had a whole discussion about it.
But because now on the 23rd I found out that somebody was targeting me, I no longer felt safe.
Q. Okay. All right. Let's back up a little bit. I think I'm following what you're saying, but I just want to make sure.
So this alleged coworker of yours that called the police, you did not find out from that person?
A. No.
Q. That they called the police?
A. No.
Q. You found out from another coworker that that person called the police?
A. Correct.
Q. Okay. Who was the coworker you found out about this incident from?
A. His name's Brian Accidental.
Q. Brian Accidental. Okay. Okay.
And what did he describe to you?
A. He told me that -- well, I can't tell you word for word everything that he said, but basically that she had called the police on me

Page 180

on Saturday. She hadn't called the police on the 23rd because he was there.
Q. I understand.
A. And that, you know, well, you understand that when you did that, of course, the cops are going to come back. And so he would have gotten a ticket as well. And that was pretty much it.
Q. Okay.
A. That was, I guess, what their whole conversation is -- was. That's all he told me.
Q. Okay. Did he say who he found out -- this out from?
A. I -- well, he did say, and I thought I heard him say Tracy. Later on, he told me it was somebody else, but regardless I had accused Tracy.
Q. Okay. And what's Tracy's last name?
A. Adams.
Q. Okay. Okay. All right. So he said he talked with Tracy Adams about this?
A. He said he had talked with her.
Q. Okay. Did he say he talked with the police about it?
A. Yes.

Page 181

Q. Okay. Okay. So did he say he also got a ticket; is that right?
A. No. He would have had that other coworker had not been outside smoking a cigarette to give us the warning that we needed to move, correct.
Q. Oh, okay. What did you receive a ticket for?
A. For parking in the lined parts of the handicapped parking.
Q. Okay. Okay. So at that point you felt like you -- what did you say your words were, targeted?
A. Correct.
Q. Okay.
A. And I felt like I was not safe.
Q. Okay. Did you confront Ms. Adams?
A. No.
Q. Okay. Did you talk to either Mr. Schroeder or Patrick Dunne about Ms. Adams?
A. Yes.
Q. What did you say?
A. I told Patrick Dunne about what had happened.
Q. Uh-huh.

Page 182

A. And that I was feeling very anxious, I did not feel safe, and I wanted the company to do something.
Q. Okay.
A. Which is why I came to speak to him.
Q. Okay. Okay. Did you express any sort of wanting to do anything violent to Ms. Adams?
A. No.
Q. You didn't?
A. No.
Q. Okay. Okay. Do you remember Mr. Schroeder -- in this conversation with Mr. Schroeder, do you remember giving -- him giving you a copy of the workplace violence policy?
A. I remember Mr. Schroeder cornering me in a small room with four -- four other -- so three other supervisors, closing the door, which I intentionally left open because I was not feeling very safe in a small room with no way to exit, and him throwing the harassment policy across the table at me that I was sitting at while they stood over me.
Q. Okay. Did he seem upset?
A. Yes.

Page 183

Q. Okay. What did he say?
A. He didn't say anything. He threw it at me, and then he said I could leave.
Q. Okay. Didn't say anything to you about your statements about Ms. Adams?
A. He said that on the day previous.
Q. On the day previous. What did he have to say to you then?
A. There was not going to be investigation and that my behavior would not be tolerated.
Q. Okay.
A. And that's what he said.
Q. Okay. Did you ever -- you said you never talked to Ms. Adams about it?
A. Correct.
Q. Okay. So you never gave her an opportunity to confirm or deny that she, in fact, reported you?
A. I requested the company to conduct an investigation.
Q. Uh-huh.
A. I requested intervention.
Q. Okay.
A. Did I need to confront the employee?
Q. I can't answer your question. I'm just

Page 184

trying to ask you questions.
A. That's what I did. So no.
Q. Okay. Okay. So that incident with Ms. Adams was kind of the trigger, if you will, for this e-mail to Mr. Schroeder on August 26th?
A. Correct.
Q. Okay. All right. And that's what got the dialogue started about the additional accommodations you requested?
A. Correct.
Q. Okay. All right. So in this e-mail you list some accommodations in this last paragraph here; is that right? And I'm on Bates 990.
A. Well, due to the fact that Mr. Schroeder had cornered me in the small office and closed the door and was looming over me while I was sitting in the chair, I felt threatened. And yes, I asked for only one person to be present whenever he had a discussion with me besides himself and me, of course.
Q. Okay. And during this discussion when he allegedly cornered you in a room, there were

Page 185

other individuals present besides him, right?
A. Yes.
Q. Who was present; do you remember?
A. Maureen Somerset, Patrick Dunne, and David Miller. And I'm not sure if Sharon Juncowski was out in the room.
Q. Okay. And it looks like on this document, on 989 Keith had replied to your request or he had replied to this e-mail on September 1st discussing accommodations?
A. No. This was not in reply to that e-mail. This was, it looks to me like a record of a meeting that he had with me when he suspended me.
Q. Okay. Yeah. In the first part, they're making reference to a meeting there, right?
A. But it wasn't -- he's not referring to August 26th. He's referring to August 31st when I was suspended.
Q. Okay. And I guess -- and I'll -- well, we're going to talk about that, too.
A. Okay.
Q. But I want to talk about like this second part here so I can kind of keep the

Page 186

accommodation discussion streamlined if possible here.
He said, "Reply to your request for accommodations."
A. Okay.
Q. Do you see that?
A. Yes.
Q. Okay. Yeah. Okay. So with respect to that part, he says, "Your request is for a quiet space to meditate, utilize relaxation techniques prior to work starting, at a break, or lunch."
And it says, "We will accommodate this with a private space in our warehouse operations office. We have a do not disturb magnetic sign available to you if you wish to place it on the outside of the door."
Okay. My understanding is that you did use an office space in the warehouse operations office for this?
A. Yes.
Q. Okay. All right. And that there was, in fact, a do not disturb magnetic sign that you could put outside if you wanted to?
A. Yes.

Page 187

Q. Okay. You don't deny that?
A. No.
Q. Okay. Now, eventually, there was a follow-up discussion you had, I guess, with Regina Williams concerning these accommodations?
A. On September 16th.
Q. Okay.
A. Due to --
Q. I guess -- I don't mean to cut you off.
MR. DeROSE: But you are.
THE WITNESS: It's not specifically these. It's not specifically these accommodations because on the 26th I really only asked for if Mr. Schroeder was going to speak to me that it only be him, a human resources representative, and maybe one other person, not three, and for the place to meditate.
After I was suspended, I made additional accommodations which is actually later on in this list, an additional 12 accommodations. So based off of 988 through 989 --

Page 188

BY MR. McMAHON:
Q. Uh-huh.
A. -- Ms. Regina Williams and I did have a conversation based off that e-mail.
Q. Okay. And that's what I want to talk about. And I didn't mean to cut you off previously.
Because you had said September 16th, and before we got there I wanted to establish, which is just what you said, there came a point in time where you requested additional accommodations after the suspension.
A. Uh-huh.
Q. Okay. All right. And are those accommodations reflected on 988 and 989?
A. Yes.
Q. Okay. And why were you requesting the additional accommodations in this e-mail?
A. Because Ms. Williams told me that any accommodations that I needed, I needed to tell them that I was making a request for an accommodation.
Q. Uh-huh.
A. So I said to myself I'll put it in writing. These are what I'm asking

Page 189

specifically.
Q. Okay. And why did you request these specific things?
A. I did research to see what the Department of Labor considered reasonable accommodations for PTSD, and these were some of the ideas that they had or recommendations that they had on their website. These seem to fall in line with the treatment that I was receiving.
MR. McMAHON: Okay. Okay. Now, actually, I'm going to show you -- I'll mark this as 22.
(Deposition Exhibit No. 22 marked for identification.)
BY MR. McMAHON:
Q. Ms. Arroyo, I'm showing you a document that's been marked as Exhibit 22 to your deposition.
A. Yes.
Q. Okay. Do you recognize this document?
A. Yes.
Q. Okay. You mentioned some research you had done before on accommodations with employees with PTSD.

Page 190

Was this one of the documents you looked at?
A. Yes. And that I provided to Volvo.
Q. Okay. And is this the document that you primarily relied upon for requesting the accommodations that you did?
A. Yes.
MR. McMAHON: Okay. I'm going to show you what I'm marking as Exhibit 23.
(Deposition Exhibit No. 23 marked for identification.)
BY MR. McMAHON:
Q. Again, I apologize about the chain nature of these e-mails, but if you take a look on Bates number 912 which is page 2 of Exhibit 23.
A. Yes.
Q. Do you see the e-mail at the top there?
A. Yes.
Q. Okay. That looks like a reply e-mail from Regina Williams to you, correct?
A. Yes.
Q. Okay. On September 1st, all right. And where she says, "We've received your accommodation request one through 12, and we

Page 191

will get back to you once we review them."
And it says, "Due to your suspension ending Friday, 9/2/2011, you can work Saturday, 9/3."
And then it says, "The ETO for 9/6 through 9/9/11 will be canceled as you requested. We've also noted your military leave."
Okay. That's Regina Williams getting back in touch with you with respect to the September 1st accommodation request?
A. August 31st, yes.
Q. August 31st or September 1st? Make sure of that. Let's take a look back at Exhibit 21.
A. Yeah. September 1st.
Q. September 1st, okay. Okay. And that's response to that. Okay.
Then she says on this top e-mail here on Exhibit 23 which is Wednesday, September 14th, "In contacting you to set up time today, September 14th, 2011 to review with you the accommodation list you requested, I've been on assigned jury duty for the week 9/12 through 9/16 and have not been able to set up

Page 192

time until today. I would like to have the conference call upon your arrival at work today. There will be a conference room available for you to take the conference call. Please advise if you're available."
Okay. And what happened after this point? In other words, did you eventually have a conference call with her about the accommodations?
A. On September 16th.
Q. Okay. And my understanding was that she sent you a document kind of memorializing where Volvo stood with respect to those various accommodation requests?
A. Yes.
MR. McMAHON: Okay. Okay. And I'm showing you what we're going to mark now as Exhibit 24.
(Deposition Exhibit No. 24 marked for identification.)
BY MR. McMAHON:
Q. Have you seen this document before?
A. Yes.
Q. And is this document the document you received from Regina Williams memorializing

Page 193

your discussion about the accommodations?
A. Yes.
Q. Okay. And specifically the accommodations that you listed in that September 1st, 2011 e-mail?
A. Correct.
Q. Okay. All right. Now, as of September 16th, several accommodations were agreed upon by the company, correct?
A. Correct.
Q. Okay. The company agreed to give you a place to meditate and relax before work and during breaks; is that correct?
A. Yes.
Q. Okay. And it specifically says here that VPNA agreed to your request on August 31st, 2011. "You may use the assigned room for up to 15 minutes prior to the start of your shift and during your breaks." Okay.
You also requested a mentor, and the company assigned Patrick Dunne as a mentor for you, correct?
A. Well, he never mentored me, but that's what they say in their letter.
Q. Okay. Did you feel comfortable

Page 194

approaching Mr. Dunne about things?
A. Yes.
Q. Okay. There was also some -- you also made additional requests for time off for counseling, okay.
And some of that had been -- I guess in terms of the dates had been definitively provided and then there was additional dates you were going to have in the future, correct?
A. Once I -- once those were scheduled, correct.
Q. Right. Okay. And they agreed to give you time off for that, correct?
A. Correct.
Q. You requested access to the company's wellness program and that was authorized as well, correct?
A. Correct.
Q. Okay. You also requested that you be allowed to take breaks during certain panic or anxiety attacks.
So this is during the shift, correct?
A. Correct.
Q. Okay. And that was granted as well based on some conditions, right?

Page 195

A. Yes.
Q. Okay. And there was -- you had also requested the availability to call a support person during panic or anxiety attacks?
A. Correct.
Q. Okay. And, again, with the conditions specified in this document, Exhibit 24; is that right?
A. Yes.
Q. Okay. Also at this time -- and this document is dated September 16th, 2011 that we're looking at -- there was still some accommodation requests under review, correct?
A. Correct.
Q. Okay. There was -- you had requested a flexible work schedule to allow makeup time in the case of tardiness, the ability to use noise dampening devices.
And at the time of this document, Volvo allowed you to wear one earplug or dampening device, right?
A. Yes.
Q. Okay. But there -- but it had safety concerns about you wearing earplugs in both ears; is that correct?

Page 196

A. Yes.
Q. Okay.
A. So they stated.
Q. Okay. And you were requesting to wear earplugs in both ears, right?
A. Correct.
Q. And number three, which is kind of somewhat related to number two, the ability to listen to audio relaxation devices.
Again, their position with respect to the one earbud at the time, correct?
A. Correct.
Q. Okay. The provision of day-to-day guidance and feedback. And, again, Volvo suggested that you speak with Patrick Dunne regarding that, okay.
Is also considering disability awareness training for persons whom interact with you and that all communications be given to you in writing.
Did you think this document accurately encompassed your discussions with the company as of September 16th, 2011?
A. No.
Q. It doesn't?

Page 197

A. There was an additional document that was provided that Ms. Regina Williams wanted me to give to my physician.
Q. Okay. What document was that?
A. It was a letter that specifically asked about the recommendation -- the request for a flexible work schedule.
Q. Okay.
A. At the time, I had asked Ms. Regina Williams at least three times if she needed my doctor to make a remark regarding any of the other accommodations that I had requested.
Q. Uh-huh.
A. And she had said no.
Q. Okay. Okay. Did her position on that change as you went through this process?
A. Yes.
Q. Okay. Okay. Around this same time period, there was also an issue of you initiating some sort of harassment complaint; is that correct?
A. Around September 16th?
Q. Around that time frame, yes. I'm going to show you a document if it refreshes your recollection here.

Page 198

A. That might help.
Q. Okay. Offhand, do you remember what that --
A. Oh, I do remember making a complaint against Mr. Schroeder for harassment, yes.
Q. Okay. What was the basis of that complaint?
A. The incidences of September -- or of August 26th as well as breaking some of the accommodations we already had.
MR. McMAHON: Okay. I'm going to show you this. This is marked as Exhibit 25.
(Deposition Exhibit No. 25 marked for identification.)
MR. McMAHON: Let's go off the record for a minute.
THE VIDEOGRAPHER: Going off the record. The time is now 3:17 p.m.
(Whereupon, a recess was had.)
THE VIDEOGRAPHER: Going on the record. The time is now 3:17 p.m.
BY MR. McMAHON:
Q. Okay. Ms. Arroyo, I've handed you Exhibit 25, and this is another chain of e-mails, I think different from what we were

Page 199

looking at before, though. On the last couple ones, we dealt with the accommodation request specifically.
If you look at 776 of this document, there is an e-mail from Regina Williams to you dated September 19th, 2011 where the subject is investigation of complaint of harassment, okay.
Ms. Williams explained to you in this e-mail that she had been assigned to investigate your harassment complaint?
A. Yes.
Q. Okay. And you initially replied to her that you didn't know -- you had an appointment that day and you didn't know the exact time you'd be able to be at work?
A. Correct.
Q. Okay. She replied back and said that she'll be available to start after you arrived at your scheduled appointment?
A. Correct.
Q. Okay. And then she sent a confirmation e-mail, it looks like -- I'm looking at Bates 774 -- on September 20th just to confirm you were going to be available, and it says -- you say in response to her also on September 20th,

Page 200

"I received your letter regarding my request for accommodations after I had sent my reply. I had sent another e-mail but saw that it had been too large of a file for my account to deliver. Based on the information in your letter, I believe it is in my best interest to obtain legal counsel before proceeding any further with the company."
Okay. So in between the time of this initial exchange, you had received the September 16th accommodations letter, Exhibit 24 that we're looking at?
A. Correct.
Q. Okay. And you thought that based on this letter, you needed to get legal counsel involved?
A. Correct.
Q. Okay. And why was that? Why did you think that?
A. The letter that she originally had Ms. Somerset hand to me was different, and the letter that I received, which you presented to me, had additional remarks put in there as well --
Q. Okay.

Page 201

A. -- that we had not discussed. Considering that I felt like going forward I would need some advice.
Q. Okay.
A. And that I could no longer deal with Volvo on a face-to-face basis.
Q. Okay.
A. One on one.
Q. You said there was some other letter that Ms. Somerset provided to you?
A. Yes.
Q. Do you have a copy of that?
A. If it's not in the evidence, then no.
Q. Okay. Do you believe you submitted it in connection with the documents we exchanged in the case?
A. I would believe so, but then again, there were so many duplicates of everything, it could have been -- gotten lost. I don't know.
Q. Understandable. Okay.
What was it about this letter specifically that bothered you?
A. The -- actually, the first paragraph after my name, second -- the second-to-last sentence.

Page 202

Q. And just so we're clear, we're on -- you're talking about Exhibit 24, right?
A. Correct.
Q. Okay.
A. Correct. Exhibit 24, first paragraph, second-to-last sentence. "Please note that following our conference call yesterday, I reviewed our discussion with VPNA management." Now, remember, I already had this, okay, so there's a change to this document which is this sentence.
Q. Okay.
A. All right. Which noted that I need to clarify that breaks which you will take during panic/anxiety attacks or to call a support person will be unpaid breaks.
Q. Okay.
A. So already making changes to an agreement that was made.
Q. Okay. Let me ask you a question about that, and I think eventually -- let me look at something. Okay. Well, we actually have another document coming up. Let me just introduce this real quick, and we'll stay right on that.

Page 203

Does that make sense?
A. Try not to get me confused.
MR. McMAHON: I'm not. This is building off this point. I'm just trying to be efficient. Okay.
Mark this as 26.
(Deposition Exhibit No. 26 marked for identification.)
BY MR. McMAHON:
Q. Okay. I'm handing you what's been marked as Exhibit 26.
Just a moment ago before I kind of abruptly cut the topic to introduce a new exhibit, you were talking about how you felt that the second-to-last sentence in Exhibit 24 was problematic about the breaks?
A. Yes.
Q. You know, being unpaid, okay.
Now, in Exhibit 26, Ms. Williams had sent you kind of a further clarification of what she meant by that; is that correct?
A. Yes.
Q. Okay. And in that further clarification, which was September 21st, it says that "Breaks which you will take during

Page 204

panic/anxiety attacks or a call to a support person will be unpaid breaks if the breaks are greater than 10 minutes. Breaks that are de minimus, 10 minutes or less, will be paid." Okay.
And you understood that was the clarification she was making in this e-mail?
A. Yes.
Q. Okay. Did you find that clarification to be problematic in any way?
A. Again, the difference between a conversation and a dictation, you know, I found that I wanted to eliminate a he said, she said, and so involving counsel would have made that easier.
Q. Okay. And I'll get to that in a minute based on your comment here to the investigation.
I guess what I'm asking about first is in terms of what Volvo ultimately agreed upon here, do you have any problem with that?
A. With 10 minutes or less being unpaid breaks?
Q. 10 minutes or less being paid.
MR. DeROSE: It says unpaid.

Page 205

MR. McMAHON: No, it does not.
THE WITNESS: What -- what --
BY MR. McMAHON:
Q. Unpaid if the breaks are greater than 10 minutes. Breaks that are de minimus, 10 minutes or less, will be paid.
A. So you're asking me do I have a problem with that statement?
Q. Yes.
A. Are there any other breaks that are 10 minutes or more that are not paid?
Is there a standard, a company standard?
Q. Okay. And I can't answer your question about that but --
A. But -- so if -- that's my point.
Q. Okay.
A. It -- the lack of a conversation made the crux as opposed to -- which is what happened, a dictatorship. You know, if we would have talked about this, we could have probably had the answers, but instead it was just no, this is what we're going to do. Okay. But there -- it leaves a lot of questions to be answered.

Page 206

Q. Okay.
A. Do I have a problem with there being questions that still need to be answered? Yes. That's why we're here.
Q. Here meaning at your deposition.
A. Here meaning this lawsuit.
Q. Okay. That's fair.
Regina Williams was obviously trying to follow up, though, with you on September 21st, right?
MR. DeROSE: Objection what someone else was trying to do.
MR. McMAHON: Okay.
MR. DeROSE: Calls for a conclusion.
BY MR. McMAHON:
Q. Ms. Regina Williams sent you this e-mail clarifying her position in her September 16th letter, correct?
A. She did clarify.
Q. Okay. Going back to Exhibit 25, that's kind of where we were.
It was based on Exhibit 24 you received that you had decided to obtain legal counsel; is that correct?
A. I'm sorry. I just blanked. What did

Page 207

you say?
Q. Sorry. Looking at Exhibit 25 on Bates number 774.
A. Okay.
Q. That's what we were talking about before.
It was based on your receipt of Regina Williams' September 16th, 2011 letter that you thought it was in your best interest to obtain legal counsel?
A. Correct.
Q. Okay. And in response to that, Ms. Williams indicated that she wanted to know when you are prepared to meet with me to begin the investigation, right, on 773?
A. No, no, no. She asked when I would be prepared, when I had agreed to meet with her. Then I responded with, well, now I'm looking for an attorney, so you have to wait until I obtain legal counsel before we can proceed forward. She didn't ask when that would be.
Q. Okay. She says here on 773 -- and I'm just reading her e-mail to you in the middle of the page. It says, "I understand from your reply that you do not want to meet with me

Page 208

until you obtain legal counsel. Please let me know when you are prepared to meet with me to begin the investigation."
A. She's asking me to let her know. She didn't ask me when would I be ready.
Q. "Please let me know when you are prepared to meet with me to begin the investigation."
A. Right.
Q. Okay. What did you interpret that to mean?
A. I didn't have a date to give to her is what I'm saying.
Q. Okay.
A. As soon as my attorney was prepared, she would contact Volvo and we would move forward.
Q. Okay. Okay. You e-mailed back to her on that same day, correct, on the top of 773?
A. Correct.
Q. Okay. And it says, "If you e-mail me the questions you have, I'm willing to respond in kind. Otherwise, we will need to wait for me to find and hire an attorney which there's no guarantee that can be done while you're here

Page 209

in Chicago."
And you go on to say, "The thought of speaking to anyone in the meeting has me anxious. E-mail communication will help lessen the stress. Thank you."
And you reply back on September 20th, correct?
A. Correct, yes. This was before I told them that I had found legal counsel.
Q. Okay. This is -- yeah. You had alerted them to the fact that you wanted to get legal counsel?
A. Right.
Q. But you had not yet obtained legal counsel?
A. Correct.
Q. Okay. And then Ms. Williams further responded back to you on September 21st, right?
And she says, "Thanks for your response. I need to understand more specifics about your concerns so I can begin the investigation. I've attached some questions per your request to obtain more specifics of the alleged violation. Please provide me additional information that will help in the

Page 210

investigation."
And then it says, "Per Volvo's harassment policy, Volvo prohibits retaliation against any individual who reports discrimination, harassment, or participates in investigation of such allegations."
A. This e-mail actually is out of order because I did not receive her e-mail until after I had informed them that I had obtained legal counsel.
Q. Okay.
A. And that when my initial interview with that counsel would be and that we would move forward from that point.
Q. Okay.
A. So essentially telling her now, I have counsel, so stop. Once she received that, then she sent me the questions.
Q. Okay.
A. So after the fact.
Q. Okay. After you had obtained an attorney?
A. Correct.
Q. Okay. And maybe that might more sense based on the front page of this.

Page 211

A. Correct.
Q. And Exhibit 25 on the front page, there's an e-mail down below. It says, "Ms. Williams" -- this is your e-mail to her, correct?
A. Correct.
Q. "I would like to inform you that I found a lawyer. I'm scheduled to do an initial interview with her on Monday. More information to follow once received." Okay.
And then you're saying then she sent this response to you?
A. Correct, which is hence the one that's at the top of page 771.
Q. Okay. All right. And you did retain an attorney, correct?
A. I did. Although not until -- she didn't become my attorney until October.
Q. Until October?
A. Right. She didn't -- I didn't sign -- we didn't sign the contract until then. She needed to review the case.
Q. Okay. Is there a reason she's not your attorney anymore in this case?
A. She's too expensive for me.

Page 212

Q. Okay.
A. John is nice enough to --
MR. DeROSE: Whoa, whoa, whoa, whoa.
THE WITNESS: Sorry.
MR. DeROSE: I don't want you to talk at all about what you and your lawyers agree to or say.
THE WITNESS: Sorry.
MR. DeROSE: That is not anything that any of us want to know about.
THE WITNESS: Understood.
BY MR. McMAHON:
Q. Right. Right. Okay. And I'm not trying to get into that. I'm just trying to get into why she's not representing you currently.
MR. DeROSE: And I object. You cannot answer. That might invade all kinds of attorney-client privileges. It really has no merit on this case anyway.
MR. McMAHON: Okay. Okay. I'll move on for right now.
BY MR. McMAHON:
Q. Okay. This top e-mail here, I guess, on Exhibit 25, going back to that, it says,

Page 213

"Ms. Williams, I presume you did not receive my e-mail."
And this is, I guess, based on the fact that she responded back to you after you had sent the e-mail down below?
A. Correct.
Q. Okay. And you said, "I'm forwarding it to you for your benefit. I've been advised to refrain from answering any questions until after my lawyer's been given an opportunity to review my case and advise me of my rights"; is that correct?
A. I'm sorry. Is what correct?
Q. Is that correct that's what you wrote to her in this e-mail?
A. That's what your exhibit shows, yes.
Q. Okay. Okay. And that's an accurate e-mail you sent to her?
A. Yes.
Q. Okay. All right. And you said your -- the first attorney you had representing you in this case, you didn't formally retain her as your counsel until October?
A. Correct.
MR. McMAHON: Okay.

Page 214

MR. DeROSE: Do you want to take five minutes? The reporter's fingers have been going.
MR. McMAHON: Let's take five minutes.
THE VIDEOGRAPHER: Going off the record. The time is now 3:33 p.m.
(Whereupon, a recess was had.)
THE VIDEOGRAPHER: Going on the record. This marks the beginning of media number four. The time is now 3:51 p.m.
BY MR. McMAHON:
Q. Okay. Ms. Arroyo, we're back on the record after a break.
My understanding was that around this September 20th time frame there was a couple days in which you reported to work, but you were sent home?
A. Yes.
Q. Is that correct? Okay.
Who sent you home from work?
A. I believe the first time was -- no. I think both times were Patrick.
Q. Patrick Dunne?
A. Yes.
Q. Okay. Did Patrick Dunne explain to you

Page 215

why he was sending you home from work?
A. For needing to wear earplugs.
Q. Okay. Specifically, for needing to wear earplugs in both ears?
A. Yes.
Q. And did you have follow-up communications with Regina Williams concerning that?
A. On September 20th, apparently she had sent me an e-mail -- was it the 20th? No. The 21st -- saying that I had reported to work. I had worn headphones and that the company was still looking into this accommodation. It was not granted except for one earplug in each ear. And if I required to wear both earplugs, I needed to have a doctor's note.
MR. McMAHON: Okay. Following up on that response -- I appreciate that -- I'm going to show you what I'm marking as Exhibit 27.
(Deposition Exhibit No. 27 marked for identification.)
BY MR. McMAHON:
Q. Okay. I'll let you have a moment to review this.
A. Okay.

Page 216

Q. There's several documents here, but I want to reference -- try to kind of establish the timeline here -- on Bates 705 and going on to 706.
A. Go ahead.
Q. There was an e-mail from Regina Williams to you on September 21st, 2011, okay.
Is that the e-mail that you were referencing just a couple moments ago in your testimony?
A. Yes.
Q. That you were thinking about? Okay. Okay.
And in this e-mail, she says that "The accommodation that was agreed upon on September 14th, 2011 in a conference call as well as a follow-up letter dated September 16th VPNA agrees you should wear one earplug or dampening device but has safety concerns about you wearing earplugs in both ears."
You subsequently requested that VPNA allow you to wear earplugs in both ears.
And then she says that "VPNA has not agreed to this request." And then she goes on to state about you reporting to work on

Page 217

September 20th with headphones on both ears.
Do you remember doing that?
A. Yes.
Q. And you remember being sent home from work that day?
A. Yes. After an hour.
Q. And she says on the 21st, she says, "Please be aware that to report for work today, 9/21, we request that you wear only one earplug or dampening device."
And then it says, "Due to our safety concerns, if you feel you need to wear two earplugs or dampening devices in order to perform your job, you will need to provide an IME, independent medical evaluation, to substantiate the medical necessity of this requirement before we can allow you to work. We will arrange for the IME and provide you with a date and time of the appointment."
And then it says, "To facilitate the physician assessing the necessity for you to wear noise dampening devices in both ears in order for you to be able to perform your job, please take the attached cover letter and current job description with you when you

Page 218

attend the IME."
Now, in response to that e-mail, you responded to Ms. Williams, correct?
A. Yes.
Q. On the next day; is that right?
A. Yes.
Q. Okay. And what do you say in response to her on 705 here?
A. "Will I be receiving excused absence until I am able to obtain documentation from my psychiatrist referencing the specific information you have requested?"
Q. Okay. All right. Okay. And then what does she respond back with in her response to you?
A. Oh, lord.
Q. Yeah. And you don't have to read all this.
But she does respond back to you that same day, right?
A. She says, "You have an appointment with your psychiatrist on September 27th," which is the same day I had given her on September 16th in the discussion of our accommodations and the original letter that she wanted me to take to

Page 219

my psychiatrist with only asking about the flexible work schedule.
Q. Okay. All right. Does it make sense that two different people might review different accommodation requests depending upon what the nature of the requests are?
MR. DeROSE: Objection.
But you may answer.
THE WITNESS: Does it make sense to me that two people review it?
BY MR. McMAHON:
Q. Well, not that two people review it, but that depending upon the type of accommodation request you're seeking that it might make sense for a certain type of physician to review it than a different type?
MR. DeROSE: If you know.
BY MR. McMAHON:
Q. If you know.
A. Yeah. I don't know.
Q. Okay.
A. It makes sense that if I'm asking for something that I'm treated for that my treating physician would respond.
Q. Okay. She does go on to say here,

Page 220

though, that "The time is excused, and we will pay you based on your normal work schedule until we obtain the requested doctors' evaluations"; is that correct?
A. Yes.
Q. And that was done in your case?
A. Yes.
Q. Okay. Then she let you know on 703 here to Exhibit 27, she says on September 22nd, "I apologize for any inconvenience. The appointment time was changed. I just received notice from Physicians Immediate Med. The appointment with John J. Koehler, M.D., board-certified in occupational medicine has been changed to September 28th, 2011 at 3:00 p.m. located at 1360 Houbolt Road."
And you replied back to that, correct?
A. Yes.
Q. And you replied back on September 26th, correct, on 702?
A. I don't believe this is in order.
Q. Okay.
A. I believe there is something missing, but according to your -- to your exhibit, yes.
Q. Okay. What do you say here in this

Page 221

e-mail that's September 26th, 2011 starting on Bates 702 going on to 703?
A. "I would like to return to work. I would like the company to provide reasonable accommodations for my disability. I would like the company to protect me from any harassment from fellow coworkers or management. Information regarding my disability and limitations has already been provided to HRSC. I will not be providing any additional information to the company.
"In addition, I will not be attending the appointment you scheduled. If you have not received notice by now, I am informing you that I have already filed a complaint with the EEOC. My attorney will contact you when we are ready to begin negotiations."
Q. Okay. My question for you here is -- you say, "Information regarding my disability and limitations has already been provided to HRSC." Okay.
What do you mean by that?
What are you referencing there?
A. Ms. Williams stated that -- hold on. Let me find it. So what she stated was that

Page 222

she wanted my physician to assess the necessity for me to wear noise dampening devices in both ears in order to be able to perform my job, okay. The job description she provided, right, which the company already knows what my job description is. In terms of my condition, they already knew of my diagnosis.
Q. Okay.
A. They already knew of what my symptoms were because a physician actually listed them out for them.
Q. Okay. And in connection with that, had they received a specific evaluation yet with respect to wearing headphones in both ears in relation to your symptoms?
A. They knew that I was suffering from tinnitus.
Q. From what?
A. Tinnitus.
Q. Tinnitus? What is that?
A. Ringing in the ears.
Q. Ringing in the ears?
A. Yes.
Q. Okay. Okay. Had they had a specific evaluation, though, with regards to the medical

Page 223

necessity of wearing two earplugs or noise dampening devices?
A. I had provided them with information about tinnitus.
Q. Okay.
A. And what tinnitus is and how it can cause pain.
Q. Okay.
A. So the company already had the information regarding why I was asking for this specific accommodation. I have the diagnosis.
Q. Okay.
A. It can -- it causes pain. I'm telling them it's causing pain.
Q. Uh-huh, uh-huh.
A. And they're telling me I need to go back to a doctor to restate what they already know.
Q. Okay. To answer my question, though, they did not have any specific medical information --
A. They didn't?
Q. -- about -- let me finish my question.
A. Okay.
Q. Okay. They did not -- at the time that

Page 224

you wrote this e-mail on September 26th, 2011, the company did not have any specific information regarding the medical necessity of you wearing two noise dampening devices as a reasonable accommodation; is that correct?
A. I believe that statement is false. They did have the required documentation.
Q. What document did they have that said it was a medical necessity for you to wear two noise dampening devices as of September 26th, 2011?
A. The diagnosis of the tinnitus.
Q. Okay. Anything else?
A. The information regarding the tinnitus, same as the PTSD. I have the diagnosis. I have the recommendations. We should be having a conversation. And instead it's a no, you'll only wear one.
Q. Well, wait a minute. Regina Williams is telling you here that she wants to get medical substantiation to see if your request for wearing two --
MR. DeROSE: Is this a question?
MR. McMAHON: This is a -- it's a question. It's a question.

Page 225

MR. DeROSE: All right. Let hear the question.
MR. McMAHON: Thank you. Thank you.
BY MR. McMAHON:
Q. Now, Ms. Williams is trying to determine, correct, if there's a --
MR. DeROSE: Objection to that, Counsel. We don't know what someone else is trying to do. Pose a question that she can answer.
BY MR. McMAHON:
Q. Ms. Williams is requesting that you undergo an IME in connection with your accommodation request; is that correct?
A. Well, not requesting. She's telling me.
Q. Okay. Why would Ms. Williams be telling you to do this?
MR. DeROSE: Objection to why someone else --
MR. McMAHON: Sure.
MR. DeROSE: -- does any action. Objection.
Unless you know why she's doing it. If you know, that's fine, but if you don't know, I

Page 226

don't want you to guess at someone else's motives for action.
BY MR. McMAHON:
Q. Do you know?
A. I'm sorry? The question? He was talking.
Q. Yeah.
MR. DeROSE: Well, excuse me now, young lady. I'm not just talking. I'm here being your lawyer.
THE WITNESS: No. I --
MR. DeROSE: So don't make this as a humor with regards to me. If you know an answer, you may give it. We do not want you to guess or surmise at anything. I'm sure counsel doesn't want that.
THE WITNESS: Well, and that's where I was missing the question hearing from -- okay.
BY MR. McMAHON:
Q. Understood. I'll rephrase the question. Okay.
You're wanting to return to work. You'd been sent home from work a couple days in September, correct?
A. Uh-huh.

Page 227

Q. Ms. Williams is saying to you that she on behalf of Volvo wants you to go to an IME to obtain additional documentation about the medical necessity for wearing two earplugs; is that correct?
A. Yes.
Q. Okay. What is your understanding of why she's telling you to do that?
A. Because they had safety concerns.
Q. Do you believe their safety concerns were legitimate concerns?
A. No.
Q. Why?
A. Because based on my job description, which I believe you provided that, correct? Which exhibit was that?
Q. That has been introduced as an exhibit.
A. Yeah. Let me find that. So it's Exhibit No. 2. It's not an essential function of my job. Physical demands does not list hearing as a requirement.
Q. Okay. So is it your testimony that if something is not listed as an essential function of your job, then it's not reasonable for the company to have a concern about safety?

Page 228

MR. DeROSE: Objection to her understanding in that regard. A jury can decide what's reasonable or not reasonable, Counsel.
MR. McMAHON: Well, she's testified that she didn't consider the safety concerns to be reasonable, John. I'm allowed to follow up on that.
BY MR. McMAHON:
Q. Ms. Arroyo, I'll ask my question again.
Is it your testimony that because the specific safety concern referenced is not listed in your job description, that it makes it somehow invalid?
A. In my opinion, the company didn't consider it as much of a concern to write it down such as specific vision ability is required, required to be able to lift 70 pounds, regularly required to reach with arms and hands. So if it was something that was required, then I believe they would have listed it.
Q. Okay. Are you aware that the company does have a policy on noise dampening devices?
A. Yes.

Page 229

Q. Okay. And are you aware that in connection with that policy that you are allowed to wear one earbud in an ear?
A. No.
Q. Okay. But you're aware of the policy?
A. I understand that the -- that OSHA states that noise dampening devices are required in facilities that have noise.
Q. Okay.
A. So the company would have such a policy. Same as OSHA requires us to wear a harness. So the company has a policy.
Have I seen the policy? No.
Q. Okay. Okay. And I'm not -- right now I'm not talking about policies that mandate protection against noise.
We're talking about policies that protect too much noise, right?
In other words, that's Regina Williams' concern that she's expressing to you?
A. Too much noise?
Q. Correct.
A. What's too much noise?
Q. Well, let's take a look at 701 on Exhibit 27.

Page 230

Because she tells you what the specific concern is, right?
A. No. Actually, I don't recall. Can you show me?
Q. Sure. Take a look at 701.
A. 701. Okay.
Q. Okay. Take a look at the last paragraph in her e-mail to you on Monday, September 26th, 2011. I'll give you a minute.
A. Okay. I see it.
Q. Okay. Now, she says here in this e-mail, it says -- she says, "Because we're concerned for your safety and other employees' safety, we need medical support regarding the necessity of you wearing earplugs, noise dampening devices, audio relaxation devices in both ears at work.
"Specifically, we are concerned with a possible injury if you should not hear forklift, order picker, or other heavy equipment used in the workplace. If you determine you can perform your job with one earplug, noise dampening device/audio relaxation device, you can return to work at your next scheduled shift."

Page 231

A. So --
MR. DeROSE: Wait. He didn't ask you a question.
THE WITNESS: Okay.
BY MR. McMAHON:
Q. That's correct. Let me ask my question here.
So what is the safety concern she's expressing in this e-mail to you?
A. The last sentence on 701 into 702, "Specifically, we are concerned with a possible injury if you should not hear forklift, order picker, or other heavy equipment used in the workplace."
Q. Okay. And you understand how that could be a safety concern in the facility, correct?
A. No.
Q. Okay. You've worked there since 2005 to 2011, six years?
A. Yes.
Q. Okay. You're aware that there are forklifts being driven in and out of rows?
A. Yes.
Q. Correct? And there are being forklifts

Page 232

driven close to where the packing station is as well, correct?
A. Yes.
Q. Okay. And you're aware of the possibility of not hearing a forklift were to turn around the corner; is that correct?
A. I don't see what hearing has anything to do with it.
Q. Okay. With respect to noise dampening devices, if you have a noise dampening device, are you hearing more or less sound?
A. The sound is still there. It is just muffled.
Q. Okay. So to answer my question, are you hearing more or less sound when you have a noise dampening device on?
MR. DeROSE: I thought she did answer your question. You want to ask her what she means by that?
THE WITNESS: The sound is still there. It is just muffled.
BY MR. McMAHON:
Q. Okay. So it is less intense, correct?
A. Okay.
Q. And do you disagree that that is not a

Page 233

legitimate safety concern at this facility?
A. Yes.
Q. Why?
A. Because there are strobe lights at the front of the vehicles. You can see them coming even if you can't hear them. I believe -- go ahead.
Q. Did you have a -- was it a practice of yours when you were on the forklifts to beep when you were coming out of a row and around a corner?
A. No.
Q. It wasn't?
A. No. I was not taught that.
Q. Okay. Okay. Now, you respond to Ms. Williams' e-mail here that we're looking at on 701, right?
A. Okay. Yes.
Q. Okay. And you say to her in this e-mail, "Does this mean that the company refuses to allow me to return to work? Does this mean the company refuses to provide me with accommodations? What about my request for protection from harassment? I'm not interested in how the company stores the information that

I've given it. It's already been provided.
"Please respond with a date I'll be allowed to return to work and an affirmative response to all requested accommodations. If you cannot provide this answer, then I suggest you refer to the people that can. Thank you."
Okay. And as a follow-up to this, you had actually sent an e-mail, it looks like here, to Pat Dunford where you copied Dennis Sholl and Regina on it, correct?
A. Yes. I was now going above Keith Schroeder and Regina Williams to the vice president of HR and the vice president of North America.
Q. Okay. And at this point Regina Williams replies back to you on the front page of 27 on 699.
A. Okay.
Q. Okay. And she says, "I've received your response" -- or excuse me -- "I've received your notice. Please see attachments for the response to the three points you raised in your e-mail, protection from harassment, accommodations, and your return to work."
Okay.



And there was a letter attachment that is at 708 to this document. Okay.
Do you remember receiving this?
A. Yes.
Q. Okay. All right. In this she recaps the accommodations that have been granted to date and the ones that the company is still considering, is that correct, if you look at the bottom of 708 in that last paragraph?
A. Oh, yes. Yes.
Q. Okay. And it goes on to 709?
A. Uh-huh.
Q. As she's recapping these things?
A. Yes.
Q. Similar to how she kind of outlined the initial agreement on September 16th, correct?
A. Somewhat, yes.
Q. Okay. I mean, would you agree that the process is one that is free flowing; it's not stagnant?
MR. DeROSE: Objection. Could you -- I don't understand that question.
Do you understand that question?
THE WITNESS: (Nodding head.)



BY MR. McMAHON:
Q. Okay. Sure. Sure. Would you agree that the -- would you agree that there is an interactive process with respect to your request for accommodations?
A. No. We were -- as of this e-mail, we were at the same point that we were on September 16th.
Q. Okay.
A. There had not been any change in status. The only thing that changed was now that I was using these things that I had asked accommodations for, i.e., the noise dampening devices, now they were changing what I needed to provide as evidence of the requirement to use those.
Q. Okay. But even as of September 16th, the company's position was that it would allow you to wear one earplug, right?
And that -- on September 16th, they indicated that accommodation for request was still under review?
A. That's my point.
Q. Correct?
A. That's all -- that's my point.



Everything was under review.
MR. DeROSE: The answer is correct.
THE WITNESS: Yes.
MR. DeROSE: He doesn't want to know your point.
THE WITNESS: Yes.
BY MR. McMAHON:
Q. Okay. Right. And to further this process, Ms. Williams had asked you to undergo an IME, correct?
A. She told -- yes.
Q. In connection with the same letter we're looking at on 708 --
A. Okay.
Q. -- Ms. Williams also followed up on your harassment investigation of Mr. Schroeder, correct?
A. She responded to my request for protection from harassment.
Q. Okay. And she mentioned specifically the fact that she had sent written questions to you before for you to explain your concerns, right?
A. Did she say that in here?
Q. If you can take a look at the -- I

Page 238

guess, the second paragraph, the last couple of sentences on September 21st.
A. So what was your question again? I'm sorry.
Q. My question was: In this letter, she references the fact that she sent you written questions before to express your concerns about harassment, right?
A. Yes.
Q. Okay. All right. And she says that VPNI or "VPNA and I remain committed to investigating your concerns about EEOC-related harassment by Mr. Schroeder, but I do not have enough information from you at this point to proceed with an investigation."
And then she says, "In an effort to minimize information you need to provide me so I can begin the investigation, I've attached a simplified form for you to complete and return to me."
And she attached that here to this letter, correct?
A. Yes.
Q. 713?
A. Yes. Which --

Page 239

MR. DeROSE: Whoa, whoa, whoa, whoa.
THE WITNESS: Yeah. I know.
BY MR. McMAHON:
Q. Which what?
A. Nothing.
Q. No. I'm asking the question now. Which what?
A. Which this is different than what she had provided -- from the questions that she sent to me. This 713 is different than the ones that she e-mailed.
Q. Right. She had e-mailed you a set of questions before, correct?
A. Yes.
Q. Yes. Okay. And then what she says here in this letter, she says, "I have attached a simplified form for you to complete and return to me," which is 713, correct?
A. This was attached, yes.
Q. Okay. And that was two sets of questions, correct?
A. I'm sorry?
Q. There was a set of questions she had sent you about harassment before?
A. Which were different from these sets of

Page 240

questions that she sent in the e-mail, correct.
Q. Yes. Okay. Okay.
Neither of which you filled out, right?
A. Correct.
MR. McMAHON: Okay. I'm going to show you what I'm marking as Exhibit 28.
(Deposition Exhibit No. 28 marked for identification.)
BY MR. McMAHON:
Q. Okay. I'll give you a minute to take a look at this.
A. Okay.
Q. Okay. On Exhibit 28, is this an e-mail that you sent to Ms. Williams responding to the latest e-mail we were looking at in Exhibit 27?
A. Yes.
Q. Okay. In connection with this e-mail to her, you actually make a claim of harassment against Ms. Williams?
A. Yes.
Q. Why is that?
A. For requiring me to go to -- for requiring me to go to two IMEs, not accepting what my doctor has to say essentially.
Q. Okay. But an IME is an independent

Page 241

medical evaluation, correct?
A. That's what it -- the acronym stands for.
Q. Okay. Is it understandable to you that Volvo would want to get an independent evaluation of whether a certain accommodation request is medically necessary?
MR. DeROSE: Objection to what's reasonable to her.
But you may answer, if you know.
THE WITNESS: Do I think that it was reasonable for them to ask me to go to their own doctor? Is that what you're asking me?
BY MR. McMAHON:
Q. Well, what I'm asking is: Is it reasonable to go -- is it reasonable for them to ask you to go to someone that is not your doctor in connection with a certain -- an accommodation request?
A. If I'm -- well, considering the circumstances, no.
Q. Why?
A. Because they provided the job description and all of that to my doctor.
Q. And so you're making a claim against --

Page 242

you're making a claim of harassment against
Regina Williams for asking you to go to an IME?
A. And also for failing to provide the information that I've already provided to her and to Mr. Schroeder regarding my diagnosis, prognosis, treatment, symptoms, yes.
Q. PTSD?
A. My diagnosis, prognosis, treatment, and symptoms.
Q. Okay. And are you making reference among other things to the Americans of the Hero sheet that we looked at previously?
A. No.
Q. You're not?
A. No. That was in regards to accommodations.
Q. Okay. Because that's kind of what I mean with respect to accommodations.
A. No.
Q. Okay. Do you agree that there's not going to be a set of accommodations that apply to everybody with PTSD?
A. Correct.
Q. Okay. That depending upon how someone reacts to PTSD, that person could require

Page 243

certain accommodations and not others?
A. Okay.
Q. Does that make sense to you?
A. I wouldn't say it's how they react.
Q. Well, how PTSD presents in that person.
A. Okay.
Q. Does that make sense?
A. Yeah.
Q. Okay. And you eventually did return to work after all this was going on, right?
A. Yes.
Q. And you returned to work without any headphones?
A. Correct.
Q. You mentioned earlier that there were some accommodations that were granted to you that were later, I guess, infringed upon in some way?
A. Yes.
Q. What were those?
A. The ability to use the meditation room, for one. Let me look at all the accommodations. I'm sorry.
Q. No. It's fine. Please.
A. Flexible work schedule was one, the

Page 244

noise dampening devices which weren't technically given to me, but I kind of put them on, the place to meditate. Though the company said that they provided a mentor, I was not given the policies and processes and procedures and standards that the company expected me to meet.
Allowed time off for counseling, provide day-to-day feedback. These are things that on, I believe -- Ms. Williams had replied as having the company had already providing in Bates number 708.
Q. And what exhibit are you looking at, just so I know?
A. No. 27.
Q. Okay.
A. Where she lists, you know, some of the things that were given, some of the modified accommodations that were given.
Q. Right.
A. Some of the things that were under review.
Q. Right. And my point is specifically with the things that were agreed upon --
A. Right.

Page 245

Q. -- what was later, I guess in your opinion, kind of retracted?
A. The flexible work schedule, the place to meditate, the assignment of a mentor, allowing time off for counseling, and providing day-to-day guidance and feedback.
Q. Okay. The flexible work schedule, where was that ever agreed upon?
And, I guess, what do you mean by the flexible work schedule? Let me ask you that.
A. Well, to begin with, when I asked for the flexible work schedule, it was in relation to my FMLA request in order to attend my appointments. So it kind of went hand in hand with number six, allowing time off for counseling.
Q. Okay. Okay. And I think -- I guess on 710 with respect to Exhibit 27 on page 710.
A. Go ahead.
Q. Okay. And then it says -- it says, "A flexible work schedule to allow you to attend classes on Wednesday mornings between 9:00 and 11:00." Then it says, "VPNA offered you a flexible work schedule 2:30 to 10:30 to help with travel and rest so you could attend the

Page 254

Q. Okay. Now, you allege here that in 109 -- and we'll talk about parking and everything along those lines, so we'll get to that.
But you allege here in 109 the new parking policy now necessitated that plaintiff would have to leave the meditation room and take the approximately ten-minute walk to the front of the plant and put on her safety equipment and harness in order to be prepared for the start of work. I want to ask you about that.
Ten-minute walk, did it take you ten minutes to walk from where this room is to the front?
A. That's what I stated.
Q. Is that accurate?
A. I didn't have a timekeeper that I paced how long it took me.
Q. Okay. Is that your testimony, though, it took ten minutes?
MR. DeROSE: Counsel, it says and put on equipment. Ten minutes to walk and put on the equipment. You got the and part, right?

Page 255

BY MR. McMAHON:
Q. Okay. How long did it take to walk?
Let's start with that. Thank you, John. That's a good clarification.
A. Again, I didn't have -- I didn't pace myself. I didn't sit there and go, oh, look, it's 4:30 right now and, oh, look, I got to the employee locker room. I wasn't -- it was an approximate. From this time to this time, I did X, Y, and Z on my indirect sheets. That's why I wrote them down.
Q. Okay. Okay. Talking about this, though, you worked there for five years, right?
A. Six.
Q. Six. Even better.
How long approximately does it take to walk from where you had this meditation room to, let's say, the front area where you punched in?
A. You're asking the same question. I mean --
Q. You don't know?
A. Do you want me to give you a made up number? I don't know is my answer.
MR. McMAHON: Okay.

Page 256

MR. DeROSE: He wants an approximation. Is that what you want?
MR. McMAHON: I want an approximation.
MR. DeROSE: Give him an approximation.
THE WITNESS: Five minutes, seven minutes.
BY MR. McMAHON:
Q. Seriously, I mean, that much?
MR. DeROSE: Whoa, whoa, whoa. Is that a question or is that --
MR. McMAHON: It is. Seriously, question mark. Seriously, question mark.
MR. DeROSE: I hope every one of her answers are serious.
MR. McMAHON: No. Well, I appreciate that, but what I'm trying to get at is the five to seven minutes.
MR. DeROSE: Well, Counsel, I don't want -- I really don't think you should comment on what you believe her answers are. I don't think that's going to get us anywhere before we're done.
MR. McMAHON: I appreciate that. I'm not trying to editorialize. I'm just trying to make sure we're on the same page.

Page 257

THE WITNESS: I never measured it. I don't know.
BY MR. McMAHON:
Q. Okay. Okay. Okay. Going back to the meditation room, what was the issue in connection with the meditation room in terms of why that wasn't a reasonable accommodation?
A. The meditation room was a reasonable accommodation.
Q. Okay. In terms of your issues with the meditation room after it was an agreed upon accommodation?
A. You mean the infringement?
Q. Sure. If you want to call it an infringement, sure.
A. Okay.
Q. What -- can you explain the issue?
A. The changes that the company made?
Okay. So as I have explained, my process would be to arrive at work, to punch in, go to the meditation room, meditate for the 15 minutes prior to work as I was allowed.
Q. Uh-huh.
A. The beginning of work to go to the employee locker room to prepare for work and

Page 258

then to go to work. After almost two months of that, there began to be changes told to me that I needed to change what I was doing. It was no longer acceptable.
Q. Okay. What were the changes that were told to you?
A. First, it started with you need to have your protective equipment on prior to the start of shift.
Q. Okay. What is your protective equipment in this particular case?
A. Safety shoes, safety harness, anything required to operate a forklift basically.
Q. Okay. Safety -- what type of shoes are we talking about?
A. ASI certified.
Q. Okay. Steel-toed shoes?
A. I don't believe they needed to be steel toed, but perhaps.
Q. Okay.
A. It's one of our things, the actual -- what was told.
Q. Okay. Okay. Some kind of shoes and a harness?
A. Yes.

Page 259

Q. Okay. All right. What else?
A. Well, that's the required equipment to operate a forklift.
Q. Okay.
A. That's what I would have to wear.
Q. Okay. And you were expected to have that on at the time the shift start bell rang?
A. That's what I was told after two months of me using the meditation room and having no issues.
Q. Okay. Okay. What else were you told?
A. After our conversation regarding that, then I was told that I was not allowed to walk through the warehouse until I put on my equipment. We had a conversation in terms of whether or not I would be paid to perform work prior to the start of shift. I was told no, that that would not occur.
So then I made the suggestion that I would park in the rear of the building in order to gain access to the meditation room which was now being restricted. No response was given to me. I did that for about three days, and then the company came back and said that there was a problem.

Page 260

MR. McMAHON: Okay. So let me --
MR. DeROSE: Please don't refer to company. Give us names of people. Company is millions of people.
THE WITNESS: Okay. So to rephrase, Mr. Schroeder.
MR. McMAHON: Okay. I'm going to show you what we're marking right now as Exhibit 29.
(Deposition Exhibit No. 29 marked for identification.)
BY MR. McMAHON:
Q. Okay. We're looking at Exhibit 29?
A. Yes.
Q. Okay. Do you remember receiving this memo from Keith Schroeder?
A. Yes.
Q. Okay. Does this memo kind of encompass what you were saying about the issue of you walking through the facility floor without the safety shoes on?
A. Yes.
Q. Okay.
A. And this is where I reference that I would not be paid for work performed prior to the beginning of shift.

Page 261

Q. Okay. Do you understand why the -- why Mr. Schroeder was asking you that you had your safety shoes on?
MR. DeROSE: Objection to why someone else does anything.
But you may answer, if you know.
THE WITNESS: According to this, he says that I was in violation of the safety shoe policy.
BY MR. McMAHON:
Q. Okay. How long did it take you to put on your shoes?
A. Well, it wasn't -- to put on the shoes itself?
Q. Yes.
A. Stop clock, I didn't have one. I didn't measure.
Q. Okay. Estimation?
A. Well, if it took me five to seven minutes to walk there and it's approximately ten minutes to prepare for work, five to seven minutes.
Q. Okay. Five to seven minutes to put on shoes?
A. Well, and then there's the harness that

Page 262

needs to be inspected.
Q. Okay. Well, with respect to this particular issue, though, I mean, what this is dealing with, right, is the fact that, I guess, David Miller, based on this memo, saw you leaving the meditation room that you were assigned --
MR. DeROSE: Objection to what someone else saw. But based on the memo, there is a -- the document does speak for itself.
MR. McMAHON: That's what I'm referencing.
BY MR. McMAHON:
Q. In the memo, there's a reference to David Miller having observed you leaving the assigned meditation room not wearing the safety shoes specifically, right?
A. That's correct.
Q. Okay.
A. It does reference that.
Q. When you were back in the meditation room, I take it then you typically did not have your safety shoes on at the time?
A. From August 26th when I was originally assigned the room until the date of this memo,

Page 263

that is correct.
Q. Okay. Okay. And then you put them on?
A. At the beginning of shift.
Q. Okay. After you received this memo, did you start wearing safety shoes in the meditation room?
A. No.
Q. Okay. Is there a reason?
A. I was driving to the back of the building. The use of safety shoes was not required.
Q. Okay. That's when you started parking in the back of the building?
A. That's correct.
MR. McMAHON: Okay. Okay.
MR. DeROSE: Off the record.
(Whereupon, a discussion was had off the record.)
BY MR. McMAHON:
Q. Okay. Okay. Eventually, Mr. Schroeder had a meeting with you regarding the parking in the back of the building, correct?
A. Yes.
MR. McMAHON: Okay. All right. I am showing you what is being marked as Exhibit 30.

Page 264

(Deposition Exhibit No. 30 marked for identification.)
BY MR. McMAHON:
Q. Okay. And do you recognize this document?
A. Yes.
Q. Okay. And is this copies of meeting notes that Mr. Schroeder provided to you on or about November 1st, 2011?
A. He provided to the -- yes, on November 1st.
Q. On November 1st, okay.
And, presumably, you had a meeting that kind of was the precursor to these notes being written down?
A. Negative. He wrote the notes and then gave me the meeting.
Q. Okay. Got it. Okay.
So the notes precipitated the meeting?
A. Correct.
Q. Okay. And he handed you these notes at the beginning of the meeting?
A. Correct.
Q. Okay. All right. What did you discuss during that meeting on November 1st?

Page 265

A. There was no discussion. He read the notes.
Q. Okay. And what did you say in response?
A. I really don't recall.
Q. Okay. All right. A couple things that I want to ask about here.
It says, "Start time, when the bell rings, you should be prepared to begin work."
And he says, "A, walking to your workstation in order to obtain a vehicle or attending a shift meeting and, B, wearing PPE and with tools."
Did you understand what he meant by that?
A. Yes.
Q. And then he also mentions about arrival time following counseling sessions.
He has a couple bullets there as well; is that right?
A. Yes.
Q. Okay. We talked about that a little bit at the onset of the deposition.
When you were having these counseling appointments --

Page 266

A. No. We did? I thought that was part of your question before.
Q. Yeah. At the onset of this deposition, toward the beginning is what I meant. Sorry.
A. Oh, okay. Okay.
Q. We had referenced, I believe, when you started going to these appointments that you told Mr. Schroeder approximately it would be 6:30 when you got into work?
A. I said not before 6:30.
Q. Okay. Not before 6:30?
A. Correct.
Q. And there were times afterwards where -- or there were times that you arrived to work later than that?
A. Yes.
Q. Okay. And there's some notations on the meditation room in this. Well, here it says mediation room.
Some notations about the meditation room as well, though, that he puts here on Exhibit 30, right?
A. Yes.
Q. Is that right? Okay.
And he explained to you that use of the

Page 267

rooms provided for meditation does not negate you needing to be prepared to start work when the bell rings.
A. I see.
Q. See above. The B. Okay.
What did you understand that to mean when he said that?
A. That I am to put on my protective equipment and inspect it, essentially perform work, before the start of my shift.
Q. Put on your protective equipment and inspect it, what do you mean by that?
A. Well, before I put it on, I need to inspect it.
Q. What are you putting on?
A. My harness and my shoes.
Q. Okay. Okay. All right. And that you need to be prepared to work when the bell rings?
A. That I have all the tools necessary.
Q. Okay. All right. And then there was one -- there was a part C on the second page of this document, on Exhibit 30.
And he says, "The access to the room for use during meditation must be through the

Page 268

warehouse with parking in the employee lot in front of the building. Parking in the rear of the building is not available because of safety concerns."
Okay. Did he explain that to you when he met with you in the meeting?
A. No.
Q. He didn't at all?
A. No.
Q. Okay. Do you understand there could be safety concerns parking in the back?
A. No.
Q. You had previously started -- you -- when you had started using the meditation room originally, you had started parking in the front of the building, correct?
A. Yes.
Q. Okay. And why was it again you started parking in the back?
A. Because Mr. Schroeder would not allow me to walk through the warehouse unless I had my protective equipment on and performed work essentially prior to the start of shift.
Q. Protective equipment on or shoes?
A. Protective equipment, PPE, personal

Page 269

protective equipment, PPE.
Q. Well, going back to this memo, though, Exhibit 29, right, 29 just references your shoes, correct?
A. Your exhibit does, and I sent an e-mail asking clarification, which he clarifies that he does mean PPE.
Q. Okay. And this was for purposes of walking from the front entrance where you punch in to the back office space where you had the meditation room?
A. Well, according to this Exhibit 30, he wants me to have all of my PPE on, to have all of my tools gathered, to essentially be at my workstation when the bell rings.
Q. Uh-huh.
A. And as I stated, not a problem if I was allowed to work before the beginning of my shift and I was told I was not.
Q. Uh-huh. Okay. Were other employees walking to or at their stations at the time the bell rung?
A. I'd seen other people walking around. Where they were going, I didn't pay attention. I was headed to the employee locker room.

Page 270

Q. How did you know -- you parked in the back, right?
A. Yes.
Q. Okay. My understanding, though, is you did not leave your vehicle there all day?
A. Yes.
Q. You did?
A. No, I didn't. I am making an affirmative to what you've just said. So no, I did not leave my vehicle there all day.
Q. What did you do with it?
A. I drove to the front of the building and parked it there.
Q. Okay. When did you drive to the front of the building?
A. When the bell rang. In order to get from the back of the building to the front of the building which is where the employee locker room was and my equipment, I would not have any other way unless I had walked around the building to get from the back of the building to the front of the building.
Q. Okay. So you left when the bell rang?
A. Indicating the start of the shift.
Q. Okay. Couldn't you have left before

Page 271

the bell rang?
MR. DeROSE: Objection to what she could have done. You're asking what she did do.
MR. McMAHON: I'm asking what she could have done. I'm absolutely asking what she could have done.
BY MR. McMAHON:
Q. Could you have left it -- could you have left the meditation room five minutes earlier?
A. It never entered my mind. Perhaps if we had a discussion, that could have been brought up.
Q. Was anyone preventing you from leaving the meditation room earlier?
A. No.
MR. McMAHON: Okay. I'm going to show you what's been marked as Exhibit 31.
(Deposition Exhibit No. 31 marked for identification.)
BY MR. McMAHON:
Q. Okay. Okay. Very quickly, in connection with November 1st in this meeting where your routine had been -- had become

Page 272

problematic to Mr. Schroeder, did he give you any sort of attendance occurrence with respect to this day, looking at Exhibit 30?
A. On November 1st?
Q. Yeah. In connection -- in connection with --
A. November 2nd that you just provided.
Q. Okay. In connection with what you did on November 1st, did he provide you with an attendance occurrence?
A. Yes.
Q. He did?
A. Yes. On November -- he wrote me up on November 3rd for November 2nd. And on November 4th for, I guess, November 3rd, and then terminated me.
Q. Well, I'm asking about specifically. And we're going to get into those. I'm going to show them to you. So I'm not trying to quiz you but --
A. Maybe I'm confused on the question.
Q. What I'm trying to get at is with respect to November 1st, to your knowledge, did you receive an occurrence for November 1st?
A. Oh, so -- so I understand the question,

Page 273

you're asking me the date that he gave me the meeting note, did he also give me a CAP, a corrective action plan?
Q. Not did he give you a CAP, but did you get an attendance occurrence?
A. On November 1st?
Q. Uh-huh.
A. No.
Q. Okay. And you understand that not each attendance occurrence rises to the next level of disciplinary action, right?
A. You're asking me or you're telling me?
Q. I'm asking you.
A. I would assume an occurrence would be like --
MR. DeROSE: Objection to assuming. If you don't know, you don't know.
THE WITNESS: Okay.
MR. DeROSE: But don't assume anything.
THE WITNESS: Okay.
BY MR. McMAHON:
Q. Do you understand under the attendance policy you need so many infractions -- or so many -- excuse me, not infractions -- so many occurrences in a certain period of time in

Page 274

order to get a step in the disciplinary process?
A. Okay. There's probably where my confusion was.
Q. Okay.
A. Okay. So yes, according to the policy -- and I believe you provided that, so let's go back to that.
Q. Yes.
A. According to the policy on Bates 2326, second paragraph, "An employee who has an unauthorized" -- oh, that's on the next page.
"If upon review of an employee's attendance record there is two unauthorized occurrences within the acceptable four-week period, corrective action will be taken."
Q. Okay.
A. "Furthermore, if an employee accumulates five unauthorized occurrences in a six-month period, even though fewer than two, corrective action will be taken."
Q. Okay. Okay. So, in other words, to answer my question, if you have one total cumulative occurrence, that doesn't trigger anything under the policy, right?

Page 275

A. Well, then we'd have to talk about what is considered one occurrence. And according to the policy, one hour or less is a half occurrence.
Q. Correct.
A. Over one hour but less than four is a quarter of a -- three-quarters of an occurrence. And four hours or more is one full. So then I would need two full occurrences, yes.
Q. Uh-huh. Okay. Going back to my question then about Exhibit 30 since we're on the same page now in terms of occurrences versus disciplinary steps?
A. Right.
Q. Okay. Exhibit 30, November 1st, 2011, you did not receive an occurrence on November 1st, 2011?
A. Correct.
Q. Okay. The next day on November 2nd, 2011, Mr. Schroeder posted a memorandum; is that correct?
A. No, that's not correct.
Q. Okay. Did he send a memorandum?
A. No.

Page 276

Q. Okay.
A. This memorandum was not posted.
Q. Okay. Did you receive a copy of this?
A. No.
Q. Okay. You've never -- you've only seen this before in connection with this case?
A. That's correct. After the fact during discovery.
Q. Okay. Nonetheless, on November 1st, 2011, he told you that you cannot park in the back of the building due to safety concerns?
A. That's correct.
MR. McMAHON: Okay. Okay. I'll show you what I'm marking as Exhibit 32.
(Deposition Exhibit No. 32 marked for identification.)
BY MR. McMAHON:
Q. Okay. Ms. Arroyo, you have Exhibit 32 in front of you?
A. Yes.
Q. Okay. And there's actually two pages to this. There's a CAP dated November 3rd, 2011 and also one dated November 4th, 2011.
Do you see those?
A. Yes.

Page 277

Q. Okay. The one dated November 3rd, 2011, Mr. Schroeder attempted to present this to you?
A. Yes.
Q. Okay.
A. Oh, he did present it to me.
Q. Okay.
A. He didn't give it to me.
Q. He didn't give it to you.
You refused to sign it?
A. That's correct.
Q. Okay. Why did you refuse to sign it?
A. What I told him was my attorney was engaging the company in mediation with the EEOC, that this would be resolved at that mediation, and if they had any questions -- that they were not to speak to me.
And if that -- they had any questions, they could contact my attorney. I provided them with my attorney's business card --
Q. Uh-huh.
A. -- essentially saying that I didn't want to speak to the company or any representative thereof unless my attorney was present.

Page 278

Q. Okay. Okay. In connection with this incident, Mr. Schroeder recites here on November 2nd, 2011 at 4:30 p.m., you were observed by management exiting the operations office, then proceeded to your car which was parked in the south truck trailer area of the facility property; is that accurate?
A. That's correct.
Q. Okay. And that's typically -- that's consistent with what you testified to earlier, right?
A. That's correct.
Q. In other words, you had heard -- you'd hear the start shift bell and at that point you'd be walking to your car that was parked in the rear of the building?
A. Correct.
Q. Okay. Mr. Schroeder goes on to state here "Your action violated the shift start time and mediation room guidelines communicated to you on November 1st, 2011"?
MR. DeROSE: He meant meditation room, not mediation. I know it says mediation.
MR. McMAHON: Thank you. I'm reading it too literally.

Page 279

Let's go off the record.
THE VIDEOGRAPHER: Going off the record. The time is now 5:07 p.m.
(Whereupon, a recess was had.)
THE VIDEOGRAPHER: Going on the record. This marks the beginning of media number five. The time is now 5:20 p.m.
BY MR. McMAHON:
Q. Ms. Arroyo, before we took our break, we were looking at Exhibit 32?
A. Yes.
Q. Which was a corrective action plan that was given to you by Mr. Schroeder on November 3rd in connection with actions that occurred on November 2nd?
A. That's correct.
Q. Okay. Now, we had read the first part of that discipline, but it says, "Additionally, you will be charged with .5 occurrence for violation of the start rule policy subject to the guidelines in our attendance policy."
So did you understand that you were being charged with half of an occurrence for November 2nd?
A. No, actually, I hadn't.

Page 280

Q. You didn't understand that from this?
A. No.
Q. Okay. And why is that?
A. This reference to a start rule policy, like I said, it was just the meeting notes that he provided me. I didn't know there was an actual policy that had been made.
In addition, in this policy that he referenced, there was no mention that an occurrence would be given if I continued. Do you see what I'm saying?
Q. Okay. With respect to -- well, let's take a look at the attendance policy.
I mean, you understand you had to be ready to work at the start of the shift, right?
A. I understood that it was part of my duties to prepare for work by putting on protective equipment.
Q. Okay. Let's take a look at the attendance policy. That's Exhibit 9.
A. Yes.
Q. Okay. Do you have Exhibit 9 in front of you, Ms. Arroyo?
A. Yes.
Q. Okay. Do you see the front page of

Page 281

that exhibit under guidelines?
A. Okay.
Q. Okay. Do you see the third sentence in that first paragraph?
A. Okay.
Q. It says, "All employees are expected to be in the building and ready to work at the scheduled start time and continue to work until the schedule of hours are completed."
Do you see that?
A. I see that.
Q. Okay. And based on management's observation of you -- going back to 32, management's observation of you at 4:30 p.m., you were exiting the operations office and driving your car around back.
At that point in time, you are not ready to work yet, are you?
A. Yes, I am.
Q. How so?
A. I had finished mentally preparing to work, and I was just waiting to be allowed to work.
Q. Okay.
A. The bell rang which signaled the start

Page 282

of me to be allowed to work.
Q. Okay. But at the time the bell rang, you are walking out to your car that's parked in the rear of the building?
A. So that I can move to the work.
Q. Okay. But you're not walking to where your forklift is, correct?
A. That's correct.
Q. Okay. You were not doing any sort of inspection with anything in the facility at the time?
A. That's correct.
Q. Okay. And Mr. Schroeder indicated here with respect to this November 3rd instance that you were being charged a fractional occurrence, correct, under the attendance policy?
A. Okay.
Q. Is that right?
A. That is --
MR. DeROSE: I don't know if it's right, but that's what the document says.
THE WITNESS: Right, right.
BY MR. McMAHON:
Q. Okay. Okay. All right. So you understood from reading this that you were

Page 283

going to be charged with half of an occurrence under the attendance policy?
A. No, I didn't understand that, again, because I was moving to the work.
Q. Okay.
A. So I was ready to work, according to the attendance policy. I was just waiting to be allowed to work. Up until the bell rings, I'm not allowed to work. So the bell rang signaling I could work.
Q. Okay.
A. So I needed to move to the work, which is what I did.
Q. Okay. You understood, though, that Mr. Schroeder was, I guess, giving you half of an occurrence for this, even if you personally disagreed with it?
A. Did I understand that? No. Because I didn't read it. It wasn't explained to me. I told him that he'd have to contact my attorney if he wanted to communicate things to me.
Q. Okay. Okay. So when you received this and refused to sign it, you didn't read it?
A. No.
Q. Okay. Did you keep a copy of it?

Page 284

A. Yes.
Q. And, actually, I just remembered that the next thing I want to ask about is the second page of this same document. Okay.
On November 4th, you were written up for this same conduct, correct?
A. Well, this document states that on November 4th he generated this document relating to incidents that happened on November 4th.
Q. Uh-huh. That's correct.
And do you remember receiving this document?
A. On November 8th.
Q. On November 8th, okay.
And this is the same sort of -- I mean, this is the same issue, right?
A. Yes.
Q. Okay. As the front page to Exhibit 32?
A. That's correct.
Q. Okay. All right. And under -- and per this document, you also received a half of an occurrence as well under the attendance policy, correct?
A. That's what the document states.

Page 285

Q. I want to go back to something you had mentioned. We were talking a little bit about Regina Williams and ETO with respect to the therapy dates that were starting, I think, in October 2011.
Do you remember us talking about that?
A. Well, I didn't remember talking about a date, but I do remember the conversation.
Q. Okay. Okay. In other words, there was ETO that you were using for therapy dates before the September 1st, 2011 accommodation request?
A. Correct.
Q. Okay. And then the ETO kind of came up in discussion again after the accommodation request?
A. Correct.
Q. Okay. And I want to talk about that second one now.
A. Okay.
Q. Because we kind of left off there, and I want to show you this.
MR. McMAHON: This was or is Exhibit 33.

Page 286

(Deposition Exhibit No. 33
marked for identification.)
BY MR. McMAHON:
Q. And I'll give you a minute to review this.
A. Okay.
Q. So on 551 there's an e-mail from Regina Williams to you, correct, on Bates number 551?
A. Yes.
Q. Okay. And that e-mail was October 26th, 2011?
A. Yes.
Q. Okay. She says that "In order to accommodate your requests, Volvo will waive the local ETO policy which requires ETO to be taken in eight-hour increments. You must take ETO in four-hour increments to attend appointments associated with your medical condition beginning October 18th, 2011.
"If you exhaust your ETO leave, you may take unpaid leave as well for the scheduled appointments. Please complete appropriate ETO request forms to request the actual dates you need." Okay.
And you replied to Regina Williams in

Page 287

connection with that, right?
A. Yes.
Q. Okay. And is your reply e-mail to her the e-mail directly above that on Bates 551 on Exhibit 33?
A. It appears to be.
Q. Okay. Do you remember having this e-mail exchange with her?
A. Yes.
Q. Okay. And in response to this e-mail, "After you've exhausted ETO time," Regina Williams says in response to your e-mail below, "you may take the time for scheduled medical appointments as unpaid time," correct, on the front page of 33?
A. I'm sorry. Say again.
Q. Sure. She says on the front page of 33 in response to your e-mail -- in response to your below e-mail, "You may take the time for the scheduled medical appointments as unpaid time"?
A. What she is stating is because I questioned her reference to the ETO policy.
Q. Uh-huh.
A. And the fact that the ETO policy does

Page 288

not state it needs to be taken in eight-hour increments.
Q. Okay.
A. And there is no policy that states that it would have to be taken in eight-hour increments. And I make questions which she never answered actually. Her response was just unpaid time.
Q. Okay.
A. So, in other words, I'm not allowed to use my ETO. They would give me the time off without paying me.
Q. Okay. But she said here in this e-mail below that you're allowed to use ETO in four-hour increments, right?
A. She said that I must take ETO in four-hour increments.
Q. Uh-huh. To attend appointments?
A. That is what the e-mail states.
Q. Okay. All right. And that's different than eight-hour increments?
A. Yes.
Q. Okay. And then the remaining time would be excused as unpaid time, correct?
MR. DeROSE: Is that what she's saying

Page 289

or you're asking my client?
MR. McMAHON: That's what Ms. Williams is saying.
MR. DeROSE: Well, whatever she says, the document really does speak for itself.
MR. McMAHON: Okay.
MR. DeROSE: You can ask her if she understands what she's saying.
MR. McMAHON: Sure, sure.
BY MR. McMAHON:
Q. You understood Ms. Williams to be saying that?
A. Yes.
Q. Okay. So you could use ETO in four-hour increments; when that was exhausted, the remaining time for therapy appointments, if any, would be unpaid time?
A. That was the dictation that she gave me.
Q. And did you not find that to be acceptable?
A. I found that to be against company policy.
Q. How so?
A. Well, you didn't provide me the ETO

Page 290

policy, so I cannot reference it.
Can you provide me the ETO policy?
Q. I don't have a copy of the ETO policy in front of me. I'll tell you that.
A. Do you want to get a copy? I'm sorry.
MR. DeROSE: Only if you want it. I have it.
MR. McMAHON: I don't.
BY MR. McMAHON:
Q. I mean, I'm trying to -- and I think you just testified that the eight-hour rule wasn't even in the ETO policy; is that right?
A. What I said was is that that didn't apply to me. The eight-hour -- what -- eight-hour increments --
Q. Okay.
A. -- is not what -- I didn't fall into that.
Q. Okay. How so?
A. Again, referencing the questions that I had asked Ms. Regina Williams, first off, I asked for a copy of the ETO policy, which neither her nor Keith Schroeder gave to me. I asked also is it the same policy which lists exempt and nonexempt employees.

Page 291

Q. Okay.
A. Okay. I also asked that did we not already have this discussion regarding ETO time and how it is used in April 2011. I also asked why were the requirements for this treatment, for me to attend this counseling sessions different than how we approached it in April.
Q. Okay.
A. Why are there changes? The day and the time of my next counseling session didn't even change. So why are we making changes?
Q. Okay. Going back to your original statement before, though, how is this in violation of company policy?
In other words, her response about fractional use of ETO or ETO in four-hour increments --
A. Well, again, if you want me to quote company policy, I'd need the policy in front of me.
Q. Okay.
A. But, essentially, eight-hour increments and four-hour increments is not what's stated in the company policy.
Q. Okay. Going back to Exhibit 32, the

Page 292

occurrence you received under the attendance policy on 32, the second page of 32, I should say actually, on November 4th, which I think you testified was presented to you later?
A. On November 8th.
Q. Okay. That occurrence was the occurrence that resulted in the termination of your employment; is that correct?
A. That is what Volvo claims.
Q. Okay. And you disagree with that?
A. Yes.
Q. Okay. And why is that?
A. Well, as I stated before, that verbal warning which occurred in 2010 --
Q. Uh-huh.
A. -- would not have applied which then would not have put me over my supposed five -- what did he claim it as -- five occurrences in a six-month period, I believe.
Q. Uh-huh. Okay. You were given -- in connection with the attendance policy and in accordance with the attendance policy, you understand that there's four disciplinary steps; is that correct?
A. Yes.

Page 293

Q. Okay. There's a verbal warning, there's a written warning, there's a suspension, and there's the termination?
A. Yes.
Q. Is that correct? Okay.
You were given a corrective action plan for each of those steps, correct?
A. I was given paperwork on each of those steps.
Q. Okay. Were you given any corrective action plan for each those steps?
A. Again, the paperwork, yes.
MR. McMAHON: Okay. Okay. Go ahead and mark this as 34.
(Deposition Exhibit No. 34 marked for identification.)
BY MR. McMAHON:
Q. And this first verbal warning we had already looked at earlier in the deposition, correct?
A. That's correct.
Q. Okay. That's the front page there. Okay.
The next disciplinary step was August 31st, 2011; is that correct?

Page 294

A. It should -- yes.
Q. The next corrective action plan which is Bates number 7 here?
A. Yes.
Q. Okay. And on that date you received a written warning, correct?
A. Correct.
Q. Okay. Now, on that date you also received a three-day suspension?
A. Same day, yes.
Q. Is that correct? Okay.
And you received the final corrective action plan on November 8th, 2011, correct?
A. That is correct.
Q. Okay. Now, you indicated earlier why you believe the October 29th, 2010 verbal warning was not appropriate, correct?
A. Yes.
Q. Okay. Is there -- aside from what you had testified to in connection with that -- and I believe that's the occurrence on November 19th, 2010, right?
A. As discussed.
Q. Okay. Are there any other occurrences that you contend are not accurate or not

Page 295

appropriate in this case?
MR. DeROSE: Objection to the form. She -- I don't know what she's going to answer to that, but it truly don't limit her lawyer to what he contends is very inappropriate about all of these.
Go ahead.
MR. McMAHON: Well --
MR. DeROSE: I'm sorry, Counsel. The way you asked the question, you're asking for her -- maybe her legal conclusion or her reasonableness conclusion. I don't think those are appropriate questions, but go ahead and ask them.
BY MR. McMAHON:
Q. What I'm trying to get at, Ms. Arroyo, setting aside legal issues and everything else along those ways -- and you may have a legal challenge to whatever in this case -- what I'm trying to get at is what of the other occurrences do you contend not to be accurate?
A. Occurrences and not steps?
Q. Occurrences. Let's take occurrences first.
A. Okay.

Page 296

Q. And then we'll talk about steps.
A. So then the next occurrences would be the one -- the two in November.
Q. Let's get Exhibit 6 back in front of us.
A. Exhibit 6?
Q. I think so, yes. Exhibit 6.
A. Oh, the colorful chart.
Q. Okay. Moving forward, if you will, on Bates number 2783 of Exhibit 6, November 23rd, 2010, you were late two minutes?
A. 2781?
Q. 2783. I'm sorry.
A. Okay. 2010, okay.
Q. Yes, yes. November 23rd, 2010?
MR. DeROSE: Wait. You're saying she was or the chart reads that she was two minutes late?
MR. McMAHON: Well, I'm asking her first not even that. I'm asking her does she contend that that occurrence is in any way inaccurate or illegal in this case. That's what I'm asking.
MR. DeROSE: Well, illegality her lawyer will determine.

Page 297

Counsel, first of all, if the documents speak for itself, the document says that. If you're asking her does she disagree with that, that's different.
MR. McMAHON: That's fine. Let's just phrase it that way.
BY MR. McMAHON:
Q. Do you disagree with that?
A. Well, I can't agree or disagree based on this document solely, per as one of my claims are the inaccuracy of books and records. And as I've stated before, the punch times will accurately reflect --
Q. Okay. Okay.
A. -- whether or not I was late.
MR. McMAHON: Okay. Okay. I'm going to mark this as 35.
(Deposition Exhibit No. 35 marked for identification.)
THE WITNESS: Are these in date order?
BY MR. McMAHON:
Q. They are, in fact, in date order.
A. Okay. Good.
Q. I'm not trying to do any trick questions. Yes. So taking a look at

Page 298

Exhibit 35 which is the punch list.
A. Okay.
Q. What I'll try to do is I'll try to identify each of the punches in order here, if I can. And let's just start from the beginning, Bates number 3761.
A. Okay.
Q. These are listed, by the way -- the way the reports are run, there's more than just you on here.
A. Okay.
Q. There's other employees as well, but I'll try to identify where we're at on each of them.
A. I could find my name.
Q. All right. Not a problem.
3761, the first occurrence you got per our Exhibit 6 was on October 1st. And it says you were late 22 minutes.
A. It looks about right.
Q. That looks accurate to you?
A. Yes.
Q. Okay. Do you contend that there's anything illegal with the company giving you half of an occurrence for being 22 minutes late

Page 299

on that day?
MR. DeROSE: Objection to the form of the question.
You may --
THE WITNESS: I don't think it's wrong considering that I have a set start time and that I had punched in after that start time.
BY MR. McMAHON:
Q. Okay. The next occurrence that was given to you was on October 11th. It's on Bates 3763.
Do you see that?
A. Yes.
Q. Okay. On the Exhibit 6 it says you were late 20 minutes.
A. And that's accurate.
Q. And that's accurate based on the records?
A. Yes.
Q. Okay. All right. Do you consider there's anything wrong or illegal about getting a fractional occurrence for being 20 minutes late on October 11th, 2010?
MR. DeROSE: Objection to the form of the question.

Page 300

You may answer. I can't stop you.
THE WITNESS: I don't think it's wrong.
BY MR. McMAHON:
Q. For the reasons you indicated before?
A. Correct.
Q. Okay. October 19th, we've discussed that. Okay. October 29th, we've discussed that.
And just to clarify for the record, on Bates 3765, on October 29th, the records do show you were, in fact, one minute late, right?
A. Yes, they do.
Q. Okay. But you were not given an occurrence for that, correct?
A. I was neither given an occurrence nor an excused nor anything else. There's no annotation other than no occurrence.
Q. Okay. The next one per the chart is on November 23rd.
MR. DeROSE: What's the Bates number, Counselor?
MR. McMAHON: I'm getting there. Don't worry. 3772.
BY MR. McMAHON:
Q. Per Exhibit 6, that day you were late

Page 301

two minutes, and you were given half of an occurrence.
MR. DeROSE: What date, Counsel?
MR. McMAHON: November 23rd, 2010.
MR. DeROSE: Two minutes?
MR. McMAHON: Yes, two minutes.
BY MR. McMAHON:
Q. Okay. And you received half of an occurrence for that -- for being two minutes late, correct?
A. Yes.
Q. Okay. Do you consider that there is anything wrong --
MR. DeROSE: Counsel, I object. You know that the standard is not wrong. Is it reasonable what they're doing or is it illegal? Those are the two things. The test will be reasonableness, okay.
MR. McMAHON: Well, no, John. You can't define the test. I'm sorry.
MR. DeROSE: I'm trying to tell you what you sort of says, but you go ahead. You can ask your questions the way you want, but I do not want her telling us what's legal and illegal. What she considers something is not

Page 302

what the law necessarily considers.
MR. McMAHON: Right now, John, I'm seeking her understanding.
MR. DeROSE: Her understanding of what, USERRA?
MR. McMAHON: No, John. An understanding of whether she thinks it was appropriate for her to receive a half of an occurrence for being two minutes late as she's testified for the other occurrences.
MR. DeROSE: And that I object to. You might have your feelings of what's appropriate. I might have mine, but the law is the law. And so that's an improper question. A jury will decide if what they're doing here is reasonable or if what they're doing is legal. She does not have the right to make those decisions.
MR. McMAHON: Okay. Okay. Well, thank you for your objection.
BY MR. McMAHON:
Q. Ms. Arroyo, on this date, you were, in fact, two minutes late to work, right?
A. I'm sorry. We're on November 23rd?
Q. Yes.
A. And I had punched in at 4:32. Yes.

Page 303

Q. So that's two minutes late, correct? Okay.
Is there anything -- I'll phrase it this way. Is there anything contrary to the attendance policy about the company giving you a half of an occurrence for being two minutes late on November 23rd?
MR. DeROSE: Objection to that question.
MR. McMAHON: On what basis, John?
MR. DeROSE: You say is there anything. How about USERRA? That's a -- opposed to what they're doing.
MR. McMAHON: All right, John. John, we're not even talking about a day of military leave involved.
MR. DeROSE: Don't ask her for conclusions. Just ask her for facts. A jury will -- this is not closing argument, Counsel.
MR. McMAHON: I totally object to your speaking objection. I mean, this is --
MR. DeROSE: Well, I object to the way you're asking the question. You're going to say, well, she said there was nothing objectionable, and I don't believe she believes

Page 304

that, Counsel, nor do you.
MR. McMAHON: Okay, John.
MR. DeROSE: But that's her opinion.
MR. McMAHON: We'll do your deposition next. That's okay. Okay.
THE WITNESS: Are you okay, Counsel? Do you need a minute?
BY MR. McMAHON:
Q. We are on 2010, and I think we're done with 2010.
A. Okay.
Q. We're on 2011. April 14th.
MR. DeROSE: What's the Bates stamp?
MR. McMAHON: 3795.
BY MR. McMAHON:
Q. Ms. Arroyo, do you see that, on 3795?
A. Yes.
Q. Okay. Per the punch records on 3795, were you, in fact, ten minutes late?
A. I had punched in at 4:40, yes. And since we're here, I would like to make note that on April 12th I had punched in at 4:16 and punched out at 12:30 a.m., which according to this record, it states I was on FMLA leave the whole day.

Page 305

MR. McMAHON: Okay.
MR. DeROSE: What date is -- Counsel, could you ask --
THE WITNESS: April 12th.
MR. DeROSE: So you punched in and out?
THE WITNESS: I punched in at 4:16, and I punched out at 12:30 p.m. So I contest that this FMLA annotation is incorrect.
BY MR. McMAHON:
Q. Okay. And per this Exhibit 6, did you receive any sort of occurrence for that FMLA day?
A. It goes with the attendance policy in -- with the calculations of the infractions. So yes and no, if you will. Again, going back to accuracy of books and records and the way that the company calculated its rights to my termination.
Q. Okay.
A. That's what I'm arguing.
Q. So you're contending that this particular day shouldn't have been considered as an exception to the rollback period?
A. Correct.
Q. Okay. Okay.

A. As well as the -- to make note -- inaccuracy of books and records.
Q. Okay. Are you making a separate claim for inaccuracy of books and records in this case?
A. I have made it to the vice president of Volvo Parts North America who I assume made an investigation into such.
Q. Okay. All right. The next sentence we have here is in May 2011?
A. May 10th.
MR. DeROSE: What Bates stamp, Counsel?
MR. McMAHON: 3800, 3800.
BY MR. McMAHON:
Q. Okay. And do you see those two days, Ms. Arroyo? I guess May 10th and May 12th is what we're looking at now.
A. Well, now -- and there's something interesting there, speaking of May 10th. It does say that I punched in at 2:31 p.m., but there's an asterisk there. And if you look below, a punch was added.
MR. DeROSE: Do you understand what she's saying, Counsel?
MR. McMAHON: I guess -- it looks like



a punch was added. It looks like a punch out was added.
THE WITNESS: So -- what I'm referring to is the fact that the -- that someone somehow altered the punch time.
BY MR. McMAHON:
Q. Okay. Does that somehow -- does that sometimes occur if someone forgets to punch?
A. It can.
Q. Okay. Is there anything improper about that?
A. I don't know.
Q. Do you contend there's anything improper about that?
A. I'm just making a point to bring it -- just like the FMLA, that it is an important issue.
Q. Okay. And on May 10th and May 12th, you punched in at 2:31 each of those times, correct?
A. May 10th, May 12th, yes.
Q. Okay. May 27th, and that's on Bates 3802.
A. Okay.
Q. Do you see that, May 27th?



A. Yes.
Q. Okay. And per the time punch, you punched in at 4:35, correct?
A. And, again, there's an asterisk. And in looking down, there are a lot of add punches and add hours and remove punches and whatnot to the record.
Q. Okay.
A. I could understand an adding a punch, but removing a punch?
Q. Okay. Were there -- let's take a look.
Were there any added or removed punches with respect to Friday, May 27th?
A. No.
Q. Okay.
A. But I'll be looking for that for the rest of them.
Q. Okay. And on that day you did, in fact, punch in at 4:35, right?
A. Appears so.
Q. Okay. The next one we're looking at is July 29th. Okay. On Friday July 29th, it looks like you punched in --
A. Hold on. Hold on. I'm on the wrong page.



Q. Sure. I'm sorry. I didn't give you a Bates number either.
A. Yes.
Q. 3811.
A. I was looking at June, and I'm like wait a minute. Okay. 29th. Okay.
Q. Uh-huh. On Friday, July 29th, it looks like you punched in at 12:01?
A. I cannot confirm nor deny because I cannot read it.
Q. Okay. Okay. There's a handwritten notation of tardy there, correct?
A. Yes.
Q. Okay.
A. That is covering the time.
Q. Okay. The next two instances are August 19th and August 20th; is that correct?
A. According to the -- to Exhibit 6.
Q. To Exhibit 6, that's right. Okay.
On August 19th, per Exhibit 6, you were late five minutes?
MR. DeROSE: What's the Bates stamp?
THE WITNESS: What's the Bates stamp?
MR. McMAHON: Bates 3815.
THE WITNESS: August 15?

Page 310

BY MR. McMAHON:
Q. Uh-huh.
A. No. August 19?
Q. Yes, August 19.
A. Cannot confirm nor deny because I cannot read it.
Q. Okay. August 20th which is a Saturday, you punched in at 7:31, correct?
A. That is correct.
Q. Okay. That was one minute after the beginning of your shift?
A. That is correct.
Q. The next occurrence happened on October 10th, and that's Bates 3824.
A. Okay.
MR. DeROSE: One second. One second.
MR. McMAHON: Uh-huh.
MR. DeROSE: And what was the date, Counsel?
MR. McMAHON: October 10th. Monday, 10/10.
BY MR. McMAHON:
Q. Per the punch records on that date, Ms. Arroyo, you punched in at 4:31?
A. That is correct.

Page 311

Q. Okay. And that is one minute after your shift start time, correct?
A. That is correct.
Q. Okay. Now, with respect to November 2nd and November 4th, you punched in timely, correct?
A. I don't know. Let's look at it.
Q. Okay. And that's on 3827.
A. On November 2nd, punch time is 4:00. November 4th, punch time is 4:04.
Q. Okay.
A. However, on November 2nd, there was a removed punch of 3:48 and an add punch of 4:00.
Q. Okay. All right. And with respect to that particular date, November 2nd, that is one of the dates that you received a start rule violation discipline from Mr. Schroeder; is that correct?
A. That's when I received a CAP.
Q. That we looked at, okay.
A. That I contest because I punched in on time.
Q. Okay. And also with respect to November 4th?
A. Correct.

Page 312

Q. You received a CAP for essentially the same sort of actions that occurred on November 2nd?
A. Exactly.
Q. As we discussed before, okay. Okay. We've reviewed the punches.
Is there anything else with respect to the CAPs that you contend to be illegal as opposed to the underlying punches?
A. Illegal?
Q. Yes.
MR. DeROSE: Objection to what she calls illegal, Counsel. That's for you and I to do.
MR. McMAHON: That's fine.
MR. DeROSE: Ask her about facts.
MR. McMAHON: That's fine.
BY MR. McMAHON:
Q. Is there anything you contend about the CAPs to be improper?
A. Yes.
Q. Okay. And let me just get them in front of me here real quick.
A. Yes.
Q. Sorry about that.

Page 313

A. Exhibit 34. So as you have stated, October 29th we've discussed in detail, and a verbal warning would not have been issued at that time. As of -- and as such, I would have only had a 1.5 occurrence as of December 30th.
So then, second page, August 31st --
Q. Uh-huh.
A. -- the written warning would not have then been a written warning.
Q. Okay.
A. It would have been a verbal warning.
Q. Okay. It would've carried forward from there?
A. Correct.
Q. Okay.
A. Additionally, the next page, the other thing that I contend to is that giving a person a warning about actions on the same day that you're suspending and/or terminating, well, how are you going to warn somebody and then do it? That doesn't make sense to me.
Q. Okay.
A. But, you know, I'm just -- this is just what makes logical sense.
Q. Okay.

VOLVO

JOB DESCRIPTION CHICAGO PDC

JOB DESCRIPTION

Warehouse Material Handler

Description/Responsibility

The role of Warehouse Material Handler is to:
- Responsible for material handling in the inbound, quality – returns and outbound process areas.
- Responsible for unloading - putaway of inbound material according to prescribed procedures and to meet benchmarks set by management.
- Responsible for picking and completion of Dealer orders in a timely manner.
- Ensure all orders are completed with quality as a constant objective.
- Responsible for picking, packing all orders in a manner, which is not only safe to the individual but also safe to the environment, he/she is working in.
- Communicate any irregularities to designated Supervisor.
- Interact with Co-workers as required.
- Responsible for meeting or exceeding facility set benchmarks in all warehouse job functions.
- Participate in all Quality/Environmental programs as directed by management.

Authority
- Authorized to complete any/all Dealer orders from start to finish with the exception that all irregularities must be modified or addressed by a Supervisor.
- Authorized to complete the putaway process of inbound material with the exception of irregularities must be modified or addressed by a Supervisor.

Qualifications
- High School Diploma
- 2+ years of related experience or training
- Ability to apply, understand and carry out instructions according to established procedures.
- Ability to speak, read and write English.

Physical Demands
- Regularly required to reach with arms and hands.
- Required to stand, walk and use hands to handle tools/controls.
- Required to sit, climb, balance and crouch.
- Ability to work at heights of up to 21 feet
- Required to be able to lift 70lbs.
- Specific vision abilities required.
- Required ability to operate material handling equipment

EXHIBIT 2 7-15-13
PENGAD 800-631-6989

*** PRINTED COPIES ARE UNCONTROLLED AND MAY NOT BE THE LATEST REVISION ***

CH4533.077 Authorized by K. Schroeder Compiled by: K. Schroeder
Printed copies are not controlled and may not be the latest revision

LMA-385

**LuzMaria Arroyo**
9148 S. 88th Ct
Hickory Hills, IL 60457
Mobile: 815-630-6793
Email: limbojunky@yahoo.com

**Work Experience:**

**United States Army Reserves (416th TEC)**
10s100 South Frontage RD
Darien, IL 60561 US
**Human Resources Supervisor**
**Supervisor:** Eric Bullock (501-454-0033)
**Okay to contact this Supervisor:** Yes

**03/2005 - Present**
**Salary:** 5,400.00 USD Per Year
**Hours per week:** 16

A Human Resources Specialist primarily helps Soldiers develop their Army careers, but also provides personnel support and assistance to all divisions of the Army. Organize and maintain personnel administrative records, medical and dental records, financial records, and maintain filing systems for each. Process personnel actions, generate memorandums, and manage evaluation reports of personnel. Prepare and maintain status reports and military correspondence. Prepare and process requests for transfer or reassignment. Prepare orders and request for orders of office equipment and supplies. Maintain multiple personnel information databases simultaneously for personnel accountability and strength management of over 1,200 personnel. Distribute mail. Update medical information systems. Maintain accountability for scheduled appointments. Assist in generation of policies for medical processing. Ability to follow detailed procedures and instructions. Ability to communicate and write clear instructions or correspondence. Ability to coordinate efforts with other departments. Ability to type 52 wpm. Mentor, train, and develop subordinate soldiers. Recognized for excellence 11 times. Volunteered for 3 deployments within 7 years. Responsible for accountability of equipment with an estimated value of $45,000.

**Mack Trucks, Inc**
3900 Rock Creek BLVD
Joliet, IL 60431 US
**Material Handler**
**Supervisor:** Patrick Dunn (815-207-2017)
**Okay to contact this Supervisor:** Yes

**06/2005 - 11/2011**
**Salary:** 27.96 USD Per Hour
**Hours per week:** 40

Material Handlers may be trained to operate various pieces of powered material handling equipment. Receive order tickets and locate items within warehouse. Drive standing forklift in order to reach parts for picking and packing in containers. Package various truck parts with a weight of 1 - 70 pounds per item totaling a weight of 3500-5000 pounds per day. Ability to construct shipping containers. Knowledge in packaging, wrapping, and labeling of containers for shipment. Understanding of OSHA safety standards with regards to forklift operations, warehouse safety, and hazardous material handling. Assistance in loss prevention. Possess a strong sense of urgency to effectively complete multiple tasks and meet deadlines. Ability to perform job duties productively and accurately. Ability to work independently or in a team environment. Ability to do repetitive tasks.

EXHIBIT
PENGAD 800-631-6989
13
7-15-13

**United States Army Reserves (308th CA)**
18960 Halsted St
Homewood, IL 60430 US
**Civil Affairs Specialist**
**Supervisor:** David Carlson (708-957-2035)
**Okay to contact this Supervisor:** Yes

**03/2009 - 08/2010**
**Salary:** 5,000.00 USD Per Month
**Hours per week:** 72

Civil Affairs specialists identify critical requirements needed by local citizens in combat or crisis situations. They also locate civil resources to support military operations, mitigate non-combatant injury or incident, minimize civilian interference with military operations, facilitate humanitarian assistance activities, and establish and maintain communication with civilian aid agencies and organizations. Ability to operate as a member of a small team in an austere environment in both semi-permissive and hostile environments. Ability to conduct assessments of civil preparedness and infrastructures to assure proper reconstitution, and governmental and economic stability. Ability to organize and analyze information. Ability to write clearly and concisely. Possess analytical skills and ability to conduct research using a variety of methods to include standard library research, use of web browsers and other search engines and services. Conduct civil-military operations that includes humanitarian assistance, disaster relief and populace and resource control. Conduct an area assessment to include preparation of maps and charts. Coordinate military resources to support reconstitution or reconstruction activities.

**United Parcel Service**
One UPS Way
Hodgkins, IL 60525 US
**Part-Time Supervisor**
**Supervisor:** Mr Wilson (708-387-4200)
**Okay to contact this Supervisor:** Yes

**03/1999 - 08/2005**
**Salary:** 1,680.00 USD Per Month
**Hours per week:** 30

Train and develop newly hired employees in proper package handling methods. Maintain organizational productivity. Maintain awareness in loss prevention through responsibility and accountability. Received 7 certificates of achievement for meeting/exceeding inbound operational quality standards. First operational supervisor to meet/exceed goal outbound operational production standards. Recognized for excellence in operational training.

**United States Army Reserves (719th MED DET)**
3155 Blackhawk Dr
Fort Sheridan, IL 60037 US
**Generator Mechanic**
**Supervisor:** LTC Phillips (847-266-3253)
**Okay to contact this Supervisor:** Yes

**01/2001 - 03/2005**
**Salary:** 4,200.00 USD Per Year
**Hours per week:** 8

Responsible for performing maintenance and overhaul but not rebuild of power generation equipment, internal combustion engines and associated equipment up through 200KW (except for turbine engine driven generators). Able to add a load to power generation equipment without fault.

**Education:**
**Amos Alonzo Stagg High School** Palos Hills, IL US
High School or equivalent 05/1999
**Major:** Liberal Arts

**Moraine Valley Community College** Palos Hills, IL US
Some College Coursework Completed
**GPA:** 3.47 of a maximum 4.0
**Credits Earned:** 68 Semester hours
**Major:** Criminal Justice
**Relevant Coursework, Licenses and Certifications:**
Dean's list: Spring 2002 and Spring 2003

**Job Related Training:**
Knowledge in Microsoft Office Outlook, Word, Excel, PowerPoint and Access. Ability to type 52 words per minute. Knowledge in use of the world wide web. Knowledge in basic Local Area Networking, specifically: installation of CAT-5 cables, installation of PC units to LAN systems, installation of telephones to LAN systems, troubleshooting problems and submitting help desk requests. Knowledge in security procedures, specifically: personnel security, information security and operational security. Worked for the Department of Defense as Security Officer and Liasion to the Department of State while in a deployed environment. Combat Life Saver Certified, knowledge in basic First Aid and CPR.

**Language Skills:**

| Language | Spoken | Written | Read |
|---|---|---|---|
| Spanish | Novice | Novice | Novice |

**Affiliations:**
United States Army Reserves - (Active) Reserve Member

**References:**

| Name | Employer | Title | Phone | Email |
|---|---|---|---|---|
| Chet Blue | Design Company Inc | PSO | 651-500-1916 | firedog251@gmail.com |
| Irene Aguilar | Colorado State Senate | Senator (SD32) | 303-601-0955 | twbostmd@aol.com |
| Becki Isler (*) | US Army Reserves (416th TEC) | Internal Review Accountant-Auditor | 630-815-5591 | becki.isler@usar.army.mil |
| Timothy Doyle(*) | US Army (FORSCOM) | Strategist (Policy Analyst) | 678-640-5424 | timothy.doyle@us.army.mil |
| Jerrica Noble (*) | US Air Force (849th AMXS) | RF Transmission - Journeyman | 870-643-5718 | jerrica.noble@holloman.af.mil |

(*) Indicates professional reference

**Additional Information:**
Require flexibility for Reserve Training Schedule.

Chicago Communications Sign Up Sheet

Date: 01.08.09 Meet Topic: Employee Infosession

| | EMPLOYEE NAME | SIGNATURE | Absent Follow Up Date |
|---|---|---|---|
| 1 | Accidentale, Brian | [signature] | |
| 2 | Adams, Erik | [signature] | |
| 3 | Adams, Melissa | [signature] | |
| 4 | Adams, Tracey | [signature] | |
| 5 | Alexander, Dan | [signature] | |
| 6 | Arroyo, LuzMaria | [signature] | |
| 7 | Bagby, Dan | [signature] | |
| 8 | Baum, Chad | [signature] | |
| 9 | Baumgartner, Cathy | [signature] | |
| 10 | Beier, Ray | [signature] | |
| 11 | Binkowski, Ed | [signature] | |
| 12 | Bollinger, James | [signature] | |
| 13 | Bouie, Marsheela | [signature] | |
| 14 | Brown, Adam ✓ | | 01/13 Balsis - Done |
| 15 | Brown, Reginald | [signature] | |
| 16 | Buchler, Bill | [signature] | |
| 17 | Buell, Larry | [signature] | |
| 18 | Campbell, Kevin | [signature] | |
| 19 | Coleman, Daryl | [signature] | |
| 20 | Colman, Terry | | |
| 21 | Crofton, Marty | [signature] | |
| 22 | Daniels, Ken | [signature] | |
| 23 | Easton, James | [signature] | |
| 24 | Eigenbauer, Mike ✓ | | 01/13 Balsis Done |
| 25 | Fish, Michael | [signature] | |
| 26 | Fleming, David | [signature] | |
| 27 | Foley, Tim | [signature] | |
| 28 | Foster, Tony | [signature] | |
| 29 | Garcia, Aldolfo | [signature] | |
| 30 | Grigsby, Tom | [signature] | |
| 31 | Hampton, Renee | [signature] | |
| 32 | Hansen, Robert | [signature] | |
| 33 | Hewlett, Caesar | [signature] | |
| 34 | Hodges, Eddie | [signature] | |
| 35 | Jackson, Victor | [signature] | |
| 36 | Jones, Janelle | [signature] | |
| 37 | Jude, Larry | [signature] | |
| 38 | Kennedy, Teo | [signature] | |
| 39 | King, Todd | [signature] | |
| 40 | Knight, Jill | [signature] | |
| 41 | Likovic, Aaron | [signature] | |
| 42 | Magat, Felix | | |
| 43 | Maierhofer, Jeremy | [signature] | |
| 44 | Mancera, Luis | [signature] | |
| 45 | Jackie Mattera | [signature] | |
| 46 | Meister, Marty | [signature] | |
| 47 | Melant, Jr., Edward | | |
| 48 | Miller, Eric | [signature] | |
| 49 | Moran, Jim | [signature] | |
| 50 | Morgan, Paul | [signature] | |

EXHIBIT 4 7-15-13 PENGAD 800-631-6989

CH4533 - 034

*Printed copies are uncontrolled and may not be the latest revision.*

**Chicago Communications Sign Up Sheet**

Date: 01.08.09 Meet Topic: Employee Infosession

| | EMPLOYEE NAME | SIGNATURE | Absent Follow Up Date |
|---|---|---|---|
| 51 | Mroczkowski, Greg | [signature] | |
| 52 | Myers, Dawn | [signature] | |
| 53 | Nash, Mary | | 01/13 Balous Done |
| 54 | Nedelsky, Michelle | [signature] | |
| 55 | Olson, Bradley | [signature] | |
| 56 | Palomina, John | [signature] | |
| 57 | Paprone, James | [signature] | |
| 58 | Pigott, William | [signature] | |
| 59 | Ratascjzk, Robert | [signature] | |
| 60 | Reed, Jason | [signature] | |
| 61 | Riley, Will | [signature] | |
| 62 | Rosendale, Jim | [signature] | |
| 63 | Russo, Lenny | [signature] | |
| 64 | Sanchez, Marty | [signature] | |
| 65 | Sarpalius, John | [signature] | |
| 66 | Savicz, Dennis | [signature] | |
| 67 | Schroeder, Matthew | [signature] | |
| 68 | Schroeder, Michael | [signature] | |
| 69 | Schwarz, Marty | [signature] | |
| 70 | Somenzi, Bill | [signature] | |
| 71 | Temko, Michelle | [signature] | |
| 72 | Tilghman, Dave | [signature] | |
| 73 | Vasic-Kruk, Nada | [signature] | |
| 74 | Walsh, Kevin | [signature] | |
| 75 | Walters, Karl | [signature] | |
| 76 | Wegner, Dan | [signature] | |
| 77 | Wilsterman, Judd | [signature] | |
| 78 | Zizzo, William | [signature] | |
| 79 | Zweig, Mark | [signature] | |
| | | | |

| | *Salary Group* | | |
|---|---|---|---|
| 82 | Balsis, Bill | [signature] | |
| 83 | Best, Barbara | [signature] | |
| 84 | Bomba, Bernie | [signature] | |
| 85 | Dunn, Patrick | [signature] | |
| 86 | Gable, Frances | [signature] | |
| 87 | Harris, Linda | [signature] | |
| 88 | Humann, Chris | | |
| 89 | Jankowski, Sherrie | [signature] | |
| 90 | Krynski, Jim | [signature] | |
| 91 | Miller, David | | |
| 92 | Pacura, Lisa | [signature] | |
| 93 | Schroeder, Keith | | |
| 94 | Somersett, Maureen | [signature] | |
| 95 | Stolz, Linda | [signature] | |
| 96 | Temko, Michael | [signature] | |



Printed copies are uncontrolled and may not be the latest revision.

CONFIDENTIAL

EXHIBIT 5 7-15-13 PENGAD 800-631-6989

# Chicago 2008 Year in Review

# What's New for 2009

- Facility Performance - Key Productivity Results
- Continuous Improvement Activities
- Warehouse Performance Targets
- Incentive Plan
- Updated HR Policies
- Safety Team News
- LMS Update

VOLVO PARTS. **PASSION FOR UPTIME.**

# Chicago 2008 Year in Review

# What's New for 2009

- Facility Performance - Key Productivity Results
- Continuous Improvement Activities
- Warehouse Performance Targets
- Incentive Plan
- Updated HR Policies
- Safety Team News
- LMS Update

VOLVO PARTS. **PASSION FOR UPTIME.**



VOLVO

# Chicago 2008 Year in Review

# What's New for 2009

- Chicago Weekly KPI Charts

VOLVO PARTS. **PASSION FOR UPTIME.**



VOLVO

# Chicago 2008 Year in Review

# What's New for 2009

- Facility Performance - Key Productivity Results
- Continuous Improvement Activities
- Warehouse Performance Targets
- Incentive Plan
- Updated HR Policies
- Safety Team News
- LMS Update

# Continuous Improvement Activities

- **Storage re-warehousing rack project, two phase implementation**
- **Phase two approved ($500k)**
  - Increase slotting capacity
  - Reduced damage - floor stack area
  - C-Pull area re-warehousing (consolidate parts in multiple areas into a larger C-Pull area)
  - Reduced hours re-warehousing
  - Reduce bottlenecks
  - Expand L-T Pick area, reduce congestion
  - Consolidate Volvo L-T-N to one area
  - Storage rack project expected completion in July 2008
- Storage Area project

VOLVO PARTS. **PASSION FOR UPTIME.**



VOLVO

# Chicago 2008 Year in Review

# What's New for 2009

- Facility Performance - Key Productivity Results
- Continuous Improvement Activities
- Warehouse Performance Targets
- Incentive Plan
- Updated HR Policies
- Safety Team News
- LMS Update

VOLVO PARTS. **PASSION FOR UPTIME.**



VOLVO

# Chicago 2008 Year in Review

# What's New for 2009

- 2009 Chicago Job Function KPI - Key Performance Indicators

# Chicago 2008 Year in Review

## What's New for 2009

- Facility Performance - Key Productivity Results
- Continuous Improvement Activities
- Warehouse Performance Targets
- Incentive Plan
- Updated HR Policies
- Safety Team News
- LMS Update

VOLVO PARTS. **PASSION FOR UPTIME.**



VOLVO

# Chicago 2008 Year in Review

# What's New for 2009

- 2008 Incentive Results
- Perfect Attendance 2008



CONFIDENTIAL

# Incentive Plan Update

- Incentive Plan Changes
  - 2009 new targets
    - Targets and goals are set, goals are achieved, set new targets
    - Targets have been the same from 2003 to 2008
    - For 2009 all Mack and Volvo hours, lines shipped & received, errors and Shortships will be included in the incentive plan
    - The incentive plan payout will now be monthly versus quarterly
    - Attendance and Safety incentives will remain the same

VOLVO PARTS. **PASSION FOR UPTIME.**



VOLVO

# Incentive Plan Update

- 2008 Incentive Results with 2009 targets

# Chicago 2008 Year in Review

# What's New for 2009

- Facility Performance - Key Productivity Results
- Continuous Improvement Activities
- Warehouse Performance Targets
- Incentive Plan
- Updated HR Policies
- Safety Team News
- LMS Update

VOLVO PARTS. **PASSION FOR UPTIME.**



VOLVO

# Updated HR Policies

- ETO Policy Hourly Group
  - For 2009 the payout provision will be eliminated
- Chicago Attendance Policy Update
  - Absences other than ETO / Vacation Weeks and scheduled Holidays will not count towards the rolling time period.
    - <u>Chicago Attendance Policy</u>
    - <u>Saturday Work Schedule Policy</u>

# Chicago 2008 Year in Review

# What's New for 2009

- Facility Performance - Key Productivity Results
- Continuous Improvement Activities
- Warehouse Performance Targets
- Incentive Plan
- Updated HR Policies
- Safety Team News
- LMS Update

# Safety Team News

## *2008 Safety Team Accomplishments*

- Hazcom Training
- Blood Pathogen Communication
- Initiated a Blood Pathogen Clean up Team
- Safety News Letter
- P.P.E Risk Assessment was Performed for each job function
- Vehicle check List was enforced by all Supervisions
- Safety Glass Policy was revised
- Safety team offered through ST.Joe Hospital free Heart Screening
- Spill Training for the Safety Team
- CPR, First Aid and Defibrillator training for Safety Team
- Completed the annual harness Inspections

# Safety Team News

## *Safety Leadership – Our safety Principals What We Have Learned*

- Increased awareness, through employee education is the key to developing a safety culture
- We strive to prevent all incidents that may lead to injuries or illnesses
- Management ensures that employees are provided a safe work environment
- We design safety into the workplace
- Employee behavior is the most important factor in preventing incidents
- We expect and require every employee to work safely

# Safety Team News

## *Safety Leadership – Our safety Principals What We Have Learned*

- A safe work environment increases productivity and reduces workers compensation cost
- Our safety process must react to all incidents, not just accidents
- We will comply with all local, state and federal regulations protecting worker safety
- We continually improve our safety process by inspecting the process and correcting the root cause of deficiencies
- We promote safety, both on and off the job
- We prepare for emergencies

# Safety Team News

## *2009 Safety Goals*

- Safety Principles
- Review all previous Accidents Look for a pattern and Future Prevention
- Initiate Communication/Training (video-learn gate) for returning employees from Workers comp Accidents
- Utilize Learn Gate/update DVD safety training media for employee training
- Formulate a Policy for Power outage-What Employees should Do
- Quarterly Evacuation Drills
- Semi Annual Tornado Drills
- Perform Annual Harness Inspections
- Provide a refresher course on Fall Protection



CONFIDENTIAL

# Chicago 2008 Year in Review

# What's New for 2009

- Facility Performance - Key Productivity Results
- Continuous Improvement Activities
- Warehouse Performance Targets
- Incentive Plan
- Updated HR Policies
- Safety Team News
- LMS Update



CONFIDENTIAL

# Project Activities

- We are in the process of customizing the Red Prairie Labor product in an attempt to make LMS the best measuring tool for our business
- Provided there are no unexpected delays we are looking to be ready for another go live at the end of Q1 09

# Initial Go Live

- Went live early last summer
- Multiple issues arose including
  - Missing and incorrect data
  - The data issue came from the interface and the way that LMS was interpreting the data
- Implementation suspended
- Data issues have been diagnosed and corrected

# Project Opportunities

- RedPrairie's 'out of the box' product was not sufficient
  - Loopholes and averages in standards deemed unacceptable
- Hourlies and supervisors losing confidence
- Huge opportunity to make the LMS a success
  - Have a year experience of training
  - Experience with a go live
  - Advice from others who have experienced the LMS at another site
- Created a list of 14 customizations which is currently being worked on

# Project Actions

- Much work on RedPrairie's side and Volvo's to make measurement more concise
- The LMS must accept much more data currently available in the scanners
- We will also be making more data available in the scanners

- LMS will pick up more locations throughout warehouse
  - More discrete travel outside of pick and putaway path
  - More activity traceability
- Part data
  - Volumetrics – size, weight, overpack

# Challenges

- Part data collection is a large project within itself
  - Deemed that we cannot create an acceptable inbound standard without this data
- DLx Dispatcher
  - Global system makes requesting system changes almost impossible
  - Found alternate ways to retrieve data, minimize need for system changes

*Date Updated W/E 11.06.2011*

| Employee Name | Date | Hours Worked | Reason | Absence Code | Excused Cum Days | Inexcusable Absence | Cum Occurences | Hours Absent | Total Cum Hours Absent | Disciplinary Action |
|---|---|---|---|---|---|---|---|---|---|---|
| 2011 | | | | | | | | | | |
| Arroyo, LuzMaria | 1-10 to 1-14 | 0 | A&S | AS | | | | 40 | | |
| | | | A&S | AS | | | | | | |
| | | | A&S | AS | | | | | | |
| | | | A&S | AS | | | | | | |
| | | | A&S | AS | | | | | | |
| | | | A&S | AS | | | | | | |
| | | | A&S | AS | | | | | | |
| | 1-17 to 1-21 | 0 | A&S | AS | | | | 40 | | |
| | 1-24 to 1-28 | 0 | A&S | AS | | | | 40 | | |
| | 1-31 to 2-4 | 0 | A&S | AS | | | | 40 | | |
| | 2-7 to 2-11 | 0 | A&S | AS | | | | 40 | | |
| | 2-14 to 2-18 | 0 | A&S | AS | | | | 40 | | |
| | 2-21 to 2-25 | 0 | A&S | AS | | | | 40 | | |
| | 2-28 to 3-4 | 0 | A&S | AS | | | | 40 | | |
| | 3-7 to 3-11 | 0 | A&S | AS | | | | 40 | | |
| | 3-14 to 3-18 | 0 | A&S | AS | | | | 40 | | |
| | 3-21 to 3-22 | 0 | A&S | AS | | | | 16 | | |
| | 1-Apr | 2.5 | Military Leave | ML | | | | 5.5 | | |
| | 12-Apr | 0 | FMLA | FM | | | | 8 | | |
| | 14-Apr | 7.83 | Late 10 min. | I | | 0.5 | 0.50 | 0.17 | | |
| | 18-Apr | 6 | FMLA | FM | | | | 2 | | |
| | 19-Apr | 6 | FMLA | FM | | | | 2 | | |
| | 29-Apr | 2.5 | Military Leave | ML | | | | 5.5 | | |
| | 10-May | 7.98 | Late 1 min. | I | | 0.5 | 1.00 | 0.02 | | |
| | 12-May | 7.98 | Late 1 min. | I | | 0.5 | 1.50 | 0.02 | | |
| | 27-May | 7.92 | Late 5 min. | I | | 0.5 | 2.00 | 0.08 | | |
| | 5-31 to 6-3 | 0 | Military Leave | ML | | | | 32 | | |
| | 6-6 to 6-10 | 0 | Military Leave | ML | | | | 40 | | |
| | 6-13 to 6-17 | 0 | Military Leave | ML | | | | 40 | | |
| | 6-20 to 6-24 | 0 | Military Leave | ML | | | | 40 | | |
| | 6-27 to 7-1 | 0 | Military Leave | ML | | | | 40 | | |
| | 7-4 to 7-8 | 0 | Military Leave | ML | | | | 40 | | |
| | 29-Jul | 7.98 | Late 1 min. | I | | 0.5 | 2.50 | 0.02 | | |
| | 11-Aug | 2.5 | Military Leave | ML | | | | 5.5 | | |
| | 12-Aug | 0 | Military Leave | ML | | | | 8 | | |
| | 19-Aug | 7.92 | Late 5 min. | I | | 0.5 | 3.00 | 0.08 | | Written Warning 5 in 6 |
| | 20-Aug | 7.98 | Late 1 min. | I | | 0.5 | 3.50 | 0.02 | | 3 Day Suspension 5 in 6 |
| | 9-Sep | 0 | Military Leave | ML | | | | 8 | | |
| | 9-15 to 9-16 | 0 | Military Leave | ML | | | | 16 | | |
| | 9-20 to 9-23 | 0 | HR approved absence | | | | | 32 | | |
| | 9-26 to 9-30 | 0 | HR approved absence | | | | | 40 | | |
| | 10-Oct | 7.98 | Late 1 min. | I | | 0.5 | 4.00 | 0.02 | | |
| | 25-Oct | 8 | HR excused medical. | | | | | 8 | | |
| | 2-Nov | 7.95 | Tardy 3 minutes (start rule violation) | I | | 0.5 | 4.50 | | | |

EXHIBIT 6 7-15-13 PENGAD 800-631-6989

2192173.1

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 4-Nov | 7.95 | Tardy 3 minutes (start rule violation) | I | | 0.5 | 5.00 | | 788.93 | Termination 5 in 6 months |

2192173.1

2010

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Arroyo, LuzMaria | 1-4 to 1-8 | 0 | Military Leave | ML | | | | 40 | | |
| | 1-11 to 1-15 | 0 | Military Leave | ML | | | | 40 | | |
| | 1-18 to 1-22 | 0 | Military Leave | ML | | | | 40 | | |
| | 1-25 to 1-29 | 0 | Military Leave | ML | | | | 40 | | |
| | 2-1 to 2-5 | 0 | Military Leave | ML | | | | 40 | | |
| | 2-8 to 2-12 | 0 | Military Leave | ML | | | | 40 | | |
| | 2-15 to 2-19 | 0 | Military Leave | ML | | | | 40 | | |
| | 2-22 to 2-26 | 0 | Military Leave | ML | | | | 40 | | |
| | 3-1 to 3-5 | 0 | Military Leave | ML | | | | 40 | | |
| | 3-8 to 3-12 | 0 | Military Leave | ML | | | | 40 | | |
| | 3-15 to 3-19 | 0 | Military Leave | ML | | | | 40 | | |
| | 3-22 to 3-26 | 0 | Military Leave | ML | | | | 40 | | |
| | 3-29 to 4-2 | 0 | Military Leave | ML | | | | 40 | | |
| | 4-5 to 4-9 | 0 | Military Leave | ML | | | | 40 | | |
| | 4-12 to 4-16 | 0 | Military Leave | ML | | | | 40 | | |
| | 4-19 to 4-23 | 0 | Military Leave | ML | | | | 40 | | |
| | 4-26 to 4-30 | 0 | Military Leave | ML | | | | 40 | | |
| | 5-3 to 5-7 | 0 | Military Leave | ML | | | | 40 | | |
| | 5-10 to 5-14 | 0 | Military Leave | ML | | | | 40 | | |
| | 5-17 to 5-21 | 0 | Military Leave | ML | | | | 40 | | |
| | 5-24 to 5-28 | 0 | Military Leave | ML | | | | 40 | | |
| | 6-1 to 6-4 | 0 | Military Leave | ML | | | | 40 | | |
| | 6-7 to 6-11 | 0 | Military Leave | ML | | | | 40 | | |
| | 6-14 to 6-18 | 0 | Military Leave | ML | | | | 40 | | |
| | 6-21 to 6-25 | 0 | Military Leave | ML | | | | 40 | | |
| | 6-28 to 7-2 | 0 | Military Leave | ML | | | | 40 | | |
| | 7-5 to 7-9 | 0 | Military Leave | ML | | | | 40 | | |
| | 7-12 to 7-16 | 0 | Military Leave | ML | | | | 40 | | |
| | 7-19 to 7-23 | 0 | Military Leave | ML | | | | 40 | | |
| | 7-26 to 7-30 | 0 | Military Leave | ML | | | | 40 | | |
| | 8-2 to 8-6 | 0 | Military Leave | ML | | | | 40 | | |
| | 8-9 to 8-13 | 0 | Military Leave | ML | | | | 40 | | |
| | 8-16 to 8-20 | 0 | Military Leave | ML | | | | 40 | | |
| | 8-23 to 8-27 | 0 | Military Leave | ML | | | | 40 | | |
| | 8-30 to 9-3 | 0 | Military Leave | ML | | | | 40 | | |
| | 9-6 to 9-11 | 0 | Military Leave | ML | | | | 40 | | |
| | 9-13 to 9-17 | 0 | Military Leave | ML | | | | 40 | | |
| | 9-20 to 9-24 | 0 | Military Leave | ML | | | | 40 | | |
| | 27-Sep | | Return to Work from ML | | | | | | | |
| | 1-Oct | 7.63 | Late 22 min. | I | | 0.5 | 0.50 | 0.37 | | |
| | 11-Oct | 7.67 | Late 20 min. | I | | 0.5 | 1.00 | 0.33 | | |
| | 19-Oct | 0 | Call in, family. | I | | 1 | 2.00 | 8 | | Verbal warning, 2 in 1 |
| | 29-Oct | | Late 1 min. | | | | | | | No occurrence / KS |
| | 11-10 to 11-12 | 0 | Call in, sick. Doc. | E | 3 | | | 24 | | |
| | 19-Nov | 0 | Military Leave | ML | | | | 8 | | |
| | 23-Nov | 7.97 | Late 2 min. | I | | 0.5 | 2.50 | 0.03 | | |
| | 3-Dec | 0 | Military Leave | ML | | | | 8 | | |
| | 12-16 to 12-17 | 0 | Military Leave | ML | | | | 16 | | |
| | 23-Dec | 0 | A&S | AS | | | | 8 | | |
| | 12/27 to 12/30 | 0 | A&S | AS | | | | 32 | 1624.03 | |

2192173.1

2009

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Arroyo, LuzMaria | 2-Jan | 0 | Military Leave | M | | | | 8 | | |
| | 7-Jan | 7.82 | Late 11 min. | I | | 0.5 | 0.50 | 0.18 | | |
| | 16-Jan | 0 | Call in. Doc. | E | 1 | | | 8 | | |
| | 1-19 to 1-23 | 0 | A&S | A | | | | 40 | | |
| | 1-26 to 1-27 | 0 | A&S | A | | | | 16 | 64.18 | |
| | 6-Mar | 0 | Military Leave | M | | | | 8 | | |
| | 3-9 to 3-13 | 0 | Military Leave | M | | | | 40 | | |
| | 3-16 to 3-20 | 0 | Military Leave | M | | | | 40 | | |
| | 3-23 to 3-27 | 0 | Military Leave | M | | | | 40 | | |
| | 3-30 to 4-3 | 0 | Military Leave | M | | | | 40 | | |
| | 4-6 to 4-9 | 0 | Military Leave | M | | | | 40 | | |
| | 4-13 to 4-17 | 0 | Military Leave | M | | | | 40 | | |
| | 4-20 to 4-24 | 0 | Military Leave | M | | | | 40 | | |
| | 4-27 to 5-1 | 0 | Military Leave | M | | | | 40 | | |
| | 5-4 to 5-8 | 0 | Military Leave | M | | | | 40 | | |
| | 5-11 to 5-15 | 0 | Military Leave | M | | | | 40 | | |
| | 5-18 to 5-22 | 0 | Military Leave | M | | | | 40 | | |
| | 5-25 to 5-29 | 0 | Military Leave | M | | | | 40 | | |
| | 6-1 to 6-5 | 0 | Military Leave | M | | | | 40 | | |
| | 6-8 to 6-12 | 0 | Military Leave | M | | | | 40 | | |
| | 6-15 to 6-19 | 0 | Military Leave | M | | | | 40 | | |
| | 6-22 to 6-26 | 0 | Military Leave | M | | | | 40 | | |
| | 6-29 to 7-2 | 0 | Military Leave | M | | | | 40 | | |
| | 7-6 to 7-10 | 0 | Military Leave | M | | | | 40 | | |
| | 7-13 to 7-17 | 0 | Military Leave | M | | | | 40 | | |
| | 7-20 to 7-24 | 0 | Military Leave | M | | | | 40 | | |
| | 7-27 to 7-31 | 0 | Military Leave | M | | | | 40 | | |
| | 8-3 to 8-7 | 0 | Military Leave | M | | | | 40 | | |
| | 8-10 to 8-14 | 0 | Military Leave | M | | | | 40 | | |
| | 8-17 to 8-21 | 0 | Military Leave | M | | | | 40 | | |
| | 8-24 to 8-28 | 0 | Military Leave | M | | | | 40 | | |
| | 8-31 to 9-4 | 0 | Military Leave | M | | | | 40 | | |
| | 9-7 to 9-11 | 0 | Military Leave | M | | | | 40 | | |
| | 9-14 to 9-18 | 0 | Military Leave | M | | | | 40 | | |
| | 9-21 to 9-25 | 0 | Military Leave | M | | | | 40 | | |
| | 9-28 to 10-2 | 0 | Military Leave | M | | | | 40 | | |
| | 10-5 to 10-9 | 0 | Military Leave | M | | | | 40 | | |
| | 10-12 to 10-16 | 0 | Military Leave | M | | | | 40 | | |
| | 10-19 to 10-23 | 0 | Military Leave | M | | | | 40 | | |
| | 10-26 to 10-30 | 0 | Military Leave | M | | | | 40 | | |
| | 11-2 to 11-6 | 0 | Military Leave | M | | | | 40 | | |
| | 11-9 to 11-13 | 0 | Military Leave | M | | | | 40 | | |
| | 11-16 to 11-20 | 0 | Military Leave | M | | | | 40 | | |
| | 11-23 to 11-25 | 0 | Military Leave | M | | | | 24 | | |
| | 11-30 to 12-4 | 0 | Military Leave | M | | | | 40 | | |
| | 12-7 to 12-11 | 0 | Military Leave | M | | | | 40 | | |
| | 12-14 to 12-18 | 0 | Military Leave | M | | | | 40 | | |
| | 12-21 to 12-23 | 0 | Military Leave | M | | | | 24 | | |
| | 12-28 to 12-30 | 0 | Military Leave | M | | | | 24 | | |

2192173.1

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **2008** | | | | | | | | | | |
| Arroyo, LuzMaria | 3-Jan | 0 | Call in, sick. Doc. | E | 1 | | | 8 | | |
| | 4-Jan | 0 | | E | 2 | | | 8 | | |
| | 11-Feb | 0 | Sister in auto accident. Doc. | E | 3 | | | 8 | | |
| | 13-Feb | 0 | Sister in auto accident. Doc. | E | 4 | | | 8 | | |
| | 3-Mar | 0 | Military Leave | M | | | | 8 | | |
| | 8-Apr | 0 | Call in, no reason given. | I | | 1 | 1.00 | 8 | | |
| | 6-Oct | 0 | Military Leave ( Drill ) | M | | | | 8 | | |
| | 13-Oct | 0 | No call, no show. | I | | 1 | 2.00 | 8 | | |
| | 24-Oct | 0 | No call, no show Saturday O.T. | I | | 1 | 3.00 | 8 | | Verbal warning 2 in 1 |
| | 11-10 to 11-14 | 0 | Military Leave | M | | | | 40 | 112.00 | |
| **2007** | | | | | | | | | | |
| Arroyo, LuzMaria | 23-Aug | 7.22 | Late 47 min. | I | | 0.5 | 0.50 | 0.78 | | |
| | 8-27 to 8-31 | 0 | Military Leave | M | | | | 40 | | |
| | 2-Oct | 0 | No call, no show. | I | | 1 | 1.00 | 8 | | |
| | 6-Nov | 7.53 | Late 28 min. | I | | 0.5 | 1.50 | 0.47 | | |
| | 3-Dec | 0 | Military Leave | M | | | | 8 | | |
| | 4-Dec | 0 | Call in, sick. No doc. | I | | 1 | 2.50 | 8 | 25.25 | |
| **2006** | | | | | | | | | | |
| Arroyo, LuzMaria | 3-Jan | 7.88 | Tardy 7 min. | I | | 0.3 | 0.25 | 0.12 | | |
| | 18-Jan | 0 | Day off w/o 48 hr. notice. | I | | 1 | 1.25 | 8 | | |
| | 1-19 to 8-11 | 0 | Military Leave | M | | | | | | |
| **2005** | | | | | | | | | | |
| Arroyo, LuzMaria | 7-Jul | 7.93 | Tardy 4 min. | I | | 0.3 | 0.25 | 0.07 | | |
| | 11-Jul | 7.93 | Tardy 4 min. | I | | 0.3 | 0.50 | 0.07 | | |
| | 12-Jul | 7.88 | Tardy 7 min. | I | | 0.3 | 0.75 | 0.12 | | |
| | 14-Jul | 7.93 | Tardy 4 min. | I | | 0.3 | 1.00 | 0.07 | | |
| | 3-Aug | 7.93 | Tardy 4 min. | I | | 0.3 | 1.25 | 0.07 | | |
| | 4-Aug | 3.1 | Left early sick. | E | 0.4 | | | 4.9 | | |
| | 5-Aug | 0 | Sick. Doc. | E | 1.4 | | | 8 | | |
| | 9-Aug | 7.9 | Tardy 6 min. | I | | 0.3 | 1.50 | 0.1 | | |
| | 15-Aug | 7.82 | Tardy 11 min. | I | | 0.3 | 1.75 | 0.18 | | |
| | 22-Aug | 0 | No call/no show. Doc. | E | 2.4 | | | 8 | | |
| | 23-Aug | 0 | No call/no show. Doc. | E | 3.4 | | | 8 | | |
| | 24-Aug | 0 | No call/no show. Doc. | E | 4.4 | | | 8 | | |
| | 2-Sep | 5.27 | Left early, tired. | I | | 0.5 | 2.25 | 2.73 | | |
| | 19-Sep | 7.2 | Tardy 48 min. | I | | 0.3 | 2.50 | 0.8 | | |
| | 10-20 to 10-21 | 0 | Military Leave | M | | | | 16 | | |
| | 24-Oct | 0 | Military Travel | E | 5.4 | | | 8 | | |
| | 14-Nov | 7.25 | Tardy 45 min. | I | | 0.3 | 2.75 | 0.75 | | |
| | 11-17 to 11-18 | 0 | Military Leave | M | | | | 16 | | |
| | 12-12 to 12-16 | 0 | Military Leave | M | | | | 8 | 89.45 | |

2192173.1

**_LuzMaria Arroyo Chicago Policy Update Communications_** **_Date_** 11-4-2010

The following is a list of Chicago local policies provided to LuzMaria Arroyo

**Policy name**

Music, Radio I-Pod MP3 Policy
Chicago Safety Glasses Policy
Chicago Power Outage Procedure
Telephone Personal Communication Device Policy
Saturday work schedule
Personal fall arrest system
Portable Electric Device policy
Attendance policy
Trade day policy
Vehicle alert
Annual shift change
Absence, Doctors Notes, Light Duty Request
Authorization To Release Information
Fitness center
Light Duty
Mack BB3 Project / HRSC

Employee signature

Manager signature

EXHIBIT
8
7-15-13
PENGAD 800-631-6989

| Volvo Parts North America | Chicago Distribution Center Local Policies & Procedures | Valid Date: 02 / 13 / 2006 | Page 1 of 4 |
|---|---|---|---|

| Section: | Attendance Policy |
|---|---|

| Compiled BY: Keith Schroeder | Dept # 4533 | Phone # 815-207-2001 | Responsible: Keith Schroeder | Reviewed & Approved By: Keith Schroeder |
|---|---|---|---|---|

# ATTENDANCE

**Purpose** To provide administrative guidelines for the above policy

**Scope** All Volvo Parts North America, Chicago employees of the Joliet distribution center

**Eligibility** Full Time employees are eligible on the first day of employment

**Guidelines** Absenteeism is a costly basic and continuing problem, which seriously handicaps our ability to meet operational, needs and properly service our customers. In order to control absenteeism and thus reduce costs, we are issuing the following guidelines. All employees are expected to be in the building and ready to work at the scheduled start time and continue to work until the scheduled hours of work are completed.

Unauthorized absences or tardies shall not be permitted. When an employee knows that it will be necessary to be absent, tardy or leave early, the employee shall make prior arrangements. If arrangement cannot be made the employee shall be responsible for seeing that the supervisor is advised by telephone, as soon as possible (generally before start of the shift), as to the specific reason(s) for such absence, or upon punching in, reason for tardiness.

Employees absent for personal reasons or personal illness must provide documented evidence, which is satisfactory to the company upon return to work. Absences approved by management will be recorded as excused. Employees who fail to provide documentation upon return to work will be charged with an unauthorized absence.

If an employee's absence is for more than 3 consecutive workdays, at that time, the employee must provide verifiable medical certification from the doctor and have the document sent to the Human Resource Department. Employees must also notify their immediate supervisor. If your supervisor is unavailable you will need to speak to another supervisor. Income benefits for absences in excess of 5 consecutive workdays will be paid in accordance with the provisions of the Salary Continuation, Short Term Disability and LTD Policies

PENGAD 800-631-6989 EXHIBIT 9 7-15-13

## ATTENDANCE

**Guidelines**

It is the responsibility of management to review attendance records and to ensure that employees maintain satisfactory attendance. It is also management's responsibility to counsel the employee regarding attendance. This should be reviewed with HR in accordance with the Employee Counseling Policy

In order to provide for uniformity in determining whether absences for personal reasons are excusable, the following list is provided for your guidance. Absences, which do not fall within any of the reasons listed, are not considered excusable. In unusual circumstances, exceptions may be made for good cause, but such exceptions are subject to management approval.

**EXCUSABLE ABSENCES**

1. Scheduled Vacation Days
2. Holidays
3. Bereavement
4. Jury Duty
5. Military Duty
6.Disciplinary Suspension
7. Personal Business approved by the appropriate supervisor
8. Sick leave supported by medical evidence satisfactory to the Company, A&S, Workman's Compensation or FMLA.
9. Absences for personal illness, medical, dental or optical appointments, which is supported with, documented evidence satisfactory to the Company
   a. A physician or physician's assistant must actually see the employee. An original document from the physician must be submitted.
   b. No backdating of notes by physicians or his or her representative will be allowed.

# ATTENDANCE

**Guidelines**

Employees will be allowed an aggregate of five (5) absences per calendar year as described in items 7 and 9. Absences in excess of the five (5) allowed shall be considered unauthorized.

An employee who has an unauthorized absence for a full or part day shall be charged with an occurrence for each specific infraction. All tardies will constitute one half of an occurrence for each specific infraction of one (1) hour or less, three quarters of an occurrence for one (1) hour to (4) hours tardy, and one full occurrence for 4 hours or more tardy.

## INEXCUSABLE ABSENCES (OCCURENCES)

| | | |
|---|---|---|
| 1. | One hour or less | = 0.50 |
| 2. | Over one hour but less that 4 hours | = 0.75 |
| 3. | Four hours or more | = 1.00 |

If, upon review of an employee's attendance record, there is two (2) unauthorized occurrences within the applicable four (4) week period, corrective action will be taken. Furthermore, if an employee accumulates five (5) unauthorized occurrences in a six (6) month period, even though fewer than two (2) per month, corrective action will be taken.

# ATTENDANCE

**Guidelines**

Employees who do not fall into the aforementioned categories but whose absences from work total 10% or more of his or her scheduled work days at any point within a continuous twelve (12) month period may, depending on their overall attendance as well as their personnel record and their length of Company service, at the Company's discretion and judgment, be subject to disciplinary action. If this occurs, they must make substantial improvement in their attendance record at once or risk further disciplinary action up to and including suspension and/or discharge.

## CORRECTIVE DISCIPILINARY ACTION

Step 1. Verbal Warning - Written Corrective Action Plan - Copy to employee file.

Step 2. Formal Written - Written Corrective Action Plan - Communication, copy to HR - Copy to employee file.

Step 3. Three day Suspension - Written Corrective Action Plan - Communication, copy to HR - Copy to employee file.

Step 4. Final Termination - Written Corrective Action Plan, Communication, copy to HR - Copy to employee file.

Each time an employee attains 6 months of satisfactory attendance from the date of the last violation causing disciplinary action, the next disciplinary action will be reduced by one step. The attendance plan is monitored and enforced on a rolling fiscal calendar.

Revision 01.05.2009 Absences other than ETO / Vacation Weeks and scheduled Holidays will not count towards the rolling time period.

IT is management's responsibility to communicate any "Corrective Action Plan" within 2 weeks after the day that caused the corrective disciplinary action.

The unwritten policy that allowed a 2 minute grace period will be eliminated on January 02, 2008. All employees are required to punch at their respective shift start time.

JAN 02 2001 13:02 FR MACK TRUCKS INC H R 610 709 3656 TO 917084995783 P.01/01

MACK TRUCKS, INC.
**VETERAN STATUS QUESTIONNAIRE**

(Please Print)

NAME LuzMaria Arroyo JOB TITLE Material Handler

BADGE NO. ______ DEPT. NO. ______ HIRE DATE 6/13/2005

(1) Are you a veteran of the U.S. Armed Forces?

☒ Yes ☐ No

(2) Indicate dates of active duty service. DEC 7 2003 through JAN 25 2005

(3) Date of discharge. JAN 25 2005

(4) If a veteran, are you a Vietnam-era veteran (active duty for more than 180 days, honorably discharged and served from February 28, 1961 through May 7, 1975)?

☐ Yes ☒ No

(5) If a veteran, have you served in one of the campaigns/expeditions during the dates listed on the reverse side of this questionnaire?

☒ Yes ☐ No GWOT VETERAN

(6) If a veteran, were you injured in/or discharged from active duty because of a service connected disability?

☐ Yes ☒ No

I certify that the information given herein is true and accurate to the best of my knowledge.

SIGNATURE [signature] DATE SIGNED 6/14/2005

EXHIBIT 10 7-15-13

PENGAD 800-631-6989

Veterans.doc-5/15/00

# THE NATIONAL COMMITTEE FOR EMPLOYER SUPPORT OF THE GUARD AND RESERVE

RECOGNIZES

## Mr. Schroeder & Employees
## Mack Truck, Inc.

ESGR
EMPLOYER SUPPORT OF THE GUARD AND RESERVE

AS A

## PATRIOTIC EMPLOYER

FOR CONTRIBUTING TO NATIONAL SECURITY AND PROTECTING LIBERTY AND FREEDOM BY SUPPORTING EMPLOYEE PARTICIPATION IN AMERICA'S NATIONAL GUARD AND RESERVE FORCE

P.K. BRUNELLI
ACTING EXECUTIVE DIRECTOR
NATIONAL COMMITTEE FOR
EMPLOYER SUPPORT OF THE GUARD AND RESERVE

JAMES G. REBHOLZ
CHAIRMAN
NATIONAL COMMITTEE FOR
EMPLOYER SUPPORT OF THE GUARD AND RESERVE

PENGAD 800-631-6989
EXHIBIT
7-15-13

ESGR 110 7/06

# THE NATIONAL COMMITTEE FOR EMPLOYER SUPPORT OF THE GUARD AND RESERVE

RECOGNIZES

## Michael Tempko and Patrick Dunn

### Mack Trucks, Inc

AS A

## PATRIOTIC EMPLOYER

FOR CONTRIBUTING TO NATIONAL SECURITY
AND PROTECTING LIBERTY AND FREEDOM

BY SUPPORTING EMPLOYEE PARTICIPATION IN
AMERICA'S NATIONAL GUARD AND RESERVE FORCE

JOHN E. SCULLY
COMMITTEE CHAIR
STATE OF ILLINOIS
EMPLOYER SUPPORT of THE GUARD AND RESERVE

DAVID A. JANES
CHAIRMAN
NATIONAL COMMITTEE FOR
EMPLOYER SUPPORT of THE GUARD AND RESERVE

BOB HOLLINGSWORTH
EXECUTIVE DIRECTOR
NATIONAL COMMITTEE FOR
EMPLOYER SUPPORT of THE GUARD AND RESERVE

# Volvo Parts North America
# Chicago Parts Central Distribution

## Employee Counseling – Corrective Action Plan

**Date: October 29, 2010**
**To: Luz Maria Arroyo**
**From: Keith Schroeder**

Subject: Verbal warning - Attendance

You have accumulated a total of 2 occurrences in a one-month period, from October 1st through October 19th, thus exceeding our attendance policy guidelines.

Reference attached attendance records.

Unauthorized absences disrupt the workflow and jeopardize customer service.

This concern must be addressed immediately or further disciplinary action will be taken up to and including termination of employment.

Please advise your supervisor if he can be of any assistance to you in this matter.

We will continue to monitor your attendance with the hope that this issue can be resolved.

It is the Company's desire to promote an environment where employees are treated fairly and have the opportunity to succeed at their jobs. It is the Company's belief that most employees sincerely desire to do their best in performing their jobs; and with the proper instruction and guidance can maintain appropriate conduct and acceptable and consistent levels of performance. Occasionally, however, there will be a need for counseling to correct performance or behavior problems. If counseling and corrective action plan efforts fail to improve the poor performance or inappropriate behavior or conduct further disciplinary actions will be considered up to and including termination.

EXHIBIT
13
7-15-13
PENGAD 800-631-6989

Supervisor signature: Keith Schroeder

Employee signature:

CC personnel file: Luz Maria Arroyo

LMA 110

0000427

0000428

LMA 111

# Attendance Records 2010

*Date Updated W/E 10-24-10*

| Employee Name | Date | Hours Worked | Reason | Absence Code | Excused Cum Days | Inexcusable Absence | Cum Occurences | Hours Absent | Total Cum Hours Absent | Disciplinary Action |
|---|---|---|---|---|---|---|---|---|---|---|
| Arroyo, Luz Maria | 1-4 to 1-8 | 0 | Military Leave | ML | | | | 40 | | |
| | 2-22 to 2-26 | 0 | Military Leave | ML | | | | 40 | | |
| | 3-1 to 3-5 | 0 | Military Leave | ML | | | | 40 | | |
| | 3-8 to 3-12 | 0 | Military Leave | ML | | | | 40 | | |
| | 3-15 to 3-19 | 0 | Military Leave | ML | | | | 40 | | |
| | 3-22 to 3-26 | 0 | Military Leave | ML | | | | 40 | | |
| | 3-29 to 4-2 | 0 | Military Leave | ML | | | | 40 | | |
| | 4-5 to 4-9 | 0 | Military Leave | ML | | | | 40 | | |
| | 4-12 to 4-16 | 0 | Military Leave | ML | | | | 40 | | |
| | 4-19 to 4-23 | 0 | Military Leave | ML | | | | 40 | | |
| | 4-26 to 4-30 | 0 | Military Leave | ML | | | | 40 | | |
| | 5-3 to 5-7 | 0 | Military Leave | ML | | | | 40 | | |
| | 5-10 to 5-14 | 0 | Military Leave | ML | | | | 40 | | |
| | 5-17 to 5-21 | 0 | Military Leave | ML | | | | 40 | | |
| | 5-24 to 5-28 | 0 | Military Leave | ML | | | | 40 | | |
| | 6-1 to 6-4 | 0 | Military Leave | ML | | | | 40 | | |
| | 6-7 to 6-11 | 0 | Military Leave | ML | | | | 40 | | |
| | 6-14 to 6-18 | 0 | Military Leave | ML | | | | 40 | | |
| | 6-21 to 6-25 | 0 | Military Leave | ML | | | | 40 | | |
| | 6-28 to 7-2 | 0 | Military Leave | ML | | | | 40 | | |
| | 7-5 to 7-9 | 0 | Military Leave | ML | | | | 40 | | |
| | 7-12 to 7-16 | 0 | Military Leave | ML | | | | 40 | | |
| | 7-19 to 7-23 | 0 | Military Leave | ML | | | | 40 | | |
| | 7-26 to 7-30 | 0 | Military Leave | ML | | | | 40 | | |
| | 8-2 to 8-6 | 0 | Military Leave | ML | | | | 40 | | |
| | 8-9 to 8-13 | 0 | Military Leave | ML | | | | 40 | | |
| | 8-16 to 8-20 | 0 | Military Leave | ML | | | | 40 | | |
| | 8-23 to 8-27 | 0 | Military Leave | ML | | | | 40 | | |
| | 8-30 to 9-3 | 0 | Military Leave | ML | | | | 40 | | |
| | 9-6 to 9-11 | 0 | Military Leave | ML | | | | 40 | | |
| | 9-13 to 9-17 | 0 | Military Leave | ML | | | | 40 | | |
| | 9-20 to 9-24 | 0 | Military Leave | ML | | | | 40 | | |
| | 27-Sep | | Return to Work from ML | | | | | | | |
| | 1-Oct | 7.63 | Late 22 min. | I | | 0.5 | 0.50 | 0.37 | | |
| | 11-Oct | 7.67 | Late 20 min. | I | | 0.5 | 1.00 | 0.33 | | |
| | 19-Oct | 0 | Call In, family. | I | | 1 | 2.00 | 8 | 628.70 | Verbal warning, 2 in 1 |

| | |
|---|---|
| **From:** | Gorski, Thomas COL RET |
| **To:** | Schroeder Keith |
| **Subject:** | Final closing document (UNCLASSIFIED) |
| **Date:** | Monday, April 04, 2011 10:42:35 AM |
| **Attachments:** | Final LMA SSG01124938 Summary and conclusions and recommendations Closing Doc.docx |

Classification: UNCLASSIFIED
Keith,

Attached is the final which incorporates the additional facts and position that you provided to me ealier. Please review and provide concurrence or recommendations. I will provide a copy to Luz once I have heard from you .

Regards,

Tom
Classification: UNCLASSIFIED

EXHIBIT
PENGAD 800-631-6989
15
7-15-13

These following are the salient issues discussed with SM:

1. Time off prior to drill in order to provide an adequate amount of rest.
2. Resumption of health insurance on return to work.
3. Pension plan 401k contribution make up for period of active duty.
4. Company policy: Up to ten day of paid leave for the purpose of annual training (Military Leave).

Background:

You returned to work in September, 2010 after return from deployment and terminal leave. Your normal work hours are Monday through Friday 4:30 p.m. until 12:30 a.m. During your shift you are allowed a ten minute break and a twenty-five minute lunch break from 10:00 p.m. until 10:25 p.m. SM changed her work hours for the November drill period to 12:30 p.m. through 8:30 p.m. to accommodate the employer's request. SM is required to report for duty at the reserve center at 5:00 a.m.

**Issue 1:** Time off prior to drill in order to provide an adequate amount of rest before reporting for military duty.

Facts: Employer and ESGR agree that SM is allowed ten hours for rest and travel between end of shift and commencement of USAR Battle Assembly. SM's scheduled shift is 4:30 p.m. through 12:30 Monday through Friday.

Discussion: The Assistant Secretary for Veteran's Employment and Training (ASVET) issued ASVET Memorandum No 5-99, Subject: Allowable Time Off from Employment Prior to Service in the Uniformed Services. The memorandum states in part that since 1977 the Office of Veteran's Reemployment Rights has taken a consistent position regarding allowable time off. Discussion with the Office of Solicitor and statements during the 1958 senate hearings demonstrate that Congress intended that an employer must reasonably accommodate the employee as to allowable time off to perform military service.

Conclusion: VETS policy is that an employee should be afforded enough time off from the employer prior to starting military duty in order to travel to the duty station and arrive fit to perform military service. With ASVET Memo No 5-99 as guidance the employer will adjust the SM's Friday shift prior to regularly scheduled battle assemblies that commence at 5:00 a.m. be from 4:30 p.m. until 7:00 p.m. SM will be charged with 2.5 hours of work and 5.5 hours of excused military leave. In the event the SM desires to be excused for the entire shift it will be incumbent upon her to request Earned Time Off (ETO) for the 2.5 hours. This is contingent

upon the shift ETO schedule availability for the day. If the day is available employer would charge 2.5 hours ETO and 5.5 hours excused military leave.

Should the SM request the whole shift off she may request 8 hours ETO. If the day is not available the employer would charge 2.5 hours unexcused and 5.5 hours excused military leave. The unexcused absence will be treated in accordance with local attendance policies.

Additionally, in the event that travel is required for military duty outside of the local commuting area, the employer will provide additional travel time dependent on the travel itinerary or military orders provided by the SM. Upon completion of duty and return to work, SM will provide a signed copy of orders with any amendments to employer to substantiate performance of duty.

Recommendation: SM's Friday shift prior to regularly scheduled battle assemblies which commence at 5:00 a.m. be from 4:30 p.m. until 7:00 p.m. SM will be charged with 2.5 hours of work and 5.5 hours of excused military leave. In the event the SM desires to be excused for the entire shift it will be incumbent upon her to request Earned Time Off (ETO) for the 2.5 hours. This is contingent upon the shift ETO schedule availability for the day. If the day is available employer would charge 2.5 hours ETO and 5.5 hours excused military leave. Any unexcused absence will be treated in accordance with local attendance policies.

In the event that travel is required for military duty outside of the local commuting area, the employer will provide additional travel time dependent on the travel itinerary or military orders provided by the SM. Upon completion of duty and return to work, SM will provide a signed copy of orders with any amendments to employer to substantiate performance of duty.

**Issue 2:** Resumption of health insurance on return to work.

Facts: SM stated that on return to work she spoke with HR regarding health insurance. SM health care coverage did not resume on return to employment. SM in a discussion regarding health insurance with employer on October 19, 2010 informed the employer that she had spoken with Maureen, the local HR representative on return to work. SM went on to state that she was not paying into the plan and did not think she was covered by the plan. SM was sent to a local immediate care clinic and is now being billed for the complete cost of the service.

In discussion with employer, I was informed that the personnel actions are under a self-service system where the employee is required to contact HRSC in order to make changes to health plans etc. The SM would have had to contact HRSC in order to reinstate her in the company group health plan. Additionally, when SM returned to work her health care benefits were reinstated to her former status waiving all medical coverage. The employer confirmed that SM did receive company pay for waiving medical coverage throughout the period she worked until her A&S in December.

Discussion: Based on discussion with SM and employer it appears that there was a miscommunication between them. However, on October 19, 2010 the employer was made fully aware that SM spoke to HR on her return but at that time had not made any contributions toward her share in the cost of coverage and did not feel she was participating in the company plan.

Conclusion: USERRA Sec. 4317 (b) clearly states that a waiting period or exclusion cannot be imposed upon reinstatement of health plan coverage of any person whose coverage was terminated by reason of military service. Although it appears that there was a miscommunication SM's coverage should be retroactive to date of return to civilian employment; a reasonable payment plan for premiums due from reinstatement date to present should be developed; and any obligation incurred should be covered to the extent of the health insurance plan provided to the employee.

Recommendation: It is suggested that SM consider the actual cost of medical services she is requesting coverage for versus payback to the company for waived coverage and the cost of medical benefits. In the event the SM's out of pocket costs exceed the payback to the company, the company will reimburse the difference. Reinstatement in the plan for last year is not possible as she exceeded the time window for making changes.

**Issue 3:** Makeup contributions to employer 401k plan.

§1002.262 Federal Register/Vol. 70, No 242/Rules and Regulations provides the following:

When is the employer required to make the plan contribution that is attributable to the employee's period of uniformed service?

§1002.262 (b) states: If the employee is enrolled in a contributory plan he or she is allowed (but not required) to makeup his or her missed contributions or elective deferrals. These makeup contributions or elective deferrals must be made during a time period starting with the date of reemployment and continuing for up to three times the length of the employee's immediate past period of uniformed service, with the repayment period not to exceed five years. Makeup contributions or deferrals may only be made during this period and while the employee is employed with the post service employer.

Discussion: The law and the regulations covering pension contributions are clear regarding the SM's being given the opportunity to makeup contributions. It appears from the reading of the law and the regulations that it is the intent of the lawmakers to provide the SM with the every opportunity to makeup missed contributions for the period which they were in the uniformed services, and to share in the employer's matching contributions for the same period of absence.

Conclusion: The SM should be able to commence making makeup contributions up to the amount based on the formula and conditions of §4318 of USERRA and the regulations thereunder.

Recommendation: Makeup contributions to company 401k plan based on the formulae recommended in §4318 of USERRA and the regulations.

**Issue 4:** Compensation for active duty days i.e. Yellow Ribbon Events.

Facts: Company Policy provides for Up to ten day of paid leave for the purpose of annual training (Military Leave). The SM is required by congress to attend three Yellow Ribbon Events 30 days, 60 days and 90 days after release from active duty. SM stated that compensation according to company policy did not appear in the following payroll.

Discussion: Yellow Ribbon Events are legitimate Active Duty, and provisions for time off to allow for adequate rest and travel apply. In discussion with employer it was determined that the duty which the SM was referring to and requesting compensation occurred on December 17. SM provided a copy of the order to the employer. The employer stated it was an oversight on their part and would be corrected.

Company Policy: Company Policy states in part: Upon evidence of completion of the required service training days, employees will subsequently be paid the difference between their regular daily rate of pay and military rate of pay for regular days of work missed (up to the 10-work-day maximum period allowed during the calendar year).

Conclusion: Based on company policy and discussion with employer SM need only provide evidence of completion of the duty and SM will be compensated the difference between their regular daily rate of pay and military rate of pay for regular days of work missed.

Recommendation: Employer make up the oversight mentioned above at the next payroll.

# INDIRECT REPORT

NAME: ______

USER ID: 9280

DATE: 4/

| Description of Indirect | | |
|---|---|---|
| Inspect, clean, stock picker | 1630 | Start Time |
| | 1640 | Duration, Minutes |
| | ☐ MACK | ☐ VOLVO |

| Description of Indirect | | |
|---|---|---|
| Battery change; ~~[illegible]~~ 2 people ahead of me | 1654 | Start Time |
| | 1706 | Duration, Minutes |
| | ☐ MACK | ☐ VOLVO |

| Description of Indirect | | |
|---|---|---|
| Bathroom + change to picker | 2010 | Start Time |
| | 2020 | Duration, Minutes |
| | ☐ MACK | ☐ VOLVO |

| Description of Indirect | | |
|---|---|---|
| Zoned out | ? | Start Time |
| | 1105 | Duration, Minutes |
| | ☐ MACK | ☐ VOLVO |

| Description of Indirect | | |
|---|---|---|
| | | Start Time |
| | | Duration, Minutes |
| | ☐ MACK | ☐ VOLVO |

EXHIBIT 18 7-15-13

PENGAD 800-631-6989

**Physicians**
ImmediateCare

April 14, 2011

Ms. Maureen Somersett
Volvo Parts North America
3900 Rock Creek Boulevard
Joliet, IL 60431

Re: Luzmaria Arroyo

Dear Ms. Somersett:

Thank you for referring Luzmarie to our office for an Independent Medical Evaluation.

HISTORY/PHYSICAL:
Luzmaria has worked for Volvo for about six years on and off. She states she enjoys her job and has had no accidents or injuries during her tenure at Volvo. She indicates she has been deployed three times to Iraq and she returned from her latest deployment in April 2010 and left active duty in August 2010. Subsequent to that she began having issues of "zoning out" or "losing track of time," "standing in one place for an unknown length of time," all of which had been coming and going. As a result she sought psychiatric help. She has been seeing a licensed clinical social worker, Brian Fask, at the Orland Veteran's Center. She goes weekly for one hour and this has been going on since November 2010. She also sees a psychiatrist, Dr. Vekanath at the Veterans Administration Hospital. She is on medication from Dr. Vekanath, Sertaline, 50 mg., one daily.

She indicates she has had no problems that she knows of performing her duties other than she zones out and sometimes doesn't know what she had been doing. She indicates her job involves forklifts almost 100% of the time. She states she has some good days and bad days. Some days she is pretty much zoned out the whole day, others not at all.

She is currently in a non-safety sensitive position until this evaluation can be conducted.

She also indicates she had a speeding ticket at 120 mph and doesn't recall what she was thinking during that episode. She feels she was zoned out while she was driving the vehicle at that rate of speed.

I inquired as to what had happened to her in her deployment in Iraq. She states she was involved in a car crash. There was some bombing going on. She never witnessed any of her colleagues being injured or killed.

On examination, she is alert and oriented, in no apparent distress. PERRL, EOMI. Finger-to-nose testing is normal. Gait is normal. Tandem gait is normal. Romberg test is negative. Range of motion and coordination are intact. Lungs are clear to auscultation bilaterally. Cardiac regular rate and rhythm without murmur, click or rub. Lumbar spine exam is without discomfort.

DIAGNOSIS:
Post-traumatic stress disorder.

PENGAD 800-631-6989
EXHIBIT
19
7-15-13

DISCUSSION:
Ms. Arroyo has a diagnosis of post-traumatic stress syndrome and is currently on an anti-psychotic medication, Sertaline, from her psychiatrist at the VA. She is in counseling, as well. She herself admits to issues that clearly make it unsafe for her to drive a forklift in the workplace.

RECOMMENDATIONS:
Therefore, at this time, it is important that she be removed from all safety sensitive work. It would be satisfactory for her to work a desk job; however, she is not to operate a forklift, crane, high lift, nor should she be working at heights above three feet off the ground in the course of her duties. She should not drive company vehicles.

She should continue to follow-up with her medical professionals for help. These restrictions should be in place until she has had clinical resolution of these symptoms as verified by her psychiatrist and also a follow-up fitness for duty evaluation.

Thank you for the opportunity to advise you regarding this case. If you have any further questions, please do not hesitate to contact me.

Sincerely,

John J. Koehler, M.D.
Board Certified in Occupational Medicine

JJK/pmf

Physicians ImmediateCare®

July 21, 2011

Ms. Maureen Somersett
Volvo Parts North America
3900 Rock Creek Boulevard
Joliet, IL 60431

Re: Luzmaria Arroyo

Dear Ms. Somersett:

Thank you for referring Luzmaria Arroyo to my office for an Independent Medical Evaluation.

HISTORY/PHYSICAL:
I saw Ms. Arroyo at my Houbolt Rd. office on 4/14/2011. She is back now for a follow-up evaluation.

Ms. Arroyo indicates she is doing well. She states she has completed her anger management course that was ordered by her counselor. This has helped her develop better coping and interactional skills. She states she has become much better at conversing with people, and is less defensive. She states she understands herself better and her responses to inquiries and statements made by other people. She states her manager has been very helpful and is asking questions now instead of making statements to her. She states her work is going well. She has had no HR write-ups, no violent episodes, her performance has been good and she has had no outbursts of anger or conflict at work.

Outside of work she has had no speeding tickets, no motor vehicle accidents, no home accidents, no negative incidences with family members and no blackouts or absence attacks. She lives with her parents and has a good support network of friends, as well.

On examination, she is alert and oriented, in no apparent distress. She interacts normally and has a good affect. She smiles and answers questions appropriately and is very cooperative and congenial.

Tympanic membranes are normal. Pharynx is normal. Lungs clear to auscultation without rales, wheezes or rhonchi. Cardiac regular rate and rhythm without murmur, click or rub. Cervical exam reveals no adenopathy. Good range of motion. Sensory and motor function distally is intact. Gait is normal. Neurologic status is grossly intact. Extremities are without edema.

DIAGNOSIS:
Post-traumatic stress syndrome, stable.

DISCUSSION:
Ms. Arroyo has done very well, completing her anger management and conflict resolution counseling. Her counselor is pleased with her progress. She is currently taking only one medication and is well-controlled on that medication. She states she has been compliant with the medication.

RECOMMENDATIONS:

PENGAD 800-631-6989 EXHIBIT 20 7-15-13

Therefore, it is my opinion that upon receipt of a letter from her counselor corroboration the above, she can be released back to full-duty without restrictions. She would be able to operate a forklift safely in my opinion, as well as a crane, high-lift, and other segments of her job.



In the meantime, she will remain at her current packing position until I provide the go ahead after reviewing the letter from her counselor.

Thank you for the opportunity to advise you regarding this case. If you have any further questions, please do not hesitate to call.

Sincerely,

John J. Koehler, M.D.
Board Certified in Occupational Medicine

JJK/pmf

**From:** LuzMaria Arroyo
**To:** Williams Regina
**Cc:** Sholl Dennis; Schroeder Keith
**Subject:** Re: Accomodations
**Date:** Friday, September 02, 2011 6:56:27 PM

---

Ms. Williams,

Upon review of this document, I have been advised to state clearly my intent with regards to my request for a flexible work schedule to allow "make up time" in case of tardiness. My request is for an altered attendance policy that would accommodate tardiness (as this is a symptom of my condition). I request that tardiness be excused without infraction as long as I "make up" the missed time.

V/R

SSG Arroyo, LuzMaria
8156306793

---

**From:** LuzMaria Arroyo <limbojunky@yahoo.com>
**To:** Schroeder Keith <keith.schroeder@volvo.com>; Brian Fask <brian.fask@va.gov>
**Cc:** Williams Regina <regina.williams@volvo.com>; Sholl Dennis <dennis.sholl@volvo.com>
**Sent:** Thursday, September 1, 2011 2:03 PM
**Subject:** Re: Accomodations

Ms. Regina Williams,

Based on our conversation yesterday, I have reviewed this document again. I would like to address the request regarding disability awareness training I have requested for Mr. Schroeder, my supervisors and coworkers. Will this request be addressed? How soon can I expect action/an answer?

Additionally, based on the statement you made regarding my need to verbally request each accomodation I may require, I make the following requests:

1) a flexible work schedule to allow "make up time" in case of tardiness

2) the ability to use noise dampening devices (such as earplugs or headphones)

3) the ability to listen to audio relaxation devices

4) a place to meditate and relax - has already been provided based on the response below

5) assign a mentor - has been provided with the company's expressed intent that I speak to my immediate supervisor (Patrick Dunn), whom I have no problems approaching

6) allow time off for counseling - has already been provided

7) provide day-to-day guidance and feedback

EXHIBIT
21
7-15-13
PENGAD 800-631-6989

8) the ability to use the company's wellness program - has already been provided with the ability to utilize the gym during lunch

9) allow the ability to take a break during panic/anxiety attacks

10) disability awareness training for persons whom interact with me

11) all communications given to me in writing

12) the ability to call a support person during panic/anxiety attacks

In addition, upon review of the document I received from Mr. Schroeder yesterday, I noticed that it states I am not to return to work until Tuesday, 9/6. 3 Days Suspension terminates on 9/2. I request to work 10 hours on Saturday, 9/3. Also, I have vacation scheduled 9/6 thru 9/9. I request to cancel that vacation week. Finally, I would like to remind Mr. Schroeder and my supervisor that I have drill scheduled for 9/9-11and request to take military leave on 9/8 beginning at 1900 hrs.

Thank you.

V/R

SSG Arroyo, LuzMaria
8156306793

---

**From:** Schroeder Keith <keith.schroeder@volvo.com>
**To:** LuzMaria Arroyo <limbojunky@yahoo.com>; Brian Fask <brian.fask@va.gov>
**Cc:** Williams Regina <regina.williams@volvo.com>; Schroeder Keith <keith.schroeder@volvo.com>; Sholl Dennis <dennis.sholl@volvo.com>
**Sent:** Thursday, September 1, 2011 1:07 PM
**Subject:** RE: Accomodations

LuzMaria,
This communication is a record of our meeting yesterday in my office. The participants at this meeting were yourself, Regina Williams, Bill Balsis and me.

Reply to your request for accommodation's. Your request is for a quiet space to mediate/utilize relaxation techniques prior to work start and at break or lunch. We will accommodate this with a private space in our warehouse operations office. We have a "Do Not Disturb" magnetic sign available to you if you wish to place this on the outside of the door.
Keith

---

**From:** LuzMaria Arroyo [mailto:limbojunky@yahoo.com]
**Sent:** Friday, August 26, 2011 12:47 PM
**To:** Schroeder Keith; Brian Fask
**Cc:** Williams Regina
**Subject:** Accomodations

Mr. Schroeder,

I am writing to provide you with information based on our conversation on 8/24. Please refer to the attachment which can be found at the following website:
http://www.americasheroesatwork.gov/forEmployers/factsheets/accommodatingPTSD/

**America's Heroes at Work** is a U.S. Department of Labor (DOL) project that addresses the employment challenges of returning Service Members living with Traumatic Brain Injury (TBI) and/or Post-Traumatic Stress Disorder (PTSD) - an important focus of the President's Veterans agenda. The project equips employers and the workforce development system with the tools they need to help returning Service members affected by TBI and/or PTSD succeed in the workplace - particularly Service Members returning from Iraq and Afghanistan.

On 8/23 I experienced an incident which brought about a major anxiety episode. I tried various relaxation techniques but could not ignore the event; I had a call to action, for I no longer felt safe/protected. After careful consideration of courses of action, I decided to speak with my supervisor, Patrick Dunn (whom I feel safe to approach and confer with). The anxiety episode lasted approximately 20 minutes. After speaking with Mr. Dunn, I felt more calm and composed and was able to continue working. Mr. Dunn said he would need to speak with you regarding the event which brought about the anxiety.

On 8/24 you requested to speak with me and Mr. Dunn at which time you threatened to fire me for my behavior. Your demeanor was aggressive and hostile and I felt intimidated/threatened. Additionally, you stated that the time that I used inorder to reduce my anxiety and consider courses of action was not authorized and I would be held accountable under the LMS Lite Policy. You also stated that continued breaks for managing anxiety will result in termination. When I requested this information in writing, you refused to provide it to me and still have not provided it to date.

On 8/25 you again requested to speak with me; this time cornering me in a small office with 2 other supervisors and Ms. Maureen Somersett behind a closed door, in a room with no windows and no way to escape. You provided me with the workplace violence policy and the harrassment policy and then allowed me to leave.

Based on the information in the attachment, I feel my actions were reasonable. However, I feel that you are making it difficult (hostile) for me to deal with my condition, as opposed to being cooperative and supportive. Because I feel unsafe when speaking with you, I request to have Human Resources on the phone AND ONLY Mr. Patrick Dunn OR Ms. Maureen Somersett present during any further discussions with you. Additionally, I request Human Resources to provide reasonable accomodation with providing YOU, the supervisors and my coworkers with disability awareness training. Additionally, I request a quiet space be provided for me to be able to meditate/utilize relaxation techniques (usually done at break and before work begins). Finally, as was the case on 8/23, I request empathy in realizing that sometimes I may not use words to request a "reasonable accomodation", however I will act with the skills and techniques that I am learning in counseling will mitigate my anxiety and PTSD symptoms, and request a cooperative relationship from you as my employer in helping me to do so.

V/R

LuzMaria Arroyo



★☆★

AMERICA'S HEROES AT WORK

SUPPORTING THE EMPLOYMENT SUCCESS OF RETURNING SERVICE MEMBERS WITH TBI & PTSD

★★★ Workplace Accommodations

EXHIBIT 22 7-15-13

PENGAD 800-631-6989

# Accommodating Employees with Post-Traumatic Stress Disorder

Transitioning service members and veterans experiencing the effects of Post-Traumatic Stress Disorder (PTSD) may face day-to-day difficulties—particularly in the workplace. However, employers can play a vital role in these individuals' recovery by recognizing the challenges associated with PTSD and making reasonable accommodations to help ensure workplace success.

People with PTSD may experience some of the limitations discussed in this fact sheet; however, they seldom will develop all of them. In addition, the severity of the condition and, subsequently, the degree of limitation will vary among individuals. Even within the same individual, there may be factors that exacerbate symptoms (e.g., additional stressors, health concerns, interpersonal issues, etc.) and other factors that are more restorative (e.g., social support, professional treatment, balanced participation in recreational/pleasurable activities, good health habits, etc.)

Employers should be aware that not all people with PTSD will need accommodations to perform their jobs, and many others may only need a few accommodations. The following is only a sample of the accommodation possibilities available. Employers should also know that unless the employee reveals, or makes available information, that they have been diagnosed as having PTSD, the employer will not necessarily know whether the condition is present in any given individual.

## Questions to Consider:

- What limitations is the employee with PTSD experiencing and how do they affect his or her job performance?
- What specific job tasks are problematic as a result of his or her limitations?
- Are there aspects of the work, physical environment or social environment that exacerbate the employee's symptoms?
- What accommodations are available to reduce or eliminate these problems?
- Has the employee with PTSD been consulted regarding possible accommodations?
- Once accommodations are in place, would it be useful to meet with the employee with PTSD to evaluate the effectiveness of the accommodations and to determine whether additional accommodations are needed?
- Do supervisory personnel and employees need training regarding PTSD?
- Has the employee sought care or treatment for PTSD or a similar condition and, if so, has the employee continued to follow up and comply with the recommended care (provided this information is known)?

# ★★★ Workplace Accommodations

**ACCOMMODATION IDEAS:**

*Memory Deficits:*

- Provide written instructions
- Post written instructions for use of equipment
- Use a wall calendar
- Use a daily or weekly task list
- Provide verbal prompts and reminders
- Use electronic organizers or hand held devices
- Allow the employee to tape record meetings
- Provide written minutes of each meeting
- Allow additional training time

*Time Management/Performing or Completing Tasks:*

- Make daily "TO-DO" lists and check items off as they are completed
- Divide large assignments into smaller tasks and steps
- Schedule weekly meetings with supervisor, manager or mentor to determine if goals are being met
- Remind employee of important deadlines via memos or e-mail

*Coping with Stress:*

- Allow longer or more frequent work breaks
- Provide backup coverage for when the employee needs to take breaks
- Provide additional time to learn new responsibilities
- Restructure job to include only essential functions
- Allow time off for counseling
- Assign a supervisor, manager or mentor to answer employee's questions

*Interacting with Co-workers:*

- Encourage the employee to walk away from frustrating situations and confrontations
- Allow employee to work from home part-time
- Provide partitions or closed doors to allow for privacy
- Provide disability awareness training to co-workers and supervisors

*Lack of Concentration:*

- Reduce distractions in the work environment
- Provide space enclosures or a private space
- Allow for the use of white noise or environmental sound machines
- Allow the employee to play soothing music using a music player and a headset
- Increase natural lighting or increase full spectrum lighting
- Divide large assignments into smaller goal-oriented tasks or steps
- Plan for uninterrupted work time

*Disorganization:*

- Use calendars to mark meetings and deadlines
- Use electronic organizers
- Hire a professional organizer or organizational coach
- Assign a mentor to assist the employee

*Working Effectively with a Supervisor:*

- Give assignments, instructions or training in writing or via e-mail
- Provide detailed day-to-day guidance and feedback
- Provide positive reinforcement
- Provide clear expectations and the consequences of not meeting expectations
- Develop strategies to deal with problems

*Dealing with Emotions:*

- Refer to employee assistance programs (EAP)
- Use stress management techniques to deal with frustration
- Allow the use of a support animal
- Allow telephone calls during work hours to doctors and others for needed support
- Allow frequent breaks

*Sleep Disturbance:*

- Allow the employee to work one consistent schedule
- Allow for a flexible start time
- Combine regularly scheduled short breaks into one longer break
- Provide a place for the employee to sleep during break

*Muscle Tension or Fatigue:*

- Build in "stretch breaks" during the workday
- Allow private space to meditate or do yoga
- Allow time off for physical therapy or massage therapy
- Encourage use of the company's wellness program

*Absenteeism:*

- Allow for a flexible start time or end time, or work from home
- Provide straight shift or permanent schedule
- Modify attendance policy (e.g., count one occurrence for all PTSD-related absences, or allow the employee to make up the time missed)

*Panic Attacks:*

- Allow the employee to take a break and go to a place where s/he feels comfortable to use relaxation techniques or contact a support person
- Identify and remove environmental triggers such as particular smells or noises
- Allow the presence of a support animal

*Headaches:*

- Provide alternative lighting
- Take breaks from computer work or from reading print material
- Practice stress-relieving techniques



EMPLOYMENT ENABLES MANY PEOPLE WITH DISABILITIES AND COMBAT-RELATED CONDITIONS, INCLUDING THOSE WITH PTSD, TO FULLY PARTICIPATE IN SOCIETY. IN FACT, ACCORDING TO THE NATIONAL COUNCIL ON DISABILITY, PEOPLE WHO REGAIN EMPLOYMENT FOLLOWING THE ONSET OF A DISABILITY REPORT HIGHER LIFE SATISFACTION AND BETTER ADJUSTMENT THAN DO PEOPLE WHO ARE NOT EMPLOYED.

For more information about PTSD employment issues, visit the America's Heroes at Work Web site at www.AmericasHeroesAtWork.gov.

This fact sheet was developed in cooperation with the U.S. Department of Labor's (DOL) Office of Disability Employment Policy, the Job Accommodation Network, the Veterans' Employment and Training Service, the Defense Centers of Excellence for Psychological Health and Traumatic Brain Injury, and the Defense and Veterans Brain Injury Center.

**Help For Employers:**

For personal assistance related to job accommodations for veterans with disabilities call:
Job Accommodation Network (JAN)
800-526-7234 (voice)
877-781-9403 (TTY)

**From:** Williams Regina
**To:** "LuzMaria Arroyo"; Schroeder Keith; "Brian Fask"
**Cc:** Sholl Dennis
**Subject:** RE: Accomodations
**Date:** Wednesday, September 14, 2011 8:22:14 AM
**Importance:** High

---

LuzMaria,

I am contacting you to set up time today September 14, 2011 to review with you the accommodation list that you requested below in your email. I have been on assigned Jury Duty for week 9/12 through 9/16 and have not been able to set up time until today. I would like to have the conference call upon your arrival at work today. There will be a conference room assigned for you to take the conference call. Please advise if you are available.

Regards

*Regina I. Williams*

HR Business Partner
3020 Evergreen Drive
Duluth, GA 30096
770-813-9125 ext 100
770-813-9658 (fax)

HR Service Center phone: 800-344-8339
hrsc.us@volvo.com
fax 336-393-4233 (benefits only)
fax 336-393-3607 (all other HR transactions)

This email (and any attachments) is confidential and may be subject to legal or other professional privilege. It is intended solely for the receipt of the named addressee(s). It is subject to copyright and may only be copied or distributed with the consent of the copyright owner. If you are not a named addressee, you must not use, disclose, retain or reproduce all or any part of the information contained in this email or any attachments. Please notify the sender immediately by return email and destroy all copies of the email. Any confidentiality, privilege or copyright is not waived or lost because this email has been sent to you by mistake.

---

**From:** Williams Regina
**Sent:** Thursday, September 01, 2011 4:11 PM
**To:** LuzMaria Arroyo; Schroeder Keith; Brian Fask
**Cc:** Sholl Dennis
**Subject:** RE: Accomodations

PENGAD 800-631-6989
EXHIBIT
23
7-15-13

LuzMaria,
We have received your accomodation request 1 - 12 and we will get back with you once we review them. Due to your suspension ending on Friday,9/2/11; you can work Saturday, 9/3/11. The ETO for 9/6/11 through 9/9/11 will be cancelled as you requested. We have also noted your military leave.

Regards

*Regina I. Williams*

HR Business Partner
3020 Evergreen Drive
Duluth, GA 30096
770-813-9125 ext 100
770-813-9658 (fax)

HR Service Center phone: 800-344-8339
hrsc.us@volvo.com
fax 336-393-4233 (benefits only)
fax 336-393-3607 (all other HR transactions)

This email (and any attachments) is confidential and may be subject to legal or other professional privilege. It is intended solely for the receipt of the named addressee(s). It is subject to copyright and may only be copied or distributed with the consent of the copyright owner. If you are not a named addressee, you must not use, disclose, retain or reproduce all or any part of the information contained in this email or any attachments. Please notify the sender immediately by return email and destroy all copies of the email. Any confidentiality, privilege or copyright is not waived or lost because this email has been sent to you by mistake.

---

**From:** LuzMaria Arroyo [mailto:limbojunky@yahoo.com]
**Sent:** Thursday, September 01, 2011 3:03 PM
**To:** Schroeder Keith; Brian Fask
**Cc:** Williams Regina; Sholl Dennis
**Subject:** Re: Accomodations

Ms. Regina Williams,

Based on our conversation yesterday, I have reviewed this document again. I would like to address the request regarding disability awareness training I have requested for Mr. Schroeder, my supervisors and coworkers. Will this request be addressed? How soon can I expect action/an answer?

Additionally, based on the statement you made regarding my need to verbally request each accomodation I may require, I make the following requests:

1) a flexible work schedule to allow "make up time" in case of tardiness

2) the ability to use noise dampening devices (such as earplugs or headphones)

3) the ability to listen to audio relaxation devices

4) a place to meditate and relax - has already been provided based on the response below

5) assign a mentor - has been provided with the company's expressed intent that I speak to my immediate supervisor (Patrick Dunn), whom I have no problems approaching

6) allow time off for counseling - has already been provided

7) provide day-to-day guidance and feedback

8) the ability to use the company's wellness program - has already been provided with the ability to utilize the gym during lunch

9) allow the ability to take a break during panic/anxiety attacks

10) disability awareness training for persons whom interact with me

11) all communications given to me in writing

12) the ability to call a support person during panic/anxiety attacks

In addition, upon review of the document I received from Mr. Schroeder yesterday, I noticed that it states I am not to return to work until Tuesday, 9/6. 3 Days Suspension terminates on 9/2. I request to work 10 hours on Saturday, 9/3. Also, I have vacation scheduled 9/6 thru 9/9. I request to cancel that vacation week. Finally, I would like to remind Mr. Schroeder and my supervisor that I have drill scheduled for 9/9-11and request to take military leave on 9/8 beginning at 1900 hrs.

Thank you.

V/R

SSG Arroyo, LuzMaria
8156306793

---

**From:** Schroeder Keith <keith.schroeder@volvo.com>
**To:** LuzMaria Arroyo <limbojunky@yahoo.com>; Brian Fask <brian.fask@va.gov>
**Cc:** Williams Regina <regina.williams@volvo.com>; Schroeder Keith <keith.schroeder@volvo.com>; Sholl Dennis <dennis.sholl@volvo.com>
**Sent:** Thursday, September 1, 2011 1:07 PM
**Subject:** RE: Accomodations

LuzMaria,
This communication is a record of our meeting yesterday in my office. The participants at this meeting were yourself, Regina Williams, Bill Balsis and me.

Reply to your request for accommodation's. Your request is for a quiet space to mediate/utilize relaxation techniques prior to work start and at break or lunch. We will accommodate this with a private space in our warehouse operations office. We have a "Do Not Disturb" magnetic sign available to you if you wish to place this on the outside of the door.
Keith

---

**From:** LuzMaria Arroyo [mailto:limbojunky@yahoo.com]
**Sent:** Friday, August 26, 2011 12:47 PM
**To:** Schroeder Keith; Brian Fask
**Cc:** Williams Regina
**Subject:** Accomodations

Mr. Schroeder,

I am writing to provide you with information based on our conversation on 8/24. Please refer to the attachment which can be found at the following website:
http://www.americasheroesatwork.gov/forEmployers/factsheets/accommodatingPTSD/

**America's Heroes at Work** is a U.S. Department of Labor (DOL) project that addresses the employment challenges of returning Service Members living with Traumatic Brain Injury (TBI) and/or Post-Traumatic Stress Disorder (PTSD) - an important focus of the President's Veterans agenda. The project equips employers and the workforce development system with the tools they need to help returning Service members affected by TBI and/or PTSD succeed in the workplace - particularly Service Members returning from Iraq and Afghanistan.

On 8/23 I experienced an incident which brought about a major anxiety episode. I tried various relaxation techniques but could not ignore the event; I had a call to action, for I no longer felt safe/protected. After careful consideration of courses of action, I decided to speak with my supervisor, Patrick Dunn (whom I feel safe to approach and confer with). The anxiety episode lasted approximately 20 minutes. After speaking with Mr. Dunn, I felt more calm and composed and was able to continue working. Mr. Dunn said he would need to speak with you regarding the event which brought about the anxiety.

On 8/24 you requested to speak with me and Mr. Dunn at which time you threatened to fire me for my behavior. Your demeanor was aggressive and hostile and I felt intimidated/threatened. Additionally, you stated that the time that I used inorder to reduce my anxiety and consider courses of action was not authorized and I would be held accountable under the LMS Lite Policy. You also stated that continued breaks for managing anxiety will result in termination. When I requested this information in writing, you refused to provide it to me and still have not provided it to date.

On 8/25 you again requested to speak with me; this time cornering me in a small office with 2 other supervisors and Ms. Maureen Somersett behind a closed door, in a room with no windows and no way to escape. You provided me with the workplace violence policy and the harrassment policy and then allowed me to leave.

Based on the information in the attachment, I feel my actions were reasonable. However, I feel that you are making it difficult (hostile) for me to deal with my condition, as opposed to being cooperative and supportive. Because I feel unsafe when speaking with you, I request to have Human Resources on the phone AND ONLY Mr. Patrick Dunn OR Ms. Maureen Somersett present during any further discussions with you. Additionally, I request Human Resources to provide reasonable accomodation with providing YOU, the supervisors and my coworkers with disability awareness

training. Additionally, I request a quiet space be provided for me to be able to meditate/utilize relaxation techniques (usually done at break and before work begins). Finally, as was the case on 8/23, I request empathy in realizing that sometimes I may not use words to request a "reasonable accomodation", however I will act with the skills and techniques that I am learning in counseling will mitigate my anxiety and PTSD symptoms, and request a cooperative relationship from you as my employer in helping me to do so.

V/R

LuzMaria Arroyo

VOLVO

Volvo Parts North America

LuzMaria Arroyo
9148 S 88th Court
Hickory Hills, IL 60457

September 16, 2011

LuzMaria,
I am writing on behalf of Volvo North American Parts (VPNA) to respond to the accommodations you recently requested. VPNA has considered your requested accommodations in light of the requirements of your job, your written comments, points from our discussion on September 14, 2011, your safety as well as the safety of other employees, and VPNA's business needs, policies and practices. At this juncture, VPNA is not able to respond to all of your requests. VNPA has requested guidance from your physician regarding one request and needs to consider other requests in light of clarification and information you provided at our September 14, 2011 teleconference. That being said, VPNA seeks to memorialize the accommodations that it has offered, which you have agreed to as accommodating your needs to perform your job. Please note that following our conference call yesterday, I reviewed our discussion with VPNA management, which noted that I need to clarify that breaks which you will take during panic/anxiety attacks or to call a support person will be unpaid breaks. Outstanding accommodation request will be addressed as soon as possible.

AGREED UPON ACCOMMODATIONS

1) Your requested a place to meditate and relax before work and during breaks.
    - VPNA agreed to your request on August 31, 2011. You may use the assigned room for up to 15 minutes prior to the start of your shift and during your breaks.

2) You requested that VPNA assign a mentor for you, specifically, your immediate supervisor, Patrick Dunn.
    - VPNA agrees to your request and has assigned Patrick Dunn as a mentor for you. You may seek Mr. Dunn's feedback, and he will provide feedback as soon as practical. Due to the demands of Mr. Dunn's job, he may not be able to respond to your request immediately, but he will make reasonable efforts to respond to your requests for feedback as soon as he can.

3) You requested that VPNA allow you to take time off for counseling.
    - VPNA agreed to allow you to take time off for counseling sessions from April 20, 2011 through July 6, 2011. You have not provided VPNA with specific requests for additional time off to participate in counseling sessions. If you need additional time off to attend counseling sessions, please provide the additional dates and times to Keith Schroeder.

4) Your requested access to the company's wellness program.
    - VPNA authorized your access to the company's wellness program and use of the gym during lunch.

EXHIBIT
PENGAD 800-631-6989
24
7-15-13

VOLVO

Volvo Parts North America

5) You requested that VPNA allow you to take breaks during panic/anxiety attacks.
   - VPNA will allow you to take breaks during a panic/anxiety attack, on the following conditions. For safety reasons VPNA needs be able to account for you. If you need a break during panic/anxiety attack, you must notify Patrick Dunn, Sherrie Jankowski, David Miller, or Keith Schroeder before you leave the floor and when you return to the floor. In an extreme case, if you are not able to locate or communicate with one of the individuals listed above when you need to take a break related to a panic/anxiety attack, you must notify one of them when you return. Additionally, you must always document the break time on the daily indirect report sheet.
   - VPNA reserves the right to revisit this accommodation if the number of breaks you take affects your job performance or causes an undue burden on the company.

6) You requested that VPNA allow you to call a support person during panic/anxiety attacks.
   - VPNA will allow you to call a support person during a during panic/ anxiety attacks on the following conditions. In order to ensure your privacy, you will need to take a break and leave the warehouse floor when you call the support person. If you need to take a break to contact a support person, you must notify Patrick Dunn, Sherrie Jankowski, David Miller, or Keith Schroeder before you leave the floor and when you return to the floor. In an extreme case, if you are not able to locate or communicate with one of the individuals listed above when you need to take a break to call a support person, you must notify them when you return. Additionally, you must always document the break time on the daily indirect report sheet.
   - VPNA understands that the support persons you seek to contact are not VPNA employees. VPNA wants to make you aware that you may contact the Employee Assistance Program (EAP), a confidential employee service provided by VPNA at no charge to you. The phone number for the EAP is 800-395-1616. You are under no obligation to contact the EAP.
   - VPNA reserves the right to revisit this accommodation if the number of breaks you take affects your job performance or causes an undue burden on the company.

## ACCOMMODATION REQUEST STILL UNDER REVIEW

VPNA is still considering your requested accommodations listed below:

1) A flexible work schedule to allow "make up time" in case of tardiness;

2) The ability to use noise dampening devices (such as earplugs or headphones).

   As we discussed on September 14, VPNA agrees to allow you to wear one ear plug or dampening device but has safety concerns about you wearing ear plugs in both ears. You subsequently requested that VPNA allow you to wear ear plugs in both ears.

3) The ability to listen to audio relaxation devices;
   As we discussed on September 14, VPNA agrees to allow you to wear an audio relaxation device in one ear but has safety concerns about you wearing a device in in both ears. You subsequently requested that VPNA allow you to wear audio relaxation devices in both ear.

VOLVO

Volvo Parts North America

4) The provision of day-to-day guidance and feedback;
As we discussed on September 14, VPNA proposes that you speak with the assigned mentor, currently Patrick Dunn, if you want guidance to assist you with your job. You subsequently stated that you would like to know the standards regarding your job performance and want day-to-day communication or once a week communication about your job performance.

5) Disability awareness training for persons whom interact with you; and

6) All communications be given to you in writing.

Thank you for your cooperation as VPNA seeks to understand, clarify and respond to the accommodations you requested.

Sincerely,

Regina L. Williams

Regina Williams
**Human Resource Business Partner**

Cc: Keith Schroeder

**From:** LuzMaria Arroyo
**To:** Williams Regina
**Subject:** Re: RE: Investigation for complaint of Harrassment
**Date:** Wednesday, September 21, 2011 12:58:17 PM

---

## Ms. Williams,

I presume you did not receive my email. I am forwarding it for your benefit. I have been advised to refrain from answering any questions until after my lawyer has been given the opportunity to review my case and advise me of my rights.

V/R

LuzMaria Arroyo

## Re: RE: Investigation for complaint of Harrassment

TO: 1 More1 recipient
CC: recipientsYou More
Hide Details

FROM:

- LuzMaria Arroyo

TO:

- regina.williams@volvo.com

Message flagged
Wednesday, September 21, 2011 9:18 AM

## Message body

Ms. Williams,

I would like to inform you that I have found a lawyer. I am scheduled to do an initial interview with her on Monday. More information to follow, once received.

V/R

LuzMaria Arroyo

EXHIBIT
25
7-15-13
PENGAD 800-631-6989

**From:** Williams Regina <regina.williams@volvo.com>
**To:** LuzMaria Arroyo <limbojunky@yahoo.com>
**Sent:** Wednesday, September 21, 2011 9:36 AM
**Subject:** RE: RE: Investigation for complaint of Harrassment

LuzMaria,

Thanks for your response. I need to understand more specifics about your concerns so that I can begin the investigation. I have attached some questions per your request to obtain more specifics of the alleged violation. Please provide any additional information that will help in the investigation.

Per Volvo's Harassment policy-Volvo prohibits retaliation against any individual who reports discrimination, harassment or participates in an investigation of such allegations.

Regina I. Williams
HR Business Partner
3020 Evergreen Drive
Duluth, GA 30096
770-813-9125 ext 100
770-813-9658 (fax)

HR Service Center phone: 800-344-8339
hrsc.us@volvo.com
fax 336-393-4233 (benefits only)
fax 336-393-3607 (all other HR transactions)

This email (and any attachments) is confidential and may be subject to legal or other professional privilege. It is intended solely for the receipt of the named addressee(s). It is subject to copyright and may only be copied or distributed with the consent of the copyright owner. If you are not a named addressee, you must not use, disclose, retain or reproduce all or any part of the information contained in this email or any attachments. Please notify the sender immediately by return email and destroy all copies of the email. Any confidentiality, privilege or copyright is not waived or lost because this email has been sent to you by mistake.

-----Original Message-----
From: LuzMaria Arroyo [mailto:limbojunky@yahoo.com]
Sent: Tuesday, September 20, 2011 8:19 PM
To: Williams Regina
Subject: Re: RE: Investigation for complaint of Harrassment

ms. williams,

if u email me the questions you have, i am willing to respond in kind. otherwise we will need to wait for me to find and hire an attorney, for which there is no guarentee that can be done while you are here in chicago. the thought of speaking to anyone in a meeting has me anxious. email communication will help lessen the stress. thank you.

v/r

luzmaria arroyo

------Original Message------
From: Williams Regina <regina.williams@volvo.com>
To: "LuzMaria Arroyo" <limbojunky@yahoo.com>
Date: Tuesday, September 20, 2011 10:03:07 PM GMT+0200
Subject: RE: Investigation for complaint of Harrassment

LuzMaria,

I have received your response regarding investigation for your complaint of harassment. Per your request and the email attachement dated 9/13/11, sent to you from Dennis Sholl, VP of Distribution, responding from your request, I would like to begin investigation of alleged EEOC harassment by Keith Schroeder. I have traveled from Atlanta to Chicago for 3 days to begin investigation this week.

I understand from your reply that you do not want to meet with me until you obtain legal counsel. Please let me know when you are prepared to meet with me to begin the investigation. Per your previous request and Volvo's Harassment Policy WP06-03-0, I would like to proceed with the investigation as soon as possible.

Regards

Regina I. Williams
HR Business Partner
3020 Evergreen Drive
Duluth, GA 30096
770-813-9125 ext 100
770-813-9658 (fax)

HR Service Center phone: 800-344-8339
hrsc.us@volvo.com
fax 336-393-4233 (benefits only)
fax 336-393-3607 (all other HR transactions)

This email (and any attachments) is confidential and may be subject to legal or other professional privilege. It is intended solely for the receipt of the named addressee(s). It is subject to copyright and may only be copied or distributed with the consent of the copyright owner. If you are not a named addressee, you must not use, disclose, retain or reproduce all or any part of the information contained in this email or any attachments. Please notify the sender immediately by return email and destroy all copies of the email. Any confidentiality, privilege or copyright is not waived or lost because this email has been sent to you by

mistake.

---

From: LuzMaria Arroyo [mailto:limbojunky@yahoo.com]
Sent: Tuesday, September 20, 2011 11:39 AM
To: Williams Regina
Subject: Re: Investigation for complaint of Harrassment

Ms. Williams,

I received your letter regarding my request for accomodations after I had sent my reply. I had sent another email but saw that it had been too large of a file for my account to deliver. Based on the information in your letter, I believe it is in my best interest to obtain legal counsel before proceeding any further with the company.

V/R

LuzMaria Arroyo

From: Williams Regina <regina.williams@volvo.com>
To: "'limbojunky@yahoo.com'" <limbojunky@yahoo.com>
Sent: Tuesday, September 20, 2011 8:53 AM
Subject: Fw: Investigation for complaint of Harrassment

Luz Maria,
Please confirm if you will be available to begin the investigation upon your arrival to work today?

Regards

This email (and any attachments) is confidential and may be subject to legal or other professional privilege. It is intended solely for the receipt of the named addressee(s). It is subject to copyright and may only be copied or distributed with the consent of the copyright owner. If you are not a named addressee, you must not use, disclose, retain or reproduce all or any part of the information contained in this email or any attachments. Please notify the sender immediately by return email and destroy all copies of the email. Any confidentiality, privilege or copyright is not waived or lost because this email has been sent to you by mistake.

Regards,

Regina I. Williams
HR Business Partner

From: Williams Regina
Sent: Monday, September 19, 2011 09:54 PM
To: LuzMaria Arroyo <limbojunky@yahoo.com>
Subject: RE: Investigation for complaint of Harrassment

LuzMaria,
Thanks for your reply. I will be available to start when you arrive after your scheduled appointment.

Regards

Regina I. Williams
HR Business Partner
3020 Evergreen Drive
Duluth, GA 30096
770-813-9125 ext 100
770-813-9658 (fax)
HR Service Center phone: 800-344-8339
hrsc.us@volvo.com
fax 336-393-4233 (benefits only)
fax 336-393-3607 (all other HR transactions)
This email (and any attachments) is confidential and may be subject to legal or other professional privilege. It is intended solely for the receipt of the named addressee(s). It is subject to copyright and may only be copied or distributed with the consent of the copyright owner. If you are not a named addressee, you must not use, disclose, retain or reproduce all or any part of the information contained in this email or any attachments. Please notify the sender immediately by return email and destroy all copies of the email. Any confidentiality, privilege or copyright is not waived or lost because this email has been sent to you by mistake.

From: LuzMaria Arroyo [mailto:limbojunky@yahoo.com]
Sent: Monday, September 19, 2011 3:51 PM
To: Williams Regina
Subject: Re: Investigation for complaint of Harrassment

Ms. Williams,

I will be attending my scheduled appointment tomorrow from 1600-1730. I will not be able to provide an exact time that I will be able to arrive at work. I approximate arrival around 1900 hours.

V/R

LuzMaria Arroyo

From: Williams Regina <regina.williams@volvo.com>
To: LuzMaria Arroyo <limbojunky@yahoo.com>

Sent: Monday, September 19, 2011 2:16 PM
Subject: Investigation for complaint of Harrassment

LuzMaria,
I have been assigned to do an investigation in regard to your Harrassament complaint. I will be at the Chicago PDC on September 20, 2011 to begin the investigation. I would like to meet with you during you shift to begin the investigation. Please let me know if you are available.

Regards

Regina I. Williams
HR Business Partner
3020 Evergreen Drive
Duluth, GA 30096
770-813-9125 ext 100
770-813-9658 (fax)
HR Service Center phone: 800-344-8339
hrsc.us@volvo.com
fax 336-393-4233 (benefits only)
fax 336-393-3607 (all other HR transactions)
This email (and any attachments) is confidential and may be subject to legal or other professional privilege. It is intended solely for the receipt of the named addressee(s). It is subject to copyright and may only be copied or distributed with the consent of the copyright owner. If you are not a named addressee, you must not use, disclose, retain or reproduce all or any part of the information contained in this email or any attachments. Please notify the sender immediately by return email and destroy all copies of the email. Any confidentiality, privilege or copyright is not waived or lost because this email has been sent to you by mistake.

**From:** Williams Regina
**To:** LuzMaria Arroyo
**Subject:** Clarification statement of unpaid breaks
**Date:** Wednesday, September 21, 2011 1:08:00 PM

---

LuzMaria,

This email is being sent to you to clarify the statement in the letter you received dated September 16, 2011 regarding your request for accommodations. Statement as follows: "Please note that following our conference call yesterday, I reviewed our discussion with VPNA management, which notes that I need to clarify that breaks which you will take during panic/anxiety attacks or to call a support person will be unpaid breaks.

Clarification: "Breaks which you will take during panic/anxiety attacks or to call a support person will be unpaid breaks if the breaks are greater than 10 minutes. Breaks that are de minimus, 10 minutes or less, will be paid.

Regards

*Regina I. Williams*
HR Business Partner
3020 Evergreen Drive
Duluth, GA 30096
770-813-9125 ext 100
770-813-9658 (fax)

HR Service Center phone: 800-344-8339
hrsc.us@volvo.com
fax 336-393-4233 (benefits only)
fax 336-393-3607 (all other HR transactions)

This email (and any attachments) is confidential and may be subject to legal or other professional privilege. It is intended solely for the receipt of the named addressee(s). It is subject to copyright and may only be copied or distributed with the consent of the copyright owner. If you are not a named addressee, you must not use, disclose, retain or reproduce all or any part of the information contained in this email or any attachments. Please notify the sender immediately by return email and destroy all copies of the email. Any confidentiality, privilege or copyright is not waived or lost because this email has been sent to you by mistake.

EXHIBIT
PENGAD 800-631-6989
26
7-15-13

**From:** Williams Regina
**To:** Schroeder Keith
**Subject:** FW: 9/20/11 - Accommodation response
**Date:** Tuesday, September 27, 2011 9:04:32 PM
**Attachments:** Response from Williams to Arroyo 9-27-2011.pdf
Harassment Complaint Form.pdf

---

FYI ONLY - sent to LuzMaria today

*Regina I. Williams*
HR Business Partner
3020 Evergreen Drive
Duluth, GA 30096
770-813-9125 ext 100
770-813-9658 (fax)

HR Service Center phone: 800-344-8339
hrsc.us@volvo.com
fax 336-393-4233 (benefits only)
fax 336-393-3607 (all other HR transactions)

This email (and any attachments) is confidential and may be subject to legal or other professional privilege. It is intended solely for the receipt of the named addressee(s). It is subject to copyright and may only be copied or distributed with the consent of the copyright owner. If you are not a named addressee, you must not use, disclose, retain or reproduce all or any part of the information contained in this email or any attachments. Please notify the sender immediately by return email and destroy all copies of the email. Any confidentiality, privilege or copyright is not waived or lost because this email has been sent to you by mistake.

---

**From:** Williams Regina
**Sent:** Tuesday, September 27, 2011 4:56 PM
**To:** 'LuzMaria Arroyo'
**Cc:** Sholl Dennis; Dunford Pat
**Subject:** RE: 9/20/11 - Accommodation response

LuzMaria,
I have received your notice. Please see attachements for the response to the 3 points that you raise in your email: protection from harassment; accommodations; and your return to work.

Regards

EXHIBIT 27 7-15-13 (PENGAD 800-631-6989)

*Regina I. Williams*
HR Business Partner
3020 Evergreen Drive
Duluth, GA 30096
770-813-9125 ext 100
770-813-9658 (fax)

HR Service Center phone: 800-344-8339
hrsc.us@volvo.com
fax 336-393-4233 (benefits only)
fax 336-393-3607 (all other HR transactions)

This email (and any attachments) is confidential and may be subject to legal or other professional privilege. It is intended solely for the receipt of the named addressee(s). It is subject to copyright and may only be copied or distributed with the consent of the copyright owner. If you are not a named addressee, you must not use, disclose, retain or reproduce all or any part of the information contained in this email or any attachments. Please notify the sender immediately by return email and destroy all copies of the email. Any confidentiality, privilege or copyright is not waived or lost because this email has been sent to you by mistake.

---

**From:** LuzMaria Arroyo [mailto:limbojunky@yahoo.com]
**Sent:** Tuesday, September 27, 2011 11:18 AM
**To:** Dunford Pat
**Cc:** Sholl Dennis; Williams Regina
**Subject:** Re: 9/20/11 - Accommodation response

Dear Volvo Parts North America,

I am writing to state my concern regarding my management's unwillingness to allow me to work. I have already filed a complaint with the EEOC for discrimination and you should have received notice by now. Not allowing me to work can be considered retaliation.

I would like to be allowed to work. I would like to have all accomodations I requested on 9/1/2011 provided. Finally, I would like to work in an environment free from harassment from my coworkers and management.

Please do not delay in this matter - it has already been 5 business days since I have been allowed to work. Please provide me with a date I will be allowed to begin working again.

V/R

LuzMaria Arroyo

**From:** LuzMaria Arroyo <limbojunky@yahoo.com>
**To:** Williams Regina <regina.williams@volvo.com>
**Cc:** "dennis.sholl@volvo.com" <dennis.sholl@volvo.com>; "pat.dunford@volvo.com" <pat.dunford@volvo.com>
**Sent:** Monday, September 26, 2011 4:13 PM
**Subject:** Re: 9/20/11 - Accommodation response

Ms. Williams,

Does this mean that the company refuses to allow me to return to work? Does this mean the company refuses to provide me with accomodations? What about my request for protection from harassment? I am not interested in how the company stores the information that I have given it. It has already been provided. Please respond with a date that I will be allowed to return to work and an affirmative response for all requested accomodations.

If YOU cannot provide this answer, then I suggest you refer to the people that can. Thank you.

V/R

LuzMaria Arroyo

**From:** Williams Regina <regina.williams@volvo.com>
**To:** LuzMaria Arroyo <limbojunky@yahoo.com>
**Cc:** Sholl Dennis <dennis.sholl@volvo.com>; Dunford Pat <pat.dunford@volvo.com>
**Sent:** Monday, September 26, 2011 4:06 PM
**Subject:** RE: 9/20/11 - Accommodation response

LuzMaria,

I have received your notice. We are not aware of any medical restrictions or limitations and we do not have medical support for your accommodations. Human Resources Service Center (HRSC) maintains Short Term Disability and FMLA information independent of the Business Unit.

We have requested medical evaluation regarding your accommodations request for (1) flexible work schedule to accommodate your tardiness, (2) request to wear 2 ear plugs or noise dampening devices. We continue to need medical information to evaluate your request.

Because we are concerned for your safety and other employees safety, we need medical support regarding the necessity of you wearing ear plugs/noise dampening devices/audio relaxation devices in both ears at work. Specifically we are concerned with the possible injury if you should

not hear forklift, order picker or other heavy equipment used in the work place. If you determine you can perform your job with 1 ear plug/noise dampening device/audio relaxation device, you can return to work at your next scheduled shift.

Regards

*Regina I. Williams*
HR Business Partner
3020 Evergreen Drive
Duluth, GA 30096
770-813-9125 ext 100
770-813-9658 (fax)
HR Service Center phone: 800-344-8339
hrsc.us@volvo.com
fax 336-393-4233 (benefits only)
fax 336-393-3607 (all other HR transactions)
This email (and any attachments) is confidential and may be subject to legal or other professional privilege. It is intended solely for the receipt of the named addressee(s). It is subject to copyright and may only be copied or distributed with the consent of the copyright owner. If you are not a named addressee, you must not use, disclose, retain or reproduce all or any part of the information contained in this email or any attachments. Please notify the sender immediately by return email and destroy all copies of the email. Any confidentiality, privilege or copyright is not waived or lost because this email has been sent to you by mistake.

---

**From:** LuzMaria Arroyo [mailto:limbojunky@yahoo.com]
**Sent:** Monday, September 26, 2011 12:30 PM
**To:** Williams Regina
**Cc:** Sholl Dennis; Dunford Pat
**Subject:** Re: 9/20/11 - Accommodation response

Ms. Williams,

I would like to return to work. I would like the company to provide reasonable accomodations for my disability. I would like the company to protect me from any harassment from fellow coworkers or management.

Information regarding my disability and limitations has already been provided to HRSC. I will not be providing any additional information to the company. In addition, I will not be attending the appointment you scheduled. If you have not received notice by

now, I am informing you that I have already filed a complaint with the EEOC. My attorney will contact you when we are ready to begin negotiations.

V/R

LuzMaria Arroyo

---

**From:** Williams Regina <regina.williams@volvo.com>
**To:** LuzMaria Arroyo <limbojunky@yahoo.com>
**Sent:** Thursday, September 22, 2011 11:16 AM
**Subject:** FW: 9/20/11 - Accommodation response

LuzMaria,
I apologize for any inconvenience. The appointment time was changed. I just received notice from Physicians Immediate Med. The appointment with John J Koehler, MD (Board Certified in Occupational Medicine) has been changed to September 28, 2011 at 3:00pm located at 1360 Houbolt Road.

Regards

*Regina I. Williams*

HR Business Partner
3020 Evergreen Drive
Duluth, GA 30096
770-813-9125 ext 100
770-813-9658 (fax)
HR Service Center phone: 800-344-8339
hrsc.us@volvo.com
fax 336-393-4233 (benefits only)
fax 336-393-3607 (all other HR transactions)

This email (and any attachments) is confidential and may be subject to legal or other professional privilege. It is intended solely for the receipt of the named addressee(s). It is subject to copyright and may only be copied or distributed with the consent of the copyright owner. If you are not a named addressee, you must not use, disclose, retain or reproduce all or any part of the information contained in this email or any attachments. Please notify the sender immediately by return email and destroy all copies of the email. Any confidentiality, privilege or copyright is not waived or lost because this email has been sent to you by mistake.

---

**From:** Williams Regina

**Sent:** Thursday, September 22, 2011 11:54 AM
**To:** 'LuzMaria Arroyo'
**Subject:** RE: 9/20/11 - Accommodation response

Luz Maria,

Per your email dated September 20, 2011, you have an appointment with your psychiatrist on September 27, 2011, regarding the accommodation request in the letter to you dated September 14, 2011. The accommodation request is for clarification of whether tardiness is a symptom of your medical condition and if a flexible work schedule related to your tardiness is necessary to allow you to perform your job.

Due to our safety concerns, if you feel that you need to wear 2 ears plugs or noise dampening devices to perform your job, you will need to provide an IME (independent medical evaluation) to substantiate the medical necessity for this requirement before we can allow you to work.

We have arranged the IME with John J Koehler, MD (Board Certified in Occupational Medicine) on September 28, 2011 at 10:00am located at 1360 Houbolt Road, to determine the necessity of you wearing 2 ear plug or ear devices to perform your job.

On September 20, 2011 and September 21, 2011, you reported to work with headphones on both ears. You insisted on wearing the device on both ears, after being asked to remove one of the devices. Due to our concern for your safety and the safety of others in the facility, your supervisor requested that you remove one of the devices. Upon your refusal, you were asked to leave the facility. If you determine you can perform your job with 1 ear plug or noise dampening device, you can return to work at your next scheduled shift.

In order to obtain the 2 medical opinions that we need to understand the necessity for the accommodations you requested, we understand that you will be seeing two physicians (1) your psychiatrist appointment on September 27, 2011 for accommodation request of flexible work schedule, and (2) appointment with John J Koehler, MD (Board Certified in Occupational Medicine) on September 28, 2011 at 10:00am located at 1360 Houbolt Road, for accommodation request to substantiate the medical necessity for 2 ear plugs or ear devices to perform your job. The time is excused and we will pay you based on your normal work schedule until we obtain the requested doctor's evaluations.

Regards

*Regina I. Williams*

HR Business Partner
3020 Evergreen Drive
Duluth, GA 30096

770-813-9125 ext 100
770-813-9658 (fax)
HR Service Center phone: 800-344-8339
hrsc.us@volvo.com
fax 336-393-4233 (benefits only)
fax 336-393-3607 (all other HR transactions)

This email (and any attachments) is confidential and may be subject to legal or other professional privilege. It is intended solely for the receipt of the named addressee(s). It is subject to copyright and may only be copied or distributed with the consent of the copyright owner. If you are not a named addressee, you must not use, disclose, retain or reproduce all or any part of the information contained in this email or any attachments. Please notify the sender immediately by return email and destroy all copies of the email. Any confidentiality, privilege or copyright is not waived or lost because this email has been sent to you by mistake.

---

**From:** LuzMaria Arroyo [mailto:limbojunky@yahoo.com]
**Sent:** Thursday, September 22, 2011 7:50 AM
**To:** Williams Regina
**Subject:** Re: 9/20/11 - Accommodation response

Ms. Williams,

Will I be receiving excused absents until I am able to obtain documentation from my psychiatrist referencing specific information you have requested?

V/R

LuzMaria Arroyo

---

**From:** Williams Regina <regina.williams@volvo.com>
**To:** LuzMaria Arroyo <limbojunky@yahoo.com>
**Sent:** Wednesday, September 21, 2011 2:56 PM
**Subject:** 9/20/11 - Accommodation response

Dear LuzMaria,

The accommodation that was agreed upon by the company on September 14, 2011 in a conference call as well as a follow-up letter dated September 16, 2011, VPNA agrees to allow you to wear one ear plug or dampening device but has safety concerns about you wearing ear plugs in both ears. You subsequently requested that VPNA allow you to wear ear plugs in both ears. VPNA has not agreed to this request. On September 20, 2011, you reported to work

with headphones on both ears. You insisted on wearing the device on both ears, after being asked to remove one of the devices. Due to our concern for your safety and the safety of others in the facility, your supervisor requested that you remove one of the devices. Upon your refusal, you were asked to leave the facility.

Please be aware that to report for work today, 9/21/11, we request that you wear only one ear plug or dampening device. Due to our safety concerns, if you feel you need to wear 2 ear plugs or dampening devices in order to perform your job, you will need to provide an IME (independent medical evaluation) to substantiate the medical necessity for this requirement before we can allow you to work. We will arrange for the IME and provide you with the date and time of the appointment.

To facilitate the physician assessing the necessity for you to wear noise dampening devices in both ears in order for you to be able to perform your job, please take the attached cover letter and current job description with you when you attend the IME.

Regards

*Regina I. Williams*

HR Business Partner
3020 Evergreen Drive
Duluth, GA 30096
770-813-9125 ext 100
770-813-9658 (fax)
HR Service Center phone: 800-344-8339
hrsc.us@volvo.com
fax 336-393-4233 (benefits only)
fax 336-393-3607 (all other HR transactions)

This email (and any attachments) is confidential and may be subject to legal or other professional privilege. It is intended solely for the receipt of the named addressee(s). It is subject to copyright and may only be copied or distributed with the consent of the copyright owner. If you are not a named addressee, you must not use, disclose, retain or reproduce all or any part of the information contained in this email or any attachments. Please notify the sender immediately by return email and destroy all copies of the email. Any confidentiality, privilege or copyright is not waived or lost because this email has been sent to you by mistake.

LuzMaria:

I would like to respond to the three points that you raise in your e-mail: protection from harassment; accommodations; and your return to work.

You first addressed your concerns about harassment to Dennis Sholl via an e-mail letter on September 3, 2011. Mr. Sholl responded to your letter via e-mail on September 13, 2011 and indicated that I would contact you during the week of September 12, 2011 to begin an investigation in to the EEOC harassment you alleged that Keith Schroder engaged. I contacted you on September 19, 2011 to let you know that I would be flying to Chicago during the week of September 19th to meet with you and begin the investigation. On the day of my flight, you indicated that you did not want to meet with me without legal counsel. You said that you would correspond with me in writing, so I could gather additional information about your concerns regarding Mr. Schroeder. On September 21, 2011 I sent you written questions, so that you could explain your concerns, and I could begin the investigation while I was in Chicago. Your response was that you had been advised to refrain from answering any questions until after your lawyer has been given the opportunity to review your case.

VPNA and I remain committed to investigating your concerns about EEOC related harassment by Mr. Schroeder, but I do not have enough information from you at this point to proceed with an investigation. In an effort to minimize information you need to provide me, so I can begin the investigation, I have attached a simplified form for you to complete and return to me. In the meantime in response to your request for a mentor, VPNA granted your accommodation request, and named your supervisor, Patrick Dunn as your mentor. Mr. Dunn has also served as **your primary contact point, rather than Mr. Schroeder**.

If you have additional or new concerns that you are being harassed in the workplace, I ask that you complete the attached form and return it to me, so those concerns may also be investigated and addressed.

Next you asked if the company refuses to provide you accommodations. To the contrary, VPNA has already granted many of your accommodation requests and continues to try to understand your needs, so it can consider your outstanding requests. So far VPNA has granted seven (7) of the thirteen (13) accommodation request that you have made. VPNA has offered modified accommodations for three (3) of the remaining six (6) accommodations, but you have rejected those modified accommodations. VPNA is still considering the outstanding six (6) accommodations, including two (2) about which it requested medical information. To date, VPNA has not denied any of your requests and seeks to continue the interactive process to understand the accommodations you need to be able to perform your job.

An updated summary of the status of your accommodations request and VPNA's response is below:

AGREED UPON ACCOMMODATIONS

1) Your requested a place to meditate and relax before work and during breaks.
   - VPNA agreed to your request on August 31, 2011. You may use the assigned room for up to 15 minutes prior to the start of your shift and during your breaks.

2) You requested that VPNA assign a mentor for you, specifically, your immediate supervisor, Patrick Dunn.
   - VPNA agrees to your request and has assigned Patrick Dunn as a mentor for you. You may seek Mr. Dunn's feedback, and he will provide feedback as soon as practical. Due to the demands of Mr. Dunn's job, he may not be able to respond to your request immediately, but he will make reasonable efforts to respond to your requests for feedback as soon as he can.

3) You requested that VPNA allow you to take time off for counseling.
   - VPNA agreed to allow you to take time off for counseling sessions from April 20, 2011 through July 6, 2011. You have not provided VPNA with specific requests additional time off to participate in counseling sessions. If you need additional time off to attend counseling sessions, please provide the additional dates and times to Keith Schroeder.

4) Your requested access to the company's wellness program.
   - VPNA authorized your access to the company's wellness program and use of the gym during lunch.

5) You requested that VPNA allow you to take breaks during panic/anxiety attacks.
   - VPNA will allow you to take breaks during a panic/anxiety attack, on the following conditions. For safety reasons VPNA needs be able to account for you. If you need a break during panic/anxiety attack, you must notify Patrick Dunn, Sherrie Jankowski, David Miller, or Keith Schroeder before you leave the floor and when you return to the floor. In an extreme case, if you are not able to locate or communicate with one of the individuals listed above when you need to take a break related to a panic/anxiety attack, you must notify one of them when you return. Additionally, you must always document the break time on the daily indirect report sheet. Breaks of less than 10 minutes will be paid.
   - VPNA reserves the right to revisit this accommodation if the number of breaks you take affects your job performance or causes an undue burden on the company.

6) You requested that VPNA allow you to call a support person during panic/anxiety attacks.
   - VPNA will allow you to call a support person during a during panic/ anxiety attacks on the following conditions. In order to ensure your privacy, you will need to take a break and leave the shop floor to when you call the support person. If you need to take a break to contact a support person, you must notify Patrick Dunn, Sherrie Jankowski, David Miller, or Keith Schroeder before you leave the floor and when you return to the floor. In an extreme case, if you are not able to locate or communicate with one of the individuals listed above when you need to take a break to call a support person, you must notify them when you return. Additionally, you must always document the break time on the daily indirect report sheet. Breaks of less than 10 minutes will be paid.
   - VPNA understands that the support persons you seek to contact are not VPNA employees. VPNA wants to make you aware that you may contact the Employee Assistance Program (EAP), a confidential employee service provided by VPNA at no charge to you. The phone number for the EAP is 800-395-1616. You are under no obligation to contact the EAP.
   - VPNA reserves the right to revisit this accommodation if the number of breaks you take affects your job performance or causes an undue burden on the company.

## MODIFIED ACCOMMODATION REQUEST OFFERED BY VPNA

VPNA has offered you the following accommodations, which you have rejected.

1) A flexible work schedule to allow you to attend classes held on Wednesday mornings between 9am and 11am from April 2011 – July 2011.VPNA offered you a flexible work schedule 2:30pm to 10:30pm to help with travel and rest, so you could attend the morning classes. You rejected the offer, stating it was in conflict with other things in your schedule.

2) The ability to use noise dampening devices (such as earplugs or headphones) and audio relaxation devices. VPNA agrees to allow you to wear one ear plug, dampening device of audio relaxation device in one ear but has safety concerns about you wearing ear plugs in both ears in the workplace. You have rejected this modified accommodation.

## ACCOMMODATION REQUEST STILL UNDER REVIEW

VPNA is still considering your requested accommodations listed below:

1) A flexible work schedule to allow "make up time" in case of tardiness.
   -VPNA has requested that your treating physician render his medical opinion whether tardiness is related to your medical condition and evaluate whether this accommodation is required for you to perform your essential job functions.

2) The ability to use noise dampening devices (such as earplugs or headphones) or audio relaxation devices.

   - You have requested that you be allowed to noise dampening devices in both ears while in the workplace.

   -VPNA has requested an independent medical evaluation whether this accommodation is necessary for you to perform your job. Due to the heavy equipment in the workplace, such as forklifts and pickers, VPNA is concerned about you safety and the safety of others if you wear two noise dampening devices in both ears at work.

   -VPNA requested that you participate in an independent medical exam with an occupational doctor to assess whether wearing two noise dampening devices in the workplace is necessary for you to perform your job and safe in the workplace. You have indicated that you will not participate in the IME.

   -VPNA seeks to continue to explore means of reasonably and safely accommodating your audio needs. Other than wearing two noise dampening devices, do you have another suggestion about VPNA could accommodate your audio needs?

3) The ability to use audio relaxation devices.

   - You have requested that you be allowed to noise dampening devices in both ears while in the workplace.

   -VPNA has requested an independent medical evaluation whether this accommodation is necessary for you to perform your job. Due to the heavy equipment in the workplace, VPNA is concerned about you safety and the safety of others if you wear two audio relaxation devices at work.

   - VPNA requested that you participate in an independent medical exam with an occupational doctor to assess whether wearing two audio relaxation devices in the workplace is necessary for you to perform your job and safe in the workplace. You have indicated that you will not participate in the IME.

   -VPNA seeks to continue to explore means of reasonably and safely accommodating your audio needs. Other than wearing two noise dampening devices, do you have another suggestion about VPNA could accommodate your audio needs?

4) The provision of day-to-day guidance and feedback;
   As we discussed on September 14, 2011 VPNA proposes that you speak with the assigned mentor, currently Patrick Dunn, if you want guidance to assist you with your job. You subsequently stated that you would like to know the standards regarding your job performance and want day-to-day communication or once a week communication about your job performance.
   -VPNA is exploring means of providing you with additional feedback.

5) Disability awareness training for persons whom interact with you;
   -VPNA generally assesses its employees training needs on a group level based on business needs. VPNA is exploring available guidance.

6) All communications be given to you in writing.
   -VPNA seeks additional guidance from you about the types of communications you need to have in writing to perform your job, as it is not practical that all verbal communications that you receive in the workplace be transferred into writing.

VPNA would appreciate additional input from you regarding the accommodations still under consideration, so we can continue discussions with you regarding the accommodations. **There has been a reschedule to the original appointment for the IME with John J Koehler, MD (Board Certified in Occupational Medicine) has been changed to September 29, 2011 at 3:00pm located at 1360 Houbolt Road.**

Finally, you ask if you are allowed to return to work. Yes, you are allowed to return to work. As described above, though VPNA does not have the medical information necessary to consider whether wearing two noise dampening or audio relaxation devices is required for you to be able to perform the essential functions of your job and is a safe workplace practice, VPNA has offered you the modified accommodation of wearing one noise dampening device or one audio relaxation device while in the workplace. You may return to work at your next regular scheduled shift and wear one ear plug or noise dampening device.

**HARASSMENT COMPLAINT FORM**
(To Be Filled Out By Employee)

Employee's Name: __________________ Date: __________ Reported to: _________________

Who do you believe harassed you?__________________________________________________
(If more than one person, please list all.)

When and where did it happen? ____________________________________________________

What happened? (Please be as specific as possible. If you need more space, please feel free to continue on the back of this page.)____________________________________________ __________
______________________________________________________________________________

Did anyone else see what happened? Who? __________________________________________

In addition to those people, is there anyone else you think would be able to help us determine whether the harassment occurred?_____________________________________________ __________
Have you reported this/these incident(s) before? _______ If so, to whom?_________________
When? _____________ What did they say/do about it? ______________________________
______________________________________________________________________________

If our investigation verifies that the harassment occurred, what do you think should be done about it? ________________________________________________________________________
______________________________________________________________________________
______________________________________________________________________________

Have the complaint procedure and investigative process been explained to you? _________
By whom? _________________________ Date: _____________

_________________________________ Employee Signature

_________________________________ Harassment Team Member

___________________ Date

___________________ Date

**From:** LuzMaria Arroyo
**To:** Williams Regina
**Cc:** Sholl Dennis; Dunford Pat
**Subject:** Re: 9/20/11 - Accommodation response
**Date:** Tuesday, September 27, 2011 9:11:54 PM

---

Ms. Williams,

Let me get this straight. My doctor is supposed to tell you whether hearing is an essential function of my job? My doctor is not qualified to do such.

My doctor is supposed to tell you whether wearing hearing protection is safe for the work environment? Again, my doctor is not qualified to do such.

The above are things the company needs to make a determination on, and in my opinion already has by not allowing me to work. My doctor can only tell you whether or not wearing hearing protection is a benefit to my healthcare or treatment. Of which, I have already provided the company my diagnosis, prognosis and symptoms. Of which, you have already responded with an affirmative of receiving. As such, whatever accomodations that remain outstanding should be able to be provided by the company.

Do you deny my diagnosis of a "disability"? Do you deny changes need to be made to "normal procedures"? Do you determine that these changes affect my ability to perform the "essential duties" as you have given them to me in the job description? Can these changes be made absent "undue hardship"? Use of 1 "noise dampening" device is not a "reasonable" accomodation as it does not stop the pain I experience in the unprotected ear. I will provide no other suggestions. Either comply or not, or make a "reasonable" accomodation. Your choice. How much more time will you need to make your determination? You have already had 27 days.

Additionally, I would like the email address of the the CEO of Volvo Group (Olof Persson). I will go up the chain with this issue.

Finally, I (LuzMaria Arroyo), this 27th day of September 2011, make a claim of harassment against you, Regina Williams and Volvo Parts North America (as it's representative). I am making this claim of harassment to Dennis Sholl (VP Volvo Parts North America) and Pat Dunford (VP HR Volvo Parts North America) as CC'ed in this email. The harassing action is requesting medical evaluation by 2 physicians after I have provided adequate information to determine that I have a disability and require reasonable accomodations. This action is displayed below in your emailed responses. Requested action is your removal from further investigations and to refer this issue up your chain of command, to HR Volvo Group.

Thank you.

EXHIBIT
28
7-15-13
PENGAD 800-631-6989

V/R

LuzMaria Arroyo

---

**From:** Williams Regina <regina.williams@volvo.com>
**To:** LuzMaria Arroyo <limbojunky@yahoo.com>
**Cc:** Sholl Dennis <dennis.sholl@volvo.com>; Dunford Pat <pat.dunford@volvo.com>
**Sent:** Tuesday, September 27, 2011 3:55 PM
**Subject:** RE: 9/20/11 - Accommodation response

LuzMaria,
I have received your notice. Please see attachements for the response to the 3 points that you raise in your email: protection from harassment; accommodations; and your return to work.

Regards

*Regina I. Williams*

HR Business Partner
3020 Evergreen Drive
Duluth, GA 30096
770-813-9125 ext 100
770-813-9658 (fax)
HR Service Center phone: 800-344-8339
hrsc.us@volvo.com
fax 336-393-4233 (benefits only)
fax 336-393-3607 (all other HR transactions)

This email (and any attachments) is confidential and may be subject to legal or other professional privilege. It is intended solely for the receipt of the named addressee(s). It is subject to copyright and may only be copied or distributed with the consent of the copyright owner. If you are not a named addressee, you must not use, disclose, retain or reproduce all or any part of the information contained in this email or any attachments. Please notify the sender immediately by return email and destroy all copies of the email. Any confidentiality, privilege or copyright is not waived or lost because this email has been sent to you by mistake.

---

**From:** LuzMaria Arroyo [mailto:limbojunky@yahoo.com]
**Sent:** Tuesday, September 27, 2011 11:18 AM
**To:** Dunford Pat
**Cc:** Sholl Dennis; Williams Regina
**Subject:** Re: 9/20/11 - Accommodation response

Dear Volvo Parts North America,

I am writing to state my concern regarding my management's unwillingness to allow me to work. I have already filed a complaint with the EEOC for discrimination and you should have received notice by now. Not allowing me to work can be considered retaliation.

I would like to be allowed to work. I would like to have all accomodations I requested on 9/1/2011 provided. Finally, I would like to work in an environment free from harassment from my coworkers and management.

Please do not delay in this matter - it has already been 5 business days since I have been allowed to work. Please provide me with a date I will be allowed to begin working again.

V/R

LuzMaria Arroyo

---

**From:** LuzMaria Arroyo <limbojunky@yahoo.com>
**To:** Williams Regina <regina.williams@volvo.com>
**Cc:** "dennis.sholl@volvo.com" <dennis.sholl@volvo.com>; "pat.dunford@volvo.com" <pat.dunford@volvo.com>
**Sent:** Monday, September 26, 2011 4:13 PM
**Subject:** Re: 9/20/11 - Accommodation response

Ms. Williams,

Does this mean that the company refuses to allow me to return to work? Does this mean the company refuses to provide me with accomodations? What about my request for protection from harassment? I am not interested in how the company stores the information that I have given it. It has already been provided. Please respond with a date that I will be allowed to return to work and an affirmative response for all requested accomodations.

If YOU cannot provide this answer, then I suggest you refer to the people that can. Thank you.

V/R

LuzMaria Arroyo

---

**From:** Williams Regina <regina.williams@volvo.com>
**To:** LuzMaria Arroyo <limbojunky@yahoo.com>
**Cc:** Sholl Dennis <dennis.sholl@volvo.com>; Dunford Pat <pat.dunford@volvo.com>
**Sent:** Monday, September 26, 2011 4:06 PM
**Subject:** RE: 9/20/11 - Accommodation response

LuzMaria,

I have received your notice. We are not aware of any medical restrictions or limitations and we do not have medical support for your accommodations. Human Resources Service Center (HRSC) maintains Short Term Disability and FMLA information independent of the Business Unit.

We have requested medical evaluation regarding your accommodations request for (1) flexible work schedule to accommodate your tardiness, (2) request to wear 2 ear plugs or noise dampening devices. We continue to need medical information to evaluate your request.

Because we are concerned for your safety and other employees safety, we need medical support regarding the necessity of you wearing ear plugs/noise dampening devices/audio relaxation devices in both ears at work. Specifically we are concerned with the possible injury if you should not hear forklift, order picker or other heavy equipment used in the work place. If you determine you can perform your job with 1 ear plug/noise dampening device/audio relaxation device, you can return to work at your next scheduled shift.

Regards

*Regina I. Williams*
HR Business Partner
3020 Evergreen Drive
Duluth, GA 30096
770-813-9125 ext 100
770-813-9658 (fax)
HR Service Center phone: 800-344-8339
hrsc.us@volvo.com
fax 336-393-4233 (benefits only)
fax 336-393-3607 (all other HR transactions)

This email (and any attachments) is confidential and may be subject to legal or other professional privilege. It is intended solely for the receipt of the named addressee(s). It is subject to copyright and may only be copied or distributed with the consent of the copyright owner. If you are not a named addressee, you must not use, disclose, retain or reproduce all or any part of the information contained in this email or any attachments. Please notify the sender immediately by return email and destroy all copies of the email. Any confidentiality, privilege or copyright is not waived or lost because this email has been sent to you by mistake.

**From:** LuzMaria Arroyo [mailto:limbojunky@yahoo.com]
**Sent:** Monday, September 26, 2011 12:30 PM
**To:** Williams Regina
**Cc:** Sholl Dennis; Dunford Pat
**Subject:** Re: 9/20/11 - Accommodation response

Ms. Williams,

I would like to return to work. I would like the company to provide reasonable accomodations for my disability. I would like the company to protect me from any harassment from fellow coworkers or management.

Information regarding my disability and limitations has already been provided to HRSC. I will not be providing any additional information to the company. In addition, I will not be attending the appointment you scheduled. If you have not received notice by now, I am informing you that I have already filed a complaint with the EEOC. My attorney will contact you when we are ready to begin negotiations.

V/R

LuzMaria Arroyo

---

**From:** Williams Regina <regina.williams@volvo.com>
**To:** LuzMaria Arroyo <limbojunky@yahoo.com>
**Sent:** Thursday, September 22, 2011 11:16 AM
**Subject:** FW: 9/20/11 - Accommodation response

LuzMaria,

I apologize for any inconvenience. The appointment time was changed. I just received notice from Physicians Immediate Med. The appointment with John J Koehler, MD (Board Certified in Occupational Medicine) has been changed to September 28, 2011 at 3:00pm located at 1360 Houbolt Road.

Regards

*Regina I. Williams*

HR Business Partner
3020 Evergreen Drive
Duluth, GA 30096
770-813-9125 ext 100
770-813-9658 (fax)

HR Service Center phone: 800-344-8339

hrsc.us@volvo.com

fax 336-393-4233 (benefits only)

fax 336-393-3607 (all other HR transactions)

This email (and any attachments) is confidential and may be subject to legal or other professional privilege. It is intended solely for the receipt of the named addressee(s). It is subject to copyright and may only be copied or distributed with the consent of the copyright owner. If you are not a named addressee, you must not use, disclose, retain or reproduce all or any part of the information contained in this email or any attachments. Please notify the sender immediately by return email and destroy all copies of the email. Any confidentiality, privilege or copyright is not waived or lost because this email has been sent to you by mistake.

---

**From:** Williams Regina
**Sent:** Thursday, September 22, 2011 11:54 AM
**To:** 'LuzMaria Arroyo'
**Subject:** RE: 9/20/11 - Accommodation response

Luz Maria,

Per your email dated September 20, 2011, you have an appointment with your psychiatrist on September 27, 2011, regarding the accommodation request in the letter to you dated September 14, 2011. The accommodation request is for clarification of whether tardiness is a symptom of your medical condition and if a flexible work schedule related to your tardiness is necessary to allow you to perform your job. Due to our safety concerns, if you feel that you need to wear 2 ears plugs or noise dampening devices to perform your job, you will need to provide an IME (independent medical evaluation) to substantiate the medical necessity for this requirement before we can allow you to work.

We have arranged the IME with John J Koehler, MD (Board Certified in Occupational Medicine) on September 28, 2011 at 10:00am located at 1360 Houbolt Road, to determine the necessity of you wearing 2 ear plug or ear devices to perform your job.

On September 20, 2011 and September 21, 2011, you reported to work with headphones on both ears. You insisted on wearing the device on both ears, after being asked to remove one of the devices. Due to our concern for your safety and the safety of others in the facility, your supervisor requested that you remove one of the devices. Upon your refusal, you were asked to leave the facility. If

you determine you can perform your job with 1 ear plug or noise dampening device, you can return to work at your next scheduled shift.

In order to obtain the 2 medical opinions that we need to understand the necessity for the accommodations you requested, we understand that you will be seeing two physicians (1) your psychiatrist appointment on September 27, 2011 for accommodation request of flexible work schedule, and (2) appointment with John J Koehler, MD (Board Certified in Occupational Medicine) on September 28, 2011 at 10:00am located at 1360 Houbolt Road, for accommodation request to substantiate the medical necessity for 2 ear plugs or ear devices to perform your job. The time is excused and we will pay you based on your normal work schedule until we obtain the requested doctor's evaluations.

Regards

*Regina I. Williams*

HR Business Partner
3020 Evergreen Drive
Duluth, GA 30096
770-813-9125 ext 100
770-813-9658 (fax)
HR Service Center phone: 800-344-8339
hrsc.us@volvo.com
fax 336-393-4233 (benefits only)
fax 336-393-3607 (all other HR transactions)

This email (and any attachments) is confidential and may be subject to legal or other professional privilege. It is intended solely for the receipt of the named addressee(s). It is subject to copyright and may only be copied or distributed with the consent of the copyright owner. If you are not a named addressee, you must not use, disclose, retain or reproduce all or any part of the information contained in this email or any attachments. Please notify the sender immediately by return email and destroy all copies of the email. Any confidentiality, privilege or copyright is not waived or lost because this email has been sent to you by mistake.

---

**From:** LuzMaria Arroyo [mailto:limbojunky@yahoo.com]
**Sent:** Thursday, September 22, 2011 7:50 AM
**To:** Williams Regina
**Subject:** Re: 9/20/11 - Accommodation response

Ms. Williams,

Will I be receiving excused absents until I am able to obtain documentation from my psychiatrist referencing specific information you have requested?

V/R

LuzMaria Arroyo

**From:** Williams Regina <regina.williams@volvo.com>
**To:** LuzMaria Arroyo <limbojunky@yahoo.com>
**Sent:** Wednesday, September 21, 2011 2:56 PM
**Subject:** 9/20/11 - Accommodation response

Dear LuzMaria,

The accommodation that was agreed upon by the company on September 14, 2011 in a conference call as well as a follow-up letter dated September 16, 2011, VPNA agrees to allow you to wear one ear plug or dampening device but has safety concerns about you wearing ear plugs in both ears. You subsequently requested that VPNA allow you to wear ear plugs in both ears. VPNA has not agreed to this request. On September 20, 2011, you reported to work with headphones on both ears. You insisted on wearing the device on both ears, after being asked to remove one of the devices. Due to our concern for your safety and the safety of others in the facility, your supervisor requested that you remove one of the devices. Upon your refusal, you were asked to leave the facility.

Please be aware that to report for work today, 9/21/11, we request that you wear only one ear plug or dampening device. Due to our safety concerns, if you feel you need to wear 2 ear plugs or dampening devices in order to perform your job, you will need to provide an IME (independent medical evaluation) to substantiate the medical necessity for this requirement before we can allow you to work. We will arrange for the IME and provide you with the date and time of the appointment.

To facilitate the physician assessing the necessity for you to wear noise dampening devices in both ears in order for you to be able to perform your job, please take the attached cover letter and current job description with you when you attend the IME.

Regards

*Regina I. Williams*
HR Business Partner
3020 Evergreen Drive
Duluth, GA 30096
770-813-9125 ext 100
770-813-9658 (fax)
HR Service Center phone: 800-344-8339
hrsc.us@volvo.com
fax 336-393-4233 (benefits only)
fax 336-393-3607 (all other HR transactions)

This email (and any attachments) is confidential and may be subject to legal or other professional privilege. It is intended solely for the receipt of the named addressee(s). It is subject to copyright and may only be copied or distributed with the consent of the copyright owner. If you are not a named addressee, you must not use, disclose, retain or reproduce all or any part of the information contained in this email or any attachments. Please notify the sender immediately by return email and destroy all copies of the email. Any confidentiality, privilege or copyright is not waived or lost because this email has been sent to you by mistake.

# Volvo Parts North America

CHICAGO PARTS DISTRIBUTION CENTER

3900 ROCK CREEK BLVD. JOLIET IL. 60431

815 – 207 – 2000

**To:** Ms. Arroyo

**From:** Keith Schroeder

**Date:** October 18, 2011

**Re:** Response to your inquiry about the Safety Shoe Policy

---

Ms. Arroyo,

On August 31, 2011 Volvo Parts granted your accommodation request for a place to meditate and relax before work and during breaks. Per this agreement you may use the assigned room for up to 15 minutes prior to the start of your shift and during your breaks. This assigned room is an office in the warehouse operations office.

On Monday October 17, 2011 at 4:30 PM David Miller a warehouse supervisor observed that when you exited the assigned room you were not wearing safety shoes in violation of our safety shoe policy. Per the policy, all warehouse, management, clerical and summer help are required in the warehouse area, which includes offices adjacent to the warehouse. A copy of the policy was mailed to you on June 21, 2011. In subsequent meeting with David Miller and myself, you stated that you had thought that safety shoes were only required while on the job. As a reminder I restated the safety shoe policy for this facility. Your reply was a request that we compensate you for your time to put on your safety shoes or provide an alternate private room for mediation.

The warehouse operations office is the only room available for us to accommodate your request for a space to meditate and relax. No other private room is consistently available in this building. If you wish to continue to use this room for meditation prior to your shift start, you are required to wear safety shoes. There will be no wage compensation for you to comply with this policy.

VOLVO PARTS. **PASSION FOR UPTIME.**

The LMS policies/procedures that your supervisor Patrick Dunn provided to you are accurate. To ensure that going forward there are no misunderstandings regarding our LMS policies and procedures Chris Humann will schedule a meeting with you and your supervisor to present to you all LMS employee communications.

Regarding your request for leave of absence on Tuesday October 25, 2011 attached is the Personal Leave of Absence Policy. This policy states that the personal leave of absence is to be greater than 5 consecutive work days and the employee must have exhausted all ETO days. Your request is for one day and as of October 20, 2011you have a balance of 13.4 ETO days. Per the policy, the requested leave does not qualify as a personal leave of absence, and you will need to utilize an ETO day.

Sincerely,

Keith Schroeder

Keith Schroeder
Director Distribution

(5)

# Volvo Parts North America

CHICAGO PARTS DISTRIBUTION CENTER

3900 ROCK CREEK BLVD. JOLIET IL. 60431

815 – 207 – 2000

**To:** Ms. Arroyo
**From:** Keith Schroeder, Patrick Dunn
**Date:** November 1, 2011
**Re:** Meeting Notes

---

**Start Time**
When the bell rings, you should be prepared to begin work
A. Walking to your work station or to obtain a vehicle
OR
Attending a shift meeting
AND
B. Wearing PPE and with tools

Arrival time following counseling sessions

A. Agreed to arrive at work following appointments – 6:30 PM

B. Later arrival time requires a call in and doctor's / counselor document

EXHIBIT
30
7-15-13
PENGAD 800-631-6989

**Mediation Room**
A. Available Rooms:
1. Supervisor Office in warehouse
2. If not the Supervisor Office is not available because in use, the First Aid Room may be used

B. Use of the rooms provided for mediation does not negate you needing to be prepared to start work when the bell rings (see above)

VOLVO PARTS. **PASSION FOR UPTIME.**

Volvo Parts North America VOLVO

LMA 4/52

C. Access to the room for use during meditation must be through the warehouse with parking in the employee lot in the front of the building. Parking in the rear of the building is not available because of safety concerns

# Volvo Parts North America
# Chicago Parts Central Distribution

## Employee Counseling – Corrective Action Plan

**Date: November 3, 2011**
**TO: LuzMaria Arroyo**
**From: Keith Schroeder**

Subject: Violation of Local Rule – Verbal Warning

On November 2, 2011 at 4:30 PM you were observed by management exiting the operations office then preceded to your car which was parked in the south truck – trailer area of the facility property. Your action violated the shift start time and mediation room guidelines communicated to you on November 1, 2011. Additionally you will be charged with a .50 occurrence for violation of the start rule policy subject to the guidelines in our attendance policy.

It is your responsibility to comply with the standards of behavior and conduct of this facility.

Effective immediately you are to adhere to the rules and guidelines of the Chicago distribution center.

Management will continue to monitor your actions in the hope that you support this plan for change / improvement.

It is the Company's desire to promote an environment where employees are treated fairly and have the opportunity to succeed at their jobs. It is the Company's belief that most employees sincerely desire to do their best in performing their jobs; and with the proper instruction and guidance can maintain appropriate conduct and acceptable and consistent levels of performance. Occasionally, however, there will be a need for counseling to correct performance or behavior problems. If counseling and corrective action plan efforts fail to improve the poor performance or inappropriate behavior or conduct further disciplinary actions will be considered up to and including termination.

Management signature: Keith Schroeder

Employee signature: Refuse to sign

CC personnel file: LuzMaria Arroyo

EXHIBIT 32 7-15-13
PENGAD 800-631-6989

CONFIDENTIAL

# Volvo Parts North America
# Chicago Parts Central Distribution

## Employee Counseling – Corrective Action Plan

**Date: November 4, 2011**
**TO: LuzMaria Arroyo**
**From: Keith Schroeder**

Subject: Violation of Local Rule – Formal Written

On November 4, 2011 at 4:30 PM you were observed by management exiting the operations office then preceded to your car which was parked in the south truck – trailer area of the facility property. You were observed entering the employee entrance at 4:33 PM. Your action violated the shift start time and mediation room guidelines communicated to you on November 1, 2011. Additionally you will be charged with a .50 occurrence for violation of the start rule policy subject to the guidelines in our attendance policy.

It is your responsibility to comply with the standards of behavior and conduct of this facility.

Effective immediately you are to adhere to the rules and guidelines of the Chicago distribution center.

Management will continue to monitor your actions in the hope that you support this plan for change / improvement.

It is the Company's desire to promote an environment where employees are treated fairly and have the opportunity to succeed at their jobs. It is the Company's belief that most employees sincerely desire to do their best in performing their jobs; and with the proper instruction and guidance can maintain appropriate conduct and acceptable and consistent levels of performance. Occasionally, however, there will be a need for counseling to correct performance or behavior problems. If counseling and corrective action plan efforts fail to improve the poor performance or inappropriate behavior or conduct further disciplinary actions will be considered up to and including termination.

Management signature: Keith Schroeder

Employee signature: ______________________

CC personnel file: LuzMaria Arroyo

**From:** LuzMaria Arroyo
**To:** Williams Regina
**Cc:** Dunford Pat; Schroeder Keith; Sholl Dennis
**Subject:** Re: Request for leave time for medical appointments
**Date:** Wednesday, October 26, 2011 2:54:18 PM

---

Thank you for your response.

V/R

LuzMaria Arroyo

---

**From:** Williams Regina <regina.williams@volvo.com>
**To:** LuzMaria Arroyo <limbojunky@yahoo.com>
**Cc:** Dunford Pat <pat.dunford@volvo.com>; Schroeder Keith <keith.schroeder@volvo.com>; Sholl Dennis <dennis.sholl@volvo.com>
**Sent:** Wednesday, October 26, 2011 1:43 PM
**Subject:** RE: Request for leave time for medical appointments

LuzMaria,

In my response to your below email, you may take the time for the scheduled medical appointments as unpaid time.

Regards

*Regina I. Williams*

HR Business Partner
3020 Evergreen Drive
Duluth, GA 30096
770-813-9125 ext 100
770-813-9658 (fax)
**HR Service Center phone: 800-344-8339**
**hrsc.us@volvo.com**
**fax 336-393-4233 (benefits only)**
**fax 336-393-3607 (all other HR transactions)**

This email (and any attachments) is confidential and may be subject to legal or other professional privilege. It is intended solely for the receipt of the named addressee(s). It is subject to copyright and may only be copied or distributed with the consent of the copyright owner. If you are not a named addressee, you must not use, disclose, retain or reproduce all or any part of the information contained in this email or any attachments. Please notify the sender immediately by return email and destroy all copies of the email. Any confidentiality, privilege or copyright is not waived or lost because this email has been sent to you by mistake.

---

**From:** LuzMaria Arroyo [mailto:limbojunky@yahoo.com]
**Sent:** Wednesday, October 26, 2011 2:40 PM
**To:** Williams Regina
**Cc:** Dunford Pat; Schroeder Keith; Sholl Dennis

PENGAD 800-631-6989
EXHIBIT
39
7-15-13

**Subject:** Re: Request for leave time for medical appointments

VPNA,

May I receive a copy of this local ETO policy you make reference to? Is this the same policy which lists exempt and non-exempt employees? Did we not already have a conversation regarding ETO time and how it is used in April 2011, Ms. Williams?

Why are the requirements for this treatment different from the last? Again, why are there changes? The day and time of the treatment didnt even change, so i do not understand why you are implementing new rules/requirements/standards.

I have received your response, and again, will refer it to my lawyer for action. I do not understand why Ms. Williams says one thing, Ms. Buchanan says another, and why we have acted differently, than what both dictate, in the past. Perhaps my lawyer can help me to alleviate my fears and confusion.

I will remind you, as I had stated in April 2011, I have other things going on in my own time that, because I am not asking for a change in work schedule, I have not communicated to you. I use my ETO time for those therapies. I would like to ensure I understand, it is the company's position that I use all my ETO time first for therapy. After that is exhausted, any activity that can be related to my treatment will be approved for time off? Additionally, the company expresses that ETO is to be used only in 8 hour increments but the company will make an exception to policy for use of ETO in 4 hour increments. Even though this "local" policy has not been provided to me, though I had asked for it in April 2011 and am asking for it once again.

Thank you for the information. I will relay such to my lawyer and await her guidance.

V/R

LuzMaria Arroyo

**From:** Williams Regina <regina.williams@volvo.com>
**To:** "LuzMaria Arroyo (limbojunky@yahoo.com)" <limbojunky@yahoo.com>
**Cc:** Dunford Pat <pat.dunford@volvo.com>; Schroeder Keith <keith.schroeder@volvo.com>; Sholl Dennis <dennis.sholl@volvo.com>
**Sent:** Wednesday, October 26, 2011 1:17 PM
**Subject:** Request for leave time for medical appointments

LuzMaria,

In order to accommodate your request, Volvo will waive the local ETO policy which requires ETO be taken in 8 hour increments. You must take ETO in 4 hour increments to attend appointments associated with your medical condition beginning October 18, 2011. If you exhaust your ETO leave, you may take unpaid leave as well for the scheduled appointments. Please complete appropriate ETO request forms to request the actual dates that you need.

Regards

*Regina I. Williams*
HR Business Partner
3020 Evergreen Drive
Duluth, GA 30096
770-813-9125 ext 100
770-813-9658 (fax)
**HR Service Center phone: 800-344-8339**
hrsc.us@volvo.com
fax 336-393-4233 (benefits only)
fax 336-393-3607 (all other HR transactions)

This email (and any attachments) is confidential and may be subject to legal or other professional privilege. It is intended solely for the receipt of the named addressee(s). It is subject to copyright and may only be copied or distributed with the consent of the copyright owner. If you are not a named addressee, you must not use, disclose, retain or reproduce all or any part of the information contained in this email or any attachments. Please notify the sender immediately by return email and destroy all copies of the email. Any confidentiality, privilege or copyright is not waived or lost because this email has been sent to you by mistake.

# Volvo Parts North America
# Chicago Parts Central Distribution

## Employee Counseling – Corrective Action Plan

**Date: October 29, 2010**
**To: Luz Maria Arroyo**
**From: Keith Schroeder**

Subject: Verbal warning - Attendance

You have accumulated a total of 2 occurrences in a one-month period, from October 1st through October 19th, thus exceeding our attendance policy guidelines.

Reference attached attendance records.

Unauthorized absences disrupt the workflow and jeopardize customer service.

This concern must be addressed immediately or further disciplinary action will be taken up to and including termination of employment.

Please advise your supervisor if he can be of any assistance to you in this matter.

We will continue to monitor your attendance with the hope that this issue can be resolved.

It is the Company's desire to promote an environment where employees are treated fairly and have the opportunity to succeed at their jobs. It is the Company's belief that most employees sincerely desire to do their best in performing their jobs; and with the proper instruction and guidance can maintain appropriate conduct and acceptable and consistent levels of performance. Occasionally, however, there will be a need for counseling to correct performance or behavior problems. If counseling and corrective action plan efforts fail to improve the poor performance or inappropriate behavior or conduct further disciplinary actions will be considered up to and including termination.

Supervisor signature: Keith Schroeder

Employee signature: __________

CC personnel file: Luz Maria Arroyo

PENGAD 800-631-6989 EXHIBIT 34 7-15-13

**Volvo Parts North America**
**Chicago Parts Central Distribution**

**Employee Counseling – Corrective Action Plan**

**Date: August 31, 2011**
**To: LuzMaria Arroyo**
**From: Keith Schroeder**

Subject: Written warning - Attendance

You have accumulated a total of 5 occurrences in a six-month period, from October 19th, 2010 through August 19th, 2011 (excluding A&S, FMLA, and Military Leave) thus exceeding our attendance policy guidelines.

Reference attached attendance records.

Unauthorized absences disrupt the workflow and jeopardize customer service.

This concern must be addressed immediately or further disciplinary action will be taken up to and including termination of employment.

Please advise your supervisor if he can be of any assistance to you in this matter.

We will continue to monitor your attendance with the hope that this issue can be resolved.

It is the Company's desire to promote an environment where employees are treated fairly and have the opportunity to succeed at their jobs. It is the Company's belief that most employees sincerely desire to do their best in performing their jobs; and with the proper instruction and guidance can maintain appropriate conduct and acceptable and consistent levels of performance. Occasionally, however, there will be a need for counseling to correct performance or behavior problems. If counseling and corrective action plan efforts fail to improve the poor performance or inappropriate behavior or conduct further disciplinary actions will be considered up to and including termination.

Supervisor signature: Keith Schroeder

Employee signature: ____________________

CC personnel file: LuzMaria Arroyo

**Volvo Parts North America**
**Chicago Parts Central Distribution**

**Employee Counseling – Corrective Action Plan**

**Date: August 31, 2011**
**To: LuzMaria Arroyo**
**From: Keith Schroeder**

Subject: 3 Day Suspension - Attendance

You have accumulated a total of 5 occurrences in a six-month period, from October 19th, 2010 through August 20th, 2011 (excluding A&S, FMLA, and Military Leave) thus exceeding our attendance policy guidelines.

Reference attached attendance records.

This suspension is effective Wednesday August 31, 2011, September 1, 2, 2011 returning to work on Tuesday September 6, 2011.

Unauthorized absences disrupt the workflow and jeopardize customer service.

This concern must be addressed immediately or further disciplinary action will be taken up to and including termination of employment.

Please advise your supervisor if he can be of any assistance to you in this matter.

We will continue to monitor your attendance with the hope that this issue can be resolved.

It is the Company's desire to promote an environment where employees are treated fairly and have the opportunity to succeed at their jobs. It is the Company's belief that most employees sincerely desire to do their best in performing their jobs; and with the proper instruction and guidance can maintain appropriate conduct and acceptable and consistent levels of performance. Occasionally, however, there will be a need for counseling to correct performance or behavior problems. If counseling and corrective action plan efforts fail to improve the poor performance or inappropriate behavior or conduct further disciplinary actions will be considered up to and including termination.

Supervisor signature: Keith Schroeder

Employee signature: Refuse to Sign

CC personnel file: LuzMaria Arroyo

**Volvo Parts North America**
**Chicago Parts Central Distribution**

**Employee Counseling – Corrective Action Plan**

**Date: November 8, 2011**
**To: LuzMaria Arroyo**
**From: Keith Schroeder**

Subject: Termination - Attendance

You have accumulated a total of 5 occurrences in a six-month period, from April 14, 2011 to November 4, 2011 thus exceeding our attendance policy guidelines.

Reference attached attendance records.

Your past history of absenteeism issues is the cause of this action.

The Human Resource group will contact you regarding benefits associated with your termination of employment.

Management signature: Keith B. Schroeder

Employee signature:________________________________

CC personnel file: LuzMaria Arroyo

.ail Report
pay period
.d accounts, all pay rules, all Timeclock groups

Page 0006
10/02/2010 5:09p

| | |
|---|---|
| .09/27 ABSENT | (8.00) |
| .e 09/28 ABSENT | (8.00) |
| /ed 09/29 ABSENT | (8.00) |
| Thu 09/30 ABSENT | (8.00) |
| Fri 10/01 ABSENT | (8.00) |
| Sat 10/02 ABSENT | (8.00) |

ACCIDENTALE,BRIAN 1094619 300

| | ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 09/27 | | 406p | | | 1232a | | | | | | 8.00 | 8.00 |
| Tue 09/28 | | 400p | | | 1231a | | | | | | 8.00 | 16.00 |
| Wed 09/29 | | 401p | | | 1230a | | | | | | 8.00 | 24.00 |
| Thu 09/30 | | 406p | | | 1235a | | | | | | 8.00 | 32.00 |
| Fri 10/01 | | 400p | | | 1232a | | | | | | 8.00 | 40.00 |
| Sat 10/02 ABSENT | | | | | | | | | | | (8.00) | |

Acct:300
REG: 40.00

ADAMS,ERIK 1094630 300

| | ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 09/27 ABSENT | | | | | | | | | | | (8.00) | |
| Tue 09/28 | | 1222a VAC | | | | | | | | | 8.00 | |
| Wed 09/29 ABSENT | | | | | | | | | | | (8.00) | |
| Thu 09/30 | | 1222a | | | 830a | | | | | | 8.00 | 8.00 |
| Fri 10/01 | | 1222a | | | 830a | | | | | | 8.00 | 16.00 |
| Sat 10/02 ABSENT | | | | | | | | | | | (8.00) | |

| | | | | | | |
|---|---|---|---|---|---|---|
| Add Hours | 10 | 09/28 | 1222a | VAC (Excused) | [Home] | 8.00 |
| Add Punch | 10 | 09/30 | 1222a | | | |
| Remove Punch | 10 | 10/01 | 1212a | | | |
| Add Punch | 10 | 10/01 | 1222a | | | |

No Pay 16 HR

Acct:300
REG: 16.00 VAC: 8.00

ADAMS,TRACEY 1094628 300

| | ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 09/27 | | 1227a | | | 830a | | | | | | 8.00 | 8.00 |
| Tue 09/28 | | 1219a | | | 1030a | | | | | | 10.00 | 18.00 |
| Wed 09/29 | | 1222a | | | 1033a | | | | | | 10.00 | 28.00 |
| Thu 09/30 | | 1221a | | | 1031a | | | | | | 10.00 | 38.00 |
| Fri 10/01 | | 1222a | | | 830a | | | | | | 8.00 | 46.00 |
| Fri 10/01 | | 228p | | | 430p | | | | | | 2.00 | 48.00 |
| Sat 10/02 ABSENT | | | | | | | | | | | (8.00) | |

| | | | |
|---|---|---|---|
| Add Punch | 10 | 09/27 | 1227a |

Acct:300
REG: 40.00 OT: 8.00

ARROYO, LUZMARIA 094664 300

| | ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 09/27 | | 420p | | | 1231a | | | | | | 8.00 | 8.00 |
| Tue 09/28 | | 421p | | | 1231a | | | | | | 8.00 | 16.00 |
| Wed 09/29 | | 424p | | | 1230a | | | | | | 8.00 | 24.00 |
| Thu 09/30 | | 428p | | | 1230a | | | | | | 8.00 | 32.00 |
| Fri 10/01 | | 452p*L | | | 1231a | | | | | | 7.50 | 39.50 |
| Sat 10/02 ABSENT | | | | | | | | | | | (8.00) | |

7.64 HR

Acct:300
REG: 39.50

BAGBY,DANNY R 0001003070 300

| | ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 09/27 ABSENT | | | | | | | | | | | (8.00) |
| Tue 09/28 ABSENT | | | | | | | | | | | (8.00) |
| Wed 09/29 ABSENT | | | | | | | | | | | (8.00) |

EXHIBIT
35
7-15-13
PENGAD 800-631-6989

Sat 10/09 ABSENT (8.00)
Sun 10/10 ABSENT (8.00)
Add Hours 10 10/08 1230a VAC (Excused) [Home] 8.00

Acct:300 REG: 32.00 [redacted] [redacted]

ARROYO, LUZMARIA 094664 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 10/04 | 426p | | 1231a | | | | 8.00 | 8.00 |
| Tue 10/05 | 422p | | 1232a | | | | 8.00 | 16.00 |
| Wed 10/06 | 429p | | 1230a | | | | 8.00 | 24.00 |
| Thu 10/07 | 425p | | 1233a | | | | 8.00 | 32.00 |
| Fri 10/08 | 427p | | 1231a | | | | 8.00 | 40.00 |
| Sat 10/09 | ABSENT | | | | | | (8.00) | |
| Sun 10/10 | ABSENT | | | | | | (8.00) | |

Acct:300 REG: 40.00

BAGBY, DANNY R 0001003070 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS |
|---|---|---|---|---|---|---|---|
| Mon 10/04 | ABSENT | | | | | | (8.00) |
| Tue 10/05 | ABSENT | | | | | | (8.00) |
| Wed 10/06 | ABSENT | | | | | | (8.00) |
| Thu 10/07 | ABSENT | | | | | | (8.00) |
| Fri 10/08 | ABSENT | | | | | | (8.00) |
| Sat 10/09 | ABSENT | | | | | | (8.00) |
| Sun 10/10 | ABSENT | | | | | | (8.00) |

BAUM, CHAD 1094603 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 10/04 | 1225a | VAC | | | | | 8.00 | |
| Mon 10/04 | 1018p*E | | 835a | | | | 10.00 | 10.00 |
| Tue 10/05 | 1028p*E | | 831a | | | | 10.00 | 20.00 |
| Wed 10/06 | 1020p*E | | 900a*L | | | | 10.50 | 30.50 |
| Fri 10/08 | 1222a | | 831a | | | | 8.00 | 38.50 |
| Sat 10/09 | ABSENT | | | | | | (8.00) | |
| Sun 10/10 | ABSENT | | | | | | (8.00) | |

Add Hours 10 10/04 1225a VAC (Excused) [Home] 8.00
Remove Punch 10 10/07 846a
Add Punch 10 10/07 900a

Acct:300 REG: 32.00 [redacted] [redacted]

BAUMGARTNER, CATHERINE 0001094596 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 10/04 | 1206a | | 830a | | | | 8.00 | 8.00 |
| Tue 10/05 | 1206a | | 1030a*L | | | | 10.00 | 18.00 |
| Wed 10/06 | 1208a | | 1032a*L | | | | 10.00 | 28.00 |
| Thu 10/07 | 1208a | | 1033a*L | | | | 10.00 | 38.00 |
| Fri 10/08 | 1209a | | 832a | | | | 8.00 | 46.00 |
| Sat 10/09 | 1211a | | 830a | M | 834a*S | *? | 8.00 | 46.00 |
| Sun 10/10 | ABSENT | | | | | | (8.00) | |

Add Punch 10 10/09 830a

Acct:300 REG: 40.00 [redacted]

BEIER, RAYMOND 1094642 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 10/04 | 400p | | 1230a | | | | 8.00 | 8.00 |
| Tue 10/05 | 417p | | 1230a | | | | 8.00 | 16.00 |
| Wed 10/06 | 359p | | 1232a | | | | 8.50 | 24.50 |

A Detail Report
-vious pay period ·
elected accounts, all pay rules, all Timeclock groups

Page
10/18/2010

Add Punch 10 10/12 1222a
Add Punch 10 10/13 1230a
Add Punch 10 10/15 1230a

Acct:300
REG: 40.00 [redacted]

ARROYO, LUZMARIA 094664 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 10/11 | 450p*L | | 1230a | | | | 7.50 | 7.50 |
| Tue 10/12 | 423p | | 1231a | | | | 8.00 | 15.50 |
| Wed 10/13 | 420p | | 1232a | | | | 8.00 | 23.50 |
| Thu 10/14 | 418p | | 1232a | | | | 8.00 | 31.50 |
| Fri 10/15 | 414p | | 1232a | | | | 8.00 | 39.50 |
| Sat 10/16 | ABSENT | | | | | | (8.00) | |
| Sun 10/17 | ABSENT | | | | | | (8.00) | |

Acct:300
REG: [redacted]

BAGBY, DANNY R 0001003070 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS |
|---|---|---|---|---|---|---|---|
| Mon 10/11 | ABSENT | | | | | | (8.00) |
| Tue 10/12 | ABSENT | | | | | | (8.00) |
| Wed 10/13 | ABSENT | | | | | | (8.00) |
| Thu 10/14 | ABSENT | | | | | | (8.00) |
| Fri 10/15 | ABSENT | | | | | | (8.00) |
| Sat 10/16 | ABSENT | | | | | | (8.00) |
| Sun 10/17 | ABSENT | | | | | | (8.00) |

BAUM, CHAD 1094603 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 10/11 | 1230a VAC | | | | | | 16.00 | |
| Tue 10/12 | ABSENT | | | | | | (8.00) | |
| Wed 10/13 | 1221a | | 834a | | | | 8.00 | 8.00 |
| Thu 10/14 | 1216a | | 832a | | | | 8.00 | 16.00 |
| Fri 10/15 | 1217a | | 830a | | | | 8.00 | 24.00 |
| Sat 10/16 | ABSENT | | | | | | (8.00) | |
| Sun 10/17 | ABSENT | | | | | | (8.00) | |

Add Hours 10 10/11 1230a VAC (Excused) [Home] 16.00

Acct:300
REG: 24.00 [redacted]

BAUMGARTNER, CATHERINE 0001094596 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 10/11 | 1230a VAC | | | | | | 8.00 | |
| Tue 10/12 | 1208a | | 1032a*L | | | | 10.00 | 10.00 |
| Wed 10/13 | 1210a | | 1032a*L | | | | 10.00 | 20.00 |
| Thu 10/14 | 1207a | | 1032a*L | | | | 10.00 | 30.00 |
| Fri 10/15 | 1209a | | 834a | | | | 8.00 | 38.00 |
| Sat 10/16 | ABSENT | | | | | | (8.00) | |
| Sun 10/17 | ABSENT | | | | | | (8.00) | |

Add Hours 10 10/11 1230a VAC (Excused) [Home] 8.00
Remove Punch 10 10/15 1208a

Acct:300
REG: 32.00 [redacted] [redacted]

BEIER, RAYMOND 1094642 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS |
|---|---|---|---|---|---|---|---|
| Mon 10/11 | ABSENT | | | | | | (8.00) |
| Tue 10/12 | ABSENT | | | | | | (8.00) |
| Wed 10/13 | ABSENT | | | | | | (8.00) |
| Thu 10/14 | ABSENT | | | | | | (8.00) |

*...an Detail Report*
*Previous pay period*
*Selected accounts, all pay rules, all Timeclock groups*

*Page*
*10/25/2010*

Acct:300
REG: 40.00 OT: 9.00

ARROYO, LUZMARIA 094664 300

| | ID | IN | DEP ACTIVITY | OUT | ID | IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|
| Mon 10/18 | | 430p | | 1232a | | | | | 8.00 | 8.00 |
| Tue 10/19 | | ABSENT | | | | | | | (8.00) | |
| Wed 10/20 | | 429p | | 1232a | | | | | 8.00 | 16.00 |
| Thu 10/21 | | 424p | | 1231a | | | | | 8.00 | 24.00 |
| Fri 10/22 | | 428p | | 1232a | | | | | 8.00 | 32.00 |
| Sat 10/23 | | ABSENT | | | | | | | (8.00) | |
| Sun 10/24 | | ABSENT | | | | | | | (8.00) | |

Add Punch 9 10/18 430p

Acct:300
REG: [illegible]2.00

BAGBY, DANNY R 0001003070 300

| | ID | IN | DEP ACTIVITY | OUT | ID | IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|
| Mon 10/18 | | ABSENT | | | | | | | (8.00) | |
| Tue 10/19 | | ABSENT | | | | | | | (8.00) | |
| Wed 10/20 | | ABSENT | | | | | | | (8.00) | |
| Thu 10/21 | | ABSENT | | | | | | | (8.00) | |
| Fri 10/22 | | ABSENT | | | | | | | (8.00) | |
| Sat 10/23 | | ABSENT | | | | | | | (8.00) | |
| Sun 10/24 | | ABSENT | | | | | | | (8.00) | |

BAUM, CHAD 1094603 300

| | ID | IN | DEP ACTIVITY | OUT | ID | IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|
| Mon 10/18 | | 1225a | VAC | | | | | | 8.00 | |
| Tue 10/19 | | 1216a | | 830a | | | | | 8.00 | 8.00 |
| Wed 10/20 | | 1225a | | 1030a*L | | | | | 10.00 | 18.00 |
| Thu 10/21 | | 1222a | | 1030a*L | | | | | 10.00 | 28.00 |
| Fri 10/22 | | 1219a | | 835a | | | | | 8.00 | 36.00 |
| Sat 10/23 | | 725a | | 1233p | | | | | 5.00 | 41.00 |
| Sun 10/24 | | ABSENT | | | | | | | (8.00) | |

Add Hours 10 10/18 1225a VAC (Excused) [Home] 8.00
Remove Punch 4 10/23 717a
Add Punch 4 10/23 725a

Acct:300
REG: 32.00 OT: 9.00 VAC: 8.00

BAUMGARTNER, CATHERINE 0001094596 300

| | ID | IN | DEP ACTIVITY | OUT | ID | IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|
| Mon 10/18 | | 1209a | | 830a | | | | | 8.00 | 8.00 |
| Tue 10/19 | | 1208a | | 1039a*L | | | | | 10.00 | 18.00 |
| Wed 10/20 | | 1208a | | 1030a*L | | | | | 10.00 | 28.00 |
| Thu 10/21 | | 1207a | | 1031a*L | | | | | 10.00 | 38.00 |
| Fri 10/22 | | 1225a | VAC | | | | | | 8.00 | |
| Sat 10/23 | | 708a | | 1231p | | | | | 5.25 | 43.25 |
| Sun 10/24 | | ABSENT | | | | | | | (8.00) | |

Add Hours 10 10/22 1225a VAC (Excused) [Home] 8.00

Acct:300
REG: 32.00 OT: [illegible]1.25 VAC: 8.00

BEIER, RAYMOND 1094642 300

| | ID | IN | DEP ACTIVITY | OUT | ID | IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|
| Mon 10/18 | | 425p | | 1231a | | | | | 8.00 | 8.00 |
| Tue 10/19 | | 404p | | 1231a | | | | | 8.00 | 16.00 |
| Wed 10/20 | | 215p*E | | 1231a | | | | | 10.00 | 26.00 |
| Thu 10/21 | | 405p | | 1230a | | | | | 8.00 | 34.00 |

/ Report
ay period
accounts, all pay rules, all Timeclock groups

Page
11/01/2010

RSETT, MAUREEN 0001094592 100

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| on 10/25 ABSENT | | | | | | (8.00) | |
| Tue 10/26 ABSENT | | | | | | (8.00) | |
| Wed 10/27 ABSENT | | | | | | (8.00) | |
| Thu 10/28 ABSENT | | | | | | (8.00) | |
| Fri 10/29 ABSENT | | | | | | (8.00) | |
| Sat 10/30 ABSENT | | | | | | (8.00) | |
| Sun 10/31 ABSENT | | | | | | (8.00) | |

ACCIDENTALE, BRIAN 1094619 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 10/25 413p | | 1234a | | | | 8.00 | 8.00 |
| Tue 10/26 405p | | 1236a | | | | 8.00 | 16.00 |
| Wed 10/27 412p | | 1235a | | | | 8.00 | 24.00 |
| Thu 10/28 401p | | 1231a | | | | 8.00 | 32.00 |
| Fri 10/29 407p | | 1234a | | | | 8.00 | 40.00 |
| Sat 10/30 ABSENT | | | | | | (8.00) | |
| Sun 10/31 ABSENT | | | | | | (8.00) | |

Acct:300

REG: 40.00

ADAMS, ERIK 1094630 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 10/25 1226a | | 830a | | | | 8.00 | 8.00 |
| Tue 10/26 1230a | | 1030a | | | | 10.00 | 18.00 |
| Wed 10/27 1227a | | 830a | | | | 8.00 | 26.00 |
| Thu 10/28 1230a | | 1030a | | | | 10.00 | 36.00 |
| Fri 10/29 1218a | | 834a | | | | 8.00 | 44.00 |
| Sat 10/30 ABSENT | | | | | | (8.00) | |
| Sun 10/31 ABSENT | | | | | | (8.00) | |

Add Punch 10 10/25 1226a
Remove Punch 10 10/25 1014p
Add Punch 10 10/26 1230a
Remove Punch 10 10/26 830a
Add Punch 10 10/26 1030a
Remove Punch 10 10/27 1217a
Add Punch 10 10/27 1227a
Remove Punch 10 10/27 1018p
Add Punch 10 10/28 1230a
Remove Punch 10 10/28 830a
Add Punch 10 10/28 1030a

Acct:300

REG: 40.00 [redacted]

ADAMS, TRACEY 1094628 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 10/25 1224a | | 831a | | | | 8.00 | 8.00 |
| Tue 10/26 1222a | | 831a | | | | 8.00 | 16.00 |
| Wed 10/27 1226a | | 830a | | | | 8.00 | 24.00 |
| Thu 10/28 1222a | | 831a | | | | 8.00 | 32.00 |
| Fri 10/29 1222a | | 834a | | | | 8.00 | 40.00 |
| Sat 10/30 ABSENT | | | | | | (8.00) | |
| Sun 10/31 ABSENT | | | | | | (8.00) | |

Acct:300

REG: 40.00

ARROYO, LUZMARIA 094664 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 10/25 417p | | 1230a | | | | 8.00 | 8.00 |
| Tue 10/26 227p*E | | 1233a | | | | 10.00 | 18.00 |
| Wed 10/27 423p | | 235a*L | | | | 10.00 | 28.00 |
| Thu 10/28 225p*E | | 1231a | | | | 10.00 | 38.00 |
| Fri 10/29 431p*L | | 1231a | | | | 7.75 | 45.75 |
| Sat 10/30 ABSENT | | | | | | (8.00) | |

/ Report
ay period
accounts, all pay rules, all Timeclock groups

Page
11/01/2010

/31 ABSENT (8.00)

t:300 [redacted] [redacted]

BAGBY, DANNY R. 0001003070 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 10/25 ABSENT | | | | | | (8.00) | |
| Tue 10/26 ABSENT | | | | | | (8.00) | |
| Wed 10/27 ABSENT | | | | | | (8.00) | |
| Thu 10/28 ABSENT | | | | | | (8.00) | |
| Fri 10/29 ABSENT | | | | | | (8.00) | |
| Sat 10/30 ABSENT | | | | | | (8.00) | |
| Sun 10/31 ABSENT | | | | | | (8.00) | |

BAUM, CHAD 1094603 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 10/25 1224a | VAC | | | | | 8.00 | |
| Tue 10/26 1219a | | 1033a*L | | | | 10.00 | 10.00 |
| Wed 10/27 1224a | | 832a | | | | 8.00 | 18.00 |
| Thu 10/28 1218a | | 833a | | | | 8.00 | 26.00 |
| Fri 10/29 1223a | | 834a | | | | 8.00 | 34.00 |
| [redacted] | | 1231p | | | | [redacted] | [redacted]8.00 |
| Sun 10/31 ABSENT | | | | | | (8.00) | |

Add Hours 10 10/25 1224a VAC (Excused) (Home) 8.00

Acct:300 REG: 32.00 [redacted] [redacted]00

BAUMGARTNER, CATHERINE 0001094596 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 10/25 1205a | | 831a | | | | 8.00 | 8.00 |
| Tue 10/26 1207a | | 1031a*L | | | | 10.00 | 18.00 |
| Wed 10/27 1209a | | 1031a*L | | | | 10.00 | 28.00 |
| Thu 10/28 1210a | | 1032a*L | | | | 10.00 | 38.00 |
| Fri 10/29 1208a | | 833a | | | | 8.00 | 46.00 |
| [redacted] | | 331p | | | | [redacted] | 54.00 |
| Sun 10/31 ABSENT | | | | | | (8.00) | |

Add Punch 1 10/30 730a

Acct:300 REG: 40.00 [redacted]

BEIER, RAYMOND 1094642 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 10/25 401p | | 1230a | | | | 8.00 | 8.00 |
| Tue 10/26 209p*E | | 1231a | | | | 10.00 | 18.00 |
| Wed 10/27 209p*E | | 1230a | | | | 10.00 | 28.00 |
| Thu 10/28 403p | | 1230a | | | | 8.00 | 36.00 |
| Fri 10/29 416p | | 1231a | | | | 8.00 | 44.00 |
| Sat 10/30 ABSENT | | | | | | (8.00) | |
| Sun 10/31 ABSENT | | | | | | (8.00) | |

Acct:300 REG: 40.00 [redacted]

BOLLINGER, JAMES 1094627 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 10/25 416p | | 1230a | | | | 8.00 | 8.00 |
| Tue 10/26 206p*E | | 1231a | | | | 10.00 | 18.00 |
| Wed 10/27 211p*E | | 1230a | | | | 10.00 | 28.00 |
| Thu 10/28 218p*E | | 1230a | | | | 10.00 | 38.00 |
| Fri 10/29 400p | | 1230a | | | | 8.00 | 46.00 |
| Sat 10/30 723a | | 330p | | | | 8.00 | 54.00 |
| Sun 10/31 ABSENT | | | | | | (8.00) | |

Page
11/08/2010

, all pay rules, all Timeclock groups

11/05 810a

REG: 40.00

/, MAUREEN 0001094592 100

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS |
|---|---|---|---|---|---|---|
| 01 ABSENT | | | | | | (8.00) |
| /02 ABSENT | | | | | | (8.00) |
| 1/03 ABSENT | | | | | | (8.00) |
| 1/04 ABSENT | | | | | | (8.00) |
| 11/05 ABSENT | | | | | | (8.00) |
| 11/06 ABSENT | | | | | | (8.00) |
| 11/07 ABSENT | | | | | | (8.00) |

ACCIDENTALE, BRIAN 1094619 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 11/01 | 401p | | 1234a | | | | 8.00 | 8.00 |
| Tue 11/02 | 402p | | 1231a | | | | 8.00 | 16.00 |
| Wed 11/03 | 414p | | 1234a | | | | 8.00 | 24.00 |
| Thu 11/04 | 413p | | 1231a | | | | 8.00 | 32.00 |
| Fri 11/05 | 406p | | 1230a | | | | 8.00 | 40.00 |
| Sat 11/06 | ABSENT | | | | | | (8.00) | |
| Sun 11/07 | ABSENT | | | | | | (8.00) | |

Acct:300

REG: 40.00

ADAMS, ERIK 1094630 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 11/01 | 1223a | | 830a | | | | 8.00 | 8.00 |
| Tue 11/02 | 1230a | | 1030a | | | | 10.00 | 18.00 |
| Wed 11/03 | 1218a | | 830a | | | | 8.00 | 26.00 |
| Thu 11/04 | 1230a | | 1030a | | | | 10.00 | 36.00 |
| Fri 11/05 | 1230a | | 830a | | | | 8.00 | 44.00 |
| Sat 11/06 | 1212a | | 530a | | | | 5.25 | 49.25 |
| Sun 11/07 | ABSENT | | | | | | (8.00) | |

Remove Punch 10 11/01 1014p
Add Punch 10 11/02 1230a
Remove Punch 10 11/02 830a
Add Punch 10 11/02 1030a
Remove Punch 10 11/03 1015p
Add Punch 10 11/04 1230a
Remove Punch 10 11/04 830a
Add Punch 10 11/04 1030a
Add Punch 10 11/05 1230a

Acct:300

REG: 40.00 OT: 9.25

ADAMS, TRACEY 1094628 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 11/01 | 1221a | | 832a | | | | 8.00 | 8.00 |
| Tue 11/02 | 250a | | 1032a | | | | 7.50 | 15.50 |
| Wed 11/03 | 1218a | | 1033a | | | | 10.00 | 25.50 |
| Thu 11/04 | 1220a | | 1030a | | | | 10.00 | 35.50 |
| Fri 11/05 | 1221a | | *? 8:30 | | | | 0.00 | 35.50 |
| Sat 11/06 | 1218a | | 532a | | | | 5.00 | 40.50 |
| Sun 11/07 | ABSENT | | | | | | (8.00) | |

Acct:300

REG: ~~31.50~~ 39. OT: 9.00

ARROYO, LUZMARIA 094664 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 11/01 | 425p | | 1231a | | | | 8.00 | 8.00 |

Tue 11/02 423p 1231a 8.00 16.00
Wed 11/03 424p 1232a 8.00 24.00
Thu 11/04 424p 1232a 8.00 32.00
Fri 11/05 1222p 835p 8.00 40.00
Sat 11/06 ABSENT (8.00)
Sun 11/07 ABSENT (8.00)

Acct:300 REG: 40.00

BAGBY, DANNY R 0001003070 300

| | ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 11/01 | | ABSENT | | | | | | | | | (8.00) | |
| Tue 11/02 | | ABSENT | | | | | | | | | (8.00) | |
| Wed 11/03 | | ABSENT | | | | | | | | | (8.00) | |
| Thu 11/04 | | ABSENT | | | | | | | | | (8.00) | |
| Fri 11/05 | | ABSENT | | | | | | | | | (8.00) | |
| Sat 11/06 | | ABSENT | | | | | | | | | (8.00) | |
| Sun 11/07 | | ABSENT | | | | | | | | | (8.00) | |

BAUM, CHAD 1094603 300

| | ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 11/01 | | 1216a | | | 831a | | | | | | 8.00 | 8.00 |
| Tue 11/02 | | 1216a | | | 832a | | | | | | 8.00 | 16.00 |
| Wed 11/03 | | 1222a | | | 836a | | | | | | 8.00 | 24.00 |
| Thu 11/04 | | 1221a | | | 830a | | | | | | 8.00 | 32.00 |
| Fri 11/05 | | 1219a | | | 834a | | | | | | 8.00 | 40.00 |
| Sat 11/06 | | 1216a | | | 830a | | | | | | 8.00 | 48.00 |
| Sun 11/07 | | ABSENT | | | | | | | | | (8.00) | |

Acct:300 REG: 40.00 OT: 8.00

BAUMGARTNER, CATHERINE 0001094596 300

| | ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 11/01 | | 1226a | | VAC | | | | | | | 8.00 | |
| | | | | | 1032a*L | | | | | | 10.00 | 10.00 |
| Tue 11/02 | | 1210a | | | 1031a*L | | | | | | 10.00 | 20.00 |
| Wed 11/03 | | 1209a | | | 1036a*L | | | | | | 10.00 | 30.00 |
| Thu 11/04 | | 1207a | | | 832a | | | | | | 8.00 | 38.00 |
| Fri 11/05 | | 1210a | | | 832a | | | | | | 8.00 | 46.00 |
| Sat 11/06 | | 1202a | | | | | | | | | (8.00) | |
| Sun 11/07 | | ABSENT | | | | | | | | | | |

Add Hours 10 11/01 1226a VAC (Excused) [Home] 8.00

Acct:300 REG: 32.00 OT: 14.00 VAC: 8.00

BEIER, RAYMOND 1094642 300

| | ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 11/01 | | 422p | | | 1230a | | | | | | 8.00 | 8.00 |
| Tue 11/02 | | 410p | | | 1231a | | | | | | 8.00 | 16.00 |
| Wed 11/03 | | 218p*E | | | 1232a | | | | | | 10.00 | 26.00 |
| Thu 11/04 | | 412p | | | 1230a | | | | | | 8.00 | 34.00 |
| Fri 11/05 | | ABSENT | | | | | | | | | (8.00) | |
| Sat 11/06 | | ABSENT | | | | | | | | | (8.00) | |
| Sun 11/07 | | ABSENT | | | | | | | | | (8.00) | |

Acct:300 REG: 32.00 OT: 2.00

BOLLINGER, JAMES 1094627 300

| | ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 11/01 | | 403p | | | 1231a | | | | | | 8.00 | 8.00 |
| Tue 11/02 | | 211p*E | | | 1232a | | | | | | 10.00 | 18.00 |
| Wed 11/03 | | 213p*E | | | 1234a | | | | | | 10.00 | 28.00 |
| Thu 11/04 | | 205p*E | | | 1231a | | | | | | 10.00 | 38.00 |
| Fri 11/05 | | 153p*E | | | 1002p*E | | | | | | 8.00 | 46.00 |

...d Report
... pay period
...d accounts, all pay rules, all Timeclock groups

Page
11/15/2010

ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS
...n 11/08 ABSENT (8.00)
Tue 11/09 ABSENT (8.00)
Wed 11/10 ABSENT (8.00)
Thu 11/11 ABSENT (8.00)
Fri 11/12 ABSENT (8.00)
Sat 11/13 ABSENT (8.00)
Sun 11/14 ABSENT (8.00)
Remove Punch 998 11/10 903a

ACCIDENTALE, BRIAN 1094619 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 11/08 405p | | 1232a | | | | 8.00 | 8.00 |
| Tue 11/09 404p | | 1233a | | | | 8.00 | 16.00 |
| Wed 11/10 402p | | 1231a | | | | 8.00 | 24.00 |
| Thu 11/11 401p | | 1236a | | | | 8.00 | 32.00 |
| Fri 11/12 411p | | 1231a | | | | 8.00 | 40.00 |
| Sat 11/13 ABSENT | | | | | | (8.00) | |
| Sun 11/14 ABSENT | | | | | | (8.00) | |

Acct:300
REG: 40.00

ADAMS, ERIK 1094630 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 11/08 1225a | | 830a | | | | 8.00 | 8.00 |
| Tue 11/09 1230a | | 1031a | | | | 10.00 | 18.00 |
| Wed 11/10 1227a | | 830a | | | | 8.00 | 26.00 |
| Thu 11/11 1230a | | 1030a | | | | 10.00 | 36.00 |
| Fri 11/12 1225a | | 830a | | | | 8.00 | 44.00 |
| Sat 11/13 718a | | 1230p | | | | 5.00 | 49.00 |
| Sun 11/14 ABSENT | | | | | | (8.00) | |

Add Punch 10 11/08 1225a
Remove Punch 10 11/08 1015p
Add Punch 10 11/09 1230a
Remove Punch 10 11/09 831a
Add Punch 10 11/09 1031a
Remove Punch 10 11/10 1217a
Add Punch 10 11/10 1227a
Remove Punch 10 11/10 1018p
Add Punch 10 11/11 1230a
Remove Punch 10 11/11 830a
Add Punch 10 11/11 1030a
Remove Punch 10 11/12 1214a
Add Punch 10 11/12 1225a

Acct:300
REG: 40.00 [redacted]

ADAMS, TRACEY 1094628 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 11/08 1221a | | 831a | | | | 8.00 | 8.00 |
| Tue 11/09 1219a | | 830a | | | | 8.00 | 16.00 |
| Wed 11/10 1225a | | 832a | | | | 8.00 | 24.00 |
| Thu 11/11 1222a | | 830a | | | | 8.00 | 32.00 |
| Fri 11/12 1226a | | 834a | | | | 8.00 | 40.00 |
| Sat 11/13 756a | | 104p*E | | | | 5.00 | 45.00 |
| Sun 11/14 ABSENT | | | | | | (8.00) | |

Remove Punch 10 11/10 1215a
Add Punch 10 11/10 1225a
Remove Punch 10 11/12 1216a
Add Punch 10 11/12 1226a

Acct:300
REG: 40.00 [redacted]

ARROYO, LUZMARIA 094664 300
ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS

*Punch Detail Report*
*Previous pay period*
*Selected accounts, all pay rules, all Timeclock groups*



| | | | | |
|---|---|---|---|---|
| Mon 11/08 | 409p | 1232a | 8.00 | 8.00 |
| Tue 11/09 | 224p*E | 1231a | 10.00 | 18.00 |
| Wed 11/10 | ABSENT | | (8.00) | |
| Thu 11/11 | ABSENT | | (8.00) | |
| Fri 11/12 | ABSENT | | (8.00) | |
| Sat 11/13 | ABSENT | | (8.00) | |
| Sun 11/14 | ABSENT | | (8.00) | |

Acct:300 REG: 16.00 OT: 2.00

BAGBY, DANNY R 0001003070 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 11/08 | ABSENT | | | | | | (8.00) | |
| Tue 11/09 | ABSENT | | | | | | (8.00) | |
| Wed 11/10 | ABSENT | | | | | | (8.00) | |
| Thu 11/11 | ABSENT | | | | | | (8.00) | |
| Fri 11/12 | ABSENT | | | | | | (8.00) | |
| Sat 11/13 | ABSENT | | | | | | (8.00) | |
| Sun 11/14 | ABSENT | | | | | | (8.00) | |

BAUM, CHAD 1094603 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 11/08 | 1230a | VAC | | | | | 8.00 | |
| Tue 11/09 | 1220a | | 833a | | | | 8.00 | 8.00 |
| Wed 11/10 | 1221a | | 1033a*L | | | | 10.00 | 18.00 |
| Thu 11/11 | 1220a | | 832a | | | | 8.00 | 26.00 |
| Fri 11/12 | 1225a | | 831a | | | | 8.00 | 34.00 |
| Sat 11/13 | 723a | | 1232p | | | | 5.00 | 39.00 |
| Sun 11/14 | ABSENT | | | | | | (8.00) | |

Add Hours 10 11/08 1230a VAC (Excused) [Home] 8.00
Remove Punch 10 11/13 713a
Add Punch 10 11/13 723a

Acct:300 REG: 32.00 OT: 7.00 VAC: 8.00

BAUMGARTNER, CATHERINE 0001094596 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 11/08 | 1230a | VAC | | | | | 8.00 | |
| Tue 11/09 | 1208a | | 1036a*L | | | | 10.00 | 10.00 |
| Wed 11/10 | 1206a | | 1032a*L | | | | 10.00 | 20.00 |
| Thu 11/11 | 1208a | | 1036a*L | | | | 10.00 | 30.00 |
| Fri 11/12 | 1208a | | 839a | | | | 8.00 | 38.00 |
| Sat 11/13 | 719a | | 1234p | | | | 5.00 | 43.00 |
| Sun 11/14 | ABSENT | | | | | | (8.00) | |

Add Hours 10 11/08 1230a VAC (Excused) [Home] 8.00
Remove Punch 10 11/13 709a
Add Punch 10 11/13 719a

Acct:300 REG: 32.00 OT: 11.00 VAC: 8.00

BEIER, RAYMOND 1094642 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 11/08 | ABSENT | | | | | | (8.00) | |
| Tue 11/09 | 425p | VAC | | | | | 8.00 | |
| Wed 11/10 | 405p | | 1231a | | | | 8.00 | 8.00 |
| Thu 11/11 | 214p*E | | 1231a | | | | 10.00 | 18.00 |
| Fri 11/12 | 403p | | 1230a | | | | 8.00 | 26.00 |
| Sat 11/13 | ABSENT | | | | | | (8.00) | |
| Sun 11/14 | ABSENT | | | | | | (8.00) | |

Add Hours 4 11/09 425p VAC (Excused) [Home] 8.00

Acct:300 REG: 24.00 OT: 2.00 VAC: 8.00

...Report
...pay period
...ed accounts, all pay rules, all Timeclock groups

Page 0007
11/22/2010 9:02a

...ARROYO, LUZMARIA 094664 300

| | ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 11/15 | | 416p | | | 1231a | | | | | | 8.00 | 8.00 |
| Tue 11/16 | | 426p | | | 1231a | | | | | | 8.00 | 16.00 |
| Wed 11/17 | | 425p | | | 1234a | | | | | | 8.00 | 24.00 |
| Thu 11/18 | | 400p | | | 1231a | | | | | | 8.00 | 32.00 |
| Fri 11/19 ABSENT | | | | | | | | | | | (8.00) | |
| Sat 11/20 ABSENT | | | | | | | | | | | (8.00) | |
| Sun 11/21 ABSENT | | | | | | | | | | | (8.00) | |

Acct:300

REG: 32.00

BAGBY,DANNY R 0001003070 300

| | ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 11/15 ABSENT | | | | | | | | | | | (8.00) |
| Tue 11/16 ABSENT | | | | | | | | | | | (8.00) |
| Wed 11/17 ABSENT | | | | | | | | | | | (8.00) |
| Thu 11/18 ABSENT | | | | | | | | | | | (8.00) |
| Fri 11/19 ABSENT | | | | | | | | | | | (8.00) |
| Sat 11/20 ABSENT | | | | | | | | | | | (8.00) |
| Sun 11/21 ABSENT | | | | | | | | | | | (8.00) |

BAUM,CHAD 1094603 300

| | ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 11/15 | | 1230a VAC | | | | | | | | | 8.00 | |
| Tue 11/16 | | 1216a | | | 1030a*L | | | | | | 10.00 | 10.00 |
| Wed 11/17 | | 1216a | | | 830a | | | | | | 8.00 | 18.00 |
| Thu 11/18 | | 1216a | | | 1030a*L | | | | | | 10.00 | 28.00 |
| Fri 11/19 | | 1220a | | | 830a | | | | | | 8.00 | 36.00 |
| Sat 11/20 ABSENT | | | | | | | | | | | (8.00) | |
| Sun 11/21 ABSENT | | | | | | | | | | | (8.00) | |
| Add Hours | 10 | 11/15 | 1230a | VAC (Excused) | | | | [Home] | 8.00 | | | |

Acct:300

REG: 32.00 OT: 4.00 VAC: 8.00

BAUMGARTNER,CATHERINE 0001094596 300

| | ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 11/15 | | 1230a VAC | | | | | | | | | 8.00 | |
| Tue 11/16 | | 1206a | | | 1032a*L | | | | | | 10.00 | 10.00 |
| Wed 11/17 | | 1208a | | | 1031a*L | | | | | | 10.00 | 20.00 |
| Thu 11/18 | | 1230a | | | 1034a*L | | | | | | 10.00 | 30.00 |
| Fri 11/19 | | 1205a | | | 832a | | | | | | 8.00 | 38.00 |
| Sat 11/20 ABSENT | | | | | | | | | | | (8.00) | |
| Sun 11/21 ABSENT | | | | | | | | | | | (8.00) | |
| Add Hours | 10 | 11/15 | 1230a | VAC (Excused) | | | | [Home] | 8.00 | | | |
| Add Punch | 10 | 11/18 | 1230a | | | | | | | | | |

Acct:300

REG: 32.00 OT: 6.00 VAC: 8.00

BEIER,RAYMOND 1094642 300

| | ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 11/15 | | 401p | | | 1230a | | | | | | 8.00 | 8.00 |
| Tue 11/16 | | 228p*E | | | 1232a | | | | | | 10.00 | 18.00 |
| Wed 11/17 | | 408p | | | 1235a | | | | | | 8.00 | 26.00 |
| Thu 11/18 | | 217p*E | | | 1231a | | | | | | 10.00 | 36.00 |
| Fri 11/19 | | 428p | | | 1230a | | | | | | 8.00 | 44.00 |
| Sat 11/20 ABSENT | | | | | | | | | | | (8.00) | |
| Sun 11/21 ABSENT | | | | | | | | | | | (8.00) | |

Acct:300

REG: 40.00 OT: 4.00

BOLLINGER,JAMES 1094627 300

...il Report
...pay period
...ed accounts, all pay rules, all Timeclock groups

Page
11/29/2010

```
..emove Punch  10  11/23 1214a
 Add Punch     10  11/23 1224a
 Add Punch     10  11/24 1224a
 Add OTHol     998 11/25 1200a 8.00
 Add OTHol     998 11/26 1200a 8.00

 Acct:300
                REG:   24.00     OT:    5.00     HOL:   16.00


ARROYO, LUZMARIA                 094664    300
            ID IN  DEP ACTIVITY    OUT   ID IN  DEP ACTIVITY    OUT    TOTALS
Mon 11/22   429p                  1231a                                 8.00    8.00
Tue 11/23   432p*L                1231a                                 7.75   15.75
Wed 11/24   422p                  1231a                                 8.00   23.75
Thu 11/25 1200a HOL                                                     8.00
Fri 11/26 1200a HOL                                                     8.00
Sat 11/27   721a                  1234p                                 5.00   28.75
Sun 11/28 ABSENT                                                       (8.00)
 Add OTHol     998 11/25 1200a 8.00
 Add OTHol     998 11/26 1200a 8.00

 Acct:300
                REG:   23.75     OT:    5.00     HOL:   16.00


BAGBY,DANNY R                    0001003070 300
            ID IN  DEP ACTIVITY    OUT   ID IN  DEP ACTIVITY    OUT    TOTALS
Mon 11/22 ABSENT                                                       (8.00)
Tue 11/23 ABSENT                                                       (8.00)
Wed 11/24 ABSENT                                                       (8.00)
Thu 11/25 1200a HOL                                                     8.00
Fri 11/26 1200a HOL                                                     8.00
Sat 11/27 ABSENT                                                       (8.00)
Sun 11/28 ABSENT                                                       (8.00)
 Add OTHol     998 11/25 1200a 8.00
 Add OTHol     998 11/26 1200a 8.00

 Acct:300
                HOL:   16.00


BAUM,CHAD                        1094603    300
            ID IN  DEP ACTIVITY    OUT   ID IN  DEP ACTIVITY    OUT    TOTALS
Mon 11/22 1220a                    831a                                 8.00    8.00
Tue 11/23 1219a                   1031a*L                              10.00   18.00
Wed 11/24 1218a                   1030a*L                              10.00   28.00
Thu 11/25 1200a HOL                                                     8.00
Fri 11/26 1200a HOL                                                     8.00
Sat 11/27 ABSENT                                                       (8.00)
Sun 11/28 ABSENT                                                       (8.00)
 Add OTHol     998 11/25 1200a 8.00
 Add OTHol     998 11/26 1200a 8.00

 Acct:300
                REG:   24.00     OT:    4.00     HOL:   16.00


BAUMGARTNER,CATHERINE            0001094596 300
            ID IN  DEP ACTIVITY    OUT   ID IN  DEP ACTIVITY    OUT    TOTALS
Mon 11/22 1200a VAC                                                    24.00
Tue 11/23 ABSENT                                                       (8.00)
Wed 11/24 ABSENT                                                       (8.00)
Thu 11/25 1200a HOL                                                     8.00
Fri 11/26 1200a HOL                                                     8.00
Sat 11/27 ABSENT                                                       (8.00)
Sun 11/28 ABSENT                                                       (8.00)
 Add Hours     10  11/22 1200a VAC (Excused)       (Home) 24.00
 Add OTHol     998 11/25 1200a 8.00
 Add OTHol     998 11/26 1200a 8.00
```

Punch Detail Report
Previous pay period
Selected accounts, all pay rules, all Timeclock groups

Page
12/06/2010

REG: 40.00

SOMERSETT, MAUREEN 0001094592 100

| | ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 11/29 | | ABSENT | | | | | | | | | (8.00) | |
| Tue 11/30 | | ABSENT | | | | | | | | | (8.00) | |
| Wed 12/01 | | ABSENT | | | | | | | | | (8.00) | |
| Thu 12/02 | | ABSENT | | | | | | | | | (8.00) | |
| Fri 12/03 | | ABSENT | | | | | | | | | (8.00) | |
| Sat 12/04 | | ABSENT | | | | | | | | | (8.00) | |
| Sun 12/05 | | ABSENT | | | | | | | | | (8.00) | |

ACCIDENTALE, BRIAN 1094619 300

| | ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 11/29 | | 403p | | | 1231a | | | | | | 8.00 | 8.00 |
| Tue 11/30 | | 407p | | | 1232a | | | | | | 8.00 | 16.00 |
| Wed 12/01 | | 402p | | | 1230a | | | | | | 8.00 | 24.00 |
| Thu 12/02 | | 403p | | | 1234a | | | | | | 8.00 | 32.00 |
| Fri 12/03 | | 406p | | | 1230a | | | | | | 8.00 | 40.00 |
| Sat 12/04 | | ABSENT | | | | | | | | | (8.00) | |
| Sun 12/05 | | ABSENT | | | | | | | | | (8.00) | |

Acct:300
REG: 40.00

ADAMS, ERIK 1094630 300

| | ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 11/29 | | 1225a | | | 830a | | | | | | 8.00 | 8.00 |
| Tue 11/30 | | 1225a | | | 830a | | | | | | 8.00 | 16.00 |
| Wed 12/01 | | 1225a | | | 831a | | | | | | 8.00 | 24.00 |
| Thu 12/02 | | 1218a | | | 830a | | | | | | 8.00 | 32.00 |
| Fri 12/03 | | 1218a | | | 830a | | | | | | 8.00 | 40.00 |
| Sat 12/04 | | ABSENT | | | | | | | | | (8.00) | |
| Sun 12/05 | | ABSENT | | | | | | | | | (8.00) | |

Add Punch 10 11/29 1225a
Remove Punch 10 11/30 1215a
Add Punch 10 11/30 1225a
Remove Punch 10 12/01 1215a
Add Punch 10 12/01 1225a

Acct:300
REG: 40.00

ADAMS, TRACEY 1094628 300

| | ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 11/29 | | 1222a | | VAC | | | | | | | 16.00 | |
| Tue 11/30 | | ABSENT | | | | | | | | | (8.00) | |
| Wed 12/01 | | 1225a | | | 831a | | | | | | 8.00 | 8.00 |
| Thu 12/02 | | 1222a | | | 832a | | | | | | 8.00 | 16.00 |
| Fri 12/03 | | 1226a | | | 832a | | | | | | 8.00 | 24.00 |
| Sat 12/04 | | ABSENT | | | | | | | | | (8.00) | |
| Sun 12/05 | | ABSENT | | | | | | | | | (8.00) | |

Add Hours 10 11/29 1222a VAC (Excused) [Home] 16.00
Add Punch 10 12/01 1225a
Remove Punch 10 12/02 1212a
Add Punch 10 12/02 1222a

Acct:300
REG: 24.00 [redacted]

ARROYO, LUZMARIA 094664 300

| | ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 11/29 | | 423p | | | 1232a | | | | | | 8.00 | 8.00 |
| Tue 11/30 | | 419p | | | 1230a | | | | | | 8.00 | 16.00 |
| Wed 12/01 | | 426p | | | 1231a | | | | | | 8.00 | 24.00 |
| Thu 12/02 | | 423p | | | 1231a | | | | | | 8.00 | 32.00 |

...ort
...eriod
...counts, all pay rules, all Timeclock groups

Page
12/13/2010

...12 ABSENT (8.00)
...ove Punch 10 12/10 1212a
...dd Punch 10 12/10 1222a
Add Punch 1 12/11 1230a

Acct:300

REG: 40.00 OT: [illegible]

ARROYO, LUZMARIA 094664 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 12/06 | 425p | VAC | | | | | 40.00 | |
| Tue 12/07 ABSENT | | | | | | | (8.00) | |
| Wed 12/08 ABSENT | | | | | | | (8.00) | |
| Thu 12/09 ABSENT | | | | | | | (8.00) | |
| Fri 12/10 ABSENT | | | | | | | (8.00) | |
| Sat 12/11 ABSENT | | | | | | | (8.00) | |
| Sun 12/12 ABSENT | | | | | | | (8.00) | |

Add Hours 4 12/06 425p VAC (Excused) [Home] 40.00

Acct:300

VAC: 40.00

BAGBY, DANNY R 0001003070 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 12/06 ABSENT | | | | | | | (8.00) | |
| Tue 12/07 ABSENT | | | | | | | (8.00) | |
| Wed 12/08 ABSENT | | | | | | | (8.00) | |
| Thu 12/09 ABSENT | | | | | | | (8.00) | |
| Fri 12/10 ABSENT | | | | | | | (8.00) | |
| Sat 12/11 ABSENT | | | | | | | (8.00) | |
| Sun 12/12 ABSENT | | | | | | | (8.00) | |

BAUM, CHAD 1094603 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 12/06 | 1220a | VAC | | | | | 8.00 | |
| Tue 12/07 | 1217a | | 1030a*L | | | | 10.00 | 10.00 |
| Wed 12/08 | 1219a | | 1036a*L | | | | 10.00 | 20.00 |
| Thu 12/09 | 1230a | | 832a | | | | 8.00 | 28.00 |
| Fri 12/10 | 1229a | | 832a | | | | 8.00 | 36.00 |
| Sat 12/11 | 1217a | | 830a | | | | 8.00 | 44.00 |
| Sun 12/12 ABSENT | | | | | | | (8.00) | |

Add Hours 10 12/06 1220a VAC (Excused) [Home] 8.00
Add Punch 10 12/09 1230a

Acct:300

REG: 32.00 OT: 12.00 VAC: 8.00

BAUMGARTNER, CATHERINE 0001094596 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 12/06 | 1209a | | 832a | | | | 8.00 | 8.00 |
| Tue 12/07 | 1209a | | 1032a*L | | | | 10.00 | 18.00 |
| Wed 12/08 | 1206a | | 1034a*L | | | | 10.00 | 28.00 |
| Thu 12/09 | 1208a | | 1031a*L | | | | 10.00 | 38.00 |
| Fri 12/10 | 1207a | | 831a | | | | 8.00 | 46.00 |
| Sat 12/11 | 1207a | | 834a | | | | 8.00 | 54.00 |
| Sun 12/12 ABSENT | | | | | | | (8.00) | |

Acct:300

REG: 40.00 OT: 14.00

BEIER, RAYMOND 1094642 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 12/06 | 425p | | 1233a | | | | 8.00 | 8.00 |
| Tue 12/07 | 405p | | 1230a | | | | 8.00 | 16.00 |
| Wed 12/08 | 407p | | 1230a | | | | 8.00 | 24.00 |

...eport
...y period
...accounts, all pay rules, all Timeclock groups

Page
12/20/2010

...:300 REG: 40.00 OT: [illegible]

ARROYO, LUZMARIA — 094664 — 300

| | ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 12/13 | | 413p | | | 1232a | | | | | | 8.00 | 8.00 |
| Tue 12/14 | | 406p | | | 1231a | | | | | | 8.00 | 16.00 |
| Wed 12/15 | | 417p | | | 1231a | | | | | | 8.00 | 24.00 |
| Thu 12/16 | | ABSENT | | | | | | | | | (8.00) | |
| Fri 12/17 | | ABSENT | | | | | | | | | (8.00) | |
| Sat 12/18 | | ABSENT | | | | | | | | | (8.00) | |
| Sun 12/19 | | ABSENT | | | | | | | | | (8.00) | |

Acct:300 REG: 24.00

BAGBY, DANNY R — 0002003070 — 300

| | ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 12/13 | | ABSENT | | | | | | | | | (8.00) |
| Tue 12/14 | | ABSENT | | | | | | | | | (8.00) |
| Wed 12/15 | | ABSENT | | | | | | | | | (8.00) |
| Thu 12/16 | | ABSENT | | | | | | | | | (8.00) |
| Fri 12/17 | | ABSENT | | | | | | | | | (8.00) |
| Sat 12/18 | | ABSENT | | | | | | | | | (8.00) |
| Sun 12/19 | | ABSENT | | | | | | | | | (8.00) |

BAUM, CHAD — 1094603 — 300

| | ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 12/13 | | 1230a | | VAC | | | | | | | 8.00 | |
| Tue 12/14 | | 1214a | | | 1031a*L | | | | | | 10.00 | 10.00 |
| Wed 12/15 | | 254a*L | | | 1035a*L | | | | | | 7.50 | 17.50 |
| Thu 12/16 | | 1217a | | | 830a | | | | | | 8.00 | 25.50 |
| Fri 12/17 | | 1230a | | | 830a | | | | | | 8.00 | 33.50 |
| Sat 12/18 | | 1212a | | | 835a | | | | | | 8.00 | 41.50 |
| Sun 12/19 | | ABSENT | | | | | | | | | (8.00) | |

Add Hours 10 12/13 1230a VAC (Excused) [Home] 8.00
Add Punch 10 12/16 830a
Add Punch 10 12/17 1230a

Acct:300 REG: 31.50 OT: 10.00 VAC: 8.00

BAUMGARTNER, CATHERINE — 0001094595 — 300

| | ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 12/13 | | 1213a | | | 833a | | | | | | 8.00 | 8.00 |
| Tue 12/14 | | 1230a | | | 1037a*L | | | | | | 10.00 | 18.00 |
| Wed 12/15 | | 1208a | | | 1035a*L | | | | | | 10.00 | 28.00 |
| Thu 12/16 | | 1207a | | | 1035a*L | | | | | | 10.00 | 38.00 |
| Fri 12/17 | | 1221a | | | 832a | | | | | | 8.00 | 46.00 |
| Sat 12/18 | | 1211a | | | 830a | | | | | | 8.00 | 54.00 |
| Sun 12/19 | | ABSENT | | | | | | | | | (8.00) | |

Add Punch 10 12/14 1230a

Acct:300 REG: 40.00 OT: [illegible]

BEIER, RAYMOND — 1094642 — 300

| | ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 12/13 | | 425p | | VAC | | | | | | | 8.00 | |
| Tue 12/14 | | 425p | | VAC | | | | | | | 8.00 | |
| Wed 12/15 | | 425p | | | 1230a | | | | | | 8.00 | 8.00 |
| Thu 12/16 | | 403p | | | 1231a | | | | | | 8.00 | 16.00 |
| Fri 12/17 | | 403p | | | 1230a | | | | | | 8.00 | 24.00 |
| Sat 12/18 | | ABSENT | | | | | | | | | (8.00) | |
| Sun 12/19 | | ABSENT | | | | | | | | | (8.00) | |

Add Hours 4 12/13 425p VAC (Excused) [Home] 8.00

...etail Report
...ds pay period
...cted accounts, all pay rules, all Timeclock groups

Page
12/27/2010

ACCIDENTALE, BRIAN 1094619 300

| | ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 12/20 | | 401p | | | 1234a | | | | | | 8.00 | 8.00 |
| Tue 12/21 | | 407p | | | 1238a | | | | | | 8.00 | 16.00 |
| Wed 12/22 | | 400p | | | 1230a | | | | | | 8.00 | 24.00 |
| Thu 12/23 | | 406p | | | 1236a | | | | | | 8.00 | 32.00 |
| Fri 12/24 | | 1200a HOL | | | | | | | | | 8.00 | |
| Sat 12/25 | | ABSENT | | | | | | | | | (8.00) | |
| Sun 12/26 | | ABSENT | | | | | | | | | (8.00) | |

Add OTHol 998 12/24 1200a 8.00

Acct:300
REG: 32.00 [redacted]

ADAMS, ERIK 1094630 300

| | ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 12/20 | | 1225a | | | 830a | | | | | | 8.00 | 8.00 |
| Tue 12/21 | | 1230a | | | 1030a | | | | | | 10.00 | 18.00 |
| Wed 12/22 | | 1227a | | | 830a | | | | | | 8.00 | 26.00 |
| Thu 12/23 | | 1230a | | | 831a | | | | | | 8.00 | 34.00 |
| Fri 12/24 | | 1200a HOL | | | | | | | | | 8.00 | |
| Sat 12/25 | | ABSENT | | | | | | | | | (8.00) | |
| Sun 12/26 | | ABSENT | | | | | | | | | (8.00) | |

Add Punch 10 12/20 1225a
Remove Punch 10 12/20 1026p
Add Punch 10 12/21 1230a
Remove Punch 10 12/21 830a
Add Punch 10 12/21 1030a
Remove Punch 10 12/22 1217a
Add Punch 10 12/22 1227a
Remove Punch 10 12/22 1015p
Add Punch 10 12/23 1230a
Add OTHol 998 12/24 1200a 8.00

Acct:300
REG: 32.00 [redacted] [redacted]

ADAMS, TRACEY 1094628 300

| | ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 12/20 | | 1224a | | | 830a | | | | | | 8.00 | 8.00 |
| Tue 12/21 | | 1223a | | | 830a | | | | | | 8.00 | 16.00 |
| Wed 12/22 | | 1221a | | | 830a | | | | | | 8.00 | 24.00 |
| Thu 12/23 | | 1227a | | | 831a | | | | | | 8.00 | 32.00 |
| Fri 12/24 | | 1200a HOL | | | | | | | | | 8.00 | |
| Sat 12/25 | | ABSENT | | | | | | | | | (8.00) | |
| Sun 12/26 | | ABSENT | | | | | | | | | (8.00) | |

Remove Punch 10 12/22 833a
Remove Punch 10 12/23 1217a
Add Punch 10 12/23 1227a
Add OTHol 998 12/24 1200a 8.00

Acct:300
REG: 32.00 [redacted]

ARROYO, LUZMARIA 094664 300

| | ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 12/20 | | 425p | | | 1232a | | | | | | 8.00 | 8.00 |
| Tue 12/21 | | 423p | | | 1232a | | | | | | 8.00 | 16.00 |
| Wed 12/22 | | 419p | | | 1231a | | | | | | 8.00 | 24.00 |
| Thu 12/23 | | ABSENT | | | | | | | | | (8.00) | |
| Fri 12/24 | | 1200a HOL | | | | | | | | | 8.00 | |
| Sat 12/25 | | ABSENT | | | | | | | | | (8.00) | |
| Sun 12/26 | | ABSENT | | | | | | | | | (8.00) | |

Add OTHol 998 12/24 1200a 8.00

Acct:300

-etail Report
-ous pay period
-ected accounts, all pay rules, all Timeclock groups
REG: [redacted] HOL: [redacted]

BAGBY, DANNY R 0001003070 300
ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS
Mon 12/20 ABSENT (8.00)
Tue 12/21 ABSENT (8.00)
Wed 12/22 ABSENT (8.00)
Thu 12/23 ABSENT (8.00)
Fri 12/24 1200a HOL 8.00
Sat 12/25 ABSENT (8.00)
Sun 12/26 ABSENT (8.00)
Add OTHol 998 12/24 1200a 8.00

Acct:300 HOL: 8.00

BAUM, CHAD 1094603 300
ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS
Mon 12/20 1220a 832a 8.00 8.00
Mon 12/20 1014p*E 832a 10.00 18.00
Wed 12/22 1222a 833a 8.00 26.00
Thu 12/23 1230a 831a 8.00 34.00
Fri 12/24 1200a HOL 8.00
Sat 12/25 ABSENT (8.00)
Sun 12/26 ABSENT (8.00)
Add Punch 10 12/23 1230a
Add OTHol 998 12/24 1200a 8.00

Acct:300 REG: 32.00 [redacted] [redacted]

BAUMGARTNER, CATHERINE 0001094596 300
ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS
Mon 12/20 1211a 1031a*L 10.00 10.00
Tue 12/21 1203a 1031a*L 10.00 20.00
Wed 12/22 1204a 1036a*L 10.00 30.00
Thu 12/23 1205a 1031a*L 10.00 40.00
Fri 12/24 1200a HOL 8.00
Sat 12/25 ABSENT (8.00)
Sun 12/26 ABSENT (8.00)
Add OTHol 998 12/24 1200a 8.00

Acct:300 REG: 32.00 [redacted] [redacted]

BEIER, RAYMOND 1094642 300
ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS
Mon 12/20 401p 1231a 8.00 8.00
Tue 12/21 425p 1230a 8.00 16.00
Wed 12/22 401p 1231a 8.00 24.00
Thu 12/23 410p 1231a 8.00 32.00
Fri 12/24 1200a HOL 8.00
Sat 12/25 ABSENT (8.00)
Sun 12/26 ABSENT (8.00)
Remove Punch 4 12/21 358p
Add Punch 4 12/21 425p
Add OTHol 998 12/24 1200a 8.00

Acct:300 REG: 32.00 [redacted]

BOLLINGER, JAMES 1094627 300
ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS
Mon 12/20 221p*E 1230a 10.00 10.00

All Report
pay period
all accounts, all pay rules, all Timeclock groups

Page
01/03/2011

| ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/27 | 411p | | | 1234a | | | | | | 8.00 | 8.00 |
| 12/28 | 404p | | | 1233a | | | | | | 8.00 | 16.00 |
| 12/29 | 403p | | | 1234a | | | | | | 8.00 | 24.00 |
| 12/30 | 407p | | | 1230a | | | | | | 8.00 | 32.00 |
| Fri 12/31 | 1200a | HOL | | | | | | | | 8.00 | |
| Sat 01/01 | ABSENT | | | | | | | | | (8.00) | |
| Sun 01/02 | ABSENT | | | | | | | | | (8.00) | |

Add OTHol 998 12/31 1200a 8.00

Acct:300 REG: 32.00 HOL: 8.00

ADAMS, ERIK 1094630 300

| ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 12/27 | 1225a | | | 833a | | | | | | 8.00 | 8.00 |
| Tue 12/28 | 1225a | | | 1030a | | | | | | 10.00 | 18.00 |
| Wed 12/29 | 1225a | | | 830a | | | | | | 8.00 | 26.00 |
| Thu 12/30 | 1225a | | | 1030a | | | | | | 10.00 | 36.00 |
| Fri 12/31 | 1200a | HOL | | | | | | | | 8.00 | |
| Sat 01/01 | ABSENT | | | | | | | | | (8.00) | |
| Sun 01/02 | ABSENT | | | | | | | | | (8.00) | |

Add Punch 7 12/27 1225a
Remove Punch 7 12/27 1012p
Add Punch 4 12/28 1225a
Remove Punch 4 12/28 830a
Add Punch 4 12/28 1030a
Remove Punch 7 12/29 1217a
Add Punch 4 12/29 1225a
Change Punch 4 12/29 830a
12/29 830a
Remove Punch 7 12/29 1016p
Add Punch 4 12/30 1225a
Remove Punch 4 12/30 830a
Add Punch 4 12/30 1030a
Add OTHol 998 12/31 1200a 8.00

Acct:300 REG: 32.00 [redacted] HOL: 8.00

ADAMS, TRACEY 1094628 300

| ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 12/27 | 1225a | | | 832a | | | | | | 8.00 | 8.00 |
| Tue 12/28 | 1221a | | | 830a | | | | | | 8.00 | 16.00 |
| Wed 12/29 | 1223a | | | 830a | | | | | | 8.00 | 24.00 |
| Thu 12/30 | 1222a | | | 830a | | | | | | 8.00 | 32.00 |
| Fri 12/31 | 1200a | HOL | | | | | | | | 8.00 | |
| Sat 01/01 | ABSENT | | | | | | | | | (8.00) | |
| Sun 01/02 | ABSENT | | | | | | | | | (8.00) | |

Add Punch 7 12/27 1225a
Add OTHol 998 12/31 1200a 8.00

Acct:300 REG: 32.00 HOL: 8.00

ARROYO, LUZMARIA 094664 300

| ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS |
|---|---|---|---|---|---|---|---|---|---|---|
| Mon 12/27 | ABSENT | | | | | | | | | (8.00) |
| Tue 12/28 | ABSENT | | | | | | | | | (8.00) |
| Wed 12/29 | ABSENT | | | | | | | | | (8.00) |
| Thu 12/30 | ABSENT | | | | | | | | | (8.00) |
| Fri 12/31 | 1200a | HOL | | | | | | | | 8.00 |
| Sat 01/01 | ABSENT | | | | | | | | | (8.00) |
| Sun 01/02 | ABSENT | | | | | | | | | (8.00) |

Add OTHol 998 12/31 1200a 8.00

Acct:300 HOL: 8.00

...port Page
...period 01/10/2011
...counts, all pay rules, all Timeclock groups

...TALE, BRIAN 1094619 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| ... 01/03 | 425p VAC | | | | | | 8.00 | |
| ...ue 01/04 | 425p VAC | | | | | | 8.00 | |
| Wed 01/05 | 400p | | 1239a | | | | 8.00 | 8.00 |
| Thu 01/06 | 401p | | 1233a | | | | 8.00 | 16.00 |
| Fri 01/07 | 408p | | 1231a | | | | 8.00 | 24.00 |
| Sat 01/08 ABSENT | | | | | | | (8.00) | |
| Sun 01/09 ABSENT | | | | | | | (8.00) | |

Add Hours 4 01/03 425p VAC (Excused) [Home] 8.00
Add Hours 4 01/04 425p VAC (Excused) [Home] 8.00

Acct:300 REG: 24.00 [redacted]

ADAMS, ERIK 1094630 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 01/03 | 216p*E | | 1230a | | | | 10.00 | 10.00 |
| Tue 01/04 | 219p*E | | 1230a | | | | 10.00 | 20.00 |
| Wed 01/05 | 415p | | 1232a | | | | 8.00 | 28.00 |
| Thu 01/06 | 415p | | 1230a | | | | 8.00 | 36.00 |
| Fri 01/07 | 409p | | 1230a | | | | 8.00 | 44.00 |
| Sat 01/08 ABSENT | | | | | | | (8.00) | |
| Sun 01/09 ABSENT | | | | | | | (8.00) | |

Acct:300 REG: 40.00 [redacted]

ADAMS, TRACEY 1094628 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 01/03 | 425p | | 1233a | | | | 8.00 | 8.00 |
| Tue 01/04 | 425p | | 1234a | | | | 8.00 | 16.00 |
| Wed 01/05 | 425p | | 1232a | | | | 8.00 | 24.00 |
| Thu 01/06 | 425p | | 1234a | | | | 8.00 | 32.00 |
| Fri 01/07 | 425p VAC | | | | | | 8.00 | |
| Sat 01/08 ABSENT | | | | | | | (8.00) | |
| Sun 01/09 ABSENT | | | | | | | (8.00) | |

Add Punch 4 01/03 425p
Remove Punch 4 01/05 415p
Add Punch 4 01/05 425p
Remove Punch 4 01/06 412p
Remove Punch 4 01/06 413p
Add Punch 4 01/06 425p
Add Hours 4 01/07 425p VAC (Excused) [Home] 8.00

Acct:300 REG: 32.00 [redacted]

ARROYO, LUZMARIA 094664 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS |
|---|---|---|---|---|---|---|---|
| Mon 01/03 | 425p VAC | | | | | | 40.00 |
| Tue 01/04 ABSENT | | | | | | | (8.00) |
| Wed 01/05 ABSENT | | | | | | | (8.00) |
| Thu 01/06 ABSENT | | | | | | | (8.00) |
| Fri 01/07 ABSENT | | | | | | | (8.00) |
| Sat 01/08 ABSENT | | | | | | | (8.00) |
| Sun 01/09 ABSENT | | | | | | | (8.00) |

Add Hours 4 01/03 425p VAC (Excused) [Home] 40.00

Acct:300 [redacted]

BEIER, RAYMOND 1094542 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 01/03 | 404p | | 1230a | | | | 8.00 | 8.00 |
| Tue 01/04 | 403p | | 1232a | | | | 8.00 | 16.00 |
| Wed 01/05 | 205p*E | | 1234a | | | | 10.00 | 26.00 |

```
                                                                                    Page
Report                                                                         01/17/2011
period
ccounts, all pay rules, all Timeclock groups

ETT,MAUREEN                 0001094592 100
      ID IN   DEP ACTIVITY     OUT    ID IN   DEP ACTIVITY      OUT     TOTALS
   01/10 ABSENT                                                         (8.00)
  e 01/11 ABSENT                                                        (8.00)
 ed 01/12 ABSENT                                                        (8.00)
Thu 01/13 ABSENT                                                        (8.00)
Fri 01/14 ABSENT                                                        (8.00)
Sat 01/15 ABSENT                                                        (8.00)
Sun 01/16 ABSENT                                                        (8.00)


ACCIDENTALE,BRIAN           1054619    300
      ID IN   DEP ACTIVITY     OUT    ID IN   DEP ACTIVITY      OUT     TOTALS
Mon 01/10  406p               1237a                                      8.00    8.00
Tue 01/11  400p               1234a                                      8.00   16.00
Wed 01/12  405p               1237a                                      8.00   24.00
Thu 01/13  409p               1234a                                      8.00   32.00
Fri 01/14  425p VAC                                                      8.00
Sat 01/15 ABSENT                                                        (8.00)
Sun 01/16 ABSENT                                                        (8.00)
 Add Hours      4    01/14  425p VAC (Excused)        (Home) 8.00

 Acct:300
                  REG:      32.00      [redacted]


ADAMS,ERIK                  1094630    300
      ID IN   DEP ACTIVITY     OUT    ID IN   DEP ACTIVITY      OUT     TOTALS
Mon 01/10  421p               1230a                                      8.00    8.00
Tue 01/11  221p*E             1230a                                     10.00   18.00
Wed 01/12  417p               1233a                                      8.00   26.00
Thu 01/13  221p*E             1230a                                     10.00   36.00
Fri 01/14  415p               1230a                                      8.00   44.00
Sat 01/15  723a               1230p                                      5.00   49.00
Sun 01/16 ABSENT                                                        (8.00)

 Acct:300
                  REG:      40.00      [redacted]


ADAMS,TRACEY                1094628    300
      ID IN   DEP ACTIVITY     OUT    ID IN   DEP ACTIVITY      OUT     TOTALS
Mon 01/10  425p               1234a                                      8.00    8.00
Tue 01/11  425p               1231a                                      8.00   16.00
Wed 01/12  425p VAC                                                      8.00
Thu 01/13  422p               1232a                                      8.00   24.00
Fri 01/14  425p               1232a                                      8.00   32.00
Sat 01/15 ABSENT                                                        (8.00)
Sun 01/16 ABSENT                                                        (8.00)
 Add Punch      4    01/10  425p
 Remove Punch   4    01/11  414p
 Remove Punch   4    01/11  415p
 Add Punch      4    01/11  425p
 Add Hours      4    01/12  425p VAC (Excused)        (Home) 8.00
 Remove Punch   4    01/14  413p
 Add Punch      4    01/14  425p

 Acct:300
                  REG:      32.00      [redacted]


ARROYO, LUZMARIA            094664     300
      ID IN   DEP ACTIVITY     OUT    ID IN   DEP ACTIVITY      OUT     TOTALS
Mon 01/10 ABSENT                                                        (8.00)
Tue 01/11 ABSENT                                                        (8.00)
Wed 01/12 ABSENT                                                        (8.00)
Thu 01/13 ABSENT                                                        (8.00)
Fri 01/14 ABSENT                                                        (8.00)
Sat 01/15 ABSENT                                                        (8.00)
Sun 01/16 ABSENT                                                        (8.00)
```

Page
01/24/2011

Detail Report
...ous pay period
...ected accounts, all pay rules, all timeclock groups

ADD SAT 5

| | | | | |
|---|---|---|---|---|
| Sat 01/22 ABSENT | | | | (8.00) |
| Sun 01/23 ABSENT | | | | (8.00) |
| Add Hours 4 | 01/17 425p VAC (Excused) | [Home] 8.00 | | |
| Add Hours 4 | 01/18 425p VAC (Excused) | [Home] 8.00 | | |
| Remove Punch 4 | 01/22 1230p | | | |

Acct:300 REG: 24.00 [redacted].00 [redacted]00

ADAMS, TRACEY 1094628 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 01/17 404p | | 1231a | | | | 8.00 | 8.00 |
| Tue 01/18 421p | | 1232a | | | | 8.00 | 16.00 |
| Wed 01/19 423p | | 1236a | | | | 8.00 | 24.00 |
| Thu 01/20 405p | | 1232a | | | | 8.00 | 32.00 |
| Fri 01/21 425p | | 1232a | | | | 8.00 | 40.00 |
| Sat 01/22 ABSENT | | | | | | (8.00) | |
| Sun 01/23 ABSENT | | | | | | (8.00) | |
| Add Punch 4 01/21 425p | | | | | | | |

Acct:300 REG: 40.00

ARROYO, LUZMARIA 094664 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS |
|---|---|---|---|---|---|---|
| Mon 01/17 ABSENT | | | | | | (8.00) |
| Tue 01/18 ABSENT | | | | | | (8.00) |
| Wed 01/19 ABSENT | | | | | | (8.00) |
| Thu 01/20 ABSENT | | | | | | (8.00) |
| Fri 01/21 ABSENT | | | | | | (8.00) |
| Sat 01/22 ABSENT | | | | | | (8.00) |
| Sun 01/23 ABSENT | | | | | | (8.00) |

BEYER, RAYMOND 1094642 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 01/17 404p | | 1233a | | | | 8.00 | 8.00 |
| Tue 01/18 411p | | 1231a | | | | 8.00 | 16.00 |
| Wed 01/19 218p*E | | 1234a | | | | 10.00 | 26.00 |
| Thu 01/20 403p | | 1231a | | | | 8.00 | 34.00 |
| Fri 01/21 408p | | 1231a | | | | 8.00 | 42.00 |
| Sat 01/22 ABSENT | | | | | | (8.00) | |
| Sun 01/23 ABSENT | | | | | | (8.00) | |

Acct:300 REG: 40.00 OT: [redacted]2.00

BOLLINGER, JAMES 1094627 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 01/17 201p*E | | 1233a | | | | 10.00 | 10.00 |
| Tue 01/18 206p*E | | 1230a | | | | 10.00 | 20.00 |
| Wed 01/19 212p*E | | 1234a | | | | 10.00 | 30.00 |
| Thu 01/20 213p*E | | 1231a | | | | 10.00 | 40.00 |
| Fri 01/21 400p | | 1230a | | | | 8.00 | 48.00 |
| Sat 01/22 722a | | 1230p | | | | 5.00 | 53.00 |
| Sun 01/23 ABSENT | | | | | | (8.00) | |
| Remove Punch 4 01/17 205p | | | | | | | |

Acct:300 REG: 40.00 [redacted]13.00

BOUIE, MARSHEELA 0001094653 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 01/17 425p VAC | | | | | | 8.00 | |
| Tue 01/18 219p*E | | 1231a | | | | 10.00 | 10.00 |
| Wed 01/19 218p*E | | 1235a | | | | 10.00 | 20.00 |

Page
01/31/2011

...port
...period
...counts, all pay rules, all Timeclock groups

| | | | | |
|---|---|---|---|---|
| ...27 | 814a | 430p | 8.00 | 32.00 |
| ...1/28 | 810a | 430p | 8.00 | 40.00 |
| ... 01/29 ABSENT | | | (8.00) | |
| ...n 01/30 ABSENT | | | (8.00) | |

Acct:100 REG: 40.00

SOMERSETT, MAUREEN 0001094592 100

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS |
|---|---|---|---|---|---|---|---|
| Mon 01/24 ABSENT | | | | | | | (8.00) |
| Tue 01/25 ABSENT | | | | | | | (8.00) |
| Wed 01/26 ABSENT | | | | | | | (8.00) |
| Thu 01/27 ABSENT | | | | | | | (8.00) |
| Fri 01/28 ABSENT | | | | | | | (8.00) |
| Sat 01/29 ABSENT | | | | | | | (8.00) |
| Sun 01/30 ABSENT | | | | | | | (8.00) |

ACCIDENTALE, BRYAN 1094619 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 01/24 | 425p | VAC | | | | | 8.00 | |
| Tue 01/25 | 425p | VAC | | | | | 8.00 | |
| Wed 01/26 | 405p | | 1231a | | | | 8.00 | 8.00 |
| Thu 01/27 | 402p | | 1233a | | | | 8.00 | 16.00 |
| Fri 01/28 | 404p | | 1232a | | | | 8.00 | 24.00 |
| Sat 01/29 ABSENT | | | | | | | (8.00) | |
| Sun 01/30 ABSENT | | | | | | | (8.00) | |

Add Hours 4 01/24 425p VAC (Excused) [Home] 8.00
Add Hours 4 01/25 425p VAC (Excused) [Home] 8.00

Acct:300 REG: 24.00 [illegible]

ADAMS, ERIK 1094630 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 01/24 | 418p | | 1230a | | | | 8.00 | 8.00 |
| Tue 01/25 | 219p*E | | 1230a | | | | 10.00 | 18.00 |
| Wed 01/26 | 415p | | 1230a | | | | 8.00 | 26.00 |
| Thu 01/27 | 205p*E | | 1231a | | | | 10.00 | 36.00 |
| Fri 01/28 | 419p | | 1230a | | | | 8.00 | 44.00 |
| Sat 01/29 | 725a | | 1230p | | | | 5.00 | 49.00 |
| Sun 01/30 ABSENT | | | | | | | (8.00) | |

Remove Punch 4 01/29 711a
Add Punch 4 01/29 725a

Acct:300 REG: 40.00 [illegible]

ADAMS, TRACEY 1094628 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 01/24 | 402p | | 1234a | | | | 8.00 | 8.00 |
| Tue 01/25 | 422p | | 1232a | | | | 8.00 | 16.00 |
| Wed 01/26 | 409p | | 1235a | | | | 8.00 | 24.00 |
| Thu 01/27 | 400p | | 1234a | | | | 8.00 | 32.00 |
| Fri 01/28 | 428p | | 1230a | | | | 8.00 | 40.00 |
| Sat 01/29 | 725a | | 1231p | | | | 5.00 | 45.00 |
| Sun 01/30 ABSENT | | | | | | | (8.00) | |

Add Punch 4 01/29 1230a
Remove Punch 4 01/29 716a
Add Punch 4 01/29 725a

Acct:300 REG: 40.00 [illegible]

ARROYO, LUZMARIA 094664 300

port
period
counts, all pay rules, all timeclock groups

Page
01/31/2011

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS |
|---|---|---|---|---|---|---|
| /24 ABSENT | | | | | | (8.00) |
| 01/25 ABSENT | | | | | | (8.00) |
| 01/26 ABSENT | | | | | | (8.00) |
| Thu 01/27 ABSENT | | | | | | (8.00) |
| Fri 01/28 ABSENT | | | | | | (8.00) |
| Sat 01/29 ABSENT | | | | | | (8.00) |
| Sun 01/30 ABSENT | | | | | | (8.00) |

BEYER, RAYMOND 1094642 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 01/24 405p | | 1231a | | | | 8.00 | 8.00 |
| Tue 01/25 407p | | 1231a | | | | 8.00 | 16.00 |
| Wed 01/26 215p*E | | 1230a | | | | 10.00 | 26.00 |
| Thu 01/27 425p | | 1230a | | | | 8.00 | 34.00 |
| Fri 01/28 413p | | 1230a | | | | 8.00 | 42.00 |
| Sat 01/29 ABSENT | | | | | | (8.00) | |
| Sun 01/30 ABSENT | | | | | | (8.00) | |

Remove Punch 4 01/27 355p
Add Punch 4 01/27 425p

Acct:300 REG: 40.00 [redacted]

BOLLINGER, JAMES 1094627 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 01/24 401p | | 1232a | | | | 8.00 | 8.00 |
| Tue 01/25 210p*E | | 1232a | | | | 10.00 | 18.00 |
| Wed 01/26 217p*E | | 1231a | | | | 10.00 | 28.00 |
| Thu 01/27 205p*E | | 1231a | | | | 10.00 | 38.00 |
| Fri 01/28 148p*E | | 1000p*E | | | | 8.00 | 46.00 |
| Sat 01/29 724a | | 331p | | | | 8.00 | 54.00 |
| Sun 01/30 ABSENT | | | | | | (8.00) | |

Acct:300 REG: 40.00 OT: [redacted]

BOUIE, MARSHEELA 0001094658 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 01/24 401p | | 1231a | | | | 8.00 | 8.00 |
| Tue 01/25 416p | | 1232a | | | | 8.00 | 16.00 |
| Wed 01/26 420p | | 1235a | | | | 8.00 | 24.00 |
| Thu 01/27 418p | | 750p*E | | | | 3.25 | 27.25 |
| Fri 01/28 403p | | 1231a | | | | 8.00 | 35.25 |
| Sat 01/29 725a | | 1231p | | | | 5.00 | 40.25 |
| Sun 01/30 ABSENT | | | | | | (8.00) | |

Remove Punch 4 01/29 708a
Add Punch 4 01/29 725a

Acct:300 REG: 35.25 [redacted]

BROWN, REGINALD 1094643 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 01/24 419p | | 1231a | | | | 8.00 | 8.00 |
| Tue 01/25 425p VAC | | | | | | 8.00 | |
| Wed 01/26 425p VAC | | | | | | 8.00 | |
| Thu 01/27 418p | | 1232a | | | | 8.00 | 16.00 |
| Fri 01/28 421p | | 1230a | | | | 8.00 | 24.00 |
| Sat 01/29 ABSENT | | | | | | (8.00) | |
| Sun 01/30 ABSENT | | | | | | (8.00) | |

Add Hours 4 01/25 425p VAC (Excused) [Home] 8.00
Add Hours 4 01/26 425p VAC (Excused) [Home] 8.00

Acct:300 REG: 24.00 [redacted]

...etail Report
...ous pay period
...ated accounts, all pay rules, all timeclock groups

Page
02/07/2011

```
ADAMS,TRACEY                        1094629   300
         ID IN    DEP ACTIVITY          OUT   ID IN   DEP ACTIVITY      OUT      TOTALS
Mon 01/31   425p                       1234a                                      8.00    8.00
Tue 02/01   425p                       1230a                                      8.00   16.00
Wed 02/02   425p REG                                                              8.00
Thu 02/03   207p*E                     1236a                                     10.00   26.00
Fri 02/04   418p                       1231a                                      8.00   34.00
Sat 02/05 ABSENT                                                                 (8.00)
Sun 02/06 ABSENT                                                                 (8.00)
  Add Punch       4    01/31  425p
  Add Punch       4    02/01  425p
  Remove Punch    4    02/01  831p
  Add Punch       4    02/02 1230a
  Add Hours       4    02/02  425p REG (Excused)        [Home] 8.00

  Acct:300
                        REG:      40.00        OT:        2.00


ARROYO, LUZMARIA                    094664    300
         ID IN    DEP ACTIVITY          OUT   ID IN   DEP ACTIVITY      OUT      TOTALS
Mon 01/31 ABSENT                                                                 (8.00)
Tue 02/01 ABSENT                                                                 (8.00)
Wed 02/02 ABSENT                                                                 (8.00)
Thu 02/03 ABSENT                                                                 (8.00)
Fri 02/04 ABSENT                                                                 (8.00)
Sat 02/05 ABSENT                                                                 (8.00)
Sun 02/06 ABSENT                                                                 (8.00)


BEIER, RAYMOND                      1094642   300
         ID IN    DEP ACTIVITY          OUT   ID IN   DEP ACTIVITY      OUT      TOTALS
Mon 01/31   425p                       1230a                                      8.00    8.00
Tue 02/01   425p VAC                                                              4.00
Tue 02/01   825p REG                                                              4.00
Wed 02/02   425p REG                                                              8.00
Thu 02/03   425p                       1232a                                      8.00   16.00
Fri 02/04  .425p                       1231a                                      8.00   24.00
Sat 02/05 ABSENT                                                                 (8.00)
Sun 02/06 ABSENT                                                                 (8.00)
 .Add Punch       4    01/31  425p
  Add Hours       4    02/01  425p VAC (Excused)        [Home] 4.00
  Add Hours       4    02/01  825p REG (Excused)        [Home] 4.00
  Add Hours       4    02/02  425p REG (Excused)        [Home] 8.00
  Add Punch       4    02/03  425p
  Remove Punch    4    02/04  358p
  Add Punch       4    02/04  425p

  Acct:300
                        REG:      36.00        VAC:       4.00


BOLLINGER, JAMES                    1094627   300
         ID IN    DEP ACTIVITY          OUT   ID IN   DEP ACTIVITY      OUT      TOTALS
Mon 01/31   404p                       1231a                                      8.00    8.00
Tue 02/01   202p*E                     1230a                                     10.00   18.00
Wed 02/02   425p REG                                                              8.00
Thu 02/03   205p*E                     1233a                                     10.00   28.00
Fri 02/04  1149a                       1006p                                     10.00   38.00
Sat 02/05   724a                        330p                                      8.00   46.00
Sun 02/06 ABSENT                                                                 (8.00)
  Remove Punch    4    02/01  831p
  Add Punch       4    02/02 1230a
  Add Hours       4    02/02  425p REG (Excused)        [Home] 8.00

  Acct:300
                        REG:      40.00        OT:       14.00
```

Page 0007
02/13/2011 9:52a

...s, all pay rules, all Timeclock groups

REG: 32.00 OT: 4.00

→ 2/11 No Pay *

...AMS,TRACEY 1094628 300

| ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 02/07 | 423p | | | 1232a | | | | | | 8.00 | 8.00 |
| Tue 02/08 | 417p | | | 1235a | | | | | | 8.00 | 16.00 |
| Wed 02/09 | 425p | | | 1232a | | | | | | 8.00 | 24.00 |
| Thu 02/10 | 425p | | VAC | | | | | | | 8.00 | |
| Fri 02/11 | 425p | | VAC | | | | | | | 8.00 | |
| Sat 02/12 ABSENT | | | | | | | | | | (8.00) | |
| Sun 02/13 Scheduled | | | | | | | | | | (8.00) | |

| | | | | | | |
|---|---|---|---|---|---|---|
| Remove Punch | 4 | 02/09 | 359p | | | |
| Add Punch | 4 | 02/09 | 425p | | | |
| Add Hours | 4 | 02/10 | 425p | VAC (Excused) | [Home] | 8.00 |
| Add Hours | 4 | 02/11 | 425p | VAC (Excused) | [Home] | 8.00 |

Acct:300 REG: 24.00 VAC: 16.00

ARROYO, LUZMARIA 094664 300

| ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS |
|---|---|---|---|---|---|---|---|---|---|---|
| Mon 02/07 ABSENT | | | | | | | | | | (8.00) |
| Tue 02/08 ABSENT | | | | | | | | | | (8.00) |
| Wed 02/09 ABSENT | | | | | | | | | | (8.00) |
| Thu 02/10 ABSENT | | | | | | | | | | (8.00) |
| Fri 02/11 ABSENT | | | | | | | | | | (8.00) |
| Sat 02/12 ABSENT | | | | | | | | | | (8.00) |
| Sun 02/13 Scheduled | | | | | | | | | | (8.00) |

A&S 40

BEIER,RAYMOND 1094642 300

| ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 02/07 | 425p | | | 1231a | | | | | | 8.00 | 8.00 |
| Tue 02/08 | 425p | | | 1236a | | | | | | 8.00 | 16.00 |
| Wed 02/09 | 205p*E | | | 1231a | | | | | | 10.00 | 26.00 |
| Thu 02/10 | 404p | | | 1232a | | | | | | 8.00 | 34.00 |
| Fri 02/11 | 214p*E | | | 1231a | | | | | | 10.00 | 44.00 |
| Sat 02/12 ABSENT | | | | | | | | | | (8.00) | |
| Sun 02/13 Scheduled | | | | | | | | | | (8.00) | |

| | | | |
|---|---|---|---|
| Add Punch | 4 | 02/07 | 425p |
| Remove Punch | 4 | 02/08 | 347p |
| Add Punch | 4 | 02/08 | 425p |

Acct:300 REG: 40.00 OT: 4.00

BOLLINGER,JAMES 1094627 300

| ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 02/07 | 216p*E | | | 1237a | | | | | | 10.00 | 10.00 |
| Tue 02/08 | 210p*E | | | 1235a | | | | | | 10.00 | 20.00 |
| Wed 02/09 | 217p*E | | | 1233a | | | | | | 10.00 | 30.00 |
| Thu 02/10 | 215p*E | | | 1235a | | | | | | 10.00 | 40.00 |
| Fri 02/11 | 1231p*E | | | 1001p*E | | | | | | 9.00 | 49.00 |
| Sat 02/12 | 720a | | | 331p | | | | | | 8.00 | 57.00 |
| Sun 02/13 Scheduled | | | | | | | | | | (8.00) | |

9.5/1.5 OT

| | | | |
|---|---|---|---|
| Remove Punch | 6 | 02/12 | 716a |
| Add Punch | 6 | 02/12 | 720a |

Acct:300 REG: 40.00 OT: 17.00 → 17.5 OT KB.

BOUIE,MARSHEELA 0001094653 300

| ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 02/07 | 419p | | | 1232a | | | | | | 8.00 | 8.00 |
| Tue 02/08 | 415p | | | 1235a | | | | | | 8.00 | 16.00 |
| Wed 02/09 | 419p | | | 1233a | | | | | | 8.00 | 24.00 |

Report
period
accounts, all pay rules, all Timeclock groups

Page
02/21/2011

2/17 422p 1230a 8.00 17.00
02/18 ABSENT (8.00)
at 02/19 ABSENT (8.00)
Sun 02/20 ABSENT (8.00)

Acct: 300 [redacted]00

ARROYO, LUZMARIA 094664 300

| | ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 02/14 | | ABSENT | | | | | | | | | (8.00) | |
| Tue 02/15 | | ABSENT | | | | | | | | | (8.00) | |
| Wed 02/16 | | ABSENT | | | | | | | | | (8.00) | |
| Thu 02/17 | | ABSENT | | | | | | | | | (8.00) | |
| Fri 02/18 | | ABSENT | | | | | | | | | (8.00) | |
| Sat 02/19 | | ABSENT | | | | | | | | | (8.00) | |
| Sun 02/20 | | ABSENT | | | | | | | | | (8.00) | |

BEIER, RAYMOND 1094612 300

| | ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 02/14 | | 407p | | | 1230a | | | | | | 8.00 | 8.00 |
| Tue 02/15 | | 405p | | | 1230a | | | | | | 8.00 | 16.00 |
| Wed 02/16 | | 413p | | | 830p*E | | | | | | 4.00 | 20.00 |
| Wed 02/16 | | 830p | | VAC | | | | | | | 4.00 | |
| Thu 02/17 | | 425p | | VAC | | | | | | | 8.00 | |
| Fri 02/18 | | 425p | | VAC | | | | | | | 8.00 | |
| Sat 02/19 | | ABSENT | | | | | | | | | (8.00) | |
| Sun 02/20 | | ABSENT | | | | | | | | | (8.00) | |

Add Hours 4 02/16 830p VAC (Excused) (Home) 4.00
Add Hours 4 02/17 425p VAC (Excused) (Home) 8.00
Add Hours 4 02/18 425p VAC (Excused) (Home) 8.00

Acct: 300
REG: 20.00 [redacted]20.00

BOLLINGER, JAMES 1094627 300

| | ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 02/14 | | 415p | | | 1234a | | | | | | 8.00 | 8.00 |
| Tue 02/15 | | 208p*E | | | 1233a | | | | | | 10.00 | 18.00 |
| Wed 02/16 | | 221p*E | | | 1230a | | | | | | 10.00 | 28.00 |
| Thu 02/17 | | 206p*E | | | 1230a | | | | | | 10.00 | 38.00 |
| Fri 02/18 | | 139p*E | | | 1001p*E | | | | | | 8.00 | 46.00 |
| Sat 02/19 | | 724a | | | 330p | | | | | | 8.00 | 54.00 |
| Sun 02/20 | | ABSENT | | | | | | | | | (8.00) | |

Acct: 300
REG: 40.00 [redacted]0

BOUIE, MARSHEELA 0001094653 300

| | ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 02/14 | | 425p | | VAC | | | | | | | 8.00 | |
| | | | | | | | | | | | 8.00 | 8.00 |
| Tue 02/15 | | 423p | | | 1237a | | | | | | 8.00 | 16.00 |
| Wed 02/16 | | 416p | | | 1230a | | | | | | 8.00 | 24.00 |
| Thu 02/17 | | 413p | | | 1231a | | | | | | 8.00 | 32.00 |
| Fri 02/18 | | 413p | | | 1233a | | | | | | (8.00) | |
| Sat 02/19 | | ABSENT | | | | | | | | | (8.00) | |
| Sun 02/20 | | ABSENT | | | | | | | | | | |

Add Hours 4 02/14 425p VAC (Excused) (Home) 8.00

Acct: 300
REG: 32.00 [redacted]300

BROWN, REGINALD 1094643 300

| | ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 02/14 | | 426p | | | 1232a | | | | | | 8.00 | 8.00 |
| Tue 02/15 | | 220p*E | | | 1232a | | | | | | 10.00 | 18.00 |

...aily Report Page
...s pay period 02/28/2011
...ted accounts, all pay rules, all Timeclock groups

...u 02/24 ABSENT (8.00)
...ri 02/25 ABSENT (8.00)
Sat 02/26 ABSENT (8.00)
Sun 02/27 ABSENT (8.00)

ADAMS, TRACEY 1094628 300
ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS
Mon 02/21 425p 1233a 8.00 8.00
Tue 02/22 412p 1234a 8.00 16.00
Wed 02/23 426p 1231a 8.00 24.00
Thu 02/24 423p 1231a 8.00 32.00
Fri 02/25 405p 1230a 8.00 40.00
Sat 02/26 ABSENT (8.00)
Sun 02/27 ABSENT (8.00)
Add Punch 7 02/21 425p

Acct:300
REG: 40.00

ARROYO, LUSMARIA 094564 300
ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS
Mon 02/21 ABSENT (8.00)
Tue 02/22 ABSENT (8.00)
Wed 02/23 ABSENT (8.00)
Thu 02/24 ABSENT (8.00)
Fri 02/25 ABSENT (8.00)
Sat 02/26 ABSENT (8.00)
Sun 02/27 ABSENT (8.00)

BEIER, RAYMOND 1094642 300
ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS
Mon 02/21 404p 1232a 8.00 8.00
Tue 02/22 421p 1231a 8.00 16.00
Wed 02/23 213p*E 1233a 10.00 26.00
Thu 02/24 412p 1231a 8.00 34.00
Fri 02/25 406p 1230a 8.00 42.00
Sat 02/26 ABSENT (8.00)
Sun 02/27 ABSENT (8.00)

Acct:300
REG: 40.00 OT: 2.00

BOLLINGER, JAMES 1094627 300
ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS
Mon 02/21 401p 1230a 8.00 8.00
Tue 02/22 208p*E 1231a 10.00 18.00
Wed 02/23 212p*E 1230a 10.00 28.00
Thu 02/24 215p*E 1230a 10.00 38.00
Fri 02/25 413p 1231a 8.00 46.00
Sat 02/26 ABSENT (8.00)
Sun 02/27 ABSENT (8.00)

Acct:300
REG: 40.00 6.00

BOVIE, MARSABELLA 0001094653 300
ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS
Mon 02/21 425p VAC 8.00
Tue 02/22 421p 1234a 8.00 8.00
Wed 02/23 419p 1235a 8.00 16.00
Thu 02/24 422p 1231a 8.00 24.00
Fri 02/25 421p 1231a 8.00 32.00
Sat 02/26 ABSENT (8.00)
Sun 02/27 ABSENT (8.00)
Add Hours 7 02/21 425p VAC (Excused) [Home] 8.00

/, Detail Report
/ious pay period
/ected accounts, all pay rules, all timeclock groups

Page
03/07/2011

ri 03/04 429p 1231a 8.00 40.00
at 03/05 725a 1230p 5.00 45.00
Sun 03/06 ABSENT (8.00)
Add Punch 7 02/28 420p
Add Punch 7 03/03 425p
Remove Punch 7 03/05 707a
Add Punch 7 03/05 725a

Acct:300 REG: 40.00 OT: [redacted]

ARROYO, LUZMARIA 094661 300

| | ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 02/28 | | ABSENT | | | | | | | | | (8.00) |
| Tue 03/01 | | ABSENT | | | | | | | | | (8.00) |
| Wed 03/02 | | ABSENT | | | | | | | | | (8.00) |
| Thu 03/03 | | ABSENT | | | | | | | | | (8.00) |
| Fri 03/04 | | ABSENT | | | | | | | | | (8.00) |
| Sat 03/05 | | ABSENT | | | | | | | | | (8.00) |
| Sun 03/06 | | ABSENT | | | | | | | | | (8.00) |

BEIER, RAYMOND 1094642 300

| | ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 02/28 | | 403p | | | 1230a | | | | | | 8.00 | 8.00 |
| Tue 03/01 | | 425p | | | 1230a | | | | | | 8.00 | 16.00 |
| Wed 03/02 | | 425p | | | 1237a | | | | | | 8.00 | 24.00 |
| Thu 03/03 | | 425p | | | 1230a | | | | | | 8.00 | 32.00 |
| Fri 03/04 | | 425p | | VAC | | | | | | | 8.00 | |
| Sat 03/05 | | ABSENT | | | | | | | | | (8.00) | |
| Sun 03/06 | | ABSENT | | | | | | | | | (8.00) | |

Remove Punch 7 03/01 356p
Add Punch 7 03/01 425p
Remove Punch 7 03/02 358p
Add Punch 7 03/02 425p
Add Punch 7 03/03 425p
Add Hours 7 03/04 425p VAC (Excused) [Home] 8.00

Acct:300 REG: 32.00 VAC: [redacted]

BOLLINGER, JAMES 1094627 300

| | ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 02/28 | | 412p | | | 1231a | | | | | | 8.00 | 8.00 |
| Tue 03/01 | | 225p*E | | | 1231a | | | | | | 10.00 | 18.00 |
| Wed 03/02 | | 208p*E | | | 1231a | | | | | | 10.00 | 28.00 |
| Thu 03/03 | | 215p*E | | | 1232a | | | | | | 10.00 | 38.00 |
| Fri 03/04 | | 118p*E | | | 1000p*E | | | | | | 8.00 | 46.00 |
| Sat 03/05 | | 721a | | | 330p | | | | | | 8.00 | 54.00 |
| Sun 03/06 | | ABSENT | | | | | | | | | (8.00) | |

Remove Punch 7 03/01 200p
Add Punch 7 03/01 225p

Acct:300 REG: 40.00 OT: [redacted]

BOUIE, MARSHEELA 0001094653 300

| | ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 02/28 | | 420p | | | 1231a | | | | | | 8.00 | 8.00 |
| Tue 03/01 | | 419p | | | 1235a | | | | | | 8.00 | 16.00 |
| Wed 03/02 | | 421p | | | 1233a | | | | | | 8.00 | 24.00 |
| Thu 03/03 | | 419p | | | 1235a | | | | | | 8.00 | 32.00 |
| Fri 03/04 | | 420p | | | 1231a | | | | | | 8.00 | 40.00 |
| Sat 03/05 | | 725a | | | 1235p | | | | | | 5.00 | 45.00 |
| Sun 03/06 | | ABSENT | | | | | | | | | (8.00) | |

Remove Punch 7 03/05 702a
Add Punch 7 03/05 725a

Punch Detail Report  Page
Previous pay period  03/14/2011
Selected accounts, all pay rules, all Timeclock groups

| | | | | | |
|---|---|---|---|---|---|
| Thu 03/10 | 427p | 1231a | | 8.00 | 32.00 |
| Fri 03/11 | 422p | 1230a | | 8.00 | 40.00 |
| Sat 03/12 ABSENT | | | | (8.00) | |
| Sun 03/13 ABSENT | | | | (8.00) | |

Add Punch 4 03/07 425p
Remove Punch 4 03/09 347p
Remove Punch 4 03/09 415p
Remove Punch 4 03/09 417p
Add Punch 4 03/09 425p

Acct:300  REG: 40.00

ARROYO, LUZMARIA  094664  300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS |
|---|---|---|---|---|---|---|
| Mon 03/07 ABSENT | | | | | | (8.00) |
| Tue 03/08 ABSENT | | | | | | (8.00) |
| Wed 03/09 ABSENT | | | | | | (8.00) |
| Thu 03/10 ABSENT | | | | | | (8.00) |
| Fri 03/11 ABSENT | | | | | | (8.00) |
| Sat 03/12 ABSENT | | | | | | (8.00) |
| Sun 03/13 ABSENT | | | | | | (8.00) |

BEIER, RAYMOND  1094642  300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 03/07 400p | | 1232a | | | | 8.00 | 8.00 |
| Tue 03/08 425p | | 1232a | | | | 8.00 | 16.00 |
| Wed 03/09 425p | | 1231a | | | | 8.00 | 24.00 |
| Thu 03/10 425p | | 1231a | | | | 8.00 | 32.00 |
| Fri 03/11 ABSENT | | | | | | (8.00) | |
| Sat 03/12 ABSENT | | | | | | (8.00) | |
| Sun 03/13 ABSENT | | | | | | (8.00) | |

Remove Punch 4 03/08 359p
Add Punch 4 03/08 425p
Remove Punch 4 03/09 359p
Add Punch 4 03/09 425p
Remove Punch 4 03/10 359p
Add Punch 4 03/10 425p

Acct:300  REG: [redacted]

BOLLINGER, JAMES  1094627  300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 03/07 418p | | 1232a | | | | 8.00 | 8.00 |
| Tue 03/08 201p*E | | 1230a | | | | 10.00 | 18.00 |
| Wed 03/09 213p*E | | 1230a | | | | 10.00 | 28.00 |
| Thu 03/10 207p*E | | 1232a | | | | 10.00 | 38.00 |
| Fri 03/11 146p*E | | 1004p*E | | | | 8.00 | 46.00 |
| Sat 03/12 718a | | 330p | | | | 8.00 | 54.00 |
| Sun 03/13 ABSENT | | | | | | (8.00) | |

Remove Punch 4 03/08 205p

Acct:300  REG: 40.00 [redacted]

BOUIE, MARGHEELA  0001094653 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 03/07 425p VAC | | | | | | 8.00 | |
| Tue 03/08 422p | | 1231a | | | | 8.00 | 8.00 |
| Wed 03/09 420p | | 1233a | | | | 8.00 | 16.00 |
| Thu 03/10 415p | | 1232a | | | | 8.00 | 24.00 |
| Fri 03/11 419p | | 833p*E | | | | 4.00 | 28.00 |
| Fri 03/11 830p VAC | | | | | | 4.00 | |
| Sat 03/12 730a | | 1232p | | | | 5.00 | 33.00 |
| Sun 03/13 ABSENT | | | | | | (8.00) | |

Add Hours 4 03/07 425p VAC (Excused) [None] 8.00
Add Hours 4 03/11 830p VAC (Excused) [None] 4.00

...all Report
...pay period
...d accounts, all pay rules, all timeclock groups

Page
03/21/2011

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| ...03/14 | 411p | | 1240a | | | | 8.00 | 8.00 |
| ...e 03/15 | 400p | | 1241a | | | | 8.00 | 16.00 |
| Wed 03/16 | 411p | | 1232a | | | | 8.00 | 24.00 |
| Thu 03/17 | 403p | | 1235a | | | | 8.00 | 32.00 |
| Fri 03/18 | 404p | | 1240a | | | | 8.00' | 40.00 |
| Sat 03/19 | ABSENT | | | | | | (8.00) | |
| Sun 03/20 | ABSENT | | | | | | (8.00) | |

Remove Punch 4 03/15 402p

Acct:300

REG: 40.00

ADAMS, ERIK 1094630 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS |
|---|---|---|---|---|---|---|---|
| Mon 03/14 | ABSENT | | | | | | (8.00) |
| Tue 03/15 | ABSENT | | | | | | (8.00) |
| Wed 03/16 | ABSENT | | | | | | (8.00) |
| Thu 03/17 | ABSENT | | | | | | (8.00) |
| Fri 03/18 | ABSENT | | | | | | (8.00) |
| Sat 03/19 | ABSENT | | | | | | (8.00) |
| Sun 03/20 | ABSENT | | | | | | (8.00) |

ADAMS, TRACEY 1094628 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 03/14 | 412p | | 1231a | | | | 8.00 | 8.00 |
| Tue 03/15 | 427p | | 1233a | | | | 8.00 | 16.00 |
| Wed 03/16 | 414p | | 1232a | | | | 8.00 | 24.00 |
| Thu 03/17 | 427p | | 1233a | | | | 8.00 | 32.00 |
| Fri 03/18 | 426p | | 1232a | | | | 8.00 | 40.00 |
| Sat 03/19 | ABSENT | | | | | | (8.00) | |
| Sun 03/20 | ABSENT | | | | | | (8.00) | |

Acct:300

REG: 40.00

ARROYO, LUZMARIA 094664 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS |
|---|---|---|---|---|---|---|---|
| Mon 03/14 | ABSENT | | | | | | (8.00) |
| Tue 03/15 | ABSENT | | | | | | (8.00) |
| Wed 03/16 | ABSENT | | | | | | (8.00) |
| Thu 03/17 | ABSENT | | | | | | (8.00) |
| Fri 03/18 | ABSENT | | | | | | (8.00) |
| Sat 03/19 | ABSENT | | | | | | (8.00) |
| Sun 03/20 | ABSENT | | | | | | (8.00) |

BEIER, RAYMOND 1094642 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 03/14 | 409p | | 1231a | | | | 8.00 | 8.00 |
| Tue 03/15 | 407p | | 1230a | | | | 8.00 | 16.00 |
| Wed 03/16 | 408p | | 1231a | | | | 8.00 | 24.00 |
| Thu 03/17 | 416p | | 1231a | | | | 8.00 | 32.00 |
| Fri 03/18 | 401p | | 1232a | | | | 8.00 | 40.00 |
| Sat 03/19 | ABSENT | | | | | | (8.00) | |
| Sun 03/20 | ABSENT | | | | | | (8.00) | |

Acct:300

REG: 40.00

BOLLINGER, JAMES 1094627 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 03/14 | 400p | | 1231a | | | | 8.00 | 8.00 |
| Tue 03/15 | 209p*E | | 1234a | | | | 10.00 | 18.00 |
| Wed 03/16 | 220p*E | | 1230a | | | | 10.00 | 28.00 |
| Thu 03/17 | 218p*E | | 1231a | | | | 10.00 | 38.00 |
| Fri 03/18 | 426p VAC | | | | | | 8.00 | |
| Sat 03/19 | 720a | | 336p | | | | 8.00 | 46.00 |

Page
03/28/2011

Detail Report
ous pay period
acted accounts, all pay rules, all timeclock groups

DAMS, TRACEY 1094628 300

| ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 03/21 | 405p | | | 1230a | | | | | | 8.00 | 8.00 |
| Tue 03/22 | 419p | | | 1233a | | | | | | 8.00 | 16.00 |
| Wed 03/23 | 425p | | | 1230a | | | | | | 8.00 | 24.00 |
| Thu 03/24 | 414p | | | 1230a | | | | | | 8.00 | 32.00 |
| Fri 03/25 | 422p | | | 1230a | | | | | | 8.00 | 40.00 |
| Sat 03/26 | ABSENT | | | | | | | | | (8.00) | |
| Sun 03/27 | ABSENT | | | | | | | | | (8.00) | |

Remove Punch 10 03/23 355p
Add Punch 10 03/23 425p

Acct:300 REG: 40.00

ARROYO, LUZMARTA 094664 300

| ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 03/21 | ABSENT | | | | | | | | | (8.00) | |
| Tue 03/22 | ABSENT | | | | | | | | | (8.00) | |
| Wed 03/23 | 425p | | | 1236a | | | | | | 8.00 | 8.00 |
| Thu 03/24 | 408p | | | 1231a | | | | | | 8.00 | 16.00 |
| Fri 03/25 | 413p | | | 1235a | | | | | | 8.00 | 24.00 |
| Sat 03/26 | ABSENT | | | | | | | | | (8.00) | |
| Sun 03/27 | ABSENT | | | | | | | | | (8.00) | |

Add Punch 10 03/23 425p

Acct:300 [redacted]0

BEIER, RAYMOND 1094642 300

| ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 03/21 | 425p | | | 1230a | | | | | | 8.00 | 8.00 |
| Tue 03/22 | 402p | | | 1230a | | | | | | 8.00 | 16.00 |
| Wed 03/23 | 405p | | | 1230a | | | | | | 8.00 | 24.00 |
| Thu 03/24 | 414p | | | 1230a | | | | | | 8.00 | 32.00 |
| Fri 03/25 | 404p | | | 1231a | | | | | | 8.00 | 40.00 |
| Sat 03/26 | ABSENT | | | | | | | | | (8.00) | |
| Sun 03/27 | ABSENT | | | | | | | | | (8.00) | |

Add Punch 10 03/21 425p

Acct:300 REG: 40.00

BOLLINGER, JAMES 1094627 300

| ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 03/21 | 400p | | | 1231a | | | | | | 8.00 | 8.00 |
| Tue 03/22 | 205p*E | | | 1230a | | | | | | 10.00 | 18.00 |
| Wed 03/23 | 215p*E | | | 1234a | | | | | | 10.00 | 28.00 |
| Thu 03/24 | 220p*E | | | 1230a | | | | | | 10.00 | 38.00 |
| Fri 03/25 | 411p | | | 1231a | | | | | | 8.00 | 46.00 |
| Sat 03/26 | 718a | | | 1232p | | | | | | 5.00 | 51.00 |
| Sun 03/27 | ABSENT | | | | | | | | | (8.00) | |

Remove Punch 10 03/23 208p

Acct:300 REG: 40.00 [redacted]11.00

BOUIE, MARSHEELA 0001094653 300

| ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 03/21 | 425p | VAC | | | | | | | | 8.00 | |
| | | | | | | | | | | 8.00 | 8.00 |
| Tue 03/22 | 420p | | | 1236a | | | | | | 8.00 | 16.00 |
| Wed 03/23 | 415p | | | 1235a | | | | | | 8.00 | 24.00 |
| Thu 03/24 | 422p | | | 1233a | | | | | | 8.00 | 32.00 |
| Fri 03/25 | 420p | | | 1235a | | | | | | (8.00) | |
| Sat 03/26 | ABSENT | | | | | | | | | (8.00) | |
| Sun 03/27 | ABSENT | | | | | | | | | | |

Add Hours 10 03/21 425p VAC (Excused) [Home] 8.00

Punch Detail Report
Previous pay period
Selected accounts, all pay rules, all Timeclock groups

Page
04/04/2011

| | | | | |
|---|---|---|---|---|
| Tue 03/29 815a | 430p | | 8.00 | 16.00 |
| Wed 03/30 801a | 430p | | 8.00 | 24.00 |
| Thu 03/31 802a | 430p | | 8.00 | 32.00 |
| Fri 04/01 820a | 430p | | 8.00 | 40.00 |
| Sat 04/02 ABSENT | | | (8.00) | |
| Sun 04/03 ABSENT | | | (8.00) | |
| Remove Punch 3 03/29 758a | | | | |
| Add Punch 3 03/29 815a | | | | |

Acct:100
REG: 40.00

SOMERSETT, MAUREEN 0001094592 100

| ID IN DEP ACTIVITY | OUT | ID IN DEP ACTIVITY | OUT | TOTALS |
|---|---|---|---|---|
| Mon 03/28 ABSENT | | | | (8.00) |
| Tue 03/29 ABSENT | | | | (8.00) |
| Wed 03/30 ABSENT | | | | (8.00) |
| Thu 03/31 ABSENT | | | | (8.00) |
| Fri 04/01 ABSENT | | | | (8.00) |
| Sat 04/02 ABSENT | | | | (8.00) |
| Sun 04/03 ABSENT | | | | (8.00) |

ACCIDENTALE, BRIAN 1094619 300

| ID IN DEP ACTIVITY | OUT | ID IN DEP ACTIVITY | OUT | TOTALS |
|---|---|---|---|---|
| Mon 03/28 425p VAC | | | | 40.00 |
| Tue 03/29 ABSENT | | | | (8.00) |
| Wed 03/30 ABSENT | | | | (8.00) |
| Thu 03/31 ABSENT | | | | (8.00) |
| Fri 04/01 ABSENT | | | | (8.00) |
| Sat 04/02 ABSENT | | | | (8.00) |
| Sun 04/03 ABSENT | | | | (8.00) |
| Add Hours 4 03/28 425p VAC (Excused) | | [Home] 40.00 | | |

Acct:300 [redacted]

ADAMS, ERIK 1094630 300

| ID IN DEP ACTIVITY | OUT | ID IN DEP ACTIVITY | OUT | TOTALS |
|---|---|---|---|---|
| Mon 03/28 ABSENT | | | | (8.00) |
| Tue 03/29 ABSENT | | | | (8.00) |
| Wed 03/30 ABSENT | | | | (8.00) |
| Thu 03/31 ABSENT | | | | (8.00) |
| Fri 04/01 ABSENT | | | | (8.00) |
| Sat 04/02 ABSENT | | | | (8.00) |
| Sun 04/03 ABSENT | | | | (8.00) |

ADAMS, TRACEY 1094628 300

| ID IN DEP ACTIVITY | OUT | ID IN DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|
| Mon 03/28 425p VAC | | | | 8.00 | |
| Tue 03/29 409p | 1230a | | | 8.00 | 8.00 |
| Wed 03/30 401p | 1230a | | | 8.00 | 16.00 |
| Thu 03/31 401p | 1230a | | | 8.00 | 24.00 |
| Fri 04/01 422p | 1232a | | | 8.00 | 32.00 |
| Sat 04/02 722a | 1230p | | | 5.00 | 37.00 |
| Sun 04/03 ABSENT | | | | (8.00) | |
| Add Hours 4 03/28 425p VAC (Excused) | | [Home] 8.00 | | | |
| Remove Punch 4 03/30 412p | | | | | |

Acct:300
REG: 32.00 [redacted] [redacted]

ARROYO, LUZMARIA 094664 300

| ID IN DEP ACTIVITY | OUT | ID IN DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|
| Mon 03/28 415p | 1231a | | | 8.00 | 8.00 |
| Tue 03/29 425p VAC | | | | 8.00 | |

Punch Detail Report
Previous pay period
Selected accounts, all pay rules, all Timeclock groups

Page
04/04/2011

```
Wed 03/30  424p            1231a                         8.00   16.00
Thu 03/31  423p            1232a                         8.00   24.00
Fri 04/01  407p            700p*E                        2.50   26.50
Sat 04/02 ABSENT                                        (8.00)
Sun 04/03 ABSENT                                        (8.00)
 Add Hours     4   03/29  425p VAC (Excused)    [Home] 8.00

Acct:300
            REG: [redacted]
```

```
BEIER, RAYMOND                 1094642    300
      ID IN   DEP ACTIVITY       OUT      ID IN   DEP ACTIVITY    OUT    TOTALS
Mon 03/28  425p                  1230a                                  8.00    8.00
Tue 03/29  425p VAC                                                     8.00
Wed 03/30  425p                  1230a                                  8.00   16.00
Thu 03/31  425p VAC                                                     8.00
Fri 04/01  425p                  1231a                                  8.00   24.00
Sat 04/02 ABSENT                                                       (8.00)
Sun 04/03 ABSENT                                                       (8.00)
 Add Punch      4   03/28  425p
 Add Hours      4   03/29  425p VAC (Excused)    [Home] 8.00
 Remove Punch   4   03/30  354p
 Add Punch      4   03/30  425p
 Add Hours      4   03/31  425p VAC (Excused)    [Home] 8.00
 Add Punch      4   04/01  425p

Acct:300
            REG:     24.00    [redacted]
```

```
BOLLINGER, JAMES               1094627    300
      ID IN   DEP ACTIVITY       OUT      ID IN   DEP ACTIVITY    OUT    TOTALS
Mon 03/28  408p                  1232a                                  8.00    8.00
Tue 03/29  222p*E                1233a                                 10.00   18.00
Wed 03/30  418p                  1232a                                  8.00   26.00
Thu 03/31  219p*E                1230a                                 10.00   36.00
Fri 04/01 1156a                  1004p                                 10.00   46.00
Sat 04/02  720a                   333p                                  8.00   54.00
Sun 04/03 ABSENT                                                       (8.00)
 Remove Punch  4   04/01 1157a

Acct:300
            REG:     40.00    [redacted]
```

```
BOUIE, MARSHEELA               0001094653 300
      ID IN   DEP ACTIVITY       OUT      ID IN   DEP ACTIVITY    OUT    TOTALS
Mon 03/28  416p                  1231a                                  8.00    8.00
Tue 03/29  420p                  1233a                                  8.00   16.00
Wed 03/30  418p                  1239a                                  8.00   24.00
Thu 03/31  419p                  1235a                                  8.00   32.00
Fri 04/01  418p                  1232a                                  8.00   40.00
Sat 04/02 1216p*E  7:30           *?       12:30                        0.00   40.00
Sun 04/03 ABSENT                                                       (8.00)

Acct:300
            REG:     40.00    [redacted]
```

```
BROWN, REGINALD                1094643    300
      ID IN   DEP ACTIVITY       OUT      ID IN   DEP ACTIVITY    OUT    TOTALS
Mon 03/28  425p                  1232a                                  8.00    8.00
Tue 03/29  422p                  1231a                                  8.00   16.00
Wed 03/30  224p*E                1230a                                 10.00   26.00
Thu 03/31  422p                  1231a                                  8.00   34.00
Fri 04/01  425p VAC                                                     8.00
Sat 04/02  724a                  1230p                                  5.00   39.00
Sun 04/03 ABSENT                                                       (8.00)
 Add Hours     4   04/01  425p VAC (Excused)    [Home] 8.00
```

*Punch Detail Report*
*Previous pay period*
*Selected accounts, all pay rules, all timeclock groups*

*Page*
*04/11/2011*

ADAMS, TRACEY 1094628 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 04/04 | 413p | | 1232a | | | | 8.00 | 8.00 |
| Tue 04/05 | 416p | | 1231a | | | | 8.00 | 16.00 |
| Wed 04/06 | 425p | VAC | | | | | 8.00 | |
| Thu 04/07 | 419p | | 231a*L | | | | 10.00 | 26.00 |
| Fri 04/08 | 427p | | 1230a | | | | 8.00 | 34.00 |
| Sat 04/09 | ABSENT | | | | | | (8.00) | |
| Sun 04/10 | ABSENT | | | | | | (8.00) | |

Add Hours 4 04/06 425p VAC (Excused) (Home) 8.00

Acct:300
REG: 32.00 [redacted].00 [redacted].00

ARROYO, LUZMARIA 094664 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 04/04 | 423p | | 1232a | | | | 8.00 | 8.00 |
| Tue 04/05 | 425p | | 1232a | | | | 8.00 | 16.00 |
| Wed 04/06 | 426p | | 1231a | | | | 8.00 | 24.00 |
| Thu 04/07 | 419p | | 230a*L | | | | 10.00 | 34.00 |
| Fri 04/08 | 425p | VAC | | | | | 8.00 | |
| Sat 04/09 | ABSENT | | | | | | (8.00) | |
| Sun 04/10 | ABSENT | | | | | | (8.00) | |

Add Punch 4 04/08 230a
Add Hours 4 04/08 425p VAC (Excused) (Home) 8.00

Acct:300
REG: 32.00 [redacted].00 [redacted]8.00

BEIER, RAYMOND 1094642 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 04/04 | 425p | | 1230a | | | | 8.00 | 8.00 |
| Tue 04/05 | 406p | | 1230a | | | | 8.00 | 16.00 |
| Wed 04/06 | 425p | | 1233a | | | | 8.00 | 24.00 |
| Thu 04/07 | 423p | | 230a*L | | | | 10.00 | 34.00 |
| Fri 04/08 | 415p | | 835p*E | | | | 4.00 | 38.00 |
| Sat 04/09 | ABSENT | | | | | | (8.00) | |
| Sun 04/10 | ABSENT | | | | | | (8.00) | |

Add Punch 4 04/04 425p
Add Punch 4 04/06 425p

Acct:300
REG[redacted] [redacted]

BOLLINGER, JAMES 1094627 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 04/04 | 400p | | 1233a | | | | 8.00 | 8.00 |
| Tue 04/05 | 400p | | 1230a | | | | 8.00 | 16.00 |
| Wed 04/06 | 206p*E | | 1233a | | | | 10.00 | 26.00 |
| Thu 04/07 | 425p | VAC | | | | | 8.00 | |
| Fri 04/08 | 425p | VAC | | | | | 8.00 | |
| Sat 04/09 | 720a | | 331p | | | | 8.00 | 34.00 |
| Sun 04/10 | ABSENT | | | | | | (8.00) | |

Add Hours 4 04/07 425p VAC (Excused) (Home) 8.00
Add Hours 4 04/08 425p VAC (Excused) (Home) 8.00
Remove Punch 6 04/09 715a
Add Punch 6 04/09 720a

Acct:300
[redacted] 24.00 [redacted]10.00 [redacted]

BOUIE, MARSHEELA 0001094653 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 04/04 | 424p | | 1236a | | | | 8.00 | 8.00 |
| Tue 04/05 | 421p | | 1236a | | | | 8.00 | 16.00 |

Detail Report
...ous pay period
...lected accounts, all pay rules, all Timeclock groups

Page
04/18/2011

Sat 04/16 ABSENT (8.00)
Sun 04/17 ABSENT (8.00)

ACCIDENTALE, BRIAN 1094619 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 04/11 405p | | 1236a | | | | 8.00 | 8.00 |
| Tue 04/12 417p | | 1236a | | | | 8.00 | 16.00 |
| Wed 04/13 410p | | 1232a | | | | 8.00 | 24.00 |
| Thu 04/14 415p | | 1231a | | | | 8.00 | 32.00 |
| Fri 04/15 430p | | 1235a | | | | 8.00 | 40.00 |
| Sat 04/16 ABSENT | | | | | | (8.00) | |
| Sun 04/17 ABSENT | | | | | | (8.00) | |

Add Punch 4 04/15 430p

Acct:300 REG: 40.00

ADAMS, ERIK 1094630 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS |
|---|---|---|---|---|---|---|
| Mon 04/11 ABSENT | | | | | | (8.00) |
| Tue 04/12 ABSENT | | | | | | (8.00) |
| Wed 04/13 ABSENT | | | | | | (8.00) |
| Thu 04/14 ABSENT | | | | | | (8.00) |
| Fri 04/15 ABSENT | | | | | | (8.00) |
| Sat 04/16 ABSENT | | | | | | (8.00) |
| Sun 04/17 ABSENT | | | | | | (8.00) |

ADAMS, TRACEY 1094628 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 04/11 408p | | 1233a | | | | 8.00 | 8.00 |
| Tue 04/12 422p | | 1233a | | | | 8.00 | 16.00 |
| Wed 04/13 415p | | 1230a | | | | 8.00 | 24.00 |
| Thu 04/14 ABSENT | | | | | | (8.00) | |
| Fri 04/15 430p VAC | | | | | | 8.00 | |
| Sat 04/16 ABSENT | | | | | | (8.00) | |
| Sun 04/17 ABSENT | | | | | | (8.00) | |

Add Hours 4 04/15 430p VAC (Excused) (Home) 8.00

Acct:300 REG: 24.00 VAC: [illegible]

ARROYO, LUZMARIA 094664 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 04/11 428p | | 1030p*E | | | | 6.00 | 6.00 |
| Mon 04/11 1030p VAC | | | | | | 2.00 | |
| Tue 04/12 418p | | 1230a | | | | 8.00 | 14.00 |
| Wed 04/13 415p | | 1230a | | | | 8.00 | 22.00 |
| Thu 04/14 440p*L | | 1233a | | | | 7.75 | 29.75 |
| Fri 04/15 425p | | 1230a | | | | 8.00 | 37.75 |
| Sat 04/16 ABSENT | | | | | | (8.00) | |
| Sun 04/17 ABSENT | | | | | | (8.00) | |

Add Hours 4 04/11 1030p VAC (Excused) (Home) 2.00
Remove Punch 4 04/15 1229a
Add Punch 4 04/15 425p
Add Punch 7 04/16 1230a

Acct:300 REG: 37.75 ~~VAC: 2.00~~

BETER, RAYMOND 1094642 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 04/11 418p | | 1231a | | | | 8.00 | 8.00 |
| Tue 04/12 421p | | 1232a | | | | 8.00 | 16.00 |
| Wed 04/13 427p | | 1231a | | | | 8.00 | 24.00 |
| Thu 04/14 425p | | 1230a | | | | 8.00 | 32.00 |

Page
04/25/2011

...etail Report
...us pay period
...cted accounts, all pay rules, all timeclock groups

SOMERSETT, MAUREEN 0001094592 100

ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS

Mon 04/18 ABSENT (8.00)
Tue 04/19 ABSENT (8.00)
Wed 04/20 ABSENT (8.00)
Thu 04/21 ABSENT (8.00)
Fri 04/22 1200a HOL 8.00
Sat 04/23 ABSENT (8.00)
Sun 04/24 ABSENT (8.00)
Add OTHol 998 04/22 1200a 8.00

Acct:100 HOL: 8.00

ACCIDENTALE, BRIAN 1094619 300

ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS

Mon 04/18 412p 1232a 8.00 8.00
Tue 04/19 412p 1233a 8.00 16.00
Wed 04/20 413p 1237a 8.00 24.00
Thu 04/21 413p 1237a 8.00 32.00
Fri 04/22 1200a HOL 8.00
Sat 04/23 ABSENT (8.00)
Sun 04/24 ABSENT (8.00)
Add OTHol 998 04/22 1200a 8.00

Acct:300 REG: 32.00 HOL: 8.00

ADAMS, ERIK 1094630 300

ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS

Mon 04/18 410p 1230a 8.00 8.00
Tue 04/19 209p*E 1230a 10.00 18.00
Wed 04/20 211p*E 1230a 10.00 28.00
Thu 04/21 216p*E 1230a 10.00 38.00
Fri 04/22 1200a HOL 8.00
Sat 04/23 ABSENT (8.00)
Sun 04/24 ABSENT (8.00)
Add OTHol 998 04/22 1200a 8.00

Acct:300 REG: 32.00 [redacted] HOL: 8.00

ADAMS, TRACEY 1094628 300

ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS

Mon 04/18 425p BER 24.00
Tue 04/19 425p VAC 8.00
Wed 04/20 ABSENT (8.00)
Thu 04/21 ABSENT (8.00)
Fri 04/22 1200a HOL 8.00
Sat 04/23 ABSENT (8.00)
Sun 04/24 ABSENT (8.00)
Add Hours 4 04/18 425p BER (Excused) [None] 24.00
Add Hours 4 04/19 425p VAC (Excused) [None] 8.00
Add OTHol 998 04/22 1200a 8.00

Acct:300 [redacted] HOL: 8.00 [redacted]

ARROYO, LUZMARIA 091664 300

ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS

Mon 04/18 419p 1032p*E 6.00 6.00
Mon 04/18 1030p VAC 2.00
Tue 04/19 423p 1032p*E 6.00 12.00
Tue 04/19 1030p VAC 2.00
Wed 04/20 425p VAC 8.00
Thu 04/21 418p 1231a 8.00 20.00

etail Report
ous pay period
ected accounts, all pay rules, all Timeclock groups

Page
04/25/2011

| | | | | | |
|---|---|---|---|---|---|
| Fri 04/22 1200a HOL | | | | | 8.00 |
| Sat 04/23 ABSENT | | | | | (8.00) |
| Sun 04/24 ABSENT | | | | | (8.00) |
| Add Hours | 4 | 04/18 1030p VAC (Excused) | [Home] 2.00 | | |
| Add Hours | 4 | 04/19 1030p VAC (Excused) | [Home] 2.00 | | |
| Add Hours | 4 | 04/20 425p VAC (Excused) | [Home] 8.00 | | |
| Add OTHol | 998 | 04/22 1200a 8.00 | | | |

Acct:300 REG: 20.00 [redacted] HOL: 8.00

BEIER, RAYMOND 1094602 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 04/18 | 424p | | 1231a | | | | 8.00 | 8.00 |
| Tue 04/19 | 424p | | 1232a | | | | 8.00 | 16.00 |
| Wed 04/20 | 423p | | 1232a | | | | 8.00 | 24.00 |
| Thu 04/21 | 417p | | 1232a | | | | 8.00 | 32.00 |
| Fri 04/22 | 1200a HOL | | | | | | 8.00 | |
| Sat 04/23 | ABSENT | | | | | | (8.00) | |
| Sun 04/24 | ABSENT | | | | | | (8.00) | |
| Add OTHol | 998 04/22 1200a 8.00 | | | | | | | |

Acct:300 REG: 32.00 HOL: 8.00

BOLLINGER, JAMES 1094627 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 04/18 | 425p | | 231a*L | | | | 10.00 | 10.00 |
| Tue 04/19 | 415p | | 232a*L | | | | 10.00 | 20.00 |
| Wed 04/20 | 225p*E | | 1230a | | | | 10.00 | 30.00 |
| Thu 04/21 | 425p | | 1232a | | | | 8.00 | 38.00 |
| Fri 04/22 | 1200a HOL | | | | | | 8.00 | |
| Sat 04/23 | 723a | | 330p | | | | 8.00 | 46.00 |
| Sun 04/24 | ABSENT | | | | | | (8.00) | |
| Add Punch | 4 04/18 425p | | | | | | | |
| Add OTHol | 998 04/22 1200a 8.00 | | | | | | | |

Acct:300 REG: 32.00 [redacted] HOL: 8.00

DOUIE, MARSHEELA 0001094653 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 04/18 | 420p | | [illegible] | | | | 4.25 | 4.25 |
| Tue 04/19 | 420p | | 1233a | | | | 8.00 | 12.25 |
| Wed 04/20 | 416p | | 1234a | | | | 8.00 | 20.25 |
| Thu 04/21 | 424p | | 1234a | | | | 8.00 | 28.25 |
| Fri 04/22 | 1200a HOL | | | | | | 8.00 | |
| Sat 04/23 | ABSENT | | | | | | (8.00) | |
| Sun 04/24 | ABSENT | | | | | | (8.00) | |
| Add OTHol | 998 04/22 1200a 8.00 | | | | | | | |

Acct:300 REG: [redacted] HOL: 8.00

BROWN, REGINALD 1094643 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 04/18 | 414p | | 232a*L | | | | 10.00 | 10.00 |
| Tue 04/19 | 428p | | 233a*L | | | | 10.00 | 20.00 |
| Wed 04/20 | 424p | | 231a*L | | | | 10.00 | 30.00 |
| Thu 04/21 | 425p VAC | | | | | | 8.00 | |
| Fri 04/22 | 1200a HOL | | | | | | 8.00 | |
| Sat 04/23 | 722a | | 1230p | | | | 5.00 | 35.00 |
| Sun 04/24 | ABSENT | | | | | | (8.00) | |
| Add Hours | 4 04/21 425p VAC (Excused) | | [Home] 8.00 | | | | | |
| Add OTHol | 998 04/22 1200a 8.00 | | | | | | | |

Page
05/02/2011

...port
...period
...counts, all pay rules, all Timeclock groups

...ers 10 04/25 425p VAC (Excused) [Home] 8.00
...unch 10 04/26 425p
...Punch 4 04/29 425p

Acct:300 REG: 32.00 [redacted] [redacted]

ARROYO, LUSHARIA 094664 300

| | ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 04/25 | | 406p | | | 1231a | | | | | | 8.00 | 8.00 |
| Tue 04/26 | | 418p | | | 1030p*E | | | | | | 6.00 | 14.00 |
| Tue 04/26 | | 1030p VAC | | | | | | | | | 2.00 | |
| Wed 04/27 | | 425p | | | 1233a | | | | | | 8.00 | 22.00 |
| Thu 04/28 | | 427p | | | 1231a | | | | | | 8.00 | 30.00 |
| Fri 04/29 | | 420p | | | 702p*E | | | | | | 2.50 | 32.50 |
| Sat 04/30 ABSENT | | | | | | | | | | | (8.00) | |
| Sun 05/01 ABSENT | | | | | | | | | | | (8.00) | |

Add Hours 10 04/26 1030p VAC (Excused) [Home] 2.00

Acct:300 REG: 32.50 [redacted]

BEIER, RAYMOND 1094642 300

| | ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 04/25 | | 423p | | | 231a*L | | | | | | 10.00 | 10.00 |
| Tue 04/26 | | 419p | | | 1232a | | | | | | 8.00 | 18.00 |
| Wed 04/27 | | 426p | | | 231a*L | | | | | | 10.00 | 28.00 |
| Thu 04/28 | | 427p | | | 1230a | | | | | | 8.00 | 36.00 |
| Fri 04/29 | | 426p | | | 1231a | | | | | | 8.00 | 44.00 |
| Sat 04/30 ABSENT | | | | | | | | | | | (8.00) | |
| Sun 05/01 ABSENT | | | | | | | | | | | (8.00) | |

Acct:300 REG: 48.00 [redacted]

BOLLINGER, JAMES 1094627 300

| | ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 04/25 | | 425p VAC | | | | | | | | | 40.00 |
| Tue 04/26 ABSENT | | | | | | | | | | | (8.00) |
| Wed 04/27 ABSENT | | | | | | | | | | | (8.00) |
| Thu 04/28 ABSENT | | | | | | | | | | | (8.00) |
| Fri 04/29 ABSENT | | | | | | | | | | | (8.00) |
| Sat 04/30 ABSENT | | | | | | | | | | | (8.00) |
| Sun 05/01 ABSENT | | | | | | | | | | | (8.00) |

Add Hours 10 04/25 425p VAC (Excused) [Home] 40.00

Acct:300 [redacted]

BOUIE, MARSHELLA 0001094653 300

| | ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 04/25 | | 421p | | | 1236a | | | | | | 8.00 | 8.00 |
| Tue 04/26 | | 422p | | | 1231a | | | | | | 8.00 | 16.00 |
| Wed 04/27 | | 419p | | | 1232a | | | | | | 8.00 | 24.00 |
| Thu 04/28 | | 421p | | | 1242a | | | | | | 8.00 | 32.00 |
| Fri 04/29 | | 423p | | | 1231a | | | | | | 8.00 | 40.00 |
| Sat 04/30 | | 727a | | | 1237p | | | | | | 5.00 | 45.00 |
| Sun 05/01 ABSENT | | | | | | | | | | | (8.00) | |

Remove Punch 10 04/30 717a
Add Punch 10 04/30 727a

Acct:300 REG: 40.00 [redacted]

...h Detail Report
...evious pay period
...elected accounts, all pay rules, all Timeclock groups

Page
05/09/2011

Add Punch 4 05/06 225p

Acct:300 REG: 32.00 [redacted] [redacted]

ADAMS,TRACEY 1094628 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 05/02 | 417p | | 230a*L | | | | 10.00 | 10.00 |
| Tue 05/03 | 425p | | 234a*L | | | | 10.00 | 20.00 |
| Wed 05/04 | 428p | | 234a*L | | | | 10.00 | 30.00 |
| Thu 05/05 | 422p | | 1231a | | | | 8.00 | 38.00 |
| Fri 05/06 | 426p | | 1231a | | | | 8.00 | 46.00 |
| Sat 05/07 | 722a | | 1230p | | | | 5.00 | 51.00 |
| Sun 05/08 ABSENT | | | | | | | (8.00) | |

Add Punch 4 05/03 425p
Remove Punch 2 05/07 726a
Add Punch 2 05/07 1230p
Remove Punch 7 05/07 1232p

Acct:300 REG: 40.00 [redacted]

ARROYO, LOURMARIA 094664 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 05/02 | 418p | | 1230a | | | | 8.00 | 8.00 |
| Tue 05/03 | 423p | | 1030p*E | | | | 6.00 | 14.00 |
| Tue 05/03 | 1030p VAC | | | | | | 2.00 | |
| Wed 05/04 | 428p | | 1230a | | | | 8.00 | 22.00 |
| Thu 05/05 | 423p | | 1230a | | | | 8.00 | 30.00 |
| Fri 05/06 | 425p VAC | | | | | | 8.00 | |
| Sat 05/07 ABSENT | | | | | | | (8.00) | |
| Sun 05/08 ABSENT | | | | | | | (8.00) | |

Add Hours 4 05/03 1030p VAC (Excused) [Home] 2.00
Add Punch 4 05/05 1230a
Add Hours 4 05/06 425p VAC (Excused) [Home] 8.00

Acct:300 REG: 30.00 [redacted]

BEIER, RAYMOND 1094612 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 05/02 | 424p | | 230a*L | | | | 10.00 | 10.00 |
| Tue 05/03 | 423p | | 1231a | | | | 8.00 | 18.00 |
| Wed 05/04 | 424p | | 1233a | | | | 8.00 | 26.00 |
| Thu 05/05 | 424p | | 1233a | | | | 8.00 | 34.00 |
| Fri 05/06 | 425p VAC | | | | | | 8.00 | |
| Sat 05/07 ABSENT | | | | | | | (8.00) | |
| Sun 05/08 ABSENT | | | | | | | (8.00) | |

Add Hours 4 05/06 425p VAC (Excused) [Home] 8.00

Acct:300 REG: 32.00 [redacted] [redacted]

BOLLINGER, JAMES 1094627 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 05/02 | 415p | | 231a*L | | | | 10.00 | 10.00 |
| Tue 05/03 | 415p | | 231a*L | | | | 10.00 | 20.00 |
| Wed 05/04 | 228p*E | | 1232a | | | | 10.00 | 30.00 |
| Thu 05/05 | 215p*E | | 230a*L | | | | 12.00 | 42.00 |
| Fri 05/06 | 152p*E | | 1006p*E | | | | 8.00 | 50.00 |
| Sat 05/07 | 730a | | 530p | | | | 10.00 | 60.00 |
| Sun 05/08 ABSENT | | | | | | | (8.00) | |

Remove Punch 2 05/07 721a
Add Punch 2 05/07 730a

Acct:300

Page
05/16/2011

.etail Report
.us pay period
.cted accounts, all pay rules, all Timeclock groups
(8.00)
..n 05/15 ABSENT

ACCIDENTALE, BRIAN 1094619 300
ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS
Mon 05/09 416p 1232a 8.00 8.00
Tue 05/10 415p 1234a 8.00 16.00
Wed 05/11 415p 1233a 8.00 24.00
Thu 05/12 411p 233a*L 10.00 34.00
Fri 05/13 412p 1233a 8.00 42.00
Sat 05/14 725a 1233p 5.00 47.00
Sun 05/15 ABSENT (8.00)
Remove Punch 4 05/14 706a
Add Punch 4 05/14 725a

Acct:300 REG: 40.00 [redacted]

ADAMS, ERIK 1094630 300
ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS
Mon 05/09 405p 230a*L 10.00 10.00
Tue 05/10 214p*E 1230a 10.00 20.00
Wed 05/11 214p*E 1230a 10.00 30.00
Thu 05/12 425p VAC 8.00
Fri 05/13 208p*E 1230a 10.00 40.00
Sat 05/14 ABSENT (8.00)
Sun 05/15 ABSENT (8.00)
Add Hours 4 05/12 425p VAC (Excused) (Home) 8.00
Remove Punch 4 05/13 225p

Acct:300 REG: 32.00 [redacted].00 [redacted]00

ADAMS, TRACEY 1094628 300
ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS
Mon 05/09 426p 1232a 8.00 8.00
Tue 05/10 421p 233a*L 10.00 18.00
Wed 05/11 418p 1230a 8.00 26.00
Thu 05/12 428p 1233a 8.00 34.00
Fri 05/13 425p 1231a 8.00 42.00
Sat 05/14 ABSENT (8.00)
Sun 05/15 ABSENT (8.00)
Remove Punch 4 05/10 424p

Acct:300 REG: 40.00 [redacted]

ARROYO, LUZMARIA 094664 300
ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS
Mon 05/09 418p 1230a 8.00 8.00
Tue 05/10 231p*E 1030p*E 7.50 15.50
Wed 05/11 425p VAC 8.00
Thu 05/12 231p*E 1231a 9.50 25.00
Fri 05/13 426p 1232a 8.00 33.00
Sat 05/14 ABSENT (8.00)
Sun 05/15 ABSENT (8.00)
Add Punch 4 05/10 1030p
Add Hours 4 05/11 425p VAC (Excused) (Home) 8.00

Acct:300 [redacted] [redacted].50 [redacted]

BEIER, RAYMOND 1094642 300
ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS
Mon 05/09 425p VAC 8.00

Punch Detail Report — Page
Previous pay period — 05/23/2011
Selected accounts, all pay rules, all Timeclock groups

ARROYO, LUZMARIA 094664 300

| | ID | IN | DEP ACTIVITY | OUT | ID | IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|
| Mon 05/16 | | 425p | | 230a*L | | | | | 10.00 | 10.00 |
| Tue 05/17 | | 421p | | 1030p*E | | | | | 6.00 | 16.00 |
| Tue 05/17 | | 1030p | VAC | | | | | | 2.00 | |
| Wed 05/18 | | 425p | VAC | | | | | | 8.00 | |
| Thu 05/19 | | 228p*E | | 1230a | | | | | 10.00 | 26.00 |
| Fri 05/20 | | 414p | | 1231a | | | | | 8.00 | 34.00 |
| Sat 05/21 | | ABSENT | | | | | | | (8.00) | |
| Sun 05/22 | | ABSENT | | | | | | | (8.00) | |

Add Hours 4 05/17 1030p VAC (Excused) [Home] 2.00
Add Hours 4 05/18 425p VAC (Excused) [Home] 8.00

Acct:300
REG: 30.00 [redacted] [redacted]

BEIER, RAYMOND 1094642 300

| | ID | IN | DEP ACTIVITY | OUT | ID | IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|
| Mon 05/16 | | 427p | | 1230a | | | | | 8.00 | 8.00 |
| Tue 05/17 | | 425p | | 1232a | | | | | 8.00 | 16.00 |
| Wed 05/18 | | 425p | | 1230a | | | | | 8.00 | 24.00 |
| Thu 05/19 | | 425p | | 1233a | | | | | 8.00 | 32.00 |
| Fri 05/20 | | 425p | VAC | | | | | | 8.00 | |
| Sat 05/21 | | ABSENT | | | | | | | (8.00) | |
| Sun 05/22 | | ABSENT | | | | | | | (8.00) | |

Add Punch 4 05/17 425p
Add Punch 4 05/18 425p
Add Punch 4 05/19 425p
Add Hours 4 05/20 425p VAC (Excused) [Home] 8.00

Acct:300
REG: 32.00 [redacted]

BOLLINGER, JAMES 1094627 300

| | ID | IN | DEP ACTIVITY | OUT | ID | IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|
| Mon 05/16 | | 416p | | 232a*L | | | | | 10.00 | 10.00 |
| Tue 05/17 | | 425p | | 231a*L | | | | | 10.00 | 20.00 |
| Wed 05/18 | | 225p*E | | 1231a | | | | | 10.00 | 30.00 |
| Thu 05/19 | | 222p*E | | 1233a | | | | | 10.00 | 40.00 |
| Fri 05/20 | | 1155a | | 1000p | | | | | 10.00 | 50.00 |
| Sat 05/21 | | 726a | | 330p | | | | | 8.00 | 58.00 |
| Sun 05/22 | | ABSENT | | | | | | | (8.00) | |

Remove Punch 4 05/20 1145a
Add Punch 4 05/20 1155a

Acct:300
REG: 40.00 [redacted]

BOUIE, MARSHEELA 0001094653 300

| | ID | IN | DEP ACTIVITY | OUT | ID | IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|
| Mon 05/16 | | 419p | | 1238a | | | | | 8.00 | 8.00 |
| Tue 05/17 | | 420p | | 1235a | | | | | 8.00 | 16.00 |
| Wed 05/18 | | 421p | | 1231a | | | | | 8.00 | 24.00 |
| Thu 05/19 | | 421p | | 1232a | | | | | 8.00 | 32.00 |
| Fri 05/20 | | 424p | | 1236a | | | | | 8.00 | 40.00 |
| Sat 05/21 | | ABSENT | | | | | | | (8.00) | |
| Sun 05/22 | | ABSENT | | | | | | | (8.00) | |

Acct:300
REG: 40.00

BROWN, REGINALD 1094643 300

| | ID | IN | DEP ACTIVITY | OUT | ID | IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|
| Mon 05/16 | | 422p | | 230a*L | | | | | 10.00 | 10.00 |
| Tue 05/17 | | 429p | | 230a*L | | | | | 10.00 | 20.00 |
| Wed 05/18 | | 420p | | 230a*L | | | | | 10.00 | 30.00 |
| Thu 05/19 | | 420p | | 1231a | | | | | 8.00 | 38.00 |

Detail Report
Above pay period
Selected accounts, all pay rules, all Timeclock groups

Page
05/31/2011

ARROYO, LUZMARIA 094664 300

| ID | IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 05/23 | 402p | | 1231a | | | | 8.00 | 8.00 |
| Tue 05/24 | 425p | | 1030p*E | | | | 6.00 | 14.00 |
| Tue 05/24 | 1030p VAC | | | | | | 2.00 | |
| Wed 05/25 | 425p | | 1230a | | | | 8.00 | 22.00 |
| Thu 05/26 | 420p | | 1231a | | | | 8.00 | 30.00 |
| Fri 05/27 | 435p*L | | 1237a | | | | 7.75 | 37.75 |
| Sat 05/28 ABSENT | | | | | | | (8.00) | |
| Sun 05/29 ABSENT | | | | | | | (8.00) | |

Remove Punch 4 05/24 356p
Add Punch 4 05/24 425p
Add Hours 4 05/24 1030p VAC (Excused) [Home] 2.00
Remove Punch 4 05/25 356p
Add Punch 4 05/25 425p
Add Punch 4 05/26 1230a

Acct:300 [redacted] VAC: 2.00

BEIER, RAYMOND 1094642 300

| ID | IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 05/23 | 425p | | 232a*L | | | | 10.00 | 10.00 |
| Tue 05/24 | 417p | | 230a*L | | | | 10.00 | 20.00 |
| Wed 05/25 | 417p | | 1230a | | | | 8.00 | 28.00 |
| Thu 05/26 | 425p VAC | | | | | | 8.00 | |
| Fri 05/27 | 417p | | 1230a | | | | 8.00 | 36.00 |
| Sat 05/28 ABSENT | | | | | | | (8.00) | |
| Sun 05/29 ABSENT | | | | | | | (8.00) | |

Add Punch 4 05/23 425p
Add Hours 4 05/26 425p VAC (Excused) [Home] 8.00

Acct:300 REG: 32.00 OT: 4.00 VAC: 8.00

BOLLINGER, JAMES 1094627 300

| ID | IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 05/23 | 425p VAC | | | | | | 8.00 | |
| Tue 05/24 | 418p | | 1231a | | | | 8.00 | 8.00 |
| Wed 05/25 | 439p*L | | 1231a | | | | 7.75 | 15.75 |
| Thu 05/26 | 415p | | 1232a | | | | 8.00 | 23.75 |
| Fri 05/27 | 425p VAC | | | | | | 8.00 | |
| Sat 05/28 | 721a | | 330p | | | | 8.00 | 31.75 |
| Sun 05/29 ABSENT | | | | | | | (8.00) | |

Add Hours 4 05/23 425p VAC (Excused) [Home] 8.00
Add Hours 4 05/27 425p VAC (Excused) [Home] 8.00

Acct:300 [redacted] OT: 8.00 VAC: 16.00

BOOIE, MARSHEELA 0001094653 300

| ID | IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 05/23 | 425p | | 1234a | | | | 8.00 | 8.00 |
| Tue 05/24 | 425p VAC | | | | | | 8.00 | |
| Wed 05/25 | 422p | | 1234a | | | | 8.00 | 16.00 |
| Thu 05/26 | 423p | | 1239a | | | | 8.00 | 24.00 |
| Fri 05/27 | 425p VAC | | | | | | 8.00 | |
| Sat 05/28 ABSENT | | | | | | | (8.00) | |
| Sun 05/29 ABSENT | | | | | | | (8.00) | |

Add Hours 4 05/24 425p VAC (Excused) [Home] 8.00
Add Hours 4 05/27 425p VAC (Excused) [Home] 8.00

Acct:300 REG: 24.00 VAC: 16.00

:all Report
/ pay period
ed accounts, all pay rules, all Timeclock groups

ABENTALE, BRIAN 1094619 300
ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS
8.00
Mon 05/30 1200a HOL 8.00 8.00
Tue 05/31 414p 1233a 8.00 16.00
Wed 06/01 415p 1235a 8.00 24.00
Thu 06/02 416p 1239a 8.00 32.00
Fri 06/03 415p 1234a (8.00)
Sat 06/04 ABSENT (8.00)
Sun 06/05 ABSENT
Add OTHol 998 05/30 1200a 8.00

Acct:300 REG: 32.00 HOL: 8.00

ADAMS, ERIK 1094630 300
ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS
8.00
Mon 05/30 1200a HOL 8.00 8.00
Tue 05/31 423p 1230a 10.00 18.00
Wed 06/01 225p*E 1230a 8.00
Thu 06/02 430p VAC 10.00 28.00
Fri 06/03 225p*E 1230a (8.00)
Sat 06/04 ABSENT (8.00)
Sun 06/05 ABSENT
Add OTHol 998 05/30 1200a 8.00
Add Punch 10 06/02 1230a
Add Hours 10 06/02 430p VAC (Excused) [Home] 8.00
Remove Punch 10 06/03 220p
Add Punch 10 06/03 225p

Acct:300 REG: 24.00 [redacted] [redacted]
HOL: 8.00

ADAMS, TRACEY 1094629 300
ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS
8.00
Mon 05/30 1200a HOL 8.00 8.00
Tue 05/31 420p 1231a 8.00 16.00
Wed 06/01 420p 1232a 8.00 24.00
Thu 06/02 413p 1232a 8.00 32.00
Fri 06/03 415p 1232a (8.00)
Sat 06/04 ABSENT (8.00)
Sun 06/05 ABSENT
Add OTHol 998 05/30 1200a 8.00
Remove Punch 10 06/01 419p

Acct:300 REG: 32.00 HOL: 8.00

ARROYO, LUZMARIA 094664 300
ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS
8.00
Mon 05/30 1200a HOL (8.00)
Tue 05/31 ABSENT (8.00)
Wed 06/01 ABSENT (8.00)
Thu 06/02 ABSENT (8.00)
Fri 06/03 ABSENT (8.00)
Sat 06/04 ABSENT (8.00)
Sun 06/05 ABSENT
Add OTHol 998 05/30 1200a 8.00

Acct:300 HOL: 8.00

BEIER, RAYMOND 1094642 300
ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS
8.00
Mon 05/30 1200a HOL 10.00 10.00
Tue 05/31 424p 230a*L 10.00 20.00
Wed 06/01 426p 230a*L

Punch Detail Report
Previous pay period
Selected accounts, all pay rules, all Timeclock groups

Page
06/13/2011

ADAMS, TRACEY 1094628 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 06/06 | 419p | | 1231a | | | | 8.00 | 8.00 |
| Tue 06/07 | 413p | | 1231a | | | | 8.00 | 16.00 |
| Wed 06/08 | 426p | | 1235a | | | | 8.00 | 24.00 |
| Thu 06/09 | ABSENT | | | | | | (8.00) | |
| Fri 06/10 | 425p | VAC | | | | | 8.00 | |
| Sat 06/11 | ABSENT | | | | | | (8.00) | |
| Sun 06/12 | ABSENT | | | | | | (8.00) | |

Add Hours 4 06/10 425p VAC (Excused) (Home) 8.00

Acct:300 [redacted] [redacted]

ARROYO, LUSMARIA 094654 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS |
|---|---|---|---|---|---|---|---|
| Mon 06/06 | ABSENT | | | | | | (8.00) |
| Tue 06/07 | ABSENT | | | | | | (8.00) |
| Wed 06/08 | ABSENT | | | | | | (8.00) |
| Thu 06/09 | ABSENT | | | | | | (8.00) |
| Fri 06/10 | ABSENT | | | | | | (8.00) |
| Sat 06/11 | ABSENT | | | | | | (8.00) |
| Sun 06/12 | ABSENT | | | | | | (8.00) |

BEIER, RAYMOND 1094612 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 06/06 | 425p | BER | | | | | 8.00 | |
| Tue 06/07 | 425p | BER | | | | | 8.00 | |
| Wed 06/08 | 425p | BER | | | | | 8.00 | |
| Thu 06/09 | 421p | | 1231a | | | | 8.00 | 8.00 |
| Fri 06/10 | 425p | BER | | | | | 8.00 | |
| Sat 06/11 | ABSENT | | | | | | (8.00) | |
| Sun 06/12 | ABSENT | | | | | | (8.00) | |

Add Hours 4 06/06 425p BER (Excused) (Home) 8.00
Add Hours 4 06/07 425p BER (Excused) (Home) 8.00
Add Hours 4 06/08 425p BER (Excused) (Home) 8.00
Add Hours 4 06/10 425p BER (Excused) (Home) 8.00

Acct:300
REG: 8.00 [redacted]

BOLLINGER, JAMES 1094627 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS |
|---|---|---|---|---|---|---|---|
| Mon 06/06 | ABSENT | | | | | | (8.00) |
| Tue 06/07 | ABSENT | | | | | | (8.00) |
| Wed 06/08 | ABSENT | | | | | | (8.00) |
| Thu 06/09 | ABSENT | | | | | | (8.00) |
| Fri 06/10 | ABSENT | | | | | | (8.00) |
| Sat 06/11 | ABSENT | | | | | | (8.00) |
| Sun 06/12 | ABSENT | | | | | | (8.00) |

BOWIE, MARSHEELA 0001094653 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 06/06 | 421p | | 1238a | | | | 8.00 | 8.00 |
| Tue 06/07 | 422p | | 1252a | | | | 8.00 | 16.00 |
| Wed 06/08 | 420p | | 1239a | | | | 8.00 | 24.00 |
| Thu 06/09 | 422p | | 1232a | | | | 8.00 | 32.00 |
| Fri 06/10 | 422p | | 1232a | | | | 8.00 | 40.00 |
| Sat 06/11 | 722a | | 1234p | | | | 5.00 | 45.00 |
| Sun 06/12 | ABSENT | | | | | | (8.00) | |

Acct:300
REG: 40.00 [redacted]

Page
06/20/2011

Report
pay period
accounts, all pay rules, all Timeclock groups

06/15 ABSENT (8.00)
06/16 ABSENT (8.00)
06/17 ABSENT (8.00)
Sat 06/18 ABSENT (8.00)
Sun 06/19 ABSENT (8.00)
Add Hours 4 06/13 425p VAC (Excused) [Home] 10.00

Acct:300 [redacted]

ARROYO, LUZMARIA 094664 300
ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS
Mon 06/13 ABSENT (8.00) [redacted]
Tue 06/14 ABSENT (8.00)
Wed 06/15 ABSENT (8.00)
Thu 06/16 ABSENT (8.00)
Fri 06/17 ABSENT (8.00)
Sat 06/18 ABSENT (8.00)
Sun 06/19 ABSENT (8.00)

BEIER, RAYMOND 1094642 300
ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS
Mon 06/13 425p BER 8.00
Tue 06/14 425p BER 8.00
Wed 06/15 425p BER 8.00
Thu 06/16 425p BER 8.00
Fri 06/17 425p 1230a 8.00 8.00
Sat 06/18 ABSENT (8.00)
Sun 06/19 ABSENT (8.00)
Add Hours 4 06/13 425p BER (Excused) [Home] 8.00
Add Hours 4 06/14 425p BER (Excused) [Home] 8.00
Add Hours 4 06/15 425p BER (Excused) [Home] 8.00
Add Hours 4 06/16 425p BER (Excused) [Home] 8.00

Acct:300 REG: 8.00 [redacted]

BOLLINGER, JAMES 1094627 300
ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS
Mon 06/13 ABSENT (8.00)
Tue 06/14 ABSENT (8.00) [redacted]
Wed 06/15 ABSENT (8.00)
Thu 06/16 ABSENT (8.00)
Fri 06/17 ABSENT (8.00)
Sat 06/18 ABSENT (8.00)
Sun 06/19 ABSENT (8.00)

AES

BOUIE, MARSHELLA 0001094653 300
ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS
Mon 06/13 ABSENT (8.00)
Tue 06/14 423p 1240a 8.00 8.00
Wed 06/15 422p 1233a 8.00 16.00
Thu 06/16 422p 1236a 8.00 24.00
Fri 06/17 423p 1245a 8.25 32.25
Sat 06/18 722a 1231p 5.00 37.25
Sun 06/19 ABSENT (8.00)
Remove Punch 10 06/18 712a
Add Punch 10 06/18 722a

Acct:300 REG: 32.00 [redacted].25

BROWN, REGINALD 1094643 300
ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS
Mon 06/13 420p 236a*L 10.00 10.00

...ch Detail Report
Previous pay period
Selected accounts, all pay rules, all Timeclock groups

Page 0007
06/27/2011 8:42a

ARROYO, LUZMARIA 094664 300

| ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 06/20 | ABSENT | | | | | | | | | (8.00) | |
| Tue 06/21 | ABSENT | | | | | | | | | (8.00) | |
| Wed 06/22 | ABSENT | | | | | | | | | (8.00) | |
| Thu 06/23 | ABSENT | | | | | | | | | (8.00) | |
| Fri 06/24 | ABSENT | | | | | | | | | (8.00) | |
| Sat 06/25 | ABSENT | | | | | | | | | (8.00) | |
| Sun 06/26 | ABSENT | | | | | | | | | (8.00) | |

NC 40

BEIER, RAYMOND 1094642 300

| ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 06/20 | 419p | | | 1230a | | | | | | 8.00 | 8.00 |
| Tue 06/21 | 425p | | | 1231a | | | | | | 8.00 | 16.00 |
| Wed 06/22 | 427p | | | 1237a | | | | | | 8.00 | 24.00 |
| Thu 06/23 | 424p | | | 1232a | | | | | | 8.00 | 32.00 |
| Fri 06/24 | 425p | | | 1231a | | | | | | 8.00 | 40.00 |
| Sat 06/25 | ABSENT | | | | | | | | | (8.00) | |
| Sun 06/26 | ABSENT | | | | | | | | | (8.00) | |

Acct:300 REG: 40.00

BOLLINGER, JAMES 1094627 300

| ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 06/20 | ABSENT | | | | | | | | | (8.00) | |
| Tue 06/21 | ABSENT | | | | | | | | | (8.00) | |
| Wed 06/22 | ABSENT | | | | | | | | | (8.00) | |
| Thu 06/23 | ABSENT | | | | | | | | | (8.00) | |
| Fri 06/24 | ABSENT | | | | | | | | | (8.00) | |
| Sat 06/25 | ABSENT | | | | | | | | | (8.00) | |
| Sun 06/26 | ABSENT | | | | | | | | | (8.00) | |

A&S 40

BOUIE, MARSHEELA 0001094653 300

| ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 06/20 | 423p | | | 1233a | | | | | | 8.00 | 8.00 |
| Tue 06/21 | 422p | | | 1235a | | | | | | 8.00 | 16.00 |
| Wed 06/22 | 422p | | | 1234a | | | | | | 8.00 | 24.00 |
| Thu 06/23 | 423p | | | 1231a | | | | | | 8.00 | 32.00 |
| Fri 06/24 | 424p | | | 1232a | | | | | | 8.00 | 40.00 |
| Sat 06/25 | 722a | | | 1230p | | | | | | 5.00 | 45.00 |
| Sun 06/26 | ABSENT | | | | | | | | | (8.00) | |

Acct:300 REG: 40.00 OT: 5.00

BROWN, REGINALD 1094645 300

| ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 06/20 | ABSENT | | | | | | | | | (8.00) | |
| Tue 06/21 | 420p | | | 1233a | | | | | | 8.00 | 8.00 |
| Wed 06/22 | 425p VAC | | | | | | | | | 8.00 | |
| Thu 06/23 | 425p VAC | | | | | | | | | 8.00 | |
| Fri 06/24 | 420p | | | 1232a | | | | | | 8.00 | 16.00 |
| Sat 06/25 | 723a | | | 1230p | | | | | | 5.00 | 21.00 |
| Sun 06/26 | ABSENT | | | | | | | | | (8.00) | |

Add Hours 4 06/22 425p VAC (Excused) [Home] 8.00
Add Hours 4 06/23 425p VAC (Excused) [Home] 8.00

Acct:300 REG: 16.00 OT: 5.00 VAC: 16.00

CAMPBELL, KEVIN 1094638 300

| ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS |
|---|---|---|---|---|---|---|---|---|---|---|
| Mon 06/20 | 425p VAC | | | | | | | | | 40.00 |
| Tue 06/21 | ABSENT | | | | | | | | | (8.00) |
| Wed 06/22 | ABSENT | | | | | | | | | (8.00) |

Page
07/05/2011

...ail Report
...s pay period
...ed accounts, all pay rules, all Timeclock groups

| | | | |
|---|---|---|---|
| ...e 06/28 428p | 1232a | 8.00 | 16.00 |
| Wed 06/29 417p | 1232a | 8.00 | 24.00 |
| Thu 06/30 422p | 1232a | 8.00 | 32.00 |
| Fri 07/01 422p | 1233a | 8.00 | 40.00 |
| Sat 07/02 720a | 1231p | 5.00 | 45.00 |
| Sun 07/03 720a | 1231p | 5.00 | 50.00 |

Remove Punch 6 07/02 702a
Remove Punch 6 07/02 714a
Add Punch 6 07/02 720a
Remove Punch 6 07/03 712a
Add Punch 6 07/03 720a

Acct:300 REG: 40.00 OT: 5.00 O: 5.00

ARROYO, LUZMARIA 094664 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS |
|---|---|---|---|---|---|---|
| Mon 06/27 ABSENT | | | | | | (8.00) |
| Tue 06/28 ABSENT | | | | | | (8.00) |
| Wed 06/29 ABSENT | | | | | | (8.00) |
| Thu 06/30 ABSENT | | | | | | (8.00) |
| Fri 07/01 ABSENT | | | | | | (8.00) |
| Sat 07/02 ABSENT | | | | | | (8.00) |
| Sun 07/03 ABSENT | | | | | | |

BEIER, RAYMOND 1094642 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 06/27 423p | | 1236a | | | | 8.00 | 8.00 |
| Tue 06/28 424p | | 1233a | | | | 8.00 | 16.00 |
| Wed 06/29 426p | | 1231a | | | | 8.00 | 24.00 |
| Thu 06/30 425p | | 1237a | | | | 8.00 | 32.00 |
| Fri 07/01 425p | | 1230a | | | | 8.00 | 40.00 |
| Sat 07/02 ABSENT | | | | | | (8.00) | |
| Sun 07/03 ABSENT | | | | | | (8.00) | |

Acct:300 REG: 40.00

BOLLINGER, JAMES 1094627 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 06/27 ABSENT | | | | | | (8.00) | |
| Tue 06/28 415p | | 1235a | | | | 8.00 | 8.00 |
| Wed 06/29 417p | | 1239a | | | | 8.00 | 16.00 |
| Thu 06/30 413p | | 1230a | | | | 8.00 | 24.00 |
| Fri 07/01 415p | | 1231a | | | | 8.00 | 32.00 |
| Sat 07/02 1018a | | 330p | | | | 5.00 | 37.00 |
| Sun 07/03 719a | | 1234p | | | | 5.00 | 42.00 |

Acct:300 REG: 32.00 OT: 5.00 O: 5.00

BOUIE, MARSHEELA 0001094653 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 06/27 422p | | 1235a | | | | 8.00 | 8.00 |
| Tue 06/28 425p | | 1233a | | | | 8.00 | 16.00 |
| Wed 06/29 424p | | 1234a | | | | 8.00 | 24.00 |
| Thu 06/30 427p | | 1233a | | | | 8.00 | 32.00 |
| Fri 07/01 426p | | 1231a | | | | 8.00 | 40.00 |
| Sat 07/02 720a | | 1231p | | | | 5.00 | 45.00 |
| Sun 07/03 723a | | 1237p | | | | 5.00 | 50.00 |

Acct:300 REG: 40.00 OT: 5.00 O: 5.00

BROWN, REGINALD 1094643 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 06/27 422p | | 231a*L | | | | 10.00 | 10.00 |

Page
07/11/2011

-ch Detail Report
-evious pay period
-elected accounts, all pay rules, all Timeclock groups

ACCIDENTALE, BRIAN 1094619 300
ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS
Mon 07/04 1200a HOL 8.00
Tue 07/05 412p 1237a 8.00 8.00
Wed 07/06 430p 1235a 8.00 16.00
Thu 07/07 415p 1232a 8.00 24.00
Fri 07/08 419p 1235a 8.00 32.00
Sat 07/09 ABSENT (8.00)
Sun 07/10 ABSENT (8.00)
Add OTHol 998 07/04 1200a 8.00
Add Punch 10 07/06 430p

Acct:300 REG: 32.00 HOL: 8.00

ADAMS, ERIK 1094630 300
ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS
Mon 07/04 1200a HOL 8.00
Tue 07/05 220p*E 1230a 10.00 10.00
Wed 07/06 219p*E 1230a 10.00 20.00
Thu 07/07 430p VAC 8.00
Fri 07/08 223p*E 1230a 10.00 30.00
Sat 07/09 720a 1230p 5.00 35.00
Sun 07/10 ABSENT (8.00)
Add OTHol 998 07/04 1200a 8.00
Add Hours 10 07/07 430p VAC (Excused) [Home] 8.00

Acct:300 REG: 24.00 [redacted] [redacted]
HOL: 8.00

ADAMS, TRACEY 1094628 300
ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS
Mon 07/04 1200a HOL 8.00
Tue 07/05 430p VAC 32.00
Wed 07/06 ABSENT (8.00)
Thu 07/07 ABSENT (8.00)
Fri 07/08 ABSENT (8.00)
Sat 07/09 ABSENT (8.00)
Sun 07/10 ABSENT (8.00)
Add OTHol 998 07/04 1200a 8.00
Add Hours 10 07/05 430p VAC (Excused) [Home] 32.00

Acct:300 [redacted] HOL: 8.00

ARROYO, LUZMARIA 094664 300
ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS
Mon 07/04 1200a HOL 8.00
Tue 07/05 ABSENT (8.00)
Wed 07/06 ABSENT (8.00)
Thu 07/07 ABSENT (8.00)
Fri 07/08 ABSENT (8.00)
Sat 07/09 ABSENT (8.00)
Sun 07/10 ABSENT (8.00)
Add OTHol 998 07/04 1200a 8.00

Acct:300 HOL: 8.00

BEIER, RAYMOND 1054642 300
ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS
Mon 07/04 1200a HOL 8.00
Tue 07/05 422p 1233a 8.00 8.00
Wed 07/06 ABSENT (8.00)
Thu 07/07 415p 1230a 8.00 16.00

Punch Detail Report
Previous pay period
Selected accounts, all pay rules, all timeclock groups

Page
07/18/2011

Fri 07/15 219p*E 1231a 10.00 40.00
Sat 07/16 ABSENT (8.00)
Sun 07/17 ABSENT (8.00)
Add Hours 4 07/14 425p VAC (Excused) [Home] 8.00

Acct:300
REG: 32.00 [redacted] VAC: 8.00 [redacted]

ADAMS, TRACEY 1094628 300

| | ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 07/11 | | 424p | | | 238a*L | | | | | | 10.00 | 10.00 |
| Tue 07/12 | | 424p | | | 1232a | | | | | | 8.00 | 18.00 |
| Wed 07/13 | | 425p | | | 1234a | | | | | | 8.00 | 26.00 |
| Thu 07/14 | | 426p | | | 1230a | | | | | | 8.00 | 34.00 |
| Fri 07/15 | | 425p | | VAC | | | | | | | 8.00 | |
| Sat 07/16 | | ABSENT | | | | | | | | | (8.00) | |
| Sun 07/17 | | ABSENT | | | | | | | | | (8.00) | |

Add Hours 4 07/15 425p VAC (Excused) [Home] 8.00

Acct:300
REG: 32.00 [redacted].00 [redacted]

ARROYO, LUZMARIA 094664 300

| | ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 07/11 | | 230p*B | | | 1231a | | | | | | 10.00 | 10.00 |
| Tue 07/12 | | 425p | | | 1230a | | | | | | 8.00 | 18.00 |
| Wed 07/13 | | 415p | | | 1230a | | | | | | 8.00 | 26.00 |
| Thu 07/14 | | 425p | | VAC | | | | | | | 8.00 | |
| Fri 07/15 | | 425p | | VAC | | | | | | | 8.00 | |
| Sat 07/16 | | ABSENT | | | | | | | | | (8.00) | |
| Sun 07/17 | | ABSENT | | | | | | | | | (8.00) | |

Add Punch 397 07/11 230p
Remove Punch 397 07/11 424p
Add Hours 4 07/14 425p VAC (Excused) [Home] 8.00
Add Hours 4 07/15 425p VAC (Excused) [Home] 8.00

Acct:300
REG: 24.00 [redacted] [redacted]

BEIER, RAYMOND 1094642 300

| | ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 07/11 | | 423p | | | 1231a | | | | | | 8.00 | 8.00 |
| Tue 07/12 | | 425p | | VAC | | | | | | | 8.00 | |
| Wed 07/13 | | 417p | | | 1230a | | | | | | 8.00 | 16.00 |
| Thu 07/14 | | 427p | | | 1232a | | | | | | 8.00 | 24.00 |
| Fri 07/15 | | 416p | | | 230a*L | | | | | | 10.00 | 34.00 |
| Sat 07/16 | | ABSENT | | | | | | | | | (8.00) | |
| Sun 07/17 | | ABSENT | | | | | | | | | (8.00) | |

Add Hours 4 07/12 425p VAC (Excused) [Home] 8.00

Acct:300
REG: 32.00 [redacted] [redacted]

BOLLINGER, JAMES 1094627 300

| | ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 07/11 | | 415p | | | 1232a | | | | | | 8.00 | 8.00 |
| Tue 07/12 | | 215p*E | | | 1232a | | | | | | 10.00 | 18.00 |
| Wed 07/13 | | 223p*E | | | 1234a | | | | | | 10.00 | 28.00 |
| Thu 07/14 | | 417p | | | 231a*L | | | | | | 10.00 | 38.00 |
| Fri 07/15 | | 146p*E | | | 1000p*E | | | | | | 8.00 | 46.00 |
| Sat 07/16 | | 723a | | | 330p | | | | | | 8.00 | 54.00 |
| Sun 07/17 | | ABSENT | | | | | | | | | (8.00) | |

Acct:300
REG: 40.00 [redacted]

Detail Report
...us pay period
...cted accounts, all pay rules, all timeclock groups

Page
07/25/2011

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 07/18 | 221p*E | | 1230a | | | | 10.00 | 10.00 |
| Tue 07/19 | 209p*E | | 1230a | | | | 10.00 | 20.00 |
| Wed 07/20 | 205p*E | | 1232a | | | | 10.00 | 30.00 |
| Thu 07/21 | 425p VAC | | | | | | 8.00 | |
| Fri 07/22 | 225p*E | | 1230a | | | | 10.00 | 40.00 |
| Sat 07/23 | ABSENT | | | | | | (8.00) | |
| Sun 07/24 | ABSENT | | | | | | (8.00) | |

Add Hours 4 07/21 425p VAC (Excused) [Home] 8.00
Add Punch 4 07/22 225p

Acct:300 REG: 32.00 [redacted] VAC [redacted]

ADAMS, TRACEY 1094628 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 07/18 | 426p | | 1232a | | | | 8.00 | 8.00 |
| Tue 07/19 | 424p | | 1231a | | | | 8.00 | 16.00 |
| Wed 07/20 | 426p | | 1231a | | | | 8.00 | 24.00 |
| Thu 07/21 | 425p VAC | | | | | | 8.00 | |
| Fri 07/22 | 425p VAC | | | | | | 8.00 | |
| Sat 07/23 | ABSENT | | | | | | (8.00) | |
| Sun 07/24 | ABSENT | | | | | | (8.00) | |

Add Hours 4 07/21 425p VAC (Excused) [Home] 8.00
Add Hours 4 07/22 425p VAC (Excused) [Home] 8.00

Acct:300 REG: 24.00 [redacted]

ARROYO, LUZMARIA 094664 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 07/18 | 424p | | 1232a | | | | 8.00 | 8.00 |
| Tue 07/19 | 634p*L | | 235a*L | | | | 7.75 | 15.75 |
| Wed 07/20 | 405p | | 1231a | | | | 8.00 | 23.75 |
| Thu 07/21 | 426p | | 1230a | | | | 8.00 | 31.75 |
| Fri 07/22 | 422p | | 230a*L | | | | 10.00 | 41.75 |
| Sat 07/23 | ABSENT | | | | | | (8.00) | |
| Sun 07/24 | ABSENT | | | | | | (8.00) | |

Acct:300 [redacted] [redacted]

BEIER, RAYMOND 1094642 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 07/18 | 423p | | 231a*L | | | | 10.00 | 10.00 |
| Tue 07/19 | 418p | | 1234a | | | | 8.00 | 18.00 |
| Wed 07/20 | 415p | | 1232a | | | | 8.00 | 26.00 |
| Thu 07/21 | 426p | | 1232a | | | | 8.00 | 34.00 |
| Fri 07/22 | 413p | | 230a*L | | | | 10.00 | 44.00 |
| Sat 07/23 | ABSENT | | | | | | (8.00) | |
| Sun 07/24 | ABSENT | | | | | | (8.00) | |

Acct:300 REG: 40.00 [redacted]

BOLLINGER, JAMES 1094627 300

| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 07/18 | 217p*E | | 1236a | | | | 10.00 | 10.00 |
| Tue 07/19 | 218p*E | | 1235a | | | | 10.00 | 20.00 |
| Wed 07/20 | 425p VAC | | | | | | 8.00 | |
| Thu 07/21 | 425p VAC | | | | | | 8.00 | |
| Fri 07/22 | 1151a | | 1007p | | | | 10.00 | 30.00 |
| Sat 07/23 | 725a | | 530p | | | | 10.00 | 40.00 |
| Sun 07/24 | ABSENT | | | | | | (8.00) | |

Add Hours 4 07/20 425p VAC (Excused) [Home] 8.00
Add Hours 4 07/21 425p VAC (Excused) [Home] 8.00
Remove Punch 4 07/23 710a
Add Punch 4 07/23 725a

Detail Report
..ious pay period
..ected accounts, all pay rules, all timeclock groups

Page
08/01/2011

ARROYO, LUZMARIA 094654 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 07/25 410p | | 1230a | | | | 8.00 | 8.00 |
| Tue 07/26 655p*L | | 230a*L | | | | 7.50 | 15.50 |
| Wed 07/27 423p | | 230a*L | | | | 10.00 | 25.50 |
| Thu 07/28 422p | | 1230a | | | | 8.00 | 33.50 |
| Fri 07/29 ~~1262p~~ Tardy | | 1000p | | | | 10.00 | 43.50 |
| Sat 07/30 726a | | 530p | | | | 10.00 | 53.50 |
| Sun 07/31 ABSENT | | | | | | (8.00) | |

Add Punch 4 07/27 230a

← 8 Reg - 1.98 OT —

Acct:300 REG: [redacted] [redacted]

BEIER, RAYMOND 1094642 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 07/25 415p | | 230a*L | | | | 10.00 | 10.00 |
| Tue 07/26 424p | | 1230a | | | | 8.00 | 18.00 |
| Wed 07/27 421p | | 1231a | | | | 8.00 | 26.00 |
| Thu 07/28 422p | | 1231a | | | | 8.00 | 34.00 |
| Fri 07/29 425p | | 1231a | | | | 8.00 | 42.00 |
| Sat 07/30 ABSENT | | | | | | (8.00) | |
| Sun 07/31 ABSENT | | | | | | (8.00) | |

Acct:300 REG: 40.00 [redacted]

BOLLINGER, JAMES 1094627 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 07/25 411p | | 1235a | | | | 8.00 | 8.00 |
| Tue 07/26 423p | | 232a*L | | | | 10.00 | 18.00 |
| Wed 07/27 217p*E | | 1230a | | | | 10.00 | 28.00 |
| Thu 07/28 216p*E | | 1232a | | | | 10.00 | 38.00 |
| Fri 07/29 1155a | | 1006p | | | | 10.00 | 48.00 |
| Sat 07/30 724a | | 335p | | | | 8.00 | 56.00 |
| Sun 07/31 ABSENT | | | | | | (8.00) | |

Remove Punch 4 07/29 1145a
Add Punch 4 07/29 1155a

Acct:300 REG: 40.00 [redacted]

BOUIE, MARSHEELA 0001094653 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 07/25 423p | | 232a*L | | | | 10.00 | 10.00 |
| Tue 07/26 422p | | 1234a | | | | 8.00 | 18.00 |
| Wed 07/27 425p | | 1230a | | | | 8.00 | 26.00 |
| Thu 07/28 426p | | 1231a | | | | 8.00 | 34.00 |
| Fri 07/29 425p | | 1230a | | | | 8.00 | 42.00 |
| Sat 07/30 716a | | 1233p | | | | 5.25 | 47.25 |
| Sun 07/31 ABSENT | | | | | | (8.00) | |

Acct:300 REG: 40.00 [redacted] 7.00

BROWN, REGINALD 1094643 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS |
|---|---|---|---|---|---|---|
| Mon 07/25 ABSENT | | | | | | (8.00) |
| Tue 07/26 ABSENT | | | | | | (8.00) |
| Wed 07/27 ABSENT | | | | | | (8.00) |
| Thu 07/28 ABSENT | | | | | | (8.00) |
| Fri 07/29 ABSENT | | | | | | (8.00) |
| Sat 07/30 ABSENT | | | | | | (8.00) |
| Sun 07/31 ABSENT | | | | | | (8.00) |

Page
08/08/2011

. Report
ɏ period
,ocounts, all pay rules, all timeclock groups

d1 418p 232a*L 10.00 10.00
/02 426p 231a*L 10.00 20.00
/8/03 418p 1231a 8.00 28.00
08/04 411p 1231a 8.00 36.00
08/05 430p VAC -8.00
at 08/06 725a 1231p 5.00 41.00
(8.00)
Sun 08/07 ABSENT
Add Hours 10 08/05 430p VAC (Excused) [Home] 8.00
Remove Punch 7 08/06 720a

Acct:300 REG: 32.00 OT: [illegible] 9.00 VAC: [illegible] 8.00

ARROYO, LOEMARIA 094664 300
ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS
Mon 08/01 426p 1232a 8.00 8.00
Tue 08/02 657p*L 230a*L 7.50 15.50
Wed 08/03 426p 1232a 8.00 23.50
Thu 08/04 406p 1230a 8.00 31.50
Fri 08/05 1056a 711p 8.00 39.50
Sat 08/06 ABSENT (8.00)
Sun 08/07 ABSENT (8.00)
Add Punch 10 08/05 1230a

Acct:300 REG: [illegible] 39.50

BEISER, RAYMOND 1094642 300
ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS
Mon 08/01 430p VAC 40.00
Tue 08/02 ABSENT (8.00)
Wed 08/03 ABSENT (8.00)
Thu 08/04 ABSENT (8.00)
Fri 08/05 ABSENT (8.00)
Sat 08/06 ABSENT (8.00)
Sun 08/07 ABSENT (8.00)
Add Hours 10 08/01 430p VAC (Excused) [Home] 40.00

Acct:300 VAC: [illegible] 40.00

BOLLINGER, JAMES 1094627 300
ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS
Mon 08/01 430p VAC 8.00
Tue 08/02 222p*E 1234a 10.00 10.00
Wed 08/03 418p 1230a 8.00 18.00
Thu 08/04 415p 1231a 8.00 26.00
Fri 08/05 417p 1230a 8.00 34.00
Sat 08/06 730a 333p 8.00 42.00
Sun 08/07 ABSENT (8.00)
Add Hours 10 08/01 430p VAC (Excused) [Home] 8.00
Remove Punch 7 08/06 717a
Add Punch 7 08/06 730a

Acct:300 REG: 32.00 OT: [illegible] 0.00 VAC: [illegible] 8.00

BOOIE, MARSHEELA 0001094653 300
ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS
Mon 08/01 430p VAC 24.00
Tue 08/02 ABSENT (8.00)
Wed 08/03 422p 232a*L 10.00 10.00
Thu 08/04 425p 232a*L 10.00 20.00
Fri 08/05 ABSENT (8.00)
Sat 08/06 730a 1231p 5.00 25.00
Sun 08/07 ABSENT (8.00)
Add Hours 10 08/01 430p VAC (Excused) [Home] 24.00

Page
08/25/2011

Detail Report
...evious pay period
Selected accounts, all pay rates, all Timeclock groups

ARROYO, LUZMARIA 094664 300
ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS

| | IN | OUT | | TOTALS |
|---|---|---|---|---|
| Mon 08/08 | 416p | 230a*L | 10.00 | 10.00 |
| Tue 08/09 | 702p*L | 231a*L | 7.25 | 17.25 |
| Wed 08/10 | 402p 4.30 | 1231a | 8.00 | 25.25 |
| Thu 08/11 | 356p | 700p*E | 3.00 | 28.25 |
| Fri 08/12 | ABSENT | | (8.00) | |
| Sat 08/13 | ABSENT | | (8.00) | |
| Sun 08/14 | ABSENT | | (8.00) | |

2.5

Acct:300 REG: [redacted] OT: [redacted]

BEIER, RAYMOND 1094642 300
ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS

| | IN | OUT | | TOTALS |
|---|---|---|---|---|
| Mon 08/08 | 422p | 1230a | 8.00 | 8.00 |
| Tue 08/09 | 424p | 1230a | 8.00 | 16.00 |
| Wed 08/10 | 425p | 1231a | 8.00 | 24.00 |
| Thu 08/11 | 423p | 1230a | 8.00 | 32.00 |
| Fri 08/12 | 425p | 1230a | 8.00 | 40.00 |
| Sat 08/13 | ABSENT | | (8.00) | |
| Sun 08/14 | ABSENT | | (8.00) | |

Acct:300 REG: 40.00

BOLLINGER, JAMES 1094627 300
ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS

| | IN | OUT | | TOTALS |
|---|---|---|---|---|
| Mon 08/08 | 415p | 1232a | 8.00 | 8.00 |
| Tue 08/09 | 219p*E | 1236a | 10.00 | 18.00 |
| Wed 08/10 | 222p*E | 1233a | 10.00 | 28.00 |
| Thu 08/11 | 219p*E | 1234a | 10.00 | 38.00 |
| Fri 08/12 | 425p | 1233a | 8.00 | 46.00 |
| Sat 08/13 | ABSENT | | (8.00) | |
| Sun 08/14 | ABSENT | | (8.00) | |

Acct:300 REG: 40.00 OT: [redacted]

BOUIE, MARSHEELA 0001094653 300
ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS

| | IN | | OUT | | TOTALS |
|---|---|---|---|---|---|
| Mon 08/08 | 425p | VAC | | 8.00 | |
| Tue 08/09 | 425p | VAC | 1231a | 8.00 | |
| Wed 08/10 | 423p | | 1232a | 8.00 | 8.00 |
| Thu 08/11 | 420p | | 1231a | 8.00 | 16.00 |
| Fri 08/12 | 443p*L | | 1231p | 7.75 | 23.75 |
| Sat 08/13 | 720a | | | 5.00 | 28.75 |
| Sun 08/14 | ABSENT | | | (8.00) | |

Add Hours 4 08/08 425p VAC (Excused) (Home) 8.00
Add Hours 4 08/09 425p VAC (Excused) (Home) 8.00

Acct:300 [redacted] OT: [redacted] [redacted] 16.00

BROWN, REGINALD 1094643 300
ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS

| | IN | TOTALS |
|---|---|---|
| Mon 08/08 | ABSENT | (8.00) |
| Tue 08/09 | ABSENT | (8.00) |
| Wed 08/10 | ABSENT | (8.00) |
| Thu 08/11 | ABSENT | (8.00) |
| Fri 08/12 | ABSENT | (8.00) |
| Sat 08/13 | ABSENT | (8.00) |
| Sun 08/14 | ABSENT | (8.00) |

CAMPBELL, KEVIN 1094638 300
ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS

Timesheet Data - ARROYO, LUZMARIA

| Date | ID | In | Ex | DEP | Out | Ex | ShEx | Hours | To PC | From PC |
|---|---|---|---|---|---|---|---|---|---|---|
| Mon 8/8/2011 | | 4:16 PM | | [Home] | 2:30 AM | *L | | | | |
| Tue 8/9/2011 | | 7:02 PM | *L | [Home] | 2:31 AM | *L | | | | |
| Wed 8/10/2011 | | 4:30 PM | | [Home] | 12:31 AM | | | | | |
| Thu 8/11/2011 | | 4:30 PM | | [Home] | 7:00 PM | *E | | | | |
| Fri 8/12/2011 | | Absent | | | | | | | | |
| Sat 8/13/2011 | | Absent | | | | | | | | |
| Sun 8/14/2011 | | Absent | | | | | | | | |

Page
08/22/2011

. Detail Report
.vious pay period
.elected accounts, all pay rules, all Timeclock groups

Acct:100 REG: 40.00

SOMERSETT, MAUREEN 0001094592 100

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 08/15 ABSENT | | | | | | (8.00) | |
| Tue 08/16 ABSENT | | | | | | (8.00) | |
| Wed 08/17 ABSENT | | | | | | (8.00) | |
| Thu 08/18 ABSENT | | | | | | (8.00) | |
| Fri 08/19 ABSENT | | | | | | (8.00) | |
| Sat 08/20 ABSENT | | | | | | (8.00) | |
| Sun 08/21 ABSENT | | | | | | (8.00) | |

ACCIDENTALE, BRIAN 1094619 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 08/15 413p | | 1235a | | | | 8.00 | 8.00 |
| Tue 08/16 416p | | 1233a | | | | 8.00 | 16.00 |
| Wed 08/17 412p | | 1239a | | | | 8.00 | 24.00 |
| Thu 08/18 420p | | 1234a | | | | 8.00 | 32.00 |
| Fri 08/19 417p | | 1234a | | | | 8.00 | 40.00 |
| Sat 08/20 ABSENT | | | | | | (8.00) | |
| Sun 08/21 ABSENT | | | | | | (8.00) | |

Acct:300 REG: 40.00

ADAMS, ERIK 1094630 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 08/15 209p*E | | 1230a | | | | 10.00 | 10.00 |
| Tue 08/16 215p*E | | 1230a | | | | 10.00 | 20.00 |
| Wed 08/17 215p*E | | 1230a | | | | 10.00 | 30.00 |
| Thu 08/18 212p*E | | 1230a | | | | 10.00 | 40.00 |
| Fri 08/19 425p VAC | | | | | | 8.00 | |
| Sat 08/20 ABSENT | | | | | | (8.00) | |
| Sun 08/21 ABSENT | | | | | | (8.00) | |

Add Hours 4 08/19 425p VAC (Excused) [Home] 8.00

Acct:300 REG: 32.00 [illegible] VAC [illegible]

ADAMS, TRACEY 1094628 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 08/15 412p | | 231a*L | | | | 10.00 | 10.00 |
| Tue 08/16 423p | | 1231a | | | | 8.00 | 18.00 |
| Wed 08/17 424p | | 1231a | | | | 8.00 | 26.00 |
| Thu 08/18 425p VAC | | | | | | 8.00 | |
| Fri 08/19 425p VAC | | | | | | 8.00 | |
| Sat 08/20 ABSENT | | | | | | (8.00) | |
| Sun 08/21 ABSENT | | | | | | (8.00) | |

Add Hours 4 08/18 425p VAC (Excused) [Home] 8.00
Add Hours 4 08/19 425p VAC (Excused) [Home] 8.00

Acct:300 REG: 24.00 [illegible] VAC [illegible]

ARROYO, LOSMARIA 094664 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 08/15 419p | | 231a*L | | | | 10.00 | 10.00 |
| Tue 08/16 [illegible] | | 234a*L | | | | 7.25 | 17.25 |
| Wed 08/17 412p | | 230a*L | | | | 10.00 | 27.25 |
| Thu 08/18 421p | | 1230a | | | | 8.00 | 35.25 |
| Fri 08/19 [illegible] | | 1235a | | | | 7.75 | 43.00 |
| Sat 08/20 731a | | 535p | | | | 10.00 | 53.00 |
| Sun 08/21 ABSENT | | | | | | (8.00) | |

Add Punch 4 08/19 1230a

...s Detail Report
...vious pay period
...selected accounts, all pay rules, all Timeclock groups

Acct:300 REG: 39.00 [illegible]

BEIER, RAYMOND 1094642 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 08/15 424p | | 1230a | | | | 8.00 | 8.00 |
| Tue 08/16 425p | VAC | | | | | 8.00 | |
| Wed 08/17 416p | | 230a*L | | | | 10.00 | 18.00 |
| Thu 08/18 419p | | 230a*L | | | | 10.00 | 28.00 |
| Fri 08/19 418p | | 1230a | | | | 8.00 | 36.00 |
| Sat 08/20 ABSENT | | | | | | (8.00) | |
| Sun 08/21 ABSENT | | | | | | (8.00) | |

Add Hours 4 08/16 425p VAC (Excused) (None) 8.00

Acct:300 REG: 32.00 [illegible].00 [illegible].00

BOLLINGER, JAMES 1094627 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 08/15 416p | | 1230a | | | | 8.00 | 8.00 |
| Tue 08/16 421p | | 1230a | | | | 8.00 | 16.00 |
| Wed 08/17 415p | | 1230a | | | | 8.00 | 24.00 |
| Thu 08/18 221p*E | | 1230a | | | | 10.00 | 34.00 |
| Fri 08/19 145p*E | | 1003p*E | | | | 8.00 | 42.00 |
| Sat 08/20 722a | | 331p | | | | 8.00 | 50.00 |
| Sun 08/21 ABSENT | | | | | | (8.00) | |

Acct:300 REG: 40.00 [illegible]10.00

BOUIE, MARSHSELA 0001094653 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 08/15 425p | VAC | | | | | 8.00 | |
| Tue 08/16 422p | | 1232a | | | | 8.00 | 8.00 |
| Wed 08/17 424p | | 1232a | | | | 8.00 | 16.00 |
| Thu 08/18 423p | | 1233a | | | | 8.00 | 24.00 |
| Fri 08/19 425p | | 1231a | | | | 8.00 | 32.00 |
| Sat 08/20 ABSENT | | | | | | (8.00) | |
| Sun 08/21 ABSENT | | | | | | (8.00) | |

Add Hours 4 08/15 425p VAC (Excused) (None) 8.00

Acct:300 REG: 32.00 [illegible]8.00

BROWN, REGINALD 1094643 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS |
|---|---|---|---|---|---|---|
| Mon 08/15 ABSENT | | | | | | (8.00) |
| Tue 08/16 ABSENT | | | | | | (8.00) |
| Wed 08/17 ABSENT | | | | | | (8.00) |
| Thu 08/18 ABSENT | | | | | | (8.00) |
| Fri 08/19 ABSENT | | | | | | (8.00) |
| Sat 08/20 ABSENT | | | | | | (8.00) |
| Sun 08/21 ABSENT | | | | | | (8.00) |

CAMPBELL, KEVIN 1094638 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 08/15 418p | | 1233a | | | | 8.00 | 8.00 |
| Tue 08/16 421p | | 1236a | | | | 8.00 | 16.00 |
| Wed 08/17 419p | | 1233a | | | | 8.00 | 24.00 |
| Thu 08/18 420p | | 1234a | | | | 8.00 | 32.00 |
| Fri 08/19 419p | | 1230a | | | | 8.00 | 40.00 |
| Sat 08/20 721a | | 339p | | | | 8.00 | 48.00 |
| Sun 08/21 ABSENT | | | | | | (8.00) | |

Page
08/29/2011

etail Report
..ms pay period
..ted accounts, all pay rules, all Timeclock groups

| | | | |
|---|---|---|---|
| ..u 08/25 425p | 1233a | 8.00 | 32.00 |
| Fri 08/26 426p | 1231a | 8.00 | 40.00 |
| Sat 08/27 ABSENT | | (8.00) | |
| Sun 08/28 ABSENT | | (8.00) | |

Acct:300 REG: 40.00

ARROYO, LUZMARIA 094664 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 08/22 424p | | 1234a | | | | 8.00 | 8.00 |
| Tue 08/23 626p*L | | 231a*L | | | | 8.00 | 16.00 |
| Wed 08/24 422p | | 1231a | | | | 8.00 | 24.00 |
| Thu 08/25 428p | | 1231a | | | | 8.00 | 32.00 |
| Fri 08/26 426p | | 1230a | | | | 8.00 | 40.00 |
| Sat 08/27 ABSENT | | | | | | (8.00) | |
| Sun 08/28 ABSENT | | | | | | (8.00) | |

Acct:300 REG: 40.00

ABIER, RAYMOND 1094647 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 08/22 424p | | 1231a | | | | 8.00 | 8.00 |
| Tue 08/23 416p | | 230a*L | | | | 10.00 | 18.00 |
| Wed 08/24 424p | | 1233a | | | | 8.00 | 26.00 |
| Thu 08/25 423p | | 232a*L | | | | 10.00 | 36.00 |
| Fri 08/26 425p VAC | | | | | | 8.00 | |
| Sat 08/27 ABSENT | | | | | | (8.00) | |
| Sun 08/28 ABSENT | | | | | | (8.00) | |

Add Hours 4 08/26 425p VAC (Excused) (Home) 8.00

Acct:300 REG: 32.00 [illegible] VAC: [illegible]

BOLLINGER, JAMES 1094627 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 08/22 422p | | 1232a | | | | 8.00 | 8.00 |
| Tue 08/23 416p | | 1230a | | | | 8.00 | 16.00 |
| Wed 08/24 415p | | 1231a | | | | 8.00 | 24.00 |
| Thu 08/25 216p*E | | 1230a | | | | 10.00 | 34.00 |
| Fri 08/26 155p*E | | 1001p*E | | | | 8.00 | 42.00 |
| Sat 08/27 730a | | 333p | | | | 8.00 | 50.00 |
| Sun 08/28 ABSENT | | | | | | (8.00) | |

| | | | |
|---|---|---|---|
| Remove Punch | 4 | 08/26 | 148p |
| Add Punch | 4 | 08/26 | 155p |
| Remove Punch | 2 | 08/27 | 724a |
| Add Punch | 2 | 08/27 | 730a |

Acct:300 REG: 40.00 OT: [illegible]

BOUIE, MARGHEELA 0001094653 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 08/22 425p VAC | | | | | | 8.00 | |
| Tue 08/23 422p | | 1234a | | | | 8.00 | 8.00 |
| Wed 08/24 422p | | 1231a | | | | 8.00 | 16.00 |
| Thu 08/25 421p | | 1231a | | | | 8.00 | 24.00 |
| Fri 08/26 422p | | 1232a | | | | 8.00 | 32.00 |
| Sat 08/27 ABSENT | | | | | | (8.00) | |
| Sun 08/28 ABSENT | | | | | | (8.00) | |

Add Hours 2 08/22 425p VAC (Excused) (Home) 8.00

Acct:300 REG: 32.00 VAC: [illegible]

Page
09/06/2011

etail Report
as pay period
ted accounts, all pay rules, all timeclock groups

Acct:300 REG: 40.00 [redacted]

ADAMS, TRACEY 1094628 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 08/29 412p | | 1231a*L | | | | 10.00 | 10.00 |
| Tue 08/30 429p | | 1233a*L | | | | 10.00 | 20.00 |
| Wed 08/31 430p | | 1235a | | | | 8.00 | 28.00 |
| Thu 09/01 423p | | 1231a | | | | 8.00 | 36.00 |
| Fri 09/02 428p | | 1231a | | | | 8.00 | 44.00 |
| Sat 09/03 ABSENT | | | | | | (8.00) | |
| Sun 09/04 ABSENT | | | | | | (8.00) | |

Add Punch 10 08/31 430p

Acct:300 REG: 40.00 [redacted]

ARROYO, LUZMARIA 094664 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 08/29 419p | | 1230a | | | | 8.00 | 8.00 |
| Tue 08/30 708p*L | | 231a*L | | | | 7.25 | 15.25 |
| Wed 08/31 ABSENT | | | | | | (8.00) | |
| Thu 09/01 ABSENT | | | | | | (8.00) | |
| Fri 09/02 ABSENT | | | | | | (8.00) | |
| Sat 09/03 725a | | 530p | | | | 10.00 | 25.25 |
| Sun 09/04 ABSENT | | | | | | (8.00) | |

Remove Punch 997 08/31 417p
Remove Punch 4 09/03 714a
Add Punch 4 09/03 725a

Acct:300 [redacted] [redacted]

BEIER, RAYMOND 1094612 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 08/29 419p | | 1230a | | | | 8.00 | 8.00 |
| Tue 08/30 426p | | 230a*L | | | | 10.00 | 18.00 |
| Wed 08/31 426p | | 1237a | | | | 8.00 | 26.00 |
| Thu 09/01 426p | | 1233a | | | | 8.00 | 34.00 |
| Fri 09/02 427p | | 1231a | | | | 8.00 | 42.00 |
| Sat 09/03 ABSENT | | | | | | (8.00) | |
| Sun 09/04 ABSENT | | | | | | (8.00) | |

Add Punch 10 08/30 1230a

Acct:300 REG: 40.00 [redacted]

BOLLINGER, JAMES 1094627 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 08/29 415p | | 1231a | | | | 8.00 | 8.00 |
| Tue 08/30 413p | | 1231a | | | | 8.00 | 16.00 |
| Wed 08/31 417p | | 1233a | | | | 8.00 | 24.00 |
| Thu 09/01 422p | | 1234a | | | | 8.00 | 32.00 |
| Fri 09/02 142p*E | | 1000p*E | | | | 8.00 | 40.00 |
| Sat 09/03 725a | | 530p | | | | 10.00 | 50.00 |
| Sun 09/04 ABSENT | | | | | | (8.00) | |

Remove Punch 4 09/03 719a
Add Punch 4 09/03 725a

Acct:300 REG: 40.00 [redacted]

BOUIE, MARSHEELA 0001094653 300

Page
09/12/2011

Detail Report
...vious pay period
...elected accounts, all pay rules, all timeclock groups

Add OTHol 998 09/05 1200a 8.00

Acct:300 REG: 32.00 HOL: 8.00

ADAMS, ERIK 1091630 300
ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS
Mon 09/05 1200a HOL 8.00
Tue 09/06 218p*E 1230a 10.00 10.00
Wed 09/07 215p*E 1230a 10.00 20.00
Thu 09/08 425p VAC 8.00
Fri 09/09 425p VAC 8.00
Sat 09/10 ABSENT (8.00)
Sun 09/11 ABSENT (8.00)
Add OTHol 998 09/05 1200a 8.00
Add Hours 4 09/08 425p VAC (Excused) [Home] 8.00
Add Hours 4 09/09 425p VAC (Excused) [Home] 8.00

Acct:300 REG: 16.00 [illegible] [illegible]
HOL: 8.00

ADAMS, TRACEY 1094628 300
ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS
Mon 09/05 1200a HOL 8.00
Tue 09/06 425p 231a*L 10.00 10.00
Wed 09/07 918p 1230a 8.00 18.00
Thu 09/08 426p 1230a 8.00 26.00
Fri 09/09 410p 1231a 8.00 34.00
Sat 09/10 ABSENT (8.00)
Sun 09/11 ABSENT (8.00)
Add OTHol 998 09/05 1200a 8.00
Add Punch 4 09/06 425p

Acct:300 REG: 32.00 [illegible] HOL: 8.00

ARROYO, LUZMARIA 094664 300
ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS
Mon 09/05 1200a HOL 8.00
Tue 09/06 634p*L 235a*L 7.75 7.75
Wed 09/07 425p 231a*L 10.00 17.75
Thu 09/08 411p 1231a 8.00 25.75
Fri 09/09 ABSENT (8.00)
Sat 09/10 ABSENT (8.00)
Sun 09/11 ABSENT (8.00)
Add OTHol 998 09/05 1200a 8.00
Remove Punch 4 09/07 356p
Add Punch 4 09/07 425p

Acct:300 REG: 23.75 [illegible] HOL: 8.00

BALSIS, BRANDON 261 300
ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS
Mon 09/05 1200a HOL 8.00
Tue 09/06 ABSENT (8.00)
Wed 09/07 ABSENT (8.00)
Thu 09/08 ABSENT (8.00)
Fri 09/09 ABSENT (8.00)
Sat 09/10 ABSENT (8.00)
Sun 09/11 ABSENT (8.00)
Add OTHol 998 09/05 1200a 8.00

Acct:300 HOL: 8.00

Page
09/19/2011

Detail Report
...us pay period
...cted accounts, all pay rules, all Timeclock groups

Acct:300 REG: 32.00 VAC: [illegible] 8.00

ARROYO, LUZMARIE 091664 300
ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS
Mon 09/12 417p 232a*L 10.00 10.00
Tue 09/13 744p*L 230a*L 6.75 16.75
Wed 09/14 419p 1232a 8.00 24.75
Thu 09/15 ABSENT (8.00)
Fri 09/16 ABSENT (8.00)
Sat 09/17 724a 530p 10.00 34.75
Sun 09/18 ABSENT (8.00)

Acct:300 REG: 22.75 TOTAL: [illegible]

BALSIS, BRANDON 201 300
ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS
Mon 09/12 830a 430p 8.00 8.00
Tue 09/13 619a 233p 8.00 16.00
Wed 09/14 623a 231p 8.00 24.00
Thu 09/15 621a 230p 8.00 32.00
Fri 09/16 624a 233p 8.00 40.00
Sat 09/17 ABSENT (8.00)
Sun 09/18 ABSENT (8.00)
Add Punch 998 09/12 830a
Remove Punch 998 09/12 331p
Add Punch 998 09/12 430p

Acct:300 REG: 40.00

BEIER, RAYMOND 1094642 300
ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS
Mon 09/12 403p 230a*L 10.00 10.00
Tue 09/13 425p VAC 8.00
Wed 09/14 425p 1231a 8.00 18.00
Thu 09/15 427p 1231a 8.00 26.00
Fri 09/16 425p 1230a 8.00 34.00
Sat 09/17 ABSENT (8.00)
Sun 09/18 ABSENT (8.00)
Remove Punch 4 09/12 425p
Add Hours 4 09/13 425p VAC (Excused) (Home) 8.00
Add Punch 4 09/14 425p
Add Punch 4 09/16 425p

Acct:300 REG: 32.00 TOTAL: [illegible] VAC: [illegible] 8.00

BOLLINGER, JAMES 1094627 300
ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS
Mon 09/12 415p 1232a 8.00 8.00
Tue 09/13 215p*E 1231a 10.00 18.00
Wed 09/14 415p 1233a 8.00 26.00
Thu 09/15 416p 1234a 8.00 34.00
Fri 09/16 415p 1230a 8.00 42.00
Sat 09/17 720a 330p 8.00 50.00
Sun 09/18 ABSENT (8.00)
Remove Punch 6 09/17 717a
Add Punch 6 09/17 720a

Acct:300 REG: 40.00 TOTAL: [illegible] 40.00

Page
09/26/2011

...l Report
...ay period
...accounts, all pay rules, all Timeclock groups

REG: 40.00

ARROYO, LUZMARIA 094664 300

| | IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 09/19 | 407p | | 230a*L | | | | 10.00 | 10.00 |
| Tue 09/20 | 755p*L | | 904p*E | | | | 1.00 | 11.00 |
| Wed 09/21 | 407p | | 443p*E | | | | 0.00 | 11.00 |
| Thu 09/22 | ABSENT | | | | | | (8.00) | |
| Fri 09/23 | ABSENT | | | | | | (8.00) | |
| Sat 09/24 | ABSENT | | | | | | (8.00) | |
| Sun 09/25 | ABSENT | | | | | | (8.00) | |

4.58 hrs 8 8 8

Acct:300 REG: 9.00 OT: ~~2.00~~ 1.75 — ~~[illegible]~~ deduct 15 min. 10 for greater than 10 min. in assigned room

BALSIS, BRANDON 201 300

| | IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 09/19 | 420p | | 1232a | | | | 8.00 | 8.00 |
| Tue 09/20 | 220p*E | | 1237a | | | | 10.00 | 18.00 |
| Wed 09/21 | 216p*E | | 1238a | | | | 10.00 | 28.00 |
| Thu 09/22 | 418p | | 1231a | | | | 8.00 | 36.00 |
| Fri 09/23 | 219p*E | | 1238a | | | | 10.00 | 46.00 |
| Sat 09/24 | ABSENT | | | | | | (8.00) | |
| Sun 09/25 | ABSENT | | | | | | (8.00) | |

Acct:300 REG: 40.00 [redacted]

BEIER, RAYMOND 1094642 300

| | IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 09/19 | 423p | | 1231a | | | | 8.00 | 8.00 |
| Tue 09/20 | 425p | | 1231a | | | | 8.00 | 16.00 |
| Wed 09/21 | 425p | | 1235a | | | | 8.00 | 24.00 |
| Thu 09/22 | 427p | | 231a*L | | | | 10.00 | 34.00 |
| Fri 09/23 | 430p VAC | | | | | | 8.00 | |
| Sat 09/24 | ABSENT | | | | | | (8.00) | |
| Sun 09/25 | ABSENT | | | | | | (8.00) | |

Add Hours 10 09/23 430p VAC (Excused) [Home] 8.00

Acct:300 REG: 32.00 [redacted] [redacted]

BOLLINGER, JAMES 1094627 300

| | IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 09/19 | 415p | | 1230a | | | | 8.00 | 8.00 |
| Tue 09/20 | 220p*E | | 1232a | | | | 10.00 | 18.00 |
| Wed 09/21 | 423p | | 1235a | | | | 8.00 | 26.00 |
| Thu 09/22 | 215p*E | | 1233a | | | | 10.00 | 36.00 |
| Fri 09/23 | 422p | | 1233a | | | | 8.00 | 44.00 |
| Sat 09/24 | 730a | | 332p | | | | 8.00 | 52.00 |
| Sun 09/25 | ABSENT | | | | | | (8.00) | |

Remove Punch 10 09/20 215p
Remove Punch 7 09/24 717a
Add Punch 7 09/24 730a

Acct:300 REG: 40.00 [redacted]

BOUIE, MARSHEELA 0001094653 300

| | IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| Mon 09/19 | 420p | | 1232a | | | | 8.00 | 8.00 |
| Tue 09/20 | 422p | | 1230a | | | | 8.00 | 16.00 |
| Wed 09/21 | 430p VAC | | | | | | 16.00 | |
| Thu 09/22 | ABSENT | | | | | | (8.00) | |
| Fri 09/23 | 423p | | 1231a | | | | 8.00 | 24.00 |
| Sat 09/24 | 720a | | 1230p | | | | 5.00 | 29.00 |

Page
10/03/2011

...nch Detail Report
...revious pay period
Selected accounts, all pay rules, all timeclock groups

| | | | | |
|---|---|---|---|---|
| Mon 09/26 | 220p*E | 1230a | 10.00 | 10.00 |
| Tue 09/27 | 215p*E | 1231a | 10.00 | 20.00 |
| Wed 09/28 | 212p*E | 1230a | 10.00 | 30.00 |
| Thu 09/29 | 211p*E | 1230a | 10.00 | 40.00 |
| Fri 09/30 | 425p VAC | | 8.00 | |
| Sat 10/01 | ABSENT | | (8.00) | |
| Sun 10/02 | ABSENT | | (8.00) | |

Add Hours 4 09/30 425p VAC (Excused) (Home) 8.00

Acct:300 REG: 32.00 [redacted] 8.00 [redacted].00

ADAMS, TRACEY 1094628 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 09/26 415p | | 1232a | | | | 8.00 | 8.00 |
| Tue 09/27 415p | | 1230a | | | | 8.00 | 16.00 |
| Wed 09/28 ABSENT | | | | | | (8.00) | |
| Thu 09/29 426p | | 1230a | | | | 8.00 | 24.00 |
| Fri 09/30 420p | | 1230a | | | | 8.00 | 32.00 |
| Sat 10/01 ABSENT | | | | | | (8.00) | |
| Sun 10/02 ABSENT | | | | | | (8.00) | |

Remove Punch 4 09/30 421p

Acct:300 [redacted]

ARROYO, LUZMARIA 094664 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS |
|---|---|---|---|---|---|---|
| Mon 09/26 ABSENT | | | | | | (8.00) |
| Tue 09/27 ABSENT | | | | | | (8.00) |
| Wed 09/28 ABSENT | | | | | | (8.00) |
| Thu 09/29 ABSENT | | | | | | (8.00) |
| Fri 09/30 ABSENT | | | | | | (8.00) |
| Sat 10/01 ABSENT | | | | | | (8.00) |
| Sun 10/02 ABSENT | | | | | | (8.00) |

pay 40 REG HRS

BALSIS, BRANDON 201 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 09/26 217p*E | | 1235a | | | | 10.00 | 10.00 |
| Tue 09/27 417p | | 1236a | | | | 8.00 | 18.00 |
| Wed 09/28 222p*E | | 1236a | | | | 10.00 | 28.00 |
| Thu 09/29 424p | | 1233a | | | | 8.00 | 36.00 |
| Fri 09/30 151p*E | | 1003p*E | | | | 8.00 | 44.00 |
| Sat 10/01 719a | | 331p | | | | 8.00 | 52.00 |
| Sun 10/02 ABSENT | | | | | | (8.00) | |

Acct:300 REG: 40.00 [redacted]

BEIER, RAYMOND 1094642 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 09/26 425p VAC | | | | | | 8.00 | |
| Tue 09/27 419p | | 1233a | | | | 8.00 | 8.00 |
| Wed 09/28 219p*E | | 1231a | | | | 10.00 | 18.00 |
| Thu 09/29 425p | | 1235a | | | | 8.00 | 26.00 |
| Fri 09/30 426p | | 1231a | | | | 8.00 | 34.00 |
| Sat 10/01 ABSENT | | | | | | (8.00) | |
| Sun 10/02 ABSENT | | | | | | (8.00) | |

Add Hours 4 09/26 425p VAC (Excused) (Home) 8.00

Acct:300 REG: 32.00 [redacted] [redacted].00

BOLLINGER, JAMES 1094627 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS |
|---|---|---|---|---|---|---|

...ch Detail Report
...revious pay period
Selected accounts, all pay rules, all timeclock groups

Page
10/10/2011

Fri 10/07 419p 1231a 8.00 40.00
Sat 10/08 730a 1237p 5.00 45.00
Sun 10/09 ABSENT (8.00)
Remove Punch 7 10/08 717a
Add Punch 7 10/08 730a

Acct:300 REG: 40.00 [redacted]00

| ADAMS, ERIK | | | 1094630 | 300 | | | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | | |
| Mon 10/03 | 209p*E | | 1230a | | | | 10.00 | 10.00 |
| Tue 10/04 | 211p*E | | 1230a | | | | 10.00 | 20.00 |
| Wed 10/05 | 217p*E | | 1230a | | | | 10.00 | 30.00 |
| Thu 10/06 | 211p*E | | 1230a | | | | 10.00 | 40.00 |
| Fri 10/07 | 215p*E | | 1230a | | | | 10.00 | 50.00 |
| Sat 10/08 ABSENT | | | | | | | (8.00) | |
| Sun 10/09 ABSENT | | | | | | | (8.00) | |

Acct:300 REG: 40.00 [redacted]10.00

| ADAMS, TRACEY | | | 1094628 | 300 | | | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | | |
| Mon 10/03 | 416p | | 1233a | | | | 8.00 | 8.00 |
| Tue 10/04 | 413p | | 231a*L | | | | 10.00 | 18.00 |
| Wed 10/05 | 426p | | 230a*L | | | | 10.00 | 28.00 |
| Thu 10/06 | 423p | | 234a*L | | | | 10.00 | 38.00 |
| Fri 10/07 | 429p | | 230a*L | | | | 10.00 | 48.00 |
| Sat 10/08 ABSENT | | | | | | | (8.00) | |
| Sun 10/09 ABSENT | | | | | | | (8.00) | |

Acct:300 REG: 40.00 [redacted]8.00

| ARROYO, LUZMARIA | | | 094664 | 300 | | | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | | |
| Mon 10/03 | 425p | | 230a*L | | | | 10.00 | 10.00 |
| Tue 10/04 | 811p*L | | 1231a | | | | 4.25 | 14.25 |
| Wed 10/05 | 413p | | 1232a | | | | 8.00 | 22.25 |
| Thu 10/06 | 415p | | 1233a | | | | 8.00 | 30.25 |
| Fri 10/07 | 420p | | 1230a | | | | 8.00 | 38.25 |
| Sat 10/08 ABSENT | | | | | | | (8.00) | |
| Sun 10/09 ABSENT | | | | | | | (8.00) | |

Acct:300 REG: 36.25 [redacted]00

| BALSIS, BRANDON | | | 201 | 300 | | | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | | |
| Mon 10/03 | 418p | | 1238a | | | | 8.00 | 8.00 |
| Tue 10/04 | 425p VAC | | | | | | 8.00 | |
| Wed 10/05 | 223p*E | | 1234a | | | | 10.00 | 18.00 |
| Thu 10/06 | 421p | | 1233a | | | | 8.00 | 26.00 |
| Fri 10/07 | 417p | | 1231a | | | | 8.00 | 34.00 |
| Sat 10/08 ABSENT | | | | | | | (8.00) | |
| Sun 10/09 ABSENT | | | | | | | (8.00) | |

Add Hours 4 10/04 425p VAC (Excused) (Home) 8.00

Acct:300 REG: 32.00 [redacted] VA[redacted]00

| BEIER, RAYMOND | | | 1094642 | 300 | | | TOTALS | |
|---|---|---|---|---|---|---|---|---|
| | ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | | |
| Mon 10/03 | 425p | | 1233a | | | | 8.00 | 8.00 |
| Tue 10/04 | 424p | | 1233a | | | | 8.00 | 16.00 |

Page
10/17/2011

...tail Report
...us pay period
...cted accounts, all pay rules, all Timeclock groups.

**...CCIDENTALE, BRIAN** 1094619 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 10/10 417p | | 233a*L | | | | 10.00 | 10.00 |
| Tue 10/11 416p | | 233a*L | | | | 10.00 | 20.00 |
| Wed 10/12 418p | | 1233a | | | | 8.00 | 28.00 |
| Thu 10/13 419p | | 231a*L | | | | 10.00 | 38.00 |
| Fri 10/14 417p | | 1236a | | | | 8.00 | 46.00 |
| Sat 10/15 ABSENT | | | | | | (8.00) | |
| Sun 10/16 ABSENT | | | | | | (8.00) | |

Acct:300 REG: 40.00 [redacted]

**ADAMS, ERIK** 1094630 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 10/10 211p*E | | 1230a | | | | 10.00 | 10.00 |
| Tue 10/11 218p*E | | 1231a | | | | 10.00 | 20.00 |
| Wed 10/12 217p*E | | 1230a | | | | 10.00 | 30.00 |
| Thu 10/13 215p*E | | 1230a | | | | 10.00 | 40.00 |
| Fri 10/14 217p*E | | 1230a | | | | 10.00 | 50.00 |
| Sat 10/15 ABSENT | | | | | | (8.00) | |
| Sun 10/16 ABSENT | | | | | | (8.00) | |

Acct:300 REG: 40.00 [redacted]

**ADAMS, TRACEY** 1094628 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 10/10 425p | | 231a*L | | | | 10.00 | 10.00 |
| Tue 10/11 424p | | 230a*L | | | | 10.00 | 20.00 |
| Wed 10/12 421p | | 230a*L | | | | 10.00 | 30.00 |
| Thu 10/13 424p | | 1230a | | | | 9.00 | 39.00 |
| Fri 10/14 425p VAC | | | | | | 8.00 | |
| Sat 10/15 ABSENT | | | | | | (8.00) | |
| Sun 10/16 ABSENT | | | | | | (8.00) | |

Add Hours 7 10/14 425p VAC (Excused) [Home] 8.00

Acct:300 REG: 32.00 [redacted].00 VAC [redacted]

**ARROYO, LUSMARIA** 094664 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 10/10 431p*L | | 230a*L | | | | 9.75 | 9.75 |
| Tue 10/11 647p*L | | 230a*L | | | | 7.50 | 17.25 |
| Wed 10/12 416p | | 231a*L | | | | 10.00 | 27.25 |
| Thu 10/13 425p VAC | | | | | | 8.00 | |
| Thu 10/13 210p*E | | 430p*E | | | | 2.00 | 29.25 |
| Fri 10/14 425p VAC | | | | | | 8.00 | |
| Sat 10/15 ABSENT | | | | | | (8.00) | |
| Sun 10/16 ABSENT | | | | | | (8.00) | |

Add Hours 7 10/13 425p VAC (Excused) [Home] 8.00
Add Hours 7 10/14 425p VAC (Excused) [Home] 8.00

Acct:300 REG: 25.50 OT: 3.75 VAC: 16.00

**BALSIS, BRANDON** 201 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 10/10 221p*E | | 1230a | | | | 10.00 | 10.00 |
| Tue 10/11 225p*E | | 1231a | | | | 10.00 | 20.00 |
| Wed 10/12 429p | | 1235a | | | | 8.00 | 28.00 |
| Thu 10/13 422p | | 1234a | | | | 8.00 | 36.00 |
| Fri 10/14 422p | | 1230a | | | | 8.00 | 44.00 |
| Sat 10/15 ABSENT | | | | | | (8.00) | |
| Sun 10/16 ABSENT | | | | | | (8.00) | |

Acct:300 REG: 40.00 [redacted]

...l Report
...ay period
...accounts, all pay rules, all Timeclock groups

**ACCIDENTALE, BRIAN** — 1094619 — 300

| ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 10/17 | 414p | | | 1231a | | | | | | 8.00 | 8.00 |
| Tue 10/18 | 414p | | | 1235a | | | | | | 8.00 | 16.00 |
| Wed 10/19 | 418p | | | 1231a | | | | | | 8.00 | 24.00 |
| Thu 10/20 | 418p | | | 1232a | | | | | | 8.00 | 32.00 |
| Fri 10/21 | 415p | | | 1232a | | | | | | 8.00 | 40.00 |
| Sat 10/22 | ABSENT | | | | | | | | | (8.00) | |
| Sun 10/23 | ABSENT | | | | | | | | | (8.00) | |

Acct:300 REG: 40.00

**ADAMS, ERIK** — 1094630 — 300

| ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 10/17 | 215p*E | | | 1230a | | | | | | 10.00 | 10.00 |
| Tue 10/18 | 221p*E | | | 1230a | | | | | | 10.00 | 20.00 |
| Wed 10/19 | 213p*E | | | 1230a | | | | | | 10.00 | 30.00 |
| Thu 10/20 | 209p*E | | | 1230a | | | | | | 10.00 | 40.00 |
| Fri 10/21 | 225p*E | | | 1230a | | | | | | 10.00 | 50.00 |
| Sat 10/22 | ABSENT | | | | | | | | | (8.00) | |
| Sun 10/23 | ABSENT | | | | | | | | | (8.00) | |

Add Punch 4 10/20 1230a
Add Punch 4 10/21 225p

Acct:300 REG: 40.00 [redacted]

**ADAMS, TRACEY** — 1094628 — 300

| ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 10/17 | 423p | | | 1232a | | | | | | 8.00 | 8.00 |
| Tue 10/18 | 422p | | | 230a*L | | | | | | 10.00 | 18.00 |
| Wed 10/19 | 427p | | | 1230a | | | | | | 8.00 | 26.00 |
| Thu 10/20 | 411p | | | 1236a | | | | | | 8.00 | 34.00 |
| Fri 10/21 | 421p | | | 1231a | | | | | | 8.00 | 42.00 |
| Sat 10/22 | 725a | | | 1241p | | | | | | 5.00 | 47.00 |
| Sun 10/23 | ABSENT | | | | | | | | | (8.00) | |

Remove Punch 4 10/21 428p
Remove Punch 4 10/22 700a
Remove Punch 4 10/22 708a
Add Punch 4 10/22 725a

Acct:300 REG: 40.00 OT: [redacted]

**ARROYO, LUZMARIA** — 094664 — 300

| ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 10/17 | 413p | | | 1233a | | | | | | 8.00 | 8.00 |
| Tue 10/18 | ABSENT | | | | | | | | | (8.00) | |
| Wed 10/19 | ABSENT | | | | | | | | | (8.00) | |
| Thu 10/20 | ABSENT | | | | | | | | | (8.00) | |
| Fri 10/21 | 425p VAC | | | | | | | | | 8.00 | |
| Sat 10/22 | ABSENT | | | | | | | | | (8.00) | |
| Sun 10/23 | ABSENT | | | | | | | | | (8.00) | |

Add Hours 4 10/21 425p VAC (Excused) (Home) 8.00

Acct:300 [redacted]

**BALSIS, BRANDON** — 201 — 300

| ID | IN | DEP | ACTIVITY | OUT | ID | IN | DEP | ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 10/17 | 219p*E | | | 1231a | | | | | | 10.00 | 10.00 |
| Tue 10/18 | 415p | | | 1235a | | | | | | 8.00 | 18.00 |
| Wed 10/19 | 225p*E | | | 1232a | | | | | | 10.00 | 28.00 |

...10/26 824a 530p*L 10.00 30.00
...d 10/27 825a 630p*L 10.00 40.00
Fri 10/28 824a 632p*L 10.00 50.00
Sat 10/29 723a*E 331p*E 8.00 58.00
Sun 10/30 ABSENT (8.00)

Acct:100
REG: 40.00 [illegible]

ACCIDENTALE, BRIAN 1094619 300
ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS
Mon 10/24 413p 1232a 8.00 8.00
Tue 10/25 421p 1235a 8.00 16.00
Wed 10/26 ABSENT [8.00]
Thu 10/27 416p 1232a 8.00 24.00
Fri 10/28 416p 1237a 8.00 32.00
Sat 10/29 ABSENT [8.00]
Sun 10/30 ABSENT [8.00]

Acct:300
REG: [illegible]

ADAMS, ERIK 1094630 300
ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS
Mon 10/24 211p*E 1230a 10.00 10.00
Tue 10/25 212p*E 1230a 10.00 20.00
Wed 10/26 213p*E 1230a 10.00 30.00
Thu 10/27 211p*E 1230a 10.00 40.00
Fri 10/28 215p*E 1230a 10.00 50.00
Sat 10/29 ABSENT (8.00)
Sun 10/30 ABSENT (8.00)

Acct:300
REG: 40.00 [illegible]

ADAMS, TRACEY 1094628 300
ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS
Mon 10/24 430p 1230a 8.00 8.00
Tue 10/25 429p 1230a 8.00 16.00
Wed 10/26 423p 1235a 8.00 24.00
Thu 10/27 425p 1233a 8.00 32.00
Fri 10/28 424p 1235a 8.00 40.00
Sat 10/29 ABSENT (8.00)
Sun 10/30 ABSENT (8.00)

Acct:300
REG: 40.00

ARROYO, LUZMARIA 094664 300
ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS
Mon 10/24 400p VAC 8.00
Tue 10/25 ABSENT [8.00]
Wed 10/26 428p 231a*L 10.00 10.00
Thu 10/27 417p 1231a 8.00 18.00
Fri 10/28 400p 1231a 8.00 26.00
Sat 10/29 ABSENT [8.00]
Sun 10/30 ABSENT [8.00]
Add Hours 9 10/24 400p VAC [Excused] [None] 8.00
Remove Punch 9 10/28 355p
Add Punch 9 10/28 400p

Acct:300
REG: 24.00 [illegible]00 VAC[illegible]8.00

BALSIS, BRANDON 201 300
ID IN DEP ACTIVITY OUT ID IN DEP ACTIVITY OUT TOTALS
Mon 10/24 419p 1233a 8.00 8.00

...nch Detail Report
Previous pay period
Selected accounts, all pay rules, all Timeclock groups

Page
11/07/2011

| | | | | | |
|---|---|---|---|---|---|
| Tue 11/01 | 822a | 631p*L | | 10.00 | 20.00 |
| Wed 11/02 | 824a | 443p | | 8.00 | 28.00 |
| Thu 11/03 | 821a | 631p*L | | 10.00 | 38.00 |
| Fri 11/04 | 822a | 631p*L | | 10.00 | 48.00 |
| Sat 11/05 | 722a*E | 330p*E | | 8.00 | 56.00 |
| Sun 11/06 ABSENT | | | | (8.00) | |

Acct:100
REG: 40.00 [illegible]

ACCIDENTALS, BRIAN 1054619 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 10/31 417p | | 231a*L | | | | 10.00 | 10.00 |
| Tue 11/01 411p | | 1232a | | | | 8.00 | 18.00 |
| Wed 11/02 417p | | 1231a | | | | 8.00 | 26.00 |
| Thu 11/03 414p | | 230a*L | | | | 10.00 | 36.00 |
| Fri 11/04 417p | | 1230a | | | | 8.00 | 44.00 |
| Sat 11/05 ABSENT | | | | | | (8.00) | |
| Sun 11/06 ABSENT | | | | | | (8.00) | |

Acct:300
REG: 40.00 OT[illegible]4.00

ADAMS, ERIK 1094630 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 10/31 ABSENT | | | | | | (8.00) | |
| Tue 11/01 230p*E | | 1230a | | | | 10.00 | 10.00 |
| Wed 11/02 214p*E | | 1230a | | | | 10.00 | 20.00 |
| Thu 11/03 215p*E | | 1230a | | | | 10.00 | 30.00 |
| Fri 11/04 430p VAC | | | | | | 8.00 | |
| Sat 11/05 ABSENT | | | | | | (8.00) | |
| Sun 11/06 ABSENT | | | | | | (8.00) | |

Add Punch 10 11/01 230p
Add Hours 10 11/04 430p VAC (Excused) [Home] 8.00

Acct:300
REG: 24.00 OT[illegible] VAC[illegible]

ADAMS, TRACEY 1094628 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 10/31 ABSENT | | | | | | (8.00) | |
| Tue 11/01 426p | | 1231a | | | | 8.00 | 8.00 |
| Wed 11/02 424p | | 231a*L | | | | 10.00 | 18.00 |
| Thu 11/03 427p | | 1232a | | | | 8.00 | 26.00 |
| Fri 11/04 426p | | 1233a | | | | 8.00 | 34.00 |
| Sat 11/05 ABSENT | | | | | | (8.00) | |
| Sun 11/06 ABSENT | | | | | | (8.00) | |

Acct:300
REG[illegible]32.00 OT[illegible]

ARROYO, LUZMARIA 094664 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 10/31 426p | | 1231a | | | | 8.00 | 8.00 |
| Tue 11/01 756p*L | | 1230a | | | | 4.50 | 12.50 |
| Wed 11/02 400p | | 1231a | | | | 8.00 | 20.50 |
| Thu 11/03 430p VAC | | | | | | 8.00 | |
| Fri 11/04 404p | | 700p*E | | | | 2.50 | 23.00 |
| Sat 11/05 ABSENT | | | | | | (8.00) | |
| Sun 11/06 ABSENT | | | | | | (8.00) | |

Remove Punch 10 11/02 348p
Add Punch 10 11/02 400p
Add Hours 10 11/03 430p VAC (Excused) [Home] 8.00

Acct:300
REG: 23.00 VAC[illegible]8.00

...tail Report
...us pay period
...cted accounts, all pay rules, all Timeclock groups

Page
11/14/2011

REG: 32.00 [illegible] [illegible] 8.00

ACCIDENTALE, BRIAN 1094619 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 11/07 416p | | 1238a | | | | 8.00 | 8.00 |
| Tue 11/08 423p | | 1231a | | | | 8.00 | 16.00 |
| Wed 11/09 419p | | 1237a | | | | 8.00 | 24.00 |
| Thu 11/10 425p | | 1234a | | | | 8.00 | 32.00 |
| Fri 11/11 423p | | 1232a | | | | 8.00 | 40.00 |
| Sat 11/12 ABSENT | | | | | | (8.00) | |
| Sun 11/13 ABSENT | | | | | | (8.00) | |

Remove Punch 4 11/10 413p
Add Punch 4 11/10 425p

Acct:300 REG: 40.00

ADAMS, ERIK 1094630 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 11/07 425p VAC | | | | | | 8.00 | |
| Tue 11/08 214p*E | | 1230a | | | | 10.00 | 10.00 |
| Wed 11/09 214p*E | | 1234a | | | | 10.00 | 20.00 |
| Thu 11/10 217p*E | | 1230a | | | | 10.00 | 30.00 |
| Fri 11/11 214p*E | | 1230a | | | | 10.00 | 40.00 |
| Sat 11/12 ABSENT | | | | | | (8.00) | |
| Sun 11/13 ABSENT | | | | | | (8.00) | |

Add Hours 4 11/07 425p VAC (Excused) [Home] 8.00

Acct:300 REG: 32.00 [illegible] [illegible]

ADAMS, TRACEY 1094628 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 11/07 428p | | 232a*L | | | | 10.00 | 10.00 |
| Tue 11/08 425p | | 1231a | | | | 8.00 | 18.00 |
| Wed 11/09 427p | | 1244a | | | | 8.00 | 26.00 |
| Thu 11/10 430p | | 1232a | | | | 8.00 | 34.00 |
| Fri 11/11 425p VAC | | | | | | 8.00 | |
| Sat 11/12 ABSENT | | | | | | (8.00) | |
| Sun 11/13 ABSENT | | | | | | (8.00) | |

Remove Punch 4 11/07 429p
Add Hours 4 11/11 425p VAC (Excused) [Home] 8.00

Acct:300 REG: 32.00 [illegible] 2.00 [illegible] 8.00

ARROYO, LUZMARIA 094664 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 11/07 ABSENT | | | | | | (8.00) | |
| Tue 11/08 705p*L | | *? | | | | 0.00 | 0.00 |
| Wed 11/09 ABSENT | | | | | | (8.00) | |
| Thu 11/10 ABSENT | | | | | | (8.00) | |
| Fri 11/11 ABSENT | | | | | | (8.00) | |
| Sat 11/12 ABSENT | | | | | | (8.00) | |
| Sun 11/13 ABSENT | | | | | | (8.00) | |

BALSIS, BRANDON 201 300

| ID IN | DEP ACTIVITY | OUT | ID IN | DEP ACTIVITY | OUT | TOTALS | |
|---|---|---|---|---|---|---|---|
| Mon 11/07 222p*E | | 1230a | | | | 10.00 | 10.00 |
| Tue 11/08 426p | | 1230a | | | | 8.00 | 18.00 |
| Wed 11/09 221p*E | | 1236a | | | | 10.00 | 28.00 |
| Thu 11/10 223p*E | | 1231a | | | | 10.00 | 38.00 |
| Fri 11/11 425p VAC | | | | | | 8.00 | |
| Sat 11/12 725a | | 1243p | | | | 5.00 | 43.00 |
| Sun 11/13 ABSENT | | | | | | (8.00) | |