IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LUZMARIA ARROYO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:12-CV-06859 |
| vs. | ) | |
| | ) | Honorable John Z. Lee, |
| VOLVO GROUP NORTH AMERICA, | ) | Judge Presiding |
| LLC, d/b/a VOLVO PARTS NORTH | ) | |
| AMERICA, | ) | Honorable Jeffrey Cole, |
| | ) | Magistrate Judge |
| | ) | |
| Defendant. | ) | JURY DEMANDED |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

NOW COMES the Plaintiff, LuzMaria Arroyo, by and through her attorneys, John P. DeRose & Associates, and in opposition to Defendant's Motion for Summary Judgment states as follows:

**STATEMENT OF FACTS**

For a recitation of the facts in this case, please see Plaintiff's Affidavit filed in opposition to Defendants Motion for Summary Judgment.

**STANDARD OF REVIEW**

Summary judgment is appropriate when the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact, such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Protective Life Ins. Co. v. Hansen*, 632 F.3d 388, 391-92 (7th Cir. 2011). A genuine issue of material fact exists when, based on the evidence, a reasonable jury could find in favor of the non-moving party. *Van Antwerp v. City of Peoria, Ill.*, 627 F.3d 295, 297 (7th Cir.

2010). A court construes all facts and draws all reasonable inferences in favor of the non-moving party. *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009).

**ARGUMENT**

I. **ARROYO WAS DISCRIMATED AGAINST IN VIOLATION OF USERRA AND THE ADA**

One of the purposes of USERRA is "to prohibit discrimination against persons because of their service in the uniformed services." 38 U. S. C. § 4301(a)(3) (2005) (USERRA); see also *Bowlds v. General Motors Mfg. Div. of the General Motors Corp.*, 411 F. 3d 808, 810 (7th Cir. 2005). USERRA prohibits employers from "discriminating in employment against or taking any adverse employment action against any person because such a person… has taken an action to enforce a protection afforded" by USERRA. 38 U.S.C. § 4311(b). The Supreme Court has held that courts are to interpret various veterans' statutes liberally. *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285, 66 S.Ct. 1105, 90 L.Ed. 1230 (1946) (holding that courts should liberally construe the Selective Training and Service Act of 1940); *Coffy v. Republic Steel Corp.*, 447 U.S. 191, 196, 100 S.Ct. 2100, 65 L.Ed. 2d 53 (1980) (holding that courts should liberally construe the Vietnam Era Veterans' Readjustment Assistance Act of 1974). Courts interpret USERRA broadly in favor of veterans seeking its protections. 38 U.S.C.A. § 4301 *et seq.*; see also *Davis v. Advocate Health Ctr. Patient Care Express*, 523 F.3d 681, 683-84 (7th Cir. 2008). Arroyo alleges that Volvo consistently harassed her after standing up for her rights for her military obligations under USERRA and ridiculed and mocked her attempts for help and reasonable accommodations.

The ADA prohibits employers from discriminating against disabled employees because of their disability. 42 U.S.C. § 12112(a). Specifically, the ADA provides that it is unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard

2

to… the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment. *Id.*

Arroyo alleges that she was discriminated against because of her disability (depression and anxiety stemming from Posttraumatic Stress Disorder secondary to military service), Volvo failed to accommodate her disability, and retaliated against her because she complained of the retaliation and her requests for accommodations being unmet.

Volvo ultimately terminated Arroyo for being one, two and three minutes late to work, despite her time punch records indicating that she had indeed punched in as much as a half hour early prior to the start of her shift. All of these facts qualify as materially adverse employment actions. *Crews v. City of Mt. Vernon*, 567 F.3d 860, 869 (7th Cir. 2009).

### A. Discrimination Standard under USERRA

USERRA affords broad protections to service members against employment discrimination, providing that members "shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership...." 38 U.S.C. 4311(a). A "benefit of employment" means "any advantage, profit, privilege, gain, status, account, or interest (other than wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes ... the opportunity to select work hours or location of employment." Id. § 4303(2). Under the burden-shifting framework of § 4311, the plaintiff bears the initial burden of showing by a preponderance of the evidence that her enforcement of her USERRA rights "was a motivating factor in her discharge from employment." *Boutros v. Avis Rent a Car System, LLC.*, Slip Copy, 2013 WL 3834405 (N.D.Ill., 2013), 119 Fair Empl.Prac.Cas. (BNA) 592) citing *Bobo v. United Parcel Serv.,*

*Inc.*, 665 F.3d 741, 754 (6th Cir. 2012); *see also* 38 U.S.C. § 4311(c)(2). If Arroyo carries that burden, then the burden shifts to Volvo to prove affirmatively that it would have taken the same employment action in the absence of Arroyo's action to enforce her military obligations and her rights under USERRA. *Id.* citing *Bobo*, 665 F.3d at 754; 38 U.S.C. § 4311(c)(2). Arroyo can present sufficient evidence to allow a rational jury to determine by a preponderance of the evidence that her previous attempts to achieve outside mediation with ESGR, her attempts to educate her supervisors of her rights when called for military trainings pursuant to her military orders, as well as her attempts to follow the chain of command by reporting the harassment and hostile work environment she was subjected to by Keith Schroeder were "motivating factors" in her discharge. (PSOF[1] ¶¶ 13, 15, 38, 39). First, Arroyo can present evidence showing that her managers were continuously looking for a way to terminate her throughout her employment with Volvo beginning almost immediately after receiving her first orders for active duty training, leveled unwarranted discipline against her and ultimately terminated her. (PSOF ¶¶ 1, 15, 17, 25 to 27, and 38 to 40). After receiving her first orders for active duty training, Volvo continually looked for, and eventually seized upon, a pretext that it could use to terminate her in retaliation for exercising her rights under USERRA. Schroeder, Temko and Olin discussed in writing Arroyo's termination when she returned to work from her Annual Drills at Fort McCoy as Olin advised, "This is part of the law which allows her to take the military leave. The last paragraph is our 'out' to hold her to our policies." (PSOF ¶ 16). Schroeder expressed his frustration with Arroyo for failing to keep him informed, "While I have issues with her lack of communication, we likely have no recourse due to her military service." (PSOF ¶ 17). Schroeder and Temko complained from

---

[1] "PSOF" are statements of fact taken from numbered paragraphs contained in Plaintiff's Local Rule 56.1(b)(3)(B) Statement of Undisputed Material Facts.

the time of her first mobilized deployment to support Operation Iraqi Freedom that Arroyo was not keeping them informed of her military commitments and contemplated discipline and termination of her. (PSOF ¶6).

Although Volvo had a companywide Flexible Work Arrangements Policy allowing an "employee to work with his or her supervisor to set the workday, starting and ending time that may differ from others in the department," Schroeder rejected Arroyo's request for a flexible work arrangement if she falls five minutes behind schedule because of walking from the meditation room to her work station. (PSOF ¶ 28). Every accommodation granted to Arroyo came with its own caveats. All of this is circumstantial evidence that Volvo did not treat Arroyo like a normal employee after exercising her USERRA rights, and they provide an additional basis for a rational jury to determine that Volvo was penalizing Arroyo for exercising her USERRA rights. Therefore, one can infer that Arroyo's attempts to exercise the rights afforded to her under USERRA may have been a motivating factor in her termination.

Though Arroyo meets her initial burden to show that USERRA retaliation was a motivating factor in her termination, Volvo "has the opportunity to come forward with evidence to show, by a preponderance of the evidence, that [it] would have taken the adverse action anyway, for a valid reason." *Goico v. Boeing Co.*, 347 F.Supp.2d 955, 983 (D.Kan. 2004). After Arroyo complained that Schroeder was harassing and physically threatening her, Schroder ordered Temko and Maureen Somersett to scrutinize Arroyo's attendance records and issued her a Corrective Action Plan for accumulating "a total of 5 occurences in a 6 month period from August 19, 2010 through August 20, 2011." (PSOF ¶ 38). Schroder created and promulgated "special parking rules", discontinued the "two-minute grace period

before start time", and selectively enforced the "start time rule" and the "safety shoe policy" only against Arroyo. (Arroyo Affidavit, ¶76). Schroeder terminated Arroyo for being "observed by management starting her shift late" on November 4, 2011. (DSOF ¶ 48). Schroeder testified that Arroyo was not terminated from Volvo for insubordination to Schroeder or anyone else in Volvo management, but was only terminated because Volvo management determined that she had violated Volvo Truck Parts Absenteeism Attendance Policy. (PSOF ¶¶ 24-25). Upon comparing Arroyo's punch cards to the spreadsheets at her deposition, Somersett testified that Arroyo had not punched in late, was not tardy on the date she was terminated, and no other Volvo employee had ever been disciplined or terminated for being tardy one minute. (PSOF ¶ 38). There are clear disputed issues of material fact that require summary judgment to be inappropriate.

B. Discrimination Standard under the ADA

Under the ADA, two distinct categories of disability discrimination exist, i.e. failure to accommodate and disparate treatment. Americans with Disabilities Act of 1990, § 2 *et seq.*, 42 U.S.C.A. § 23202 *et seq*. To establish disability discrimination, a plaintiff must establish that she: 1) is disabled under the statutory definition, 2) is otherwise qualified to perform the essential functions of her job, with or without reasonable accommodations, and 3) suffered an adverse employment action because of her disability. *Porch v. Potter*, 367 Fed. Appx. 669, 672 (7th Cir. 2010) (citing *Garg v. Potter*, 521 F.3d 731, 736 (7th Cir. 2008); *Jackson v. City of Chicago*, 414 F.3d 806, 810 (7th Cir. 2005)). The first two requirements speak to whether a plaintiff can demonstrate she is protected by the ADA, i.e. that she is a "qualified individual with a disability." Once plaintiff demonstrates that she is entitled to ADA coverage, she can then satisfy the third part of the test by proving discrimination using either the direct method,

by showing both direct or circumstantial evidence, or the indirect method by using the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) to show that she suffered an adverse employment action because of her disability.

There is no dispute that Arroyo was disabled in that she was diagnosed with PTSD by a doctor at the Veterans Administration Hospital a diagnosis, which was confirmed and collaborated by Dr. John J. Koehler, chosen by Volvo to do an Independent Medical Examination of Arroyo.

### 1. Plaintiff Can Establish Discrimination by Direct Evidence Under the ADA

A disabled plaintiff can prove disability discrimination by using either the direct or indirect method of proof. *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (8th Cir. 2011). Under the direct method, a plaintiff can present either direct or circumstantial evidence to meet its burden. *Dickerson v. Bd. of Trs.*, 657 F. 3d 595, 601 (7th Cir. 2011) (citing *Buie v. Quad/Graphics, Inc*., 366 F.3d 496, 503 (7th Cir. 2004); *Bekker v. Humana Health Plan Inc.,* 229 F.3d 662, 670 (7th Cir. 2000). Direct evidence requires an admission by the decision maker that his actions were based upon the prohibited animus. *Dickerson*, 657 F.3d at 601. Circumstantial evidence, however, allows a jury to infer intentional discrimination. *Id*. Circumstantial evidence a plaintiff may produce to survive summary judgment includes the following: 1) suspicious timing; 2) ambiguous statements or behavior towards other employees in the protected group; 3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and 4) evidence that the employer offered a pretextual reason for an adverse employment action. *Id*. Plaintiff has countless emails sent among Volvo management and staff that illustrates a

7

convincing mosaic that they were intentionally discriminating against her because of her disability.

## 2. Plaintiff Can Establish Discrimination by Indirect Evidence Under the ADA

Under the indirect method of proof or the *McDonnell Douglas* method of proving discrimination, a plaintiff must first establish a *prima facie* case of discrimination by showing that (1) she is disabled under the ADA; (2) she was meeting the employer's legitimate employment expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees without a disability were treated more favorably. *Id*. Once a plaintiff has established a *prima facie* case, the defendant must identify a legitimate, non-discriminatory reason for its employment decision. *Id*. (citing *Rooney v. Kock Air, LLC*, 410 F.3d 376, 381 (7th Cir.2005)). If the defendant satisfies this requirement, the plaintiff must then prove by a preponderance of the evidence that the defendant's reasons are pretextual. *Id*.

Arroyo can prove that she is disabled under the ADA as she was diagnosed by two independent medical doctors with Posttraumatic Stress Disorder secondary to her military service. (PSOF ¶ 34). Arroyo was meeting the legitimate expectations of her employer. Schroeder testified that Arroyo was not terminated from Volvo for failure to perform her job adequately to the expectations of the company, she was not terminated from Volvo for insubordination to management. The only reason for her termination was because Volvo management had determined that she had violated the Absenteeism Attendance Policy. (PSOF ¶¶ 23-25). Defendant's argument that Arroyo was not a qualified individual with a disability for purposes of the ADA because she had "erratic, unexplained absences" fails. Not only did Arroyo have substantial documentation from

doctors, emergency room visits and military orders for her absences that were "erratic or unexplained", but also there is no dispute as to the fact that Arroyo was indeed disabled as she was diagnosed with PTSD from two separate doctors. (PSOF ¶ 34). Defendant's argument that Arroyo was not meeting the employer's legitimate expectations because she violated the employer's work rules, including attendance guidelines also fails because Arroyo had not punched in late and was not tardy when she was terminated for violating Volvo's attendance policy. (PSOF ¶ 38).

Arroyo can prove that similarly situated employees without a disability were treated more favorably. Volvo management and staff did not have any logs, spreadsheets and charts outlining military orders, days off work for military drills and punch in times of any other employees at the Joliet Volvo facility. (PSOF ¶ 26). However, no other employees at Volvo's Joliet facility were on active Army Reservist duties subject to military orders and no other employees were suffering from PTSD (PSOF ¶¶ 2, 35). Sometimes a plaintiff cannot identify similarly situated employees and to "account for such circumstances, we have said that the fourth prong (and actually the test as a whole) really requires a showing 'that the circumstances surrounding the adverse action indicate that it is more likely than not that his disability was the reason for it.'" *Dentice v. Farmers Ins. Exchange* Not Reported in F.Supp.2d, 2012 WL 2504046 (E.D. Wis. 2012), citing *Timmons*, 469 F. 3d at 1126. Therefore, Arroyo has put forth enough evidence from which a reasonable jury could conclude that Volvo's asserted reason for its actions was pretextual.

To show pretext, a plaintiff can show that the stated reason for her termination is "not credible… by demonstrating that the reasons are factually baseless, were not the actual

9

motivation for the discharge, or were insufficient to motivate the discharge." *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 983 (7th Cir. 1999). At the inception of her employment with Volvo, management was looking for "an out" in order to terminate Arroyo for her military duties. (PSOF ¶ 16). After returning from her first deployment, Arroyo was suffering from PTSD and, even as she was hospitalized, Schroeder still sought to terminate her employment. (Arroyo Affidavit, ¶¶ 63-65). When Arroyo asked for reasonable accommodations, Schroeder and Williams consistently rejected her attempts to discuss what would help minimize her affects from PTSD, but in fact submitted her to hostile treatment that only exacerbated her symptoms. After Arroyo complained to Dennis Scholl that Schroeder was harassing and physically threatening her and that Regina Williams was creating a hostile work environment, Schroeder sought permission to terminate Arroyo, and was granted approval by Regina Williams. (PSOF ¶¶ 39, 40).

## II. ARROYO WAS RETALIATED AGAINST IN VIOLATION OF USERRA AND THE ADA

### A. Retaliation Standard under USERRA

If a supervisor performs an act motivated by antimilitary animus that is intended by the supervisor to cause an adverse employment action, and if that act is the proximate cause of ultimate employment action, then the employer is liable under USERRA. *Staub v. Proctor Hospital* 131 S. Ct. 1186, 1187 (U.S. 2011). 38 U.S.C.A. § 4311(c). Proximate cause requires only some direct relation between the injury asserted and the injurious conduct alleged. *Id.* The decision maker's independent investigation and rejection of employee's allegations of antimilitary animus by supervisor does not negate effect of prior discrimination, under USERRA. *Id.* Volvo's management was consistently seeking ways to terminate or discipline Arroyo for exercising her military

rights and obligations. (PSOF ¶¶ 8, 18, 22). Whether these continuous violations were motivated by hostility toward Arroyo's obligations as a member of the United States Army Reserve, whether Schroeder intended to terminate Arroyo because of this hostility, and whether those actions were causal facts underlying his intent to fire Arroyo are questions for the jury.

### B. Retaliation Standard under the ADA

The ADA prohibits employers from retaliating against employees who assert their right under the act to be free from discrimination. 42 U.S.C. § 12203(a). Employers are forbidden from retaliating against employees who raise ADA claims regardless of whether the initial claims of discrimination are meritless. *Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 786 (7th Cir. 2007).

#### 1. There is a Causal Link Between Arroyo's Protected Activity and her Termination

Arroyo had made it clear to Schroeder that she thought she was being discriminated against because of her disability, she wrote to Schroder's supervisor, Dennis Scholl alleging that Schroeder was harassing her, and Regina Williams cautioned Schroeder that "we could be violating the ADA." (PSOF ¶ 37). After Arroyo registered complaints against Schroder, Schroder had Temko and Somersett scrutinize Arroyo's attendance records and was granted approval to terminate her only six weeks after Arroyo's complaints to the highest level of Volvo Corporate Management. (PSOF ¶¶ 38, 40).

### III. ARROYO CAN SHOW THAT VOLVO FAILED TO REASONABLY ACCOMMODATE HER IN VIOLATION OF THE ADA AND USERRA

To establish a failure to accommodate claim under the ADA, the plaintiff must show the defendant failed to reasonably accommodate her disability. *Gratzl v. Office of Chief Judges of 12th, 18th, 19th, and 22nd Judicial Circuits*, 601 F.3d 674, 678 (7th Cir. 2010); *EEOC v.*

11

*Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005). The ADA requires an employer to "make reasonable accommodations to the known physical and mental limitations of an otherwise qualified individual." *Gratzl*, 601 F.3d at 682 (citing 42 U.S.C. § 12112(b)(5)(A)).

To establish this, Arroyo must present evidence showing not only her attempt to engage in the interactive communication process with the company to determine a reasonable accommodation, but also that Volvo was responsible for any breakdown that occurred in that process. *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005). When there is a communication breakdown, the court is required "to isolate the cause of the breakdown and then assign responsibility." *Ekstrand v. Sch. Dist. Of Somerset*, 583 F. 3d 972, 976 (7th Cir. 2009) quoting *Bultemeyer v. Fort Wayne Cmty. Sch.*, 100 F. 3d 1281, 1285 (7th Cir. 1996).

Volvo claims it was engaging in the interactive process and Arroyo was solely responsible for the breakdown of the process. The Seventh Circuit recognized "an employee's request for reasonable accommodation requires a great deal of communication between the employee and employer. *Id*. An employer "may not be obligated to provide a specifically requested modest accommodation unless the employer is made aware of its medical necessity to the employee." *Id*. Thus, a reasonable accommodation "is connected to what the employer knows about the employee's precise limitations," and what an employer knows is limited by the evidence the employer receives. *Id*. Furthermore, an employer is obligated to provide the necessary accommodation unless it "would impose an undue hardship" on the operation of its business. 42 U.S.C. § 12112(b)(5)(A).

### A. Volvo Consistently Refused Arroyo's Requests for Accommodations and in Fact Harassed and Ridiculed Her Requests

For years before her termination, Arroyo had been submitting documentation regarding her rights under USERRA and the ADA to Volvo management for its review and

understanding, only to have Volvo management mock and ridicule Arroyo and the documentation she presented. (PRDSOF[2] ¶ 55). Arroyo presented numerous documents from various websites, such as the United State Department of Labor, Title 38 United States Code and from Employer Support of the Guard and Reserve (ESGR). (PRDSOF ¶ 55). Arroyo submitted to an Independent Medical Examination by Volvo's doctor in order to conduct initial and follow up evaluations to determine work restrictions and accommodations. (PRDSOF ¶ 58). Arroyo sent an email to Schroeder and Williams providing a link to the Department of Labor's *America's Heroes at Work* website that addresses challenges facing service members returning to work with PTSD. (PRDSOF ¶ 64). She also requested disability awareness training for Schroeder, the Material Handler Supervisors, and her co-workers. (PRDSOF ¶ 64). When Arroyo emailed Williams on September 1, 2011 with additional accommodation requests, she relied upon a document prepared by the Department of Labor which identified certain potential accommodations for employees with PTSD. (DSOF ¶ 66-67). Two days later, Arroyo emailed Dennis Sholl requesting an investigation into Schroeder's disability based harassment. (PRDSOF ¶ 68). Arroyo then filed a charge of discrimination with the EEOC on September 13, 2011 alleging discrimination and retaliation under the ADA. (PRDSOF ¶ 69). On September 20, 2011 Arroyo replied to an email that it was in her best interest to obtain legal counsel before proceeding any further with the company. (PRDSOF ¶ 72). However, when Williams emailed Arroyo later that day requesting to conduct an investigation regarding Arroyo's harassment complaint, Arroyo replied that she would be willing to answer questions by email in the interim. (PRDSOF ¶ 73). She also emailed Pat Dunford, Vice President of Volvo Human Resources indicating that

---

[2] " PRDSOF" are statements of fact taken from numbered paragraphs contained in Plaintiff's Response to Defendant's Local Rule 56.1(a)(3) Statement of Undisputed Material Facts.

she would not be able to attend the appointment to conduct the IME that was scheduled on a date without her consideration. (PRDSOF ¶ 75). She also requested more information, inquiring concerning what additional information would be required from her doctors or psychologists in order to evaluate her accommodation requests. *Id*. Arroyo never received a response to her inquiry. In the end, Volvo halted all attempts to determine reasonable accommodations for Arroyo's disability.

**B. Volvo Consistently Harassed Arroyo When Attempting to Utilize the Few Requests that Were Accommodated**

Arroyo was harassed when attempting to utilize the few accommodations that were approved. Volvo granted Arroyo's requests for a place to mediate, and when she attempted to use the meditation room she was disciplined. Schroeder gave Arroyo two different corrective action plans on the same day for violating the local "Start of Shift Rule" when on October 31, 2011, November 2, 2011 and November 4, 2011 she departed the meditation room at 4:30 p.m., proceeded to her car parked at the back of the building, drove around to the entrance, and went into the ladies room to get her required Personal Protective Equipment to begin her work day. (PSOF ¶ 27). Concealing his discriminatory tactics, Schroeder discontinued the "two-minute grace period before start time", selectively enforced a "special parking rule", the "start time rule" and the "safety shoe policy" against only Arroyo in order to infringe on the accommodations Volvo had granted her and to discipline her for being one, two or three minutes late to start work. (PRDSOF ¶¶ 37, 40, 45). All plant supervisors knew that Arroyo had been in the plant for as much as a half hour before work each day to take advantage of the accommodation to use the meditation room. (Arroyo Aff. ¶76).

**IV. VOLVO'S CONDUCT WAS EXTREME AND OUTRAGEOUS**

In order to state a cause of action for intentional infliction of emotional distress, a plaintiff must adequately allege that: 1) the defendant's conduct was extreme and outrageous; 2) the defendant either intended to inflict severe emotional distress or knew that there was a high probability that its conduct would do so; and 3) the defendant's conduct actually caused severe emotional distress. *Graham v. Commonwealth Edison Co*. 318 Ill.App.3d 736, 742 (Ill.App. 1 Dist., 2000) citing *Welsh*, 306 Ill. App. 3d at 154; *McGrath v. Fahey*, 126 Ill.2d 78, 86 (1988). Liability of intentional infliction of emotional distress only attaches in circumstances where the defendant's conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency. *Id*., citing *Public Finance Corp*., 66 Ill.2d at 90, quoting Restatement (Second) of Torts § 46, Comment d (1965). The distress inflicted must be so severe that no reasonable person could be expected to endure it. *Id*. The more power and control that a defendant has over a plaintiff, the more likely defendant's conduct will be deemed outrageous. *Id*. The defendant's awareness that the plaintiff is particularly susceptible to emotional distress is a consideration as to outrageousness. *Id*. There is no dispute that Volvo management was aware of Arroyo's PTSD diagnosis and her susceptibility to emotional distress. Volvo management either intended to inflict severe emotional distress, or knew that there was a high probability that its conduct would do so.

## CONCLUSION

For the reasons set forth above, LuzMaria Arroyo respectfully requests that this Court deny Defendant's Motion for Summary Judgment.

Respectfully Submitted,

/s/Caitlyn F. DeRose
One of Plaintiff's Attorneys

John P. DeRose & Associates
15 Spinning Wheel Road
Suite 428
Hinsdale, Illinois  60521
(630) 920-1111 office
(630) 920-1170 fax
john@johnderoselaw.com
caitlyn@johnderoselaw.com