IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LUZMARIA ARROYO, | ) |
|         Plaintiff, | ) |
| vs. | ) Case No. 1:12-CV-06859 |
| VOLVO GROUP NORTH AMERICA, LLC, d/b/a VOLVO PARTS NORTH AMERICA, | ) Honorable John Z. Lee, Judge Presiding |
| | ) Honorable Jeffrey Cole, Magistrate Judge |
|         Defendant. | ) JURY DEMANDED |

## PLAINTIFF's LOCAL RULE 56.1(b)(3)(B) STATEMENT OF UNDISPUTED MATERIAL FACTS

Now comes the Plaintiff, LuzMaria Arroyo, by and through her attorneys, John P. DeRose & Associates, and pursuant to Local Rule 56.1(b)(3)(B), submits the following as and for her Statement of Undisputed Material Facts in opposition to the Defendant Volvo Group North America's Motion for Summary Judgment::

1.    Within 2 months of the commencement of her employment and throughout her employment thereafter, Volvo Truck Parts North America (hereinafter sometimes simply referred to as "Volvo") violated the terms of USERRA and the Americans with Disabilities Act, failed to take affirmative action to advance in employment LuzMaria Arroyo who was suffering from posttraumatic stress syndrome (PTSD), subjected plaintiff to a hostile work environment and heightened scrutiny, considered terminating her during and after each deployment, leveled unwarranted discipline against her, and ultimately terminated her. (Exs. 5, 10 to 12, 19 to 21, 33,

1

and 51; Scholl Dep., pp. 28:20 to 33:10, 40:1 to 44:11 and 46:11 to 50:6; LuzMaria Arroyo's Affidavit, generally).

2. No other of the 90 employees at Volvo's Joliet facility were on active Army Reservist duties subject to military orders. (Schroeder Dep., pp.180:20 to 181:2; Temko Dep., p. 54:18-20).

3. Dennis Scholl, the Director of Central, West, and Mexico Regions, The Logistics Operations Americas of the Volvo Group is not aware of any federal law giving the serviceman the right not to keep the employer advised of when she is coming back to work, where the reservist is going, and how long she is going to be there. (Ex. 51; Scholl Dep., pp. 10:16-20 and 31:11 to 33:10).

4. Michael Temko, Arroyo's supervisor does not know if Volvo Truck Parts Policies override USERRA policy, and he expected, Volvo Human Resources to make sure the policies were in compliance with the law. (Temko Dep., pp. 42:16 to 44:10).

5. Schroeder had very little knowledge about the requirements of USERRA and he needed an education on that, so Arroyo was giving him documentation to educate him and his staff concerning her rights and Schroeder "briefly read" some of those documents. (Schroeder Dep., pp. 71:13 to 73:7 and 119:19-17).

6. Although Schroeder and Temko started complaining within 2 months of the commencement of her employment with Volvo and during the time of her first mobilized deployment to support Operation Iraqi Freedom for 314 days that Arroyo was not keeping them informed of her military commitments and, therefore, contemplated discipline and even termination of her, Schroeder insists that Arroyo was not terminated for failure to give Volvo

2

Truck Parts copies of her military orders. (Exs. 19, 20, 29; Schroeder Dep., p. 104:3-5, Temko Dep., pp. 23:15 to 24:22, 27:22 to 30:3, and 31:21 to 33:8).

7.  Although Arroyo had multiple tours of duty and weekend drills and annual training, Schroeder never thought Arroyo was away from work more time than he thought was appropriate as it was her obligation as a Reservist. (Schroeder Dep., pp. 38:22 to 39:11).

8.  In early April 2007 Temko complained to Schroeder and HR Representative Bruce Olin that Arroyo contacted him only one time during her deployment to Iraq and they had only a brief conversation before they were disconnected. (Exs. 32, 35; Temko Dep., pp. 80:17 to 82:9 and 91:1-22).

9.  Although Arroyo was not indispensable to Volvo's operation of its Joliet plant and Arroyo had a little more responsibilities and worries in Iraq than keeping them advised of when she was going to be coming back to work., because they were "trying to run a business" and for their own "planning/scheduling purposes, it would be beneficial" to know her deployment status. (Ex. 32, Temko Dep., pp. 69:3-21, 83:3 to 84:16, and 123:12 to124:23).

10. Schroeder agreed that he could put someone else to attend to the needs of Volvo's customers when Arroyo was otherwise engaged in the needs of service to our country. (Schroeder Dep., pp. 70:8 to 71:3).

11. Because Volvo management found fault with the length of time it took for Arroyo to travel from Fort Benning, Georgia after she completed her Army Reserve Drill, Schroeder, Temko, and Olin "discussed" her transfer to a local Army Reserve Unit, HR Representative Celia Jarvis "suggested" that she fly to and from her drills, and Arroyo acceded to Schroeder's insistence that she transfer to a local Army Reserve Unit in Darien, Illinois. (Exs. 86, 40; Arroyo Affidavit, ¶¶ 15, 16, and 27 to 30).

3

12. Upon her return to work at Volvo, Arroyo gave Temko the military orders setting forth her drill schedule for a whole year in advance. (Ex. 40; Temko Dep., pp. 98:13 to 100:10).

13. Arroyo researched her rights under USERRA and, after HR Representative Celia Jarvis went "all the way to Washington," she told Volvo management that Arroyo must be given adequate travel time and rest time to fulfill her military obligations. (Exs. 24, 25, 115; Temko Dep., pp. 69:22 to 75:6, and 77:15 to 78:12; Schroeder Dep., pp. 82:6 to 84:20).

14. Although Arroyo had only been back from deployment to Baghdad, Iraq since May of 2007, she kept Volvo advised that she was ordered to additional training for three consecutive stretches with her new Darien Reserve Unit in April 2008. (Exs. 43, 44, 45, 46, 47; Temko Dep., 106:23 to 108:2).

15. Volvo management heightened the scrutiny of Arroyo's military drills as Temko created a timeline of Arroyo's Annual Drills and checked MapQuest for travel time and distance to and from Fort McCoy, Wisconsin. (Ex. 50; Temko Dep., pp. 117:8 to 118:22).

16. Schroeder, Temko, and Olin discussed in writing Arroyo's termination when she finally returned to work from her Annual Drills at Fort McCoy as Olin advised, "Keith, just an FYI. This is part of the law which allows her to take the military leave. The last paragraph is our "out" to hold her to our policies." (Ex. 50, 53; Temko Dep., pp. 118:23:-122:24).

17. On November 19, 2008 Schroeder received orders from Arroyo's local Army unit stating that she had orders from November 12 to November 26 which were not even issued until November 14. Schroeder expressed his frustration that if LuzMaria had received these orders on November 14, she should have either called or faxed the orders as he wrote, "While I have issues

4

with her lack of communication, we likely have no recourse due to her military service." (Ex. 50, 52, 54; Temko Dep., pp. 125:17 to 128:16).

18. In September 2010 when Arroyo returned from yet another 400 day deployment in support of Operation Iraqi Freedom and sought reemployment as is her right under USERRA, Schroeder, Mike Temko, Bruce Olin, and Dennis Scholl again discussed the possibility of denying her re-employment in violation of USERRA, but instead decided to offer LuzMaria Arroyo a "Voluntary Severance Package". (Exs. 55, 57, 61, 63, 64, 65, 67, 68, 69; Temko Dep., pp. 130:16 to 132:24).

19. Scholl, Schroeder, and Temko discussed the chances that Arroyo would accept the Voluntary Severance Package since other employees had accepted it because they were afraid that they would not be able to measure up to the new requirements of the Labor Management System (LMS). (Ex. 69; Temko Dep., pp. 133:20 to 136:14).

20. Although Temko expressed belief that Arroyo would accept the Voluntary Severance Package since several of the "employees who were below average performers" accepted it because they were concerned about making it under the Labor Management System, he had never before described her as a below average performer and the last time he reviewed Arroyo before her deployment he gave her grades of "Very Good". (Ex. 70; Temko Dep., pp. 136:15 to 141:13).

21. Shortly after Arroyo refused the Voluntary Severance Package, Schroeder was contemplating discipline of Arroyo for being 1 minute tardy and reporting that "she is having personal issues of depression since her return from active duty" and she wanted her absence on

5

October 19, 2010 to be considered excused as "she was seeking support from the military for her medical issues". (Ex. 95; Schroeder Dep., pp. 129:17 to 130:11).

22. Schroeder was stopped by Human Resources Director Bruce Olin from disciplining Arroyo: "The only issue I have concern is the last tardy of 1 minute. Yes, she signed the form, but has been away from work for some time. Were the policies reviewed with her when she returned? I understand we enforce the rules completely and nondiscriminatory only, but I can see some outsider having a different view of this, giving her a CAP for being 1 minute late." (Ex. 95; Schroeder Dep., p. 131:6-20).

23. Schroeder testified under oath that Arroyo was not terminated from Volvo for failure to perform her job adequately to the expectations of the company as he has never seen a written criticism or heard a verbal criticism of Arroyo's work performance from any of the Volvo supervisors. (Schroeder Dep., pp. 104:6-9 and 115:22 to 116:23).

24. Schroeder testified that Arroyo was not terminated from Volvo for insubordination to Schroeder or anyone else in the Volvo management team. (Schroeder Dep., pp. 104:10-12, and 213:15 to 214:8).

25. Although Volvo had a companywide Flexible Work Arrangements Policy allowing an "employee to work with his or her supervisor to set the workday, starting and ending time that may differ from others in the department.", Schroeder rejected Arroyo's request for a flexible work arrangement to allow her to stay 5 minutes longer if she falls 5 minutes behind because of walking from the meditation room. (Ex. 184; Schroeder Dep., pp. 215-219, 221-222).

26. According to the way that Schroeder administers the Volvo Truck Parts Absenteeism Attendance Policy: If a person is late, it is documented as late regardless of whether

it is one (1) minute or one (1) hour, although in the past Volvo had a grace period of 1 to 2 minutes to start work, and Temko believes that when Arroyo started her shift 1 minute late that tardiness would throw the entire shift completely out of whack so that she could never make up the 1 minute in the course of the work day. (Schroeder Dep., p. 106:3-24; Temko Dep., pp. 154:2 to 158:2).

27. Although Schroeder claims that "one cannot help but be sympathetic with Arroyo" when she emailed him on Christmas Eve that she went to the emergency room because she was experiencing panic attacks and shaking uncontrollably, just four (4) days later Schroeder was considering giving Arroyo discipline for not being in attendance at work and Volvo supervisors and employees were gossiping that she might be on a vacation in Hawaii. (Exs. 123 and 124; Schroeder Dep., pp. 139:15 to 142:24 and 146:6 to 148:24).

28. On the following day, December 30, 2010 Arroyo was writing to Brian Fask, the Licensed Clinical Social Worker from the VA was giving her therapy about the escalating anxiety she was experiencing at Volvo at the hands of Schroeder. (Ex. 125).

29. Schroeder and Temko had no doubts that Arroyo was suffering from PTSD and did not believe that she was merely malingering or faking it since Dr. John J. Koehler, the doctor chosen by Volvo to conduct an Independent Medical Examination of Arroyo confirmed the diagnosis by Doctor J. Richard Monroe of the Veterans Administration that she was suffering from posttraumatic stress disorder (PTSD). (Exs. 141 and 142; Schroeder Dep., pp. 152:7-20 and 171:13 to 172:6; Temko Dep., pp. 150:7 to 151:24).

30. Schroeder agrees that Arroyo had some things going on that were unique to her and, to his knowledge, Schroeder did not have any other employee at the Joliet facility who was

7

suffering from PTSD and, of course, if Arroyo had military orders, she would be obliged to follow those orders and that would overrule any order he or his company gave her. (Schroeder Dep., pp.185:24 to 187:17).

31. Because Arroyo was suffering from posttraumatic stress syndrome and was having high anxiety, she was entitled to some special considerations; so it was approved for her to go to a designated meditation room, a private place to de-stress 20 to 30 minutes before starting work each day and on breaks. (Ex. 188; Schroeder Dep., pp.188:1-9 and 207:23 to 208:7; Temko Dep., p. 158:18-23).

32. By May 2011 Arroyo had made it clear to Schroeder that she thought she was being discriminated against because of a disability, so Schroeder wrote to all his supervisors, "Due to the ongoing job issues and concerns with LuzMaria Arroyo, I strongly urge you to have a witness whenever you have a conversation with this employee.". (Ex. 152, Schroeder Dep., pp.156:18 to 160:18).

33. Dennis Scholl, Schroeder's supervisor alerted him concerning Arroyo's allegation that Schroeder was harassing her and that he had cornered her in a windowless room and had threatened her and Human Resources Representative Regina Williams cautioned Schroeder: "W to stop e are dealing with an exception in her case. We could be in violation of ADA". (Exs. 15, p.8 Harassment, 162, 163; Schroeder Dep., pp. 192:11 to 195:14).

34. After Arroyo filed a formal complaints, the harassment and intimidation by Schroeder and other members of the Volvo management team only increased and intensified as Schroeder created and promulgated a "special parking rules", he discontinued the "two-minute grace period before start time", and selectively enforced the "start time rule" and the "safety shoe policy" only against Arroyo so that he could infringe on accommodations Volvo had already

8

granted and discipline her for being 1, 2, or 3 minutes late in starting work after leaving the assigned meditation room. (Arroyo affidavit, ¶¶ 75 and 76).

35. Schroeder testified that Arroyo was only terminated because Volvo management determined that she had violated Volvo Truck Parts Absenteeism Attendance Policy and the Start of Shift Rule. (Schroeder Dep., p. 104:13-17 and 213:7-14).

36. Although they did not do so with the attendance records of any other employee, starting in November 2008 and continuing throughout the rest of her employment with Volvo after Arroyo had been deployed overseas and had been engaged in weekend drills pursuant to military orders, Schroeder and Regina Williams ordered Maureen Somerset and Michael Temko to create spreadsheets, logs, and charts of those military orders, days off work for military drills, and punch in times when Arroyo returned from VA therapy sessions and forward the spreadsheets, logs, and charts to HR at Volvo Headquarters. (Exs. 48, 49, 176, and 203; Schroeder Dep., pp. 196:13 to 200:17; Temko Dep., pp. 110:22 to 115:19; Somersett Dep., pp. 25:17 to 29:1, 134:22 to 137:17, and 170:14 to 172:8).

37. Despite the Volvo's Progressive Discipline Policy, Schroeder gave Arroyo 2 different Corrective Action Plans on the same day for violating the just promulgated[1] local "Start of Shift Rule" because she had departed from the meditation room at 4:30 PM to begin her shift on October 31, 2011, November 2, 2011, and November 4, 2011, proceeded to her car at the back of the building, drove around to the front entrance, and went into the ladies room to get her required Personal Protective Equipment. (Exs. 230, 233 and 235; Schroeder Dep., p. 213:7-14, 262:19 to 266:14).

---

[1] The Memorandum (Ex. 230) dated November 1, 2011 sets forth the parameters for the "Start Time" and the "Meditation Room.

38. Somersett testified that she was never asked to make speadsheets for any other employee, she did not recall any other employee who was terminated for being tardy 1 minute, and--upon comparing Arroyo's punch cards to the spreadsheets at her deposition --LuzMaria Arroyo actually punched in more than one half hour early and was not tardy on the dates indicated and claimed by Volvo. (Gr. Ex. 263, Bates No. 3827 and Gr. Ex. 265, Bates Nos. 2781 and 2782; Somersett Dep., pp. 24:24 to 29:1, 134:13 to 137:10, 192:18 to 193:22, and 194:14 to 201:1).

39. After Arroyo followed Volvo's Human Resources United States Policies and Procedures to register her complaints against Schroeder and Williams, Dennis Scholl appointed Regina Williams to do an investigation of the serious allegations that Schroeder had created a hostile work environment, had physically threatened her, and was violating her rights under USERRA and the Americans with Disabilities Act, but Regina Williams never conducted such an investigation and Schroeder was never questioned about the allegations. (Exs. 172, 182, 189, 194, 195, 198; Scholl Dep., pp. 144:11 to 151:4, 157:6 to 159:7, 162:6 to 166:14, and 197:24 to 201:9; Schroeder Dep., pp. 236:5 to 238:18 and 240:3 to 241:24).

40. Although Arroyo had made complaints to the highest level of Volvo Corporate Management against them about 6 weeks earlier, Schroeder sought and was granted approval from his HR Business Partner, Regina Williams to terminate her. (Exs. 189, 195, 238, and 253; Scholl Dep., pp. 160:7 to 161:24, and 197:24 to 201:9; Schroeder Dep., pp. 190:21 to 191:1 and 229:15 to 234:10).

Respectfully submitted,

/s/ John P. DeRose
John P. DeRose

John P. DeRose & Associates
15 Spinning Wheel Road
Suite 428
Hinsdale, Illinois 60521
(630) 920-1111 Office
(630) 920-1170 Fax
john@johnderoselaw.com