# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LUZMARIA ARROYO, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     vs. | )   Case No. 1:12-CV-06859 |
| | ) |
| VOLVO GROUP NORTH AMERICA, LLC, d/b/a VOLVO PARTS NORTH AMERICA, | ) |
| | ) |
|     Defendant. | ) |

## DEFENDANT VOLVO GROUP NORTH AMERICA, LLC'S TRIAL BRIEF

Defendant Volvo Group North America, LLC, d/b/a Volvo Parts North America ("Volvo" or "Defendant"), by and through counsel, submits the following Trial Brief.

## INTRODUCTION

According to the Seventh Circuit panel **[Doc. 110]**, the sole remaining claims for the jury are Arroyo's USERRA discrimination claim and ADA discrimination claim under the "direct method" of proof. And, as further explained in Volvo's motions in limine, a careful review of the panel's decision reveals very few pieces of evidence left that could support those claims. To be clear, Volvo strongly contends that even this remaining evidence is not sufficient for Arroyo to reach a jury, and that the panel inexplicably departed from well-established employment discrimination law principles in reversing this Court's summary judgment ruling as to Arroyo's discrimination claims. Nonetheless, for the reasons discussed below, Volvo submits that it will still be entitled to dismissal and judgment as a matter of law at the close of Arroyo's evidence.

## BACKGROUND

Arroyo was employed as a material handler at Volvo's Joliet, Illinois, facility from June 2005 to November 2011. Throughout the entirety of her employment, Arroyo was subject to the local facility's Attendance Policy, which was administered by Keith Schroeder and Michael Temko. Under the Policy, employees receive whole or fractional occurrences for unexcused absences or tardiness. Each time there is an occurrence, Volvo applies a four-week and six-month look-back period to see if the employee has earned enough occurrences to receive a step in the progressive disciplinary process. Corrective action will be taken if an employee has two occurrences within a four-week period or five occurrences within a six-month period. The disciplinary steps under the Attendance Policy are: (1) Verbal Warning, (2) Formal Written Warning, (3) Three-Day Suspension, and (4) Termination.

It is undisputed that in every year of her employment with Volvo, Arroyo received at least some occurrences under the local Attendance Policy for unexcused absences or tardiness. Between October 2010 and November 2011, however, Arroyo earned the requisite occurrences to trigger a verbal warning, written warning, suspension, and ultimately her termination under the Policy. Not one of those occurrences was based on time Arroyo missed due to her military service or for treatment for her service-related PTSD. Arroyo was given over 900 days of military leave during her employment for her active duty reservist obligations.

Despite her numerous admitted occurrences under the Attendance Policy, Arroyo sued Volvo and asserted claims for discrimination under USERRA and the ADA, retaliation under USERRA and the ADA, failure to provide reasonable accommodations under the USERRA and the ADA, and a state-law claim for intentional infliction of emotional distress. In a detailed opinion, this Court granted Volvo's Motion for Summary Judgment and dismissed all of Arroyo's

claims. **[Doc. 88]** A panel of the Seventh Circuit affirmed this Court's ruling with respect to Arroyo's retaliation, failure to accommodate, intentional infliction of emotional distress, and ADA discrimination claim under the "indirect method" of proof, but reversed with respect to Arroyo's USERRA discrimination claim and ADA discrimination claim only under the "direct method" of proof. **[Doc. 110]**

## ARGUMENT

As to the two sole remaining claims, while Volvo acknowledges that the law of the case doctrine and mandate rule require this Court to generally follow the panel's decision, it is noteworthy that "[a]n appellate mandate does not turn a district judge into a robot, mechanically carrying out orders that become inappropriate in light of subsequent factual discoveries or changes in the law." *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 796 (7th Cir. 2005). Additionally, "it is 'critical to determine what issues were actually decided' in the earlier proceedings in order to define the law of the case." *Roboserve, Inc. v. Kato Kagaku Co., Ltd.*, 936 F.Supp. 522, 524 (N.D. Ill. 1996) (citing *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 231 (7th Cir. 1988)). Here, and as discussed further below, Arroyo's discrimination claims face several obstacles that will prevent her from withstanding a motion for judgment as a matter of law at the conclusion of her evidence—some of which were not even addressed one way or another by the panel.

**I.    Arroyo Cannot Prove That Her Military Status was a Motivating Factor in Her Termination Under USERRA.**

The panel correctly stated that Arroyo's USERRA discrimination claim is governed by the two-step burden shifting scheme set forth in *Crews v. City of Mt. Vernon*, 567 F.3d 860, 864 (7th Cir. 2009): (1) the plaintiff must first show that her military membership was a "motivating factor" in the adverse employment action; (2) if the plaintiff does so, the burden then shifts to the employer

to prove that it would have taken the same action regardless. **[Doc. 110 at 9-10]** *See also* 38 U.S.C. § 4311(c)(1). However, the panel misapplied that framework by diverging significantly from Circuit precedent in its "motivating factor" analysis and by failing to consider the full scope of the comparator evidence when analyzing Volvo's affirmative defense. The actual evidence presented at trial will confirm that Arroyo will be unable to carry her burden of proof and, alternatively, that Volvo will be able to establish its affirmative defense.

    **A.    Emails exchanged years before Arroyo's termination cannot demonstrate animus toward her military service.**

Acknowledging the "poor job" that Arroyo did in presenting her case to the District Court, the panel nonetheless cited certain emails that were exchanged between Schroeder, Temko, and Volvo Human Resources from 2005-2008—*years prior* to Arroyo's occurrences from October 2010 through November 2011 that ultimately led to her termination under the Attendance Policy. **[Doc. 110 at 3-6, 11]**[1] Taken in context, at most these emails show Volvo discussing Arroyo's military status and how that might affect her entitlement to leave, which ultimately protected her from discipline. Indeed, it is undisputed that Arroyo never received any occurrences under the Attendance Policy for days on which she took military leave. *See* Arroyo v. *Volvo Group North America, LLC*, 2014 WL 4922523, at *14 (N.D. Ill. 2014).

Although Volvo disagrees with the panel's characterization of these communications as evidencing animus, regardless of that disagreement, the emails cannot legally create an inference of discrimination under long-established precedent. As the Seventh Circuit has stated, "[t]o raise

---

[1] The specific emails referenced can be found in the District Court record at Docs. 78-3 and 78-4, Exs. 20 (PgID 1271), 21 (PgID 1272-73), 22 (PgID 1274), 23 (PgID 1275-76), 24 (PgID 1277-78), 25 (PgID 1279), 32 (PgID 1281-82), 50 (PgID 1312-13). For convenience of the Court, these emails, together with two additional emails referenced by the panel with regard to Arroyo's ADA discrimination claim, are being attached to this Trial Brief as **<u>Exhibit A</u>**.

an inference of discrimination, comments must be: 'made by the decision maker, (2) around the time of the decision, and (3) in reference to the adverse employment action.'" *Teruggi v. CIT Group/Capital Finance, Inc.*, 709 F.3d 654, 661 (7th Cir. 2013) (quoting *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 491 (7th Cir. 2007)). While Schroeder and Temko made several of the statements identified in the emails at issue, these emails in no way referenced Arroyo's 2010-2011 occurrences, nor could they have—all of Arroyo's attendance occurrences that led to her termination occurred *years in the future* and on days she did not have any military obligations.

Moreover, even if these prior emails were relevant and timely, it is particularly inappropriate to find an inference of discrimination in this case because of the undisputed—and temporally connected—evidence of Volvo exercising its discretion to benefit Arroyo under the Attendance Policy throughout 2010 and 2011. In particular, and as just one example, it is undisputed that Volvo excused certain tardies for which Arroyo otherwise could have been given an occurrence. *Arroyo*, 2014 WL 4922523, at *13 (N.D. Ill. 2014). This Court emphasized this in analyzing Arroyo's ADA discrimination claim under the indirect method (which claim the panel found was properly dismissed), but this same analysis applies equally to Arroyo's USERRA discrimination claim. Thus, the panel's legal error in considering emails years prior to Arroyo's discipline is especially demonstrated by Volvo's more recent actions in administering its Attendance Policy in Arroyo's favor.

**B.**     **In an attempt to bolster its finding of animus, the panel departed from well-established Circuit precedent and substituted its judgment for that of Volvo's regarding the seriousness of Arroyo's numerous violations of the Attendance Policy.**

Despite the fact that Arroyo never received any occurrences under the Attendance Policy on days she took military leave, *Arroyo* 2014 WL 4922523, at *14, the panel still found that there

was a link between the purported military animus and her occurrences under the Attendance Policy. In reaching this decision, the panel reasoned that some instances of Arroyo's tardiness were "often of a relatively minor nature—one or only a few minutes late." **[Doc. 110 at 12]** This analysis leads to at least two major legal flaws in the Court's conclusion.

First, it was improper for the panel to subjectively downplay Arroyo's discipline. As this Court has stated, "[t]he judiciary is not, however, a super-personnel department that reinvestigates employee disputes." *Butler v. American Foods Group, LLC*, 538 Fed. Appx. 725 (7th Cir. 2013) (refusing to second-guess employer's interpretation of its attendance rules) (citing *Harris v. Warrick Cnty. Sheriff's Dep't*, 666 F.3d 444, 449 (7th Cir. 2012); *Hudson v. Wal-Mart Stores, Inc.*, 412 F.3d 781, 786 (7th Cir. 2005)). It is undisputed that an employer can require its employees to be at work, ready to work, on time. *Waggoner v. Olin Corp.*, 169 F.3d 481, 485 (7th Cir. 1999) ("an employee who does not come to work cannot perform the essential functions of his job") (internal citations omitted).

Second, and relatedly, the panel's characterization of Arroyo's occurrences as minor ignores the very nature of attendance violations. A company does not control if or when one of its employee happens to arrive to work. The employee may be completely absent, an hour late, a minute late, etc., but regardless, the company records the tardiness and absences, and administers discipline according to the policy. In this sense, the panel's reliance on *Maxfield v. Cintas Corp.*, 427 F.3d 544, 554 (8th Cir. 2005) is misplaced **[Doc. 110 at 13]** *Maxfield* involved an employee who was discharged—within days of returning from his last military leave—purportedly for taking accrued emergency leave while simultaneously taking military leave, which the plaintiff's supervisor believed was prohibited under company policy. However, evidence showed that this practice was actually *allowed* under company policy, and that somehow the plaintiff's manager

did not discover this after a questionable internal investigation into the same. *Maxfield,* 427 F.3d at 553-54. This sort of manufactured reason for discharge at issue in *Maxfield* is a far cry from the evidence in this case. The occurrences earned by Arroyo, and the corresponding level of discipline administered by Volvo, were dictated by when Arroyo punched in to work and walked to her work station. Even assuming *arguendo* that some military animus once existed (which it did not), it was completely unconnected to Arroyo's ultimate termination under the Attendance Policy and should not be considered.

> C. **The totality of the comparator evidence demonstrates that Volvo would have terminated Arroyo regardless of her military service.**

Finally, in holding that Volvo did not establish its affirmative defense, the panel focused on the fact that Volvo identified five other employees who were disciplined for being minutes late under the Attendance Policy, but that only one of them was terminated. **[Doc. 110 at 13-14]** In essence, the panel believed that this evidence was not enough to avoid an inference of discrimination. That conclusion is not binding at trial, since the panel never considered all of Volvo's comparator evidence that was before the District Court at summary judgment.

Preliminarily, it is important to understand the context of why only these five employees were referenced in the parties' briefs on appeal. On appeal, Arroyo attempted to make an artificially narrow comparator argument by isolating these five particular individuals as other material handlers who happened to punch in minutes late like her. (Appellant's Br. at 20-21 **[Appellate Doc. 20-1 at 20-21]**). Volvo thus had to respond to the same, and argued that Arroyo was impermissibly attempting to make a comparator argument for the first time on appeal and also addressed the merits of these particular employees' discipline under the Attendance Policy. (Appellee's Brief at 30-31, 38 **[Appellate Doc. 22 at 30-31, 38]**) The fact that only one of these particular five individuals happened to be terminated under the Attendance Policy is not probative

and misses the point, as Victor Jackson was the only employee within this group who achieved the fourth step in progressive discipline *to be terminated*.

Further, it is critical to note that these five employees were only a fraction of those identified by Volvo who were disciplined in some way under the Attendance Policy. Volvo submitted the attendance records for all material handlers disciplined in any way under the Attendance Policy from 2008 – 2012 and these records were properly considered by this Court in ruling on Arroyo's USERRA and ADA claims. *See Arroyo*, 2014 WL 4922523, at *12, 14; Schroeder Aff. ¶ 9, Ex. 7 **[Doc. 77-5, Ex. 7]**. These records reveal numerous verbal warnings, written warnings, and suspensions. Furthermore, two other employees not noted by the panel were terminated in 2008. *See Schroeder* Aff. ¶ 9, Ex. 7, PgID 892-93, 908-09 **[Doc. 77-5, Ex 7, PgID 892-93, 908-09]**. Coupled with the discretion Volvo exercised in Arroyo's favor, as described in Section I.A. above, these records establish that Volvo would have terminated Arroyo regardless of her military status. Volvo contends that when the entirety of the comparator evidence is introduced at trial—not just isolated pieces Arroyo cited on appeal—it will establish its affirmative defense.

II. **In Conflict with Circuit Precedent, the Panel Opinion Misapplied the "Direct Method" of Proving Discrimination Under the ADA**

"To establish a violation of the ADA, an employee must show: '1) that she is disabled; 2) that she is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and 3) that the employer took an adverse job action against her because of her disability or failed to make a reasonable accommodation.'" *Winsley v. Cook Cty.*, 563 F.3d 598, 603 (7th Cir. 2009) (quoting *Stevens v. Ill. Dep't of Transp.*, 210 F.3d 732, 736 (7th Cir. 2000)). In footnote 2 of its opinion, the panel noted that the District Court correctly concluded that Arroyo's ADA discrimination claim could not be maintained under the indirect method of proof under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792

Page 8 of 15

3995570v.1

(1973), <u>citing with approval some 10 pages of the District Court's analysis</u>. However, the Court's holding that Arroyo's claim could nonetheless be maintained under the direct method of proof articulated in *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994) is legally flawed. **[Doc. 110 at 14-15]**

### A. The panel failed to consider the threshold issue of whether Arroyo was a qualified individual with a disability.

Citing Arroyo's unexcused tardies and absences, and the Seventh Circuit's decision in *Waggoner*, this Court properly rejected Arroyo's arguments that she was a qualified individual with a disability. *Arroyo*, 2014 WL 4922523, at *11-12. While this Court's analysis was included in its discussion of Arroyo's claim under the indirect method (which analysis, again, the Seventh Circuit affirmed in its entirety), it applies equally to Arroyo's claim under the direct method. Accordingly, Arroyo's failure to establish that she was a qualified individual with a disability provides a distinct basis for this Court to dismiss Arroyo's direct method claim and must be considered. The panel did not address this issue one way or another, and Volvo submits that it provides grounds for this Court to dismiss Arroyo's ADA claim at the close of her case in chief.

### B. The panel's analysis of Arroyo's evidence contradicts established Circuit precedent on comments not causally related to an employee's discharge and timing of discipline relative to the employer's knowledge of disability.

*Troupe* and subsequent decisions established that a plaintiff can present a "convincing mosaic" of circumstantial evidence from which an inference of discriminatory intent may be drawn. While opining that "there is less evidence of animus toward Arroyo's PTSD than there is concerning her military service," the panel nonetheless found that a jury could be convinced that Arroyo was discriminated against and cited: (1) the fact that Volvo considered disciplining Arroyo for her hospitalization in December 2010; (2) certain emails sent by Sherrie Jankowski; and (3) the "suspicious timing" of Volvo's discipline of Arroyo coinciding with her PTSD. **[Doc. 110 at**

15] The panel's analysis of these pieces of evidence—individually and collectively—cannot stand under Seventh Circuit precedent.

First, with respect to Arroyo's December 2010 hospitalization, it is undisputed that Arroyo was not disciplined for this absence. This Court succinctly discussed this issue in its analysis of Arroyo's ADA discrimination claim under the indirect method (which, once again, was affirmed by the panel):

> Next, [Arroyo] cites to portions of her affidavit detailing her hospitalization in December 2010, when Schroeder was seeking guidance from HR on how to handle any discipline for her absences, given that Arroyo was going to exceed the cap of five excused days. As Arroyo concedes (but omits from her response brief), no such discipline ever occurred, because once Volvo was aware of the reason for her hospitalization and was given documentation, she was subsequently approved for FMLA and short-term disability leave retroactive to December 23, 2010. And, as noted previously, Plaintiff was never disciplined or given an occurrence for any time she missed due to counseling, treatment for PSTD, or her service in the military. That Volvo required her to provide documentation to support her leave time prior to excusing her leave can hardly be considered a pretext for discrimination.

*Arroyo*, 2014 WL 4922523, at * 13. This Court's analysis of this evidence is directly on point with the Seventh Circuit's decision in *Breneisen v. Motorola, Inc.*, 512 F.3d 972 (7th Cir. 2008). In affirming summary judgment on the FMLA discrimination and retaliation claims for one of the plaintiffs in *Breneisen*, the Court noted that the plaintiff's unexcused absences were eventually marked excused under the FMLA after proper notification from the company's nurse in accordance with company policy. 512 F.3d at 981. Here, Volvo did precisely the same for Arroyo.

Second, Sherrie Jankowski's December 2, 2010 email to Schroeder attaching excerpts from ESGR's website concerning military employees (that Arroyo asked that she forward to Schroeder) **[Doc. 78-5, Ex. 107, PgID 1380]** and her December 29, 2010 email to Schroeder detailing rumors she heard from other employees regarding Arroyo's whereabouts **[Doc. 78-5, Ex. 124, PgID 1412]** cannot and do not create any inference of discrimination. "To be probative of discrimination,

isolated comments must be contemporaneous with the discharge or causally related to the discharge decision making process." *Geier v. Medtronic, Inc.*, 99 F.3d 238, 242 (7th Cir. 1996). *See also Teruggi*, 709 F.3d at 661. Here, it is undisputed that Jankowski was not a decision maker and played no role in administering the 2010-2011 occurrences that ultimately resulted in Arroyo's termination under the Attendance Policy. **[Doc. 110 at 7-9]** At most, her statement in her December 2, 2010 email that Arroyo was "becoming a pain with all this" was an expression of frustration by a non-decision maker—which in no way constitutes admissible evidence of alleged animus, much less an adverse action. *Compare Breneisen*, 512 F.3d at 981-82 (noting that supervisor's comments that expressed frustration with employee taking FMLA leave were not materially adverse).

Third, the panel's conclusion that Volvo's discipline of Arroyo is indicative of "suspicious timing" cannot be supported by precedent or the record in this case. This Court has "recognized that a case based on suspicious timing is particularly weak where a plaintiff's protected activity follows 'a performance warning for the very same conduct that ultimately led to h[er] termination.'" *Taylor-Novotny v. Health Alliance Medical Plans, Inc.*, 772 F.3d 478, 495-96 (7th Cir. 2014) (quoting *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 851 (7th Cir. 2008)). *See also Uhl v. Zalk Josephs Fabricators, Inc.*, 121 F.3d 1133, 1136-37 (7th Cir. 1997). Here, it is undisputed that Arroyo was subject to and disciplined under the Attendance Policy throughout her employment at Volvo—not just after the onset or diagnosis of her PTSD, as inaccurately stated by the panel. *See* Schroeder Aff. ¶ 10, Ex. **8 [Docs. 77-5 ¶ 10, PgID 792-93; Doc. 77-6 Ex. 8 PgID 1019-1023]** Even construing Arroyo's discipline as narrowly as the panel did, by referencing "the series of disciplinary steps that led to her termination", Arroyo received several occurrences and a verbal warning (the first progressive disciplinary step) in the fall of 2010 *before* her treatment and diagnosis of PTSD in December 2010 and January 2011. *Arroyo*, 2014 WL 4922523 at *4.

Moreover, as found by this Court and the panel, Arroyo's failure to accommodate claim was properly dismissed because Volvo granted her numerous accommodations—including a meditation room—throughout 2011, which further negates any inference of discriminatory intent. On these facts, as a matter of law, there is no suspicious timing. As stated above with reference to her military status, Arroyo's discipline had nothing to do with her disability but everything to do with when she chose to arrive to work.

Finally, since none of the individual pieces of Arroyo's mosaic hold any legal relevance, they cannot become relevant simply when considered together. As the Seventh Circuit stated in *Teruggi*:

> Ultimately, the evidence that Teruggi presents is either irrelevant or insufficient to lead to a reasonable inference of discrimination. *See Gorence,* 242 F.3d at 763 ("And it is simply not true, we want to emphasize, that if a litigant presents an overload of irrelevant or nonprobative facts, somehow the irrelevancies will add up to relevant evidence of discriminatory intent. They do not; zero plus zero is zero.").

709 F.3d at 661.

In sum, Volvo contends that Arroyo's evidence with respect to her direct method ADA discrimination will not be sufficient to ultimately be submitted to the jury.

### III. Arroyo Will Not be Able to Establish Punitive Damages under the ADA or Liquidated Damages under USERRA

In the seminal Supreme Court case of *Kolstad v. American Dental Ass'n*, 527 U.S. 526 (1999), the Court noted that the standard for imposing punitive damages is more demanding than the standard for a showing of compensatory damages:

> The very structure of § 1981a suggests a congressional intent to authorize punitive awards in only a subset of cases involving intentional discrimination. Section 1981a(a)(1) limits compensatory and punitive damages to instances of intentional discrimination, while § 1981a(b)(1) requires plaintiffs to make an additional "demonstrat[ion]" of their eligibility for punitive damages. Congress plainly sought to impose two standards of liability—one for establishing a right to compensatory

damages and another, higher standard that a plaintiff must satisfy to qualify for a punitive award.

527 U.S. at 534. The Court went on to explain that the terms "malice" and "reckless indifference" "pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." *Id.* at 535 ("The employer must act with "malice or with reckless indifference *to the [plaintiff's] federally protected rights.*") (emphasis in original opinion). For a claim that even the Seventh Circuit panel acknowledged was weak, Arroyo will not be able to establish the heightened standard necessary for an award of punitive damages on her ADA direct method claim.

Likewise, an underlying showing of liability under USERRA does not automatically entitle the plaintiff to an award of liquidated damages. Rather, under the operative statute, the plaintiff must prove that "the employer's failure to comply with the provisions of this chapter was willful." 38 U.S.C. § 4323(d)(1)(C). Case law confirms that a plaintiff's showing of USERRA liability does not automatically translate to liquidated damages. *See, e.g.*, *Duarte v. Agilent Technologies, Inc.*, 366 F.Supp.2d 1039, 1048 (D. Colo. 2005) (finding that defendant employer violated USERRA in reemploying and subsequently terminating plaintiff, but holding that the plaintiff was not entitled to liquidated damages because he did not prove a willful violation). Here, the evidence indicates Arroyo will not be able to establish any violation of USERRA, let alone a willful one.

## **CONCLUSION**

For the reasons set forth above, Volvo requests that this Court dismiss all of Plaintiff's claims at the close of her evidence.

3995570v.1

Respectfully submitted this 29th day of June, 2016.

        CONSTANGY, BROOKS, SMITH & PROPHETE, LLP

         /s/ Susan Bassford Wilson, #6299054
         200 S. Wacker Dr., Suite 3100
         Chicago, Illinois 60606
         T: (314) 925-7275
         F: (314) 727-1978
         swilson@constangy.com

         /s/ William J. McMahon IV, *pro hac vice*
         100 N. Cherry Street, Suite 300
         Winston-Salem, North Carolina 27101
         T: (336) 721-1001
         F: (336) 748-9112
         bmcmahon@constangy.com

         Attorneys for Defendant Volvo Group North America, LLC, d/b/a Volvo Parts North America

Page 14 of 15

3995570v.1

# **CERTIFICATE OF SERVICE**

I hereby certify that on June 29, 2016, I caused a copy of the foregoing to be served upon Plaintiff via operation of the Court's electronic filing system to:

John P. DeRose
Caitlyn F. DeRose
John P. DeRose & Associates
15 Spinning Wheel Road, Suite 428
Hinsdale, Illinois 60521
john@johnderoselaw.com
caitlyn@johnderoselaw.com

Attorneys for Plaintiff

/s/William J. McMahon, IV