# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

LUZMARIA ARROYO,      )
                             )
          Plaintiff,    )
                             )     Case No.  1:12-CV-06859
vs.                        )
                             )     Honorable Robert M. Dow, Jr.,
VOLVO GROUP NORTH AMERICA, )     Judge Presiding
LLC, d/b/a VOLVO PARTS NORTH )
AMERICA,                )     Honorable Jeffrey Cole,
                             )     Magistrate Judge
                             )
         Defendant. )     JURY DEMANDED

## PLAINTIFF's BRIEF ON EQUITABLE DAMAGES
## TO BE DECIDED BY THE COURT

John P. DeRose & Associates
15 Spinning Wheel Road
Suite 428
Hinsdale, IL 60521
(630) 920-1111 office
(630) 920-1170 fax
john@johnderoselaw.com

# TABLE OF CONTENTS

Topic                                                        **Page**

RELEVANT FACTS AND DISCUSSION............................................................1

I. Parties' Joint Statement on Division of Responsibility.....................................1

   A. The Mutually Expressed Consent of the Parties before the Jury Trial
      Ought to Be Respected..............................................................................2

II. The Jury Verdict Awarded Damages to Plaintiff.........................................2

   A. The Jury Has Weighed in on the Monetary Value of Arroyo's Loss
      Under the Americans with Disabilities Act................................................3

     1. The Jury's Compensatory Damage Award Is Not Excessive....................4

     2. The Jury's Punitive Damage Award Is within An Acceptable Ratio..........4

III. Normally, under USERRA the Court Assesses Liquidated Damages...............5

IV. Benefits under USERRA are Different from, Broader than, and
    In Addition to Benefits under the ADA....................................................5

   A. Comparing Compensatory Damages under the ADA
      To Compensatory Damages under USERRA.............................................7

   B. Comparing Punitive Damages under the ADA
      To Liquidated Damages under USERRA...................................................7

V. Equitable Relief under USERRA to Be Determined by the Court.....................9

   A. Arroyo's Reinstatement to Employment at Volvo......................................9

   B. Accommodations for Arroyo's PTSD upon Reemployment.........................10

   C. Another Employment Opportunity with Volvo.........................................11

     1. Some Concerns about Employment Reinstatement...............................12

    2. Consideration of the Difficulties with Employment Reinstatement..........12

    3. Unequal Employment Opportunities Elsewhere.................................14

  D. Front Pay as an Option in Lieu of Reinstatement.................................14

VI. Respecting the Findings Implied by the Jury Verdict.................................15

  A. Back Pay and Front Pay Are Not Capped................................................15

    1. Prejudgment Interest on an Award of Back Pay.................................16

    2. A Tax-Component Award to Offset a Lump-Sum Payment
      for Lost Wages...............................................................................18

VII. Other Nonmonetary Relief to Be Considered by the Court..........................18

  A. Reestablishment of Arroyo's Pension Benefits upon Reemployment.........18

  B. Other Benefits Lost during Unemployment........................................19

  C. Order Enjoining Volvo from Intentional Violations of USERRA
    And Affirmatively Requiring Volvo to Comply with
    All the Terms of USERRA..............................................................19

  D. Notice to the Office of Federal Contract Compliance Programs
    (OFCCP) of the Jury Verdict That Volvo Willfully Violated USERRA.....19

VIII. CONCLUSION.................................................................................20

IX. CALCULATION RECOMMENDATIONS[1].................................................21

---

[1] With thanks to Lisa M. LloydTaylor, RTRP, plaintiff's accountant at Ebiz
Accounting & Billing Services who, with plaintiff has made the calculations.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LUZMARIA ARROYO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.  1:12-CV-06859 |
| vs. | ) | |
| | ) | Honorable Robert M. Dow, Jr., |
| VOLVO GROUP NORTH AMERICA, | ) | Judge Presiding |
| LLC, d/b/a VOLVO PARTS NORTH | ) | |
| AMERICA, | ) | Honorable Jeffrey Cole, |
| | ) | Magistrate Judge |
| | ) | |
| Defendant. | ) | JURY DEMANDED |

## PLAINTIFF's BRIEF ON EQUITABLE DAMAGES
## TO BE DECIDED BY THE COURT

Now comes the plaintiff, LuzMaria Arroyo, by and through her attorneys,

John P. DeRose and Caitlyn F. DeRose of John P. DeRose & Associates, and

respectfully submits this Brief on Equitable Damages to be decided by the Court:

## RELEVANT FACTS AND DISCUSSION

### I. Parties' Joint Statement on Division of Responsibility

On August 7, 2016, and before the commencement of the jury trial in the

above-captioned cause, at the request of the Court, counsel for the parties consulted

together, agreed, and jointly filed which issues were to be decided by the jury, and

which issues would be left for determination by the Court exercising its equitable

powers concerning the division of responsibility on determining damages. Counsel

for the parties filed a Joint Statement on Division of Responsibility between Judge

and Jury on Damages Sought by Plaintiff (Doc. #141) which read in pertinent part:

Lost wages through March 4, 2016 **(Judge)**

Punitive and Liquidated Damages for Volvo's intentional
violation of USERRA and the ADA **(Jury)**

Attorneys' Fees **(Judge)**

Case Costs to Date **(Judge)**

Plaintiff's Itemization of Equitable Remedies under Statutory Law
**(Judge)**

## A. The Mutually Expressed Consent of the Parties Before the Jury Trial Ought to Be Respected

Counsel for the parties knew exactly what it was to which they were
agreeing, as the Joint Statement of Division of Responsibility between Judge and
Jury on Damages Sought by Plaintiff was drafted by counsel for both parties and
filed by defense counsel. It is the parties' agreement of how the matter would be
tried as the litigation went forward through trial and is of utmost importance. A
definitive pretrial agreement in an action at law for damages should be binding on
all parties after trial, and this Honorable Court should assess damages on
stipulations and contentions agreed on by the parties.

As Justice Easterbrook and the Seventh Circuit Court of Appeals taught us
over a decade and a half ago, the mutually expressed consent of the parties to have
the jury decide some of the most important issues in the case must be respected. See
*Pals v. Schepel Buick & GMC Truck, Inc.*, 220 F.3d 495, 501 (7th Cir. 2000).

## II. The Jury Verdict Awarded Damages to Plaintiff

On August 23, 2016, the jury in the above-captioned cause returned a verdict
in favor of Plaintiff and against Defendant Volvo Group North America, LLC.

Following the jury verdict, the Court entered an Order (Doc. #162) memorializing

the jury verdict and stating in pertinent part:

> Jury verdict returned. The jury finds as follows: Section I: Liability For Plaintiff's ADA Discrimination Claim I - For Plaintiff, LuzMaria Arroyo and against Defendant Volvo Group North America, LLC. Section II: Damages For Plaintiff's ADA Discrimination Claim, Part A, Compensatory Damages - amount of compensatory damages to which Plaintiff LuzMaria Arroyo has proved that she is entitled to on her claim is: $2,600,000.00. Part B: Punitive Damages - Jury awards Plaintiff LuzMaria Arroyo $5,200,000.00. Section III: Liability For Plaintiff's USERRA Discrimination Claim - As to whether Plaintiff LuzMaria Arroyo proved the following three facts by a preponderance of the evidence: 1. Plaintiff LuzMaria Arroyo performed service in a uniformed service; 2. Defendant Volvo Trucks terminated Plaintiff LuzMaria Arroyo; and 3. Plaintiff LuzMaria Arroyo's service in a uniformed service was a motivating factor that prompted Defendant Volvo Trucks to take that action. Jury checked, YES. Did Defendant Volvo Trucks prove by a preponderance of the evidence that it would have terminated Plaintiff LuzMaria Arroyo even if Defendant Volvo Trucks had not taken Plaintiff LuzMaria Arroyo's service in a uniformed service into account: Jurors checked, NO. Did Defendant Volvo Trucks willfully violate USERRA when it terminated Plaintiff LuzMaria Arroyo's employment? Jurors checked, YES. Section IV: Signed by the Foreperson and seven jurors.

## A. The Jury Has Weighed in on the Monetary Value of Arroyo's Loss Under the Americans with Disabilities Act

It is respectfully suggested that the jury's very significant monetary verdict

on damages for the ADA claims -- substantially overshooting the suggestion from

counsel for LuzMaria Arroyo during closing argument -- bears witness to the beliefs

by the jury of the reprehensibility of the ignoble and indefensible actions by Volvo

Group North America, LLC toward Arroyo in this case, particularly in light of the

fact that she had served our country pursuant to military orders and was suffering from Posttraumatic Stress Disorder as a result of that service.

### 1. The Jury's Compensatory Damage Award Is Not Excessive

Following a procedure similar to that employed in our case, in *Pals v. Schepel Buick & GMC Truck, Inc.*, 220 F.3d 495, (7th Cir. 2000):

> A magistrate judge, presiding by consent under 28 U.S.C. § 636(c), gave the jury a general-verdict form telling it to determine the amount of "compensatory damages" to which Pals was entitled. After the verdict fixed these at $1,050,000, Schepel asked the court to reduce the award to $100,000 under 42 U.S.C. § 1981a(b)(3)(B). *Id.*, at 499.

Writing for the *Pals* court, Judge Easterbrook affirmed the jury's award of $1,050,000 in compensatory damages to the plaintiff in that ADA action. *Id.*, at 501. Although there is a $300,000 maximum cap award on compensatory damages and punitive damages together under 42 U.S.C.A. §1981a(c) of the ADA, there is no such cap on either a back pay or front pay award which are equitable remedies and not considered compensatory damages under §706(g)(1) of the ADA. It is respectfully suggested that if such a monetary award passed muster as an appropriate equitable remedy under the ADA with the Seventh Circuit sixteen (16) years ago in the *Pals* case, the monetary verdict rendered by the jury in our case would surely do so again so many years later.

### 2. The Jury's Punitive Damage Award Is within an Acceptable Ratio

In *State Farm Mutual Automobile Insurance Company v. Campbell*, 538 U.S. 408, 425, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003), writing for the majority, Justice Kennedy noted: "Single-digit multipliers are more likely to comport with due

process, while still achieving the State's goals of deterrence and retribution", citing the 4-to-1 ratio in *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 582, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). Similarly, it is respectfully suggested that the 2-to-1 ratio between compensatory damages and punitive damages assessed by the jury in our case comports with due process, while still achieving the goals of deterrence and retribution.

### III. Normally, under USERRA<br>The Court Assesses Liquidated Damages

Congress designated the Court to protect and enforce the rights and benefits for persons covered by USERRA and authorized the Court to determine appropriate compensation for Arroyo for lost wages and benefits. Further, once the jury found that Volvo Group North America, LLC willfully violated USERRA, the Court is authorized to compel payment of double damages as additional liquidated damages equivalent to the lost wages, wages, and benefits. See 38 U.S.C. 4323(d)(1)(B)-(C) and 20 CFR §1002.312.

In the instant cause, however, the parties have stipulated and agreed that the jury was to determine the liquidated damages under USERRA if an intentional violation was found.

### IV. Benefits under USERRA<br>Are Different from, Broader than, and in Addition to<br>Benefits under the ADA

USERRA and the ADA both provide for compensatory damages and should not be duplicated. However, since the ADA limits the amount awarded in compensatory damages, the language of 38 USC § 4302(b) would indicate that it

was the intent of Congress that such a compromise would not be applicable to claims brought under USERRA. Additionally, USERRA provides for a broader definition of what is considered to be compensatory damages and is more beneficial to the service member. Under USERRA, there are no caps on compensatory damages which are determined by the Court:

> The court may require the employer to compensate the person for any loss of wages or benefits suffered by reason of such employer's failure to comply with the provisions of this chapter.

38 U.S.C.A. § 4302(d)(1)(B).

Of course, the jury award of $2,600,000 for compensatory damages is not violative of USERRA in any way and accomplishes its goal of compensating a service member when the employer fails to comply with its provisions.

Even more significant, benefits are more broadly defined under USERRA than under the ADA. Thus, being more beneficial to the service member in the computation of lost wages and benefits:

> Benefit, benefit of employment, or rights and benefits means any advantage, profit, privilege, gain, status, account, or interest (other than wages or salary for work performed) that accrues to the employee because of an employment contract, employment agreement, or employer policy, plan, or practice. The term includes rights and benefits under a pension plan, health plan, or employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or the location of employment.

20 CFR §1002.5(b).

### A. Comparing Compensatory Damages under the ADA
### To Compensatory Damages under USERRA

USERRA also states:

> Nothing in this chapter shall supersede, nullify or
> diminish any Federal or State law (including any local
> law or ordinance), contract, agreement, policy, plan,
> practice, or other matter that establishes a right or
> benefit that is more beneficial to, or is in addition to, a
> right or benefit provided for such person in this chapter.

38 U.S.C.A. § 4302(a)

It is respectfully suggested that the intent of Congress was that the limits of any other laws, such as may be recited in 42 U.S.C.A. § 1981a, do not apply when USERRA claims are involved and where the type of relief sought under USERRA is in addition to compensatory damages sought and is not duplicative of compensatory damages sought under the ADA.

### B. Comparing Punitive Damages under the ADA
### To Liquidated Damages under USERRA

The ADA provides for punitive damages if so awarded by a jury. Because this is an additional benefit of relief for Arroyo, USERRA expressly prohibits nullifying or diminishing that benefit. USERRA provides for liquidated damages which are punitive in nature. See *Trans World Airlines v. Thurston*, 469 U.S. 111,125,105 S.Ct. 613, 83 L.Ed.2d 523 (1985); see also *Coston v. Plitt Theatres, Inc.*, 860 F.2d 834, 835 (7th Cir.1988)("[T]he defendant's actions must have been knowing and voluntary and the defendant either knew or reasonably should have known that its actions were in violation of the law").

It is respectfully requested that the Court take into consideration that the punitive amount awarded by the jury was proper. The willful discriminatory action of Volvo Group North America, LLC and the hardships placed upon Arroyo extend as far back as August 25, 2005. Of course, Arroyo had no proof of this discriminatory action by Volvo Group North America, LLC until discovery in this case.

Additionally, Volvo Group North America, LLC management admitted during the trial of this cause that since the hiring of Arroyo, no other active reserve service member has been hired even though the company is a premiere employer with positions that are jealously sought by applicants within the community. Liquidated damages have been used under USERRA to establish a penalty to be paid in case of non-performance with the intent to encourage compliance where the harm caused by the breach is difficult to calculate.

Unlike punitive damages which were designed to address ambiguous circumstances, liquidated damages under USERRA were designed on the concept that there has been an actual (specific) harm to the service member. Whereas the punitive damages addressed the harm suffered by Arroyo from the date of the first discriminatory email (August 25, 2005) through trial and verdict (August 23, 2016), continuing litigation further aggravates Arroyo's physical disability. Although this Honorable court is authorized to consider additional amounts under USERRA and hopefully to bring this matter to a prompt conclusion, Arroyo seeks no more than

has already been awarded by the jury for compensatory, punitive, and liquidated damages.

## V. Equitable Relief under USERRA to Be Determined by the Court

USERRA provides that "[t]he court may require the employer to comply with the provisions of this chapter." 38 U.S.C. § 4323(d)(1)(A). USERRA also provides that "the court may use its full equity powers, including temporary or permanent injunctions, temporary restraining orders, and contempt orders, to vindicate fully the rights or benefits of persons under this chapter." 38 U.S.C. § 4323(e). Finally, USERRA provides that the court may award reasonable attorney fees, expert witness fees, and other litigation expenses." 38 U.S.C. § 4323(h).

## A. Arroyo's Reinstatement to Employment at Volvo

On October 4, 2016 Counsel for the respective parties filed a Joint Status Report on Calculation of Damages (Doc. #164), which read in pertinent part:

> VIII.   Damage Categories on Which the Parties Disagree
>
> The parties disagree regarding the equitable remedies sought by Arroyo, including reinstatement …. Arroyo contends that [this remedy is] proper in this case. Volvo contends that reinstatement is not a proper remedy in this case because Arroyo voluntarily left the labor market in May 2015 when she abandoned her job at Bear Cartage and began to seek treatment under the compensated work therapy program at the Hines VA Hospital. Subsequently, she also went back to school at Lewis University.

USERRA had provided for protection of Arroyo's job upon her return from military orders as if she had never been gone and guaranteed reemployment at the escalator rate of pay, pursuant to 20 CFR §1002.225 and §1002.236.

Contrary to the assertion by Volvo Group North America, LLC that "Arroyo voluntarily left the labor market in May 2015 when she abandoned her job at Bear Cartage and began to seek treatment under the compensated work therapy program at the Hines VA Hospital. Subsequently, she also went back to school at Lewis University", she only sought to make the best she could out of the very bad situation created when USERRA was intentionally violated.

Michael Temko proudly proclaimed before the jury that employment with Volvo Group North America, LLC is zealously sought by applicants throughout the community, far exceeding the job vacancies available. The substantial annual salary earned by picker/packers at the Joliet plant as hereinafter set forth, probably being the most advantageous character of the job. Now that the jury has found that the termination of Arroyo's employment was a deliberate and willful violation of USERRA, the Court may use its full equity powers to vindicate or to enforce the rights and benefits pursuant to 20 CFR §1002.314. In an exercise of his equity powers, this Honorable Court is asked to enter an order requiring Volvo Group North America, LLC to reinstate her employment.

### B. Accommodations for Arroyo's PTSD upon Reemployment

If the Court orders reinstatement of Arroyo to employment at Volvo Group North America, LLC, she respectfully requests pursuant to 38 U.S.C. 4313(a)(3) that the Court also order that Volvo provide her with the following accommodations:

1) a flexible work schedule to allow "make up time" when tardy;

2) the ability to use noise dampening devices (earplugs or headphones);

3) the ability to listen to audio relaxation devices;

4) a place to meditate and relax before shift starts;

5) an assigned mentor agreeable to Arroyo;

6) allow time off for counseling as needed;

7) provide day-to-day guidance and feedback;

8) allow the ability to take a break during panic/anxiety attacks;

9) Disability awareness training for persons who interact with Arroyo;

10) Education on Disability Awareness of Volvo Employees companywide; and

11) Education on USERRA Dictates of Volvo Management companywide.

## C. Another Employment Opportunity with Volvo

To avoid the sudden loud noises and banging that occur as a picker/packer goes about his business at the Joliet facility and the deleterious effects that will have on Arroyo's PTSD, perhaps she could be transferred to an office location to perform the work as a Human Resources Partner for Volvo Group North America, LLC. Several goals could be accomplished then. While working in Human Resources for the United States Army, Arroyo received special training in the dictates of USERRA. She has many special skills in both human resources and USERRA, and it would be one way for Volvo Group North America, LLC to immediately correct a blind spot in both the understanding of its obligations and the behavior of its employees. Clearly understanding its obligations, Volvo Group North America, LLC could take steps to make sure that it never violates USERRA again.

## 1. Some Concerns about Employment Reinstatement

In *McKnight v. General Motors Corporation*, 908 F.2d 104, (7th Cir. 1990), Justice Posner discussed the issues that could arise when the Court considers Arroyo's reinstatement:

> Courts of equity traditionally have refused to order specific performance of employment contracts, because it is difficult and time-consuming for a court to supervise the parties' conduct in an ongoing and possibly long-term relationship of employment. By hypothesis in such a case, the employer does not want the employee back; and probably the employee does not want to be working for this employer, and hopes to be bought out. Each party will want to make life as miserable as possible for the other party while also wanting to invoke the court's aid to prevent the other party from doing the same thing to him. Courts do not want to involve themselves in the industrial equivalent of matrimonial squabbling. They do not want to be involved in the continuous supervision of a personal relationship that may last for many years. Therefore, although Title VII empowers the court to order reinstatement of an employee who succeeds in proving racial discrimination, the power is discretionary and should not be used where the result would be undue friction and controversy. … Mere hostility by the employer or its supervisory employees is of course no ground for denying reinstatement. That would arm the employer to defeat the court's remedial order. But if the employee desires reinstatement for strategic purposes, that is a valid basis for denial. (Internal citations omitted). *Id.*, at 115.

## 2. Consideration of the Difficulties with Employment Reinstatement

Obviously, hostility and disagreement has existed among LuzMaria Arroyo and high Management, Human Resources Personnel, and Supervisors at Volvo Group North America, LLC for years as she was absent from the workplace pursuant to military orders. Frustration and hostility increased as she sought to

enforce her rights and the obligations on her employer under USERRA.

Reinstatement of her employment with Volvo Group North America, LLC might

cause difficulties in many quarters.

As Justice Posner further indicated in the *McKnight* case:

> Should the judge again decide not to order reinstatement, a remedial gap will open up and let us consider, finally, whether there is any way to plug it. Take first a case in which the wages and other benefits that the plaintiff would receive if reinstated would be no greater than [s]he could obtain from an alternative and no more risky or unpleasant employment. Then reinstatement would not be necessary to eliminate the consequences of discrimination. But in a case, such as this, where substantial back pay is awarded, there is a presumption that the plaintiff does not have equally good employment opportunities, for if [s]he did [s]he would have been earning about the same in whatever job [s]he took, upon being discharged, in order to mitigate [her] damages. … So if in such a case reinstatement is withheld because of friction that would ensue independently of any hostility or retaliation by the employer, a remedy limited to back pay will not make the plaintiff whole. *Id.*, at 116.

Justice Posner continued to opine:

> …[T]he Supreme Court has said that the remedial scheme in Title VII is designed to make the plaintiff whole, and this dictum has been thought by some courts to imply that if the plaintiff's employment opportunities are inferior and reinstatement is infeasible, he should receive in addition to back pay a lump sum—called "front pay" to distinguish it from the remedy of back pay specified in the statute—representing the discounted present value of the difference between the earnings he would have received in his old employment and the earnings he can be expected to receive in his present and future, and by hypothesis inferior, employment. The logic of such an award, if the purpose of Title VII's remedial scheme is indeed to make the plaintiff whole, is undeniable. But the premise can be doubted, as can the propriety, under a statute confined to equitable relief, of an award of what is realistically

damages for lost future earnings—a legal rather than an equitable remedy. (Internal citations omitted). *Id.*, at 116-7.

### 3. Unequal Employment Opportunities Elsewhere

Since her termination by Volvo Group North America, LLC, the employment opportunities available elsewhere to Ms. Arroyo have not been as good. She has suffered a tremendous loss of pay and the employment opportunities available to her now are quite unequal. Upon her termination and taking advantage of the G.I. Bill, Ms. Arroyo was trained to be an 18 wheeler semi-truck driver and was employed in that position traveling across the country and later making local deliveries for a period of time. When the work schedules and physical demands of that semi-truck driver job proved to be too demanding, Ms. Arroyo took employment in housekeeping at the Veterans Administration. At a much reduced annual salary, Arroyo now washes floors, makes beds, and cleans washrooms.

Again taking advantage of the G.I. Bill, Ms. Arroyo has enrolled in college at Lewis University in Romeoville, Illinois. It is reasonable to conclude that she will not again realize the $90,000 annual salary available to a picker-packer at Volvo Group North America, LLC unless and until she completes her college education at least years from now.

### D. Front Pay as an Option in Lieu of Reinstatement

Should the court determine that reemployment of Arroyo at Volvo Group North America, LLC just is not workable, it may award her front pay for the money lost from that employment opportunity. In *Pollard v. E.I. du Pont de Nemours &*

*Company*, 532 U.S. 843, 121 S.Ct. 1946, 150 L.Ed.2d 62 (2001), Justice Thomas
noted:

> Although courts have defined "front pay" in numerous
> ways, front pay is simply money awarded for lost
> compensation during the period between judgment and
> reinstatement or in lieu of reinstatement…. In cases in
> which reinstatement is not viable because of continuing
> hostility between the plaintiff and the employer or its
> workers, or because of psychological injuries suffered by
> the plaintiff as a result of the discrimination, courts have
> ordered front pay as a substitute for reinstatement.
> (Internal Citations omitted). *Id.*, at 846.

## VI. Respecting the Findings Implied by the Jury Verdict

As the parties have observed, this case was scrupulously tried following the
directions from the Seventh Circuit Court of Appeals. The Justices opined that the
jury should be allowed to decide the merits of the case. Having gone through trial
and considering the evidence, the jury has opined that the case has significant
monetary value as it assessed compensatory and punitive damages on Ms. Arroyo's
ADA discrimination complaint. In *Pals,* 220 F.3d at 501, Justice Easterbrook noted:

> **When assessing back pay, or awarding front pay in lieu of
> reinstatement, the judge must respect the findings
> implied by the jury's verdict**. See *Dairy Queen, Inc. v.
> Wood*, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962);
> *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 79 S.Ct.
> 948, 3 L.Ed.2d 988 (1959); *Dranchak v. Akzo Nobel Inc.*,
> 88 F.3d 457, 458–59 (7th Cir.1996); *McKnight v. General
> Motors Corp.*, 908 F.2d 104, 113 (7th Cir.1990).
> (Emphasis in bold not in the original).

## A. Back Pay and Front Pay Are Not Capped

The Supreme Court held in the *Pollard* case that there are no caps on any
award of back pay or front pay:

Because front pay is a remedy authorized under § 706(g),
Congress did not limit the availability of such awards in §
1981a. Instead, Congress sought to expand the available
remedies by permitting the recovery of compensatory and
punitive damages in addition to previously available
remedies, such as front pay. *Id.*, at 854.

### 1. Prejudgment Interest on an Award of Back Pay

The purpose of applying interest on back pay awards is to compensate

LuzMaria Arroyo for the loss of the use of her money. Interest on back pay is to be

calculated at the same percentage rate as the IRS underpayment formula and is

required to be compounded quarterly.  See 41 CFR 60-1.26(a)(2); 41 CFR 60-

250.65(a)(1), and 60-300.65(a)(1); and 41 CFR 60-741.65(a)(1) (Section 503)).

In *Williamson v. Handy Button Mach. Co.*, 817 F. 2d 1290, 1297(7th Cir.

1987) the jury fixed damages at $10,000 for psychological disability and emotional

pain, $130,000 for "earnings lost and the present cash value of the earnings

reasonably certain to be lost in the future", and $10,000 for the expenses of medical

and psychological treatment. It awarded $100,000 more as punitive damages." *Id.,*

at 1293. The District Court declined to award prejudgment interest on back pay,

stating:

> "The verdict, both compensatory and punitive, is in the
> upper range of what can reasonably be sustained. Adding
> interest would, in the court's view, result in an excessive
> award." *Id.*, at 1296-7.

In analyzing and criticizing that reasoning by the District Court, Justice

Easterbrook noted:

> [T]he common law requires judges to add prejudgment
> interest to awards of back pay. (Citation omitted). …

We have held that prejudgment interest is part of full compensation under other statutes, necessary to carry out the federal policies of compensation and deterrence. Twice in the last four years, the Supreme Court has held that "[p]rejudgment interest is an element of complete compensation". Money today is simply not a full substitute for the same sum that should have been paid some time ago. Prejudgment interest therefore must be an ordinary part of any award of back pay (or other incurred expense) under § 1981. (Internal Citations omitted). *Id.*, at 1297.

… This verdict is not so large; it does not seem to cover even actual loss. *Id.*, at 1298.

Although acknowledging that the calculation of prejudgment interest on back pay can be difficult and somewhat uncertain, Justice Easterbrook opined and suggested that the court and parties would make the appropriate calculations:

… Absolute certainty is unavailable no matter what kind of instruction is given to the jury; it is also unnecessary. No purpose would be served by allowing the wrongdoer to keep the entire time value of the money, just because the exact amount is subject to fair dispute. Once we know that back pay is at least some minimum, it is safe to award interest on that amount.

It is also significant that the district judge did not deny interest on the ground that it was too hard to figure out what the jury had awarded as back pay. The judge gave a different reason: that the jury had awarded too much money. That reason is reviewable and wrong….

If the district judge determines that it is possible to ascertain a minimum amount of back pay awarded, it will be necessary to apportion that sum. Each year's pay requires a different amount of prejudgment interest. The computational process, however, is the same in principle as the one used to discount future income (which occurs at different times in the future) to present value. The parties should be able to agree on this mechanical computation if

the district court can determine how much back pay the
jury awarded, allocate it among years, and fix the rate of
prejudgment interest. *Id.*, at 1299.

## 2. A Tax-Component Award to Offset
## A Lump-Sum Payment for Lost Wages

Arroyo has earned only minimal income annually since her discharge by

Volvo Group North America, LLC. Had her employment not been illegally

terminated, she would have received her pay on a regular schedule basis. Now,

upon receiving a lump-sum payment in one year to compensate her for the loss of

salary, Arroyo will be moved to a higher tax bracket and will incur taxes, indeed,

substantial taxes.  To make her whole and promote the law that Volvo Group North

America, LLC should not benefit from their illegalities, courts fashion an award to

compensate for the extra taxes.

In *EEOC v. Northern*, 777 F.3d 898, 904 (7th Cir. 2015), Justice Kanne wrote

for the court:

> Today, we join the Third and Tenth Circuits in affirming
> a tax-component award in the Title VII context…. Put
> simply, without the tax-component award, [s]he will not
> be made whole, a result that offends [USERRA's and
> ADA's] remedial scheme.

To make Arroyo whole, it is respectfully requested that the court fashioned a tax

component award to the judgment ultimately rendered in this case.

## VII. Other Nonmonetary Relief
## To Be Considered by the Court

### A. Reestablishment of Arroyo's Pension Benefits upon Reemployment

Pursuant to 38 U.S.C. 4318(a)(1)(A); 38 U.S.C. 4318(b)(2); 20 CFR §1002.259-

262(b), Arroyo prays that upon reinstatement, Volvo Group North America, LLC be

ordered to reestablish her pension benefits as if she had never been away from employment.

## B. Other Benefits Lost during Unemployment

Arroyo further prays this Honorable Court to order Volvo Group North America, LLC to reimburse her for all other benefits lost as a result of her termination, such as vacation time, bonuses, profit sharing, and stock options.

## C. Order Enjoining Volvo from Intentional Violations of USERRA
## And Affirmatively Requiring
## Volvo to Comply with All the Terms of USERRA

Pursuant to 20 CFR §1002.312, LuzMaria Arroyo prays this Honorable Court to enter an order enjoining Volvo Group North America, LLC from any intentional violations of USERRA and affirmatively requiring the company to comply with all the terms of USERRA.

## D. Notice to the Office of Federal Contract Compliance Programs
## (OFCCP) of the Jury Verdict That Volvo Willfully Violated USERRA

In the instant cause, on October 4, 2016 Counsel for the respective parties filed a Joint Status Report on Calculation of Damages (Doc. #164), which read in pertinent part:

> VIII.  Damage Categories on Which the Parties Disagree
>
> The parties disagree regarding the equitable remedies sought by Arroyo, including … the Court notifying the OFCCP regarding the Court's judgment and/or the jury's verdict. Arroyo contends that [this remedy is] proper in this case. … Volvo contends that under the ADA  and USERRA  there  is  no  statutory  authority for  this Court  to  communicate with the OFCCP or enter an injunction regarding Volvo's federal contractor status or government contracts.

Ms. Arroyo argues to the contrary, that in the exercise of its plenary powers to grant equitable relief under USERRA, this Honorable Court has the right to notify the Office of Federal Contract Compliance Programs (OFCCP) of the findings by the jury in the above-captioned cause that Volvo Group North America, LLC has willfully, recklessly and intentionally violated USERRA.

Volvo Group North America, LLC has been the beneficiary of substantial and lucrative contracts from the United States Government, contracts that in equity should be in jeopardy now:

> A contractor in violation of Executive Order 11246 may have its contracts canceled, terminated, or suspended in whole or in part, and the contractor may be debarred, i.e., declared ineligible for future government contracts. However, a contractor cannot be debarred without being afforded the opportunity for a full evidentiary hearing. Debarments may be for an indefinite term or for a fixed term. When an indefinite term debarment is imposed, the contractor may be reinstated as soon as it has demonstrated that the violations have been remedied. A fixed-term debarment establishes a trial period during which a contractor can demonstrate its commitment and ability to establish personnel practices that are in compliance with the Executive Order.

(*Executive Order 11246-Affirmative Action,* Revised January 4, 2002, Department of Labor, Office of Federal Contract Compliance Programs).

## VIII. CONCLUSION

In light of all the foregoing, LuzMaria Arroyo requests that this Honorable Court enter an order awarding her equitable relief based upon the following calculations:

# IX. CALCULATION RECOMMENDATIONS[2]

| | |
|---|---|
| ADA Compensatory Damages: | $2,600,000.00 |
| ADA Punitive Damages: | $5,200,000.00 |
| USERRA compensatory and liquidated damages[3] | ------------------ |
| Back Pay less earnings actually received[4] | $ 380,614.76 |
| Prejudgment Interest on  Back Pay[5] | $ 157,812.83 |
| Front Pay[6] | $ 360,000.00 |
| Healthcare Benefits lost from 2011 through 2016 | $ 30,822.67 |
| 401k contributions @10% rate from 2011 through 2016[7] | $ 61,762.00 |
| Pension contribution from 2011 through 2016 | $ 12,901.41 |
| Tax-Component Award to Offset Lump-Sum Payment for Lost Wages and at one time tax liability rate of 40.35%[8] | $ 164,495.08 |

*Nota bene*:  Attorneys' Fees and Case Cost Reimbursements have not been considered as part of these Calculations

---

[2] With thanks to Lisa M. LloydTaylor, RTRP, Plaintiff's accountant at Ebiz Accounting & Billing Services who, with Plaintiff has made the calculations. (A copy of those calculations are attached hereto and made a part hereof as Exhibit "A").

[3] No additional damages sought by Plaintiff.

[4] Total Base Back Pay from 2011 through 2016 would have been $540,535.05 less actual earnings received from 2011 through 2016, which was $159,920.29 = $380,614.76.

[5] The compounded interest for the total back pay that should have been received from 2011 through 2016.

[6] In the event that the Court determines that employment reinstatement is inappropriate, Plaintiff prays for 4 years annual salary at the rate of $90,000 per annum to allow her the opportunity to finish her college education.

[7] Plaintiff made 401(k) contributions at the rate of 10% per annum based upon the advice she was given by Volvo, although she has since learned that she could of been making those contributions at the rate of 23% per annum.

[8] Difference between tax liability at 26.35% rate if pay and benefits had been received as wages compared to tax liability at 40.35% rate when pay and benefits are received in a lump sum.

Respectfully submitted,

/s/John P. DeRose
John P. DeRose

## CERTIFICATE OF SERVICE

To:   Mr. William J. McMahon IV            Ms. Susan Bassford Wilson
100 N. Cherry Street                       200 S. Wacker Drive
Suite 300                                   Suite 3100
Winston-Salem, North Carolina 27101   Chicago, Illinois 60606
bmcmahon@constangy.com              swilson@constangy.com

The undersigned, pursuant to 28 USC 1746, certifies under penalty of perjury under the laws of the United States of America that this document was served by electronically filing the same with the Clerk of the United States District Court for the Northern District of Illinois on November 11, 2016, a copy of which will be served on the above attorneys of record electronically.

/S/ John P. DeRose
John P. DeRose
Attorney for LuzMaria Arroyo

John P. DeRose & Associates
15 Spinning Wheel Road
Suite 428
Hinsdale, IL 60521
(630) 920-1111 office
(630) 920-1170 fax
john@johnderoselaw.com