# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

LUZMARIA ARROYO,⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀Plaintiff,⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀Case No.⠀1:12-CV-06859
vs.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀Honorable Robert M. Dow, Jr.,
VOLVO GROUP NORTH AMERICA,⠀)⠀⠀⠀Judge Presiding
LLC, d/b/a VOLVO PARTS NORTH⠀)
AMERICA,⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀Honorable Jeffrey Cole,
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀Magistrate Judge
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀Defendant.⠀⠀)⠀⠀⠀JURY DEMANDED

## PLAINTIFF's REPLY BRIEF ON EQUITABLE DAMAGES
## TO BE DECIDED BY THE COURT

John P. DeRose & Associates
15 Spinning Wheel Road
Suite 428
Hinsdale, IL 60521
(630) 920-1111 office
(630) 920-1170 fax
john@johnderoselaw.com

# TABLE OF CONTENTS

Topic and/or Authority Cited                                                                 Page

I. RELEVANT FACTS AND DISCUSSION.....................................................1

  A. Respecting Jury Verdict and Acknowledging Parties' Agreements...............2

      *Hutchinson v. Amateur Electronic Supply, Inc.*, 42 F.3d 1037, 1042
      (7th 1994)......................................................................................2

      1. The Verdict Rendered by the Arroyo Jury.........................................2

      *State Farm Mutual Automobile Insurance Company v. Campbell*,
      538 U.S. 408, 425, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003).......................2

      2. The Evidence Adduced at Trial and the Task Assigned to the Jury.........3

        a. Highlights of the Evidence Considered by the Jury
          before Rendering Its Verdict...........................................................4

            i. Volvo's Discrimination in Violation of USERRA
              Commences As Early As 2005.................................................4

            ii. Volvo's Frustration That Arroyo Does Not Keep Management
              Advised of the Return Date from Her 2nd Deployment...............4

            iii. One Year Later Volvo Management Continues to Express
              Frustration As Arroyo Uses Military Leave.............................5

            iv. Volvo Considers Termination of Arroyo After Schroeder
              Complains Arroyo Fails to Provide Orders Not yet Cut...............5

            v. 4 1/2 Months Later, Volvo Again Considers
              Termination of Arroyo for Her Attendance..............................5

            vi. Upon Arroyo's Return from Her 3rd Deployment,
              Volvo's Highest Management Gets Involved Recommending
              That She Accept a Voluntary Severance Package.....................6

vii. Having Refused the Voluntary Severance Package,
Arroyo Returns to Work, Has Personal Issues of
Depression since Returning from Active Duty, and
Volvo Considers Termination Because She Is 1 Minute Late........6

viii. Arroyo Tries to Educate Volvo Management
On Her Rights and Their Obligations under USERRA...............7

ix. After Self Admitting to the Hospital,
Arroyo Advises Schroeder of Stress at Work and Panic Attacks......7

x. Although Arroyo Has Advised She Is Hospitalized,
Volvo Contemplates Her Termination for Lack of Attendance.........8

xi. Rumors and Mockery of Arroyo in the Workplace........................8

xii. When Arroyo Complains of Discrimination in the Workplace,
Schroeder Tells Management to Have a Witness
When Talking to Her.................................................................8

a. Any Caps on Arroyo's ADA Claim
Ought Not Limit Arroyo's USERRA Claim
And Damages Should Be Awarded under Each Claim.........................9

i. Jury Advised That Arroyo Finally Diagnosed with PTSD
in January 2011.........................................................................9

b. Arroyo Jury Not Requested to Make
Further Categorization or Specificity in Its Verdict.........................10

*Pals v. Schepel Buick & GMC Truck, Inc.*, 220 F.3d 495, 499
(7th Cir. 2000)................................................................................10

ii. The Agreement and Consent of the Parties................................11

II. The Different Purposes Served by
Compensatory Damages and Punitive Damages.......................................12

*State Farm Mut. Auto. Ins. Co.,* 538 U.S. 408, 123 S.Ct. 1513, 1519,
155 L.Ed.2d 585..............................................................................12

*Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983)............................................................................................12

A. Requirements and Damages
Under USERRA and the ADA Not Duplicative........................................13

B. Respecting the Jury Verdict, Arroyo Seeking Full Damages
Awarded by Jury, But Not Additional Damages under USERRA................14

1. Should the Court Determine Not to Sustain The Full Jury Verdict
on Punitive Damages, Arroyo Requests the Court Assess
Liquidated Damages under USERRA....................................................14

*Adams v. City of Chicago*, 798 F.3d 539, (7th Cir.2015).............................15

III. Volvo Group North America, LLC's Financial Position.................................15

*City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 270 (1981)................15

*Rowlett v. Anheuser-Busch*, 832 F.2d 194, 207 (1st Cir.1987)....................15

*Bell v. City of Milwaukee,* 746 F.2d 1205, 1267 (7th Cir.1984)...................16

IV. Volvo Group's Third-Quarter 2016 Report.................................................16

VOLVO GROUPS COMBINED NET WORTH: $24.9 billion......................17

V. Equitable Relief......................................................................................17

*Hutchison v. Amateur Elec. Supp., Inc.*, 42 F.3d 1037, 1044
(7th Cir. 1994)...............................................................................17

*Miles v. Indiana*, 387 F.3d 591, 599 (7th Cir. 2004).................................17

*Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44
(1962)...........................................................................................17

*Dranchak v. Akzo Nobel Inc.*, 88 F.3d 457, 458–59 (7th Cir.1996).............17

*McKnight v. General Motors Corp.*, 908 F.2d 104, 113 (7th Cir.1990).........17

A. Arroyo Requests an Opportunity to Present Sworn Testimony.....................18

B. Arroyo Requests a Back Pay Award......................................................18

    1. Volvo's Obstinate Resistance to Producing
      Income Records of Comparators.......................................................18

    2. Arroyo's Burden to Establish Entitlement to Back Pay.........................18

    *Smith v. Rosebud Farmstand*, 2016 WL 5912886, at *12
    (N.D. Ill. Oct. 11, 2016)...........................................................18

    *Graefenhain v. Pabst Brewing Co.*, 870 F.2d 1198, 1202 (7th Cir. 1989)......19

    3. Volvo's Burden to Prove Arroyo Failed to Mitigate Her Damages............19

    *Woolridge v. Marlene Industries Corp.,* 875 F.2d 540, 548,
    (6th Cir.1989)......................................................................19

C. Arroyo Prepares a Resume and Commences Her Job Search......................19

    1. Arroyo Starts a Career as a Semi-Truck Driver..................................19

    2. The Compensated Work Therapy Program.......................................20

    3. Arroyo Takes up Housekeeping at the VA Hospital.............................20

D. Comparable Work Not Available to Arroyo...........................................21

    *Hutchison v. Amateur Elec. Supp., Inc.*, 42 F.3d 1037, 1044
    (7th Cir. 1994).....................................................................21

    *Ford Motor Co. v. EEOC*, 458 U.S. 219, 231, 102 S.Ct. 3057,
    73 L.Ed.2d 72 (1982)..............................................................21

E. Meanwhile, Arroyo Does Her Best to Secure Comparable Gainful
   Employment By Seeks a College Degree
   To Increase Her Employability......................................................21

    *Hanna v. Am. Motors Corp.*, 724 F.2d 1300, 1308 (7th Cir. 1984)...............22

F. Arroyo's Tax Returns Show the Diminution
   in Her Annual Income since Termination by Volvo.................................22

G. Arroyo Requests Prejudgment Interest on Any Award of Back Pay...........22

*Williamson v. Handy Button Mach. Co.,* 817 F. 2d 1290, 1297
(7th Cir. 1987)...............................................................................22

*Shott v. Rush–Presbyterian–St. Luke's Med. Ctr.*, 338 F.3d 736, 745
(7th Cir.2003)...............................................................................22

*Fritcher v. Health Care Serv. Corp.*, 301 F.3d 811, 820 (7th Cir.2002).........22

*Gracia v. Sigmatron Int'l, Inc.*, 130 F. Supp. 3d 1249, 1263
(N.D. Ill. 2015)...............................................................................22

H. Arroyo Requests a Front Pay Award.....................................................22

*Gracia v. Sigmatron Int'l, Inc.*, 130 F. Supp. 3d 1249, 1255
(N.D. Ill. 2015)...............................................................................23

*Williams v. Pharmacia, Inc.*, 137 F.3d 944, 954 (7th Cir. 1998)...................23

*Biondo v. City of Chicago*, 382 F.3d 680, 691 (7th Cir. 2004).....................23

I. Arroyo Requests an Award of Unpaid Overtime.......................................23

VI. Notification to OFCCP of Volvo's Violations of Law...................................24

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| LUZMARIA ARROYO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.  1:12-CV-06859 |
| vs. | ) | |
| | ) | Honorable Robert M. Dow, Jr., |
| VOLVO GROUP NORTH AMERICA, | ) | Judge Presiding |
| LLC, d/b/a VOLVO PARTS NORTH | ) | |
| AMERICA, | ) | Honorable Jeffrey Cole, |
| | ) | Magistrate Judge |
| | ) | |
| Defendant. | ) | JURY DEMANDED |

## PLAINTIFF's REPLY BRIEF ON EQUITABLE DAMAGES
## TO BE DECIDED BY THE COURT

Now comes the plaintiff, LuzMaria Arroyo, by and through her attorneys,
John P. DeRose and Caitlyn F. DeRose of John P. DeRose & Associates, and
respectfully submits this Reply Brief on Equitable Damages to be Decided by the
Court:

## I. RELEVANT FACTS AND DISCUSSION

Contrary to the opening assertions[1] in Volvo's Response Brief on Equitable
Damages Be Decided by the Court that "the jury's $7.8 million verdict should be
completely eliminated" and "at a bare minimum, the jury's verdict of $2.6 million in
compensatory damages and $5.2 million in punitive damages ($7.8 million total)
must be reduced to $300,000" are wishful thinking. Eliminating the jury verdict

---

[1] Volvo's Response, page 2.

might be pleasing for Volvo to imagine at best, rather than contemplating the

evidence heard by the jury, rationality, and reality. Volvo asserts[2] further:

> In sum, Arroyo should be not be awarded any
> compensatory or punitive damages on her ADA claim; but
> regardless, no more than $300,000 can be awarded by this
> Court.

## A. Respecting Jury Verdict and Acknowledging Parties' Agreements

In the oft cited case of *Hutchinson v. Amateur Electronic Supply, Inc.*, 42

F.3d 1037, 1042 (7th 1994), the Seventh Circuit Court of Appeals reminds:

> [We] are particularly careful in employment
> discrimination cases to avoid supplanting our view of the
> credibility of the evidence for that of both the jury (in its
> verdict) and the judge (in not interfering with the verdict).

### 1. The Verdict Rendered by the Arroyo Jury

The Arroyo jury's verdict of $2.6 million in compensatory damages and $5.2

million in punitive damages speaks volumes about its belief in the reprehensibility

of Volvo's conduct in this case. It is respectfully suggested that the Arroyo jury

verdict of compensatory damages to punitive damages at the ratio of 2 to 1 meets

the requirements of *State Farm Mutual Automobile Insurance Company v.*

*Campbell*, 538 U.S. 408, 425, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003) and would not

be violative of the Due Process Clause of the Fourteenth Amendment.

Volvo's counsel is correct that "[a]s required by statute, the jury was not

instructed on the statutory cap that applies to any award of compensatory and

punitive damages."[3] But also, the jury was not instructed that they were only being

---

[2] Volvo's Response, page 4.
[3] Volvo's Response, page 4.

asked to render a verdict on the value of discrimination that Arroyo experienced under the ADA.

## 2. The Evidence Adduced at Trial
## And the Task Assigned to the Jury

Carefully following the directions from the Seventh Circuit Court of Appeals, this case was tried by the Court and the parties discussing the rights of Arroyo and the obligations of Volvo under USERRA as she followed military orders as an active Army Reservist. Although the case was tried with the provisions of both USERRA and the ADA in mind, there is no question that issues under USERRA occurred many years before Arroyo was diagnosed with posttraumatic stress disorder and the ADA issues ever even arose.

The emphasis throughout the trial was violations of USERRA. The jury was being asked to determine the value of the discrimination that Arroyo, a disabled veteran of the United States Army Reserves. Arroyo had been deployed on three separate occasions to the combat zones of Kuwait City, Kuwait and Baghdad, Iraq and Basrah, Iraq--the last two deployments of which were while Arroyo was in the employ of Volvo experienced and the violations of her rights and its obligations under USERRA. That is the way the case was argued by the lawyers to the Court and to the jury. The court must determine if there is any reasonable basis to support the verdict, viewing the evidence presented at trial in the light most favorable to the prevailing party. See *Kapelanski v. Johnson*, 390 F.3d 525, 530 (7th Cir. 2004).

### a. Highlights of the Evidence
### Considered by the Jury before Rendering Its Verdict

The jury was allowed to consider the rights and obligations of the parties going back to 2005 when Arroyo's employment with Volvo first commenced. Just a few select emails which the jury considered shows that the discrimination of Arroyo and reckless and deliberate violation of USERRA by Volvo management has been going on throughout her employment.

### i. Volvo's Discrimination in Violation of USERRA
### Commences As Early As 2005

The email exchange between Michael Tempko and Keith Schroeder on August 25-26, 2005 as Arroyo does not keep them advised of her return to work from training to their satisfaction has Schroeder indicating, "If attendance action is in order we must do so expeditiously." (Exhibit A, Trial Exhibit 19).

### ii. Volvo's Frustration That Arroyo Does Not Keep Management
### Advised of the Return Date from Her 2nd Deployment

In an email exchange in April 2017, symptomatically of the attitude of Volvo, Tempko and Schroeder express their frustration that Arroyo has not advised them when she will return from active duty. Bruce Olin emails, "Unfortunately, there isn't a lot we can do… According to the law we have to wait for her. Sorry, it isn't what you wanted to hear." (Exhibit B, Trial Exhibit 32).

### iii. One Year Later Volvo Management
### Continues to Express Frustration As Arroyo Uses Military Leave

In November 2008, Schroeder advises that Tempko and Maureen Somersett have been monitoring "Arroyo's military timeline since her hire in June 2005" and

her use of military leave. Olin apologizes again and advises them, "Under the law she is within her rights to volunteer for assignments, which cause her to use military leave. … Sorry, but nothing we can do." (Exhibit C, Trial Exhibit 49).

### iv. Volvo Considers Termination of Arroyo After Schroeder Complains Arroyo Fails to Provide Orders Not yet Cut

In an email chain among Volvo management later in November 2008, Temko advises:

> LuzMaria has a verbal warning waiting for her when she finally comes back. If we were to give her occurrences for Thursday, November 13 and Tuesday, November 18 this would put her at a 3 day suspension for attendance. If we were too, also, give her an occurrence for Wednesday, November 12 this would bring her to termination for her attendance.

Schroeder replies again, "While I have issues with her lack of communications, we likely have no recourse due to her military service." (Exhibit D, Trial Exhibit 50).

### v. 4 1/2 Months Later, Volvo Again Considers Termination of Arroyo for Her Attendance

On March 29, 2009 when Arroyo does not return from her active duty training, Schroeder contacts her command and learns her training has been extended and the orders will not even be cut until several days later. Schroeder emails Volvo headquarters and management personnel:

> One would have thought that if LuzMaria had received these orders on November 14 she would have either called or faxed us the orders. While I have issues with her lack of communications, we likely have no recourse due to her military service.

(Exhibit E, Trial Exhibit 54).

### vi. Upon Arroyo's Return from Her 3rd Deployment, Volvo's Highest Management Gets Involved Recommending That She Accept a Voluntary Severance Package

In an email exchange among Volvo management in Joliet and high-ranking officers in North Carolina dated September 2010, Schroeder writes the company vice president,

> 1) After military records review we believe that LuzMaria should have returned to work on August 15, 2010. I believe she knew this and now has been out an additional 6 weeks yet. 2) Bruce, Mike and I support that we offer the Voluntary Severance package to LuzMaria pending your approval….

Vice President Dennis Scholl responds, "Yes I am ok with offering the package. Do you think she will accept?" (Exhibit F, Trial Exhibit 69).

### vii. Having Refused the Voluntary Severance Package, Arroyo Returns to Work, Has Personal Issues of Depression since Returning from Active Duty, and Volvo Considers Termination Because She Is One Minute Late

In an email exchange November 5 thru 8, 2010 among high-ranking authorities at Volvo headquarters and management at Joliet, as he discussed attendance discipline of Arroyo with her, Schroeder notes that "LuzMaria stated to me that she is having personal issues of depression since her return from active military duty." Olin emails in response:

> The only issue I have concern is the last tardy of one minute. Yes, she signed the form, but has been away from work for some time. Were the policies reviewed with her when she returned? I understand we enforce the rules completely and non-discriminatory, but I can see some outsider having a different view of this.

(Exhibit G, Trial Exhibit 95).

### viii. Arroyo Tries to Educate Volvo Management
### On Her Rights and Their Obligations under USERRA

On December 2, 2010, Supervisor Sherrie Jankowski emails Schroeder:

> LuzMaria just came in and asked me to forward you the
> following document. It is the LAW posted on the ESRG
> website pertaining to employees of the military. She is
> really becoming a pain with all this. She wanted me to
> read this, but I told her I did not have the time right now!
>
> Enjoy the reading….it's only 24 pages!!!!!

(Exhibit H, Trial Exhibit 107).

### ix. After Self Admitting to the Hospital,
### Arroyo Advises Schroeder of Stress at Work and Panic Attacks

On Christmas Eve 2010, Arroyo emails Schroeder:

> Self-admitted to the emergency room yesterday. Doctor
> gave me a note of no work through December 30, 2010.
> Between the stress at work and the stress of reliving the
> events of my deployment through writing my story, I have
> been having panic attacks. I have been waking up feeling
> scared. Not able to get more than 4 hours of sleep a day.

(Exhibit I, Trial Exhibit 119).

### x. Although Arroyo Has Advised She Is Hospitalized,
### Volvo Contemplates Her Termination for Lack of Attendance

Although Arroyo has already advised Schroeder that she was hospitalized, he

emails VP Scholl and HR Director Olin that "formal discipline" is waiting for Arroyo

upon her return to work:

> Assuming LuzMaria provides a medical document when
> she returns to work 12.23 and 12.27 would be excused
> days and is then at our cap of 5 excused days. 12.28,
> 12.29, and 12.30 would be occurrences so under our
> attendance policy on 12.29 luzMaria would be issued Step

> 2 Formal Written CAP and on 12.30 Step 3, 3 day
> suspension.

(Exhibit J, Trial Exhibit 123).

### xi. Rumors and Mockery of Arroyo in the Workplace

On January 29, 2010, Supervisor Jankowski shares with Schroeder the

rumors and mockery going around concerning Arroyo's absence from the workplace:

> Last night I was hearing some rumors about LuzMaria, all to
> which I did not comment, but I thought you might like to know
> about. There are several rumors for her not being here. 1. She
> fell and hurt herself and is on A&S 2. She's on workers comp 3.
> She's on vacation in Hawaii (this sounded far fetched until I
> realized that she is on vacation next week too!) just thought I'd
> let you know.

(Exhibit K, Trial Exhibit 124).

### xii. When Arroyo Complains of Discrimination in the Workplace, Schroeder Tells Management to Have a Witness When Talking to Her

After Arroyo complains that coworkers and management are insensitive to

her disability and efforts to re-acclimate to the civilian workplace, on May 23, 2011

Schroeder writes to all management personnel:

> To All: Due to the ongoing job issues and concerns with
> LuzMaria Arroyo, I strongly urge you to have a witness
> whenever you have a conversation with this employee.

(Exhibit L, Trial Exhibit 152).

It is respectfully suggested that a review of just the highlighted evidence

shows there is a reasonable basis to support the jury verdict in this cause.

### b. Any Caps on Arroyo's ADA Claim
### Ought Not Limit Arroyo's USERRA Claim
### And Damages Should Be Awarded under Each Claim

The jury saw the email that Arroyo wrote to Volvo Manager Keith Schroeder on Christmas Eve 2010 when she self-admitted to the emergency room of the Adventist LaGrange Memorial Hospital seeking medical treatment for depression and anxiety. The jury considered the insensitive emails from Supervisor Sherrie Jankowski describing the rumors and mocking behavior to which Arroyo was subjected in the Volvo workplace. Having no knowledge of the emails being exchanged among Volvo Management, on December 30, 2010 Arroyo sought the aid of Colonel Gorski at ESGR:

> I want to work. I want to be paid for the work that I do. I do not want to be abused. I do not want to be punished for exercising my rights. And I want the benefits and entitlements provided for me by law/the company. And I have called you, Mr. Gorski, because I am tired of fighting. I do not wish to speak to Mr. Schroeder any more.

### i. Jury Advised That Arroyo
### Finally Diagnosed with PTSD in January 2011

When Arroyo returned from her 2007 deployment, in her Post Deployment Health Assessment and Reassessment, Arroyo documented that "health much worse than before I deployed" and she was "constantly on guard, watchful and easily startled." (Exhibit M, Trial Exhibit 34 and 37).

In her Post Deployment Health Reassessment in October 2010, for the first time mention is made that Arroyo is being referred for "Traumatic Brain Injury" and "PTSD". (Exhibit N, Trial Exhibit 72).

Although the jury heard evidence of Arroyo's ADA claim, her diagnosis of posttraumatic stress disorder does not occur until January 18, 2011, after she transfers to the Veterans Administration Hospital for depression, anxiety and paranoia. (Exhibit O, Trial Exhibit 135).

Having already been clearly diagnosed to be suffering from PTSD from her experiences in Iraq, the jury evaluated the emails written in August/September 2011 in which Arroyo describes how she feels threatened and trapped when cornered in a windowless room by Schroeder. (Exhibit P, Trial Exhibits 172 and 189).

The response from Volvo Vice President Dennis Scholl telling Schroeder to not worry about Volvo's investigation of Arroyo's complaint of the physical threat because they just have to do it. (Exhibit Q, Trial Exhibit 198). Those emails and their time sequence obviously impacted heavily on the jury.

### c. Arroyo Jury Not Requested to Make Further Categorization or Specificity in Its Verdict

Counsel for the parties stipulated even before the trial started that Arroyo suffers from Post-Traumatic Stress Disorder incurred when she followed her military orders through her various deployments. As stipulated, PTSD has long been recognized as a serious mental disorder. The jury heard evidence that doctors from the VA and Volvo's own doctor who performed an Independent Medical Examination agreed that Arroyo suffers from PTSD. The jury determined that Arroyo is disabled under the ADA and suffered discrimination because of that disability at the hands of Volvo management.

Similarly, in *Pals v. Schepel Buick & GMC Truck, Inc.,* 220 F.3d 495, 499 (7th Cir. 2000) regarding 42 U.S.C. § 1981a(b)(3) limits, after the jury verdict fixed compensatory damages at $1,050,000, Schepel asked the court to reduce the award to $100,000 under 42 U.S.C. § 1981a(b)(3)(B).

Justice Easterbrook noted:

> Having stood silent when it was possible to frame questions so that the jury could reveal which of the damages had been awarded under § 1981a, Schepel has forfeited any benefit of § 1981a(b)(3)(B).

*Pals*, 220 F.3d, at 500.

Citing Fed.R.Civ.P. 39(c), the Court noted:

> Thus an issue may be tried to the jury "with the consent of both parties" even if the issue is "not triable of right by a jury".... If hundreds of juries render verdicts on these subjects every day across the country, they can't be beyond the scope of consent under Rule 39(c).

*Pals*, 220 F.3d, at 501.

### ii. The Agreement and Consent of the Parties

Counsel for the parties filed a Joint Statement on Division of Responsibility between Judge and Jury on Damages Sought by Plaintiff (Doc. #141), which read in pertinent part:

> Punitive and Liquidated Damages for Volvo's intentional violation of USERRA and the ADA (Jury)

Had defense counsel requested more specificity from the jury of just what it found leading up to the verdict, the jury certainly would have been able to provide it. Volvo has forfeited any benefit of compensatory, punitive, or liquidated damage

caps on the amounts awarded by the jury in the case given its failure to seek correction of any ambiguity it perceived in the jury instructions and verdict forms.

## II. The Different Purposes Served by Compensatory Damages and Punitive Damages

As the Supreme Court observed:

> …[I]n our judicial system compensatory and punitive damages, although usually awarded at the same time by the same decision maker, serve different purposes. Compensatory damages "are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct." By contrast, punitive damages serve a broader function; they are aimed at deterrence and retribution. (Internal citations omitted).

*State Farm Mut. Auto. Ins. Co.*, 538 U.S. 408, 123 S.Ct. 1513, 1519, 155 L.Ed.2d 585.

The Supreme Court has held that a jury may assess punitive damages in a Section 1983 action "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983).

## A. Requirements and Damages Under USERRA and the ADA Not Duplicative

The ADA and USERRA are federal statutes, both requiring full compliance. Each imposes its own sanctions in the event of violation. The assertion of Volvo[4] that "Congress imposed no remedies whatsoever on remedies available to a service member for a violation of USERRA" is hotly contested. As a matter of fact, in

---

[4] Volvo's Response, page 5.

passing USERRA, Congress specifically requires the "Most Generous Benefits Possible for Service Member". See 38 U.S.C.A. § 4302 ("Nothing in this chapter shall supersede, nullify or diminish any Federal or State law (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that establishes a right or benefit that is more beneficial to, or is in addition to, a right or benefit provided for such person in this chapter.")

Contrary to the assertion of Volvo[5], "awarding both punitive damages under the ADA and liquidated damages under USERRA" is not "duplicative and inappropriate based on the facts of this case." It would not be a double recovery. Plaintiff's research has revealed one Sixth Circuit Court of Appeals case[6] ruling on the subject and holding that punitive damages under the ADA and liquidated damages under USERRA are not duplicative of each other. And of course, the wrongdoing by Volvo goes back to the very commencement of employment in 2005, was ongoing for several years, and predates Arroyo's PTSD disability diagnosis in January 2011.

### B. Respecting the Jury Verdict,
### Arroyo Seeking Full Damages Awarded by Jury,
### But Not Additional Damages under USERRA

Contrary to the assertion of Volvo,[7] "any additional award of liquidated damages would *not* be a double recovery". Contrary to the assertion of Volvo, Arroyo does not "implicitly acknowledge this double recovery issue, given that she is not

---

[5] Volvo's Response, page 5.
[6] The case may not be cited pursuant to Fed. Rule of Appellate Procedure 32.1.
[7] Volvo's Response, pages 4 and 5.

seeking additional liquidated damages". Arroyo is seeking the full jury award, she is just not seeking any additional amount[8] to the amount already determined to be appropriate by the jury to punish Volvo's willful conduct which has been shown to be motivated by evil motive or intent and involves reckless or callous indifference to the federally protected rights of Arroyo.

### a. Should the Court Determine Not to Sustain The Full Jury Verdict on Punitive Damages, Arroyo Requests the Court Assess Liquidated Damages under USERRA

Almost from the moment she received the jury verdict, Arroyo stressed that she does not want to be greedy. From her very first contact with her lawyer, Arroyo stressed that she was not adamant in pursuing this litigation "for the money". Much of her resolution in this cause has always been to defend and enforce the rights of service members subject to active military orders under USERRA. Of course, should the court determine that the full amount of punitive damages reflected in the jury's verdict ought not be sustained, Arroyo requests that the Court assess liquidated damages under USERRA by doubling the amount of any equitable relief awarded her.

In *Adams v. City of Chicago*, 798 F.3d 539, (7th Cir.2015), in reinstating a jury award of several million dollars to two different plaintiffs, Justice Wood wrote for the court:

---

[8] Before any evidence had been taken, the Court indicated that it might be required to double a punitive damage award received under the ADA as liquidated damages under USERRA. In light of the very substantial punitive award the jury has rendered, Arroyo seeks only the damages awarded by the jury and no additional sum.

In deciding whether a damages award is excessive, three factors guide our analysis: "whether (1) the award is monstrously excessive; (2) there is no rational connection between the award and the evidence, indicating that it is merely a product of the jury's fevered imaginings or personal vendettas; and (3) whether the award is roughly comparable to awards made in similar cases." (Internal citation omitted).

It is respectfully suggested that the Arroyo jury award is not "monstrously excessive", particularly when such a well-heeled employer as Volvo will not feel any sting from a lesser award, the Arroyo jury never exhibited any "fevered imaginings or personal vendettas" during the course of the trial, and Congress authorizes the "Most Generous Benefits Possible for Service Member".

### III. Volvo Group North America, LLC's Financial Position

The financial position of Volvo Group North America, LLC, d/b/a Volvo Truck Parts is relevant in determining the amount of punitive damages to which it should be subjected. See *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 270 (1981) ("evidence of a tortfeasor's wealth is traditionally admissible as a measure of the amount of punitive damages that should be awarded"). The financial position of Volvo is relevant in calculating an appropriate punitive award that will get the attention of Volvo. See *Rowlett v. Anheuser-Busch*, 832 F.2d 194, 207 (1st Cir.1987)("a rich defendant may well be required to pay more than a poor one who committed the same wrong"). See also *Bell v. City of Milwaukee,* 746 F.2d 1205, 1267 (7th Cir.1984).

Schroeder acknowledged the high net worth of Volvo Group North America before the jury when told that as many as one in every 4 or 5 semi-tractors that

pass on a divided highway bear the distinctive diagonal bar across their radiators signifying they are Volvo semi-tractors or the distinctive bulldog hood ornament signifying that they are Mack Truck semi-tractors.

## IV. Volvo Group's Third-Quarter 2016 Report

Satisfying the jury verdict in this cause is nothing more than a trifling matter and a mere nuisance about which Volvo will not even feel a sting. Based on the Volvo Group's Third-Quarter 2016 Report (Exhibit R):

➢ Volvo is in 5 market areas: 1. Europe, 2. North America, 3. South America, 4. Asia, 5. Africa and Oceania. Each market area focusing on 3 categories: 1. Vehicle Sales, 2. Maintenance Services, and 3. Financial Services.

➢ Volvo states that its total truck net sales for the first 9 months of 2016 was SEK 146,106 M ($16,385,658) of which SEK 109,536 M stemming from vehicle sales and SEK 36,570 M stemming from Services rendered on those products. (Page 8).

➢ Volvo states its total construction equipment net sales for the first 9 months of 2016 was SEK 37,620 M ($4,219,050), of which SEK 30,624 M stemmed from construction equipment sales and SEK 6,997 M stemming from Services rendered on those products. (Page 10).

➢ Volvo states it received a total of 6,375 M orders for buses, resulting in a total net sales of SEK 17,636 M ($1,977,862) of which SEK 14,340 M stemming from vehicles and SEK 3,023 M stemming from Services rendered on those products. (Page 11).

➢ Volvo states it received a total of 27,651 orders for Volvo Penta engines, resulting in a total net sales of SEK 7,484 M ($839,324). (Page 12).

Volvo states that its total liquidated assets at the close of the 3rd quarter are:

➢ 1. Industrial: SEK 277,515 M ($31 million)
➢ 2. Financial: SEK 134,061 M ($15 million)
➢ 3. Group: SEK 397,475 M ($44 million). (Page 16).

Total interest bearing financial assets SEK 134.2 billion ($15 billion). (Page 18).

Volvo states it began the 3rd quarter with cash on hand of SEK 85.6 billion. Volvo ended the 3rd quarter with cash on hand of SEK 88.8 billion ($9 billion). (Page 20).

**VOLVO GROUPS COMBINED NET WORTH:  $24.9 billion**

### V. Equitable Relief

"A Title VII victim is presumptively entitled to full relief." *Hutchison v. Amateur Elec. Supp., Inc.*, 42 F.3d 1037, 1044 (7th Cir. 1994); see also *Miles v. Indiana*, 387 F.3d 591, 599 (7th Cir. 2004). Under Title VII, if an employer has been found to have intentionally engaged in an unlawful employment practice, a district court may order back pay, reinstatement, and "any other equitable relief as the court deems appropriate." 42 U.S.C. § 2000e–5(g)(1).

When assessing back pay, or awarding front pay in lieu of reinstatement, the judge must respect the findings implied by the jury's verdict. See *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962); *Dranchak v. Akzo Nobel Inc.*, 88 F.3d 457, 458–59 (7th Cir.1996); and *McKnight v. General Motors Corp.*, 908 F.2d 104, 113 (7th Cir.1990).

### A. Arroyo Requests an Opportunity to Present Sworn Testimony

Arroyo respectfully requests an opportunity to present sworn testimony to this Honorable Court showing that she has always remained industrious and has sought every opportunity for comparable gainful employment. Arroyo also requests an opportunity to have her accountant explain any ambiguities in her calculations.

## B. Arroyo Requests a Back Pay Award

Back pay represents the wages the Arroyo would have earned had she not been fired between the time of the firing and the date of judgment, that is: what Arroyo would have earned between November 8, 2011, the date of her firing and August 23, 2016, the date of the jury verdict.

### 1. Volvo's Obstinate Resistance to Producing Income Records of Comparators

In the face of Arroyo's repeated requests for the income records of comparator employees who started in 2005 at the same time as Arroyo and remain in the employ of Volvo today[9], Volvo has not produced such records. But based on what limited business records have been produced by Volvo, it is reasonable to conclude that those employees now make $90,000 a year. Arroyo seeks the full salary with all the raises that have accrued for the four-year-and-eight month period between her firing and the jury verdict.

### 2. Arroyo's Burden to Establish Entitlement to Back Pay

Citing the Court's opinion in *Smith v. Rosebud Farmstand*, 2016 WL 5912886, at *12 (N.D. Ill. Oct. 11, 2016), Volvo contends:

> Arroyo failed to mitigate her damages or that the damages are less than she asserts.
>
> It is Volvo's position that the back pay period is cut off as of May 2015 for two distinct but related reasons: (1) Arroyo's voluntary abandonment of her job at Bear Cartage and (2) Arroyo's withdrawal from the labor market to seek medical treatment under the compensated

---

[9] Marshella Bouie, Brad Olson and David Tilghman.

> work therapy ("CWT") program at Hines VA Hospital – a
> program specifically designed for veterans who are unable
> to function in the customary job market."[10]

Having been discharged by Volvo, Arroyo mitigates her damages by using reasonable diligence to prepare for a new career and in her search for other suitable employment. See *Graefenhain v. Pabst Brewing Co.*, 870 F.2d 1198, 1202 (7th Cir. 1989).

### 3. Volvo's Burden to Prove Arroyo Failed to Mitigate Her Damages

It is Volvo's burden to establish that the plaintiff failed to mitigate her damages. See *Woolridge v. Marlene Industries Corp.,* 875 F.2d 540, 548, (6th Cir.1989) (defendant has the burden of producing sufficient evidence to establish the amount of interim earnings or lack of diligence in mitigating damages on the part of the plaintiff).

### C. Arroyo Prepares a Resume and Commences Her Job Search

Arroyo also prepared a resume as she started her search for a comparable job upon her termination from Volvo. (Exhibit S).

For a list of the various places where Arroyo sought gainful employment after her termination from Volvo, see Exhibit Group T.

### 1. Arroyo Starts a Career as a Semi-Truck Driver

Arroyo started for Schroeder Trucking Company as an interstate semi-truck driver gone from her home 6 days a week. When the demands of that job proved to be too physically taxing for her, Arroyo commenced employment with Bear Cartage

---

[10] Volvo's Response, pages 6 and 7.

Company making deliveries locally. The physical demands of that job also proved too physically demanding, and Arroyo had to seek therapy. Arroyo did not voluntarily abandon jobs or voluntarily remove herself from the workforce.

## 2. The Compensated Work Therapy Program

Arroyo agrees that the compensated work therapy program offered by the VA is specifically designed for employees were unable to function in the customary job market. To assist in preparing herself for gainful employment after the demands of employment at Bear Cartage proved too demanding, Arroyo enrolled in the Compensated Work Therapy Program. (Exhibit U).

## 3. Arroyo Takes up Housekeeping at the VA Hospital

Instead, Arroyo is presently employed in Environmental Management Services as a House Keeping Aide at the Veterans Administration Hospital in Hines, Illinois. Medical personnel from the VA Hospital have openly written their satisfaction with the industry and care with which Arroyo applies in this position. (Positive Letters of Appreciation are attached hereto as Exhibit V).

Arroyo acknowledges that any back pay, the court might grant to Arroyo must be reduced by "[i]nterim earnings and amounts earnable with reasonable diligence." See 42 U.S.C. § 2000e–5(g)(1). Her post Volvo wages are supported by various employment records and tax documents that she will be able to introduce into evidence and should be subtracted from any back pay award.

### D. Comparable Work Not Available to Arroyo

As aforesaid, employees who started at Volvo at the same time as Arroyo now realize an annual salary of $90,000. Arroyo is entitled to all wage increases realized by her coworkers in order to make her whole. As Michael Temko advised the jury, Volvo's forklift picking/packing jobs are singularly desirable and aggressively pursued by many more applicants than openings available. It is respectfully suggested that Volvo can point to ANY job that Arroyo would have been able to find that pays $26.97/hour. It is reasonable to believe that a $90,000 annual salary is a large part of the desirability of a forklift picking/packing job at Volvo. Since her termination from Volvo, comparable $90,000 jobs are not readily available to Arroyo in the Chicagoland community without a college degree.

The Seventh Circuit has referred to "comparable work" as a position that affords "virtually identical promotional opportunities, compensation, job responsibilities, working conditions and status" as the previous position. *Hutchison,* 42 F.3d at 1044. Arroyo is not obliged to "go into another line of work, accept a demotion, or take a demeaning position." *Ford Motor Co. v. EEOC,* 458 U.S. 219, 231, 102 S.Ct. 3057, 73 L.Ed.2d 72 (1982).

### E. Meanwhile, Arroyo Does Her Best To Secure Comparable Gainful Employment By Seeking a College Degree To Increase Her Employability

Besides remaining industrious in employment at housekeeping for the VA Hospital, Arroyo simultaneously seeks her college degree. Arroyo is enrolled at Lewis University in Romeoville, Illinois to increase her chances of securing a

$90,000 job. Arroyo is entitled to back pay while attending college. See *Hanna v. Am. Motors Corp.*, 724 F.2d 1300, 1308 (7th Cir. 1984).

Arroyo reports that she has not had very much success in college the past 2 semesters and fears that she might not be able to finish her college degree.

## F. Arroyo's Tax Returns Show the Diminution in Her Annual Income since Termination by Volvo

In order to assist this Honorable Court in assessing the loss of income to Arroyo as a result of her termination from Volvo, Arroyo's annual tax returns are attached hereto and made a part hereof as Exhibit Group W.

## G. Arroyo Requests Prejudgment Interest On Any Award of Back Pay

Arroyo respectfully requests prejudgment interest on the award of back pay. *Williamson v. Handy Button Mach. Co.,* 817 F. 2d 1290, 1297 (7th Cir. 1987) indicated that "the common law requires judges to add prejudgment interest to awards of back pay. See also *Shott v. Rush–Presbyterian–St. Luke's Med. Ctr.*, 338 F.3d 736, 745 (7th Cir.2003).

When calculating prejudgment interest, the Seventh Circuit directs courts to use the prime rate. See *Fritcher v. Health Care Serv. Corp.*, 301 F.3d 811, 820 (7th Cir.2002). Prejudgment interest should also be compounded monthly. See *Gracia v. Sigmatron Int'l, Inc.*, 130 F. Supp. 3d 1249, 1263 (N.D. Ill. 2015).

## H. Arroyo Requests a Front Pay Award

If the court determines that ordering reemployment at Volvo under these circumstances is not appropriate, Arroyo respectfully requests an award of Front

Pay. *Gracia v. Sigmatron Int'l, Inc.*, 130 F. Supp. 3d 1249, 1255 (N.D. Ill. 2015) ("Front pay represents the wages the plaintiff would have earned had she not been fired measured from the date of the judgment to some reasonable point in the future.")

Based on records received from Volvo, had Arroyo remained employed by Volvo, she would be realizing a $90,000 annual salary. The prospect that Arroyo can find comparable employment at such a salary seems quite remote. In *Williams v. Pharmacia, Inc.*, 137 F.3d 944, 954 (7th Cir. 1998), the Seventh Circuit noted that front pay could be awarded for "a reasonable period of time, until a date by which the plaintiff, using reasonable diligence, should have found comparable employment."

Arroyo will not achieve the same or an equivalent position that she had prior to the termination of her employment until she acquires her college degree which, with diligence, will take 4 years. "Front pay cannot extend past the time a reasonable person needs to achieve the same or an equivalent position in the absence of discrimination." See *Biondo v. City of Chicago*, 382 F.3d 680, 691 (7th Cir. 2004).

## I. Arroyo Requests an Award of Unpaid Overtime

Based on the limited records received, Volvo has in the past and continues to offer overtime work. Based on Arroyo's prior work history at Volvo, she never refused overtime pay opportunities whenever offered and, in fact, actively pursue

those overtime opportunities and protested when overtime opportunities were provided to others while being denied to her. (Exhibit X, Trial Exhibit 153B).

## VI. Notification to OFCCP of Volvo's Violations of Law

Arroyo requests that this Honorable Court notify OFCCP that by its verdict, the jury in this cause found Volvo guilty of violating the ADA and USERRA. Since Volvo is a federal contractor and the recipient of very many lucrative contracts from the United States Government, OFCCP has many possible remedies available to it including placing Volvo's contracts at risk, debarment of Volvo, or a period of probation in which it can show that it will comply with all laws of the United States of America.

Respectfully submitted,

/s/John P. DeRose
John P. DeRose

## CERTIFICATE OF SERVICE

To:   Mr. William J. McMahon IV          Ms. Susan Bassford Wilson
      100 N. Cherry Street               200 S. Wacker Drive
      Suite 300                          Suite 3100
      Winston-Salem, North Carolina 27101   Chicago, Illinois 60606
      bmcmahon@constangy.com             swilson@constangy.com


The undersigned, pursuant to 28 USC 1746, certifies under penalty of perjury under the laws of the United States of America that this document was served by electronically filing the same with the Clerk of the United States District Court for the Northern District of Illinois on November 11, 2016, a copy of which will be served on the above attorneys of record electronically.

/S/ John P. DeRose
John P. DeRose
Attorney for LuzMaria Arroyo

John P. DeRose & Associates
15 Spinning Wheel Road
Suite 428
Hinsdale, IL 60521
(630) 920-1111 office
(630) 920-1170 fax
john@johnderoselaw.com