**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LUZMARIA ARROYO, | ) | |
| Plaintiff, | ) | Case No. 1:12-CV-06859 |
| vs. | ) | Honorable Robert M. Dow, Judge Presiding |
| VOLVO GROUP NORTH AMERICA, LLC, d/b/a VOLVO PARTS NORTH AMERICA, | ) | Honorable Jeffrey Cole, Magistrate Judge |
| Defendant. | ) | JURY DEMANDED |

## Plaintiff's Motion to Reconsider

Now comes the plaintiff, LuzMaria Arroyo, by and through her attorneys John P. DeRose and Caitlyn F. DeRose of John P. DeRose & Associates and pursuant to Federal Rule of Civil Procedure 54(b), respectfully requests this Honorable Court reconsider its Order of November 18, 2020 (Doc. #: 275). In support of said Motion, it is averred as follows:

### I. The Standard for the Motion to Reconsider

A motion to reconsider a non-final order is properly brought pursuant to Federal Rule of Civil Procedure 54(b), which provides that such orders "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed.R.Civ.P. 54(b); see *Galvan v. Norberg*, No. 11–2319, slip op. at 13 n. 3 (7th Cir. May 7, 2012). The decision to reconsider a previous ruling under Rule 54(b) is governed by the "law of the case" doctrine. *United States v. Harris*, 531 F.3d 507, 513 (7th Cir.2008).

### A. Motion Brought Out of an Abundance of Caution

Plaintiff's counsel writes this Motion to Reconsider out of an abundance of caution because as the Seventh Circuit Court of Appeals has repeatedly reminded us that failure to reply to factual and legal contentions is a waiver. See *Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1078 (7th Cir. 2016) and *Bonte v. U.S. Bank, N.A.,* 624 F.3d 461, 466 (7th Cir. 2010).

## II. The Strengths of Arroyo's Case as set forth in the Seventh Circuit Opinion

As the Seventh Circuit Court of Appeals opined in *Arroyo v. Volvo Group North America, LLC,* 805 F.3d 278, 285-287 (7th Cir. 2015):

> Taking all the evidence as a whole, a reasonable jury could conclude here that Volvo was motivated, at least in part, by anti-military animus towards Arroyo. There is evidence that from the beginning of her employment, her supervisors disliked the burden her frequent military leave placed on the company. They repeatedly discussed disciplining her and denied her rights, such as travel time, to which she was entitled. Some of the emails come close to a direct admission of management's frustration…. *Id.*, at 285.
>
> …
>
> [W]e think the evidence is sufficient to convince a reasonable jury that Arroyo was the victim of disability discrimination. Internal emails indicate that Volvo management considered disciplining Arroyo for her absence while she was in the hospital in December 2010, even though she emailed Schroeder to tell him about her condition. Another one of her supervisors, Sherrie Jankowski, joked about Arroyo's absence, writing that she heard rumors Arroyo was actually vacationing in Hawaii. A few weeks earlier, Jankowski had complained to Schroeder that Arroyo was "really becoming a pain with all this." This is enough for a jury to find discriminatory motive. *Id.*, at 287.
>
> There is also enough to support a finding of "but for" causation. Management's expressions of frustration on Arroyo's military absence goes back to the beginning of her deployment in 2005, but it was not until she returned from her second deployment in the fall of 2010 that Volvo began implementing the series of disciplinary steps that led to her termination. That timing coincides with the onset and diagnosis of Arroyo's PTSD. This kind of suspicious timing can support an inference of discrimination. (Citation omitted). *Id.*, at 287.

## III. Court Obliged to Follow the Mandate and Instructions from the Seventh Circuit Court of Appeals

In concluding its opinion, the Seventh Circuit wrote:

> [W]e REVERSE the district court's grant of summary judgment on Arroyo's claims of discrimination under USERRA and the ADA… This case is REMANDED for further proceedings consistent with this opinion.

When a court of appeals has reversed and remanded the case, the district court is required to comply with the express or implied rulings of the appellate court. See *Creek v. Village of Westhaven*, 144 F.3d 441, 445 (7th Cir.1998), quoting *Waid v. Merrill Area Public Schools*, 130 F.3d 1268, 1272 (7th Cir.1997). When the district court addresses a case on remand, the "law of the case" requires it to consider all issues remanded. Compare *United States v. Story*, 137 F.3d 518, 520 (7th Cir.1998).

Allowing this case to proceed on only the USERRA claim and dismissing the ADA claim after the jury in the first trial found for Arroyo, just as the Seventh Circuit had postulated was possible, does violence to the mandate and instructions given by the Appellate Court in this case.

### A. After Multiple Trials, We Could Be Right Back Where We Started

In *Tyler v. Magwire*, 84 U.S. 253, 84 U.S. 253, 271 21 L.Ed. 576 (1872), a case before the United States Supreme Court for a third time, having been already twice before the Supreme Court of Missouri, the Court ruled that when the lower court receives the mandate of the appellate tribunal, it must follow directions of the mandate and has no authority to evade go beyond its instructions. The *Tyler* court further held that "**where legal and equitable causes of action are united under the code, as to the former, on the trial of the causes, the issues must be submitted to a jury**." *Id.*, at 264. (Emphasis in bold not in original).

In *Medcom Holding Co. v. Baxter Travenol Laboratories, Inc.*, 106 F.3d 1388, 1402 (7th Cir.1997), the case had gone through three jury trials over the course of eight years and had been up to the Seventh Circuit once before. After acknowledging the trial court's authority to grant a new trial if it finds the jury award on compensatory damages to be excessive, the Seventh Circuit reinstated the jury verdict on compensatory damages from the first trial.

In *Weisgram v. Marley Co.*, 528 U.S. 440, 120 S.Ct. 1011, 1020, 145 L.Ed.2d 958 (2020), the Supreme Court noted:

> [R]ulings on post-trial pleas for judgment as a matter of law call for the exercise of "informed discretion," and fairness to the parties is surely key to the exercise of that discretion.
> But fairness concerns should loom as large [for]the verdict winner". (Internal citation omitted).

**B. Eliminating the ADA Claim on Retrial Violates the Seventh Circuit Mandate**

By its verdict[1] at the first trial, the jury clearly determined that plaintiff was a qualified individual with a disability under the ADA. The jury determined that Arroyo was "the verdict winner" because she prevailed at trial. To eliminate the ADA claim on retrial will do damage to the mandate from the Seventh Circuit Court of Appeals

**C. The Facts of the Case from which a Jury Could Reasonably Conclude That Volvo's Decision to Discharge Arroyo Was Pretextual**

In its remand of this case for jury trial in *Arroyo v. Volvo Group North America, LLC*, 805 F.3d 278 (7th Cir. 2015), the Seventh Circuit Court of Appeals concluded that there is evidence that from the beginning of her employment, Arroyo's supervisors disliked the burden her frequent military leave placed on the company.

The Seventh Circuit noted that some of the emails come close to a direct admission of management's frustration, e.g. Schroeder's discussion of his "dilemma" of "disciplin[ing] a person for taking too much time off for military reserve duty" and later telling Arroyo that accommodating her orders placed an undue hardship on Volvo. The Seventh Circuit noted that a jury could understandably detect in these communications animus toward Arroyo's military service when it concluded there was such a link and the emails expressing management's frustration that often transitioned directly to a discussion about disciplining Arroyo under the local attendance policy for her tardiness and absences. A jury could reasonably conclude that Volvo's decision to discharge Arroyo was pretextual.

The question of whether Arroyo was a qualified employee was a question of material fact to be decided by the jury based on Arroyo's specific circumstance and Volvo's requirements. Since USERRA declares that it is the employer's burden to prove reasonable efforts to make a returning service member a qualified employee, it is for a jury to decide whether or not Volvo took all reasonable efforts to help

[1] Jury Verdict Form, Claim 1 on page 1.

Arroyo be like every other successful employee at Volvo and overcome those things that were hampering her ability to succeed--her military deployments and her disability.

### D. First Trial Proceeded According to the Mandate As Interpreted by This Honorable Court

This Honorable Court carefully reread the Seventh Circuit opinion and Plaintiff tried the case as the Court interpreted the Seventh Circuit Court of Appeals instructed us to do before the jury[2], and following the direction by the Seventh Circuit that the jurors should be allowed to decide both counts, the ADA count and the USERRA count. The only evidence that was given to the jury was allowed by the Court as he interpreted the directions from the Seventh Circuit.

> … The Seventh Circuit is basically saying, "you are going to have a trial. In the trial is going to allow the plaintiff to present evidence of this convincing mosaic from which a reasonable jury could find in of plaintiff's favor by inferring discriminatory motive."[3]
>
> …But the Seventh Circuit tells me that they can argue that this is something that was bubbling up for years and years and years, and it finally came to a head when Volvo saw an excuse to whack someone they wouldn't have whacked, except they didn't like her. And they didn't like her because -- it's not that they didn't like her. They didn't like her because she was too high maintenance because of her military status and her PTSD.[4]

Carefully following the mandate from the Seventh Circuit at the first trial, this Honorable Court instructed the jury:

> "To succeed on her ADA discrimination claim, Plaintiff LuzMaria Arroyo must prove four things by a preponderance of the evidence: 1. Plaintiff LuzMaria Arroyo had a disability. … 2. Plaintiff LuzMaria Arroyo was "qualified" to perform the essential functions of her job….[5]

---

[2] Transcript of Trial Proceedings, Volume 1-A, pp. 17:9 to 28:1, 30:7 to 31:7, and 34:17 to 35:1; Volume 2-A, pp. 52:17 to 53:16, 54:5-18, and 56:4 to 69:14; Volume 2-B, pp. 241:19 to 245:4, and 259:25 to 261:5.

[3] Transcript of Trial Proceedings, Volume 1-A, p. 17:19-23.

[4] Transcript of Trial Proceedings, Volume 1-A, p. 26:18-25.

[5] Jury Instructions, page 18 of 35.

The Seventh Circuit made clear in *Ortiz v. Warner Enterprises Inc.*, 834 F.3d 760, 766 (7th Cir. 2016) that "all evidence belongs in a single pile and must be evaluated as a whole". The emails exchanged among Volvo management and hierarchy belie the animus and frustration they experienced as they lost authority and control over Arroyo while she went away from Volvo in response to military orders to serve our country, the ridicule of her as she sought to educate them on the travails she felt in the workplace as she endured her PTSD and sought the use of the agreed-upon mediation room.

## IV. Evidence in Support of Plaintiff's Position In This Case Will Not Change

All witness testimony under oath is already locked in. All trial exhibits have been discussed with witnesses under oath. By now, all trial and deposition testimony of all witnesses has been carefully analyzed by both sides.

### A. The Locked-In Trial Testimony of Michael Temko

Michael Temko testified that he was involved in the hiring process of Arroyo for a position at Volvo, and he thought it was a positive that she had a military background. Temko knew that since she was an active Army Reservist, Arroyo could be called up for duty at any time. She provided her drill schedules. Volvo did not hire any other active Army Reservist. While also working as a supervisor at UPS, Arroyo was "burning the candle at both ends" and did not have "much in the tank" but she performed at the top of the benchmarks. While following military orders, Volvo could only expect Arroyo to concentrate on her military duties.[6]

### B. The Locked-In Trial Testimony of Keith Schroeder

Keith Schroeder testified that he never hired another Active Army Reservist for the Joliet facility before or since Arroyo's employment.[7] He contends that Arroyo's punch times are what caused her discipline and ultimate termination. The only reason for Arroyo's termination was "she had violated Volvo Parts North America Local Attendance Policy and the Start of Shift Rule".[8] As the time records showed, Arroyo punched-in ½ hour early and was in the building before the start of her shift. Arroyo was not terminated for performance issues or for insubordination.

---

[6] Transcript of Trial Testimony of Michael Temko, Volume 2-A, pp. 79:18 to 80:14, 82:16 to 83:5, 85:14-18, 86:9 to 87:12, 88:9-13, 105:5-20, 110:17-24, and 168:17 to 169:8.

[7] Transcript of Trial Testimony of Keith Schroeder, Volume 4-A, p. 497:18-21.

[8] Transcript of Trial Testimony of Keith Schroeder, Volume 4-A, pp. 499:13 to 500:24.

### C. The Locked-In Trial Testimony of Maureen Somersett

Arroyo has already shown to the satisfaction of one jury and will show again on retrial if necessary that no other Volvo employee was ever terminated after punching in early. Arroyo will rely upon the trial testimony of Schroeder's own Administrative Assistant of 14 years, Maureen Somersett to rebut such an assertion. In that first trial, Ms. Somersett identified Keith Schroeder's handwriting making changes on Arroyo's time sheets to reflect her being late 1 to 5 minutes. And when Somersett made deductions to Arroyo's time records of up to 15 minutes, she never did it on her own authority, but only **because** she was told to do so by a supervisor or by Keith Schroeder.[9] Ms. Somersett concluded her testimony that in all her years working for Volvo she had never seen another employee who was terminated for tardiness after she had actually punched in early.

### D. The Locked-In Trial Testimony of Sherrie Jankowski

The testimony of Supervisor Jankowski did not play well before the first jury and will be very problematic for Volvo upon retrial:

Supervisor Jankowski showed her frustration because she had to deliver messages between Arroyo and Schroeder and because she had to make allowances for Arroyo's Tuesday Group Meetings at the Veterans Administration Hospital. Jankowski stated that Arroyo was "really becoming a pain" because she was asserting her rights under USERRA. Jankowski was mocking in her emails to Schroeder regarding the "ridiculous rumor" that Arroyo was on vacation in Hawaii which Jankowski thought "could be possible" when, in fact, Schroeder had received an email notification from Arroyo that the day before Christmas Eve she checked into the emergency room that led to the diagnosis she was suffering from PTSD.[10]

Unlike anything done for any other Volvo employee, Excel spreadsheets were created regarding Arroyo's military absences, her comings and goings while receiving treatment at the VA Hospital, and/or her early check-ins to work in order to use the meditation room. Volvo's insistence that Arroyo was terminated for violation of Volvo Parts North America Local Attendance Policy and the Start of Shift Rule demonstrates the disparate treatment endured by Arroyo. No other Volvo

---

9 Transcript of Trial Testimony of Maureen Somersett, Volume 3-B, pp. 456:3 to 458:3, 459:22 to 460:5.

10 Transcript of Trial Testimony of Sherry Jankowski, Volume 3-A, pp. 322:17 to 323:5, 327:5 to 328:6, 329:4-18, 330:11 to 331:5, 332:8 to 334:15, 336:1-7, 337:6 to 338:5, 339:11 to 340:11, 342:3-13, 343:2-25, 345:12 to 346:9, 347:19 to 348:8, 352:9 to 353:9,354:23 to 355:11, 356:24 to 357:10, 358:2-17, 359:11-18, 360:8 to 361:18, 369:3-23, and 370:8-18.

employee was ever disciplined and terminated for such a violation as was Arroyo, a returning US Army Reservist who suffered from PTSD.

A hostile work environment is one that is "permeated with discriminatory intimidation, ridicule and insult." See *Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 426 (7th Cir. 2004).

With the spirit of patriotism and respect for the services of our military veterans shared by our citizens no matter what their political affiliations, every person on the next jury, just like every person on the last reasonable jury, will find it to have been unreasonable to terminate Arroyo because it took her 1 to 3 minutes to walk from the meditation room to her workstation when the start bell rang, particularly after she had checked into work 30 minutes early in order to take advantage of the mediation room, the agreed-upon accommodation for her to relieve stress from PTSD before starting work.

### 1. The Emails among Volvo Management Betray their Real Reason for Arroyo's Termination

Unbeknownst to Arroyo, the many emails which were authored by and exchanged among members of the Volvo management team and its high-ranking officials over the several years of her deployments to Iraq and interruptions in her employment for military training and service betray the real reason for her termination: the oft-stated frustration by Volvo when Arroyo was called away from the workplace to serve her country as an Army Reservist or to attend group therapy sessions at the Veterans Administration Hospital regarding her PTSD pursuant to orders. Once Arroyo was diagnosed with Post Traumatic Stress Disorder, the emails show the ridicule and a hostile work environment to which Volvo management subjected her.

### 2. All the Important Stipulations Remain in the Case

The Stipulation regarding Post Traumatic Stress Disorder and its effects on and diagnosis of Arroyo while in the employ of Volvo and the Stipulation and Agreement regarding the dates of Arroyo's deployment as a US Army Reservist to support operation Iraqi Freedom while employed by Volvo still remain. See *Avitia v. Metropolitan Club of Chicago, Inc.*, 49 F.3d 1219, 1227 (7th Cir.1995)("The doctrine of law of the case establishes a presumption that a ruling made at one stage of a lawsuit will be adhered to throughout the suit.")

## V. The Liability of Volvo Already Clearly Established To the Satisfaction of the Jury at the First Trial of the Cause

Because the facts of the case cannot and will not change, the only real argument in the re-trial will be the damages to which Arroyo is entitled. By its

verdict at the first trial of the cause, the jury was clearly satisfied that Volvo had willfully violated the rights of LuzMaria Arroyo and awarded substantial monetary damages to her.

**A. Jury Convinced Volvo Should Be Punished for Its Mistreatment of Arroyo**

As the jury in *Arroyo v. Volvo* awarded more money than was requested by Arroyo's attorney speaks volumes about the irritation, displeasure, and resentment it felt upon reviewing the evidence of Volvo's mistreatment of its employee suffering from PTSD upon her return from active duty in defense of our country. The jury had the damning emails before it as each of the authors or recipients were cross-examined about them. The jury viewed the witnesses' demeanor, reactions, and assessed their credibility while reviewing with the Volvo witnesses those contradictory and damning emails.

**VI. Procedures Being Followed Not a True Remittitur Order**

If the Honorable Trial Judge believes the jury verdict on the first trial was a result of passion, it was within his sound discretion to enter an order giving LuzMaria Arroyo as the winning party the choice of accepting a remittitur to a specific reduced monetary sum or opting for a new trial on all claims. See *Dimick v. Schiedt*, 293 U.S. 474, 482–83, 55 S.Ct. 296, 79 L.Ed. 603 (1935); see also *Adams v. City of Chicago*, 798 F.3d 539, 541 (7th Cir. 2015).

**A. Seventh Circuit Still Has Jurisdiction over this Case Because Arroyo Was Not Offered Option of Remittitur Or New Trial on All Claims against Volvo**

The Seventh Circuit Court of Appeals has jurisdiction to review the District Court decisions in this case because Arroyo has never yet agreed to a reduction in her jury award and she was never offered the option of a new trial on all the claims if she declined the reduced award. See *Adams v. City of Chicago*, 798 F.3d 539, 541 (7th Cir. 2015).

**B. Arroyo Should Be Allowed to Produce Evidence Of Her Report of Mistreatment by Volvo's Management Team To Her Health Care Providers as They Treated Her for PTSD**

The Court thanked the parties for entering into stipulations that avoided so much more time before the jury. The additional evidence would have been the testimony of Dr. Lynn, Plaintiff's treating psychiatrist and Licensed Clinical Social Worker Brian Fask. Both witnesses were identified and examined during the discovery period in this case. Arroyo should not be limited to the evidence the first jury heard. The court was not satisfied that he heard enough evidence on the PTSD to support the

jury verdict under the ADA. Upon retrial of the matter, Arroyo should not be precluded from introducing additional evidence to that which was produced before the first jury.

The suggestion that Arroyo can testify herself to the impact she experienced in the workplace as she was dealing with her PTSD is hardly the same. Without support, a juror would be free to believe that she was merely making it up or exaggerating at the time of trial. The testimony of Dr. Lynn and LCSW Fask would be used to dispel a claim of recent fabrication.

A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record. See *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir.2020). In *Jaffee v. Redmond*, 51 F.3d 1346, 1356, (7th Cir.1995), a case of first impression before the Seventh Circuit, questioning the existence of a federal privilege for confidential communications between a licensed clinical social worker and a patient, the Court acknowledged:

> "The psychiatric patient ... exposes to the therapist not only what his words directly express; he lays bare his entire self, his dreams, his fantasies, his sins, and his shame.

Of course, if they had retrial, the parties are able to stipulate to Arroyo's report of the experiences in the workplace from her PTSD,then there will be no need to present evidence from her medical care providers to substantiate her statements.

**C. Arroyo's Right to Have a Jury Trial, As Requested, on the Issue of Statutory Damages under USERRA**

By the Seventh Amendment and the statutory terms of USERRA, the jury is allowed to assess liquidated damages against Volvo if its violation of the statute is found to be intentional. See *Middleton v. City of Chicago*, 578 F.3d 655, 660 (7th Cir.2009).

In *Kobs v. Arrow Service Bureau, Inc.*, 134 F.3d 893, 898 (7th Cir.1998), the Seventh Circuit remanded the case, noting:

> [When a case is remanded in which a statute] provides for trial by jury in determining statutory additional damages and remand to the district court to impanel a jury for the purpose of determining the amount of statutory damages, if any, due to the plaintiff[ ]. In instructing the jury on the issue of damages, the district court should inform the jury as to the maximum recovery allowable under law and as to the factors … which Congress has determined should

> be considered and which include the frequency and persistence of noncompliance ..., the nature of such noncompliance, and the extent to which such noncompliance was intentional. (Internal punctuation omitted).

Following the mandate from the Seventh Circuit, both the ADA and USERRA claims should, in the first instance, it should be submitted for jury consideration. *Tyler v. Magwire*,. 84 U.S. at 264.

**1. The Parties Never Intended to Deprive The Jury of the Right to Determine the Amount of Damages**

The Court notes on page 5 of its Order,

> The division of labor between judge and jury and the actual jury instructions used at the last trial were not the product of any judicial rulings. Rather, they were agreed and stipulated.

The "agreement" on how to proceed at the first trial eliminated the need for Plaintiff to introduce evidence of wages, to include expert witness testimony, comparative wages, and mitigation of damages. As the plaintiff understood it, the jury was not supposed to answer questions of back pay, front pay, future loss wages, and mitigation of damages. Those issues were to be left for the Court to determine. (Doc.##: 158 and 167).

If there was no agreement on how damages are to be calculated, then Plaintiff did not waive the right to have the jury decide all facts in the case and there should not be a restriction on Arroyo from presenting additional evidence already produced to the jury or the Court and to be updated in discovery or from presenting expert witness testimony to substantiate Plaintiff's claims.

**2. Other Juries Have Rendered Verdicts On Damages in USERRA Cases**

At the Status Hearing of this case on March 10, 2020, the Court indicated that he had never seen a jury verdict on damages in a USERRA case and invited plaintiff's counsel to research if there are any such verdicts. The Court further indicated that it would consult with any District Court Judges who presided over such jury trials. The following day, Plaintiff's Research on Jury Verdicts in USERRA Cases was filed. (Doc.#: 258).

**VII. At the Second Trial, a Fresh Look at Arroyo's Assessment of Damage Calculations**

The Seventh Circuit did not have occasion to consider the award of damages to

Arroyo at the time of its mandate, and those issues would still be available for appellate review. See *Federation of Advertising Industry Representatives, Inc. v. City of Chicago*, 326 F.3d 924, 929 (7th Cir.2003). The principles of law enunciated in the appellate court's opinion which must be taken as the law of the case at the new trial." *Graefenhain v. Pabst Brewing Co.*, 870 F.2d 1198, 1207 (7th Cir.1989)

In this brand-new second trial of this matter, this Honorable Court and the parties should be free to take a fresh approach and offer additional the evidence in the case. Arroyo should be allowed to but not required to introduce different evidence that the jury heard at the first trial. See *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 153, 4120 S.Ct. 2097, 147 L.Ed.2d 105 (2020)("Given that petitioner established a prima facie case of discrimination, introduced enough evidence for the jury to reject respondent's explanation, and produced additional evidence of … animus, there was sufficient evidence for the jury to find that respondent had intentionally discriminated.)

Lost wages and employment benefits are a question of fact for the jury which require the review of pay statements and values of other employment benefits. Back pay, front pay, monetary amounts for health care benefits and retirement benefits are all monetary damages and the province of the jury. Whereas reinstatement, sanctions, and other relief that is not monetary amounts are equitable remedies and the province of the judge. LuzMaria Arroyo should be allowed to rely on the damage calculations prepared by Stan V. Smith, PhD.

**A. Earnings Records of Volvo Employees Hired at Same Time as Arroyo for Comparator Purposes**

To have a meaningful jury trial regarding lost pay and other financial benefits, Volvo must produce the pay records of Marshella Bouie, David Tillghman, Brian Olsen and anyone else hired within 30 days of Ms. Arroyo's date of hire. Additionally, Arroyo requests Volvo produce the 401k financial calculations for the years she has been away (to include the period of her military leave). Volvo alone has such information. This information is needed to calculate the true and accurate amount of back pay and lost benefits to which Ms. Arroyo is entitled.

Before re-trial of this cause, Volvo should be required to bring discovery current concerning the pay records of Marshella Bouie, David Tilghman, Brian Olsen and anyone else hired within 30 days of Ms. Arroyo's date of hire.

**B. The Clear Distinction between Equitable Remedy of Front Pay From the Compensatory Remedy of Lost Future Earnings**

As a matter of first impressions, in *Williams v. Pharmacia, Inc.*, 137 F.3d 944, 954 (7th Cir. 1998) Judge Flaum makes clear the distinction between front pay and damages for lost future earnings, both of which are available to Arroyo:

> …Whereas front pay compensates the plaintiff for the lost earnings from her old job for as long as she may have been expected to hold it, a lost future earnings award compensates the plaintiff for the diminution in expected earnings in all of her future jobs for as long as the reputational or other injury may be expected to affect her prospects.

Judge Flaum concluded:

> As a final note, … we caution lower courts to take care to separate the equitable remedy of front pay from the compensatory remedy of lost future earnings. On occasion, courts have awarded damages under the rubric of front pay that may be better described as lost future earnings.

## Conclusion

WHEREFORE, plaintiff prays this Honorable Court to reconsider its ruling and allow Arroyo the choice of accepting a remittitur to a specific reduced monetary sum or opting for a new trial on all claims with the right of the jury to deliberate on all issues on both the ADA and USERRA claims in accordance with the mandate from the Seventh Circuit Court of Appeals.

Respectfully submitted,
/s/ John P. DeRose
John P. DeRose

## Certificate of Service

The undersigned on oath certifies that this Plaintiff's Motion to Reconsider Order of November 18, 2020 was served by electronically filing the same on November 27, 2020 using the Court's electronic filing system and sending a copy via email to the attorneys of record:

Mr. William J. McMahon IV
100 N. Cherry Street
Suite 300
Winston-Salem, North Carolina 27101
bmcmahon@constangy.com

Ms. Susan Bassford Wilson
200 S. Wacker Drive
Suite 3100
Chicago, Illinois 60606
swilson@constangy.com

/s/ John P. DeRose
John P. DeRose

John P. DeRose
Caitlyn F. DeRose
John P DeRose & Associates
615 N. York Road
Hinsdale, Illinois 60521
(630) 920-1111 office
(630) 920-1170 fax
john@johnderoselaw.com
caitlyn@johnderoselaw.com