IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LUZMARIA ARROYO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 12-cv-6859 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| VOLVO GROUP NORTH AMERICA, LLC, ) | |
| d/b/a VOLVO PARTS NORTH AMERICA, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

    This case is set for a jury trial to begin on January 26, 2022. Now before the Court are the parties' motions in limine [305, 306]. For the reasons stated below, Arroyo's motions in limine 1, 3, and 5 are granted; Arroyo's motion in limine 2 is granted in part and denied in part; Arroyo's motion in limine 4 is denied. Volvo's motions in limine 1, 2, 3, 5, 8, and 10 are granted; Volvo's motions in limine 4 and 6 are granted in part and denied in part; Volvo's motions in limine 6 and 9 are denied.

**STATEMENT**

**I.    Plaintiff's Motions in Limine**

    Arroyo has filed five motions in limine [see 305]. The first four of those are substantially similar to the motions in limine that she filed prior to the first trial. As indicated at the final pre-trial conference, the Court sees no reason to depart from its prior rulings on these matters [see 138], and thus they stand—numbers 1 and 3 are granted; number 2 is granted in part and denied in part; number 4 is denied. Plaintiff's fifth motion in limine [see 308, at 5] is granted without objection.

**II.    Defendant's Motions in Limine**

    Volvo has filed ten motions in limine [see 306]. Three—numbers 2, 8, and 10—are unopposed and are granted.[1] Two of Volvo's other motions in limine—numbers 1 and 7—are substantially similar to motions that it filed prior to the last trial.[2] The Court sees no reason to

---

[1] In regard to motion in limine 2, the Court agrees with the parties that any reference to testimony given at the prior trial should be referenced as "testimony under oath in a prior proceeding," without reference to any trial.

[2] The corresponding rulings at the last trial were to motions in limine 1 and 5.

depart from those prior rulings as well [see 138], and they too stand—number 1 is granted and number 7 is denied. The five new, disputed motions in limine well be addressed below.

### A. Motions in Limine 3 and 4

In motion in limine 3, Volvo seeks to preclude at the upcoming trial any reference to testimony, or other evidence concerning Arroyo's PTSD diagnosis or treatment. According to Volvo, such evidence is not relevant under Federal Rule of Evidence 401, and to the extent any such evidence is marginally relevant, its probative value would be substantially outweighed by the dangers of juror confusion and prejudice to Volvo under Federal Rule of Evidence 403. And in motion in limine 4, Volvo moves to exclude any reference or other evidence concerning Arroyo's claims under the ADA. Arroyo "agrees that there should be no reference to [her] claims under the [ADA] as the case is presently ordered to proceed" [310, at 7], but submits that "[r]eferences to [her] PTSD must be made before the jury" [*id*. at 5], and that each of the specific items identified for exclusion by Volvo "can be discussed in terms of USERRA without any reference to the ADA" [*id*. at 8].

As the Court noted during the final pre-trial conference, Volvo's motions in limine 3 and 4 are closely related and present challenging pre-trial issues, as they require the Court and the parties to come to grips with the core legal and evidentiary differences between the last trial and this one. At the conference, the Court began by noting that it was not certain that it would be in position to issue a definitive ruling on these matters prior to trial. The Court then engaged counsel in a lengthy discussion of each side's arguments, which crystalized some of the nuances and finer points for the Court's additional research and analysis. In addition, counsel for Arroyo persuasively explained why a ruling prior to trial would be helpful, both for crafting an opening statement and eliciting appropriate testimony from her witnesses at trial. With the benefit of the argument of counsel at the pre-trial conference, additional legal research, and further review of the record, the Court is now in position to rule on these motions.[3]

Since the jury returned its verdict at the last trial, the Court has issued five opinions [177, 227, 260, 275, 300] totaling almost 100 pages of analysis, much of which is relevant to these central questions. The Court will not repeat what it previously has written, all of which is incorporated by reference and all of which the Court stands by. It will, however, offer a brief synopsis of the most pertinent background to set the stage for its resolution of motions in limine 3 and 4.

In her operative third amended complaint [51], Arroyo advanced five claims. This Court issued a memorandum opinion and order [88] granting Volvo's motion for summary judgment on all five claims. The Seventh Circuit issued an opinion [110] affirming the dismissal of three counts and reversing and remanding for trial two discrimination claims, one under the Americans with Disabilities Act (ADA) and the other under the Uniformed Service Members Employment and Reemployment Act (USERRA). *Arroyo v. Volvo Group North America*, 805 F.3d 278 (7th Cir.

---

[3] Like all motion in limine rulings, these rulings remain subject to modification and/or reconsideration as warranted based on developments at trial. *United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989). Counsel are reminded that any requests for clarification of, or to deviate from, any of these rulings must be made outside the presence of the jury, preferably at a break or, if necessary, at a sidebar.

2015). Arroyo prevailed at trial on both claims. [See 161 (jury verdict)]. As to the USERRA claim, by agreement of the parties, the jury decided both liability and willfulness, but the assessment of damages was made by the Court [see 177]. After the Court entered a final judgment [178] in Arroyo's favor on both claims, Volvo filed its post-trial motions. The Court issued an opinion [227] entering judgment for Volvo on the ADA claim and granting a new trial on the USERRA claim. Several other post-judgment and pre-trial motions have been resolved [see 260, 275, 300].

In view of the foregoing, this case will proceed to trial on a single claim: Arroyo's claim that Volvo violated the USERRA when it terminated her employment in November 2011. Volvo insists that it lawfully terminated Arroyo for violations of Volvo's attendance policy. A USERRA discrimination claim arises under 38 U.S.C. § 4311, which provides that "a person who is a member of . . . a uniformed service shall not be denied . . . retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership." As the Seventh Circuit has explained, USERRA prohibits "anti-military animus" when it is "linked, as a motivating factor, to an adverse employment action." *Arroyo*, 805 F.3d at 285. However, USERRA is not a disability discrimination statute. *Ferrell v. Ezpawn Okla., Inc.*, 2019 WL 3207797, at *3 (W.D. Okla. July 16, 2019). Animus "toward Arroyo's PTSD" is actionable under the ADA; animus toward "her military service" falls within the ambit of USERRA. See *Arroyo*, 805 F.3d at 287. Thus, Arroyo bears the burden of demonstrating at trial that "[her] military ***service***, *as distinct from a disability resulting from service*, was a substantial or motivating factor in the employer's [challenged] decision." *Carroll v. Delaware River Port Auth.*, 89 F. Supp. 3d 628, 633 (D.N.J. 2015) (emphasis added); see also *Holliday v. Gusman*, 2021 WL 5386478, at *8 (E.D. La. Nov. 18, 2021) ("[A] plaintiff who only alleges that he was discriminated against because of a disability caused by his military service has failed to state a claim under USERRA."); *Felton v. City of Jackson*, 2018 WL 2994363, at *4 (S.D. Miss. June 14, 2018) ("Plaintiff does not appear to have alleged, or attempted to allege, a claim for discrimination in violation of USERRA **** [r]ather, he alleges only that defendants discriminated against him on account of a disability, PTSD, which he alleges was contributed to by his military service.").

Under Federal Rule of Evidence 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Federal Rule of Evidence 403 provides that a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

In undertaking the balancing required under Rules 401 and 403, the Court first must consider the probative value of the evidence and testimony in question. As the case law cited above makes clear, Arroyo's case turns on her ability to convince the jury that her military service itself, "as distinct from" the PTSD that she suffered as a result of her military service, motivated Volvo's decision to terminate her employment. Any discrimination that she might be able to prove on the basis of her PTSD, as opposed to military service, is compensable only under the disability laws, and no such claim remains in the case. Given the state of the law, the Court concludes that testimony about Arroyo's PTSD has very limited probative value; at most, it might be context for some of Arroyo's interactions with management during her final year of employment at Volvo.

3

But the jury's primary focus will be on Volvo's motivations—not Arroyo's—and whether Volvo terminated Arroyo based at least in part on anti-military bias. In other words, testimony concerning Arroyo's PTSD will be of minimal "consequence in determining the action" under the instructions that the Court will provide to the jury. See F.R.E. 401(b).

On the other side of the Rule 403 ledger, however, are multiple legitimate concerns. First, because the PTSD resulted from Arroyo's military service, Volvo rightly worries about juror confusion. The jury could not properly find for Arroyo if it were to conclude that her PTSD was a substantial or motivating factor in the decision to terminate her. Yet injecting that issue into the case would risk inviting the jury to do just that, giving Arroyo an unjustifiable second bite at her dismissed ADA claim. Second, testimony relating to PTSD would create a danger of unfair prejudice to Volvo, as it may engender sympathy from the jury, even though (a) the PTSD indisputably was caused by Arroyo's military service, not her employment at Volvo,[4] and (b) the USERRA is not a disability discrimination statute. In short, the limited probative value of any testimony about Arroyo's PTSD is substantially outweighed by the danger of *both* juror confusion *and* unfair prejudice to Volvo. See F.R.E. 403.

The Seventh Circuit's exposition of the evidence supporting Plaintiff's ADA and USERRA claims, respectively, reinforces the Court's approach to the Rule 401/403 calculus. As the court of appeals observed, Arroyo was an active Army reservist from the start of her employment at Volvo. *Arroyo*, 805 F.3d at 281. Throughout her tenure, Arroyo took leave for weekend drills, training, and other military activities. And she deployed overseas twice, from April 2006 to May 2007 and from April 2009 to August 2010. The court of appeals agreed with Arroyo that the evidence of anti-military animus started "from the beginning of her employment" back in 2005. *Id*. at 285. But it was not until after returning from her second deployment that she received treatment for symptoms of PTSD, took FMLA and disability leave, was formally diagnosed with PTSD, and began therapy for that condition. Put differently, Arroyo did not have PTSD until the final year or so of her more than six years of employment at Volvo.

Moreover, in its recitation of the evidence that supported Arroyo's entitlement to a trial on the USERRA claim—*i.e*, the evidence from which a reasonable jury could infer that Volvo was motivated, at least in part, by anti-military animus toward Arroyo—the Seventh Circuit pointed only to events that took place prior to Arroyo's PTSD diagnosis:

> There is evidence that from the beginning of her employment, her supervisors disliked the burden her frequent military leave placed on the company. They repeatedly discussed disciplining her and denied her rights, such as travel time, to which she was entitled. Some of the emails come close to a direct admission of management's frustration. For example, Schroeder discussed his "dilemma" of "disciplin[ing] a person for taking too much time off for military reserve duty." He later reportedly told Arroyo that accommodating her orders placed an undue hardship on Volvo; Jarvis repeated the same sentiment. Temko complained about Arroyo's lack of communication while she was deployed in Iraq.

---

[4] As the parties stipulated [151] at the prior trial, "Plaintiff's PTSD was due to and caused by her military service."

*Id.*

By contrast, in discussing the evidence that could be "sufficient to convince a reasonable jury that Arroyo was the victim of disability discrimination," the court of appeals focused only on events that took place after she returned from her second tour of active duty and began exhibiting signs of PTSD:

> Internal emails indicate that Volvo management considered disciplining Arroyo for her absences while she was in the hospital in December 2010, even though she emailed Schroeder to tell him about her condition. Another one of her supervisors, Sherrie Jankowski, joked about Arroyo's absence, writing that she heard rumors Arroyo was actually vacationing in Hawaii. A few weeks earlier, Jankowski had complained to Schroeder that Arroyo was "really becoming a pain with all this."

*Arroyo*, 805 F.3d at 287. Taken together, these paragraphs confirm the limited probative value of any PTSD-related testimony in support of her *USERRA* claim (as opposed to her now-dismissed *ADA* claim).

This is not to say that events after the PTSD treatment and diagnosis could not relate to her military service. For example, Arroyo notes that she was under military orders to attend therapy for her PTSD. But Arroyo can testify that she was under military orders to attend her group therapy without making any reference to PTSD, thereby keeping the jury properly focused on the dispositive issue of possible anti-military bias while avoiding the potential jury confusion and prejudice noted above.[5] Arroyo's use of the mediation room was not pursuant to a military order; it was an accommodation for her disability. True, as the Seventh Circuit noted, in the end Arroyo was disciplined and ultimately fired for tardiness, often of a relatively minor nature, and the occurrences that amounted to last straws happened after the PTSD diagnosis. A jury could properly award a recovery for Arroyo under USERRA by "infer[ring] from that evidence that Arroyo's punishment for such infractions was actually motivated by her supervisors' long-standing frustration about her frequent absences." *Arroyo*, 805 F.3d at 286. But it could not properly tag Volvo for liability *under USERRA* for discrimination based on "a disability resulting from [her military] service," *Carroll*, 89 F. Supp. 3d at 633—*i.e.,* her PTSD. Consistent with the foregoing, Volvo's motion in limine 3 is granted.

Volvo's motion in limine 4 also is granted in large part. As Arroyo concedes, any reference to the ADA plainly is off limits, as are (pursuant to the ruling above) references to her PTSD diagnosis and treatment or to any accommodations made by Volvo based on Arroyo's PTSD. At the same time, consistent with the discussion above, Arroyo will be permitted to elicit testimony that she was disciplined for "relatively minor" instances of tardiness, as well as the circumstances giving rise to those occurrences—so long as she avoid references to the ADA, PTSD, and accommodations and instead keeps the focus on the inference that "Arroyo's punishment for these infractions was actually motivated by her supervisors' long-standing frustration about her frequent absences" (*Arroyo*, 805 F.3d at 285–86), including any absence to attend military-ordered therapy.

---

[5] As best the Court can recall, Volvo did not contest the accuracy of that statement. It Volvo does, then it may open the door to further explanation, which may justify a reference to PTSD.

### B. Defendant's Motion in Limine 5

Plaintiff's operative third amended complaint [51] was filed on July 30, 2013. As the Seventh Circuit recognized, that complaint advanced a USERRA discrimination claim under 38 U.S.C. § 4311(a) and (c). That is the claim on which this Court instructed the first jury. [See 156, at 25–28.] Nothing about the claim has changed in all that time. Yet Plaintiff has submitted a phalanx of new proposed jury instructions, which she insists are "material and relevant to this cause." She seems to be suggesting that Volvo's violations of USERRA are not limited to discrimination, but instead extend to many additional aspects of that statute.

The Court rejects any effort to add USERRA claims at this late stage. If Plaintiff wished to inject these other alleged USERRA violations into the case, she should have done so in an amended complaint, probably before the first trial—and certainly not years later, shortly before the second trial. Any attempt to seek leave to file an amended complaint now would fail as tardy in the extreme. As counsel for both sides have acknowledged, the case now set for trial is very straightforward. The jury instructions track the Seventh Circuit's explication of the relevant law, compare *Arroyo*, 805 F.3d at 284–85, and are written in readily understandable language that lay jurors should have no difficulty tracking.

### C. Defendant's Motions in Limine 6 and 9

Volvo's motions in limine 6 and 9 seek to bar Arroyo from testifying about her emotional or mental distress, as such damages are not available under USERRA, or from asking the jury to punish or "send a message" to Volvo through its verdict. It is true that there will be no line on the verdict form for damages at all, and damages for emotional or mental distress are not recoverable under the statute. Nevertheless, the Court cannot say that evidence relating to Arroyo's emotional and mental state as she attempted to protect her rights under USERRA throughout her employment at Volvo are irrelevant to the matters for the jury to decide. In particular, if the jury finds for Arroyo on liability, it will then assess whether Volvo's violation was willful. If it was, then Arroyo's damages, as assessed by the Court, will be doubled.

As the Sixth Circuit has explained, because USERRA "does not define 'willful,' courts have applied the interpretation of 'willful' from other contexts." *Koehler v. PepsiAmericas, Inc.*, 268 Fed. Appx. 398, 403 (6th Cir. 2008) (citing, *inter alia*, *Maher v. City of Chi.*, 463 F. Supp. 2d 837, 841-42 (N.D. Ill. 2006)). As defined in these other contexts, an employer's violation is "willful" if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited" by the law at issue. *Id.* (citing *Trans World Airlines v. Thurston*, 469 U.S. 111, 125-30 (1985) (ADEA case). Once the Plaintiff shows willfulness, he or she need not show "that the employer's conduct was outrageous, or provide direct evidence of the employer's motivation." *Id*. (citing *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 617 (1993)). However, "[i]f an employer acts 'reasonably and in good faith in attempting to determine whether [its] plan would violate' the law at issue, liquidated damages are not appropriate." *Id*. (citing *Hazen Paper*, 507 U.S. at 616; *Thurston*, 469 U.S. at 129).

In assessing the reasonableness and good faith of Volvo's efforts to comply with its obligations under USERRA, the jury may consider the two-way relationship between the company

and its employee.  As the Seventh Circuit noted, the jury will hear evidence of Volvo's frustration with Arroyo, and the rules of evidence do not indicate that the Court should sanitize from the jury's ears any corresponding frustration that Arroyo, too, might have experienced.  Consistent with the Court's rulings on motions in limine 3 and 4, however, the jury may *not* hear evidence of the ways in which Arroyo's PTSD may have exacerbated her frustration with Volvo.  Such testimony poses a high risk of juror confusion with respect to the cause of Arroyo's PTSD, which, the parties agree, was her military service, not her employment with Volvo.

In a similar vein, Volvo's request that the Court bar Arroyo from asking the jury to punish or "send a message" to Volvo is not well taken.  Although a separate award for punitive damages is not permissible under USERRA, the Supreme Court has held that liquidated damages provisions such as those included by Congress in the ADEA and USERRA are "punitive in nature."  *Thurston*, 469 U.S. at 125; see also *Fortino v. Quasar Corp.*, 950 F.2d 389, 397 (7th Cir. 1991) ("the Supreme Court has, realistically enough, described the doubling of damages for a willful violation as an award of punitive damages (despite the statutory appellation 'liquidated damages')").

Dated: January 20, 2022

_____
Robert M. Dow, Jr.
United States District Judge